IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

RODERICK DAVIE,            )
                           )
       Petitioner,         )   Case No. 1:99CV2400
                           )
vs.                        )
                           )
BETTY MITCHELL, WARDEN,    )   Judge: James G. Carr
                           )
       Respondent.         )

EXHIBIT ____

AFFIDAVIT OF DIANE WILEY

STATE OF MINNESOTA   )
                     ) SS
COUNTY OF HENNEPIN   )

Diane Wiley, being first duly sworn, on oath, deposes and says:

1. I am president of the National Jury Project Midwest. My qualifications are attached as *Appendix I*.

2. I was retained by the Ohio Public Defender Office in Columbus, Ohio, to evaluate whether or not the special jury venire [February 3, 1992 Venire -- Capital Offense] drawn in the case of *State of Ohio v. Roderick Davie* [Case No. 91-CR-288] in Trumbull County, Ohio was representative of the population of African Americans in Trumbull County during that time period.

   If the percentage of African American jurors was less than the percentage of African American residents in the county, I was asked to determine whether this discrepancy could occur by chance with a truly random sample or whether it indicates a statistically significant deviation.

3. In order to determine whether the percentage of African Americans was representative of the African American population in Trumbull County, I compared the percentages of African American with census data from T

EXHIBIT
39

Exhibit 1 to the Petition for Habeas Corpus
1 of 17

County. Given that there was an African American population of approximately 6% and there were no African Americans in the venire, I then determined the probability that this discrepancy could occur by chance with a truly random sample, which determines whether it indicates a statistically significant deviation.

4. I have concluded that Trumbull County African American residents were seriously underrepresented in Roderick Davie's venire, and that this underrepresentation is extremely unlikely to have occurred by chance.

5. There were no African American venirepersons. There should have been 7 or 8[1].

   My analysis is based on United States Census Data[2] as compared to 130 total venirepersons as reported to have been present in the voir dire transcript from Mr. Davie's case. It was also reported in that transcript that there were no African Americans among the venirepersons.

   I used the census figure of 5.987% African Americans between the ages of 18 and 74 for 1990 for Trumbull County.[3]

6. While not every jury venire can be expected to be exactly representative of each cognizable class in a jurisdiction, random selection should result in roughly proportional representation.

   In a fair, cross-sectional system, the probability of any eligible person being included in a jury pool would be the same for every eligible person, regardless of race. The Petit Jurors, if randomly selected from a representative jury pool, should also reflect the composition of the pool.

---

[1] One would expect 7.8 African Americans out of a total of 130 jurors.

[2] Racial and gender percentages of Trumbull County for 1990 are attached as *Appendix II*, Census Data: Trumbull County, Ohio, 1990. The percentages that were used were of persons age 18 to 74.

[3] There were 158,054 persons between the ages of 18 and 74 in the 1990 Trumbull County census. 9,462 of those persons were African Americans between the ages of 18 and 74.

Affidavit of Diane Wiley – 14 June 2000                    Page 2

Exhibit 1 to the Petition for Habeas Corpus
2 of 17

7. I have used three methods, which I understand have been discussed by the United States Supreme Court and the Ohio Supreme Court in various cases to calculate whether or not African Americans were underrepresented in Mr. Davie's special venire.

    A. The Comparative Disparity Standard

    B. Absolute Disparity

    C. Statistical Significance

A. The Comparative Disparity standard measures representativeness by the proportion by which the probability of serving is reduced for people in a particular cognizable class.

This percentage is determined by the following calculation:

$$\frac{P-Q}{P} = Comparative\ Disparity$$

$P = $ *Proportion of the population in the specified category*
$Q = $ *Proportion of the panel in the specified category*

B. Absolute Disparity is another measure of the extent to which a cognizable class is underrepresented. The absolute disparity standard measures representativeness by the difference between the proportion of the population and the proportion of the pool in the underrepresented category.

This number is determined by the following calculation:

$$P - Q = Absolute\ Disparity$$

$P = $ *Proportion of the population in the specified category*
$Q = $ *Proportion of the panel in the specified category*

Affidavit of Diane Wiley – 14 June 2000      Page 3

Exhibit 1 to the Petition for Habeas Corpus
3 of 17

C. Statistical Significance is another measure of the extent to which a cognizable class is under represented. The Statistical Significance test measures representativeness by calculating the probability of the disparity occurring by chance as the result of a random selection. If that probability is very low, the conclusion is drawn that the disparity is unlikely to be due to chance, but results from bias or discrimination.

The statistical significance test discussed in *Castandea v. Partida*, 430 U.S. at 496 n. 17, provides that a difference of "two to three standard deviations" distinguishes an allowable from an unconstitutional disparity. This test is determined by the following calculation:

$$\text{One Standard Deviation} = \sqrt{\text{Sample Size} \times \text{Proportion In Class} \times \text{Proportion Not In Class}}$$

$$\text{Absolute Disparity} = \text{Proportion of the Population in the Class} - \text{Proportion of the Venirepersons in the Class}$$

$$\text{Disparity} = \text{Sample Size} \times \text{Absolute Disparity}$$

$$\text{Number of Standard Deviations} = \text{Disparity} \div \text{One Standard Deviation}$$

8. The following Chart 1 lays out the Comparative Disparity, Absolute Disparity and the number of Standard Deviations for the proportion of African American jury venirepersons in Mr. Davie's venire.

Affidavit of Diane Wiley – 14 June 2000                Page 4

Exhibit 1 to the Petition for Habeas Corpus
4 of 17

# CHART 1

## Representativeness of African Americans

## As Venirepersons

## In *State of Ohio v. Roderick Davie*

## Trumbull County  3 February 1992

|  |  |
|---|---|
|  | There were 0 African American Venirepersons out of 130 Venirepersons |
| Comparative Disparity | 100% UNDER REPRESENTED |
| Absolute Disparity<br><br>EXPECT 5.987 JURORS OUT OF 100 | 5.987% |
| Standard Deviation<br><br>TO BE SIGNIFICANT, MUST BE "2 TO 3" | 2.877<br><br>SIGNIFICANT |

Affidavit of Diane Wiley – 14 June 2000                                    Page 5

Exhibit 1 to the Petition for Habeas Corpus
5 of 17

9. The number of African American citizens called to serve as jury venirepersons for *State of Ohio v. Roderick Davie*, on February 3, 1992 in Trumbull County Common Pleas Court under represented the percentage of African Americans in Trumbull County by 100%.

   This underrepresentation represents a statistically significant deviation from the number of African American persons who would be expected utilizing a truly random sampling method from a truly random pool representative of the county.

10. Thus, I would recommend that other special venires drawn for death penalty cases in Trumbull County be analyzed to determine if there was also underrepresentation of African Americans in those venires.

    It is disturbing to find a venire of this size without even one African American juror being included in a jurisdiction with 6% African Americans. This simply should not occur unless there was some kind of systematic discrimination.

11. The jury selection procedures that resulted in all African Americans being excluded from Roderick Davie's petit jury venire could also have resulted in the underrepresentation of African Americans in the grand jury venire.

    It is my understanding that the same procedures are used to select venirepersons to serve on both petit and grand jury venires in the State of Ohio. Thus, it is extremely likely that the venire from which Mr. Davie's grand jurors were chosen also under represented African Americans in Trumbull County.

    In order to determine whether or not African Americans were under represented in the grand jury venires during the period that Mr. Davie was indicted, it would be necessary to evaluate the composition of a number of grand jury venires from around that same time period.

12. The process used for selecting grand jury forepersons in Ohio can easily result in the underrepresentation of African Americans because it is not a random process.

    It is my understanding that in Ohio, the presiding Common Pleas Court Judge often chose grand jury forepersons during the time period that Mr. Davie was indicted. In addition, the foreperson did not have to be chosen from the grand jury venire, but simply had to be a registered voter of the county.

    I recently conducted a study of the grand jury forepersons chosen by judges in Hamilton County Ohio from 1982 through 1998. In Hamilton County, the presiding judges were personally selecting grand jury forepersons from outside of the grand jury venire.

Affidavit of Diane Wiley – 14 June 2000                                                Page 6

Exhibit 1 to the Petition for Habeas Corpus
6 of 17

The purpose of the study was to evaluate whether or not the forepersons of the Hamilton County Grand Juries which returned death penalty indictments from 1982 to 1998 were representative of the population of African Americans in Hamilton County during that time period. I also looked at the percentage of women forepersons.

I found that African Americans were under represented by seventy-five percent and women were under represented by fifty percent. I also found there to be a number of persons who were chosen to be grand jury foreperson more than once. Given the large population of Hamilton County, the number of repeats would be unusual if a random process were used, and these were all white, primarily male forepersons.

Because there is only one foreperson on each grand jury, it is necessary to survey a large number of grand juries to determine if there is a statistically significant underrepresentation of any cognitive group.

Further affiant saith not.

_____
Diane Wiley

Sworn to and subscribed to before me this 14th day of June, 2000.

_____
Notary Public



Affidavit of Diane Wiley - 14 June 2000                                              Page 7

Exhibit 1 to the Petition for Habeas Corpus
7 of 17

JUN-15-2000 14:36    STATE OF OHIO                614 728 3670   P.23/31

*Appendix I*

# Qualifications of Diane Wiley

Exhibit 1 to the Petition for Habeas Corpus
8 of 17

JUN-15-2000 14:36          STATE OF OHIO                              614 728 3670    P.24/31

# Diane Wiley
*Trial Consultant*

Diane Wiley is the president of the National Jury Project Midwest, located at 322 First Avenue North, Suite 500, Minneapolis, Minnesota 55401. The National Jury Project is a non-profit corporation specializing in the study of the American jury system. The National Jury Project is incorporated in the State of Minnesota and has regional offices in New York, New York; Oakland, California; and Minneapolis, Minnesota. Primary areas of research include voir dire procedures, the trial communication process, jury composition, venue evaluation, and other issues related to minimizing the effects of juror bias on the trial process.

National Jury Project researchers have conducted and analyzed interviews with jurors and persons included in jury pools in both state and federal jurisdictions all over the United States.

Ms. Wiley is a founding member of the National Jury Project, and has been employed as a trial consultant since its inception in 1975. She began her research of the jury system as an independent researcher in 1973. Ms. Wiley's prior research experience was in the area of attitudes towards criminal justice, evaluation of programs for juvenile and adult offenders, and community attitudes towards housing developments for the Minnesota Center for Sociological Research, The Governor's Task Force for Victims of Sexual Assault, and The Law Enforcement Assistance Agency (LEAA) Juvenile Justice Project, among others.

Ms. Wiley has supervised, administered and/or consulted on venue evaluation studies in the following cases:

| Case | Location |
|---|---|
| *State of North Carolina v. Little* | Beaufort County, 1975 |
| *State of Wisconsin v. Sturdevant* | Dodge County, 1975 |
| *State of Pennsylvania v. Arms* | Berks County, 1975 |
| *State of Minnesota v. Davis* CR #763 | Beltrami County, 1976 |
| *United States v. Butler and Robideau* CR #75-5106-2,3 | District of South Dakota, Western Division, 1976 |
| *State of Oklahoma v. McCoy* #F-74-254 | Pittsburgh County, 1976 |

Exhibit 1 to the Petition for Habeas Corpus
9 of 17

| | |
|---|---|
| *State of Nebraska v. Yellowbird* #C-1470-71 | Sheridan County, 1976 |
| *State of South Dakota v. Martin* #77-75 | Pennington County, 1977 |
| *State of Michigan v. Smith* #416 | Kalkaska County, 1978 |
| *State of Minnesota v. Caldwell* #49633 | St. Louis County, 1979 |
| *State of South Dakota v. Bettelyoun* #78-58 | Jackson County, 1979 |
| *Schwans v. BASF-AG, et al* #16843 | Lyon County, Minnesota, 1979 |
| *State of Minnesota v. Johnson* #2064 | Faribault County, 1979 |
| *State of Illinois v. Perez, Santiago, et al* #79-CF326 | Livingston County, 1979 |
| *State of Ohio v. Kilroy* CR9-33B | Putnam County, 1980 |
| *State of Minnesota v. Blanchard* #2959 | Becker County, 1980 |
| *State of Wisconsin v. Grancorwitz* 80-CR-395 | Vernon County, 1980 |
| *Kobes v. St. Joseph's Hospital, et al* #39513 | Crow Wing County, Minnesota, 1980 |
| *State of Minnesota v. Marhoun* | Chisago County, 1980 |
| *State of Wisconsin v. Scherer* #80-CR-3174 | Burnett County, 1981 |
| *Gauthier v. Strouth, et al* | St. Louis County, Minnesota, 1981 |
| *Wayne Bohlke v. Estate of John Ayers and City of Le Sueur* | Blue Earth County, Minnesota, 1981 |
| *State of Minnesota v. Sprague* #4458 | Washington County, 1981 |
| *State of South Dakota v. Wellner & Wellner* #13533,34 | Hand County, 1981 |
| *State of Illinois v. Brisbane, et al* #80-CF-45 | Will County, 1981 |
| *State of Minnesota v. Koehler* | St. Louis County, 1982 |
| *Martell Mutual Town Insurance Company v. John J. Hines, et al* #80-CV-348 | St. Croix County, Minnesota, 1982 |

JUN-15-2000 14:37 STATE OF OHIO 614 728 3670 P.26/31

| | |
|---|---|
| *State of Nebraska v. Buckman and Janis* | Sheridan County, 1983 |
| *State of Minnesota v. Swanson* | Sherburne County, 1983 |
| *State of South Dakota v. Collins Catch the Bear* #82-207 | Pennington County, 1983 |
| *State of Minnesota v. Tisland* #K1-83-813 | Beltrami County, 1984 |
| *State of Minnesota v. Foss* | Kandiyohi County, 1984 |
| *United States v. Elder* B-84-276-SI | Southern District of Texas, Corpus Christi Division, 1984 |
| *United States v. Elder and Merkt* #B-84-746-SI | Southern District of Texas, Brownsville Division, 1985 |
| *State of Minnesota v. Thom* #10128 | Kanabec County, 1985 |
| *Nygaard v. Mayo Clinic* #44587 | Olmsted County, Minnesota, 1985 |
| *United States v. Merkt* B-85-SI | Southern District of Texas, Corpus Christi Division, 1986 |
| *State of Ohio v. Warner, et al* B854622 | Hamilton County, 1986 |
| *State of Minnesota v. Curt Gruhl* #4656 | Goodhue County, 1986 |
| *State of Minnesota v. Richards* | Hennepin County, 1987 |
| *State of Minnesota v. Israelson* #K-88-1162 | Rice County, 1988 |
| *State of Minnesota v. Manning* #K6-89-129 | Itasca County, 1989 |
| *State of Minnesota v. Doty* #T4-91-508 | Dodge County, 1991 |
| *Chladek v. Independent School District 205, et al* | Dodge County, Minnesota, 1991 |
| *Adkins v. Tolfree Memorial Hospital, et al* #90 1342 NH | Ogemaw County, Michigan, 1992 |
| *State of Nebraska v. Frances Thompson* #11818 | Knox County, 1992 |
| *State of Minnesota v. Calvin Jones* No. K0-95-217 | Chisago County, 1995 |
| *State of Minnesota v. Darrell Johnson* No. K2-95-218 | Chisago County, 1996 |
| *State of Minnesota v. Adrian Riley* No. K8-95-827 | Carver County, 1996 |

National Jury Project/Midwest　　　　　　　　　　　　　　　　　　　　　　　　Page 3

Exhibit 1 to the Petition for Habeas Corpus
11 of 17

| | |
|---|---|
| *State of Minnesota v.* | |
| *Olumuyiwa Shakirudee Akinosi* | Dakota County, 1996 |
| No. K6-96-1614 | |
| *State of Tennessee v.* | |
| *Charles Edward Hartman* | Davidson County, 1997 |
| No. 20101 | |
| *State of Minnesota v.* | |
| *Joseph Ture* | Washington County, 1997 |
| No. K6-96-6329 | |
| *Martinez v.* | |
| *Lincoln County Medical Center, et al* | Lincoln County, North Carolina 1998 |
| *State of Iowa v.* | |
| *Randy Zaabal* | Brown County, 1999 |
| No. FECR-311701 | |

The National Jury Project Midwest has been court appointed for the purposes of venue evaluation in *State of Minnesota v. Davis; State of South Dakota v. Martin; State of Illinois v. Brisbane; State of Minnesota v. Calvin Jones; and State of Tennessee v. Charles Edward Hartman.*

Ms. Wiley has consulted with attorneys in both state and federal jurisdictions in California, Colorado, District of Columbia, Georgia, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Massachusetts, Michigan, Minnesota, Missouri, Nebraska, New Jersey, New York, North Dakota, Ohio, Oklahoma, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Washington and Wisconsin, in regards to voir dire procedures designed to reduce the effects of prejudice in both criminal and civil cases.

She has testified or submitted affidavits in 33 venue hearings for change of venue, including two appeal hearings. She testified in the hearing for a new trial based on incompetence of counsel relating to inadequate voir dire in *Michigan v. LeBlanc*.

Ms. Wiley has supervised research and/or submitted affidavits in a number of cases involving evaluation of the composition of jury venires.

Ms. Wiley has provided in-court jury selection consultation and/or has prepared voir dire questions in hundreds of criminal and civil cases since 1973.

Ms. Wiley is a co-author of the manual, Jurywork: Systematic Techniques, published by the National Jury Project in 1978, and also of the second edition of this manual, published by West Group. She is a contributing editor and co-author of the book, Women's Self Defense Cases: Theory and Practice, published by the Michie Company. Ms. Wiley is a contributing author of the book, Handbook of Jury Research, published by ALI-ABA Philadelphia in 1998 and Minnesota Criminal Jury Trial Handbook, published by Butterworths. She has written other materials and articles for legal publications and seminar materials.

Ms. Wiley regularly lectures at seminars and conferences on voir dire, case presentation issues and jury selection for organizations such as State and Federal Public Defender Associations, Bar Associations, Trial Lawyers Associations, Legal Services, the National Women and Law Conference, the National Association of Teacher Attorneys, and for Continuing Legal Education Programs sponsored by law schools and other organizations.

*Appendix II*

Census Data:

Trumbull County, Ohio

1990

Exhibit 1 to the Petition for Habeas Corpus
14 of 17

```
JUN-15-2000  14:38        STATE OF OHIO                   614 728 3670   P.30/31
```

990 Census Of Population And Housing Summary Tape File 3C

   040 Ohio
   050 Trumbull County

AGE
Universe: Persons

```
Under 1 year...................................................... 2,638
1 and 2 years..................................................... 6,462
3 and 4 years..................................................... 6,357
5 years........................................................... 3,293
6 years........................................................... 2,875
7 to 9 years...................................................... 9,828
10 and 11 years................................................... 6,733
12 and 13 years................................................... 5,926
14 years.......................................................... 3,183
15 years.......................................................... 3,624
16 years.......................................................... 3,229
17 years.......................................................... 3,556
18 years.......................................................... 3,069
19 years.......................................................... 2,973
20 years.......................................................... 2,911
21 years.......................................................... 2,843
22 to 24 years.................................................... 8,491
25 to 29 years.................................................... 15,815
30 to 34 years.................................................... 17,941
35 to 39 years.................................................... 18,179
40 to 44 years.................................................... 16,881
45 to 49 years.................................................... 13,107
50 to 54 years.................................................... 11,925
55 to 59 years.................................................... 11,029
60 and 61 years................................................... 4,835
62 to 64 years.................................................... 7,212
65 to 69 years.................................................... 11,492
70 to 74 years.................................................... 9,351
75 to 79 years.................................................... 6,125
80 to 84 years.................................................... 3,335
85 years and over................................................. 2,595
```

Exhibit 1 to the Petition for Habeas Corpus
15 of 17

```
JUN-15-2000  14:38        STATE OF OHIO              614 728 3670  P.31/31
```

1990 Census Of Population And Housing Summary Tape File 3C

   040 Ohio
   050 Trumbull County

AGE BY SEX BY AGE
Universe: Black males

```
Under 1 year...................................................... 175
1 and 2 years..................................................... 287
3 and 4 years..................................................... 320
5 years........................................................... 155
6 years........................................................... 160
7 to 9 years...................................................... 397
10 and 11 years................................................... 268
12 and 13 years................................................... 235
14 years.......................................................... 180
15 years.......................................................... 125
16 years.......................................................... 160
17 years.......................................................... 182
18 years.......................................................... 138
19 years..........................................................  64
20 years..........................................................  94
21 years..........................................................  90
22 to 24 years.................................................... 208
25 to 29 years.................................................... 386
30 to 34 years.................................................... 608
35 to 39 years.................................................... 496
40 to 44 years.................................................... 346
45 to 49 years.................................................... 382
50 to 54 years.................................................... 335
55 to 59 years.................................................... 290
60 and 61 years................................................... 138
62 to 64 years.................................................... 148
65 to 69 years.................................................... 206
70 to 74 years.................................................... 181
75 to 79 years....................................................  85
80 to 84 years.................................................... 133
85 years and over.................................................  24
```

TOTAL P.31

Exhibit 1 to the Petition for Habeas Corpus
16 of 17

JUN-15-2000 14:51   STATE OF OHIO                614 728 3670   P.02/32

'90 Census Of Population And Housing Summary Tape File 3C

040 Ohio
050 Trumbull County

\CE BY SEX BY AGE
iiverse: Black females

```
 ider 1 year.....................................................     60
  and 2 years...................................................    308
  and 4 years...................................................    326
    years......................................................    162
    years......................................................    120
  to 9 years...................................................    426
 0 and 11 years................................................    228
 2 and 13 years................................................    291
 4 years.......................................................    114
 5 years.......................................................    127
 6 years.......................................................    111
 7 years.......................................................    229
 8 years.......................................................    184
 9 years.......................................................     99
10 years.......................................................    110
11 years.......................................................    115
12 to 24 years.................................................    336
15 to 29 years.................................................    519
10 to 34 years.................................................    629
35 to 39 years.................................................    619
10 to 44 years.................................................    554
15 to 49 years.................................................    460
50 to 54 years.................................................    399
55 to 59 years.................................................    366
60 and 61 years................................................    147
62 to 64 years.................................................    236
65 to 69 years.................................................    331
70 to 74 years.................................................    248
75 to 79 years.................................................    154
80 to 84 years.................................................     98
85 years and over..............................................     77
```

Exhibit 1 to the Petition for Habeas Corpus
17 of 17