# T.  e Supreme Court of Ohio
## Case Docket

State of Ohio v. Donna Marie Roberts

| **Case Information** | Number | 2007-2288 |
|---|---|---|
| | Type | Death Penalty Case (offense committed on or after 1/1/95) |
| | Date Filed | 12/11/2007 |
| | Status | Disposed |
| | Prior Jurisdiction | Trumbull County, Court of Common Pleas |
| | Prior Decision Date | 11/06/2007 |
| | Prior Case Numbers | 01CR793 |

**Parties**

Donna Marie Roberts; Appellant
  *Represented by:*
    Doughten, David Lawrence (2847), Counsel of Record
    Dixon, Robert Aloysius (22466)

State of Ohio; Appellee
  *Represented by:*
    Watkins, Dennis (9949), Counsel of Record
    Annos, LuWayne (55651)

Office of Disciplinary Counsel; Non-Party
  *Represented by:*
    Berger Jr, Robert Ray (64922), Counsel of Record
    Coughlan, Jonathan Edward (26424)

**Docket**

| Date Filed | Description | Filed By |
|---|---|---|
| 12/11/2007 | Notice of appeal of Donna Marie Roberts | Appellant |
| 12/11/2007 | Copy of praecipe to court reporter | Appellant |
| 12/11/2007 | Case information statement | Appellant |
| 12/12/2007 | Copy of notice of appeal sent to clerk of court of common pleas | |
| 12/12/2007 | Order to clerk of court/custodian to certify record | |
| 12/31/2007 | Notice of appearance on non-party attorney on behalf of Office of Disciplinary Counsel | Non-Party |
| 12/31/2007 | Motion of Office of Disciplinary Counsel to unseal Sentencing Exhibit A. **03/13/08 Granted** | Non-Party |
| 02/29/2008 | Record (portions under seal) | |
| 02/29/2008 | Clerk's notice of filing of record | |
| 08/08/2008 | Stipulation to extension of time to file merit brief to 9/15/08 | Appellant |
| 08/08/2008 | Motion to consolidate case with 03-1441 **08/26/08 Denied** | Appellant |
| 09/15/2008 | Appellant's merit brief | Appellant |

| Date Filed | Description | Filed By |
|---|---|---|
| 09/15/2008 | Notice of appearance of Jeffrey J. Helmick | Appellant |
| 09/15/2008 | And designation as counsel of record | Appellant |
| 12/15/2008 | Appellee's merit brief | Appellee |
| 01/02/2009 | Reply brief | Appellant |
| 02/28/2013 | Oral argument scheduled for Tuesday, May 7, 2013 | |
| 03/01/2013 | Notice of oral argument to be held Tuesday, May 7, 2013 | |
| 03/11/2013 | Notice of substitution of counsel Robert A. Dixon for Jeffrey J. Helmick | Appellant |
| 05/07/2013 | Oral argument held | |
| 10/22/2013 | **DECISION: Vacated and remanded to the trial court for resentencing on the basis of the existing record. See opinion at 2013-Ohio-4580 (https://supremecourt.ohio.gov/rod/docs/pdf/0/2013/2013-ohio-4580.pdf).** | DISPOSITIVE |
| 10/22/2013 | Proof of mailing for David Lawrence Doughten | |
| 10/22/2013 | Proof of mailing for Dennis Watkins | |
| 10/22/2013 | Proof of mailing for Robert Ray Berger Jr. | |
| 10/28/2013 | Return receipt for David Lawrence Doughten | |
| 10/28/2013 | Return receipt for Dennis Watkins | |
| 11/04/2013 | Return receipt for Robert Ray Berger Jr. | |
| 11/08/2013 | Certified copy of judgment entry/mandate sent to clerk | |
| 11/15/2013 | Proof of mailing for Trumbull County Clerk of Courts | |
| 11/15/2013 | Proof of mailing for Cris Nash | |
| 11/15/2013 | Proof of mailing for Warden | |
| 11/15/2013 | Proof of mailing for Samuel Porter | |
| 11/19/2013 | Return receipt for Samuel Porter | |
| 11/20/2013 | Return receipt for Warden | |
| 11/21/2013 | Return receipt for Trumbull County Clerk of Courts | |
| 11/21/2013 | Return receipt for Cris Nash | |
| 12/31/2013 | Return of record to clerk of court/custodian | |
| 12/31/2013 | Return receipt | |
| 01/09/2014 | Application for attorney fees of Robert A. Dixon | |
| | **01/27/14 Granted in the amount of $1,623.84** | |
| 01/09/2014 | Personal Identifier Form - Application for Attorney Fees | |
| 01/10/2014 | Application for attorney fees of David L. Doughten | |
| | **01/27/14 Granted in the amount of $6,967.01** | |
| 01/10/2014 | Personal Identifier Form - Application for Attorney Fees | |
| 01/30/2014 | Notice of filing petition for certiorari in U.S.S.C. | |
| 03/26/2014 | Notice of U.S.S.C. denial of petition for writ of certiorari | |

End of Docket

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 1977

IN THE SUPREME COURT OF OHIO

No. **07-2288**

| | | |
|---|---|---|
| State of Ohio, | : | |
| | : | |
| Appellee, | : | On Appeal from the Trumbull |
| | : | County Court of Common Pleas |
| v. | : | Case No. 2001 CR 0793 |
| | : | |
| Donna Roberts, | : | **DEATH PENALTY APPEAL** |
| | : | |
| Appellant. | : | |

---

### NOTICE OF APPEAL OF APPELLANT DONNA ROBERTS

---



DENNIS WATKINS, ESQ.
Trumbull County Prosecutor
160 High Street
Warren, OH 44481
(330) 675-2426

DAVID L. DOUGHTEN, ESQ.
Regis No. 0002847
4403 St. Clair Avenue
Cleveland, Ohio 44103
(216) 361-1112

COUNSEL FOR APPELLEE

COUNSEL FOR APPELLANT

### Notice of Appeal of Appellant Donna Roberts

Now comes the appellant, Donna Roberts, and hereby gives Notice of Appeal to the Supreme Court of Ohio from a judgment of the Court of Common Pleas of Trumbull County journalized on November 6, 2007. The appellant is appealing her sentence of death pursuant to S.Ct. Prac. R. II. Section I, (C)(1) and is filed as a matter of right.

Respectfully submitted,

David L. Doughten
Counsel for Appellant

### Proof of Service

A copy of the foregoing Petitioner's Motion was served upon Dennis Watkins, Trumbull County Prosecutor and/ Christopher Becker, Esq. Assistant Trumbull County Prosecutor, Administration Building, 160 High Street, Warren, Ohio 44481, by Regular U. S. mail on this _10_ day of December, 2007.

DAVID L. DOUGHTEN

Counsel for Appellant

ii

IN THE COURT OF COMMON PLEAS
TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | ) | **CASE NO. 01-CR-793** |
| | ) | |
| Plaintiff | ) | **JUDGE JOHN M. STUARD** |
| | ) | |
| -vs- | ) | **DEATH PENALTY** |
| | ) | |
| DONNA MARIE ROBERTS, | ) | **SENTENCED TO OHIO** |
| INMATE #W055276 | ) | **REFORMATORY FOR WOMEN** |
| | ) | |
| Defendant | ) | **ENTRY ON RE-SENTENCE** |

On October 29, 2007, the Defendant having been brought into Court, and being fully advised in the premises and being represented by counsel, Attorney David L. Doughten and Attorney Robert A. Dixon, and the State of Ohio being represented by Assistant Prosecuting Attorney Christopher D. Becker and Assistant Prosecuting Attorney Kenneth N. Bailey, for purposes of re-sentencing, pursuant a remand from the Ohio Supreme Court.

On 8th day of April, 2003, the Defendant was brought into Court for a trial before a petit jury and after due deliberation was found guilty on May 28, 2003 of Count One: Complicity to Commit Aggravated Murder (O.R.C. §§2923.03(A)(2), 2903.01(A) and 2941.14(C)) of Robert S. Fingerhut, with two (2) separate Specifications of Aggravating Circumstances, to wit: Specification No. 1: Aggravated Burglary (O.R.C. §2929.04(A)(7)), and Specification No. 2: Aggravated Robbery (O.R.C. §2929.04(A)(7)); Count Two: Complicity to Commit Aggravated Murder (O.R.C. §§ 2923.03(A)(2), 2903.01(B) and 2941.14(C)) of Robert S. Fingerhut, with two (2) separate Specifications of Aggravating Circumstances, to wit: Specification No. 1: Aggravated Burglary (O.R.C. §2929.04(A)(7)),

and Specification No. 2: Aggravated Robbery (O.R.C. 2929.04(A)(7)); Count Three: Complicity to Commit Aggravated Burglary (F1) With Firearm Specification (O.R.C. §2923.03(A)(2), 2911.11.(A)(1)(2) and 2941.145); and Count Four: Complicity to Commit Aggravated Robbery (F1) With Firearm Specification (O.R.C. §2923.03(A)(2), 2911.01(A)(1)(3) and 2941.145). Thereafter, Count Two was removed from the Jury pursuant to a Motion to Dismiss by the State.

On June 4, 2003, the Defendant having been brought into Court to give evidence in mitigation on Count One of the indictment, and after arguments of counsel and instructions of law, and after due deliberation, it was the finding and recommendation of the Jury on June 4, 2003, that the sentence of death be imposed on the Defendant. The original sentencing hearing was held on June 20, 2003.

On October 29, 2007, pursuant to the Ohio Supreme Court's opinion in State v. Roberts (2006) 110 Oh. St 3d 71, the Defendant's re-sentencing hearing was held and she was sentenced to Death on October 28, 2008 on Count One; and imprisoned therein for the stated prison term of ten (10) years on Count Three; plus a mandatory term of three (3) years on the Firearm Specification to be served prior to and consecutive to the sentence imposed in Count Three; ten (10) years on Count Four, plus a mandatory term of three (3) years on the Firearm Specification to be served prior to and consecutive to the sentence imposed in Count Four, sentence in Count Four to be served consecutively to the sentence imposed on Count Three. Firearm Specifications in Count Three and Count Four shall merge as one sentence in Count Three as a matter of law.

The Court further advised the Defendant of her right to appeal pursuant to Criminal Rule 32(B).

The OHIO REFORMATORY FOR WOMEN shall take note that the Defendant has been incarcerated in the Trumbull County Jail pursuant to these charges from December 21, 2001 to June 26, 2003, and in the Ohio Reformatory for Women from June 26, 2003 to date.

_11/6/07_
DATED

_[signature]_
HONORABLE JOHN M. STUARD
JUDGE, COURT OF COMMON PLEAS
TRUMBULL COUNTY, OHIO

**THE CLERK OF COURTS IS HEREBY ORDERED TO SERVE COPIES OF THIS ENTRY TO ALL COUNSEL OF RECORD AND THE BUREAU OF SENTENCE COMPUTATION, P. O. BOX 450, ORIENT, OHIO 43146.**

**You are hereby notified that you have been convicted of a felony of violence and pursuant to Section 2923.13 of the Ohio Revised Code, you are prohibited from acquiring, having, carrying or using any firearm or dangerous ordinance.**

**CAPITAL CASE PRAECIPE**

**IN THE SUPREME COURT OF OHIO**

# 07-2288

STATE OF OHIO,                    :          DATE OF OFFENSE: 12/11/2001

    Appellee,                       :          TRIAL COURT CASE NO: 2001 CR 793

    vs.                              :          DATE OF FINAL JUDGMENT IN
                                                TRIAL COURT: 11/06/07

DONNA ROBERTS,                    :          TRIAL COURT JUDGE: John M. Stuard

    Appellant.                      :          DATE OF RULING ON TIMELY
                                                MOTION FOR NEW TRIAL IN TRIAL
                                                COURT: N/A


**TO THE COURT REPORTER:**

    Immediately prepare a  transcript of all proceedings, including but not limited to
all pretrial hearings, motions hearings, in chambers conferences, trial phase
(including voir dire) proceedings, penalty phase proceedings and sentencing
proceedings, in conformance with S. Ct. Par. R XIX, §3, and deliver to the clerk
of the court of common pleas.

FILED
DEC 10 2007
CLERK OF COURT
SUPREME COURT OF OHIO

DAVID L. DOUGHTEN (#0002847)
4403 St. Clair Avenue
Cleveland, OH 44103
(216) 361-1112

    I further certify that a true copy of the foregoing Capital Case Praecipe was served upon

all other parties in comliance with S. Ct. R. XIX, Section 1(B) on this ___10___ day of December,

2007.

FILED
DEC 11 2007
CLERK OF COURT
SUPREME COURT OF OHIO

DAVID L. DOUGHTEN

# In The Supreme Court of Ohio

## Case Information Statement

**07-2288**

**Case Name:** Donna Roberts          **Case No.**

I.    **Has this case previously been decided or remanded by this court?** Yes ☒ No ☐

    If so, please provide the Case Name: ___Ohio v. Roberts___

                                 Case No.:_____

                                 Any Citation: __110 Ohio St.3d 71 (2006), 2006 Ohio 3665.__

II.   **Will the determination of this case involve the interpretation or application of any particular case decided by the Supreme Court of Ohio or the Supreme Court of the United States?**          Yes ☐ No ☐

    Eddings v. Oklahoma, 455 U.S. 104 (1982), Hitchcock v. Dugger, 107 S.Ct. 1821 (1987)

    **Will the determination of this case involve the interpretation or application of any particular constitutional provision, statute, or rule of court?** Yes ☐ No ☐

    If so, please provide the appropriate citation to the constitutional provision, statute, or court rule, as follows:

    **U.S. Constitution:** 8th and 14th Amend     **Ohio Revised Code:** _____
    **Ohio Constitution:** Article _____, Section _____     **Court Rule:** _____
    **United States Code:** Title _____, Section _____     **Ohio Admin. Code:** _____

FILED
DEC 11 2007
CLERK OF COURT
SUPREME COURT OF OHIO

III.  **Indicate up to three primary areas or topics of law involved in this proceeding (e.g., jury instructions, UM/UIM, search and seizure, etc.):**

    1) _On a remand for a new sentencing and alocution of a capital defendant, must the trial court consider mitigation adduce from the defendant's original sentence?_

    2) _On remand for a new sentencing hearing, must the trial court consider and give effect to mitigation evidence available but not produced at the original penalty phase proceeding?_

    3)_____

IV.   **Are you aware of any case now pending or about to be brought before this Court that involves an issue substantially the same as, similar to, or related to an issue in this case?** Yes ☐ No ☒

If so, please identify the Case Name: _____
Case No.: _____
Court where Currently Pending: _____
Issue: _____

## Contact information for appellant or counsel:

| David L. Doughten | 0001847 | | (216) 361-1112 | (216) 881-3928 |
|---|---|---|---|---|
| Name | Atty. Reg. # | | Telephone # | Fax # |

| 4403 St. Clair Avenue | |
|---|---|
| Address | |

Signature of appellant or counsel

| Cleveland | OH | 44113-1125 |
|---|---|---|
| City | State | Zip Code |

Counsel for:  Donna Roberts

# The Supreme Court of Ohio

FILED

DEC 1 2 2007

CLERK OF COURT
SUPREME COURT OF OHIO

To the Clerk of Court of Common Pleas for

Trumbull _____ County,

Warren _____, Ohio

ORDER TO CERTIFY RECORD
IN DEATH PENALTY CASE

S.C. Case No. _____ 07-2288 _____

C.P. Case No. _____ 01CR793 _____

State of Ohio _____

v.

Donna Marie Roberts _____

You are hereby ORDERED, pursuant to Rule XIX, Section 4, of the Rules of Practice of the Supreme Court of Ohio, to prepare and forward the record in the above-captioned case to the Clerk's Office of the Supreme Court, no later than February 11, 2008, unless the Supreme Court grants an extension of time under Rule XIX, Section 4(C)(1).

Pursuant to Rule XIX, Section 3(A), the record shall consist of the following:

- The original papers filed in the trial court and exhibits to those papers;

- The transcript of proceedings, including all exhibits, and computer diskettes of the transcript, if available; and

- A certified copy of the docket and journal entries prepared by the clerk of the trial court.

You are further ORDERED, pursuant to Rule XIX, Section 4(B)(1), to number the documents and exhibits comprising the record; to prepare an index of the documents and exhibits, correspondingly numbered and identified with reasonable definiteness; to briefly describe all exhibits listed in the index; and to send a copy of the index to all counsel of record in the case and transmit the index with the record to the Clerk of the Supreme Court.

THOMAS J. MOYER
Chief Justice

# IN THE SUPREME COURT OF OHIO

|  |  |  |
|---|---|---|
| **State of Ohio** | : | |
| **Plaintiff,** | : | |
| | : | |
| | : | **Case No. 2007-2288** |
| | : | **DEATH PENALTY APPEAL** |
| | | On appeal from the Trumbull |
| | : | County Court of Common Pleas |
| **Donna Marie Roberts** | | Case No. 2001 CR 0793 |
| | : | |
| **Defendant.** | | |
| | : | |

---

## NOTICE OF APPEARANCE OF NON-PARTY
## ATTORNEY ON BEHALF OF OFFICE OF DISCIPLINARY COUNSEL

---

**DENNIS WATKINS (0009949)**
Counsel for Appellee
Trumbull County Prosecutor
160 High Street N.W.
Warren, OH 44481

**DAVID L. DOUGHTEN (0002847)**
Counsel for Appellant
4403 Saint Clair Avenue
Cleveland, OH 44103



FILED

DEC 3 1 2007

CLERK OF COURT
SUPREME COURT OF OHIO

IN THE SUPREME COURT OF OHIO

|  |  |  |
|---|---|---|
| State of Ohio | : | |
| Plaintiff, | : | |
| | : | |
| | : | **Case No. 2007-2288** |
| | : | **DEATH PENALTY APPEAL** |
| | : | On appeal from the Trumbull County Court of Common Pleas |
| Donna Marie Roberts | : | Case No. 2001 CR 0793 |
| Defendant. | : | |
| | : | |

## NOTICE OF APPEARANCE OF NON-PARTY
## ATTORNEY ON BEHALF OF OFFICE OF DISCIPLINARY COUNSEL

Now comes the Disciplinary Counsel of the Supreme Court of Ohio and hereby provides

notice to the Supreme Court of Ohio of the appearance of non-party attorney Robert R. Berger

on behalf of Office of Disciplinary Counsel in the above-named case.

Respectfully submitted,

_Jonathan Coughlan (by LB_
_0040142)_
Jonathan E. Coughlan (0026424)
Disciplinary Counsel

_Robert R. Berger_
Robert R. Berger (0064922)
Counsel of Record
Office of Disciplinary Counsel
250 Civic Center Drive, Suite 325
Columbus, Ohio 43215-5454
614-461-0256

2

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Notice of Appearance of Non-Party Attorney on Behalf of Office of Disciplinary Counsel was served via U.S. Mail, postage prepaid, this 31 day, of December, 2007, upon Trumbull County Prosecutor Dennis Watkins, Trumbull County Prosecutor's Office, 160 High Street N.W., Warren, OH 44481, Counsel for Donna Roberts, David Doughten, 4403 Saint Clair Avenue, Cleveland, OH 44103, Counsel for Respondent's Bailey and Becker, Geoffrey Stern, Esq., Kegler Brown Hill & Ritter, Capitol Square, Suite 1800, 65 East State Street, Columbus, OH 43215-4294, Counsel for Respondent Stuard, Charles L. Richards, The First Place, Suite 300, 159 East Market Street, Warren, OH 44481-1112.

Robert R. Berger
Counsel for Relator

3

## IN THE SUPREME COURT OF OHIO

|  |  |  |
|---|---|---|
| | : | |
| **State of Ohio** | : | |
| **Plaintiff,** | : | |
| | : | **Case No. 2007-2288** |
| | : | **DEATH PENALTY APPEAL** |
| | | On appeal from the Trumbull |
| | : | County Court of Common Pleas |
| **Donna Marie Roberts** | | Case No. 2001 CR 0793 |
| | : | |
| **Defendant.** | : | |
| | : | |

---

### OFFICE OF DISCIPLINARY COUNSEL'S
### MOTION TO UNSEAL EXHIBIT

---

**DENNIS WATKINS** (0009949)
Counsel for Appellee
Trumbull County Prosecutor
160 High Street N.W.
Warren, OH 44481

**DAVID L. DOUGHTEN (0002847)**
Counsel for Appellant
4403 Saint Clair Avenue
Cleveland, OH 44103



FILED

DEC 3 1 2007

CLERK OF COURT
SUPREME COURT OF OHIO

# IN THE SUPREME COURT OF OHIO

|  |  |  |
|---|---|---|
|  | : |  |
| **State of Ohio** | : |  |
| **Plaintiff,** | : |  |
|  | : | **Case No. 2007-2288** |
|  | : | **DEATH PENALTY APPEAL** |
|  |  | On appeal from the Trumbull |
|  | : | County Court of Common Pleas |
| **Donna Marie Roberts** |  | Case No. 2001 CR 0793 |
|  | : |  |
| **Defendant.** | : |  |
|  | : |  |

## OFFICE OF DISCIPLINARY COUNSEL'S
## MOTION TO UNSEAL EXHIBIT

Now comes the Disciplinary Counsel of the Supreme Court of Ohio and hereby moves the Supreme Court of Ohio for an order unsealing "Sentencing Exhibit A" in the above-named case.

On October 8, 2007 the Board of Commissioners on Grievances and Discipline (Board) certified a disciplinary complaint against Attorney's Kenneth N. Bailey and Christopher D. Becker and a second disciplinary complaint against Judge John M. Stuard. The two complaints charge Bailey, Becker and Judge Stuard with engaging in improper ex parte communications with each other related to the creation of the June 20, 2003 sentencing entry for Defendant

1

Donna Roberts. These disciplinary complaints have been consolidated and are currently pending before the Board.

On June 20, 2003, Judge Stuard sentenced Roberts to death as well as two consecutive 10-year sentences for the aggravated robbery and aggravated burglary convictions. At the sentencing hearing, Judge Stuard read aloud his sentencing opinion. As Judge Stuard was doing so, Roberts' Defense Counsel J. Gerald Ingram, noticed that Bailey was also looking at a document. Ingram further noted that Bailey appeared to be reading along with Judge Stuard and that Judge Stuard and Bailey were turning pages in unison.

After Judge Stuard finished reading his sentencing opinion, Ingram raised a "vehement" objection to Bailey and/or Becker's apparent ex parte involvement with the sentencing opinion. During the on-the-record discussion that followed, Judge Stuard admitted that he had given handwritten notes to the Bailey and/or Becker and instructed them to draft the sentencing entry. The transcript from this proceeding indicates that on June 20, 2003, Ingram requested and the trial court ordered that the sentencing-related documents in the possession of Bailey be marked as "Sentencing Exhibit A" and entered into evidence. [A copy of the transcript of these proceedings is attached as Exhibit A]. These sentencing-related documents were then sealed and made a part of the appellate record at the request of Ingram.

In the pending disciplinary matter, the key issue is what communications took place between Bailey, Becker and Judge Stuard and whether these communications constitute an improper ex parte communication. The Office of Disciplinary Counsel has previously been advised by counsel for Bailey, Becker and Judge Stuard that the only documentary evidence in

2

their possession regarding the communications between the three of them is the final, journalized

Roberts sentencing entry.  Because the currently sealed "Sentencing Exhibit A" represents

contemporaneous documentation regarding the communications between Bailey, Becker and

Judge Stuard and because this documentation is clearly relevant to the currently pending

disciplinary proceedings, The Office of Disciplinary Counsel requests that "Sentencing Exhibit

A" be unsealed by this court and copies provided to The Office of Disciplinary Counsel and legal

counsel for Bailey, Becker and Judge Stuard.

## CONCLUSION

For the reasons stated above, relator respectfully requests this Honorable Court unseal

"Sentencing Exhibit A" and provide copies to all parties to the pending disciplinary proceedings.

Respectfully submitted,

Jonathan E. Coughlan (0026424)
Disciplinary Counsel

Robert R. Berger (0064922)
Assistant Disciplinary Counsel
250 Civic Center Drive, Suite 325
Columbus, Ohio 43215-5454
614-461-0256

3

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Office of Disciplinary Counsel's Motion to Unseal Exhibit was served via U.S. Mail, postage prepaid, this $\underline{3\backslash}$ day, of $\underline{\text{December}}$ , $\underline{2007}$, upon Trumbull County Prosecutor Dennis Watkins, Trumbull County Prosecutor's Office, 160 High Street N.W., Warren, OH 44481, Counsel for Donna Roberts, David Doughten, 4403 Saint Clair Avenue, Cleveland, OH 44103, Counsel for Respondent's Bailey and Becker, Geoffrey Stern, Esq., Kegler Brown Hill & Ritter, Capitol Square, Suite 1800, 65 East State Street, Columbus, OH 43215-4294, Counsel for Respondent Stuard, Charles L. Richards, The First Place, Suite 300, 159 East Market Street, Warren, OH 44481-1112.

Robert R. Berger
Counsel for Relator

Attachment not scanned

State of Ohio                                 Case No. 2007-2288

    v.                                    E N T R Y

Donna Marie Roberts

    This cause is pending before the Court as a death penalty appeal from the Court of
Common Pleas for Trumbull County.  Upon consideration of the motion of the Office of
Disciplinary Counsel to unseal Sentencing Exhibit A,

    It is ordered by the Court that the motion is granted.

    (Trumbull County Court of Common Pleas; No. 01CR793)


_____
THOMAS J. MOYER
Chief Justice

IN THE SUPREME COURT OF OHIO

STATE OF OHIO                     :     Case No.  2007-2288
                                  :
    Plaintiff-Appellee         :
                                  :
  -vs-                          :
                                  :
DONNA ROBERTS                     :     <u>MOTION FOR EXTENSION OF</u>
                                  :     <u>TIME TO FILE BRIEF ON</u>
                                  :     <u>THE MERITS</u>
    Defendant-Appellant        :
                                  :

COUNSEL FOR APPELLEE:

DENNIS WATKINS, ESQ.
Trumbull County Prosecutor
Administration Building, 4th Floor
160 High Street
Warren, OH  44481
(330) 675-2426

LuWayne Annos
Assistant Trumbull County Prosecutor

COUNSEL FOR APPELLANT

DAVID L. DOUGHTEN, ESQ.
Regis. No. 0002847
4403 St. Clair Avenue
Cleveland, OH 44103-1125
(216) 361-1112

JEFFREY J. HELMICK
Regis. No. 0040197
1119 Adams Street
Toledo, Ohio 43604-5508
(419 243-3800

IN THE SUPREME COURT OF OHIO

| | | |
|---|---|---|
| STATE OF OHIO | : | Case No. 2007-2288 |
| | : | |
|     Plaintiff-Appellee | : | |
| | : | |
|   -vs- | : | |
| | : | |
| DONNA ROBERTS | : | **MOTION FOR EXTENSION OF** |
| | : | **TIME TO FILE BRIEF ON** |
| | : | **THE MERITS-STIPULATION** |
|     Defendant-Appellant | : | |
| | : | |

Now comes the appellant, Donna Roberts, by and through undersigned counsel and, pursuant to Ohio Supreme Court Rule of Practice XIV, Section 3(B)(2), requests that this Honorable Court extend the time for filing the Appellant's Brief on the Merits for twenty days until September 15, 2008, for the reasons set forth in the attached Stipulation.

Respectfully submitted,

_____

DAVID L. DOUGHTEN
JEFFREY J. HELMICK

Counsel for Appellant

## CERTIFICATE OF SERVICE

A copy of the foregoing appellant's Motion for Extension - Stipulation was served upon

Dennis Watkins, Trumbull County Prosecutor and/or LuWayne Annos, Esq. Assistant Trumbull

County Prosecutor, Administration Building, 160 High Street, Warren, Ohio 44481, by Regular

U. S. mail on this  6th  of August, 2008.

DAVID L. DOUGHTEN
Counsel for Appellant

## STIPULATION

Undersigned counsel agree that the appellant may extend the filing date for the

preparation of her merit brief for twenty days until September 15, 2008, as permitted by Rule

XIV, section 3(B)(2)(a) of the Rules of Practice of the Ohio Supreme Court.


LuWayne Annos                          David L. Doughten
Asst. Trumbull County Prosecutor       Counsel for Appellant
(Per conversation of
August 5, 2008)

IN THE SUPREME COURT OF OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | Case No. 2007-2288 |
| | : | |
| Plaintiff-Appellee, | : | |
| | : | DEATH PENALTY APPEAL |
| -vs- | : | |
| | : | |
| DONNA ROBERTS, | : | **MOTION TO CONSOLIDATE** |
| | : | **WITH PREVIOUS SUPREME** |
| | : | **COURT APPEAL** |
| Defendant-Appellant. | : | |
| | : | |

FILED

AUG 0 8 2008

CLERK OF COURT
SUPREME COURT OF OHIO

COUNSEL FOR APPELLEE:

DENNIS WATKINS, ESQ.
Trumbull County Prosecutor
Administration Building, 4th Floor
160 High Street
Warren, OH 44481
(330) 675-2426

LuWayne Annos
Assistant Trumbull County Prosecutor

COUNSEL FOR APPELLANT

DAVID L. DOUGHTEN, ESQ.
Regis. No. 0002847
4403 St. Clair Avenue
Cleveland, OH 44103-1125
(216) 361-1112

JEFFREY J. HELMICK
Regis. No. 0040197
1119 Adams Street
Toledo, Ohio 43604-5508
(419 243-3800

IN THE SUPREME COURT OF OHIO

| | | |
|---|---|---|
| STATE OF OHIO | : | Case No. 2007-2288 |
| | : | |
| Plaintiff-Appellee | : | |
| | : | DEATH PENALTY APPEAL |
| -vs- | : | |
| | : | |
| DONNA ROBERTS | : | MOTION FOR EXTENSION OF |
| | : | TIME TO FILE BRIEF ON |
| | : | THE MERITS-STIPULATION |
| Defendant-Appellant | : | |
| | : | |

Now comes the appellant, Donna Roberts, by and through undersigned counsel and, and

requests that the above captioned case be consolidated with State v. Roberts, S.Ct. Case No. 03-

1441.  The reasons for this request are set forth in the attached memorandum in support.

Respectfully submitted,

DAVID L. DOUGHTEN
JEFFREY J. HELMICK

Counsel for Appellant

## <u>CERTIFICATE OF SERVICE</u>

A copy of the foregoing appellant's MOTION TO CONSOLIDATE  was served upon

Dennis Watkins, Trumbull County Prosecutor and/or LuWayne Annos, Esq. Assistant Trumbull

County Prosecutor, Administration Building, 160 High Street, Warren, Ohio 44481, by Regular

U. S. mail on this  6th  of August, 2008.

DAVID L. DOUGHTEN
Counsel for Appellant

## MEMORANDUM IN SUPPORT

On June 20, 2003, Judge Stuard of the Trumbull County Common Pleas Coourt filed his Opinion pursuant to Ohio Rev. Code Ann. Section 2929.03(F), sentencing Donna Roberts to death. Subsequently, Roberts pursued relief from his convictions and sentences before this Court. This Court reversed her death sentence and remanded his case to the trial court for further proceedings. State v. Roberts (2006), 110 Ohio St. 3d 71, 2006 Ohio 3665.

On October 22, 2007, Judge Stuard held a sentencing hearing. On October 29, 2007, Judge Stuard filed his Opinion pursuant to Ohio Rev. Code Ann. Section 2929.03(F), again sentencing Roberts to death. Roberts has filed a Notice of Appeal from that sentence with this Court and been assigned the above case number. Roberts now requests that this appeals be consolidated with the Courts previous appeal, Case No. 03-1441, for review in this Court.

The appropriateness of Roberts's death sentence is presented in both appeals. As this Court did not address the appropriate of sentence on the former appeal due to the reversal of the sentence, it must now address the issue. Judicial economy would be served by consolidation of these cases allowing this Court to examine all aspects of Campbell's death sentence in a single appeal. In addition, in order for the Court to review the full record to determine the issues and to ensure Robert's right to effective assistance of direct appeal counsel, the complete record must be file with the court.

Wherefore, Roberts requests that this appeal be consolidated with the appeal in Case No. 03-1441.

Respectfully submitted,

David L. Doughten
Jeffrey J. Helmick

State of Ohio                                    Case No. 2007-2288

    v.                                           E N T R Y

Donna Marie Roberts

    This cause is pending before the Court as a death penalty appeal from the Court of Common Pleas for Trumbull County.  Upon consideration of appellant's motion to consolidate this case with Supreme Court Case No. 2003-1441,

    It is ordered by the Court that the motion is denied.

    (Trumbull County Court of Common Pleas; No. 01CR793)


_____
THOMAS J. MOYER
Chief Justice

# IN THE SUPREME COURT OF OHIO

| | | |
|---|---|---|
| State of Ohio, | : | |
| | : | |
| **Plaintiff - Appellee,** | : | **CASE NO. 07-2288** |
| | : | |
| v. | : | |
| | : | |
| Donna Roberts, | : | |
| | : | |
| **Defendant - Appellant.** | : | |
| | : | **CAPITAL CASE** |
| | : | |

---

## MERIT BRIEF OF APPELLANT, DONNA ROBERTS

FILED

SEP 15 2008

CLERK OF COURT
SUPREME COURT OF OHIO

---

**COUNSEL FOR APPELLEE:**

DENNIS WATKIND 0009949
Trumbull County Prosecutor
4th Floor Administration Building
160 High Street NW
Warren OH 44481
(330) 675-2426

LUWAYNE ANNOS - 0055651
Assistant Trumbull County Prosecutor

**COUNSEL FOR APPELLANT:**

DAVID L. DOUGHTEN
Regis. No. 0002847
4403 St. Clair Avenue
Cleveland, OH 44103-1125
(216) 361-1112

JEFFREY J. HELMICK
Regis. No. 0040197
1119 Adams Street, 2nd Floor
Toledo, OH 43604
(419) 243-3800

## TABLE OF CONTENTS

PAGES

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  vii

OVERVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

STATEMENT OF THE FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7


**Proposition of Law One:**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

> **Where a capital sentence is remanded for a new sentencing, the trial court must consider and give effect to all relevant evidence in mitigation available for consideration.  A remand to allow allocution does not prevent the sentencing court from considering evidence which would support and provide weight to the allocution.**

Authorities Relied Upon to Support Proposition of Law One

State v. Roberts 110 Ohio St. 3d 71, 2006-Ohio-3665 . . . . . . . . . . . . . . . . . . . . . . . 7, 8
Fifth Amendment to the United States Constitution . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
Sixth Amendment to the United States Constitution . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
Eighth Amendment to the United States Constitution . . . . . . . . . . . . . . . . . . . . . . . . 8. 9
Fourteenth Amendment to the United States Constitution . . . . . . . . . . . . . . . . . . . . . 8, 9
R.C. 2929.03(F) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
Lockett v. Ohio (1978), 438 U.S. 586 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10
Eddings v. Oklahoma (1982), 455 U.S. 104 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
Skipper v. South Carolina (1986), 476 U.S. 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
Hitchcock v. Dugger (1987), 107 S.Ct. 1821 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
McCleskey v. Kemp (1987), 481 U.S. 279 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
Penry v. Lynaugh (1989),492 U.S. 302 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
California v. Brown (1987), 479 U. S. 538 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
Davis v. Clark (C.A.6, 2007), 475 F.3d 761 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
Skipper v. South Carolina (1986), 476 U.S. 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
R.C. 2929.04(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
State v. Goff (1998), 82 Ohio St.3d 123 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

ii

State v. Lott, 97 Ohio St. 3d 303, 2002-Ohio-6625 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
State v. Evans (1992), 63 Ohio St. 3d 231 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
State v. Hill (1992), 64 Ohio St. 3d 313 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
State v. Green (1993), 66 Ohio St. 3d 141 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
State v. Murphy (1992), 65 Ohio St. 3d 554 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
State v. Webb (1994), 638 N.E.2d 1023 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**Proposition of Law Two:** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

> When considering the appropriate sentence in a capital trial, R.C. 2929.03(F)
> and the federal constitution require that the sentencing judge must consider
> and give effect to all presented evidence in mitigation.

Authorities Relied Upon to Support Proposition of Law Two

R.C. 2929.03(F) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 30
Eighth Amendment to the United States Constitution . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
Lockett v. Ohio (1978), 438 U.S. 586 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 30
Eddings v. Oklahoma (1982), 455 U.S. 104 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
Skipper v. South Carolina (1986), 476 U.S. 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
Hitchcock v. Dugger (1987), 107 S.Ct. 1821 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
McCleskey v. Kemp (1987), 481 U.S. 279 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
Penry v. Lynaugh (1989), 492 U.S. 302, 327-328 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

**Proposition of Law Three:** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

> In a capital case, the sentencing court may not consider non-statutory
> aggravating factors in the determination of the appropriate sentence.

Authorities Relied Upon to Support Proposition of Law Three:

Lockett v. Ohio (1978), 438 U.S. 586 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
State v. Johnson (1986), 24 Ohio St. 3d 87 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
State v. Wogenstahl, 75 Ohio St.3d 344, 356, 1996-Ohio-219 . . . . . . . . . . . . . . . . . . . . 34
State v. Williams, 99 Ohio St.3d 493, 2003-Ohio-493 . . . . . . . . . . . . . . . . . . . . . . . . . . 34
Barclay v. Florida (1983), 463 U.S. 939, rehearing denied, 464 U.S. 874 . . . . . . . . . . . 34
Espinosa v. Florida (1992), 505 U.S.1079, 1081 (per curium) . . . . . . . . . . . . . . . . . . . . 34
Gregg v. Georgia (1976), 428 U.S. 153 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
Stringer v. Black (1992), 503 U.S. 222 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
Boyde v. California (1990), 494 U.S. 370 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

**Proposition of Law Four** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

In a capital trial, where the death sentence is reversed for improper conduct by the sentencing judge, that judge must recuse himself from the resentencing hearing where an ethical investigation by the reviewing court is pending at the time of the hearing.

Authorities Relied Upon to Support Proposition of Law Four:

In re Disqualification of Calabrese (1991), 74 Ohio St.3d 1233 . . . . . . . . . . . . . . . . . . 35
In re Disqualification of McMonagle (1990), 74 Ohio St.3d 1226 . . . . . . . . . . . . . . . . 35
In re Disqualification of Corrigian (1989), 47 Ohio St.3d 602 . . . . . . . . . . . . . . . . . . 35
In re Disqualification of Nadel (1989), 47 Ohio St.3d 604 . . . . . . . . . . . . . . . . . . . . . 35
In re Disqualification of Nugent (1987), 47 Ohio St.3d 601 . . . . . . . . . . . . . . . . . . . . 35
In Re Disqualification of Celebrezze (1992), 74 Ohio St. 3d 1242 . . . . . . . . . . . . . . . 36
Fifth Amendment to the United States Constitution . . . . . . . . . . . . . . . . . . . . . . . . . . 37
Eighth Amendment to the United States Constitution . . . . . . . . . . . . . . . . . . . . . . . . . 37
Fourteenth Amendment to the United States Constitution . . . . . . . . . . . . . . . . . . . . . . 37

**Proposition of Law Five** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

The failure to fully investigate and present all possible evidence of mitigation in a capital trial constitutes ineffective assistance of penalty phase counsel where the investigation would have revealed substantial evidence calling for a sentence of less than death.

Authorities Relied Upon to Support Proposition of Law Five:

Powell v. Alabama (1932), 287 U.S. 45 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38
Wiggins v. Smith (2003), 539 U.S. 510 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39, 41
Strickland v. Washington (1984), 466 U.S. 668 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39
Johnson v. Zerbst (1938), 304 U.S. 458. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39
Terry Williams v. Taylor (2000), 529 U.S. 362 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40, 41
Frazier v. Huffman (C.A.6, 2003), 343 F.3d 780, *certiorari denied*, Huffman v. Frazier (2004), 541 U.S. 1095, 2004 U.S. LEXIS 4151 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40, 41

**Proposition of Law Six** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

    The trial court may not conduct a penalty phase hearing for a death-eligible
    defendant where the record does not establish by a preponderance of the evidence
    that the defendant is legally competent.

    Authorities Relied Upon to Support Proposition of Law Six:

    R.C. 2945.37(G) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43
    Dusky v. United States (1960), 362 U.S. 402 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43
    State v. Williams (1997), 116 Ohio App.3d 237 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43
    State v. Berry (1995), 72 Ohio St.3d 354 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43, 44
    Pate v. Robinson (1966), 383 U.S. 375 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44
    Drope v. Missouri (1975), 420 U.S. 162 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44
    Bishop v. United States (1956), 350 U.S. 961 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44
    Fifth Amendment to the United States Constitution . . . . . . . . . . . . . . . . . . . . . . . . . 46
    Sixth Amendment to the United States Constitution . . . . . . . . . . . . . . . . . . . . . . . . . 46
    Eighth Amendment to the United States Constitution . . . . . . . . . . . . . . . . . . . . . . . . 46
    Fourteenth Amendment to the United States Constitution . . . . . . . . . . . . . . . . . . . . 46


**Proposition of Law Seven** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

    A sentence of death may not stand where the review of the evidence establishes
    that the aggravating factors do not outweigh the mitigation presented beyond a
    reasonable doubt.

    Authorities Relied Upon to Support Proposition of Law Seven:

    Fifth Amendment to the United States Constitution . . . . . . . . . . . . . . . . . . . . . . . . . 47
    Sixth Amendment to the United States Constitution . . . . . . . . . . . . . . . . . . . . . . . . . 47
    Eighth Amendment to the United States Constitution . . . . . . . . . . . . . . . . . . . . . . . . 47
    Fourteenth Amendment to the United States Constitution . . . . . . . . . . . . . . . . . . . . 47
    R.C. 2945.37(G) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47, 50
    Dusky v. United States (1960), 362 U.S. 402 . . . . . . . . . . . . . . . . . . . . . . . . . 47, 50, 51
    State v. Williams (1997), 116 Ohio App.3d 237 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48
    United States v. Blohm (1984), 579 F. Supp. 495 . . . . . . . . . . . . . . . . . . . . . . . 49, 50, 51

**CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

**CERTIFICATE OF SERVICE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

v

**APPENDIX** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

    Notice of Appeal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-1

    Entry on Re-Sentence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-3

    Sentencing Opinion of the Court . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-6

    Fifth Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-30

    Sixth Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-31

    Eighth Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-32

    Fourteenth Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-33

    R.C.  2929.03(F) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-34

    R.C.  2929.04(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-35

    R.C.  2945.37(G) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-36

## TABLE OF AUTHORITIES

## CASES

Barclay v. Florida (1983), 463 U.S. 939, rehearing denied, 464 U.S. 874 . . . . . . . . . . . . . . . . 34

Bishop v. United States (1956), 350 U.S. 961 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

Boyde v. California (1990), 494 U.S. 370 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

California v. Brown (1987), 479 U. S. 538 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Davis v. Clark (C.A.6, 2007), 475 F.3d 761 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Drope v. Missouri (1975), 420 U.S. 162 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

Dusky v. United States (1960), 362 U.S. 402 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42, 46, 49

Eddings v. Oklahoma (1982), 455 U.S. 104 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 28

Espinosa v. Florida (1992), 505 U.S. 1079, 1081 (per curium) . . . . . . . . . . . . . . . . . . . . . . . . 34

Frazier v. Huffman (C.A.6, 2003), 343 F.3d 780, certiorari denied , Huffman v. Frazier (2004),
        541 U.S. 1095, 2004 U.S. LEXIS 4151 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40, 41

Gregg v. Georgia (1976), 428 U.S. 153 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

Hitchcock v. Dugger (1987), 107 S.Ct. 1821 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 28

In re Disqualification of Calabrese (1991), 74 Ohio St.3d 1233 . . . . . . . . . . . . . . . . . . . . . . . . 35

In Re Disqualification of Celebrezze (1992), 74 Ohio St. 3d 1242 . . . . . . . . . . . . . . . . . . . . . . 36

In re Disqualification of McMonagle (1990), 74 Ohio St.3d 1226 . . . . . . . . . . . . . . . . . . . . . . 35

In re Disqualification of Corrigian (1989), 47 Ohio St.3d 602 . . . . . . . . . . . . . . . . . . . . . . . . . 35

In re Disqualification of Nadel (1989), 47 Ohio St.3d 604 . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

In re Disqualification of Nugent (1987), 47 Ohio St.3d 601 . . . . . . . . . . . . . . . . . . . . . . . . . . 35

Johnson v. Zerbst (1938), 304 U.S. 458. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

Lockett v. Ohio (1978), 438 U.S. 586 . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10, 27, 29, 30, 32

McCleskey v. Kemp (1987), 481 U.S. 279 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 30

Pate v. Robinson (1966), 383 U.S. 375 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

Penry v. Lynaugh (1989), 492 U.S. 302 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 29

Powell v. Alabama (1932), 287 U.S. 45 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

Skipper v. South Carolina (1986), 476 U.S. 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10, 28

State v. Berry (1995), 72 Ohio St.3d 354 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42, 43

State v. Evans (1992), 63 Ohio St. 3d 231 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

State v. Green (1993), 66 Ohio St. 3d 141 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

State v. Goff (1998), 82 Ohio St.3d 123 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

State v. Hill (1992), 64 Ohio St. 3d 313 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

State v. Johnson (1986), 24 Ohio St. 3d 87 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

State v. Lott, 97 Ohio St. 3d 303, 2002-Ohio-6625 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

State v. Murphy (1992), 65 Ohio St. 3d 554 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

State v. Roberts, 110 Ohio St. 3d 71, 2006-Ohio-3665 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

State v. Webb (1994), 638 N.E.2d 1023 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

State v. Williams, 99 Ohio St.3d 493, 2003-Ohio-493 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

State v. Williams (1997), 116 Ohio App.3d 237 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34, 47

State v. Wogenstahl, 75 Ohio St.3d 344, 356, 1996-Ohio-219 . . . . . . . . . . . . . . . . . . . . . . . . 34

Strickland v. Washington (1984), 466 U.S. 668 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39
Stringer v. Black (1992), 503 U.S. 222 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
Wiggins v. Smith (2003), 539 U.S. 510, 123 S. Ct. 2527 . . . . . . . . . . . . . . . . . . . . . . . . . 39, 41
Terry Williams v. Taylor (2000), 529 U.S. 362 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40, 41
United States v. Blohm, (1984), 579 F. Supp. 495 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48, 49

## PROVISIONS/STATUTES

R.C. 2929.03(F) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 29, 30, 32
R.C. 2929.04(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
R.C. 2945.37(G) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42, 46, 49

## CONSTITUTIONAL PROVISIONS

Fifth Amendment, United States Constitution . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim
Sixth Amendment, United States Constitution . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim
Eighth Amendment, United States Constitution . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim
Fourteenth Amendment, United States Constitution . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2013

**CASE OVERVIEW**

This is the second time this Court has reviewed this case. This Court remanded the case for new sentencing procedure in State v. Roberts, 110 Ohio St. 3d 71, 2006-Ohio-3665. The reversal was based upon the failure of the trial court to allow allocution, coupled with the failure of the trial court to independently prepare its sentencing opinion as required by R.C. 2929.03(F).

The issues herein are relatively limited for a direct capital appeal. The reasons are two-fold. First, the remand was for sentencing purposes only. The first-phase or culpability-phase issues were fully addressed in Roberts I, supra. Second, the trial judge narrowly reviewed this Court's order on remand. The trial court refused to consider any information relevant to sentencing that had not been presented at the first sentencing hearing. The defense proffered considerable information for the court's consideration, but the court refused to consider the evidence. The evidence, including a Social Security Administration grant of disability funding due to mental health issues, and prison records reflecting severe mental health problems including hallucinations, were proffered into the record and will be addressed fully below.

The appellant Donna Roberts was convicted of complicity in the murder of her ex-husband/housemate Robert Fingerhut. It was alleged that she maintained a relationship with the co-defendant Nathaniel Jackson while Mr. Jackson was imprisoned on an unrelated charge. The two hatched the plot through letters and phone calls to kill Mr. Fingerhut for the purpose of obtaining the proceeds of his life insurance policies, of which Ms. Roberts was the beneficiary. Mr. Jackson was convicted and sentenced to death in a trial prior to that of the appellant.

It was argued at the remand sentencing below that the mitigation evidence, including Roberts' lack of a criminal history and mental health issues, required that a life sentence be found

1

to be the appropriate sentence in this instance. The trial court again found death, refusing to consider any information not adduced at the required allocution hearing.

Because of the wealth of mitigation available but not presented to the jury at the penalty phase hearing, the issue of the effectiveness of trial counsel is ripe to be addressed here. The records that predated the offense were proffered into the record. The issue was not raised in Roberts's first direct appeal as the record did not support the issue at that time.

2

## STATEMENT OF THE CASE

A Trumbull County grand jury indicted the defendant-appellant Donna Roberts (hereinafter appellant) on a four count indictment for various charges, including two alternative theory counts of capital murder surrounding the death of her husband, Robert Fingerhut. The indictment charged the appellant with one count of the purposeful killing of Mr. Fingerhut with prior calculation and design in violation of R.C. 2903.01(A) and one count of the so-called felony murder in violation of R.C. 2903.01(B). Each of these capital murder counts included two capital specifications addressing violations of R.C. 2929.04(A)(7). The first specification alleged that the murder occurred during the commission of an Aggravated Burglary, R.C. 2911.11. The second specification alleged that the murder occurred during the commission of an Aggravated Robbery, R.C. 2911.01.

The third and fourth counts charged the felonies underlying the aforementioned capital specifications, Aggravated Burglary, R.C. 2911.11 and Aggravated Robbery, R.C. 2911.01. Each count of the indictment included a firearm specification pursuant to R.C. 2929.141.

The charges indicated that the appellant was not the principal offender, but rather she acted in complicity with the principal, and co-defendant, Nathaniel Jackson. Mr. Jackson was tried separately as he also was capitally indicted. The appellant pleaded not guilty to all counts of the indictment at her arraignment on December 31, 2001.

On February 26, 2002, the trial court conducted a hearing on the appellant's motion to suppress items taken from her home the night of the homicide. The trial court denied the motion.

A jury trial began on March 26, 2003, with the death-qualification process. The jury found the appellant guilty of all counts including the capital and firearm specifications on May

3

28, 2003.

On June 3, 2003, the appellant indicated to the court that she wanted to waive the presentation of mitigation at the penalty phase hearing, except she did desire to make an unsworn statement. The trial court conducted a hearing to determine her competency to do so. A psychologist, Thomas Eberle, who had previously examined her, believed the appellant to be competent. The court also directly questioned the appellant. The court determined her to be competent under State v. Ashworth (1999), 85 Ohio St. 3d 56, 1999-Ohio-204.

Prior to the commencement of the penalty phase hearing, the prosecutor elected to dismiss Count Two, R.C. 2903.01(B)(felony-murder) and proceeded with Count One, R.C. 2903.01.(A) (prior calculation and design). The hearing began on June 4, 2004. The defense waived opening and closing argument. The appellant did provide an unsworn statement. That same day, the jury recommended a sentence of death.

On June 20, 2003, the trial court accepted the recommendation and sentenced the appellant to death. The court also sentenced the appellant to serve ten years for both the convictions of Aggravated Robbery and Aggravated Burglary. These sentences are being served consecutively to each other and the sentence of death. The trial court also applied a three-year firearm specification, which is also being served consecutively to the principle sentences.

The appellant appealed her convictions and sentence to this Court. In State v. Roberts, 110 Ohio St. 3d 71, 2006-Ohio-3665, this Court affirmed the convictions but reversed the sentence of death. The matter was remanded to the trial court to allow Roberts to allocute and to have the trial court independently prepare the R.C. 2929.03(F) sentencing opinion.

4

Re-Sentencing Procedure in Trumbull County Common Pleas Court

Judge John M. Stuard, the original trial judge, conducted the proceedings on the re-sentencing mandate. On May 1, 2007, Ms. Roberts moved to expand the sentencing hearing to include all relevant mitigation evidence. The trial court denied the motion and restricted the hearing to only the allocution of Roberts on September 14, 2007. A defense request for an independent psychologist was also denied by the court.

The defense moved for a competency evaluation. The court granted the motion. On October 22 , 2007, the court conducted a competency hearing. Dr. Thomas Gazley of the Trumbull County Forensic Diagnostic Center testified that in his opinion Ms. Roberts was competent. The court agreed with the opinion and found her to be competent.

That same day, the court conducted a hearing for the purpose of hearing the allocution of Ms. Roberts as required by the Ohio Supreme Court decision.

On October 29, 2007, the court announced its decision, again finding death to be the appropriate penalty.

The appellant filed a timely Notice of Appeal on December 11, 2007. This Brief on the Merits follows.

5

## STATEMENT OF THE FACTS

The state charged the appellant Donna Roberts with planning the killing of her husband with a prison inmate, Nathaniel Johnson.  According to the state, the appellant and Mr. Jackson were pen-pals while he was serving time in a state penal institution.  It is alleged that at some point during the letter writing and phone conversations, the two planned the homicide of the appellant's husband/roommate, Robert Fingerhut.  Shortly after Mr. Jackson was released from prison, the two allegedly orchestrated the homicide during a time which the appellant established an alibi for herself while shopping and eating away from her home, where the offense transpired.

The defense did not contest that Mr. Jackson was the killer. The defense did argue that the appellant did not act in complicity with him.  While their correspondence was admittedly sexually graphic and did allude to actions suggestive of a plot, the defense argued that there was insufficient evidence that the appellant acted in complicity with Mr. Jackson.

The facts will be further discussed in the following Propositions of Law.

6

## ARGUMENT

**Proposition of Law I:**

> **Where a capital sentence is remanded for a new sentencing, the trial court must consider and give effect to all relevant evidence in mitigation available for consideration.  A remand to allow allocution does not prevent the sentencing court from considering evidence which would support and provide weight to the allocution.**

In State v. Roberts, 110 Ohio St. 3d 71, 2006-Ohio-3665, this Court reversed appellant's death sentence.  The matter was remanded for a new sentencing hearing.  The issue hear is whether the presentation of evidence in mitigation may be limited by the trial court at the new sentencing hearing.  Here, the trial court interpreted this Court's decision to preclude it from considering any evidence that was not presented at the first sentencing presentation.  Thus, Roberts was not permitted to present strong evidence in mitigation of a finding that death was the appropriate penalty.

The mitigation Roberts desired to present can be classified into two forms.  First, there was considerable evidence that was available for presentation at the first sentencing hearing, but was not presented.  This includes evidence of considerable and severe mental health issues, perhaps caused by a number of head injuries.  The second class of evidence consisted of post-sentencing evidence garnered from her stay on death row.  This also included considerable mental health evidence requiring the taking of drugs and treatment to combat the symptoms.  It also included evidence of her ability to adapt favorably to her prison environment, when not hallucinating or suffering from adverse mental health effects.  It should be noted that the prison records reflect some chronic mental health issues, meaning that the issues pre-dated the

7

underlying offense.

The problem with the trial court's refusal to consider the additional evidence of mitigation is also two-fold. First, the sentencer is constitutionally required to hear and consider all available mitigation evidence. The second is that the allocution cannot carry much weight if the sentencer refuses to hear the background that supports and provides credibility and weight to the allocution. As the trial court here did not reference any of appellant Robert's allocution in its R.C. 2929.03(F) opinion, it is clear that he did not give any effect to her presentation. See Proposition of Law III.

Even if the the trial court was correct in its reading of the decision of this Court, such a limitation is contrary to clearly established precedent of the United States Supreme Court.

Specifically, this Court in Roberts I held as follows at p. 95:

> [**P167] Having found no prejudicial error in regard to Roberts's conviction, we affirm the conviction and the judgment of the trial court pertaining to them. Because of the prejudicial error in sentencing Roberts to death, the sentence of death is vacated, and the cause is hereby remanded to the trial court. *On remand, the trial judge will afford Roberts her right to allocute, and the trial court shall personally review and evaluate the evidence, weigh the aggravating circumstances against any relevant mitigating evidence, and determine anew the appropriateness of the death penalty as required by R.C. 2929.03.* The trial court will then personally prepare an entirely new penalty opinion as required by R.C. 2929.03(F) and conduct whatever other proceedings are required by law and consistent with this opinion.

This decision does not give any prohibition against providing new evidence at a second or remand sentencing hearing. To do so would violate the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

8

Mitigation Case Law

The United States Supreme Court has long held the a death conviction may not stand if the sentencing body has been precluded from considering relevant evidence suggesting that the death sentence would not be appropriate. The Eighth Amendment mandates an individualized assessment of the appropriateness of the death penalty. In <u>Lockett v. Ohio</u> (1978), 438 U.S. 586, the Supreme Court held that the Eighth and Fourteenth Amendments require that the sentencer "not be precluded from considering, *as a mitigating factor*, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." <u>Id</u>., at 604 (emphasis in original). Thus, the Court held unconstitutional the Ohio death penalty statute which mandated capital punishment upon a finding of one aggravating circumstance unless one of three statutory mitigating factors were present.

Lockett and Its Progeny Mandate Consideration of All Relevant Mitigation

This holding has been consistently applied throughout the Court's opinions addressing <u>Lockett</u> and its progeny. See <u>Eddings v. Oklahoma</u> (1982), 455 U.S. 104, <u>Skipper v. South Carolina</u> (1986), 476 U.S. 1, <u>Hitchcock v. Dugger</u> (1987), 107 S.Ct. 1821. In <u>Eddings</u>, a majority of the Court reaffirmed that a sentencer may not be precluded from considering, *and may not refuse to consider*, any relevant mitigating evidence offered by the defendant as the basis for a sentence less than death.

In <u>Eddings</u>, the Oklahoma death penalty statute permitted the defendant to introduce evidence of any mitigating circumstance, but the sentencing judge concluded, as a matter of law, that he was unable to consider mitigating evidence of the youthful defendant's troubled family

9

history, beatings by a harsh father, and emotional disturbance. Applying Lockett, the Court held

that "[j]ust as the State may not by statute preclude the sentencer from considering any mitigating

factor, neither may the sentencer refuse to consider, *as a matter of law*, any relevant mitigating

evidence." 455 U.S., at 113-114 (emphasis in original). In that case, "it was as if the trial judge

had instructed a jury to disregard the mitigating evidence [the defendant] proffered on his

behalf." Id., at 114.

   "[T]he Constitution limits a State's ability to narrow a sentencer's discretion to consider

relevant evidence that might cause it to *decline to impose* the death sentence." McCleskey v.

Kemp (1987), 481 U.S. 279, 304 (1987) (emphasis in original). "Indeed, it is precisely because

the punishment should be directly related to the personal culpability of the defendant that the jury

must be allowed to consider and give effect to mitigating evidence relevant to a defendant's

character or record or the circumstances of the offense." Penry v. Lynaugh (1989), 492 U.S. 302,

327-328.

   If the sentencer has been precluded from considering and giving effect to the mitigation,

the sentence of death must be reversed. This is because the sentence imposed at the penalty

phase failed to reflect a reasoned *moral* response to the defendant's background, character and

crime. California v. Brown (1987), 479 U. S. 538, 545.

Sentencing Remand

   The above precedent applies even where the original death sentence is reversed and the

matter is on remand for a new sentencing hearing. The Sixth Circuit has clearly stated that the

scope of the mitigation in a re-sentencing hearing could not be limited. In Davis v. Clark (C.A.6,

2007), 475 F.3d 761, the trial court at a second sentencing hearing refused to consider the

10

behavior of the defendant while in prison after his death sentence.  This mitigation evidence was admissible under Skipper v. South Carolina (1986), 476 U.S. 1.  The refusal of the three-judge panel to consider this additional relevant mitigation evidence required a reversal of the death sentence.

Mitigating factors under R.C. 2929.04(B) are not related to a defendant's culpability but, rather, are those factors that are relevant to the issue of whether a defendant convicted under R.C. 2903.01 should be sentenced to death.  A sentencing authority may not refuse to consider, as a matter of law, any relevant mitigating evidence.  State v. Goff (1998), 82 Ohio St.3d 123.

Precluded Evidence

The Social Security Administration Records (SSA) and the prison records reveal the following factors which should have been considered by the judge in his sentencing consideration.  These records were proffered as Defense Exhibit A on October 22, 2007.  The SSA records were part of the third proffer by Roberts as the remand sentencing hearing on October 22, 2007.

**1.      Sexual abuse as a child.**

At her allocution, Ms. Roberts noted to the judge that she had been sexually abused as a child by her cousin.  The judge did not consider this to be mitigation and did not address it.  But the judge's failure to consider evidence to provided her statement with weight may have been the reason for the overlooking of the issue. The judge did not mention sexual abuse as a mitigating factor in his opinion.

Dr. Gazley, who testified in Roberts competency hearing,  acknowledged that post-traumatic stress syndrome is sometimes an effect of sexual abuse.  (T. 28)  It was not part of his

11

diagnosis. He did not recall seeing references to PTSD in the prison records. He did remember something about the abuse, but could not remember if he had read it or heard directly from Roberts. (T. 28) Dr. James Eisenberg proffered an affidavit testifying that he believed there to be a strong indication of the diagnosis, albeit his diagnosis was not beyond a psychological certainty due to his limited access to Roberts and the record, as the trial judge refused appointment of an independent psychologist. The prison records do in fact reflect this diagnosis.

### 2. Low Intelligence

In 1999, Roberts applied for SSI disability due to her mental condition. The psychological evaluation was prepared by Dr. Donald Delgli. (Contained in Social Security Administration Records proffered on October 22, 2007) The reports were filed with the administration on November 3, 1999, some two years prior to the murder, for the purpose of a Disability Determination. The report disclosed that Ms. Roberts tested to a full scale IQ of 65, under the State v. Lott, 97 Ohio St. 3d 303, 2002-Ohio-6625. The verbal I.Q. was 79 and her performance I.Q. was 55.

Even if a subsequent hearing would result in Ms. Roberts not meeting Atkins criteria, the report should have been admitted as evidence in mitigation. Low intelligence is a recognized mitigator, regardless of whether it meets Lott standards. State v. Evans (1992), 63 Ohio St. 3d 231; State v. Hill (1992), 64 Ohio St. 3d 313; State v. Green (1993), 66 Ohio St. 3d 141; State v. Murphy (1992), 65 Ohio St. 3d 554; State v. Webb (1994), 638 N.E.2d 1023.

### 3. Depression

The records both pre-offense and post offense are replete with references of Ms. Roberts suffering from mental health issues. Dr. Delgli concluded that, in 1999, Ms. Roberts was a fifty-

12

five- year old woman "who presents a rather odd diagnostic picture. Unfortunately, no formal history accompanied the referral to this office for this claimant who suffered multiple injuries including head trauma in a reported automobile accident which occurred in April of 1999." (Dr. Donald Degli 11/3/1999 Psychological Evaluation) The report noted that Roberts, when asked if she was a happy person, responded " Well, I used to be. Now- - there is no reason to be happy. I am waiting to die now . . .any second. Don't you think so?" (Degli report, page two) She also reported that her husband, the decedent, was tired of her at the time. She also mentioned that she thought of suicide constantly but just could not pull the trigger, even though she had guns. Id.

The Delgli report concluded by noting that dementia could not be ruled out. The doctor also could not rule out malingering, but noted that the head injuries required further testing. He noted that:

> Psychologically, Donna does present herself as genuinely impaired to some degree, probably not able to follow directions or do routine tasks in a competitive work environment at the present time. She has the ability and judgment to manage basic money matters appropriately. Interpersonal functioning was particularly impaired, if today is an example. She will have difficulty in simple social interactions and at best, presents marginal capacity to interact appropriately in a competitive workplace. Provisionally, Donna is moderately impaired in her ability to meet the demands of competitive adult employment. These observations are made without regard to whatever physical limitations she may have.

Delgli Report, p. 3.

In addition, the Delgi Report contained important psychological testing results and opinion that would have been instrumental to the jury's determination of the appropriate sentence. The report concluded as follows:

> This is the evaluation of a fifty-five year old woman who presents a rather odd diagnostic picture. Unfortunately, no formal history accompanied the referral to this office for this claimant who suffered multiple injuries including head trauma

13

in a reported automobile accident which occurred in April of 1999. Thus, today's evaluation leads to rule out differential diagnostics. At times, she seemed to be genuinely confused as she well complained of memory problems. At other times, her responses seemed to be an exaggeration, dramatization, confabulation or malingering. She reports medications for dizziness. She also takes antidepressant medication. Yet, she reports no formal mental health care. The intellectual assessment yielded questionable functioning and an intelligence quotient in the mild mental retardation range. Memory functioning, as measured by the Wechsler Memory Scales was also impaired, although her responses were suggestive of confabulation and malingering. Reading skills proved to be functional at the high school level. Personality and emotional assessment reveals an individual who is rather blunted, expressionless, preoccupied, worrisome and evidencing some rather strange ideation if she is being genuine in her presentation. Diagnostically, there is a need for rule out consideration of dementia. There is certainly a need for thorough review of whatever medical/neurological records are available.

Psychologically, Donna does present herself as genuinely impaired to some degree, probably not able to follow directions or do routine tasks in a competitive work environment at the present time. She has the ability and judgment to manage basic money matters appropriately. Interpersonal functioning was particularly impaired, if today is an example. She will have difficulty in simple social interactions and at best, presents marginal capacity to interact appropriately in a competitive workplace. Provisionally, Donna is moderately impaired in her ability to meet the demands of competitive adult employment. These observations are made without regard to whatever physical limitations she may have.

It is important to note, again, that the report was prepared approximately two years prior to the homicide. It notes, consistently, the "Interpersonal functioning was particularly impaired," which may explain her difficulty with her attorneys. She had a "marginal capacity to interact appropriately in a competitive workplace."

In addition, the SSA records reveal, in addition to the severe car accident, that:

A.      Ms. Roberts was receiving SSI benefits for mental disability;

B.      The decedent himself, Robert Fingerhut, had called the Social Security Administration to urge that she receive the benefits. He informed that agency that Donna had not been herself since the accident. Fingerhut was afraid someone would grab her after one of her memory problems. She was a changed person.

14

She did not have the emotional stability to work anymore. She had lost some of her memory. (Proffer A, pp. 1, 3 of records) Robert Fingerhut gave examples. Donna had previously know all members of the Cleveland Indians but could no longer recall them.

C.   The examiners noted the change in mental condition since the accident. This all occurred two to three weeks after the accident. She became more moody with more irrational thinking. She takes medication for her depression. Fingerhut had not seen anyone come from such a high point to such a low point. She was not the same person that she had been. She had lapses of time. A half an hour may pass and Donna would think that half the day had passed. She could not remember dates after repeated prompting. She went into rages, forcing him to leave. (Proffer A, p. 6, 9)

D.   Fingerhut noted that she was getting worse. She was not thinking clearly. She forgot where she was in familiar places and would forget where she placed items in the home. She could not even remember the dogs' names. She was seeing a psychiatrist. (Proffer A, p. 7) The psychiatric records have not been obtained currently as Roberts is unable to remember the name of her psychiatrist.

E.   Fingerhut reported that she had violent mood swings, including one in the doctors office. This necessitated her being admitted to the "mental ward" at St. Joseph's Hospital. (Proffer A, p. 8, 9)

F.   There appears to be a diagnosis of psychotic disorder, personality disorder in the records. Petitioners Exhibit A, p. 11. The admitting diagnosis was depression, suicidal, major depression, recurrent bi-polar disorder. Medications were numerous. (Proffer A, p. 16)

G.   The records included the discharge summary for St. Joseph's Health Center in Warren, Ohio. This report noted that:

The immediate reason for this hospitalization was because of severe anxiety, agitation, depression, ***auditory and visual hallucinations and suicidal ideations*** and intention by $CO_2$ poisoning. Roberts stated that she has been getting quite tense, restless and depressed lately, having frequent mood swings, losing interest in doing things, having difficulties concentrating and started hearing voices talking to her. She has been seeing shadows around the room when no one is home and has the feeling that someone is after her. Medications: Remeron (15 mg), Zyprexa (5 mg), Vistaril (50 mg), Premarin, Provera, Paxil (20 mg), Depakote (500 mg), Risperdal (1 mg)

15

(Emphasis added) (Proffer A, p. 17)

The final diagnosis was bi-polar disorder, circular type.  (Proffer A, p. 18).

H.    The emergency room documentation of February 10, 2000 indicates the doctors found her depressed and suicidal.  Proffer A, p. 19, 20.  She was admitted to the general psychiatric unit in stable condition.  Feelings of paranoia were noted, in addition to psychiatric problems with her father.  That she had past bouts with diabetes was also noted. (Id. 21, 50).

I.    Donna revealed to doctors that she has had some psychiatric problems and has taken some medicines from a psychiatrist in the past.  She admitted to having frequent mood swings, going from elation to depression all throughout her life.  Id., p. 22.  She believed that she would be better off dead than alive and thought of killing herself with $CO_2$.  She admitted hearing voices and seeing shadows in her rooms and believed that someone was after her and trying to hurt her.  Id. 23.  She was again diagnosed with major depression with possible bi-polar disorder.  She thought of killing herself "everyday." (Proffer A. 37).

J.    The records revealed that she had been an "abuse victim." Id. 38.  She has "probable post-concussion syndrome with memory loss and confusion." Id. p. 43, 48, 50.  An MRI of the brain was recommended.  Depression again was noted.  She was taking Paxil and Remeron.  (Id. 48).

K.    An EEG was performed on June 25, 1999.  The result was suggestive of psychological dysfunction and thought less likely to be structural damage.  (Id. 96)

L.    Roberts displayed bizarre behavior in a January 14, 2000 interview where she pulled gum from her bosom and repeatedly licked the filters of her cigarettes.  She heard noises that others could not hear, felt rage and saw a light to the side of her head that others could not see, but denied that they were hallucinations.  Id. 118  She was obsessed with sex and death.  She had obsessive thoughts of bad things happening to her if she did not complete her rituals.  She was experiencing auditory and visual hallucinations.  (Id.)

**Prison Records**

The records below were obtained from the Ohio Department of Rehabilitation and

Correction.  A summary of areas of mitigation that could have been introduced from the

information contained in the record follows.  The evidence from these records, the

16

postconviction records and the trial record includes the following factors in mitigation. These records were proffered to the trial court on September 20, 2007. The records consistently confirm her bi-polar and depression diagnosis. They reveal that she was victim of child abuse, possibly resulting in a diagnosis of post-traumatic stress suffering. Her mental health condition at the time deteriorated into hallucinations (report of March 12, 2006, seeing ants in cell, in addition of scope of March 2006, reports), and the ability to communicate with others through her mere thoughts (December 24, 2003 report). The prison records reveal that she had watched her father abuse her mother when she was a child, among other items relevant to sentencing.

The records contain evidence of the following which were relevant to the appropriateness of the death penalty. The summaries of the reports are listed in the order of the packet received from the institution. They are not chronological. The prison records are listed below in order of proffer submitted:

A.    *Physical Problems*  **(These reports reflect the time period from  2003 -2007)**

1.    Has a problem with her lower spine and pelvis, often causing her great amounts of pain;

2.    Has suffered from sciatica;

3.    Had a fall in prison and hit her head/face on a metal desk;

4.    Has borderline diabetes;

5.    Had at least 3 head injuries (first at 19 years of age);

6.    Had cysts removed from her ovaries and an abortion;

7.    Has suffered hypertension, and shows a few punctuate white matter signal

17

abnormalities which are non-specific in nature, found via an MRI (likely to be age related).

**B.    Mental Health Problems**

1.    Has suffered from on/off depression from the age of 6, possibly as a result of the sexual abuse she suffered by her cousins or her father's mental and physical abuse towards her mother. Has now been diagnosed as a type of Bipolar Disorder (BPAD Type II). This leaves her feeling very depressed or euphoric and can lead to risk-taking behavior;

2.    Was an inpatient in 2000 for 2 weeks after expressing suicidal thoughts, saw a psychiatrist on/off but failed to keep appointments (prior to conviction);

3.    She occasionally suffers from hallucinations and appears confused and disorganized. She also believes others can see and hear her thoughts. She has a negative body image;

4.    Has had several head injuries with the most serious being in 1999. She had concussion and reported a change in personality, including feeling 18 again and having no fear.  It may also have been the reason she started smoking cannabis;

5.    In prison, denied any suicidal thoughts or self-harm but there have been a few occasions where she has unexplained bruises on her arms and/or legs and her fall in prison *could* be regarded as suspect. Has said that she tried holding her breath once, this could be regarded as a possible suicide attempt. She has stated that she would like to die but it is against her religion for her to do it to herself;

6.    Is in remission of Post Tramatic Stress Disorder ( PTSD);

7.    Is too trusting of her fellow inmates and fails to set appropriate boundaries, occasionally takes on child-like characteristics;

8.    Takes medication to help with her symptoms of depression and hypomania (since 2000), she is extremely reliant on these;

**C.    <u>Evidence from Prison Records</u>**

The evidence of the above was gleaned from the following dates from the prison records.

Report dated 1/12/2005 from Corrections Medical Center (247058)

18

> Degeneration in the lower spine and pelvis.
> Mild sclerosis of the acetabular surfaces (right acetabulum)
> Joint spaces causing narrowing
> Mild osteophytes from both femoral heads
> Overall; mild bilateral DJD in both hips.

Report dated 7/07/03 from Corrections Medical Center (323866)
> Prominent pseudoarticulation or prominent costocartilaginous junction of the left 1st rib anteriorly.

Report dated 6/03/05. Addendum to Mental Health Evaluation (page 1).
> On a selection of medication, was coping fine but now feels depressed as to her situation; her physical pain is also too much (it is now affecting her sleep). History includes on/off depression since the age of 6. Was an inpatient in 2000 for 2 weeks. Has seen a psychiatrist and has been on medication since 2000.

Report dated 6/03/05. Addendum to Mental Health Evaluation (page 2)
> Used pot on/off on the street but did not do drugs while incarcerated. She was sexually abused by her 2 cousins.
> Her mother suffers from depression and is terminally ill.
> Her mood is sad.

Report dated 6/03/05. Addendum to Mental Health Evaluation (page 3)
> Diagnostic impression; BPAD type II, currently depressed. Treatment included medication for depression and pain.

Report dated 6/13/06. Mental Health Caseload Classification (annual).
> C1 Categorical (SMI); Bipolar D/O

Report dated 6/03/03(?). Mental Health Caseload Classification (update)
> C1 Categorical (SMI); Bipolar D/O

Report dated 6/18/07. Addendum to Mental Health Evaluation
> Inmate has suffered from depression since 6, was treated on/off with counseling but is now purely on medication; wonders if she would die without it. Experiences depression when thinks of her husband.
> She has had 3 head injuries, the first being aged 19, second in 1983 and the third in 1999. Reports of a personality change after the 1999 injury-felt like she was 18 and not afraid of anything.

Report dated 6/18/07. Addendum to Mental Health Evaluation (page 2)
> Similar to 6/03/05 report.

19

Report dated 12/17/03. Interdisciplinary Progress Notes.
    Donna says she feels much better and that she isn't afraid to die. However, she
also said that she thinks people can see and hear her thoughts when she is alone and that
she has always felt this way (claims it does not affect her daily functions though). She
also has negative feelings towards her body; she always wears make up and nobody has
seen her naked.

Report dated 11/24/03. Interdisciplinary Progress Notes.
    Donna has reported she is sleeping a lot due to her medication. Her aunt and
cousin had died recently.
    11/28/03; mood is very sad.

Report dated 11/13/03. Interdisciplinary Progress Notes.
    Donna feels good at the moment but highlights the fact that she often feels bad
and her mood can never stay even.

Report dated 10/24/03. Interdisciplinary Progress Notes
    Donna is sensitive to bright light in her room, this is affecting her sleep.

Report dated 10/15/03. Interdisciplinary Progress Notes
    Donna reports crying spells, loss of appetite, difficulty sleeping and is struggling
to get out of bed in the mornings.

Report dated 9/18/03. Interdisciplinary Progress Notes
    She is taunted by her inmates and the guards talk about her.

Report dated 9/03/03. Interdisciplinary Progress Notes
    She experiences difficulty sleeping, loss of appetite and low energy levels. She
feels she is being unfairly treated.

Report dated 9/26/03. Interdisciplinary Progress Notes
    Donna reports she suffers from depression and anxiety but her medication offers
her appropriate relief.

Report dated 05/14/07. Bipolar Group Pre test
    Has 4 symptoms of a bipolar disorder; sadness, euphoria, agitation and
intolerance. On a scale of 1(low)-10(high) Donna says her disorder interferes with her life
at number 8. Her compliance for taking medication was only 95% but she claims to have
taken all of them. Says her mood is affected by inconsideration from others, others being
mean and fear. Her disorder is controlled by medication.

Report dated 6/28/05. Referral to Mental Health Services-Urgent
    Call was received from a Ms. Weaver (unit manager at NC) stating Donna was

20

acting strangely. On arrival told that she was disorientated. When spoken to, found that she was orientated but she felt nervous and anxious, she also kept running her sheet through her hands saying she was trying to fix the bed.

Report dated 10/24/03. Bureau of Mental Health Services.
    Feeling sad as it would have been her husband's birthday.

Report dated 4/19/06. Medication order form
    4/14/06        Donna banged her head.

    8/03/05        MRI scan of the head-memory deficit and head trauma. Optometry consult.

Report dated 6/26/03. Initial Medical/Mental Health/Substance Use Screening
    Crisis/Safe cell assignment requested and special housing assignment requested under mental health disposition.

Report dated 06/26/03. Health History
    Gave personal history as positive for: bone, joint or other deformity, ear trouble, eye disorder, hemorrhoids, high blood pressure, mumps, stomach trouble and cysts. Current problems are depression and anxiety.

Report dated 6/26/03. Female Health History
    Menopausal for the past 2 years, had ovarian cyst in 1962, has had two pregnancies, one of which was aborted. Has been on HRT for 4 years (?)

Report dated 7/02/03. Mental Health Evaluation
    Page 2; has on/off depression all her life. Was admitted for inpatient treatment in 2002; she had suicidal thoughts. Occasionally feels euphoric which leads to high energy, low need for sleep and risk taking behavior. Admits to spending sprees and having unprotected sex with a young man.
    Page 3, started using pot after her accident in 1999
    Page 4, father was abusive to mother, she was sexually abused by cousins
    Page 7; Axis I: BPAD Type II and psychotic feelings(?)

    Report dated 7/02/03. Mental Health Caseload Classification
    Confirms bipolar disorder.

Report dated 9/12/05. OSU Electronic File Report-Radiology
    Suffered from memory loss, chronic dizziness and gait disturbance. MRI found a few punctuate white matter signal abnormalities which are non-specific in nature and are

21

most likely due to small vessel ischemic disease or age related changes. Also minimal punctuate mucosal thickening within the right mastoid air cells and a small left frontal sinus retention cyst, polyp, or localized mucosal thickening.

Report dated 6/13/06. Addendum to Mental Health Evaluation
 Has difficulty falling and staying asleep. Has nerve pain and heart burn.
 Page 2; sexually abused by 2 cousins.
 Page 3; BPAD Type II in remission.

Report dated 6/13/07. Mental Health Caseload Classification
 Confirms bipolar disorder.

Report dated 6/24/03. Initial Medical/Mental Health/Substance Use Screening
 Suffered a concussion from 1999 head injury.

Report dated 6/12/07. Mental Health Treatment Plan Review
 Confirms bipolar II disorder and is a borderline diabetic. Problem described as mania/hypomania. States she has depression more often than mania and she did not attend her Bipolar Group when passed.

Report dated 3/13/07. Mental Health Treatment Plan Review
 See above. Currently in depressed phase, she has to learn to set appropriate boundaries and not to be so trusting of inmates who will take advantage of her.

Report dated 12/12/06. Mental Health Treatment Plan Review
 Reiterates history of depressive mood

Report dated 12/14/05. Mental Health Treatment Plan Review
 Increased depressive symptomology over the past several months.

Report dated 9/24/03. Treatment Plan
 Experiencing symptoms of depressed mood that interfere with areas of daily functions such as, past suicide attempts, high feelings of anger and isolation, crying spells and low appetite.

Report dated 7/08/03. Treatment Plan
 Experiencing adjustment issues and high feelings of isolation.

Report dated 3/12/06. Referral to Mental Health Services
 Call received from CO stating behavior was "bizarre". Donna was seeing ants (none could be seen). She stated 'saw ants, put down coffee grounds to get rid of them and got rid of food in room (?)'. She appeared disheveled, wearing no make up, speech soft, mumbling and she is wearing sweats. Spontaneously started saying 'men always play

22

sports and balls-golf-little ball, little hole, little man; basketball, big ball, big hole, big man'. Abruptly ends by saying 'it's been nice talking to you'.
Response; Donna was confused and disorganized. Had not eaten last 3 meals and has severe cognitive impairment-placed on suicide watch.

Report dated 1/24/06. Referral to Mental Health Services
        Donna appears very stressed, irrational and is sleeping more frequently.

Report dated 11/14/05. Referral to Mental Health Services
        Experiencing flashbacks to finding husbands body so has requested medication. Therapy was recommended instead.

Report dated 8/14/05. Referral to Mental Health Services
        States that Donna was not intending to harm herself but she had bruises on her arms and legs, she did admit to feeling down. She put her arm against the wall and said she feels like she isn't there. She is unsteady on her feet and says her hands and feet keep twitching.

Report dated 4/28/05. Referral to Mental Health Services
        Donna is sad, has been crying frequently, will not engage in conversation, is not wearing make up and has poor eye contact. This is presumed to be a reaction to her mother's terminal illness.

Report dated 7/29/05. Brief Psychiatric Rating Scale
        Scored 3 (mild) on depressive mood scale.

Report dated 6/18/07. Brief Psychiatric Rating Scale
        Scored 4 (moderate) on depressive mood scale.

Report dated 7/02/03. Brief Psychiatric Rating Scale
        Scored 5 (moderately severe) on depressive mood and hostility scales.

Report dated 7/11/07. Interdisciplinary Progress Notes
        BPAD type II and PTSD are in remission.

Report dated 2/20/07. Interdisciplinary Progress Notes (2nd page)
        Donna states she wishes she knew a way to die without killing herself, she says she has tried holding her breath. Still experiencing problems setting boundaries and is giving away her commissary items.

Report dated 11/22/06. Interdisciplinary Progress Notes (2nd page)
        Recently lost brother-in-law to suicide. Donna states her despair and how she could relate to what he was feeling, said if she was given a life sentence she 'would not

23

.....

Report dated 5/17/06. Interdisciplinary Progress Notes (2nd page)
       Reports she has not sleep properly for two nights and claims to have dozed off whilst showering/shaving-wonders if this is a problem.

Report dated 3/27/06. Interdisciplinary Progress Notes (2nd page)
       Has bruises around left eye from a fall last week.

Report dated 3/22/06. Interdisciplinary Progress Notes (2nd page)
       (CONT.) Was dumping food outside her window. Determined medical attention was needed-was placed in infirmary for testing and observation. Donna was staring into space, was unsteady on her feet and withdrawn. She has poor recent memory and her thought process is slurred, she is confused and is suffering from cognitive impairment.

Report dated 3/21/06. Interdisciplinary Progress Notes (2nd page)
       Donna has expressed confusion, agitation and disorganized behavior during the night. She also fell and hit her face on a metal desk but is adamant that she slipped accidentally. She has had previous gait disturbances and a MRI showed multiple lesions. She denies self-harm etc and is strongly opposed to being placed on suicide watch. Suspect she may be experiencing delusions.

Report dated 3/13/06. Interdisciplinary Progress Notes (2nd page)
       Spoke with a child like voice.

Report dated 3/13/06. Interdisciplinary Progress Notes (2nd page)
       Donna tried to force her way out of the cell, she was laughing and smiling saying that she felt very happy and her appeal is 'working'. Again *she used a child like voice*.

Report dated 1/27/06. Interdisciplinary Progress Notes
       Donna failed a room inspection and shut down for 2 hours, she did however have it cleaned for re-inspection. She gets confused if her meds are not given at consistent times and thinks she has already taken them.

Report dated 12/14/05. Interdisciplinary Progress Notes
       Reports her new meds are making her feel shaky.

Report dated 11/25/05. Interdisciplinary Progress Notes
       Has two bruises on her left arm and can not recall how they got there.

Report dated 10/31/05. Interdisciplinary Progress Notes
       Bruising (?) on both arms, does not know how it got there.

24

Report dated 11/07/05; experiencing stress after being told that her cell door will soon have to be closed at all times; she says she becomes sweaty when closed up.

Report dated 9/19/05. Interdisciplinary Progress Notes
Had a family visit, coped well, spoke of how her father was physically and mentally abusive towards her mother (though was less so as they got older).

Report dated 8/14/05. Interdisciplinary Progress Notes
Donna was disorganized and stated that whilst she had no intention of hurting herself, she had fallen down several times. Had bruises on her arms and legs and was a little unstable on her feet.

Report dated 6/29/05. Interdisciplinary Progress Notes
Reluctant to come outside.

Report dated 6/28/05. Interdisciplinary Progress Notes
M.H    Donna was sitting on her bed staring at TV static and would not come out of her room. When psychiatrist (?) arrived, her blanket and sheets.....

Report dated 6/8/05. Interdisciplinary Progress Notes
Mood is tearful and depressed but her thoughts are organized though they may be inaccurate due to wishful thinking. This is exasperated by her back pain.

Report dated 5/06/05. Interdisciplinary Progress Notes (2nd page)
       Donna is in a lot of pain due to a general medical condition. She also states she is having a hard time dealing with the lack of control in her life, she feels guilty that people have to do things for her; she feels that no one really cares about her, they only visit because it is there job. She says she wrote to her lawyer telling him to stop fighting as there was no use.

Report dated 4/29/05. Interdisciplinary Progress Notes (2nd page)
Having more difficulty with her memory than normal and her mood is depressed.

Report dated 4/08/05. Interdisciplinary Progress Notes
Donna discussed fear of becoming incapacitated and says that she is not afraid of death itself.

Report dated 1/21/05. Interdisciplinary Progress Notes
Continues to exhibit semi-depressive symptoms but no mania present.

Report dated 1/11/05. Interdisciplinary Progress Notes
1/21/05; Donna states her depression is with her all the time.

25

Report dated 4/26/04. Interdisciplinary Progress Notes
Donna feels she has bought shame on her family by going to prison and that she misses her husband, she was very teary eyed.

Report dated 12/24/03. Interdisciplinary Progress Notes
Insists on the death penalty to 'show the racism, the injustice, the corrupt', also states she is not afraid of death. She believes she can communicate to others through her thoughts.

### D.      Medications Prescribed

While in prison, Ms. Roberts was receiving the following medication prescribed by medical experts.

1.    Trazodone
2.    Depakote – mood stabilizer
3.    Lithium
4.    Bupropion
5.    Valproic Acid
6.    Wellbutrin
7.    Cymbalta
8.    Elavil
9.    Depakene
10.   Buspar

It is doubtful that the above would be prescribed throughout her term of incarceration if she were malingering.

In addition, the trial court refused to consider a statement of testimony from her son, a military veteran, of Robert's volunteering to help the poor, her dysfunctional family or her ability to be a good mother until the automobile accident caused her to start smoking pot and generally lose her way. An incomplete affidavit was proffered to the record by Roberts from Dr. James Eisenberg, Ph.D., a forensic psychologist. Dr. Eisenberg admittedly could not testify as he had not been able to fully evaluate her mental condition. However, his preliminary finding are

26

completely consistent with the above evidence and corroborate her mental health sufferings.

Proffer of September 20, 2007 (Second Motion to Proffer)

**Summary**

      Ms. Roberts' Social Security and prison records reveal a great deal of mitigation evidence that was not considered by the trial court in his determination of the appropriate sentence in this case.   The affidavits of Dr. Eisenberg and her son, Michael Raymond, also would have provided strong testimony or statements of mitigation had the trial court permitted as much and would have supported Roberts' ignored allocution.  (See Proffers of September 20, 2007)  Pursuant to the Sixth Circuits opinion in <u>Davis</u>, <u>supra</u>, the failure to consider this relevant evidence is error. Because the evidence in this case includes depression, bi-polar disorder, child abuse, hallucinations, post-tramatic stress disorder, dysfunctional family (father beating mother when Roberts was a child) head injuries (car accidents) and was not part of the record at her first sentencing, this matter must again be remanded for a new sentence (unless this Court finds death inappropriate in its independent evaluation).

**Proposition of Law Two:**

> **When considering the appropriate sentence in a capital trial, the sentencing
> judge must consider and give effect to all presented evidence in mitigation.**

      Although closely related to Proposition of Law One, this issue differs in the following manner.  The previous proposition addressed the failure of the trial court to consider the proffered evidence of mitigation.  This proposition addresses the failure of the trial court to

27

consider the mitigation that was presented at the remand sentencing hearing.  Specifically, the court refused to consider the information provided at the hearing in the form of Roberts' allocution or mitigation evidence available from the original penalty phase hearing.  In other words, this proposition addresses mitigation not considered even excluding the proffered materials addressed in Proposition of Law I.

Although required to do so by R.C. 2929.03(F), the judge failed to identify a single factor as worthy of consideration for mitigation derived from Roberts allocution.  This Court remanded this matter with specific instructions to allow Roberts to allocute.  Inherent in this order, and constitutionally required, is for the sentencing court to consider and give effect to her allocution.  In his opinion, the judge does not only not consider her allocution, but does not even mention that is was provided.  The judge painstakingly reviewed all penalty phase procedures, yet failed to mention that Roberts provided the statement which was part of the reason for the remand.

The evidence provided in her allocution alone was considerable.  This included:

1. Sexually abused by cousins when she was a girl; (T. 46)

2. Depression, resulting in time spent in psychiatric ward.  (T. 51, 52)

3. Severe head injuries from car accidents; (T. 49, 50, 53)

4. Ms. Robert was 58 at the time of the offense with no criminal record;

5. No danger to others in prison;

6. Volunteering to assist injured in Israel, possibly saving lives;  (T. 54, 57-58)

7. Long work history; (T. 59-60)

8. Hallucinations; (T. 52)

28

9.  Father was verbally abusive and he beat her mother and at times guns were involved; (T. 47)

10.  Raised her younger sister and helped send her through college; (T. 62)

11.  Received SSI for mental disability. (T. 53)

At the close of Robert's allocution, she told that judge that she was not a bad person. The judge anwered, "I never thought for a moment that you are a bad person." (T. 64-65) Nevertheless, the judge failed to acknowledge in his sentencing opinion that she had even made an allocution, let alone consider and give effect to anything that she had stated.

The United States Supreme Court has long held that a death conviction may not stand if the sentencing body has been precluded from considering relevant evidence suggesting that the death sentence would not be appropriate. The Eighth Amendment mandates an individualized assessment of the appropriateness of the death penalty. As stated earlier, in Lockett v. Ohio (1978), 438 U.S. 586, the Court held that the Eighth and Fourteenth Amendments require that the sentencer "not be precluded from considering, *as a mitigating factor*, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." *Id.*, at 604 (emphasis in original). Thus, the Court held unconstitutional the Ohio death penalty statute which mandated capital punishment upon a finding of one aggravating circumstance unless one of three statutory mitigating factors were present.

Lockett and Its Progeny

As argued in Proposition of Law I, above, this holding has been consistently applied throughout the Court's opinions addressing *Lockett* and its progeny. Eddings v. Oklahoma

29

(1982), 455 U.S. 104, Skipper v. South Carolina (1986), 476 U.S. 1, Hitchcock v. Dugger (1987),
107 S.Ct. 1821. In Eddings, a majority of the Court reaffirmed that a sentencer may not be
precluded from considering, *and may not refuse to consider*, any relevant mitigating evidence
offered by the defendant as the basis for a sentence less than death.

 In Eddings, the Oklahoma death penalty statute permitted the defendant to introduce
evidence of any mitigating circumstance, but the sentencing judge concluded, as a matter of law,
that he was unable to consider mitigating evidence of the youthful defendant's troubled family
history, beatings by a harsh father, and emotional disturbance. Applying Lockett, the Court held
that "[j]ust as the State may not by statute preclude the sentencer from considering any mitigating
factor, neither may the sentencer refuse to consider, *as a matter of law*, any relevant mitigating
evidence." 455 U.S., at 113-114 (emphasis in original). In that case, "it was as if the trial judge
had instructed a jury to disregard the mitigating evidence [the defendant] proffered on his
behalf." Id., at 114.

 Thus, at the time Robert's conviction became final, it was clear from Lockett and Eddings
that a State could not, consistent with the Eighth and Fourteenth Amendments, prevent the
sentencer from considering and giving effect to evidence relevant to the defendant's background
or character or to the circumstances of the offense that mitigate against imposing the death
penalty. Like Eddings, the Ohio statute here allowed the consideration of the disputed mental
health testimony, but the consideration of the evidence was precluded by the trial judge.

 As quoted above, "the Constitution limits a State's ability to narrow a sentencer's
discretion to consider relevant evidence that might cause it to *decline to impose* the death
sentence." McCleskey v. Kemp (1987), 481 U.S. 279, 304 (emphasis in original). "Indeed, it is

30

precisely because the punishment should be directly related to the personal culpability of the defendant that the jury must be allowed to consider and give effect to mitigating evidence relevant to a defendant's character or record or the circumstances of the offense." <u>Penry v. Lynaugh</u> (1989), 492 U.S. 302, 327-328.

The trial judge panel denied Robert's due process of law by failing to follow state sentencing law requiring specific content in its sentencing opinion. R.C. 2929.03(F) is a direct codification of the United States Supreme Court's dictates of <u>Lockett</u>. The statute simply requires the sentencing judge to place the analysis required in <u>Lockett</u> into writing and enter the opinion into the record. The statute provides, in relevant part:

> The court or the panel of three judges, when it imposes sentence of death, shall state in a separate opinion its specific findings as to the existence of any of the mitigating factors set forth in division (B) of 2929.04 of the Revised Code, the existence of any other mitigating factors, the aggravating circumstances the offender was found guilty of committing, and the reasons why the aggravating circumstances the offender was found guilty of committing were sufficient to outweigh the mitigating factors.

The trial court's sentencing opinion falls woefully short of the requirements of R.C. 2929.03(F) in the following specific manner.

First, the statute requires the trial court to determine initially whether any mitigating factors have been established. This is essential to preserve and isolate those mitigating factors, which are to be weighed collectively against the aggravating circumstances. Here, the trial court did not mention in opinion a single factor that he could even consider as mitigation, even if he were to provide little weight to that factor. His failure to even consider one of the above factors as mitigation, irrespective of his refusal to consider the proffered material, invalidates the sentence.

31

**Proposition of Law Three:**

**In a capital case, the sentencing court may not consider non-statutory aggravating factors in the determination of the appropriate sentence.**

In the sentencing opinion of the trial court, not only did the court refuse to consider and give effect to mitigation properly before the court, but the court further created error by consideration of non-statutory aggravating factors.  In a weighing state such as Ohio, the consideration of aggravators not part of the statutory scheme is improper.  Lockett v. Ohio (1978), 438 U.S. 586; State v. Johnson (1986), 24 Ohio St. 3d 87.

In the trial court's R.C. 2929.03(F) opinion, it is not clear that the trial court understood the purpose or import of the sentencing opinion required by the above statute. The court believed that the statute required:

> The judge is required to review the evidence independently and to determine if the jury was mistaken, or misinterpretted or failed to take into account facts or a fact that in light of the absolute seriousness of the recommmendation that reasons exists [sic] wherein the imposition of the death penalty should not be sanctioned by the court.

(Opinion, p. 5)

The court did not understand that it was to independently weigh the statutory aggravators found by the jury and independently weigh available mitigation and determine if the aggravators outweighed the mitigation beyond a reasonable doubt.  It is not akin to a Crim.R. 29( C) motion where he finds the jury's finding is not supported by the sufficiency of the evidence.  In regards to this requirement, a jury's recommendation of death is irrelevant to the court's findings.

The trial judge then reviewed the facts of the case and determined that the jury's

32

finding of guilt of the charges and specifications was supported by the evidence. (Opinion, pp. 5-15)

The court then outlined the appellant's waiver of mitigation evidence. (Opinion, 15-16) The court gave some weight to Roberts not being the principal offender. (Opinion, p. 17) The court also gave "slight weight" to the fact that the victim may have been abusive to her. (Opinion, p. 18) This was because the abuse was unsubstantiated and because even if the actions were true, they "would not warrant the Defendant's actions in this case."

Puzzlingly, the court then referred to Robert's original unsworn statement, noting that she attacked the lead investigator in the case, accusing him of perjury, chastized the jury, and accused the prosecutor of anti-semitism and racisim. (Opinion, p. 19) The court believed that the statements about remorse were in direct contravention of Roberts' phone calls and letters stating otherwise. (Opinion, pp.19- 20)

Finally, the court gave slight weight to Roberts' behavior at trial, as was "courteous, pleasant and properly addressed the Court at all times." (Opinion, pp. 20)

The court concluded the mitigation was almost "completely overshadowed" by the found aggravators. (Opinion, pp. 21) The court concluded that:

> [T]his Court cannot see any other form of aggravated burglary where the weight of this particular aggravating circumstance could ever be greater. The evidence reveals that the aggravated burglary was committed for the sole purpose of killing Robert S. Fingerhut, pursuant to a planned and methodical execution scheme designed by the defendant and her codefendant and whereby the defendant would collect $550,000 in insurance proceeds. This is a most heinous form of aggravated burglary and is entitled to great weight.

(Opinion, pp. 22)

The problem with the above is that the judge based his determination on the nature

33

and circumstances of the specification, and not on the specification alone. The judge found death appropriate because this was the most "heinous form" of the specification. Heinousness in not a valid consideration due to the arbitrariness of the term.

The judge also found the second aggravator significant, relating to the robbery aggravator. The court determined because "the aggravated robbery was clearly committed to facilitate the escape from the Aggravated Murder, and is extremely close to being the worst form of aggravated robbery." (Opinion, pp. 22-23) Here again, the judges believe that the robbery occurred to facilitate the escape by the co-defendant rendered it, in his opinion, close to the worst form of the offense. The personal valuation of the form of the offense in both instances rendered that decision arbitrary and capricious under the federal constitution.

Although the jury must consider the nature and circumstances of the crime, it is well settled that the nature and circumstances of the crime may not be weighed against the mitigating factors. See State v. Wogenstahl, 75 Ohio St.3d 344, 356, 1996-Ohio-219; State v. Williams, 99 Ohio St.3d 493, 2003-Ohio-493.

The Supreme Court of the United States has consistently condemned the consideration of factors not permitted under a state's statutory scheme. Barclay v. Florida (1983), 463 U.S. 939, rehearing denied, 464 U.S. 874; Espinosa v. Florida (1992), 505 U.S. 1079, 1081(per curium). Misguiding a jury during the sentencing phase invites arbitrary and capricious sentencing Gregg v. Georgia (1976), 428 U.S. 153, 193-195; Stringer v. Black (1992), 503 U.S. 222, 231-235; Boyde v. California (1990), 494 U.S. 370, 380-381.

34

**Proposition of Law Four**

> **To avoid the appearance of impropriety or conflict, a judge whose conduct during a penalty phase hearing led to a reversal of that sentence must recuse himself or stay the proceedings while the disciplinary matters are pending against that judge.**

Even where there was insufficient evidence to support for an allegation of actual bias, a reasonable possibility that there might be an appearance of impropriety or partiality may warrant the disqualification of a county's entire bench. See, e.g., In re Disqualification of Calabrese (1991), 74 Ohio St.3d 1233; In re Disqualification of McMonagle (1990), 74 Ohio St.3d 1226; In re Disqualification of Corrigian (1989), 47 Ohio St.3d 602; In re Disqualification of Nadel (1989), 47 Ohio St.3d 604; In re Disqualification of Nugent (1987), 47 Ohio St.3d 601.

The sentencing of this case was reversed by this Court. The reversal was based upon this Court's failure to consider allocution and to independently prepare the required opinion pursuant to R. C. 2929.03(F). Roberts filed a motion for the trial judge to recuse himself as counsel became aware that the judge was facing disciplinary charges from this court. The judge refused to recuse himself and sentenced Ms. Roberts to death.

**A. The Roberts Decision Places The Court in a Position of Appearing to Compromise its Decision Making.**

The "integrity of our judicial system requires that litigants who appear before a judge have the confidence that their cause will be heard in a fair and impartial manner." In Re Disqualification of Celebrezze (1992), 74 Ohio St. 3d 1242, 657 N.E.2d 1348. The issue before the Ohio Supreme Court in Celebrezze was whether or not the trial court held a "predisposition of thought and opinion." Id. at 1348. After reviewing the record before it,

35

the Ohio Supreme Court stated in Celebrezze that it could not "conceive of a rule that would allow a judge to proceed to adjudicate a case when the question of the judge's bias or prejudice has not yet been resolved." Celebrezze at 1349.

The problem here is that the trial court was placed in an untenable position by the Roberts decision. The trial court is facing possible disciplinary action by the Supreme Court for the R. C. 2929.03(F) missteps. The trial court was open and forthright about this litigation. Thus, counsel was aware the trial judge was fighting the action. The disciplinary matter has not yet been decided by this Court.

A major dispute in the re-sentencing procedure is whether Ms. Roberts' is entitled to a full presentation of mitigation, including evidence not adduced at her original trial. The court indicated to all counsel that it believed that the mandate of the Roberts decision is narrow. The trial court believed that it cannot consider any new mitigation evidence except the allocution of Ms. Roberts herself. Considering the fact that evidence of considerable mitigation was uncovered during the pendency of the re-sentencing hearing, the restrictive reading was extremely prejudicial to the defense as evidenced by the re-sentence of death.

The reason the trial court should have recused itself is that there is an appearance of undue pressure on the court in the rendering of its decision. The trial judge may not have wanted to risk interpreting its reading of the Roberts Supreme Court mandate inconsistently with the Supreme Court while the disciplinary action is pending for fear of the decision adversely effecting his case. Had the court ruled in line with the defense request, there may have been the fear the Supreme Court may view the decision as an act of insolence, which may ultimately impact on the disciplinary decision.

36

The decision of a court, particularly in a death situation, should be free of all suspicion of undue influence from any source.  In order to avoid any appearance of impropriety, the trial court should have recused itself from sentencing Ms. Roberts.  The failure to consider any factors as mitigation is evidence of the pre-disposition of the trial court.  The failure of the trial court to recuse itself from the case deprived Roberts a fair sentencing hearing in violation of the Fifth, Eighth and Fourteenth Amendments.

37

**Proposition of Law Five:**

>**The failure to fully investigate and present all possible evidence of mitigation in a capital trial constitutes ineffective assistance of penalty phase counsel where the investigation would have revealed substantial evidence calling for a sentence of less than death.**

Both the Federal and State Constitutions guarantee a minimum standard of proficiency of a criminally accused's counsel. The Sixth Amendment of the United States Constitution guarantees that "in all criminal prosecutions, the accused shall enjoy the right...to take the assistance of counsel for his defense." In <u>Powell v. Alabama</u> (1932), 287 U.S. 45, the United States Supreme Court first recognized that a defendant has a right not only to the timely appointment of counsel but also to the quality of performance above a minimal level of effectiveness. Both State and Federal courts recognized that the failure of trial counsel to properly represent his or her client might affect the legitimacy of the fact finding progress just as errors by the court or prosecution might require the reversal of a conviction.

Here, the performance of Robert's counsel during the penalty phase fell below the professional norm in numerous instances. Although this issue is normally raised on postconviction, the standard for res judicata is somewhat confused in this state. As postconviction judges almost automatically find res judicata for this issue if any part of it could or should have been raised on direct appeal, capital litigators are raising it in both instances. As in every capital trial, some of the failures, such as failure to object, are on the record. Other aspects of defense counsel failures, such as the failure to investigate, are necessarily off the record. Then it is necessary to raise this aspect on postconviction pursuant

38

to R.C. 2953.21.

Roberts presents an unusual situation because she proffered evidence which should have been presented at the penalty phase hearing. As the proffer is part of the direct appeal record, it must be raised here for fear of procedural default should Roberts not be successful. Also, the proffered materials, the Social Security Records and statement of her son, Michael Raymond, were clearly available pre-trial. (Proffers of October 22, 2007 and September 20, 2007, respectfully) The materials themselves contain enough evidence in mitigation that the reliability of the sentence is called into question. The ineffectiveness of penalty phase counsel was not raised in Roberts I.

Death Penalty Standard for Performance of Counsel

In Wiggins v. Smith (2003), 539 U.S. 510, 123 S. Ct. 2527, the Supreme Court reaffirmed the principle that a reviewing court must consider the quality and extent of the investigation that underlies a 'strategic decision'. The court stated:

> As we established in Strickland, "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."

Id. at 33. Accordingly, "strategic decisions" should not be *post hoc* rationalizations," rather they should be an "accurate description of [counsel's] deliberations" prior to making their decisions. Id. at 31.

The failure to provide effective assistance is a fundamental constitutional error which undermines the entire adversary process. Strickland v. Washington (1984), 466 U.S. 668; Johnson v. Zerbst (1938), 304 U.S. 458.

39

> When determining whether counsel was ineffective, the reviewing court must:
> First, the defendant must show that counsel's performance was deficient. This
> requires a showing that counsel made errors so serious that counsel was not
> functioning as "counsel" guaranteed the defendant by the Sixth Amendment.
> Second, the defendant must show that the deficient performance prejudiced
> the defense. ***This requires showing that counsel's errors were so serious as
> to deprive the defendant of a fair trial, a trial whose result is reliable.***

Strickland, 466 U.S. at 687 (Emphasis added); Terry Williams v. Taylor (2000), 529 U.S.

362, 120 S. Ct. 1495, 1515. The Terry Williams decision, at footnote 17, reemphasized that

the "prejudice" component of the Strickland test focuses on the whether counsel's deficient

performance renders the result of the trial unreliable or the proceeding fundamentally unfair.

Strickland, 466 U.S. at 687. The focus is not on whether there is certainty that the result

would have been different.

The Sixth Circuit has also acknowledged that Wiggins' analysis applies to counsel's

failure to investigate. In Frazier v. Huffman (C.A.6, 2003), 343 F.3d 780, 794-795, *certiorari*

*denied* , Huffman v. Frazier (2004), 541 U.S. 1095, 2004 U.S. LEXIS 4151, that Court issued

a writ where defense counsel failed to investigate a brain defect that may have directly

effected defendant's actions. This Court determined that:

> Under Strickland, "strategic choices made after less than complete
> investigation are reasonable precisely to the extent that reasonable
> professional judgments support the limitations on investigation." 466 U.S. at
> 690-91. This court has commented when evaluating facts similar to those here
> that "the inadequacy of the attorney's investigation . . . was manifest."
> Campbell v. Coyle, 260 F.3d 531, 553 (6th Cir. 2001)   Our conclusion is
> bolstered by the Supreme Court's recent decision in the capital case of
> Wiggins v. Smith, 123 S. Ct. 2527 (2003).
>                                               * * *
>
> In Wiggins, as in the present case, "any reasonably competent attorney would
> have realized that pursuing these leads"—in Wiggins's case, allusions to his
> horrible childhood; was necessary . . . In sum, no reason at all has been

40

adduced to justify the failure of Frazier's trial counsel to investigate and present evidence of his brain impairment, and to instead rely exclusively on an argument of residual doubt. The state court did not articulate one. Nor can we fathom one. Absent any reason to explain or justify such a trial strategy, we conclude that the state court's determination that Frazier's trial counsel had performed in a competent manner during the penalty phase was not simply erroneous, but unreasonable. See Wiggins, 123 S. Ct. at 2538 (rejecting as unreasonable a state court's determination that trial counsel performed adequately where, although no trial strategy could be articulated to justify counsel's unreasonable failure to investigate and present evidence of their client's terrible childhood, the state court "merely assumed that the investigation was adequate"). . .

Likewise, the record in Roberts' case reveals no strategic reason for not fully investigating or presenting the mitigation available. The SSA records reveal that the victim of the offense, Robert Fingerhut, advocated her receiving benefits because of how she changed after the latest automobile accident. She did not have the emotional stability to work anymore. She had lost some of her memory. The records reveal severe depression, bi-polar disorder, low intelligence poor mental health, including hallucinations. In fact, the records indicated that she had been an in-patient for mental deficiencies at a local hospital. (See Proposition of Law I)

Although Roberts did attempt to restrict the evidence presented in mitigation at that time, there is no evidence that she was even aware of the social security records. As this Court ruled in Roberts I that she did not waive mitigation, it cannot be fairly argued that Roberts would not have allowed counsel to present the evidence. In fact, in her remand sentencing hearing, she told the trial court many of the topics contained in the records. See Proposition of Law II, above. If there is a lesson to be learned from Williams, Wiggins and Frazier, it is, when it comes to mitigation, it is an unreasonable strategy for defense not

41

investigate all available mitigation and present it to the jury.

In fact, according to Guideline 10.7 of the revised ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases, counsel has an absolute duty to conduct a thorough penalty phase investigation, even if the client objects or otherwise instructs counsel:

> **Guideline 10.7 Investigation**
>
> A.   **Counsel at every stage have an obligation to conduct thorough and independent investigations relating to the issues of both guilty and penalty.**
>
> * * * *
>
> 2.   **The investigation regarding penalty should be conducted regardless of any statement by the client that evidence bearing upon penalty is not to be collected or presented.**

In the Commentary section following this Guideline, the ABA further explains the importance of counsel's efforts regarding mitigation investigation:

> Counsel's duty to investigate and present mitigating evidence is now well-established. The duty to investigate exists regardless of the expressed desires of a client. Nor may counsel "sit idly by, thinking that investigation would be futile." Counsel cannot responsibly advise a client about the merits of different courses of action, the client cannot make informed decisions, and counsel cannot be sure of the client's competency to make such decisions, unless counsel has first conducted a thorough investigation with respect to both phases of the case. [footnotes omitted.]

The Supreme Court in Wiggins, supra, relies upon and arguably adopts these guidelines and mandates counsel follow these guidelines in order to render constitutionally-effective assistance of counsel. See, Sixth Amendment – Ineffective Assistance of Counsel:

42

Wiggins v. Smith. 117 Harv. L. Rev. 278 (Nov. 2003).

**Proposition of Law Six:**

> **The trial court may not conduct a sentencing hearing for a death-eligible defendant where the record does not establish by a preponderance of the evidence that the defendant is legally competent.**

The trial court permitted the allocution and sentencing of Ms. Roberts without a sufficient indicia of her competency. Specifically, there was insufficient evidence of her ability to assist counsel in preparation for the hearing. The failure of the trial judge to appoint an independent psychologist as requested by Roberts exacerbated the problem.

**Competency Standard**

R.C. 2945.37(G) states:

> "A defendant is presumed to be competent to stand trial. If, after a hearing, the court finds by a preponderance of the evidence that, because of the defendant's present *mental condition*, the defendant is *incapable* of understanding the nature and objective of the proceedings against the defendant *or* of assisting in the defendant's defense, the court *shall* find the defendant incompetent to stand trial and shall enter an order authorized by section 2945.38 of the Revised Code." (Emphasis added).

The United States Supreme Court has characterized the test for competence to stand trial in the following manner: "…the test must be whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he

43

has a rational as well as factual understanding of the proceedings against him." <u>Dusky v.</u>
<u>United States</u> (1960), 362 U.S. 402. See also, <u>State v. Williams</u> (1997), 116 Ohio App.3d
237. The <u>Dusky</u> standard has been adopted in Ohio by the this Court. <u>State v. Berry</u> (1995),
72 Ohio St.3d 354. Consequently, the essential feature of a determination of a defendant's
competency to stand trial from the perspective of the statute and case law is the defendant's
ability to be rationally engaged in the trial process.

      Fundamental principles of fairness and due process demand that a criminal defendant
who is not legally competent may not be tried or convicted of a crime. <u>Pate v. Robinson</u>
(1966), 383 U.S. 375; <u>State v. Berry, supra.</u> It is established law that, "...a person whose
mental condition is such that he lacks the capacity to understand the nature and object of the
proceedings against him, to consult with counsel, and to assist in preparing his defense may
not be subjected to a trial...." <u>Drope v. Missouri</u> (1975), 420 U.S. 162. The conviction of an
accused while he is not legally competent to stand trial violates due process of law. <u>Bishop v.</u>
<u>United States</u> (1956), 350 U.S. 961.

<u>Present Case</u>

      In the case at bar, the appellant, through counsel, submits that there was *not* reliable,
credible evidence that Donna Roberts was capable of rationally assisting in her own defense,
and, therefore, she should not have been tried or convicted of a crime or face the penalty
phase of a capital trial. The issue is not whether she was mentally ill, or even to what extent
she was mentally ill; rather, the issue was whether she could rationally participate in the trial

44

process.  All of the experts agreed that the appellant suffered from some mental condition.

The trial court refused to grant an independent evaluation as requested by defense counsel.  Defense counsel requested the independent psychologist on December 6, 2006.  At the competency hearing of October 22, 2007, Dr. Thomas Gazley of the Trumbull County Forensic Diagnostic Center noted that he had interviewed Ms. Roberts for two and one-half hours.  He reviewed the mental health file at the prison.  He also reviewed the director of the psychology department at the prison.  Finally, he had a conversation with defense counsel.  It was the doctor's opinion that she could understand the alternatives available for sentencing and to provide counsel with any mitigating circumstances, should she desire to do so.  (Competency Hearing, T. 21, 22)

Dr. Gazley stated that "I don't know if there is such a thing as a competency to be sentenced criteria."  He could not comment on whether the auto accident suffered in approximately 2000 would influence her competency.  (Competency Hearing, T. 25)  The doctor also admitted that he had no direct observation of her ability to interact with defense counsel.  However, because she could provide him with a coherent account of her own perceptions, he came to the conclusion that she would be able to do so with defense counsel.  (Competency Hearing, T. 27)

Dr. Gazley did not interview family members about Donna's history.  He remembered a discussion about childhood sex abuse but could not remember if it came from the records or Donna.  He did not recall seeing any reference to Donna's suffering from post-traumatic

45

syndrome but acknowledged that the syndrome sometimes was caused by childhood sex abuse. (Competency Hearing, T. 28) He did not see in the records any reference to Donna going through hallucinations such as the referral in the prison for her on March 26, 2006. The report indicates that she was hallucinating about seeing ants. She put down coffee grounds to get rid of the ants. She appeared disheveled without makeup, mumbling imperceptibly. (See Proposition of Law I, proffered prison records of March, 2006)

The doctor did diagnose Donna with a bi-polar disorder, but not with schizophrenic features, which would suggest possible hallucinations. (Competency Hearing, T. 31) He did not see any references to schizophrenia in the records. He did acknowledge that she consistently possessed suicide ideation. (Competency Hearing, T. 31)

Dr. Gazley did not know Donna's psychiatric history. He did not review mental health evaluations prior to her conviction. (Competency Hearing, T. 33) He did not review the records from the Social Security Administration (Competency Hearing, T. 34) He did not think that Donna receiving mental disability benefits would have an affect on his opinion. (Competency Hearing, T. 34) The doctor did not believe that if neurological impairment existed that it would not have changed his opinion because Ms. Roberts was able to provide a coherent, relevant, reasonable, intelligent response to what the court needed to know. (Competency Hearing, T. 37)

What was missing from the hearing was any information on Robert's ability to work with and assist counsel in her case. There was simply no testimony relevant to that issue.

46

Competency is a two pronged test, not just an issue of mental illness.

As stated earlier, the United States Supreme Court has characterized the test for competence to stand trial in the following manner: "the test must be whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational as well as factual understanding of the proceedings against him." Dusky v. United States, (1960), 362 U.S. 402. Without evidence that Roberts could properly assist counsel, the hearing should not have been conducted. The conducting of the penalty phase while she was not competent was in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

**Proposition of Law Seven:**

> **The trial court may not conduct a penalty phase hearing for a death-eligible defendant where the record does not establish by a preponderance of the evidence that the defendant is legally competent.**

Ms. Roberts was not competent to make decisions at her penalty phase hearing of the original trial. As the result, the decisions made by her and statements made by her were illogical, disjointed and self-defeating. She was unable to assist counsel to represent her in a meaningful fashion. She was unable to address the jury or understand the procedures which resulted in her receiving the death penalty. The conducting of the penalty phase while she was not competent was in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

47

The record reflects a history of depression with suicidal tendencies. This is consistent with Robert's refusal to cooperate with counsel at the penalty phase presentation to the jury.

R.C. 2945.37(G) states:

"A defendant is presumed to be competent to stand trial. If, after a hearing, the court finds by a preponderance of the evidence that, because of the defendant's present *mental condition*, the defendant is *incapable* of understanding the nature and objective of the proceedings against the defendant *or* of assisting in the defendant's defense, the court *shall* find the defendant incompetent to stand trial and shall enter an order authorized by section 2945.38 of the Revised Code." (Emphasis added).

Again, the Dusky case states with regard to competency that "the test must be whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational as well as factual understanding of the proceedings against him." Dusky v. United States, (1960), 362 U.S. 402. See also, State v. Williams (1997), 116 Ohio App.3d 237.

In the case at bar, the appellant, through counsel, submits that there was *not* reliable, credible evidence that she was capable of rationally assisting in her own defense, and, therefore, she should not have been tried or convicted of a crime. Much of the evidence of her incompetence was not available until the remand sentencing procedure as the records were not procured for her trial. See Proposition of Law I. Thus, the original examiner who determined her competency was unaware of her complete history of mental illness or the extent of her head trauma, let alone her low intelligence testing.

48

In retrospect, Roberts illogical behavior at her trial becomes more understandable. Because of her mental health problems, Roberts was completely unable to work with her counsel, resulting in her ordering her counsel to not participate in penalty phase activities and to provide the jury with a self-defeating unsworn statement in which she attacked everyone and asked for death.

Ms. Roberts used the trial as her stand to show to the world that racial inequality exists. Because her co-defendant Nathaniel Jackson received the death penalty, then she too should receive it. She so instructed the jury of this fact. (T.6256, 6263).

In her unsworn statement, Roberts explained to the jury that she was not providing any mitigation (T.6253-6254). She wanted to expose people that she believed were untruthful (T.6255).

At that time, the record did not indicate Roberts' head trauma, low intelligence level, history of depression, history of suicide attempts, possible post-traumatic stress syndrome from childhood abuse, bi-polar diagnosis and other mental health issues found in the social security records. Roberts asked for death, another attempt at suicide, "that is what I hope for" (T.6232) This is completely consistent with her suicide ideation.

At the time of her competency examination, the results from Dr. Donald Delgi, including her I.Q testing, were unknown. At the time of the competency examination, the fact that Roberts was receiving SSI benefits for mental disability was not known or discussed by counsel for either party or addressed by the psychologist.

49

At the time of the competency hearing, the 24-point disparity between verbal and performance IQ, which strongly suggests head trauma suffered from severe automobile accidents, was unknown to the parties.

The trial court failed to conduct a full evidentiary hearing, where some of this material may have been located and presented.   It is admittedly speculative that the social security records might have been found as Ms. Roberts was not cooperative and defense counsel was not discussing much with the family of Ms. Roberts. This is again evidence of her inability to assist counsel in her defense of the death penalty, or case for that matter.

In United States v. Blohm (1984), 579 F. Supp. 495, the issue of competence to stand trial was addressed in a case that is factually similar to the case at bar.  In Blohm, the defendant believed that his criminal prosecution was merely an opportunity to publicize and expose a conspiracy related to an unrelated and meritless lawsuit in which he had been the plaintiff.  Blohm was charged in his criminal case with mailing a threatening letter to a federal judge.

Blohm was examined by professionals on the issue of competence.  During the subsequent competency hearing, Blohm sought the removal of his attorney, in that the attorney wanted to defend with a particular strategy that excluded trial, while Blohm insisted upon proceeding to trial.  The court complied with Blohm's request.  There remained an issue of whether Blohm had the capacity to make decisions in his own best interest.  The federal test for competence under Section 4244, Title 18, U.S.Code is remarkably similar to R.C.

50

2945.37(G) and is based upon the decision in <u>Dusky v. United States</u>, supra.

It was determined that Blohm did, in fact, have a factual understanding of the proceedings in the criminal case, including statutory law and court procedures. The essential issue before the court was Blohm's rationality which the court determined to be an objective assessment based upon the average person's perspective of rationality. Blohm believed that he would be acquitted when the jury heard evidence of the conspiracy that he felt was arrayed against him. The court stated: "The issue is not his ability to understand, in the sense of being able to recite the legal consequences of certain acts, but rather to evaluate the realities of his situation in order to assist his counsel in his defense." <u>United States v. Blohm</u>, <u>supra</u>, at 500, 501.

In the final analysis, the court's determination of incompetence, contrary to the professionals' findings, was based upon Blohm's own behavior. That behavior included an unshakable, obsessive fixation upon factual claims of a conspiracy that were irrational and false in nature and not based in objective reality. The potential dangers of a loss at trial were simply not important to Blohm, who viewed a trial as a forum in which he would be able to expose the conspiracy against him. Blohm's delusional thinking was beyond his control. He was incompetent to stand trial.

51

## CONCLUSION

Defendant-appellant, Donna Roberts,  respectfully requests that this Honorable Court reverse the sentence of death and find a life sentence to be appropriate.  In the alternative, defendant-appellant respectfully requests that this Court reverse the sentence of death and remand her case for a new sentencing hearing with appointment of a different judge.  As this new judge would not have heard the original hearing evidence, it is requested that a full penalty determination hearing be ordered before a newly selected jury.

Respectfully submitted,

DAVID L. DOUGHTEN

JEFFREY J. HELMICK

Counsel for Appellant

52

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2065

## CERTIFICATE OF SERVICE

A copy of the foregoing appellant's Brief was served upon Dennis Watkins, Trumbull County Prosecutor and/or LuWayne Annos, Esq. Assistant Trumbull County Prosecutor, Administration Building, 160 High Street, Warren, Ohio 44481, by Regular U. S. mail on this 12th day of September, 2008.

DAVID L. DOUGHTEN

JEFFREY J. HELMICK

Counsel for Appellant

53

# APPENDIX

IN THE SUPREME COURT OF OHIO

No. 07-2288

| | | |
|---|---|---|
| State of Ohio, | : | |
| | : | |
| Appellee, | : | On Appeal from the Trumbull |
| | : | County Court of Common Pleas |
| v. | : | Case No. 2001 CR 0793 |
| | : | |
| Donna Roberts, | : | **DEATH PENALTY APPEAL** |
| | : | |
| Appellant. | : | |

---

### NOTICE OF APPEAL OF APPELLANT DONNA ROBERTS

---



FILED

DEC 1 1 2007

CLERK OF COURT
SUPREME COURT OF OHIO

DENNIS WATKINS, ESQ.
Trumbull County Prosecutor
160 High Street
Warren, OH 44481
(330) 675-2426

COUNSEL FOR APPELLEE

DAVID L. DOUGHTEN, ESQ.
Regis No. 0002847
4403 St. Clair Avenue
Cleveland, Ohio 44103
(216) 361-1112

COUNSEL FOR APPELLANT

A - 1 of 36

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2068

**Notice of Appeal of Appellant Donna Roberts**

Now comes the appellant, Donna Roberts, and hereby gives Notice of Appeal to the Supreme Court of Ohio from a judgment of the Court of Common Pleas of Trumbull County journalized on November 6, 2007. The appellant is appealing her sentence of death pursuant to S.Ct. Prac. R. II. Section I, (C)(1) and is filed as a matter of right.

Respectfully submitted,

David L. Doughten
Counsel for Appellant

**Proof of Service**

A copy of the foregoing Petitioner's Motion was served upon Dennis Watkins, Trumbull County Prosecutor and/ Christopher Becker, Esq. Assistant Trumbull County Prosecutor, Administration Building, 160 High Street, Warren, Ohio 44481, by Regular U. S. mail on this 10 day of December, 2007.

DAVID L. DOUGHTEN
Counsel for Appellant

ii

A - 2 of 36

# IN THE COURT OF COMMON PLEAS
## TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| **STATE OF OHIO,** | ) | **CASE NO. 01-CR-793** |
| | ) | |
| **Plaintiff** | ) | **JUDGE JOHN M. STUARD** |
| | ) | |
| -vs- | ) | **DEATH PENALTY** |
| | ) | |
| **DONNA MARIE ROBERTS,** | ) | **SENTENCED TO OHIO** |
| **INMATE #W055276** | ) | **REFORMATORY FOR WOMEN** |
| | ) | |
| **Defendant** | ) | **ENTRY ON RE-SENTENCE** |

On October 29, 2007, the Defendant having been brought into Court, and being fully advised in the premises and being represented by counsel, Attorney David L. Doughten and Attorney Robert A. Dixon, and the State of Ohio being represented by Assistant Prosecuting Attorney Christopher D. Becker and Assistant Prosecuting Attorney Kenneth N. Bailey, for purposes of re-sentencing, pursuant a remand from the Ohio Supreme Court.

On 8th day of April, 2003, the Defendant was brought into Court for a trial before a petit jury and after due deliberation was found guilty on May 28, 2003 of Count One: Complicity to Commit Aggravated Murder (O.R.C. §§2923.03(A)(2), 2903.01(A) and 2941.14(C)) of Robert S. Fingerhut, with two (2) separate Specifications of Aggravating Circumstances, to wit: Specification No. 1: Aggravated Burglary (O.R.C. §2929.04(A)(7)), and Specification No. 2: Aggravated Robbery (O.R.C. §2929.04(A)(7)); Count Two: Complicity to Commit Aggravated Murder (O.R.C. §§ 2923.03(A)(2), 2903.01(B) and 2941.14(C)) of Robert S. Fingerhut, with two (2) separate Specifications of Aggravating Circumstances, to wit: Specification No. 1: Aggravated Burglary (O.R.C. §2929.04(A)(7)),

**VOL 1154 PAGE 304**

A - 3 of 36

and Specification No. 2:  Aggravated Robbery (O.R.C. 2929.04(A)(7)); Count Three: Complicity to Commit Aggravated  Burglary (F1) With Firearm Specification (O.R.C. §2923.03(A)(2), 2911.11.(A)(1)(2) and 2941.145); and  Count Four: Complicity to Commit Aggravated Robbery (F1) With Firearm Specification (O.R.C. §2923.03(A)(2), 2911.01(A)(1)(3) and 2941.145).  Thereafter, Count Two was removed from the Jury pursuant to a Motion to Dismiss by the State.

On June 4, 2003, the Defendant having been brought into Court to give evidence in mitigation on Count One of the indictment, and after arguments of counsel and instructions of law, and after due deliberation, it was the finding and recommendation of the Jury on June 4, 2003, that the sentence of death be imposed on the Defendant.  The original sentencing hearing was held on June 20, 2003.

On October 29, 2007, pursuant to the Ohio Supreme Court's opinion in State v. Roberts (2006) 110 Oh. St 3d 71, the Defendant's re-sentencing hearing was held and she was sentenced to Death on October 28, 2008 on Count One; and imprisoned therein for the stated prison term of ten (10) years on Count Three; plus a mandatory term of three (3) years on the Firearm Specification to be served prior to and consecutive to the sentence imposed in Count Three; ten (10) years on Count Four, plus a mandatory term of three (3) years on the Firearm Specification to be served prior to and consecutive to the sentence imposed in Count Four, sentence in Count Four to be served consecutively to the sentence imposed on Count Three. Firearm Specifications in Count Three and Count Four shall merge as one sentence in Count Three as a matter of law.

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2071

The Court further advised the Defendant of her right to appeal pursuant to Criminal Rule 32(B).

The OHIO REFORMATORY FOR WOMEN shall take note that the Defendant has been incarcerated in the Trumbull County Jail pursuant to these charges from December 21, 2001 to June 26, 2003, and in the Ohio Reformatory for Women from June 26, 2003 to date.

_11/6/07_
DATED

HONORABLE JOHN M. STUARD
JUDGE, COURT OF COMMON PLEAS
TRUMBULL COUNTY, OHIO

**THE CLERK OF COURTS IS HEREBY ORDERED TO SERVE COPIES OF THIS ENTRY TO ALL COUNSEL OF RECORD AND THE BUREAU OF SENTENCE COMPUTATION, P. O. BOX 450, ORIENT, OHIO 43146.**

**You are hereby notified that you have been convicted of a felony of violence and pursuant to Section 2923.13 of the Ohio Revised Code, you are prohibited from acquiring, having, carrying or using any firearm or dangerous ordinance.**

11-6-07
Copies to:
Pros.
D. Doughten
Bureau of Sentence Computation



VOL **1154** PAGE **306**

A - 5 of 36

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2072

IN THE COURT OF COMMON PLEAS
TRUMBULL COUNTY, OHIO
CASE NO. 01-CR-793

STATE OF OHIO,                    )

     Plaintiff.                )

vs.                               )          JUDGMENT ENTRY

DONNA ROBERTS,                    )

       Defendant            )


This matter is before the Court on remand from the Supreme Court of Ohio pursuant to the Court's opinion and Order on Remand. See State v. Roberts (2006) 110 Oh.Std.3d 71. The remand is quite specific (paragraph 167) wherein having found no prejudicial error in regard to Defendant Roberts' conviction, the conviction and judgment of the Court was affirmed.

The reviewing court went on to state the opinion that the administrative act of typing this Court's opinion evaluating of the appropriateness of the death penalty as required by R.C. 2929.03(F) was defective. The Supreme Court apparently thought the Prosecution participated in the Court's conclusions as set forth in the final opinion.

The last issue on remand was to instruct this Court to

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2073

2

provide Roberts with her right of allocution before reimposing

sentence.

This writer has presided over the trials of each of the

co-Defendants, Roberts and Jackson.  He has reviewed and

decided the appropriateness of the death penalty option in

both cases as required by R.C. 2929.03 and now does so again

as ordered by the Ohio Supreme Court.

There is perhaps no case in the annals of Criminology

where the perpetrators wrote personal letters to each other

outlining in great detail their plan to kill another person,

made numerous phone calls which they knew were been recorded,

yet still talked of their plans, and one, the Defendant

herein, refused to allow mitigating evidence to be offered on

her behalf but insisted in her unsworn summation to the jury

that it invoke the death penalty.

On May 28, 2003, a Trumbull County Petit Jury, after

hearing the extensive evidence presented by the Prosecution,

returned a unanimous verdict finding the Defendant, Donna

Marie Roberts, guilty of two counts of complicity to Commit

Aggravated Murder.  The victim, Robert S. Fingerhut, was the

ex-husband and domestic partner of the Defendant at the time

of his death.  Each count contained two specifications of

aggravating circumstances, listed in Revised Code 2929.04(A).

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2074

3

Counts One and Two of the indictment merge for
sentencing purposes.  The State elected to dismiss Count Two
of the Specification thereto prior to the commencement of the
mitigation phase.  This Court for purposes of this opinion,
addresses the conviction of the Defendant on the first count
of the indictment wherein she purposely and with prior
calculation and design caused the death of Robert S.
Fingerhut.

The mitigation or second phase of the trial began on
June 4, 2003.  The jury, after deliberation, unanimously found
the State had proven beyond a reasonable doubt that the
aggravating circumstances, to wit, Specification One to Count
One, that the Defendant was a complicitor in committing or
attempting to commit or in fleeing immediately after
committing, or attempting to commit aggravated burglary, and
that the Defendant committed the aggravated murder with prior
calculation and design.  The jury also found by evidence
proven beyond a reasonable doubt as to Specification Two to
Count One that the Defendant was a complicitor in committing
or attempting to commit or in fleeing immediately after
committing or attempting to commit aggravated robbery.  The
jury further found by proof beyond a reasonable doubt that the
Defendant committed the Aggravated Murder with prior

A - 8 of 36

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2075

4

calculation and design.  The jury further found the
aggravating factors outweighed the mitigating factors and
returned two verdicts recommending the death sentence.

This Court is obligated to review the evidence presented
in this case and to review that evidence independently without
regard to the findings of the jury.  The purpose of such
independent review is for the Court to weigh the aggravating
circumstances of each specification against any mitigating
factors that may be present in favor of Defendant.

This Court has independently reviewed this case on a
prior occasion, and has independently reviewed the present
case once more, in keeping with the opinion of the Ohio
Supreme Court.

There are many people who abhor the imposition of the
death penalty and many others who are of the opinion that the
death penalty is appropriate if done according to law as
prescribed by our state legislature, Rules of Procedure,
Evidence and by both our State and Federal Constitutions.

No matter what any particular judge's opinion may be on
the matter, the law under review is quite clear that upon a
jury returning its recommendation of the death penalty, the
sitting judge must re-weigh the evidence presented to the jury
upon which the judgment was determined.  The judge is required

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2076

to review that evidence independently and to determine if the jury was mistaken, or misinterpreted or failed to take into account facts or a fact that in light of the absolute seriousness of the recommendation that reasons exists wherein the imposition of the death penalty should not be sanctioned by the court.

The evidence presented in this trial Court showed an ex-wife who had a reason, and put into play a plan, to have her ex-husband murdered so as to collect $550,000 in life insurance proceeds. Defendant's plan to murder can reasonably be characterized as unimaginative and naive in concept and ill-fated and botched in its implementation.

The Defendant had become involved romantically and sexually with her co-defendant, Nathaniel Jackson, several months before the murder. Jackson was incarcerated in an Ohio State prison on an unrelated offenses but Defendant and he began written correspondence for at least the last three months before his release. The evidence presented nineteen collect telephone calls from Jackson's prison to Defendant. Throughout the written correspondence and the recorded phone calls, the Defendant and Jackson planned the murder.

As discussed in the phone conversations and letters written to each other and presented in evidence, the plan was

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2077

6

that Defendant would pick up co-defendant Jackson from prison on December 9, 2001, take him to the Wagon Wheel Motel in Boardman, Ohio, rent a room with a mirrored ceiling and Jacuzzi tub where they would have sexual relations.  The Defendant would obtain handcuffs, a firearm, ski mask, leather gloves to conceal fingerprints and would provide a means of access to Defendant's residence so Jackson could abduct the victim, take him to another location and kill him.  The conspirators discussed forcing the victim to watch the Defendant perform oral sex on Jackson before executing the victim.

In order to prove an alibi for herself, Roberts traveled by automobile to various retail outlets and entered the stores knowing she would be recorded on the various store video security cameras.  This would also establish a time line for her whereabouts at the time of the pending murder.

Roberts also, during her shopping trip, took the time to call the Greyhound bus station, which her ex-husband owned and operated to be sure Fingerhut left work on time, i.e, 9:00 p.m.

Roberts provided Jackson with a cell phone in order to co-ordinate the execution of the plan according to schedule.

Jackson was able to enter the Fingerhut house by the key

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2078

7

provided by Roberts, but found upon confronting Fingerhut that the victim was also armed.  During the confrontation and struggle that ensued, Jackson was shot in his left index finger.  Jackson then shot Fingerhut three times with one fatal shot to the head.  Fingerhut's keys were taken by Jackson and he drove the deceased's Chrysler 300M to Youngstown, Ohio, where it was eventually found within three blocks of where Jackson was arrested on December 20, 2001.

Various phone calls continued between Defendant and Jackson during the hours of 9:30 p.m. to 12 midnight on December 11, 2001.  Between 9:30 p.m. and 10:30 p.m., the Defendant drove Jackson to the Days Inn in Boardman, Ohio, rented a room for him and treated his wound.  Later the hotel cleaning staff would find bloody bandages and medical supplies in this room which were retrieved by the police.

Roberts then returned to the residence in Howland Township, Trumbull County, Ohio, and found her ex-husband's body inside the main door leading from the garage.  Roberts then called 911 to report the murder and when the police arrived, as she had done on the 911 call, she feigned her shock and grief according to the plan laid out in her letters to Jackson.

The Howland Township police as they arrived and started

A - 12 of 36

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2079

8

their investigation found no sign of forced entry. Beside the corpse was found a revolver and the victim had two wallets containing large sums of cash with credit cards. The house contained other valuables but nothing could be identified as missing other than Fingerhut's Chrysler automobile.

Roberts upon request granted permission to the police to search the house and her vehicle. The search turned up approximately 140 letters from Jackson to Roberts in her dresser and approximately 140 letters from Roberts to Jackson in the trunk of Roberts car in a paper bag bearing Jackson's prison number.

Also during the following days of investigation, the police obtained nineteen recorded telephone conversations between the Defendant and Jackson. There were approximately three hours of phone conversation which are automatically recorded by the prison when inmates such as Jackson speak by phone to another person outside the prison. The tapes revealed a continuing and evolving plan to kill Fingerhut within days of Jackson's release from prison.

When Jackson was arrested in Youngstown, Ohio, a pair of black leather gloves with fleece lining were recovered from that home. The same type of gloves as mentioned in their letters. One of the gloves had gunshot residue and a hole in

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2080

9

the left index finger and what appeared to be possibly blood in the area of the hole.  The damage to the glove matched the injury Jackson had sustained to his finger.

Fingerhut's automobile having been stolen by Jackson when checked by forensic personnel revealed a DNA analysis match of the DNA profile of both Jackson and Fingerhut.  Also the blood samples from the Boardman Days Inn matched the DNA profile of Jackson.

The State also produced evidence showing Roberts had recently checked on Fingerhut's life insurance, upon which she was primary beneficiary, to be sure the policy was still in effect.  Also that Roberts promised to purchase a new Cadillac for Jackson once the proceeds were collected.  Roberts repeatedly told Jackson how much she hated her ex-husband with whom she continued to live.

Defendant told the police during their investigation of the crime scene on December 12, 2001, that she had been shopping prior to returning home and gave them the name and location of her activities.  The police were able to confirm she was at Wal-Mart at approximately 9:30 p.m. that evening. She failed to mention she had taken Jackson to the Days Inn in Boardman, Ohio.

The police asked Roberts to provide a list of suspects

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2081

10

she felt may have wanted to kill Fingerhut. Again she failed to mention Nathaniel Jackson in the list she provided. When asked specifically about Jackson, she replied, "Oh, I almost forgot about him."

The investigation found that Defendant and Jackson had worked together throughout the afternoon and evening of December 11, 2001. The evidence presented was that Defendant had taken Jackson to get a hair cut that day, had eaten dinner at the Red Lobster, and he was with her for a portion of the day at the Warren Greyhound bus terminal in Warren, Ohio, which Roberts managed for Fingerhut. Roberts had told the police, however, that she had last seen Jackson on Monday, December 10, 2001, and had spoken with him on the morning of December 11, 2001.

Frank Reynold, an employee or hanger-on at the Youngstown bus terminal testified he was present a day or so before the murder and saw Roberts approach and ask Fingerhut for $3,000. Fingerhut refused to give her the money. Roberts had mentioned in one of her letters to Jackson that she was tired of the "grinch" doling out money to her.

Roberts also accused an ex-convict with whom she had a sexual liaison within her home shortly before Jackson's release from prison of stealing a .38 caliber weapon from her.

**VOL 1153 PAGE 431**

A - 15 of 36

11

She informed the police two .38 caliber weapons were missing from the house. The person accused of the theft, Santiago Mason, denied the allegation.

In this case, the Jury found the existence beyond a reasonable doubt, of two aggravating circumstances, pursuant to Section 2929.04(A)(7) of the Revised Code, to-wit, Specification One to Count One, that the Defendant was a complicitor in committing or attempting to commit or in fleeing immediately after committing or attempting to commit aggravated burglary, and that the Defendant committed the aggravated murder with prior calculation and design. And Specification Two to Count One, that the Defendant was a complicitor in committing or attempting to commit, or in fleeing immediately after committing or attempting to commit aggravated robbery, and that the Defendant committed the Aggravated Murder with prior calculation and design.

With respect to the aggravating circumstances relating to the aggravated burglary, the evidence presented at trial proved that the Defendant allowed Jackson to trespass in Fingerhut's residence, located at 254 Fonderlac Drive, Howland Township, Trumbull County, Ohio, with the specific purpose of killing Fingerhut with prior calculation and design.

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2083

12

Jackson was wearing leather gloves and armed with a
firearm, which he used to shoot the victim three times causing
his death.  The gloves and the ski mask, firearm and access to
the house were all provided by the Defendant with prior
calculation and design, as evidenced by the telephone calls
and letters introduced by the State.  The Defendant assured
the victim's arrival, by checking at his place of employment,
and determining when he left work by calling him on the
telephone while he was on his way home.

The Defendant also checked on the status of the life
insurance policies and determined that the premiums paid were
up to the end of 2001, and advised Jackson of the same.
Pursuant to her plan to kill Fingerhut, the Defendant took
Jackson to a motel room in Boardman, Ohio, and rented the room
for one week which was consistent with the plans discussed in
the letters and phone calls prior to the murder.

Upon discovering Fingerhut's body, the Defendant feigned
grief exactly as discussed in her letters with Jackson.
During the course of the investigation, the Defendant
continually threw out red herrings to the Howland Policy by
mentioning a number of possible suspects, including alleged
homosexual lovers of the victim, her ex-boyfriends,
crazy people from the bus terminal in Youngstown, and

A - 17 of 36

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2084

13

Santiago Mason.  The Defendant only mentioned Jackson, the
convict she had corresponded with by letters for three months,
spoken to on the telephone 19 times, picked up from prison and
engaged in sexual relations with just two days prior, taken to
get a haircut and ate dinner with just hours previously and
the person whom she had driven to Boardman, Ohio on the night
of the murder, and who had an injured index finger, only after
the investigators confronted her with his name.

From the aforementioned evidence, the Court concludes
that the Defendant committed the aggravated murder as a
complicitor, while committing or attempting to commit or in
fleeing immediately after committing or attempting to commit
aggravated burglary.  And that the Defendant committed the
aggravated murder with prior calculation and design.  With
respect to the aggravating circumstance related to the
aggravated robbery, after Jackson had murdered the victim, he
took the victim's set of keys and the silver Chrysler 300M.
Although the planned crime involved Jackson stealing
Fingerhut's car in order to kidnap Fingerhut, it is clear that
Jackson was to take the victim's car to flee the residence.

The fact that Fingerhut struggled with Jackson in the
residence and was killed in the residence, in no way, negates
the Defendant's plan that Jackson should steal the victim's

VOL 1153 PAGE 434

A - 18 of 36

14

car to facilitate Jackson's own flight from the residence.
Ample DNA evidence was presented indicating that Jackson was
in the silver Chrysler 300M following the murder of Fingerhut.
Additionally, phone records were introduced showing that
Jackson and the Defendant called each other after the murder
to check on the status of the plan.

Finally, the vehicle was recovered a few blocks from the
location where Jackson was arrested.  The Defendant, in
accordance with the plan to kill Fingerhut, paid for a hotel
room for Jackson following the murder.  The fact that the
silver Chrysler 300M was found abandoned with the victim's
keys in the ignition, coupled with the fact that the victim's
wallet, money, credit cards and other valuables were not
stolen, clearly shows that the plan to steal the victim's car
with a means of escape following the kidnapping and murder of
the victim was carried out in accordance with the prior
calculation and design, as set out by the Defendant and
Jackson.

From the aforementioned evidence, this Court concludes
that the Defendant committed the Aggravated Murder, as a
complicitor, while committing or attempting to commit or in
fleeing immediately after committing or attempting to commit
aggravated robbery, and that the Defendant committed the

A - 19 of 36

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2086

15

aggravated murder with prior calculation and design.

Now, to be weighed against the aggravating circumstances, the Court must weigh any mitigating factors. On Tuesday, June 3, 2003, the Defendant appeared in-chambers and on the record with her retained attorneys, J. Gerald Ingram and John B. Juhasz, and her retained psychologist, Thomas Eberle.  The State was present and represented by Assistant Prosecutor Kenneth N. Bailey and Christopher D. Becker.

At that time, the Defense indicated to the Court that the Defendant had been evaluated by Dr. Eberle for her competency to waive mitigating evidence.  And that in the doctor's opinion, she was competent to do same.

This Court personally addressed the Defendant and inquired of her as to the importance of presenting mitigating evidence, the use of such evidence to offset the aggravating circumstances, and the effect of failing to present such evidence.  The Court was assured at that time by the Defendant, that she understood these concepts by both Defense counsel and Dr. Eberle.  This Court personally inquired whether the Defendant desired to waive the right to present mitigating evidence.  The Court having found no evidence to contradict Dr. Eberle's findings on the Defendant's

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2087

16

statements, and her express desire to waive the presentation of mitigating evidence, then found that the Defendant was competent to waive her presentation of mitigating evidence, and had done so knowingly, voluntarily and intelligently, and the Defendant indicated to the Court, that she only desired to make an unsworn statement to the Jury, which she was advised she was permitted to do and would be permitted to make on June 4, 2003, which was the date previously scheduled for the mitigation phase.

On Wednesday, June 4, 2003, the Defendant made an unsworn statement during which she stated to the Jury that there were no mitigating factors, and during which she requested the Jury to impose the death sentence. This statement was articulate, coherent and well organized. The statement lasted approximately one hour, during which the Defendant showed no difficulty or fear in addressing a large group of individuals, including the Jury, and a large number of courtroom observers. The Defendant spoke freely and although she had with her prepared notes, she often extemporized.

Despite the preceding that I have outlined, the Court is still bound to make an independent weighing of any and all mitigating factors that it feels may exist in this case

VOL 1153 PAGE 437

A - 21 of 36

17

against the aggravating circumstances.  The Defendant in this case was not the principal offender.  Pursuant to Section 2929.04(B)(6), the Court considers this factor, but gives it very little weight.

The Defendant committed the Aggravated Murder during the course of the commission of both an aggravated burglary and aggravated robbery.  The record is replete with instances where the Defendant actively planned this Aggravated Murder with prior calculation and design in order to collect $550,000 in life insurance proceeds.  The Defendant's plan included buying her codefendant a new Cadillac or Lincoln in exchange for killing her ex-husband, promises of trips, and a nice home in a wealthy neighborhood.

The record is overwhelming that, but for the Defendant's planning and actions, the victim would be alive today.  The Defendant discussed and planned for months with the principal offender, how they would kill the victim.  The Defendant checked on the status of the insurance policies in order to ensure that she would be able to collect the proceeds, and advised the principal offender of the status of the policies. The Defendant then transported the principal offender in the Aggravated Murder from prison to a predetermined location, in order to engage in love making before the murder.

VOL 1153 PAGE 438

A - 22 of 36

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2089

18

The Defendant fed the principal offender prior to the crime.  The Defendant provided the principal offender with gloves, a ski mask, murder weapon and hideout after the Aggravated Murder, all as planned and discussed prior to the Aggravated Murder.

The Defendant gave the principal offender entry into the residence of the victim for the sole and exclusive purpose of killing the victim.  This plan was clearly discussed in both the letters, and recorded telephone conversations, including the last telephone call on December 8, 2001, the day before the principal offender was released from prison.  The Defendant failed to advise police of her relationship with the principal offender until she was confronted with the evidence of the relationship by the police.  And prior to being confronted by the existence of this relationship, the Defendant gave the police a number of red herrings implicating a number of potential suspects, but never mentioned the relationship with the principal offender, and her discussions with him regarding the Aggravated Murder of Robert Fingerhut.

The Court gives very slight weight to the fact that the Defendant indicates in her letters that the victim may have been physically abusive to her.  This factor is pursuant to Section 2929.04(B)(1)(2).  However, the existence of this

A - 23 of 36

19

factor is given very slight weight due to the fact that it is unsubstantiated, and even if it were true, would not warrant the Defendant's action in this case.

The Court gives very little weight to the Defendant's unsworn statement. During the course of her unsworn statement, the Defendant apologized to her Defense team and thanked them for the hard work. The few positive things gleaned from this statement were overshadowed by the Defendant's personal attacks, and statements that were clearly contrary to the evidence. The Defendant denied guilt and personally attacked the jurors by claiming they were not a Jury of her peers.

The Defendant accused the lead investigator as being motivated solely by career advancement and accusing him of obstruction of justice and perjury. The Defendant referred to the other investigators as lackeys and claimed that one member of the Prosecution team was anti-Semetic and racist.

The Defendant also chastised jurors for being uninformed about current events. The Defendant also stated to the Jury that she and the victim had a loving relationship, and planned to live happily ever after.

These statements are in direct contravention of her statements in the letters and the phone calls expressing her

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2091

desire and wishes that the victim meet un untimely death, and her desire to marry and live with Nathaniel Jackson.

The Defendant also appeared to brag to the Jury that she and the deceased have earned over $200,000 per year and that the $550,000 in life insurance proceeds was of little value to her, because that sum would only sustain her for a few years. It is difficult for this Court or any finder of fact to give any weight to such a statement.

Pursuant to Section 2929.04(A)(7), the Court will give very slight weight to the Defendant's behavior during the course of this trial. The Defendant was courteous, pleasant and properly addressed the Court at all times. The Defendant appeared intelligent and interested in the proceedings and appeared to assist in her defense at all times. The Defendant presented no security problems to this Court and those who transported her to Court each day.

Now the Court has carefully and independently weighed the accumulation of all of the mitigating factors against each aggravating circumstance separately, as to each of the two specifications. In other words, the Court has weighed the evidence twice, first the Court weighed all of the mitigating factors against the aggravating circumstances surrounding the aggravated burglary, and then the Court engaged in a second

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2092

21

weighing, whereby the Court again weighed all of the mitigating factors against the aggravating circumstances surrounding the aggravating robbery.

With respect to the first weighing of the aggravating circumstances relating to the aggravated burglary against all of the mitigating factors, this Court finds that the aggravating circumstances not only outweigh the mitigating factors by proof beyond a reasonable doubt, but in fact, they almost completely overshadow them.

The legislature of the State of Ohio, has recognized that under certain circumstances, the death penalty is an appropriate sanction to a Defendant who commits an Aggravated Murder during the commission of certain felonies.  In the case at bar, the underlying felonies were aggravated burglary and aggravated robbery.  In this particular case, the Court accords substantial weight to the aggravated burglary specification in the weighing process.

In order to prove an aggravated burglary, the State is required to prove that a Defendant trespassed in an occupied structure, for the purpose of committing a criminal offense. In this particular case, the Defendant purposely had her codefendant trespass in the occupied structure of Robert S. Fingerhut, with the specific purpose of committing

A - 26 of 36

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2093

22

an Aggravated Murder, which had been meticulously planned over
a number of months with prior calculation and design.

Under the facts of this case, this Court cannot see any
other form of aggravated burglary where the weight of this
particular aggravating circumstance could ever be greater.
The evidence reveals that the aggravated burglary was
committed for the sole purpose of killing Robert S. Fingerhut,
pursuant to a planned and methodical execution scheme designed
by the Defendant and her codefendant and whereby the Defendant
would collect $550,000 in insurance proceeds.  This is a most
heinous form of aggravated burglary and is entitled to great
weight.

In this Court's view, this aggravating circumstance
standing alone, outweighs all of the mitigating evidence in
this case.  Therefore, with respect to Specification One to
Count One, this Court concurs with the Jury's recommendation,
and finds that the death sentence is an appropriate penalty.

With respect to the aggravating circumstances of the
aggravated robbery, the Court concedes that this offense is
not quite heinous as the circumstances surrounding those
concerned with the aggravated burglary; however, the
aggravated robbery was clearly committed to facilitate the
escape from the Aggravated Murder, and is extremely close to

VOL **1153** PAGE **443**

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2094

23

being the worst form of aggravated robbery.  This statement is galvanized by the fact that the aggravated robbery was planned by the Defendant to be part of a kidnapping, whereby the victim was to be removed, taken to a different location where the Defendant would then engage in oral sex with her codefendant, while the Defendant was forced to watch prior to his execution.  This plot is clearly spelled out in the letters between the Defendant and codefendant.  The plan clearly went awry when the victim engaged the codefendant in the struggle at the residence.  Again this scheme was hatched for the purpose of the Defendant collecting the $550,000 in insurance proceeds.

Therefore, the aggravating circumstance specification relating to the aggravated robbery, when weighed against all of the mitigating factors in this case, clearly and undeniably outweighs by proof beyond a reasonable doubt, all of the mitigating evidence in this case.

Therefore, with respect to Specification Two to Count One, the Court concurs with the Jury's recommendation and finds that the death sentence is the appropriate penalty. The Court recognizes that the death sentence recommendation by the Jury must be merged and the Court does hereby merge the death sentences for purposes of sentencing.

A - 28 of 36

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2095

24

For the reasons set forth herein, and after independently and separately weighing the aggravating circumstances against all of the mitigating factors, it is the judgment of this Court that the Jury's recommendation is accepted, and the Court does find that the sentence of death is the appropriate penalty in this case.

_10/29/07_

DATE

JUDGE JOHN M. STUARD

10-29-07
Copies to:
Pros.
D. Doughten

TO THE CLERK OF COURTS   YOU ARE ORDERED TO SERVE
COPIES OF THIS JUDGMENT ON ALL COUNSEL OF RECORD
OR UPON THE P_____ ___ ___ UNREPRESENTED FORTH-
WITH BY ORDIN_____

JUDGE

2007 OCT 29 PM 1:47
CLERK OF COURTS

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2096

## FIFTH AMENDMENT, UNITED STATES CONSTITUTION

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

## SIXTH AMENDMENT, UNITED STATES CONSTITUTION

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

## EIGHTH AMENDMENT, UNITED STATES CONSTITUTION

Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

A - 32 of 36

## FOURTEENTH AMENDMENT, UNITED STATES CONSTITUTION

Section. 1. All persons born or naturalized in the United States and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

Section. 2. Representatives shall be apportioned among the several States according to their respective numbers, counting the whole number of persons in each State, excluding Indians not taxed. But when the right to vote at any election for the choice of electors for President and Vice President of the United States, Representatives in Congress, the Executive and Judicial officers of a State, or the members of the Legislature thereof, is denied to any of the male inhabitants of such State, being twenty-one years of age, and citizens of the United States, or in any way abridged, except for participation in rebellion, or other crime, the basis of representation therein shall be reduced in the proportion which the number of such male citizens shall bear to the whole number of male citizens twenty-one years of age in such State.

Section. 3. No person shall be a Senator or Representative in Congress, or elector of President and Vice President, or hold any office, civil or military, under the United States, or under any State, who, having previously taken an oath, as a member of Congress, or as an officer of the United States, or as a member of any State legislature, or as an executive or judicial officer of any State, to support the Constitution of the United States, shall have engaged in insurrection or rebellion against the same, or given aid or comfort to the enemies thereof. But Congress may by a vote of two-thirds of each House, remove such disability.

Section. 4. The validity of the public debt of the United States, authorized by law, including debts incurred for payment of pensions and bounties for services in suppressing insurrection or rebellion, shall not be questioned. But neither the United States nor any State shall assume or pay any debt or obligation incurred in aid of insurrection or rebellion against the United States, or any claim for the loss or emancipation of any slave; but all such debts, obligations and claims shall be held illegal and void.

Section. 5. The Congress shall have power to enforce, by appropriate legislation, the provisions of this article.

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2100

**<u>R.C. 2929.03(F)</u>**

(F) The court or the panel of three judges, when it imposes sentence of death, shall state in a separate opinion its specific findings as to the existence of any of the mitigating factors set forth in division (B) of section 2929.04 of the Revised Code, the existence of any other mitigating factors, the aggravating circumstances the offender was found guilty of committing, and the reasons why the aggravating circumstances the offender was found guilty of committing were sufficient to outweigh the mitigating factors. The court or panel, when it imposes life imprisonment or an indefinite term consisting of a minimum term of thirty years and a maximum term of life imprisonment under division (D) of this section, shall state in a separate opinion its specific findings of which of the mitigating factors set forth in division (B) of section 2929.04 of the Revised Code it found to exist, what other mitigating factors it found to exist, what aggravating circumstances the offender was found guilty of committing, and why it could not find that these aggravating circumstances were sufficient to outweigh the mitigating factors. For cases in which a sentence of death is imposed for an offense committed before January 1, 1995, the court or panel shall file the opinion required to be prepared by this division with the clerk of the appropriate court of appeals and with the clerk of the supreme court within fifteen days after the court or panel imposes sentence. For cases in which a sentence of death is imposed for an offense committed on or after January 1, 1995, the court or panel shall file the opinion required to be prepared by this division with the clerk of the supreme court within fifteen days after the court or panel imposes sentence. The judgment in a case in which a sentencing hearing is held pursuant to this section is not final until the opinion is filed.

**A - 34 of 36**

**R.C. 2929.04(B)**

(B) If one or more of the aggravating circumstances listed in division (A) of this section is specified in the indictment or count in the indictment and proved beyond a reasonable doubt, and if the offender did not raise the matter of age pursuant to section 2929.023 of the Revised Code or if the offender, after raising the matter of age, was found at trial to have been eighteen years of age or older at the time of the commission of the offense, the court, trial jury, or panel of three judges shall consider, and weigh against the aggravating circumstances proved beyond a reasonable doubt, the nature and circumstances of the offense, the history, character, and background of the offender, and all of the following factors:

(1) Whether the victim of the offense induced or facilitated it;

(2) Whether it is unlikely that the offense would have been committed, but for the fact that the offender was under duress, coercion, or strong provocation;

(3) Whether, at the time of committing the offense, the offender, because of a mental disease or defect, lacked substantial capacity to appreciate the criminality of the offender's conduct or to conform the offender's conduct to the requirements of the law;

(4) The youth of the offender;

(5) The offender's lack of a significant history of prior criminal convictions and delinquency adjudications;

(6) If the offender was a participant in the offense but not the principal offender, the degree of the offender's participation in the offense and the degree of the offender's participation in the acts that led to the death of the victim;

(7) Any other factors that are relevant to the issue of whether the offender should be sentenced to death.

**R.C. 2945.37(G)**

(G) A defendant is presumed to be competent to stand trial. If, after a hearing, the court finds by a preponderance of the evidence that, because of the defendant's present mental condition, the defendant is incapable of understanding the nature and objective of the proceedings against the defendant or of assisting in the defendant's defense, the court shall find the defendant incompetent to stand trial and shall enter an order authorized by section 2945.38 of the Revised Code.

Sent By: hhmp;                     419 243 4046;        Sep-15-08 10:48AM;       Page 1/2

# IN THE SUPREME COURT OF OHIO

| | | |
|---|---|---|
| State of Ohio, | * | Case No.  07-2288 |
| Plaintiff-Appellee, | * | **CAPITAL CASE** |
| | * | |
| -v- | | ENTRY OF APPEARANCE |
| | * | |
| | | Jeffrey J. Helmick (0040197) |
| | * | HELMICK & |
| Donna Roberts, | | HOOLAHAN |
| | * | 1119 Adams Street, Second Floor |
| Defendant-Appellant. | | Toledo, Ohio  43604-5508 |
| | * | Tel: (419) 243-3800 |
| | | Fax: (419) 243-4046 |
| | * | email: jeff.helmick@earthlink.net |
| | | Counsel for Defendant |

Attorney Jeffrey J. Helmick hereby enters his appearance as counsel of record for

Defendant-Appellant Donna Roberts, in her direct appeal in this case.  Attorney David L.

Doughten has already made is appearance as co-counsel.

Respectfully submitted,

By _____
Jeffrey J. Helmick
Counsel for Defendant

FILED

SEP 15 2008

CLERK OF COURT
SUPREME COURT OF OHIO

## CERTIFICATE OF SERVICE

A copy of the foregoing was sent by regular U.S. Mail this 15th day of September,

2008 to Dennis Watkins, Trumbull County Prosecutor, Administration Building, 160 High

Street, Warren, Ohio  44481.

Counsel for Defendant

2

IN THE SUPREME COURT OF OHIO

STATE OF OHIO,                    )      CASE No.  2007-2288
                                  )
        Plaintiff-Appellee        )      Appeal from the Trumbull County
                                  )      Court of Common Pleas
-vs-                              )      Case No. 01-CR-793
                                  )
DONNA ROBERTS,                    )
                                  )
        Defendant-Appellant       )

---

### MERIT BRIEF PLAINTIFF-APPELLEE OF STATE OF OHIO

DENNIS WATKINS
Atty. Reg. No. 0009949
LuWAYNE ANNOS (Counsel of Record)
Atty. Reg. No. 0055651
Trumbull County Prosecutor's Office
160 High Street, N.W.
4th Floor, Administration Building
Warren, Ohio         44481
Telephone No.  (330) 675-2426
Fax No. (330) 675-2431
psannos@co.trumbull.oh.us

COUNSEL FOR PLAINTIFF-APPELLEE
STATE OF OHIO

DAVID L. DOUGHTEN, ESQ
Atty. Reg. No. 0002847
4403 St. Clair Avenue
Cleveland, Ohio  44103
Telephone No. (216) 361-1112

JEFFERY J. HELMICK
Atty. R. No. 0040197
1119 Adams St., 2nd Floor
Toledo, Ohio  43604
Telephone No. (419) 243-3800

COUNSEL FOR DEFENDANT-
APPELLANT DONNA ROBERTS





TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES.................................................................iv

STATEMENT OF THE CASE............................................................1

STATEMENT OF FACTS.................................................................1

ARGUMENT..................................................................................6

APPELLEE'S PROPOSITION OF LAW ONE:......................................6

Where a capital defendant waives her right to present mitigation evidence, and where a superior court remands a capital case for limited, non-evidentiary proceedings, a trial court properly confines those proceedings and does not err in curtailing the untimely admission of mitigating evidence not heard by the jury.

APPELLEE'S PROPOSITION OF LAW TWO:......................................15

A sentencing judge should not be required to admit evidence during a remanded sentencing hearing which was knowingly, voluntarily, and intelligently waived during the original proceedings.

APPELLEE'S PROPOSITION OF LAW THREE:.....................................21

When a trial court correctly articulates statutory aggravating circumstances, Ohio law presumes the court relied only upon those circumstances and not upon nonstatutory aggravating circumstances.

APPELLEE'S PROPOSITION OF LAW FOUR:........................................26

Ohio law vests exclusive authority in the Chief Justice of this Court to disqualify a trial judge, and gives no authority to an Ohio appellate court to find error when a trial judge declines to recuse himself.

APPELLEE'S PROPOSITION OF LAW FIVE:..........................................30

Res judicata bars this Court from considering arguments that a capital defendant's trial counsel were ineffective for a purported, though unsupported, failure to conduct a proper mitigation investigation.

ii

## TABLE OF CONTENTS CONT'D

PAGE

**APPELLEE'S PROPOSITION OF LAW SIX:**.............................................36

An expert opinion which states a criminal defendant understands the nature
and objective of her re-sentencing, and can assist in her own defense
comprises reliable, credible evidence as to the defendant's competency to
stand for re-sentencing.

**APPELLEE'S PROPOSITION OF LAW NO. SEVEN:**...............................41

Res judicata bars Appellant from attempting to relitigate the issue of her
competency to stand trial or to waive her right to present mitigating evidence
at trial.

CONCLUSION.......................................................................................44

PROOF OF SERVICE..............................................................................45

APPENDIX.....................................................................Appendix Page
    R.C. 2929.04(A)(7)........................................................................A-1
    Sec. 5 of Art. IV, Ohio Constitution...................................................A-2
    R.C. 2701.03..............................................................................A-3

<u>TABLE OF AUTHORITIES</u>

PAGE(S)

*Beer v. Griffith* (1978), 54 Ohio St. 2d 440.....................................................26, 27

Crim. R. 52(A).............................................................................................13

*Davis v. Coyle* (C.A. 6, 2007), 475 F. 3d 761...........................................8, 9, 10, 11

*Grogan v. T.W. Grogan Co.* (2001), 143 Ohio App. 3d 548.................................26, 27

*In re Disqualification of Stuard* 113 Ohio St. 3d 1236, 2006-Ohio-7233...................28

*Lawrence v. Woods* (1970), 432 F. 2d 1072, 1075-1076.......................................8

*Lester v. Leuck* (1943), 142 Ohio St. 91...........................................................33

*Lockett v. Ohio* (1978), 438 U.S. 586.....................................................11, 12, 16

R.C. 2701.03(A)......................................................................................26, 27

R.C. 2929.03(F).......................................................................................16, 22

R.C. 2929.04(B)(6)........................................................................................16

R.C. 2929.04(A)(7)..................................................................................14, 17

R.C. 2945.37(G).......................................................................................36, 40

Sec. 5 of Art. IV, of the Ohio Constitution........................................................26, 27

*State ex rel. Stevenson v. Murray* (1982), 69 Ohio St. 2d 112.................................12

*State ex rel. Wilkinson v. Trumbull Co. Bd. of Elections,* 11th Dist. No. 2007-T-0081,
2007-Ohio-4762............................................................................................8

*State v. Armstrong,* Montgomery App. Nos. 22450, 22277, 2008-Ohio-4532.............35

*State v. Bailey* (1992) 90 Ohio App.3d 58...........................................................37

*State v. Bradley* (1989), 42 Ohio St.3d 136..........................................................30

*State v. Burnett* (2001), 93 Ohio St. 3d 419, 2001-Ohio-1581..................................8

*State v. Chinn* (1999), 85 Ohio St. 3d 548............................................................12

iv

TABLE OF AUTHORITIES CONT'D

PAGE(S)

*State v. Colvin,* 10th Dist. No. 04AP-421, 2005-Ohio-1448...........................................8

*State v. Combs* (1994), 100 Ohio St. 3d 90.......................................................12, 13

*State v. Davis* (1988), 38 Ohio St. 3d 361........................................................9, 11

*State v. Evans* 113 Ohio St. 3d 100, 2007-Ohio-861....................................................22

*State v. Fernbach,* 12th Dist. No. CA2006-11-130, 2008-Ohio-5670.................................35

*State v. Freeman* (1985), 20 Ohio St. 3d 55.......................................................43

*State v. Fugate* (June 1, 1998), 12th Dist. No. CA97-02-031.........................................37

*State v. Hicks* (1989), 43 Ohio St.3d 72...........................................................36

*State v. Hill* (1995) 73 Ohio St. 3d 433...........................................................23

*State v. Hill,* 4th Dist. No. 06CA63, 2007-Ohio-5360..............................................35

*State v. Keene* (1998), 81 Ohio St. 3d 646.........................................................43

*State v. LaMar* (2002), 95 Ohio St. 3d 181......................................................20, 43

*State v. Moore* 93 Ohio St. 3d 649, 2001-Ohio-1892.................................................27

*State v. North,* 2nd Dist. No. 07CA0059, 2008-Ohio-6239............................................35

*State v. Perry* (1967), 10 Ohio St. 2d 175.......................................................34, 35

*State v. Reynolds* (1998), 80 Ohio St. 3d 670.....................................................13, 14

*State v. Roberts,* 110 Ohio St. 3d 71, 2006-Ohio-3665.....................6, 7, 9, 10, 13, 15, 18, 19
.......................................................................27, 28, 32, 34, 38, 39, 41, 42

*State v. Saxon ,* 109 Ohio St. 3d 176, 2006-Ohio-1245..........................21, 22, 34, 42

*State v. Scott* (1986), 26 Ohio St.3d 92..........................................................23, 24

*State v. Steffen* (1987), 31 Ohio St. 3d 111.......................................................43

*State v. Sowell* (1988), 39 Ohio St. 3d 322.......................................................22, 23

v

## TABLE OF AUTHORITIES CONT'D

PAGE(S)

*State v. Wade* (1978), 53 Ohio St.2d 182…………………………………………………..23, 24

*State v. Williams* (1986)  23 Ohio St.3d 16……………………………………………….36, 37

*State v. Withers* 10th Dist. No. 08AP-39, 08 AP-40, 2008-Ohio-3175…………………………..35

*State v. Zuern* (1987), 32 Ohio St. 3d 56……………………………………………………..43

*United States v. Blohm* (1984), 579 F. Supp. 495…………..…………………………………….43

vi

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2111

STATEMENT OF THE CASE

The Plaintiff-Appellee, the State of Ohio ("State"), takes no exception to the Statement of the Case presented by Defendant-Appellant Donna Roberts at pages 3 through 5 of her brief. The State files this brief in response to Appellant's brief filed with this Court September 15, 2008.

STATEMENT OF THE FACTS

As Appellant explains in her brief, this matter returns to this Court as a result of a remand mandated by *State v. Roberts* 110 Ohio St. 3d 71, 2006-Ohio-3665 ("*Roberts I*"). Appellant was previously sentenced to death by Judge John M. Stuard of the Trumbull County Common Pleas Court for the shooting death of her common-law husband, Robert Fingerhut. This Court affirmed her convictions on multiple charges of aggravated murder. *Roberts I*, supra, at ¶130. However, this Court remanded Appellant's case for a new sentencing hearing because the prosecutor's office assisted the court in drafting its sentencing opinion, and because the trial court began to announce her original sentence without allowing her right to allocution:

"Having found no prejudicial error in regard to Roberts's convictions, we affirm the convictions and the judgment of the trial court pertaining to them. Because of the prejudicial error in sentencing Roberts to death, the sentence of death is vacated, and the cause is hereby remanded to the trial court. On remand, the trial judge will afford Roberts her right to allocute, and the trial court shall personally review and evaluate the evidence, weigh the aggravating circumstances against any relevant mitigating evidence, and determine anew the appropriateness of the death penalty as required by R.C. 2929.03. The trial court will then personally prepare an entirely new penalty opinion as required by R.C. 2929.03(F) and conduct whatever other proceedings are required by law and consistent with this opinion." *Roberts I*, at ¶167.

- 1 -

Upon remand, defense counsel advised the court at the first recorded Status Conference on December 6, 2006, that "there may be an issue of competency" because Appellant had been placed on medication while on death row. (T.d. #211, p. 5-6). Furthermore, replacement counsel learned about a car crash in which Appellant had sustained head injuries. (T.d. #211, p. 6). On January 17, 2007, the trial court ordered the Forensic Psychiatric Center of Northeast Ohio, Inc., to conduct an evaluation to determine whether Appellant was competent to be re-sentenced. (T.d. # 172-173). After reviewing various records and consulting with Appellant's counsel and the Director of Mental Health Services at the Ohio Reformatory for Women, Dr. Thomas G. Gazley, Ph.D., conducted a two-and-a-half hour interview with Appellant. He determined with a reasonable degree of psychological certainty that Appellant understands the sentencing process, understands what alternatives are available to her, and is capable of providing her counsel with evidence to mitigate her potential death sentence. (T.d. # 211, p. 22-23, State's Ex. 1, p. 8-9, Competency Hearing Oct. 22, 2007, hereinafter, "Ex.1").

Also in Dr. Gazley's report, he noted that Appellant was 63 years of age at the time of the evaluation. Appellant expressed a preference for her sheltered existence on death row to life in general population among "these animals." (Ex. 1, p. 2). Appellant told Dr. Gazley "[g]ive me death instead of having to live here among these animals and eating slop." (Ex. 1, p. 9). She reported to Dr. Gazley that she is a 1962 graduate of Austintown Fitch High School where she was inducted into the National Honors Society. She was enrolled at Youngstown State University for two years and left in her third year to marry her first husband. Appellant and her first husband moved to Miami, Florida, where she "studied Judaism" under a Rabbi and converted to Judaism in 1980, much to the chagrin of her Italian Catholic family. (Ex. 1, p. 3).

- 2 -

From 1972 through 1994, she worked for a Miami plastic surgeon as a lab technician. She invested her money well with a broker named Leo. Id. Though she reported injuries from three car accidents and a youthful leap from a dresser, Dr. Gazley reported, "Ms. Roberts reported no residual effects***from the head injuries. She was able to work capably.***" (Ex. 1, p. 4).

Dr. Gazley reported Appellant is in remission with a bipolar disorder which is controlled by medication. A treatment plan from June 12, 2007, showed her compliant with her medication. He found her intelligence level "solidly within the average range." (Ex. 1, p. 5). Appellant views her stay on death row as a "social statement" and feels she can help her fellow death row inmates by writing articles about her life experiences. (Ex. 1, p. 6).

Though acknowledging episodes of moderate to severe depression during her early days on death row, "the descriptors lessened, as time went on and she was treated both psychiatrically and psychologically there, to the point where the final diagnostic considerations by the mental health people at Marysville were that her symptoms were in fact in remission at the time that I saw her. She was progressively getting better, and when I saw her earlier this year, she was very coherent, her comments and responses to my questions were very relevant and I thought to the point." (T.d. #211, p. 40).

Appellant did not call on any witnesses at the competency hearing relying solely on the cross examination of Dr. Gazley. Appellant introduced her Social Security records (Ex. A, T.d. # 195, Appendix) which chronicles her apparently unsuccessful application for disability benefits in 1999 and 2000. In a psychological evaluation conducted in 1999 by Dr. Donald Degli, Appellant scored a 65 on the Wechsler Adult Intelligence Scale. Dr. Degli found as follows: "The intellectual assessment yielded questionable functioning and an intelligence quotient in the

- 3 -

mild mental retardation range.  Memory functioning, as measured by the Wechsler Memory Scales was also impaired, although her responses were suggestive of confabulation and malingering.  Reading skills proved to be functional at the high school level." His DSM-IV diagnosis included "malingering or exaggeration."  She was turned down for benefits in December of 1999 because "You are still able to drive and perform your normal daily activities.  Your medical condition is not so severe as to prevent you from doing most of your usual activities, including working."  (Ex. A, T.d. # 195, Dec. 10, 1999 Social Security Notice). In a Disability Determination and Transmittal form signed by Dr. Gerald W. Klyop dated December 9, 1999, she was categorized as "not disabled."  (Id.).

Dr. Gazley's testimony and report were introduced at a hearing conducted October 22, 2007.  Based upon the evidence presented at the competency hearing, the trial judge concluded Appellant was competent for purposes of re-sentencing.  (T.d. #211, p. 44). The competency hearing then segued into the re-sentencing hearing ordered by this Court.

As per this Court's instruction in *Roberts I,* Appellant was afforded her right to allocution.  She gave a rather lengthy statement, which lasted for 18 pages of the transcript.  (T.d. #211, p. 46-64.).  At no time during this entire statement did ask for mercy or say that a death sentence was unwarranted.  Instead, Appellant told the court about her good grades in school and college (Id. at p. 48).  She described herself as an award-winning writer and a creative person. (Id. at p. 64).  Appellant told the court about her solid work ethic, punctuated by 23 years of running a plastic surgeon's office. (Id. at  p. 59).  She reminded the court that she had assisted her doctor in patching up wounded soldiers in Israel. (Id. at p. 57).

Appellant spoke very little about Robert Fingerhut's murder.  She expressed no remorse for his passing or her actions which brought about his death.  Instead, she accused chief

- 4 -

investigator Paul Monroe of lying. (Id. at p. 59). Appellant claimed that the inculpatory prison letters exchanged with co-defendant Nathaniel Jackson were merely exercises in creative writing and that she never intended to kill Fingerhut. (Id. at p. 64). Appellant's counsel declined the court's invitation to offer further statements on her behalf. (Id. at p. 65).

The trial court adjourned the proceedings for one week. On October 29, 2007, the sentencing hearing reconvened. Defense counsel blamed her decision to present no mitigation during her original proceedings on her "mental instability." (Id. at p.68). He argued that Appellant was not the worst of the worst, and without specifically asking the court to spare her life, requested that the court "consider as much as it is allowed to by the dictates of the Supreme Court, why Donna said what she did, why she did what she did." (Id. at p. 69). The court re-imposed the death penalty and two consecutive ten-year sentences, plus two firearm specifications which were merged by the court. (Id. at p. 71-72).

Appellant filed a timely notice of appeal with this Court December 11, 2007, and followed with her brief September 15, 2008. The Plaintiff-Appellee, the State of Ohio ("State") files this brief in response. Other necessary facts will be brought to the Court's attention in the Argument portion of this brief.

## ARGUMENT

### APPELLEE'S PROPOSITION OF LAW ONE:

**Where a capital defendant waives her right to present mitigation evidence, and where a superior court remands a capital case for limited, non-evidentiary proceedings, a trial court properly confines those proceedings and does not err in curtailing the untimely admission of mitigating evidence not heard by the jury.**

Appellant spends several pages of this Proposition of Law arguing that the trial court erred in refusing to permit her to re-open her case and to present evidence which was not introduced during the penalty phase of her trial. Appellant leaves out two important facts from her argument: (1) This Court did not order a new *mitigation* hearing, but a new *sentencing* hearing. (2) With considerable fanfare and contrary to advice of the trial court and her trial counsel, Appellant waived her right to present mitigation evidence outside of her own unsworn statement to her jury.

This Court in *Roberts I* instructed as follows: "Because of the prejudicial error in sentencing Roberts to death, the sentence of death is vacated, and the cause is hereby remanded to the trial court. On remand, the trial judge will afford Roberts her right to allocute, and the trial court shall personally review and evaluate the evidence, weigh the aggravating circumstances against any relevant mitigating evidence, and determine anew the appropriateness of the death penalty as required by R.C. 2929.03. The trial court will then personally prepare an entirely new penalty opinion as required by R.C. 2929.03(F) and conduct whatever other proceedings are required by law and consistent with this opinion." Id. at ¶ 167. It is important to note that this Court did NOT order the trial judge to conduct a new mitigation hearing. This Court did NOT

- 6 -

instruct the trial court to conduct an evidentiary hearing. This Court did NOT instruct the trial court to consider evidence which was not previously contained in the record.

The trial court scrupulously followed this Court's instructions. After determining that Appellant was competent to stand for re-sentencing, it afforded Appellant the right to give a lengthy allocution statement without interruption. It personally prepared and filed a new findings of fact and conclusions of law as to the appropriateness of the death penalty. Appellant spends 16 pages of her brief referencing her Social Security Administration records, unsubstantiated child sexual abuse allegations, an aberrant I.Q. score, depressive episodes, and decades old automobile accidents. She then argues that these documents and episodes should have been considered as "evidence" during her sentencing re-hearing. (Appellant's brf. at p.11-27). Appellant writes for almost two pages about "mitigation case law" (Appellant's brf. at p. 9-10), but fails to acknowledge that the mitigation phase of her trial is long over and not the subject of this Court's remand.

Moreover, the bulk of the evidence which Appellant argues should have been presented at her second sentencing was readily available for consideration during her mitigation hearing in 2003, but Appellant specifically and unequivocally waived her right to bring mitigating evidence before her jury. This Court has already determined that she knowingly and intelligently waived her right to present mitigating evidence: "The record shows that Roberts understood what she was doing when she decided to present only her unsworn statement during the mitigation hearing. The record also establishes that the trial court explained sufficiently the ramifications of that decision, that Roberts essentially told the trial court that she was not presenting additional mitigating evidence because she wanted to be given a death sentence, and that she disregarded her attorneys' advice and instead directed them not to present any mitigating evidence beyond her

- 7 -

unsworn statement." *Roberts I,* at ¶148.  Therefore, evidence contained in her Social Security

Administration Records, her wholly unsubstantiated allegations of sexual abuse as a child, Dr.

Donald Degli's 1999 evaluation (which included her 65 IQ score), her supposed pre-offense

episodes of anxiety, agitation, depression, auditory and visual hallucinations, suicidal ideations,

medications, a two-week stint in a psychiatric hospital, and auto accident injuries were all

available for the jury and the court's consideration in 2003.  She blocked their introduction.

Therefore, she waived the right to present this evidence at her 2007 re-sentencing hearing.

　　　　Of all the evidence referenced in Appellant Proposition of Law No. I, the only evidence

not available during her mitigation hearing was her prison records accumulated since her

incarceration.  Appellant cites to the U.S. Sixth Circuit Court of Appeals decision in *Davis v.*

*Coyle* (C.A. 6, 2007), 475 F. 3d 761, to support her position that the records were improperly

excluded from her re-sentencing.  This Court in the past has held that decisions from the

"inferior federal courts" are not binding upon this Court.  "We therefore conclude that we are

not bound by rulings on federal statutory or constitutional law made by a federal court other than

the United States Supreme Court.  We will, however, accord those decisions some persuasive

weight."  *State v. Burnett* (2001), 93 Ohio St. 3d 419, 2001-Ohio-1581, at 424.  The U.S. Seventh

Circuit of Appeals held, "because lower federal courts exercise no appellate jurisdiction over

state tribunals, decisions of lower federal courts are not conclusive on state courts."  *Lawrence v.*

*Woods* (1970), 432 F. 2d 1072, 1075-1076.  Ohio's Tenth Appellate District held that decisions

from the Sixth Circuit Court of Appeals are instructive, but "not binding on this court." *State v.*

*Colvin,* 10th Dist. No. 04AP-421, 2005-Ohio-1448 , at ¶24.  Ohio's Eleventh Appellant District

held that "the Sixth Circuit does not have the authority to render a binding decision as to Ohio

- 8 -

statutory law." *State ex rel. Wilkinson v. Trumbull County Board of Elections,* 11th Dist. No. 2007-T-0081, 2007-Ohio-4762, at ¶28.

Even if this Court should find *Davis* binding, the facts in *Davis* are wholly distinguishable from the case at bar. With all due respect to the U.S. Sixth Circuit Court of Appeals, the State disagrees with its holding in *Davis.* One can only wonder if the U.S. Sixth Circuit would have permitted the prosecution to introduce Davis' prison records upon re-sentencing if they were marginally relevant to the aggravating circumstances rather than the mitigating factors. While noting Davis was tried and re-sentenced by a three-judge panel, the State notes that there is a potential prejudice to either the prosecution or the capital defendant when the door is opened for additional evidence not heard by a jury and yet considered during re-sentencing on remand. In the State's view, this Court properly held in *State v. Davis* (1992), 63 Ohio St. 3d 44, 46, that the trial court considered all relevant mitigating evidence during Davis' trial, and that the post trial prison records were irrelevant to the re-sentencing proceedings. Nevertheless, several factors distinguish *Davis v. Coyle,* supra, and the case at bar.

First, unlike Appellant, Davis never waived his right to submit mitigation evidence. This Court's opinion in *Roberts I* did not negate Appellant's waiver. Instead, it reinforced the validity thereof. *Roberts I,* supra, at ¶148. Because waiver was not an issue in Davis' case, neither this Court, nor the Sixth Circuit, addressed whether an earlier waiver would have precluded the introduction of Davis' prison records. Appellant cites to no legal authority and presents no arguable rationale why her earlier waiver to present mitigation evidence would not apply to prison records accumulated since her mitigation hearing.

Second, according to the Sixth Circuit, Davis sought to present evidence of his "exemplary" behavior on death row to counter the State's argument at re-sentencing that Davis

- 9 -

was a repeat killer who represented a "special danger" to society. *Davis,* supra, at 773. "Although there could conceivably be some question about the relevance of such evidence in the abstract, the record in this case establishes without doubt that it was highly relevant to the single aggravating factor relied upon by the state – that future dangerousness should keep Davis on death row." Id. at 773. By contrast, the State made absolutely no argument during the re-sentencing concerning Appellant's potential punishment. (T.d. #211, p. 68-77). In an apparent attempt to follow the letter of this Court's opinion in *Roberts I,* the trial court did not ask the State for further comment at the re-sentencing, nor did it offer the State the opportunity to produce additional evidence that the aggravating circumstances outweighed the mitigating factors. Thus, unlike Davis, there was no State's argument to rebut.

Third, according to the above *Davis* quote, the Sixth Circuit found only one aggravating factor applicable to his case, to wit, his future dangerousness. As previously noted, the State made no arguments regarding any aggravating factors at the re-sentencing hearing. Nonetheless, the trial court referenced several aggravating circumstances in its Judgment Entry on sentencing including the fact that she was a complicitor in committing or attempting to commit aggravated burglary and aggravated robbery and that she committed the aggravated murder with prior calculation and design. (T.d. #203, p. 11).

Fourth, as the trial court pointed out, during in her unsworn statement to her jury June 4, 2003, Appellant "stated to the Jury that there were no mitigating factors, and during which she requested the Jury to impose the death sentence." (T.d. #203, p. 16). Despite Appellant's statement to the contrary, the Court nevertheless deemed mitigating the fact that Appellant was not the principal offender in Fingerhut's murder, that the Appellant made statements in her correspondence with co-defendant Nathaniel Jackson that Fingerhut had abused her, and that she

- 10 -

was generally respectful and courteous to the court throughout the proceedings. (T.d. # 203, p. 17, 18, & 20). Even with Appellant's claim of no mitigating factors, the trial court cited to three. Davis, on the other hand, presented mitigating factors which included his attainment of a G.E.D. and associates degree while in prison for another killing, his attainment of partial employment while on parole, his diagnosis of a compulsory personality disorder and explosive disorder and strong family ties. *State v. Davis* (1988), 38 Ohio St. 3d 361, 367. There is no evidence that Davis asked for the imposition of the death penalty as did Appellant.

Fifth, this Court remanded Davis for the re-sentencing hearing challenged in the Sixth Circuit because the trial court had considered non-statutory aggravating circumstances in its original sentencing entry. Id. at 367-373. By contrast, this Court found no flaw in the trial court's original sentencing entry, other than the fact that the prosecutor's office assisted in the drafting thereof.

Finally, even if the prison records had been admitted, Appellant states in her brief that they merely confirm her bi-polar and depression diagnosis, her purported sexual abuse victimization as a child, her unsubstantiated claims of hallucinations, and her witnessing her father abusing her mother. (Appellant's brf. at p. 17). Again, these are potential mitigating factors known to Appellant in 2003 which could have been presented to her jury. However, Appellant forbade her trial counsel from using these snippets from her life to possibly benefit her at mitigation. Therefore, even if this Court were to find *Coyle v. Davis* applicable to the case sub judice, any error on the part of the trial court by refusing to admit the prison records is at worst harmless because the information contained therein was available to the defense team in 2003 and knowingly, voluntarily and intelligently omitted at Appellant's own insistence.

- 11 -

Appellant's case is likewise distinguishable from the line of cases flowing from the U.S. Supreme Court's decision in *Lockett v. Ohio* (1978), 438 U.S. 586, another case relied upon by Appellant in this Proposition of Law. In general, this Court has held that a capital defendant is "not entitled to an opportunity to improve or expand his evidence in mitigation simply because***[the court of appeals] required the trial court reweigh the aggravating circumstances and mitigating factors." *State v. Chinn* (1999), 85 Ohio St. 3d 548, 565. As previously stated, this Court in *Roberts I* specifically ordered the trial court to engage in a re-weighing exercise with its remand. In fact, the *Chinn* court drew a sharp distinction with *Lockett* and its progeny. As this Court stated in *Chinn* when discussing *Lockett,* "each of those cases involved a situation where the capital sentencer was prohibited, in some form or another, from considering relevant migrating evidence at trial." *Chinn,* supra, at 564. The only reason the capital sentencer was prohibited from considering relevant mitigating evidence *at trial* was because Appellant refused to present anything more than her unsworn statement, wherein she asked for the death penalty.

Furthermore, this Court has also held that "[u]pon remand from an appellate court, the lower court is required to proceed from the point at which the error occurred." *State ex rel. Stevenson v. Murray* (1982), 69 Ohio St. 2d 112. This Court has determined that the error occurred at the sentencing phase, not the mitigation phase. The error was deemed to be a lack of allocution the part of the defendant, and the drafting of the sentencing opinion. Both of these errors were corrected with Appellant's 18-page allocution and the trial court's personal authorship of the sentencing opinion. To permit the introduction of additional mitigation evidence is to require the trial court to proceed at point *prior* where the error occurred, which is contrary to this Court's holding in *Murray* and *Chinn,* supra.

- 12 -

Moreover, the introduction of what is clearly cumulative evidence regarding Appellant's mental health status is barred by the doctrine of res judicata. See, *State v. Combs* (1994), 100 Ohio St. 3d 90, 97.  While the *Combs* decision involves postconviction relief, the analogy here is helpful. The *Combs* court stated that "a petitioner may bring a claim of newly discovered mitigating evidence. If, however, the claim does not allege some constitutional deprivation, such as ineffective assistance of counsel, the trial court may not grant relief based on R.C. 2953.21." *Combs,* supra, at 97.  While Appellant argues a constitutional claim there was no constitutional deprivation.  She made the decision to forego mitigation evidence. The trial court did not deprive her of that right.   Appellant could have raised mental issues at trial and declined to do so.

Finally, the State submits that should this Court disagree with State's position and hold that it fully intended for the trial court breach the four corners of this Court's order for allocution and redrafting, any error by the lack of additional mitigation evidence and testimony is at worst harmless error. See, Crim. R. 52(A).  Appellant's allocution included information about her abusive father, incestuous cousin, (T.d. # 211, p. 46- 47), good grades in school, "breakdown" in 1987 (Id. at p. 48), car accidents which rendered her "spacey for while" (Id. at p. 49-50), aborted suicide attempt (Id. at p.51), a fall in prison requiring hospitalization (Id. at p. 53), her boundless generosity toward those in need (Id. at p. 55, 62), application for SSI for psychiatric reasons[1], relocation of an Ethiopian Jew to Israel (Id. at p. 57), running a doctor's office for 23 years (Id. at p. 59), and savvy stock investments. (Id. at p. 60). She also took the liberty of correcting factual errors which she alleged this Court made in *Roberts I.*  (Id. at p. 58-65).

---

[1] Her own Ex. A. says she was turned down for SSI benefits because "You are still able to drive and perform your normal daily activities.  Your medical condition is not so severe as to prevent you from doing most of your usual activities, including working."  (Ex. A, Social Security Notice of Dec. 10, 1999, p.4).

- 13 -

This Court has stated, "[t]he purpose of allocution is to permit the defendant to speak on his own behalf or present any information in mitigation of punishment." *State v. Reynolds* (1998), 80 Ohio St. 3d 670, 684. In that same case, this Court held, "[t]he penalty phase in a capital case is not a substitute for a defendant's right of allocution." Id. Likewise, an opportunity for allocution should not be transformed into a new penalty phase.

For the reasons stated above, the trial court followed this Court's directive in *Roberts I* by permitting Appellant an uninterrupted opportunity to explain why the death penalty should not be re-imposed. This Court did not suggest, much less order, that the trial record be supplemented with arguments and evidence which, for the most part, could have been presented to the jury in 2003. No error occurred. This Proposition of Law lacks merit.

- 14 -

## APPELLEE'S PROPOSITION OF LAW TWO:

**A sentencing judge should not be required to admit evidence during a remanded sentencing hearing which was knowingly, voluntarily, and intelligently waived during the original proceedings.**

In an argument bearing striking similarities to Proposition of Law I, Appellant posits that the trial judge failed to consider mitigating evidence at her re-sentencing. The record before this Court contradicts this argument. Moreover, as discussed in the previous Proposition of Law, Appellant waived her right to present mitigating evidence.

Appellant's waiver triggered a competency evaluation to assure the trial court and the reviewing courts to follow that she fully appreciated the consequences of her election to present no penalty phase evidence. (Trial T.p. Vol. XXVIII, p. 6231). This Court agreed with the trial court's finding that Appellant was completely aware of the likely results of a mitigation hearing proceeding without mitigating evidence: "[T]he record clearly establishes that the trial judge specifically addressed the likelihood of the jury's imposing a death sentence if Roberts failed to present mitigating evidence and that she understood that a death sentence was the probable outcome. In fact, Roberts asked the jury to impose that sentence. We reject her claim that she did not understand that the waiver would yield such a result." *Roberts I,* at ¶141. This Court continued, "[t]he record shows that Roberts understood what she was doing when she decided to present only her unsworn statement during the mitigation hearing. The record also establishes that the trial court explained sufficiently the ramifications of that decision, that Roberts essentially told the trial court that she was not presenting additional mitigating evidence because she wanted to be given a death sentence, and that she disregarded her attorneys' advice and instead directed them not to present any mitigating evidence beyond her unsworn statement." *Roberts I,* at ¶148.

- 15 -

On remand, Appellant did not specifically ask the court to impose the death penalty a second time. However, she did not make a plea for a life sentence either. During her competency evaluation she told Dr. Gazley that she preferred confinement on death row to confinement in general population. "She acknowledged that being imprisoned for life in the general population would be almost worse than being executed. She reported, 'When you're in prison your life is over anyway.' Though Ms. Roberts insisted it was 'not my view,' she did report that, 'As long as you're on death row, there's always the possibility of an appeal." (Ex. 1, p. 6). Dr. Gazley quoted Appellant as saying, "Give me death instead of having to live here among these animals and eating slop." (Ex. 1, p. 9).

Appellant argues in her brief that the trial court's sentencing entry falls "woefully short" of the U.S. Supreme Court's dictates in *Lockett v. Ohio* (1978), 438 U.S. 586 and R.C. 2929.03(F). Appellant's Brf. at 31. Appellant wrongly states that "the trial court did not mention in opinion a single factor that he could even consider as mitigation, even if he were to provide little weight to that factor." Id. A reading of the trial court's sentencing opinion states otherwise.

The trial judge first noted that despite his advice to Appellant, she made a knowing, voluntary and intelligent decision to waive presentation of mitigating evidence and to rely solely upon her unsworn statement to the jury. (T.d. # 203, p. 16). "Despite the proceeding that I have outlined, the Court is still bound to make an independent weighing of any and all mitigating factors that it feels may exist in this case against the aggravating circumstances. The Defendant was not the principal offender. Pursuant to Section 2929.04(B)(6), the Court considers this factor, but gives it very little weight." Id. at p. 17. "The Court gives very slight weight to the fact that the Defendant indicates in her letters that the victim may have been physically abusive

- 16 -

to her. This factor is pursuant to Section 2929.04(B)(1)(2). However, the existence of this factor is given very slight weight due to the fact that it is unsubstantiated, and even if it were true, would not warrant the Defendant's action in this case." Id. at p. 18-19. It should be noted that in her unsworn statement to the jury, Appellant specifically denied that Robert Fingerhut had abused her. (T.p. Vol. XXVIII, p. 6298-6299). The court referenced her unsworn statement to her jury, but gave it "very little weight." "During the course of her unsworn statement, the Defendant apologized to her Defense team and thanked them for the hard work. The few positive things gleaned from this statement were overshadowed by the Defendant's personal attacks, and statements that were clearly contrary to the evidence. The Defendant denied guilt and personally attacked the jurors by claiming they were not a Jury of her peers." Id. at p. 19.

Finally, citing R.C. 2929.04(A)(7), the Court accorded "very slight weight to the Defendant's behavior during the course of this trial. The Defendant was courteous, pleasant and properly addressed the Court at all times. The Defendant appeared intelligent and interested in the proceedings and appeared to assist in her defense at all times. The Defendant presented no security problem to this Court and those who transported her to Court each day." Id. at p. 20. Thus, any inference by Appellant that the trial did not address potential mitigating factors is belied by the record before this Court. Clearly, the trial judge scoured the trial record to articulate some mitigating factors even though Appellant had instructed him to not to do so.

The State further takes issue with Appellant's statement at page 30 of her brief wherein she writes, "it was clear from *Lockett* and *Eddings* that a State could not, consistent with the Eighth and Fourteenth Amendments, prevent the sentencer from considering and giving effect to evidence relevant to the defendant's background or character or to the circumstances of the offense that mitigate against imposing the death penalty." The State did *nothing* to prevent

- 17 -

Appellant from presenting any relevant mitigating information. Contrary to the advice of her trial counsel and the trial court, Appellant elected to block the admission of any mitigating evidence and to solely rely on her unsworn statement. (Trial T.p. Vol. XXVIII, p. 6221-6224). The State agrees with Appellant that Ohio statutes permit the introduction of mental health testimony, but Appellant plainly and unequivocally waived her right to present it. Moreover, in her unsworn statement, she told her jury, "We haven't given you one piece of mitigating evidence. You are bound by law to give me one sentence, the death penalty. You have no other choice. That is what I'm asking you to do." Id. at 6295. The State disagrees with Appellant's statement that the trial judge precluded the introduction of mitigating evidence. As this Court noted in *Roberts I* at ¶141 & 148, the trial court openly discouraged Appellant from waiving mitigation by bluntly discussing the likelihood of a death recommendation if she chose that option. The trial court so scrupulously guarded Appellant's right to present mitigating evidence that it ordered a psychological evaluation to determine whether Appellant was competent to waive the introduction of mitigating evidence. In Dr. Thomas Eberle's expert opinion, there was "no psychiatric or psychological abnormality that would prevent her from having the faculties needed to make that decision in a rational way." Id. at 6231.

But this Court has never held that *Eddings* and *Lockett* require a capital defendant to present mitigating evidence against his or her wishes. In fact, in *Roberts I,* this Court held: "The United States Supreme Court has never suggested that the Eighth Amendment requires forcing an unwilling defendant to present mitigating evidence in a capital case. *State v. Ashworth* (1999), 85 Ohio St.3d 56, 63, 706 N.E.2d 1231. No societal interest counterbalances the defendant's right to control his or her own defense. *Tyler*, 50 Ohio St.3d at 28, 553 N.E.2d 576. We have held that a defendant is entitled to decide what she wants to argue and present as mitigation in the penalty

- 18 -

phase, see, e.g., *Jenkins,* 15 Ohio St.3d at 189, 15 OBR 311, 473 N.E.2d 264, citing *Lockett v. Ohio* (1978), 438 U.S. 586, 604, 98 S.Ct. 2954, 57 L.Ed.2d 973, including the decision to present no evidence. Ohio's death-penalty statute itself confers 'great latitude' on a defendant in such decisions. R.C. 2929.04(C). See, also, *State v. Barton*, 108 Ohio St.3d 402, 2006-Ohio-1324, 844 N.E.2d 307, ¶ 47. *Roberts was entitled to present no mitigation evidence."* (Emphasis added). *Roberts I,* at ¶139, 140. As Appellant's trial counsel told the court in 2003, "My reading of the case law *** is actually fairly consistent with my own view of what the Constitution requires and that is if a person has a liberty under the United States or Ohio Constitutions and they knowingly and voluntarily and intelligently decide to forego or give up that liberty, then that is something that all of us are duty bound to honor. (Trial T.p. Vol.XXVIII, p. 6226) If Roberts had no entitlement to present mitigating evidence to her jury in 2003, she had no entitlement to change strategy and present mitigating evidence to the court upon remand. As stated in Proposition of Law I, this Court did not remand Appellant's case for a new mitigation hearing. It remanded the case for allocution and a re-draft of the sentencing opinion.

Despite that fact, Appellant enjoyed the added benefit of Dr. Gazley's report which included statements about Appellant's purported sexual abuse as a child, life with a physically abusive father, treatment for depression while living in Miami, prescriptions for anti-depressants, one-week hospitalization in a psychiatric hospital for a suicide attempt, head injuries, pain medications and a self-reported lack of a criminal history. Notably, Appellant's trial counsel placed on the record that they were aware of at least some of these arguable mitigating factors, and Appellant had specifically instructed them *not* to bring them to the jury's attention. The court also saw Dr. Gazley's diagnosis of a bipolar disorder in partial remission, an unspecified personality disorder with histrionic and narcissistic features, and self-reported back pain due to

- 19 -

arthritis. (Ex. 1). Thus, the trial court's grant of a competency evaluation upon remand supplemented the record with evidence not before the trial court in 2003, even though this Court's order did not provide for such supplementation.

Notably, her trial counsel told the court in 2003, "We have obtained hospital records relating to a six day psychiatric stay in the year 2000. There was a hospitalization in April of – two hospitalizations of [sic] April of 1999 relating to a traffic accident. We have obtained counseling records from Valley Counseling. We made arrangements for basically family members to come and testify during the sentencing phase. Those witnesses were canceled. Donna has instructed us not to present mitigating evidence." (Trial T.p. Vol. XXVIII, p. 6225). Appellant waived the right to present this evidence in 2003 and this Court's remand should not be construed as an opportunity to reformulate her defense strategy for the penalty phase.

Finally, the Appellant in this Proposition of Law attempts to convince the court of an "error" which her waiver generated. "Under the invited-error doctrine, a party cannot take advantage of an error that the party invited or induced the court to commit." *State v. LaMar* (2002), 95 Ohio St. 3d 181, 206. Appellant waived her right to submit mitigating evidence and now seeks to claim error because the court failed to consider evidence which was available at the time of her 2003 trial. The State concedes no error; but if this Court finds error it is indeed of the invited variety.

For the above reasons, Appellant's Proposition of Law Two is without merit.

### APPELLEE'S PROPOSITION OF LAW THREE:

**When a trial court correctly articulates statutory aggravating circumstances, Ohio law presumes the court relied only upon those circumstances and not upon nonstatutory aggravating circumstances.**

In her third Proposition of Law, Appellant argues that the trial court arbitrarily and capriciously re-imposed the death sentence she requested because it referred to the aggravating circumstance of her aggravated burglary offense as "heinous" and the aggravating circumstance of her aggravating robbery conviction as "the worst form of the office." This proposition is without merit.

It should first be noted that the very language which Appellant challenges in this Proposition of Law appeared in her original sentencing opinion and she failed to object to it in her direct appeal to this Court. (See, T.d. # 126 p. 16). This Court has previously used both the doctrine of res judicata and judicial economy to bar a criminal defendant from raising on a subsequent appeal issues which could have been brought to the reviewing court's attention during the original appeal. "Our holding that a 'sentence' includes only the sanction or combination of sanctions imposed for a single offense also comports with our long-standing precedent that any issue that could have been raised on direct appeal and was not is res judicata and not subject to review in subsequent proceedings. *State v. Hutton,* 100 Ohio St.3d 176, 2003-Ohio-5607, 797 N.E.2d 948, ¶ 37; *State v. D'Ambrosio* (1995), 73 Ohio St.3d 141, 143, 652 N.E.2d 710. As we explained nearly 40 years ago: 'Under the doctrine of *res judicata,* a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was *raised or could have been raised by the defendant * * * on an appeal* from that judgment.' (Emphasis added.) *State v. Perry* (1967), 10 Ohio St.2d 175, 39

- 21 -

O.O.2d 189, 226 N.E.2d 104, paragraph nine of the syllabus." *State v. Saxon* , 109 Ohio St. 3d 176, 2006-Ohio-1245, at ¶16-17.

This Court reiterated its holding in *Saxon* by noting, "we reasoned that our ruling promotes finality in sentencing, as well as judicial economy, by denying a criminal defendant the opportunity to raise, on remand or on subsequent appeal from a resentencing order, issues that could have been raised in his or her direct appeal." *State v. Evans* 113 Ohio St. 3d 100, 2007-Ohio-861, at ¶12. This Court remanded Appellant's case for re-sentencing, nothing more, nothing less. While the State acknowledges that the original entry was remanded for re-drafting, Appellant did not challenge this language in *Roberts I*. In fact, Appellant's original appeal to this Court did not raise one solitary error in content of the original opinion, only its authorship. Based on this Court's previous authority in *Evans* and *Saxon* Appellant is barred from the opportunity to re-litigate this issue in this subsequent appeal.

Should this Court disagree and view this language subject to appellate review, R.C. 2929.03(F) mandates, in pertinent part, "[t]he court or the panel of three judges, when it imposes sentence of death, shall state in a separate opinion its specific findings as to the existence of any of the mitigating factors set forth in division (B) of Section 2929.04 of the Revised Code, the existence of any other mitigating factors, the aggravating circumstances the offender was found guilty of committing, and *the reasons why* the aggravating circumstances the offender was found guilty of committing were sufficient to outweigh the mitigating factors. * * * " (Emphasis added.) Moreover, this Court has held, "[u]nder R.C. 2929.03(F), a trial court or three-judge panel may rely upon and cite the nature and circumstances of the offense as reasons supporting its finding that the aggravating circumstances were sufficient to outweigh the mitigating factors."

- 22 -

*State v. Sowell* (1988), 39 Ohio St. 3d 322, 329, citing *State v. Stump* (1987), 32 Ohio St. 3d 95, paragraph one of the syllabus.

Notably, this Court previously considered whether the inclusion of such language as "heinous" in a sentencing opinion taints that opinion with "nonstatutory aggravating circumstances" as argued by Appellant in her brief. It has held it does not. For example, in *State v. Hill* (1995) 73 Ohio St. 3d 433, this Court held that when a trial court articulates an aggravating circumstance, added verbiage does not signify reliance upon nonstatutory aggravating circumstances in its sentencing decision. "Neither the trial court nor the court of appeals relied upon nonstatutory aggravating circumstances. Both courts accurately identified the single aggravating circumstance. When a court does so correctly, that court is presumed to rely only on that circumstance, and not on nonstatutory aggravating circumstances. *State v. Rojas* (1992), 64 Ohio St.3d 131, 142, 592 N.E.2d 1376, 1386; *State v. Wiles* (1991), 59 Ohio St.3d 71, 90, 571 N.E.2d 97, 120. Neither the court of appeals' description of Hill's crime as 'heinous,' nor the trial court's alleged 'disgust' for Hill's offense, created nonstatutory aggravating circumstances. The facts of the robbery form part of the aggravating circumstance. *State v. Lott* (1990), 51 Ohio St.3d 160, 171, 555 N.E.2d 293, 305. Moreover, a court 'may rely upon and cite the nature and circumstances of the offense as reasons supporting its finding that the aggravating circumstances were sufficient to outweigh the mitigating factors.' *State v. Stumpf* (1987), 32 Ohio St.3d 95, 512 N.E.2d 598, paragraph one of the syllabus." *Hill*, supra, at ¶441.

The State would also note that this Court has declined to find reversible error even when the jury instructions described the capital offense as "heinous, shocking and brutal." "After reviewing all of the jury instructions in this case, we find that the court properly explained to the jury when a defendant may be sentenced to death. While it may have been improper for the court

- 23 -

to refer to capital crimes as 'heinous, shocking or brutal' the defendant has failed to demonstrate that he suffered prejudice as a result of the statement. See *State v. Scott* (1986), 26 Ohio St.3d 92; *State v. Wade* (1978), 53 Ohio St.2d 182. Thus, Appellant's comment at page 34 of her brief that "[h]einousness is not a valid consideration due to the arbitrariness of the term" is not supported by authority from this Court.

The only subsection of R.C. 2929.04(A) referenced by the trial court in its opinion is R.C. 2929.04(A)(7). This statute enumerates the following aggravating circumstances for the trial court's consideration: "The offense was committed while the offender was committing, attempting to commit, or fleeing immediately after committing or attempting to commit kidnapping, rape, aggravated arson, aggravated robbery, or aggravated burglary, and either the offender was the principal offender in the commission of the aggravated murder or, if not the principal offender, committed the aggravated murder with prior calculation and design." The trial judge specifically cited to Appellant's commission of aggravated robbery and aggravated burglary during the commission of an aggravated murder committed with prior calculation and design as the applicable statutorily defined aggravated circumstances.

According to the trial court, the facts supporting the aggravated burglary conviction are as follows: Appellant (1) permitted co-defendant Jackson to trespass in the home she shared with the victim, Robert Fingerhut, (2) provided Jackson with gloves, a ski mask, a firearm and access to the home and (3) assured the victim's arrival with phone calls to Fingerhut while he was at the bus station and en route home. The trial court opined these actions were committed with prior calculation and design because Appellant (1) made a plan with Jackson to kill Fingerhut, (2) confirmed the value of Fingerhut's life insurance policies ahead of the murder, (3) paid for Jackson's motel room hideout for a full week after the murder, (4) followed her plan to

- 24 -

feign grief as police secured the murder scene, and (5) deliberately sought to misdirect the police investigations by suggesting suspects other than Jackson to the police. (T.d. #203, p. 12).

With respect to the aggravated robbery specification, the trial judge found Appellant and Jackson plotted to kidnap Fingerhut and drive him to Youngstown in Fingerhut's own car in order to kill him. While Fingerhut fought for his life and was actually killed in his own home, Jackson nevertheless stole Fingerhut's Chrysler 300M and abandoned it near his own home in Youngstown. The plan to steal the car is illustrated in several phone calls introduced into evidence. (T.d. #203, p. 14).

In conclusion, Appellant has waived any issue of the trial court labeling the aggravated burglary of Fingerhut's home as "heinous" or the aggravated robbery as "the worst form." In the alternative, a reading of the sentencing entry in its entirety shows that the trial court did inject non-statutory aggravating circumstances into its weighing process. Any error is at worst harmless and non-prejudicial to Appellant. Her Proposition of Law Three is without merit.

- 25 -

**APPELLEE'S PROPOSITION OF LAW FOUR:**

**Ohio law vests exclusive authority in the Chief Justice of this Court to disqualify a trial judge, and gives no authority to an Ohio appellate court to find error when a trial judge declines to recuse himself.**

Appellant alleges error on the part of the trial court for failure to voluntarily step aside for purposes of re-sentencing. Appellant fails to articulate any evidence to suggest that the trial court was not fair and impartial in the re-sentencing proceedings. Moreover, Appellant did not follow the proper procedure in seeking the trial judge's disqualification from her re-sentencing.

Ohio's Constitution vests discretion solely in the Ohio Supreme Court's Chief Justice to determine when a common pleas judge should be removed from a case. "The chief justice of the supreme court or any judge of that court designated by him shall pass upon the disqualification of any judge of the courts of appeals or courts of common pleas or division thereof. Rules may be adopted to provide for the hearing of disqualification matters involving judges of courts established by law." Sec. 5 of Art. IV, of the Ohio Constitution. R.C. 2701.03(A) lists the process which a litigant must follow to effect the removal of a trial judge. "If a judge of the court of common pleas allegedly is interested in a proceeding pending before the court, allegedly is related to or has a bias or prejudice for or against a party to a proceeding pending before the court or a party's counsel, or allegedly otherwise is disqualified to preside in a proceeding pending before the court, any party to the proceeding or the party's counsel may file an affidavit of disqualification with the clerk of the supreme court in accordance with division (B) of this section."

This Court has interpreted Sec. 5 of Art. IV of the Ohio Constitution as precluding appellate review of a trial court's refusal to recuse itself. "Since only the Chief Justice or his designee may hear disqualification matters, the Court of Appeals was without authority to pass

- 26 -

upon disqualification or to void the judgment of the trial court upon that basis." *Beer v. Griffith* (1978), 54 Ohio St. 2d 440, 441-442. See, also, *Grogan v. T.W. Grogan Co.* (2001), 143 Ohio App. 3d 548, 557. Furthermore, this Court has held that when a party fails to follow the procedures articulated in Sec. 5(C), Art. IV, Ohio Constitution, the party is foreclosed from complaining about a judge remaining on a particular case. *State v. Moore* 93 Ohio St. 3d 649, 2001-Ohio-1892.

Though Appellant filed a motion for the voluntary recusal of Judge John Stuard in the trial court (Td. # 184), she provides no evidence that she followed that motion with an affidavit to the Chief Justice as mandated by R.C. 2701.03(A). Based on this Court's prior holdings in *Beer* and *Moore* this claim is improperly before this Court. Once Judge Stuard orally denied Appellant's motion on Oct. 22, 2007 (T.d. #211, p. 41), she should have filed an affidavit with the Chief Justice, not an appeal with the full panel of this Court. Indeed, after Judge Stuard orally denied the motion for voluntary recusal, he permitted Appellant's allocution, but recessed the sentencing proceedings until Oct. 29, 2007, which would have been ample time to follow the mandates of R.C. 2701.03(A). Therefore, this Proposition of Law should be discounted by this Court for procedural reasons.

Additionally, there are practical reasons for finding no merit to this Proposition. When this Court remanded this matter for re-sentencing, it directed as follows: "Because of the prejudicial error in sentencing Roberts to death, the sentence of death is vacated, and the cause is hereby remanded *to the trial court*. On remand, *the trial judge* will afford Roberts her right to allocute, and *the trial court* shall personally review and evaluate the evidence, weigh the aggravating circumstances against any relevant mitigating evidence, and *determine anew the appropriateness* of the death penalty as required by R.C. 2929.03. *The trial court* will then

- 27 -

personally prepare an entirely new penalty opinion as required by R.C. 2929.03(F) and conduct whatever other proceedings are required by law and consistent with this opinion." (Emphasis added) *Roberts I,* at ¶167. Obviously, if this Court viewed Judge Stuard as anything less than fair and impartial, or subject to "undue" pressure as argued now by Appellant, this Court could have appointed a visiting judge to hear the re-sentencing on remand. It did not. This Court has never indicated that any judge other Judge Stuard should preside over Appellant's re-sentencing proceedings.

Moreover, when co-defendant Nathanial Jackson filed a motion for a new sentencing hearing based on the *Roberts I* decision and sought to remove Judge Stuard by way of an affidavit for disqualification, Chief Justice Moyer denied that motion finding, "I conclude that the record before me does not compel his disqualification for any alleged bias or prejudice. To be sure, if a judge's words or actions convey the impression that the judge has developed a 'hostile feeling or spirit of ill will,' *State ex rel. Pratt v. Weygandt* (1956), 164 Ohio St. 463, 469, 58 O.O. 315, 132 N.E.2d 191, or if the judge has reached a 'fixed anticipatory judgment' that will prevent the judge from hearing the case with 'an open state of mind * * * governed by the law and the facts,' id., then the judge should not remain on the case. There is no evidence in the record before me, however, to suggest that the judge has shown any hostility or bias toward either party, and there is no indication that he is unable or unwilling to resolve any remaining disputed matters with an open state of mind." *In re Disqualification of Stuard* 113 Ohio St. 3d 1236, 2006-Ohio-7233, at ¶8.

Likewise, Appellant has failed to argue, much less demonstrate, that Judge Stuard harbored any hostile feeling or ill will toward her. There is no evidence to suggest Judge Stuard was biased toward either party. Even if Appellant had followed the proper procedure by filing an

- 28 -

ctor

affidavit of disqualification, based on the record before this Court, the Chief Justice would have been unable to find any bias or prejudice toward or against Appellant or the State. As such, Appellant's Proposition of Law No. IV is without merit.

- 29 -

## APPELLEE'S PROPOSITION OF LAW FIVE:

**Res judicata bars this Court from considering arguments that a capital defendant's trial counsel were ineffective for a purported, though unsupported, failure to conduct a proper mitigation investigation.**

Appellant argues in this Proposition of Law that her original defense team was ineffective because they failed to conduct a proper mitigation phase investigation. As will be discussed below, the record in the trial court specifically belies this allegation. Moreover, the doctrine of res judicata precludes her from raising this claim now.

Generally speaking, "to show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *State v. Bradley* (1989), 42 Ohio St.3d 136, 143. In *Bradley,* this Court refused to label trial counsel ineffective despite allegations that they failed to conduct a mitigation investigation. Id. at 144.

It is inarguable that Appellant's lack of mitigation evidence in 2003 was due not to ineffective assistance of her trial counsel, but to her informed and calculated insistence that no mitigation evidence be presented. Appellant concedes in her brief at page 41 that "Roberts did attempt to restrict the evidence presented in mitigation at that time." "Attempt to restrict" is a classic understatement. The record irrefutably establishes that Appellant forbade her trial counsel from offering any evidence at her mitigation hearing.

Appellant now argues that because there is no evidence in the record to suggest she knew about her own Social Security records she waived her right to present any mitigation evidence under the misimpression that there was nothing to introduce. This argument strains credibility to the breaking point.

- 30 -

Appellant's Social Security records were proffered during the re-sentencing as Defendant's Ex. A. Here are just a few random examples of Appellant's own action to secure Social Security benefits: Appellant's signature appears on a February 24, 2000, and October 30, 1999 release of information forms which in bold, black letters states are for **Adjudication of Social Security and/or Supplemental Security Income disability claim.** (Defendant Robert's Appendix to Third Motion to Proffer Evidence, Defense Ex. A). Her signature appears on an **Authorization for Source to Release Information to the Social Security Administration (SSA)** on October 9, 1999. She signed a Fee Agreement March 27, 2000, with Atty. Robert Heller to represent her in her claim for Social Security benefits. Id. She contested Atty. Heller's fee in a **Statement of Claimant or Other Person** in a form provided by the Social Security Administration.

In a **Social Security Notice** dated Dec. 10, 1999, she was informed her claim for disability benefits had been denied because "your condition is not severe enough to be considered disabling. In deciding this, we considered the medical records, your statements and how your condition affects your ability to work. *** Your medical condition is not so severe as to prevent you from doing most of your usual activities, including working." Id. Furthermore, in her 18-page allocution at re-sentencing she told the trial court, "Robert [the deceased victim] made me go to the Social Security and they made me go to a psychiatrist, that was in 2000." (T.d. #211, p. 53). Appellant submitted a **Request for Rconsideration** for Social Security benefits February 11, 2000. Parenthetically, she told the court she was awarded those benefits, but there is no evidence to support that claim before this Court. Therefore, any suggestion that

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2142

Appellant was somehow oblivious to her own Social Security claim is completely belied by the documents she proffered into evidence and her allocution at re-sentencing.

Moreover, while Robert Fingerhut may have represented to the Social Security Administration that Appellant was lacking in the emotional stability to hold down a job, the opinion from this very Court demonstrates that Appellant was hard at work the day she orchestrated and facilitated Fingerhut's murder: "In this period of initial investigation, Roberts told police that she had left work at the Greyhound bus terminal in Warren at 5:30 that evening, had dined alone at a Red Lobster restaurant, and had then gone home. According to Roberts, Fingerhut called her and said he would be late coming home and suggested that she go shopping." *Roberts I at* ¶19.

During her unsworn statement to her jurors, Appellant decried news accounts which short changed her professional accomplishments. "I have been a business woman for about 40 years. You know, I worked for a plastic surgeon for about 25 of those. It was just me and him. I did a lot. When we moved up here, we had the Avis franchise at the airport, then we had the Greyhounds. I also ran a business in Youngstown, a restaurant, which he [a local news reporter] referred to me as a restaurant worker." (T.p. Vol. XXVIII, p. 6259). She told her jury she almost single-handedly ran the Warren Greyhound terminal. "My husband and I had two Greyhound stations. You are not allowed to have two in one name. His name was in Youngstown. My name was in Warren. We had no other employees in Warren. If he was there in the morning, I was there in the afternoon." Id. at p. 6276.

No rational scrutiny of this record supports Appellant's inference in her brief that she was somehow unaware of her claims with Social Security and could not alert her trial

- 32 -

counsel to the records which she ultimately proffered as Ex. A at re-sentencing. If she knew about the records at her re-sentencing in 2007, she certainly would have known about them in 2003 when she completely commandeered her mitigation proceedings and forbade counsel from presenting *any* mitigation evidence. Additionally, this previously-quoted exchange illustrates trial counsel's awareness of potential mitigating evidence available to Appellant, and her steadfast refusal to present it: "We have obtained hospital records relating to a six day psychiatric stay in the year 2000. There was a hospitalization in April of – two hospitalizations of [sic] April of 1999 relating to a traffic accident. We have obtained counseling records from Valley Counseling. We made arrangements for basically family members to come and testify during the sentencing phase. Those witnesses were canceled. Donna has instructed us not to present mitigating evidence." (Trial T.p. Vol. XXVIII, p. 6225). Appellant is asking this Court to believe that she would knowingly bury her psychiatric stay, her Valley Counseling records, and the input from sympathetic family members, but permit her trial counsel to introduce her failed Social Security claim when she was going to request the death penalty anyway.

Appellant's instructions to trial counsel in and of themselves are dispositive of this Proposition of Law. Appellant cannot now claim error when it was Appellant who tied her counsel's hands with enough rope to hang herself during the penalty phase. According to the doctrine of invited error, a party may not take advantage of error for which he himself invited or induced. *Lester v. Leuck* (1943), 142 Ohio St. 91, 92. Yet with this Proposition of Law, she attempts to benefit from an error which she personally invited by tagging her trial counsel as ineffective.

Nevertheless, as Appellant tacitly admits in her brief, this argument is barred by the

- 33 -

doctrine of res judicata. Appellant in her direct appeal to this Court argued ineffective assistance of her trial counsel for their mitigation performance claiming they failed to properly advise her and ensure that she understood the ramifications of her waiver of her right to present mitigating evidence. *Roberts I*, at ¶146. This Court rejected this argument. Id. The State submits that her slightly new slant on this old argument - that counsel were ineffective for failing to unearth Social Security records which Appellant herself knew about and refused to present – is barred by the doctrine of res judicata. "The doctrine serves to preclude a defendant who has had his day in court from seeking a second on that same issue. In so doing, res judicata promotes the principles of finality and judicial economy by preventing endless relitigation of an issue on which a defendant has already received a full and fair opportunity to be heard. See *State ex rel. Willys-Overland Co. v. Clark* (1925), 112 Ohio St. 263, 268, 147 N.E. 33." *State v. Saxon* 109 Ohio St.3d 176, 2006-Ohio-1245, ¶18. Appellant has had her day in court and further litigation of her trial counsel's pre-re-sentencing performance is barred by the authority from this very Court.

Several Ohio appellate courts have addressed this issue in light of the numerous cases reversed and remanded to the trial courts for re-sentencing only per this Court's decision in *State v. Foster* 109 Ohio St. 3d 1, 2006-Ohio-856. Some criminal defendants have attempted to bootstrap other appellate claims which pre-date their *Foster* re-sentencing, and the appellate courts below have responded in unison with a chorus of "too late."

For example, the Second Appellate District, relying upon this Court's decision in *State v. Perry* (1967), 10 Ohio St. 2d 175, held:  "The error Defendant assigns has nothing whatsoever to do with the final judgment from which this appeal was taken, which is the trial court's May 9, 2007 judgment resentencing Defendant. The assigned error instead relates solely to Defendant's prior trial proceeding and involve alleged defects and errors in the indictment. Such errors, which

- 34 -

challenge the validity of Defendant's judgment of conviction, could have been raised in Defendant's direct appeal from his conviction, Case No. 05CA125, but were not. Therefore, those claims are now barred by res judicata. *State v. Armstrong,* Montgomery App. Nos. 22450, 22277, 2008-Ohio-4532; *State v. Perry* (1967), 10 Ohio St.2d 175." *State v. North,* 2nd Dist. No. 07CA0059, 2008-Ohio-6239, at ¶16. See, also, *State v. Fernbach,* 12th Dist. No. CA2006-11-130, 2008-Ohio-5670, ¶19; *State v. Withers* 10th Dist. No. 08AP-39, 08 AP-40, 2008-Ohio-3175, ¶12; *State v. Hill,* 4th Dist. No. 06CA63, 2007-Ohio-5360, ¶5.

For the reasons stated above, Appellant's trial counsel were not ineffective, they were hamstringed by Appellant's unyielding prohibition of the presentment of mitigating evidence. Moreover, the doctrines of both invited error and res judicata bar Appellant from raising this issue at this time.  Therefore, Appellant's fifth Proposition of Law completely lacks merit.

## APPELLEE'S PROPOSITION OF LAW SIX:

**An expert opinion which states a criminal defendant understands the nature and objective of her re-sentencing, and can assist in her own defense comprises reliable, credible evidence as to the defendant's competency to stand for re-sentencing.**

In her Proposition of Law No. Six, Appellant argues the record does not reflect her competency for purposes of re-sentencing. The State submits Appellant's argument lacks merit.

Ohio's Revised Code provides that all criminal defendants are presumed competent to stand trial. "A defendant is presumed to be competent to stand trial. If, after a hearing, the court finds by a preponderance of the evidence that, because of the defendant's present mental condition, the defendant is incapable of understanding the nature and objective of the proceedings against the defendant or of assisting in the defendant's defense, the court shall find the defendant incompetent to stand trial and shall enter an order authorized by section 2945.38 of the Revised Code." R.C. 2945.37(G).

Appellant argues at page 47 of her brief that "[w]ithout evidence that Roberts could properly assist counsel, the hearing should not have been conducted." This statement misconstrues R.C. 2945.37 and improperly shifts her own burden of proof on the issue of competency. Ohio authority places the burden of proving *incompetency* squarely upon the defendant. No burden is placed upon the State or the court to prove *competency*. "Under R.C. 2945.37(A), a defendant is presumed competent *unless he proves* incompetence by a preponderance of the evidence." (Emphasis added). *State v. Hicks* (1989), 43 Ohio St.3d 72, 79. In general, an appellate court will not disturb a trial court's finding of legal competency if the record contains reliable and credible evidence in support of that finding. "Since the adequacy of the data relied upon by the expert who examined the appellant is a question for the trier of fact, and since there was some reliable, credible evidence supporting the trial court's conclusion that

- 36 -

appellant understood the nature and objective of the proceedings against him, this court will not disturb the finding that appellant was competent to stand trial. See 5 Ohio Jurisprudence 3d (1978) 212, Appellate Review, Section 608." *State v. Williams* (1986) 23 Ohio St.3d 16, 19.

Appellant argues the trial court erred by denying her motion of December 6, 2006, for an "independent evaluation" in addition to the one conducted by Dr. Thomas Gazley. However, a trial court is not required to order more than one competency evaluation. Section (A) of R.C. 2945.371 provides, in pertinent part: "If the issue of a defendant's competence to stand trial is raised under section 2945.37 of the Revised Code, the court *may* order one or more, but not more than three evaluations of the defendant's mental condition." (Emphasis added.)

The Eleventh District Court of Appeals has interpreted this section to allow the trial court's discretion in determining if any and how many evaluations are necessary to assess a defendant's competency. "Again, the use of the word 'may' supports the conclusion that a trial court is not required to order an evaluation of the defendant's mental condition every time he raises the issue. Instead, the wording of the statute implies that the ordering of an examination is a matter within the discretion of the trial court." *State v. Bailey* (1992) 90 Ohio App.3d 58, 67. Likewise, the Twelfth Appellate District has held, "the competency statutes do not require multiple forensic psychological examinations, nor does due process demand such a policy. See 2945.371(A)." *State v. Fugate* (June 1, 1998), 12th Dist. No. CA97-02-031, at *3, unreported.

Appellant in her brief at page 45 argues that the trial court refused to grant "an independent evaluation" which she requested December 6, 2006. As a point of clarification, Appellant filed a "Motion for Appropriation of Funds for Expert Assistance" on December 4, 2006. (T.d #168). That motion was mentioned in passing during a status conference conducted December 6, 2006. (T.d. #211, p. 4-7). However, it should be noted that Appellant's "Motion

- 37 -

for Appropriation of Funds for Expert Assistance" did not request expert assistance for the purpose of determining Appellant's competency to be re-sentenced. Instead, Appellant sought funds to hire Dr. James Eisenberg "as an [sic] forensic psychologist for the preparation of the sentencing." (T.d. #168). Appellant never specifically requested Dr. Eisenberg conduct a competency evaluation. Indeed, the motion does not address the issue of Appellant's competency at all, just "preparation of the sentencing." Id. While the State acknowledges that the court did not authorize funds to hire Dr. Eisenberg, it nevertheless ordered the Forensic Psychiatric Center of Northeast Ohio to conduct a forensic examination to determine Appellant's "competency to be sentenced." (T.d. # 172). This evaluation was conducted by Dr. Thomas Gazley.

Appellant refused to stipulate to Dr. Gazley's report which found her competent. (State's Ex. 1). The matter proceeding to a full hearing October 22, 2007, during which Dr. Gazley testified that Appellant has "the ability to understand the sentencing process and the ability to understand what the alternatives available are to her as well as her ability to provide her counsel with any mitigating circumstances, should she desire to do so." (T.d. #211, p. 21-22). Dr. Gazley agreed Appellant is aware of her right to present evidence to possibly spare herself the re-imposition of the death penalty. (T.d. #211, p. 22-23).

Appellant complains in her brief at page 45 that Dr. Gazley rendered an opinion as to her ability to interact with counsel, but never personally observed such interactions. Appellant cites absolutely no authority – legal or medical – to suggest that the sole method of determining one's ability to assist counsel is to monitor these encounters. While Appellant asserts in her brief that that there was no "testimony relevant" as to her ability to assist counsel, Dr. Gazley testified, "based on her ability to interact with me and provide me information, provide a coherent account of her own perceptions about the situation, I came to the conclusion that she would be able to do

- 38 -

so with her defense counsel as well." (T.d. # 211, p.27). Appellant offers no explanation as to why Appellant's ability to interact with Dr. Gazley would not serve as a barometer to assess how she would ultimately interact with her counsel.

It should also be noted that Appellant had undergone at least two competency evaluations prior to her initial sentencing. The second evaluation was specifically directed toward her competency to waive the presentation of mitigation evidence: "The court then heard from Dr. Thomas Eberle, a psychologist who had evaluated Roberts earlier during the prosecution and who did so again just prior to the hearing. Dr. Eberle testified that Roberts's decision to forgo presentation of mitigating evidence was rational. He further found that she suffered no psychiatric or psychological abnormality that would prohibit a rational decision regarding presentation of mitigating evidence." *Roberts I,* ¶135.

And while Appellant's prison records indicate she reported hallucinations in the early days of her incarceration, such episodes would not necessarily impact her competency to stand for re-sentencing. "A person who is psychotic, a person who has paranoid schizophrenia, a person who has a major depressive disorder can be and often is found competent to stand trial." (T.d. #211, p. 35). Since her incarceration, Appellant has been prescribed Trazodone, Lithium and Wellbutrin. These medications are typically prescribed for depression and mood swings. (T.d. #211, p. 30). According to Dr. Gazley, the prescriptions appeared to be working for Appellant. "I believe***that she was moderately to severely depressed, and then the descriptors lessened as time went on and she was treated both psychiatrically and psychologically there, to the point where the final diagnostic considerations by the mental health people at Marysville were that her symptoms were in fact in remission at the time that I saw her. She was progressively getting better, and when I saw her earlier this year, she was coherent, her

- 39 -

comments and responses to my questions were very relevant and I thought to the point." (T.d. # 211, p. 40).  Though certainly not an expert opinion, her counsel told the court, "I believe she's on the right medication and in my view doing fine right now.  I believe she's competent, but there is that in the past that I want to look into. " (T.d. #211, p. 5-6).

The evidence adduced at the competency hearing which preceded the re-sentencing was uncontroverted:  Appellant was capable of understanding the nature and the objective of her re-sentencing and was likewise capable to assist in her defense.  R.C. 2945.37(G).  The record is completely devoid of any opinion that Appellant was mentally incompetent.  Therefore, she failed to carry her burden to demonstrate incompetence and the trial court properly evaluated reliable, credible evidence in finding Appellant competent for the second time in four years. Appellant's Proposition of Law Six is without merit.

- 40 -

**APPELLEE'S PROPOSITION OF LAW NO. SEVEN:**

> **Res judicata bars Appellant from attempting to relitigate the issue of her competency to stand trial or to waive her right to present mitigating evidence at trial.**

In her seventh and final Proposition of Law, Appellant revisits the long-settled issue of her competency to waive presentment of mitigating evidence. Appellant's argument must fail for two reasons: (1) She fails to demonstrate that she was incompetent when she barred her trial counsel from presenting any mitigating evidence to possibly spare her the death penalty, (2) The argument is barred by the doctrine of res judicata.

Despite the voluminous documents which Appellant introduced during her re-sentencing, not one supports her claim that she was incompetent to waive the presentation of mitigation evidence. While she now seeks to portray herself as a suicidal zombie barely able to drag herself through the day, her persona at trial was that of a generous, successful business woman willing to suffer the death penalty to promote racial equality. She proffered Defense Ex. A which chronicles her quest for Social Security disability benefits, but which does not support her allocution claim that she was awarded the benefits. As previously stated, she was turned down for these benefits and deemed capable of working. In her Motion to Proffer Evidence filed with the Court September 20, 2007, she cites to the mitigating factor of "Steady Employment" at page 4 of her motion. (T.d. #195). Appellant cannot have it both ways. Her current proposed scenario of an unemployable, concussion-dazed, victim is defeated by her admitted and proffered exhibits along with the record before this Court.

Appellant's statement at page 47 of her brief that she "was not competent to make decisions at her penalty phase hearing of the original trial" is not only unsupported by the record, it is pointedly contradicted by the record and this own Court's prior rulings in this case. "The

- 41 -

court then heard from Dr. Thomas Eberle, a psychologist who had evaluated Roberts earlier during the prosecution and who did so again just prior to the hearing. Dr. Eberle testified that Roberts's decision to forgo presentation of mitigating evidence was rational. He further found that she suffered no psychiatric or psychological abnormality that would prohibit a rational decision regarding presentation of mitigating evidence." *Roberts I*, at ¶135. This Court continued: "Her contention that she did not fully understand the ramifications of her decision and that the trial judge did not sufficiently inquire of her in that regard is belied by the record. As set forth above, the record clearly establishes that the trial judge specifically addressed the likelihood of the jury's imposing a death sentence if Roberts failed to present mitigating evidence and that she understood that a death sentence was the probable outcome. In fact, Roberts asked the jury to impose that sentence. We reject her claim that she did not understand that the waiver would yield such a result." Id. at ¶141.

None of Appellant's voluminous post-remand records contradicts these previous findings. Despite claims of depression, suicidal ideations, bi-polar disorders, mood swings, and failed Social Security disability benefit claims, she has not submitted one piece of evidence to demonstrate mental incompetence.

Moreover, Appellant is barred by the doctrine of res judicata from re-litigating the issue of her mental competence in her original trial at this juncture. "The doctrine serves to preclude a defendant who has had his day in court from seeking a second on that same issue. In so doing, res judicata promotes the principles of finality and judicial economy by preventing endless relitigation of an issue on which a defendant has already received a full and fair opportunity to be heard. See *State ex rel. Willys-Overland Co. v. Clark* (1925), 112 Ohio St. 263, 268, 147 N.E. 33." *State v. Saxon* 109 Ohio St.3d 176, 2006-Ohio-1245, ¶18. Appellant's attempt to backdoor

- 42 -

this settled issue with extraneous documents which have no bearing on her competency during her original trial should be summarily rejected by this Court.

Appellant seeks to analogize her case to *United States v. Blohm* (1984), 579 F. Supp. 495, wherein a trial judge heard expert testimony which found Blohm competent to stand trial, but nevertheless found him incompetent because of his obsessive fixation with a civil copyright case. Blohm had purportedly sent a threatening letter to the judge in the civil case which resulted in criminal charges. Contrary to his attorney's advice, Blohm insisted in advancing a conspiracy defense which encompassed the judge, President Richard Nixon, and golfing legend Arnold Palmer. Though finding him competent to stand trial, one of Blohm's psychiatrists referred to his ideation of the "golf conspiracy" as "delusional," "false," "unshakable," and "irrational." *Blohm,* supra, at 503.

By contrast, Appellant knowingly and rationally waived her right to present mitigating evidence to highlight her perception that the death penalty is imposed in a racially discriminatory fashion. Not only is this belief NOT delusional or irrational, it's a position repeatedly espoused by defense lawyers in capital appeals. *State v. Steffen* (1987), 31 Ohio St. 3d 111, 124; *State v. Zuern* (1987), 32 Ohio St. 3d 56, syllabus; *State v. LaMar*, 95 Ohio St. 3d 181, 2002-Ohio-2128, ¶46; *State v. Freeman* (1985), 20 Ohio St. 3d 55, 58; *State v. Keene* (1998), 81 Ohio St. 3d 646, 652. This Court has never overturned a death sentence for reasons of racial discrimination, but that does not necessarily mean that the defense bar is delusional or irrational for raising the issue. Likewise, Appellant cannot be retroactively branded incompetent for championing a cause echoed in countless appellate briefs filed in this very Court under the protective cloak of zealous representation.

- 43 -

Appellant's hefty post-remand record augmentation does nothing to prove that she was mentally incompetent when she offered herself as a sacrificial lamb in the war against racial inequality. It should be noted that Appellant's true motivation came to light during the Gazley evaluation when she admitted she asked for the death penalty because she preferred the solitude of death row to life among the "animals" in general population. (State's Ex. 1, Competency Hearing Oct. 22, 2007). Appellant's post-remand filings do not overcome a res judicata bar. This Court has previously affirmed the trial court's assessment of her competency during her trial. Appellant's Proposition of Law No. Seven is without merit.

## CONCLUSION

For reasons stated above, Appellant's seven Propositions of Law lack merit. The State urges this Court to affirm Appellant's death sentence.

Respectfully submitted by:
DENNIS WATKINS (#0009949)
Trumbull County Prosecuting Attorney by:

LuWAYNE ANNOS (#0055651)
Assistant Prosecuting Attorney
Trumbull County Prosecutor's Office
160 High St. 4th Floor
Warren, Ohio          44481

Telephone: (330) 675-2426
Facsimile: (330) 675-2431

COUNSEL FOR PLAINTIFF-APPELLANT,
THE STATE OF OHIO

- 44 -

## PROOF OF SERVICE

I do hereby certify that a copy of this brief  was sent by ordinary U.S. Mail to Atty. David

L. Doughten (#0002847),   4403 St. Clair Ave., Cleveland, Ohio 44103-1125, and Jeffery J.

Helmick (#0040197), 1119 Adams St., 2nd Floor, Toledo, Ohio 43604, Counsel for Defendant-

Appellant Donna Roberts  on this 12th Day of December 2008.

LuWAYNE ANNOS (#0055651)
Assistant Prosecuting Attorney

- 45 -

# APPENDIX

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2157

ection 2971.03 of the Revised
nel of three judges, when it
hall state in a separate opinion
the existence of any of the
in division (B) of section
e, the existence of any other
vating circumstances the of-
committing, and the reasons
ances the offender was found
sufficient to outweigh the
or panel, when it imposes life
te term consisting of a mini-
nd a maximum term of life
(D) of this section, shall state
cific findings of which of the
in division (B) of section
it found to exist, what other
to exist, what aggravating
was found guilty of commit-
find that these aggravating
t to outweigh the mitigating
sentence of death is imposed
re January 1, 1995, the court
required to be prepared by
of the appropriate court of
f the supreme court within
panel imposes sentence. For
f death is imposed for an
r January 1, 1995, the court
required to be prepared by
f the supreme court within
panel imposes sentence. The
t sentencing hearing is held
t final until the opinion is

or a panel of three judges
for an offense committed
rk of the court in which the
iver the entire record in the

r a panel of three judges
or an offense committed on
rk of the court in which the
iver the entire record in the

ff 1-1-74); 139 v S 1 (Eff
); 146 v S 2 (Eff 7-1-96); 146
90. Eff 1-1-97; 150 v H 184,
1, eff. 1-1-08.

of 152 v S 10.
4 (150 v —) read as follows:
the Revised Code is presented
tion as amended by both Am.
3. 269 of the 121st General
pplying the principle stated in
vised Code that amendments
bly capable of simultaneous
is the resulting version of the
ctive date of the section as

n 3 of HB 180.
) (146 v —) following RC

69 read as follows:
m. Sub. S.B. 2 of the 121st
ed as follows:
sed Code in existence prior to
upon whom a court imposed

a term of imprisonment prior to that date, and notwithstanding division (B) of section 1.58 of the Revised Code, to a person upon whom a court, on or after that date and in accordance with the law in existence prior to that date, imposes a term of imprisonment for an offense that was committed prior to that date.

The provisions of the Revised Code in existence on and after July 1, 1996, apply to a person who commits an offense on or after that date.

SECTION 4. That existing Section 5 of Am. Sub. S.B. 2 of the 121st General Assembly is hereby repealed.

## § 2929.04 Criteria for imposing death or imprisonment for a capital offense.

(A) Imposition of the death penalty for aggravated murder is precluded unless one or more of the following is specified in the indictment or count in the indictment pursuant to section 2941.14 of the Revised Code and proved beyond a reasonable doubt:

(1) The offense was the assassination of the president of the United States or a person in line of succession to the presidency, the governor or lieutenant governor of this state, the president-elect or vice president-elect of the United States, the governor-elect or lieutenant governor-elect of this state, or a candidate for any of the offices described in this division. For purposes of this division, a person is a candidate if the person has been nominated for election according to law, if the person has filed a petition or petitions according to law to have the person's name placed on the ballot in a primary or general election, or if the person campaigns as a write-in candidate in a primary or general election.

(2) The offense was committed for hire.

(3) The offense was committed for the purpose of escaping detection, apprehension, trial, or punishment for another offense committed by the offender.

(4) The offense was committed while the offender was under detention or while the offender was at large after having broken detention. As used in division (A)(4) of this section, "detention" has the same meaning as in section 2921.01 of the Revised Code, except that detention does not include hospitalization, institutionalization, or confinement in a mental health facility or mental retardation and developmentally disabled facility unless at the time of the commission of the offense either of the following circumstances apply:

(a) The offender was in the facility as a result of being charged with a violation of a section of the Revised Code.

(b) The offender was under detention as a result of being convicted of or pleading guilty to a violation of a section of the Revised Code.

(5) Prior to the offense at bar, the offender was convicted of an offense an essential element of which was the purposeful killing of or attempt to kill another, or the offense at bar was part of a course of conduct involving the purposeful killing of or attempt to kill two or more persons by the offender.

(6) The victim of the offense was a law enforcement officer, as defined in section 2911.01 of the Revised Code, whom the offender had reasonable cause to know or knew to be a law enforcement officer as so defined, and either the victim, at the time of the commission of the offense, was engaged in the victim's duties, or it was the offender's specific purpose to kill a law enforcement officer as so defined.

(7) The offense was committed while the offender was committing, attempting to commit, or fleeing immediately after committing or attempting to commit. kidnapping,

rape, aggravated arson, aggravated robbery, or aggravated burglary, and either the offender was the principal offender, or if not the principal offender, committed the aggravated murder with prior calculation and design.

(8) The victim of the aggravated murder was a witness to an offense who was purposely killed to prevent the victim's testimony in any criminal proceeding and the aggravated murder was not committed during the commission, attempted commission, or flight immediately after the commission or attempted commission of the offense to which the victim was a witness, or the victim of the aggravated murder was a witness to an offense and was purposely killed in retaliation for the victim's testimony in any criminal proceeding.

(9) The offender, in the commission of the offense, purposefully caused the death of another who was under thirteen years of age at the time of the commission of the offense, and either the offender was the principal offender in the commission of the offense or, if not the principal offender, committed the offense with prior calculation and design.

(10) The offense was committed while the offender was committing, attempting to commit, or fleeing immediately after committing or attempting to commit terrorism.

(B) If one or more of the aggravating circumstances listed in division (A) of this section is specified in the indictment or count in the indictment and proved beyond a reasonable doubt, and if the matter of age pursuant to section 2929.023 [2929.02.3] of the Revised Code or if the offender, after raising the matter of age, was found at trial to have been eighteen years of age or older at the time of the commission of the offense, the court, trial jury, or panel of three judges shall consider, and weigh against the aggravating circumstances proved beyond a reasonable doubt, the nature and circumstances of the offense, the history, character, and background of the offender, and all of the following factors:

(1) Whether the nature of the offense induced or facilitated it;

(2) Whether it is unlikely that the offense would have been committed, but for the fact that the offender was under duress, coercion, or strong provocation;

(3) Whether, at the time of committing the offense, the offender, because of a mental disease or defect, lacked substantial capacity to appreciate the criminality of the offender's conduct or to conform the offender's conduct to the requirements of the law;

(4) The youth of the offender;

(5) The offender's lack of a significant history of prior criminal convictions and delinquency adjudications;

(6) If the offender was a participant in the offense but not the principal offender, the degree of the offender's participation in the offense and the degree of the offender's participation in the acts that led to the death of the victim;

(7) Any other factors that are relevant to the issue of whether the offender should be sentenced to death.

(C) The defendant shall be given great latitude in the presentation of evidence of the factors listed in division (B) of this section and of any other factors in mitigation of the imposition of the sentence of death.

The existence of any of the mitigating factors listed in division (B) of this section does not preclude the imposition of a sentence of death on the offender but shall be weighed pursuant to divisions (D)(2) and (3) of section 2929.03 of the Revised Code by the trial court, trial jury,

or the pane
circumstance
ting.
HISTORY:
10-19-81); 14
147 v S 193 t

The provis
SECTION
in this act as t
H.B. 151 and
new language
in recognition
of the Revise
where not suf
finding that
effective date

§ 292
tence.

(A) Whe
sections 29
court of ap
imposed fo
and the s
sentence i
other issu
supreme c
the senter
three judg
criminal c
dently we
in the rec
offender
stances t
outweigh
the sente
whether t
appeals,
imposed
and the c
tence is
imposed
facts and
supports
trial jury
guilty of
sentenci
cumstan
and the
in which
commit
shall afl
is persu
stances
outweig
that the
the cas

A co
sentenc
before
its find
The o
court i
mation

(B)
of dea

A-1

administrative officers and agencies as may be provided by law.

(C) Unless otherwise provided by law, there shall be a probate division and such other divisions of the courts of common pleas as may be provided by law. Judges shall be elected specifically to such probate division and to such other divisions. The judges of the probate division shall be empowered to employ and control the clerks, employees, deputies, and referees of such probate division of the common pleas courts.

**HISTORY: (Amended, effective Nov. 6, 1973; SJR No.30. Adopted May 7, 1968. Former § 4 repealed.)**

## § 5 Additional powers of supreme court; supervision; rule making.

(A)(1) In addition to all other powers vested by this article in the supreme court, the supreme court shall have general superintendence over all courts in the state. Such general superintending power shall be exercised by the chief justice in accordance with rules promulgated by the supreme court.

(2) The supreme court shall appoint an administrative director who shall assist the chief justice and who shall serve at the pleasure of the court. The compensation and duties of the administrative director shall be determined by the court.

(3) The chief justice or acting chief justice, as necessity arises, shall assign any judge of a court of common pleas or a division thereof temporarily to sit or hold court on any other court of common pleas or division thereof or any court of appeals or shall assign any judge of a court of appeals temporarily to sit or hold court on any other court of appeals or any court of common pleas or division thereof and upon such assignment said judge shall serve in such assigned capacity until the termination of the assignment. Rules may be adopted to provide for the temporary assignment of judges to sit and hold court in any court established by law.

(B) The supreme court shall prescribe rules governing practice and procedure in all courts of the state, which rules shall not abridge, enlarge, or modify any substantive right. Proposed rules shall be filed by the court, not later than the fifteenth day of January, with the clerk of each house of the general assembly during a regular session thereof, and amendments to any such proposed rules may be so filed not later than the first day of May in that session. Such rules shall take effect on the following first day of July, unless prior to such day the general assembly adopts a concurrent resolution of disapproval. All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect.

Courts may adopt additional rules concerning local practice in their respective courts which are not inconsistent with the rules promulgated by the supreme court. The supreme court may make rules to require uniform record keeping for all courts of the state, and shall make rules governing the admission to the practice of law and discipline of persons so admitted.

(C) The chief justice of the supreme court or any judge of that court designated by him shall pass upon the disqualification of any judge of the courts of appeals or courts of common pleas or division thereof. Rules may be adopted to provide for the hearing of disqualification matters involving judges of courts established by law.

**HISTORY: (Amended, effective Nov. 6, 1973; SJR No.30. Adopted May 7, 1968.)**

**Not analogous to former § 5, repealed October 9, 1883.**

## § 20 Style of process, prosecution, and indictment.

The style of all process shall be, "The State of Ohio;" all prosecutions shall be carried on, in the name, and by the authority, of the state of Ohio; and all indictments shall conclude, "against the peace and dignity of the state of Ohio."

# ARTICLE V: ELECTIVE FRANCHISE

Section

3  Repealed, June 8, 1976.
4  Forfeiture of elective franchise.

## § 3 Repealed, June 8, 1976.

This section referred to the privilege from arrest of voters during elections.

## § 4 Forfeiture of elective franchise.

The General Assembly shall have power to exclude from the privilege of voting, or of being eligible to office, any person convicted of a felony.

**HISTORY: (Amended, effective June 8, 1976; SJR No.16.)**

# ARTICLE XVIII: MUNICIPAL CORPORATIONS

Section

3  Powers.
7  Home rule.

## § 3 Powers.

Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws. (Adopted September 3, 1912.)

The provisions of § 3 of HB 386 (149 v —) read as follows:

SECTION 3. (A) The provisions of the Revised Code, including, but not limited to, Titles XI, XIII, XVII, and XLVII, relating to the origination, granting, servicing, and collection of loans and other forms of credit prescribe rules of conduct upon citizens generally, comprise a comprehensive regulatory framework intended to operate uniformly throughout the state under the same circumstances and conditions, and constitute general laws within the meaning of Section 3 of Article XVIII of the Ohio Constitution.

(B) The provisions of the Revised Code, including, but not limited to, Titles XI, XIII, XVII, and XLVII, relating to the origination, granting, servicing, and collection of loans and other forms of credit have been enacted in furtherance of the police powers of the state.

(C) Silence in the Revised Code, including, but not limited to, Titles XI, XIII, XVII, and XLVII, with respect to any act or practice in the origination, granting, servicing, or collection of loans or other forms of credit shall not be interpreted to mean that the state has not completely occupied the field or has only set minimum standards in its regulation of lending and other credit activities.

(D) It is the intent of the General Assembly to entirely preempt municipal corporations and other political subdivisions from the regulation and licensing of lending and other credit activities.

A-2

# CHAPTER 2701: COURTS OF RECORD—GENERAL PROVISIONS

Section
2701.01    Renumbered.
2701.02    Courts must render decisions within time limit.
2701.03    Disqualification of common pleas judge; proceedings after affidavit filed against common pleas or appellate judge.
[2701.03.1] 2701.031    Disqualification of municipal or county court judge.
2701.04    Removal of residence of judge.

[COMMISSIONS]
2701.05    Commission to judge of the supreme court.
2701.06    Transmitting commission.

[CONSTABLES]
2701.07    Court constables; duties.
2701.08    Court constables; compensation.

[CALENDAR]
2701.09    Publication of court calendar.

[RETIREMENT, REMOVAL, SUSPENSION]
2701.10    Registration of retired judges; referral of civil action or submission of issue or question.
2701.11    Rules for retirement, removal and suspension of judges; appointment of commission.
2701.12    Retirement, removal or suspension of judge.

[ABORTIONS]
2701.15    Court may not order abortion.

[MISCELLANEOUS PROVISIONS]
2701.17    Misprision of clerk.
2701.18    Premature judgment deemed clerical error.
2701.19    Lien of judgment on appeal.
2701.20    Clerk of court may refuse to process document not required or authorized to be filed or that is materially false or fraudulent.

## § 2701.01 Amended and renumbered RC § 2503.44 in 141 v H 412. Eff 3-17-87.

## § 2701.02 Courts must render decisions within time limit.

When submitted to a court on motion, demurrer, or motion for new trial, or when submitted to a court on appeal on questions of law or on final trial on the issues joined, a cause begun in a court of record shall be determined and adjudicated within thirty days after such submission.

This section applies to causes sent to a referee or special master, and to motions affecting the confirmation, modification, or vacation of a report thereof. This section does not affect, alter, or change the rules of the supreme court.

HISTORY: RS §§ 557-1, 557-2, 557-3; 90 v 192, §§ 1, 2, 3; 95 v 410; GC §§ 1685, 1686; Bureau of Code Revision, 10-1-53.

**Research Aids**
Time limit for decision:
    O-Jur3d: Cts & Jud §§ 242, 324; Judgm § 20; Plead § 317; Trial § 85
    Am-Jur2d: Courts § 22

C.J.S.: Judges § 35 et seq
West Key No. Reference
Judges 24

### CASE NOTES AND OAG

1. (1952) Revised Code § 2701.02 is directory merely, and is binding upon the conscience of the judge, and is among the duties which he is sworn to perform by his oath of office; but it is not jurisdictional, and failure to render an adjudication within the time specified does not oust the court of jurisdiction: Kyes v. Pennsylvania R. Co., 158 OS 362, 49 OO 339, 109 NE2d 503; State ex rel. Ticknor v. Randall, 152 OS 129, 39 OO 440, 87 NE2d 340 (1949); James v. West, 67 OS 28, 65 NE 616 (1902).

2. (1992) The time limit under RC § 2701.02 for acting on motions is directory only. CPSupR 6(A) does not create a right in a litigant to have a motion ruled upon within 120 days: State ex rel. Rodgers v. Cuyahoga Cty. Court of Common Pleas, 83 OApp3d 684, 615 NE2d 689.

3. (1986) A party who has submitted his case to the court should not be required to sue the judge in mandamus in order to force a decision, for trial judges should render their decisions in a timely fashion: Knox v. Knox, 26 OApp3d 17, 26 OBR 186, 498 NE2d 236.

4. (1951) A court does not lose jurisdiction over a cause by a delay of over four years in ruling on the defendant's motion for a new trial under GC § 1685 (RC § 2701.02): Renner v. Pennsylvania R. Co., 61 OLA 298, 103 NE2d 832 (App).

5. (1993) Revised Code § 2701.02 was derived from two separate General Code sections, GC §§ 1685 and 1686. They were originally enacted in 1893 (90 Ohio Laws 192), and have been essentially unchanged since that time. The first paragraph of RC § 2701.02 is derived from GC § 1685, and the second paragraph from GC § 1686, which commences with the words "[t]he preceding section shall apply to causes sent to a referee or special master." The recodification of the General Code into the Revised Code did not change the law as expressed in the General Code: State ex rel. Lucas v. Reece, No. 92AP-1330 (10th Dist.), 1993 Ohio App. LEXIS 3227.

## § 2701.03 Disqualification of common pleas judge; proceedings after affidavit filed against common pleas or appellate judge.

(A) If a judge of the court of common pleas allegedly is interested in a proceeding pending before the court, allegedly is related to or has a bias or prejudice for or against a party to a proceeding pending before the court or a party's counsel, or allegedly otherwise is disqualified to preside in a proceeding pending before the court, any party to the proceeding or the party's counsel may file an affidavit of disqualification with the clerk of the supreme court in accordance with division (B) of this section.

(B) An affidavit of disqualification filed under section 2101.39 or 2501.13 of the Revised Code or division (A) of this section shall be filed with the clerk of the supreme court not less than seven calendar days before the day on which the next hearing in the proceeding is scheduled and shall include all of the following:

(1) The specific allegations on which the claim of interest, bias, prejudice, or disqualification is based and the facts to support each of those allegations or, in

3

relation to an affidavit filed against a judge of a court of appeals, a specific allegation that the judge presided in the lower court in the same proceeding and the facts to support that allegation;

(2) The jurat of a notary public or another person authorized to administer oaths or affirmations;

(3) A certificate indicating that a copy of the affidavit has been served on the probate judge, judge of a court of appeals, or a judge of a court of common pleas against whom the affidavit is filed and on all other parties or their counsel;

(4) The date of the next scheduled hearing in the proceeding or, if there is no hearing scheduled, a statement that there is no hearing scheduled.

(C)(1) Except as provided in division (C)(2) of this section, when an affidavit of disqualification is presented to the clerk of the supreme court for filing under division (B) of this section, all of the following apply:

(a) The clerk of the supreme court shall accept the affidavit for filing and shall forward the affidavit to the chief justice of the supreme court.

(b) The supreme court shall send notice of the filing of the affidavit to the probate court served by the judge if the affidavit is filed against a probate court judge, to the clerk of the court of appeals served by the judge if the affidavit is filed against a judge of a court of appeals, or to the clerk of the court of common pleas served by the judge if the affidavit is filed against a judge of a court of common pleas.

(c) Upon receipt of the notice under division (C)(1)(b) of this section, the probate court, the clerk of the court of appeals, or the clerk of the court of common pleas shall enter the fact of the filing of the affidavit on the docket of the probate court, the docket of the court of appeals, or the docket in the proceeding in the court of common pleas.

(2) The clerk of the supreme court shall not accept an affidavit of disqualification presented for filing under division (B) of this section if it is not timely presented for filing or does not satisfy the requirements of divisions (B)(2), (3), and (4) of this section.

(D)(1) Except as provided in divisions (D)(2) to (4) of this section, if the clerk of the supreme court accepts an affidavit of disqualification for filing under divisions (B) and (C) of this section, the clerk deprives the judge against whom the affidavit was filed of any authority to preside in the proceeding until the chief justice of the supreme court, or a justice of the supreme court designated by the chief justice, rules on the affidavit pursuant to division (E) of this section.

(2) A judge against whom an affidavit of disqualification has been filed under divisions (B) and (C) of this section may do any of the following that is applicable:

(a) If, based on the scheduled hearing date, the affidavit was not timely filed, the judge may preside in the proceeding.

(b) If the proceeding is a domestic relations proceeding, the judge may issue any temporary order relating to spousal support pendente lite and the support, maintenance, and allocation of parental rights and responsibilities for the care of children.

(c) If the proceeding pertains to a complaint brought

pursuant to Chapter 2151. of the Revised Code, the judge may issue any temporary order pertaining to the relation and conduct of any other person toward a child who is the subject of a complaint as the interest and welfare of the child may require.

(3) A judge against whom an affidavit of disqualification has been filed under divisions (B) and (C) of this section may determine a matter that does not affect a substantive right of any of the parties.

(4) If the clerk of the supreme court accepts an affidavit of disqualification for filing under divisions (B) and (C) of this section, if the chief justice of the supreme court, or a justice of the supreme court designated by the chief justice, denies the affidavit of disqualification pursuant to division (E) of this section, and if, after the denial, a second or subsequent affidavit of disqualification regarding the same judge and the same proceeding is filed by the same party who filed or on whose behalf was filed the affidavit that was denied or by counsel for the same party who filed or on whose behalf was filed the affidavit that was denied, the judge against whom the second or subsequent affidavit is filed may preside in the proceeding prior to the ruling of the chief justice of the supreme court, or a justice designated by the chief justice, on the second or subsequent affidavit.

(E) If the clerk of the supreme court accepts an affidavit of disqualification for filing under divisions (B) and (C) of this section and if the chief justice of the supreme court, or any justice of the supreme court designated by the chief justice, determines that the interest, bias, prejudice, or disqualification alleged in the affidavit does not exist, the chief justice or the designated justice shall issue an entry denying the affidavit of disqualification. If the chief justice of the supreme court, or any justice of the supreme court designated by the chief justice, determines that the interest, bias, prejudice, or disqualification alleged in the affidavit exists, the chief justice or the designated justice shall issue an entry that disqualifies that judge from presiding in the proceeding and either order that the proceeding be assigned to another judge of the court of which the disqualified judge is a member, to a judge of another court, or to a retired judge.

**HISTORY:** RS § 550; S&C 387; 57 v 5; 82 v 24; 84 v 129; 85 v 267; 86 v 263; 96 v 50; GC § 1687; 103 v 405(417); Bureau of Code Revision, 10-1-53; 130 v 654 (Eff 10-14-63); 138 v S 332 (Eff 3-23-81); 140 v H 426 (Eff 4-4-85); 146 v S 263. Eff 11-20-96.

**Cross-References to Related Sections**

Affidavit of disqualification—
    Court of appeals judge, RC § 2501.13.
    Probate court judge, RC § 2101.39
Compensation of judges holding court outside county of residence, RC § 141.07.

**Ohio Constitution**

Additional powers of supreme court, OConst art IV, § 5.

**Ohio Rules**

Disqualification of judges, Code of Judicial Conduct, Cano 3.

A–4

IN THE SUPREME COURT OF OHIO

State of Ohio,                                          :
                                                       :
     Plaintiff - Appellee,                            :     CASE NO. 07-2288
                                                       :
     v.                                               :
                                                       :
Donna Roberts,                                         :
                                                       :
     Defendant - Appellant.                           :
                                                       :     CAPITAL CASE
                                                       :

---

## BRIEF IN REPLY OF APPELLANT, DONNA ROBERTS

---

COUNSEL FOR APPELLEE:

DENNIS WATKIND, ESQ. 0009949
Trumbull County Prosecutor
4th Floor Administration Building
160 High Street NW
Warren OH 44481
(330) 675-2426

LUWAYNE ANNOS - 0055651
Assistant Trumbull County Prosecutor



FILED

JAN 02 2009

CLERK OF COURT
SUPREME COURT OF OHIO

COUNSEL FOR APPELLANT:

DAVID L. DOUGHTEN, ESQ.
Regis. No. 0002847
4403 St. Clair Avenue
Cleveland, OH 44103-1125
(216) 361-1112

JEFFREY J. HELMICK, ESQ.
Regis. No. 0040197
1119 Adams Street
Toledo, OH 43624
(419) 621-7292

# TABLE OF CONTENTS

PAGES

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**Proposition of Law One:** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Where a capital sentence is remanded for a new sentencing, the trial court must consider and give effect to all relevant evidence in mitigation available for consideration.  A remand to allow allocution does not prevent the sentencing court from considering evidence which would support and provide weight to the allocution.

Authorities Relied Upon to Support Proposition of Law One

Ferguson v. Georgia, 365 U.S. 570 (1960)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
Powell v. Alabama, 287 U.S. 45 (1932)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
Ohio v. Roberts I, (2006) 110 Ohio St.3d 71, 2006 Ohio 3665 . . . . . . . . . . . . . . . . . . . 5
State v. Ashworth (1999) 85 Ohio St.3d 63 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
State v. Chinn (1999), 85 Ohio St.3d 548  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
Davis v. Coyle 475 F.3d 761 (6th Cir 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7
State v. Barnett (2001) 93 Ohio St.3d 419, 2001 Ohio 1581   . . . . . . . . . . . . . . . . . . 6, 7
State v. Colvin, 10th Dist. No. 04AP-421, 2005 Ohio 1448  . . . . . . . . . . . . . . . . . . . . 7
Fifth Amendment to the United States Constitution  . . . . . . . . . . . . . . . . . . . . . . . . . . 7
Sixth Amendment to the United States Constitution . . . . . . . . . . . . . . . . . . . . . . . . . . 7
Eighth Amendment to the United States Constitution . . . . . . . . . . . . . . . . . . . . . . . . . 7
Fourteenth Amendment to the United States Constitution  . . . . . . . . . . . . . . . . . . . . . 7
State ex rel. Stevenson v. Murray (1982), 69 Ohio St. 2d 112  . . . . . . . . . . . . . . . . . . 7

**Proposition of Law Two:** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**When considering the appropriate sentence in a capital trial, R.C. 2929.03(F) and the federal constitution require the sentencing judge must consider and give effect to all presented evidence in mitigation.**

ii

<u>Authorities Relied Upon to Support Proposition of Law Two</u>

R.C. §2929.03(F) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10, 11, 12

R.C. §2929.04 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

<u>State v. Pless</u>, (1996) 74 Ohio St.3d 333, 658 N.E.2d 766 . . . . . . . . . . . . . . . . . . . . . . . 10

O.R.C. § 2945.05 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

<u>Eddings v. Oklahoma</u>, 455 U.S. 104 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

<u>Skipper v. South Carolina</u>, 476 U.S. 1 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

<u>Hitchcock v. Dugger,</u> 107 S.Ct. 1821 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

<u>Lockett v. Ohio</u>, 438 U.S. 586 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

<u>Ohio v. Roberts I</u>, (2006) 110 Ohio St.3d 71, 2006 Ohio 3665 . . . . . . . . . . . . . . . . . 11, 12

<u>Ohio v. Lott</u>, 51 Ohio St.3d 160, 555 N.E.2d 293 . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**CERTIFICATE OF SERVICE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

iii

**ARGUMENT**

**Proposition of Law I:**

**Where a capital sentence is remanded for a new sentencing, the trial court must consider and give effect to all relevant evidence in mitigation available for consideration. A remand to allow allocution does not prevent the sentencing court from considering evidence which would support and provide weight to the allocution.**

The State of Ohio and Ms. Roberts' have a fundamental difference in the application of United States Supreme Court precedent in this issue. The difference in the two positions can be very simply stated. The state argues that because this Court ordered a new sentencing hearing, and not a full penalty phase hearing, that Roberts was precluded from introducing any additional mitigation for consideration by the judge. The appellant's view point is that no ruling or statute can *ever* prevent the sentencer, in this case the judge, from considering relevant mitigation prior to his or her deliberation on the appropriateness of the penalty.

In Ohio, it is always the judge who is the ultimate sentencer, not the jury. A jury's finding is only binding on the court if a sentence less then death is recommended. This Court has, on too numerous of occasions to recount here, found that an instruction to the jury that its decision is a recommendation is entirely proper.

In Ms. Roberts' case, the trial court did not properly consider all evidence of mitigation at the first sentencing hearing by preparing the R.C. §2929.03(F) opinion prior to her allocution. The remand from this Court included an order to allow her allocution. The allocution is not merely perfunctory, it must be actually considered by the judge in determining the appropriate sentence in any case, particularly a capital case. Indeed, the very purpose of allocution is to

1

provide a defendant an avenue to argue mercy or mitigation to the judge to lessen the severity of the possible sentence. The jury in a death case does not and cannot under Ohio law hear the allocution to the judge. Thus, this Court's order did not restrict the trial judge from consideration of additional factors in mitigation.

Ms. Robert's did make a full allocution to the court. As addressed in Proposition of Law II in her Merit Brief, Roberts addressed the following non-exclusive matter in mitigation in her statement:

1.    Sexually abused by cousins when she was a girl; (T. 46)

2.    Depression, resulting in time spent in psychiatric ward. (T. 51, 52)

3.    Severe head injuries from car accidents; (T. 49, 50, 53)

4.    Ms. Robert was 58 at the time of the offense with no criminal record;

5.    No danger to others in prison;

6.    Volunteering to assist injured in Israel, possibly saving lives; (T. 54, 57-58)

7.    Long work history; (T. 59-60)

8.    Hallucinations; (T. 52)

9.    Father was verbally abusive and he beat her mother and at times guns were involved; (T. 47)

10.   Raised her younger sister and helped send her through college; (T. 62

11.   Received SSI for mental disability. (T. 53)

By not permitting the defense to introduce additional evidence to the court for its consideration, the above matters were not fully developed or corroborated. In other words, the

2

trial court understood the order from this Court to mean that he could hear some evidence on mental disability or sexual abuse, but not the rest.  Roberts would be permitted to inform the judge of her creating an imaginary friend to cope with being abused, but the defense would not be permitted to have a forensic psychologist verify her statements.

Limitation Denies Roberts Her Sixth Amendment Right to Counsel

By limiting the defense presentation of mitigation evidence, the trial court denied Roberts the assistance of counsel.  It should be unquestioned that Roberts, competent or not, was and is suffering from severe mental disabilities.  The trial judge denied Roberts an independent psychologist for mitigation purposes.  His actions of limiting what he would consider in mitigation denied the ability of counsel to assist her in persuading the judge of the weight that should be attached to her allocution.

If a state provides a defendant the right to make an unsworn statement or allocution, it may not additionally restrict defendant counsel from assisting the defendant in presenting that statement.  In Ferguson v. Georgia, 365 U.S. 570 (1960), the United States Supreme Court found that such a restriction violated the Fourteen Amendment.  Specifically, the court found that the specific Georgia statute could not deny the defendant "the right to have his counsel question him to elicit his statement." Id. 595.

Ferguson relied upon the rational Powell v. Alabama, 287 U.S. 45 (1932).  The Ferguson Court noted at p.594 that:

> The tensions of trial for an accused with life or liberty at stake might alone render him utterly unfit to give his explanation properly and completely.  Left without the "guiding hand of counsel," (Powell v Alabama, p.69), he may fail properly to introduce, or to introduce at all, what may be a perfect defense.

3

The opinion also quoted the Michigan Supreme Court in <u>Annis v. People</u>, 13

Mich. 511, 519-520.

> But to hold that the moment the defendant is placed upon the stand, he shall be debarred of all insistence from his counsel, and left to go through his statement as his fears and his embarrassment may enable him, in the face of the consequences which may follow from imperfect or unsatisfactory explanation, would in our opinion make, a trap into which none but the most cool and self-possessed could place himself with much prospect of coming out unharmed.
>
> * * *
>
> . . . and if he is unlearned, unaccustomed to speak in public assemblies, or to put together his thoughts in consecutive order any where, it will not be surprising is incoherent, or if it overlooks important circumstances.

Nowhere is the above reasoning more applicable than the allocution of a mentally

impaired defendant pleading for her life at a sentencing proceeding of a capital trial. Even the

most polished of public speakers would have a difficult time placing their thoughts in order when

discussing typical subjects of an unsworn statements; such as family dysfunction, substance

abuse, sexual abuse, prior convictions and remorse. When one is requesting that the jury

preserve his very existence, the defendant ought not to be deprived of the assistance of counsel.

<u>No Waiver of Precluded Evidence</u>

The appellee argues that the bulk of the evidence was available to the defense at the time

that she had waived the earlier mitigation. Because she waived some mitigation at the penalty

phase here it is argued, Roberts no longer had the right to present the evidence to the forum

which would ultimately determine her fate. It is argued that "This Court has already determined

the she knowingly and intelligently waived her right to present mitigating evidence." Appellee

brief p. 7. This is incorrect. This Court specifically found that she did *not* waive mitigation.

This Court specifically found that she had the right to pick and choose which mitigation was

4

presented, which is far different than a complete waiver of mitigation.

> [**P140] We have held that a defendant is entitled to decide what she wants to argue and present as mitigation in the penalty phase, see, e.g., *Jenkins,* 15 Ohio St.3d at 189, 15 OBR 311, 473 N.E.2d 264, citing *Lockett v. Ohio* (1978), 438 U.S. 586, 604, 98 S.Ct. 2954, 57 L.Ed.2d 973, including the decision to present no evidence. Ohio's death-penalty statute itself confers "great latitude" on a defendant in such decisions. R.C. 2929.04(C). See, also, *State v. Barton,* 108 Ohio St.3d 402, 2006 Ohio 1324, 844 N.E.2d 307, P 47. Roberts was entitled to present no mitigation evidence.

Roberts, p.90.

Nevertheless, this Court noted that she did present mitigation in her unsworn statement.

Thus, she did not completely waive her mitigation hearing. Therefore, State v. Ashworth (1999)

85 Ohio St.3d 63 did not apply.

> Here, Roberts presented an unsworn statement. An unsworn statement can constitute critical mitigating evidence. See *State v. Scott*, 101 Ohio St.3d 31, 2004 Ohio 10, 800 N.E.2d 1133, at P 64; *State v. Lynch,* 98 Ohio St.3d 514, 2003 Ohio 2284, 787 N.E.2d 1185, at P 1. *Barton,* 108 Ohio St.3d 402, 2006 Ohio 1324, 844 N.E.2d 307, P 50. We decline to extend *Ashworth* to the context Roberts presents.

There is nothing in the record to support that Roberts' waived mitigation that she did not

possess or was not investigated. As she has the right to "pick and choose" she chose not to

present the evidence the attorneys sought to present at the penalty phase hearing, and she chose *to*

present the evidence to the judge at the remand hearing. The subjects of the evidence sought to be

introduced at the penalty phase and attempted to be introduced in the remand hearing are not one

and the same. For instance, there is no evidence the trial counsel were even aware Roberts was

granted SSI for a mental disability as this was not proffered, filed or referred to in any of the

mental health reviews by the local court clinic or mentioned in any discussions with the court or

prosecution.

5

The fact is, Roberts chose to present the evidence to the sentencing judge before the judge rendered her sentence. The court refused to consider it. If it was ineffective assistance of counsel for not obtaining the evidence for Roberts to review and decide whether to present, it would appear the issue would be mooted by the fact that the evidence was obtained and was presented to the sentencing judge for his consideration at her sentencing hearing.

The state also appears to be arguing that once Roberts waived any aspect of her presentation of mitigation, she was barred from later changing her mind and deciding to have her attorneys present the same evidence, or additional evidence as occurred here. In other words, once any aspect of the mitigation presentation was waived, Roberts was not permitted to change her mind and present the mitigation in an effort to save her life. The litany of federal cases cited by Roberts in her Merit Brief strongly suggest at the least that once a defendant decides to have the sentencing body consider a factor in mitigation, no rule of court or procedure may preclude that consideration of such evidence. Again, it is the judge and not the jury who decides ultimately whether death is the appropriate sentence in the state of Ohio.

**Federal Precedent**

The State cites state authority, such as State v. Chinn (1999), 85 Ohio St.3d 548, for the proposition that a "defendant is not permitted to improve or expand his evidence in mitigation" simply because of an appellate court reversal. Appellee brief at p. 12. This, of course, is inconsistent with Davis v. Coyle 475 F.3d 761 (6th Cir 2007), as is addressed in the Merit Brief and decided eight years later.

The State cites State v. Barnett (2001) 93 Ohio St.3d 419, 2001 Ohio 1581 for the proposition that his court is not bound by Sixth Circuit precedent. Appellee brief at p. 8. In

6

Barnett, a federal district court found a city ordinance unconstitutional. State v. Colvin, 10ᵗʰ Dist. No. 04AP-421, 2005 Ohio 1448, also addresses federal interpretation of a statute or ordinance, not federal constitutional principals included in the Bill of Rights.

This Court did find that it was not bound by federal inferior courts on interpretation of statutory matters. Should this be extended to applications of the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution, it is not understood why this state is ever bound by the Sixth Circuit decisions or how a federal court has jurisdiction to grant habeas relief in any 28 U.S.C. 2254 case. If this is accurately the view of this Court, the issue will be played on another playing field, if necessary.

Having said this, it should be noted that Davis v. Coyle, supra, is not the establishment of a new precedent. Davis is the application of firmly established United States Supreme Court precedent which Barnett agrees that this Court is bound follow. The principles and cases in Davis are the same as argued here and appear in the Roberts Merit Brief.

Even if the remand were limited to "proceed from the point that at which the error occurred," the argument would not be altered. Appellee at p. 12, citing State ex rel. Stevenson v. Murray (1982), 69 Ohio St. 2d 112. The State argues that "To permit the introduction of additional mitigation evidence is to require the trial court to proceed at a point *prior* to where the error occurred, which is contrary to this Court's holding in *Murray* and *Chin*." Appellee brief at 12. First, this is not what is requested. Roberts is not requesting the re-opening of the presentation to the jury. Roberts is arguing that in going back to the allocution to the judge, she *is* permitted to present additional mitigation in her allocution and support it for the court's consideration.

7

Second, the State and trial court believe, apparently, that the judge is foreclosed from considering mitigation presented in Roberts' allocution. This will be more fully addressed in the following Proposition of Law.

Finally, as to the quality of the evidence presented, R.C. §2929.03(D)(1) holds specifically that:

> The defendant shall be given great latitude in the presentence evidence of mitigating factors set forth in division (B) of section 2929.04 of the Revised Code and of the other factors in mitigation of the imposition of the sentence of death.

All of the proffered materials were admissible for the trial court's determination of the appropriateness of sentence. This Revised Code does not limit the sentencing judge's ability to consider mitigation to only evidence previously presented to the jury.

8

**Proposition of Law Two:**

> **When considering the appropriate sentence in a capital trial, the sentencing judge must consider and give effect to all presented evidence in mitigation.**

The trial court on remand refused to consider the information provided at the hearing in the form of Roberts' allocution or mitigation evidence available from the original penalty phase hearing. The judge failed to identify a single factor as worthy of consideration for mitigation derived from Roberts' allocution. This Court remanded this matter with specific instructions to allow Roberts to allocute. Inherent in this order, and constitutionally required, is for the sentencing court to consider and give effect to her allocution.

In his opinion, the judge does not only not consider her allocution, but does not even mention that it was provided. The judge painstakingly reviewed all penalty phase procedures, yet failed to mention that Roberts provided the statement which was part of the reason for the remand.

The State refers to references that the trial court made at the original sentencing hearing, but these finding acknowledging physical abuse by the decedent to Roberts, were not included in the R.C. §2929.03(F) opinion. As this opinion is the statutorily and constitutionally required analysis of the mitigation and statutory aggravators, the failure to address it can only be interpreted to mean the court failed to consider anything, even her lack of prior record, in his required deliberations.

It is mandatory in Ohio that before a sentence of death may be found, that the panel "*shall state* in a separate opinion its specific findings as to the existence of any of the mitigating factors set forth in division (B) of 2929.04 of the Revised Code, the existence of any other mitigating factors, . ." O.R.C. §2929.03(F). (emphasis added) As subsection O.R.C. §2929.04(B)(7)

9

mandates that any other factors be addressed, that statute itself does not limit the courts

consideration.  The failure to find *any* factor can mean only one thing, the judge did not identify

any evidence in the case to be considered evidence of mitigation of a possible death sentence.  The

court, in the words of the statute, did not find the existence of any possible mitigation.

The statute provides, in relevant part:

> The court or the panel of three judges, when it imposes sentence of death, **shall state in a separate opinion its specific findings as to the existence of any of the mitigating factors set forth in division (B) of 2929.04 of the Revised Code, the existence of any other mitigating factors,** the aggravating circumstances the offender was found guilty of committing, and the reasons why the aggravating circumstances the offender was found guilty of committing were sufficient to outweigh the mitigating factors.

Emphasis added)

The term "shall" under Ohio law is mandatory.  In State v. Pless, (1996) 74 Ohio St.3d 333,

658 N.E.2d 766, this Court held that legislative commandments must be strictly adhered to by the

courts.  In Pless, the court reversed a death penalty conviction because the trial court had not

complied with the legislative requirement that a jury waiver "shall" be made in writing and filed with

the clerk before the court had jurisdiction to hear the case without a jury.  O.R.C. § 2945.05 provides

that:

> "In all criminal cases pending in courts of record in this state, the defendant may waive a trial by jury and be tried by the court without a jury. *Such waiver by a defendant, shall be in writing, signed by the defendant, and filed in said cause and made a part of the record thereof.* * * * " (Emphasis added.)

The court then concluded that:

> The requirements of R.C. 2945.05 are clear and unambiguous. The statute requires that in order to effectuate a valid waiver of the right to trial by jury, the defendant in a

10

criminal action must sign a written waiver, *and the waiver must be filed and made a part of the record in the criminal case.* In the absence of strict compliance with R.C. 2945.05, a trial court lacks jurisdiction to try the defendant without a jury.

Pless, p. 337

Similarly, the legislative mandate of R.C. §2929.03(F) is clear and unambiguous. The sentencing judge or three-judge panel "shall state in a separate opinion its specific findings as to the existence of any of the mitigating factors set forth in division (B) of 2929.04 of the Revised Code, the existence of any other mitigating factors. ."

The failure to record specific findings requires the granting of the writ for two reasons. First, the judge refused to consider and give effect to valid evidence in mitigation as is constitutionally required. Eddings v. Oklahoma, 455 U.S. 104 (1982), Skipper v. South Carolina, 476 U.S. 1 (1986), Hitchcock v. Dugger, 107 S.Ct. 1821 (1987)  Second, the Ohio legislature created a liberty interest in statute. The statute provides capital defendants the right to have the reasoning of the court recorded with Lockett v. Ohio, 438 U.S. 586 (1978) considerations fully complied with before a death sentence may be carried out.

This Court has determined that R.C. §2929.03(F) requirements are much more that lip-service in more recent years. In Ohio v. Roberts I, (2006) 110 Ohio St.3d 71, 2006 Ohio 3665, this Court summarized the importance of strict adherence to the statute.

> Our prior decisions have stressed the crucial role of the trial court's sentencing opinion in evaluating all of the evidence, including mitigation evidence, and in carefully weighing the specified aggravating circumstances against the mitigating evidence in determining the appropriateness of the death penalty. For example, in State v. Green (2000), 90 Ohio St.3d 352, 360, 2000 Ohio 182, 738 N.E.2d 1208, we vacated the death penalty because the trial court's sentencing opinion "was constitutionally deficient." There, the trial court's sentencing opinion "improperly considered nonstatutory aggravating circumstances, and failed to consider relevant mitigating evidence." Id. We concluded that "the collective deficiencies in the trial court's

11

decision to impose the death penalty, as reflected in the sentencing opinion, undermine our confidence in that decision. * * * These cumulative errors reflect grievous violations of the statutory deliberative process." Id. at 363-364, 738 N.E.2d 1208.

[**P158] Similarly, in *State v. Davis* (1988), 38 Ohio St.3d 361, 528 N.E.2d 925, we vacated the death sentence because of grievous errors in the trial court's sentencing opinion. In *Davis,* we noted, "[T]he General Assembly has set specific standards in the statutory framework it created to guide a sentencing court's discretion 'by requiring examination of *specific factors* that argue in favor of or against imposition of the death penalty, thus eliminating total arbitrariness and capriciousness in its imposition.'" (Emphasis sic.) Id. at 372-373, 528 N.E.2d 925, quoting *Proffitt v. Florida* (1976), 428 U.S. 242, 258, 96 S.Ct. 2960, 49 L.Ed.2d 913.

Roberts I, p. 93,

In Roberts I, the court remanded the case for the court to permit allocution and for the court to prepare and independent opinion, as the evidence established that the R.C. §2929.03(F) opinion had been drafted with the aid of the prosecutors, again in violation of the statute.

In Ohio, absent a clear indication otherwise, the trial panels adjudication is presumed regular. Ohio v. Lott, 51 Ohio St.3d 160, 170, 555 N.E.2d 293, 304 *citing* Ohio v. Post, (1987) 32 Ohio St.3d 380, 513 N.E.2d 754. The record must support irregularity. Here, the record is clearly indicative of the failure of Roberts' judge to follow the mandates of R.C. §2929.03(F), and thus, the failure to consider and give effect to established mitigation.

In this Proposition, the State again attempts to classify a choice not to present evidence at the penalty phase on a "pick and choose" basis as complete and binding waiver to present any additional evidence suggesting that a sentence of less than death may be appropriate. As argued in the previous Proposition, Roberts did not waiver her right to present mitigation. The failure to present evidence to the jury at a penalty phase hearing before the jury does not preclude a capital defendant to present the same or additional evidence to the body that will actually weigh the factors and determine the

12

appropriate sentence.

## CONCLUSION

Pursuant to Propositions of Law Five, the defendant-appellant, Donna Roberts, respectfully requests that this Honorable Court reverse the sentence of death and find a life sentence to be appropriate. In the alternative, pursuant to Propositions of Law II, III and IV, the defendant-appellant respectfully requests that this Court reverse the sentence of death and remand her case for a new sentencing hearing with an appointment of a different judge. As this alternate judge has not heard the original hearing evidence, it is requested that a full penalty determination hearing be ordered before a newly selected jury.

Respectfully submitted,

DAVID L. DOUGHTEN

JEFFREY J. HELMICK

Counsel for Appellant

I3

## CERTIFICATE OF SERVICE

A copy of the foregoing appellant's Brief was served upon Dennis Watkins, Trumbull County Prosecutor and/or LuWayne Annos, Esq. Assistant Trumbull County Prosecutor, Administration Building, 160 High Street, Warren, Ohio 44481, by Regular U. S. mail on this _3/_ day of December, 2008.

DAVID L. DOUGHTEN
JEFFREY J. HELMICK

Counsel for Appellant

14

FILED

# The Supreme Court of Ohio

MAR 0 1 2013

CLERK OF COURT
SUPREME COURT OF OHIO

March 1, 2013

State of Ohio

v.                                                    Case No. 2007-2288

Donna Marie Roberts                            **NOTICE OF ORAL ARGUMENT**

TO:   Dennis  Watkins                          Jeffrey J. Helmick

      The Supreme Court of Ohio will hold an oral argument on the merits in this case on Tuesday, May 07, 2013.  Time allowed for oral argument will be 30 minutes per side.

      Attorneys who argue before the court must comply with the provisions of Rule 17.03 through 17.05 of the Rules of Practice of the Supreme Court of Ohio and the instructions that follow.  Pursuant to Rule 17.03, counsel for either or both parties may waive oral argument and submit the case upon briefs.  Effective , the  Clerk must be notified in writing of the waiver at least seven days before the date scheduled for the oral argument.

      Court convenes promptly at 9 a.m. Counsel in all cases are expected to be present when court convenes.  Counsel must register with the Chief Deputy Clerk **prior to 8:45 a.m.** at the information desk outside the Courtroom on the first floor of the Ohio Judicial Center.

      For more information on protocol for presenting oral argument before the Supreme Court of Ohio, counsel may refer to the "Guide for Counsel Presenting Oral Argument" located at www.supremecourt.ohio.gov/clerk.

      *Note: Assignments in the Supreme Court take precedence over other assignments.*

_____KRISTINA D. FROST_____   CLERK

_____   CHIEF DEPUTY CLERK

 Caution
As of: December 31, 2021 7:49 PM Z

# *State v. Roberts*

Supreme Court of Ohio

May 7, 2013, Submitted; October 22, 2013, Decided

No. 2007-2288

**Reporter**

137 Ohio St. 3d 230 *; 2013-Ohio-4580 **; 998 N.E.2d 1100 ***; 2013 Ohio LEXIS 2332 ****; 2013 WL 5746121

THE STATE OF OHIO, APPELLEE, v. ROBERTS, APPELLANT.

**Subsequent History:** US Supreme Court certiorari denied by *Roberts v. Ohio, 572 U.S. 1022, 134 S. Ct. 1554, 188 L. Ed. 2d 569, 2014 U.S. LEXIS 2153 (Mar. 24, 2014)*

Decision reached on appeal by *State v. Roberts, 150 Ohio St. 3d 47, 2017-Ohio-2998, 2017 Ohio LEXIS 994, 78 N.E.3d 851 (May 30, 2017)*

**Prior History:** [****1] APPEAL from the Court of Common Pleas of Trumbull County, No. 01-CR-793.

*State v. Roberts, 110 Ohio St. 3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, 2006 Ohio LEXIS 2174 (Aug. 2, 2006)*

**Disposition:** Judgment reversed and cause remanded.

## Core Terms

sentencing, trial court, allocution, mitigation, resentencing, mitigating evidence, death sentence, proposition of law, mitigating factors, unsworn statement, relevant mitigating evidence, aggravating circumstances, trial judge, circumstances, proffered, contends, murder, competency, weigh, penalty phase, proceedings, impose sentence, competent to stand trial, trial court's failure, instructions, aggravated, prison, phase, dissenting opinion, sentencing hearing

## Case Summary

### Overview

HOLDINGS: [1]-The Eighth Amendment did not require the trial court to admit defendant's proffered mitigation in the death penalty case on remand; [2]-Pursuant to *R.C. 2929.03*, the trial court failed to consider relevant mitigating evidence contained in defendant's allocution under *Crim.R. 32* because, considering the presence of relevant and potentially significant mitigation in defendant's allocution, the utter lack of anything else offered for the specific purpose of mitigation, and the remand order specifically calling the matter of allocution to the trial judge's attention, the trial court's failure to mention the allocution in its sentencing opinion was not a mere oversight; [3]-Since the trial court failed to comply with *R.C. 2929.03(F)* by articulating its findings, the sentencing opinion was so inadequate as to severely handicap an independent review.

### Outcome
The death sentence was vacated and the case remanded for resentencing.

## LexisNexis® Headnotes

Criminal Law & Procedure > Sentencing > Capital Punishment > Cruel & Unusual Punishment

Criminal Law & Procedure > Sentencing > Capital Punishment > Mitigating Circumstances

*HN1*[ ] **Capital Punishment, Cruel & Unusual Punishment**

It is a well-established tenet of Eighth Amendment jurisprudence that the sentencer in a capital case may not be precluded from considering, as a mitigating factor, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death. Moreover, just as the

State v. Roberts

State may not by statute preclude the sentencer from considering any mitigating factor, neither may the sentencer refuse to consider, as a matter of law, any relevant mitigating evidence.

Criminal Law & Procedure > Sentencing > Capital Punishment > Mitigating Circumstances

*HN2*[ ] **Capital Punishment, Mitigating Circumstances**

Regarding the death penalty, evidence that a defendant would not pose a danger if spared (but incarcerated) must be considered potentially mitigating. Such evidence may not be excluded from the sentencer's consideration.

Criminal Law & Procedure > Sentencing > Capital Punishment > Aggravating Circumstances

Criminal Law & Procedure > ... > Appeals > Standards of Review > General Overview

Criminal Law & Procedure > Sentencing > Capital Punishment > Mitigating Circumstances

*HN3*[ ] **Capital Punishment, Aggravating Circumstances**

See *R.C. 2929.05(A)*.

Criminal Law & Procedure > Sentencing > Capital Punishment > Mitigating Circumstances

*HN4*[ ] **Capital Punishment, Mitigating Circumstances**

Relevant mitigating evidence may be found in the guilt phase, as well as in the penalty phase. Indeed, *R.C. 2929.03(D)(1)* requires the trial court to consider any evidence raised at trial that is relevant to any factors in mitigation of the imposition of the sentence of death.

Criminal Law & Procedure > Appeals > Remand & Remittitur

*HN5*[ ] **Appeals, Remand & Remittitur**

When errors requiring resentencing occurred after the close of the mitigation phase, the correct procedure was for the trial court to proceed on remand from the point at which the error

occurred. Indeed, the trial court is required to proceed on remand from the point at which the errors had occurred.

Criminal Law & Procedure > Sentencing > Capital Punishment > Mitigating Circumstances

*HN6*[ ] **Capital Punishment, Mitigating Circumstances**

In a capital case, while a sentencing court must consider all evidence of mitigation, it need not discuss each [allegedly mitigating] factor individually.

Criminal Law & Procedure > Sentencing > Capital Punishment > Mitigating Circumstances

*HN7*[ ] **Capital Punishment, Mitigating Circumstances**

In a capital case, the category of relevant mitigating factors includes any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death. A court may exclude, as irrelevant, evidence not bearing on the defendant's character, prior record, or the circumstances of his offense.

Criminal Law & Procedure > Sentencing > Capital Punishment > Mitigating Circumstances

*HN8*[ ] **Capital Punishment, Mitigating Circumstances**

In capital cases, a sentencer may determine the weight to be given relevant mitigating evidence. But, it may not give it no weight by excluding such evidence from its consideration.

Criminal Law & Procedure > Sentencing > Imposition of Sentence > Allocution

*HN9*[ ] **Imposition of Sentence, Allocution**

Trial courts must painstakingly adhere to *Crim.R. 32*, guaranteeing the right of allocution. A *Crim.R. 32* inquiry is much more than an empty ritual: it represents a defendant's last opportunity to plead his case or express remorse. In a capital case, the denial of allocution can undermine the "constitutional reliability" of a death sentence.

Criminal Law & Procedure > Sentencing > Imposition of

State v. Roberts

Sentence > Allocution

Criminal Law & Procedure > Sentencing > Capital Punishment > Mitigating Circumstances

Criminal Law & Procedure > Sentencing > Imposition of Sentence > Evidence

***HN10***[⬇] **Imposition of Sentence, Allocution**

A sentencer in a capital case is not licensed to ignore constitutionally relevant mitigating factors brought before the sentencer in accordance with state law, simply because they come labeled "allocution" instead of "evidence."

Criminal Law & Procedure > Sentencing > Capital Punishment > Mitigating Circumstances

***HN11***[⬇] **Capital Punishment, Mitigating Circumstances**

In the sentencing phase of a capital case, the jury is not limited to consideration of matters technically defined as evidence. In making the profoundly moral decision of whether to impose a sentence of death, it must consider all the facts and circumstances of the crime, the defendant's background and character, and any mitigating factors raised by the defendant.

Criminal Law & Procedure > Sentencing > Imposition of Sentence > Findings

Criminal Law & Procedure > Sentencing > Capital Punishment > General Overview

***HN12***[⬇] **Imposition of Sentence, Findings**

The failure of a trial court in a capital case to comply with *R.C. 2929.03(F)*, by articulating its reasoning, disrupts the review procedures enacted by the Ohio General Assembly by depriving the defendant and subsequent reviewing courts of the trial court's perceptions as to the weight accorded all relevant circumstances. In a closer case, those perceptions could make a difference in the manner in which a defendant pursues his appeal and in which a reviewing court makes its determination.

Criminal Law & Procedure > Preliminary Proceedings > Pretrial Motions & Procedures > Competency to Stand Trial

***HN13***[⬇] **Pretrial Motions & Procedures, Competency to Stand Trial**

A defendant is competent to stand trial if she has sufficient present ability to consult with her lawyer with a reasonable degree of rational understanding and has a rational as well as a factual understanding of the proceedings against her.

Criminal Law & Procedure > Preliminary Proceedings > Pretrial Motions & Procedures > Competency to Stand Trial

***HN14***[⬇] **Pretrial Motions & Procedures, Competency to Stand Trial**

See *R.C. 2945.37(G)*.

Criminal Law & Procedure > Preliminary Proceedings > Pretrial Motions & Procedures > Competency to Stand Trial

Evidence > Burdens of Proof > Preponderance of Evidence

***HN15***[⬇] **Pretrial Motions & Procedures, Competency to Stand Trial**

The question is not whether the state introduced sufficient evidence to prove the defendant competent to stand trial, but whether a preponderance of the evidence proved that she was not competent.

Criminal Law & Procedure > Preliminary Proceedings > Pretrial Motions & Procedures > Competency to Stand Trial

Criminal Law & Procedure > Sentencing > Mental Incapacity

Criminal Law & Procedure > Appeals > Standards of Review > General Overview

***HN16***[⬇] **Pretrial Motions & Procedures, Competency to Stand Trial**

A criminal defendant's competency to stand trial, including competency to assist in a sentencing proceeding, is a question of fact.

State v. Roberts

Criminal Law & Procedure > Commencement of Criminal Proceedings > Double Jeopardy > Res Judicata

**HN17**[⬇] **Double Jeopardy, Res Judicata**

Where an argument could have been raised on an initial appeal, res judicata dictates that it is inappropriate to consider that same argument on a second appeal following remand.

# Headnotes/Summary

### Headnotes

*Criminal law—Aggravated murder—Allocution—Death penalty vacated and resentencing ordered.*

**Counsel:** Dennis Watkins, Trumbull County Prosecuting Attorney, and LuWayne Annos, Assistant Prosecuting Attorney, for appellee.

David L. Doughten and Robert A. Dixon, for appellant.

**Judges:** O'CONNOR, C.J. PFEIFER, LANZINGER, and FRENCH, JJ., concur. O'NEILL, J., concurs in part and dissents in part. O'DONNELL and KENNEDY, JJ., dissent.

**Opinion by:** O'CONNOR

# Opinion

 [***1103] [*230]  O'CONNOR, C.J.

 [**P1]  This is a death-penalty direct appeal as of right. A jury convicted appellant, **_Donna Roberts_**, of the aggravated murder of her former husband, Robert Fingerhut, with one death specification. The jury recommended that Roberts be sentenced to death. The trial court accepted that recommendation and sentenced her to death. However, on appeal we vacated the death sentence and remanded to the trial court for resentencing. On remand, the trial court again sentenced Roberts to death. For the following reasons, we are again compelled to vacate Roberts's sentence of death and to remand this case for resentencing.

 [*231]  Facts

 [**P2]  Our previous decision in this case sets forth the facts in detail. *State v. Roberts, 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, ¶ 1-86* [****2] ("*Roberts I*"). For purposes of this opinion, we summarize the facts as follows.

 [**P3]  Roberts lived with Robert Fingerhut, her former husband, in Howland Township, Trumbull County. Fingerhut, who operated Greyhound bus terminals in Warren and Youngstown, owned two insurance policies on his life, both of which named Roberts as sole beneficiary. The total benefit of the two policies was $550,000.

 [**P4]  At some point, Roberts began an affair with Nathaniel Jackson.[1] In 2001, the affair was interrupted by Jackson's confinement in the Lorain Correctional Institution.

 [**P5]  While Jackson was in prison, he and Roberts exchanged numerous letters and spoke on the telephone. Prison authorities recorded 18 of their telephone conversations.

 [**P6]  Passages from the Roberts-Jackson correspondence and the recorded phone conversations indicated a plot between the two to murder Fingerhut. Jackson repeatedly pledged to kill Fingerhut upon Jackson's release from prison. In one letter, Roberts complained about Fingerhut's maintaining control of her finances and urged Jackson to "[d]o whatever [****3] [***1104] you want to him ASAP." At Jackson's request, Roberts purchased a ski mask and a pair of gloves for Jackson to use during the murder.

 [**P7]  Jackson was released from prison on December 9, 2001. Roberts drove to Lorain to pick him up, spent that night with him in a motel, and spent much of the next two days with him as well. On December 11, 2001, Fingerhut was shot to death at home.

Indictment, Trial, and Verdict

 [**P8]  Roberts was indicted on two counts of aggravated murder, in violation of *R.C. 2903.01(A)* (prior calculation and design) and *(B)* (felony murder). Both counts carried two death specifications under *R.C. 2929.04(A)(7)*: one charging murder during an aggravated burglary and one charging murder during an aggravated robbery. The indictment also charged aggravated burglary, *R.C. 2911.11*, with a firearm specification, *R.C. 2941.145*, and aggravated robbery, *R.C. 2911.01*, also with a firearm specification. The jury found Roberts guilty of all counts and specifications. After trial, the state elected to proceed on Count One [*232] (prior calculation and design) for sentencing purposes, and the trial court dismissed Count Two (felony murder) and its specifications.

Sentencing

---

[1] Jackson was also convicted of murdering Fingerhut and sentenced to death. *State v. Jackson, 107 Ohio St.3d 300, 2006-Ohio-1, 839 N.E.2d 362.*

State v. Roberts

**[\*\*P9]**  Before the mitigation hearing, **[\*\*\*\*4]** Roberts informed her counsel that she did not wish to present any mitigating evidence except an unsworn statement. After a hearing pursuant to *State v. Ashworth, 85 Ohio St.3d 56, 1999 Ohio 204, 706 N.E.2d 1231 (1999), paragraph one of the syllabus*, the trial judge determined that Roberts was competent to make that decision.

**[\*\*P10]**  At the mitigation hearing, Roberts exercised her right under *R.C. 2929.03(D)(1)* to make an unsworn statement to the jury. She elected to present no other evidence. In compliance with Roberts's instructions, defense counsel waived opening statement and closing argument. The jury recommended a death sentence, and the trial court sentenced Roberts to death.

Previous Appeal

**[\*\*P11]**  On direct appeal, we affirmed Roberts's convictions of aggravated murder and both death specifications. We also overruled a proposition of law in which Roberts attacked the validity of her waiver of mitigation. However, we vacated the death sentence and remanded the case to the trial court for resentencing because the trial judge had improperly allowed the prosecutor to participate in drafting the sentencing opinion and in doing so, had engaged in ex parte communications with the prosecutor. *Roberts I, 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, at ¶ 153-164*.  **[\*\*\*\*5]** We directed the trial court "to afford Roberts her right to allocute," to "personally review and evaluate the evidence [and] weigh the aggravating circumstances against any relevant mitigating evidence," and to "determine anew the appropriateness of the death penalty." We further instructed the trial court to "personally prepare an entirely new penalty opinion * * * and conduct whatever other proceedings are required by law and consistent with this opinion." *Id. at ¶ 167*.

Sentencing Proceedings on Remand

**[\*\*P12]**  On remand, the defense filed a motion to allow Roberts to fully present mitigation at the sentencing rehearing. The trial court denied the motion. However, Roberts proffered her evidence into the record. This consisted of her prison records, a Social Security disability claim file documenting Roberts's head injury after a 1999 motor-vehicle accident, an affidavit by a psychologist giving his preliminary opinion that Roberts suffered from Bipolar **[\*\*\*1105]** Type II Disorder (manic-depressive illness), and a letter about Roberts from her son.

**[\*\*P13]**  At a hearing on October 22, 2007, the trial court heard Roberts's allocution. One week later, after asking Roberts if she had anything further to **[\*233]** say, and **[\*\*\*\*6]** after hearing argument from defense counsel, the trial court sentenced Roberts to death and filed its sentencing opinion pursuant to *R.C. 2929.03(F)*.

**[\*\*P14]**  Roberts presents seven propositions of law for our consideration. Her second proposition of law, which claims that the trial court failed to consider her allocution in sentencing her to death, has merit. Accordingly, we sustain it, and we remand this case to the trial court for consideration of Roberts's allocution when weighing the aggravating circumstances and the mitigating factors.

I. Exclusion of Mitigating Evidence on Limited Remand

**[\*\*P15]**  In her first proposition of law, Roberts contends that the trial court erred by precluding her from presenting mitigating evidence on remand.

**[\*\*P16]**  Before the resentencing hearing, Roberts filed a motion to allow her to present mitigation at the resentencing hearing. In her motion, Roberts argued that she was entitled to "fully develop her mitigation for the evaluation of [the trial court] at her sentencing re-hearing." The trial court denied the motion.

**[\*\*P17] [\*\*\*\*7]**  After the motion was denied, the defense proffered the following four items, which would have been adduced in mitigation had the trial court granted the motion:

**[\*\*P18]**  (1) Roberts's prison records, which document her bipolar disorder, depression, and an incident of hallucination during her time in prison.

**[\*\*P19]**  (2) A file documenting a Social Security disability claim that Roberts had filed after being injured in a 1999 motor-vehicle accident. This file also contains a diagnosis that Roberts suffered from a bipolar disorder.

**[\*\*P20]**  (3) An affidavit by James Eisenberg, Ph.D., a psychologist, who had reviewed Roberts's records and formed a preliminary opinion that Roberts suffered from Bipolar Type II Disorder, also known as manic-depressive illness, probably beginning in childhood. According to Dr. Eisenberg, this disorder "causes unusual shifts in a person's mood, energy, and ability to function." Its symptoms include poor judgment; aggressive behavior; extreme irritability; inappropriate, intense, or uncontrolled anger; and "frantic efforts to avoid abandonment, either real or imagined."

**[\*\*P21]**  (4) A letter from Michael Raymond, Roberts's son, extolling his mother's character, setting forth some of the history **[\*\*\*\*8]** of her life before the murder, and pleading that her life be spared.

**[\*\*P22]**  Roberts contends that the trial court's refusal to consider this proffered evidence before resentencing her violated the *Eighth Amendment*.

State v. Roberts

A. Roberts's Eighth Amendment Claim

[**P23]  *HN1*[↑] It is a well-established tenet of *Eighth Amendment* jurisprudence that the sentencer in a capital case may "not be precluded from considering, *as a [*234] mitigating factor*, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." (Emphasis sic.) *Lockett v. Ohio, 438 U.S. 586, 604, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978)* (plurality opinion). Moreover, "[j]ust as the State may not by statute preclude the sentencer from considering any mitigating factor, neither may the sentencer refuse to consider, *as a matter of law*, any relevant mitigating evidence." [***1106] (Emphasis sic.) *Eddings v. Oklahoma, 455 U.S. 104, 113-114, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982)*. *See also* *Hitchcock v. Dugger, 481 U.S. 393, 398-399, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987)*.

[**P24]  In *Skipper v. South Carolina, 476 U.S. 1, 4-5, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986)*, the court held that a capital defendant [****9] had an *Eighth Amendment* right to introduce, at his sentencing hearing, "testimony * * * regarding his good behavior during the over seven months he spent in jail awaiting trial." Such evidence was "relevant evidence in mitigation" because

> the jury could have drawn favorable inferences from this testimony regarding petitioner's character and his probable future conduct if sentenced to life in prison. * * * [T]here is no question but that such inferences would be "mitigating" in the sense that they might serve "as a basis for a sentence less than death." * * * *HN2*[↑] [E]vidence that the defendant would not pose a danger if spared (but incarcerated) must be considered potentially mitigating. Under *Eddings*, such evidence may not be excluded from the sentencer's consideration.

*Id at 4-5*, quoting *Lockett at 604*.

[**P25]  Roberts contends that the trial court committed constitutional error by denying her motion to allow full presentation of mitigation at the resentencing, because the *Eighth Amendment*—as interpreted in *Lockett, Eddings,* and *Skipper*—entitled her to introduce mitigating evidence before the trial judge on remand.

[**P26]  We rejected a similar claim in *State v. Davis, 63 Ohio St.3d 44, 584 N.E.2d 1192 (1992)* [****10] ("*Davis II*"). Davis had been tried to a three-judge panel and sentenced to death in 1984. *State v. Davis, 38 Ohio St.3d 361, 528 N.E.2d 925 (1988)* ("*Davis I*"). On Davis's initial appeal, we "affirmed [his] conviction, but * * * reversed [his] death sentence based upon errors which occurred after all available mitigating evidence had been heard in the penalty phase of

[his] trial." *Davis II at 44*. We then remanded the case to the original three-judge panel for a resentencing hearing. *Id*.

[**P27] [*235]  At the hearing on remand, the trial court did not permit Davis to introduce evidence concerning his adjustment to prison life after his conviction and sentencing. Nor was Davis permitted to present expert testimony providing a "'psychological update'" covering the period since his conviction and sentencing. *Id*. Instead, the panel "limit[ed] its consideration to the evidence presented in mitigation at appellant's 1984 trial" and reimposed the death sentence on Davis. *Id. at 44-45*.

[**P28]  We affirmed, rejecting Davis's argument that *Lockett, Eddings, Skipper,* and *Hitchcock* entitled him to a new sentencing hearing. We distinguished Skipper by noting that it involved the erroneous exclusion of "evidence of [****11] Skipper's good prison record *between his arrest and trial*." (Emphasis sic.) *Id. at 46*. In contrast,

> no relevant mitigating evidence was excluded from consideration by the panel during the mitigation phase of appellant's 1984 trial. All mitigating evidence which was available at that time was duly received and considered by the panel including appellant's ability to adjust to prison life. That same relevant evidence was again received and considered [***1107] by the panel in 1989 for purposes of resentencing appellant. The evidence excluded from consideration * * * at appellant's resentencing hearing concerned certain *post-trial* matters.

(Emphasis sic.) *Id*.

[**P29]  We considered the same issue in *State v. Chinn, 85 Ohio St.3d 548, 1999 Ohio 288, 709 N.E.2d 1166 (1999)*. In *Chinn*, the defendant was sentenced to death after a jury trial. The court of appeals determined, however, that the trial judge had committed errors in performing his functions under *R.C. 2929.03(D)(3)* and *(F)* i.e., in his independent evaluation of the sentence and in writing the sentencing opinion. The court of appeals affirmed the trial court's judgment as to all other issues.

[**P30]  Like the appellant in Davis, Chinn argued that *Lockett, Skipper,* and *Hitchcock* [****12] entitled him to present new mitigating evidence on remand. We again rejected that argument:

> [E]ach of those cases involved a situation where the capital sentencer was prohibited, in some form or another, from considering relevant mitigating evidence at trial. * * * [N]o relevant mitigating evidence was ever excluded from consideration during the penalty phase of

[Chinn's] 1989 trial. Therefore, the case at bar is clearly distinguishable from * * * *Lockett*, *Skipper*, and *Hitchcock*. Accordingly, as was the case in *State v. [\*236] Davis (1992), 63 Ohio St.3d 44, 46, 584 N.E.2d 1192, 1194-1195*, we find *Lockett*, *Skipper*, and *Hitchcock* to be inapplicable here. It is of no consequence that the additional mitigating evidence in *Davis* involved *post-trial* accomplishments, whereas appellant's additional mitigation evidence involves matters appellant claims he could have presented but did not present during the mitigation phase of his 1989 trial. In this case, as in *Davis*, the errors requiring resentencing occurred after the close of the mitigation phase of the trial. Under these circumstances, the trial court is to proceed on remand from the point at which the error occurred.

*Chinn at 564-565*.

[\*\*P31] Since our [\*\*\*\*13] decision in *Chinn*, the United States Court of Appeals for the Sixth Circuit has addressed this issue in habeas corpus proceedings involving the *Davis* case. In *Davis v. Coyle, 475 F.3d 761 (6th Cir.2007)*, the Sixth Circuit held that the three-judge panel's decision to exclude posttrial mitigation evidence from Davis's resentencing hearing violated his *Eighth Amendment* rights and that our affirmance of that ruling in *Davis II*, "based on the court's belief that the facts of Davis's case could be distinguished from *Skipper's* solely on the basis of timing, was both an unreasonable application of the decision in *Skipper* and contrary to the holding in that opinion and its antecedent cases." *Id. at 773*.

[\*\*P32] *Coyle* states that "the holding in *Skipper* that a defendant 'be permitted to present any and all relevant mitigating evidence that is available' * * * requires that, at resentencing, a trial court must consider any new evidence that the defendant has developed since the initial sentencing hearing." *Id. at 774*, quoting *Skipper, 476 U.S. at 8, 106 S.Ct. 1669, 90 L.Ed.2d 1*. *Accord Creech v. Arave, 947 F.2d 881-882 (9th Cir.1991)* (en banc); *Sivak v. State, 112 Idaho 197, 199-203, 731 P.2d 192 (1986)*. [\*\*\*\*14] *See also Spaziano v. Singletary, 36 F.3d 1028, 1032-1035 (11th Cir.1994)* [\*\*\*1108] (assuming, without discussion, that *Lockett* requires a trial court to allow new evidence on remand); *State v. Tison, 160 Ariz. 501, 502, 774 P.2d 805 (1989)* (case remanded for resentencing; remand order specified, without discussion, that "[e]ither party may offer additional evidence of aggravation or mitigation applicable in each case as of the time of the hearing").

[\*\*P33] As the state points out, we are "not bound by rulings on federal statutory or constitutional law made by a

federal court other than the United States Supreme Court." *State v. Burnett, 93 Ohio St.3d 419, 424, 2001 Ohio 1581, 755 N.E.2d 857 (2001)*. Hence, we are not obliged to follow *Coyle*. We are, however, free to consider whether *Coyle* is persuasive and whether it is on point in this case.

[\*\*P34] We begin by noting, as we did in *Davis II* and *Chinn*, that *Lockett*, *Eddings*, *Skipper*, and *Hitchcock* are all distinguishable from this case. Each case in the *Lockett-Eddings-Skipper-Hitchcock* tetralogy involved the trial court's exclusion of, or refusal to consider, evidence in the original sentencing [\*237] proceeding. None of these cases involved a proceeding on remand. This case, like [\*\*\*\*15] *Davis II* and *Chinn*, involves a proceeding on remand for the limited purpose of correcting an error that occurred *after* the defendant had had a full, unlimited opportunity to present mitigating evidence to the sentencer.

[\*\*P35] In other words, neither *Lockett* nor any of its progeny required the trial court to reopen the evidence after an error-free evidentiary hearing had already taken place. *See Chinn, 85 Ohio St.3d at 564-565, 709 N.E.2d 1166*. "[T]he issue in this case is whether the presentation of evidence of mitigating * * * factors must be reopened when a death sentence is reversed for a reason unrelated to the presentation of evidence. None of the Supreme Court cases cited by the majority supports that premise." *Coyle, 475 F.3d at 782* (Gibbons, J., concurring).

[\*\*P36] In a case in which the defendant was not deprived of any constitutional right—including her *Eighth Amendment* right to present mitigation—at the time of her mitigation hearing, there seems to be no basis for requiring the trial court to reopen or supplement that evidence in a later proceeding. To hold, as *Coyle* does, that a new mitigation hearing must be held, even though no constitutional error infected the original one, would [\*\*\*\*16] transform the right to present relevant mitigation into a right to *update* one's mitigation. Such a right has no clear basis in *Lockett* or its progeny.

[\*\*P37] Establishing a right to update mitigation could result in arbitrary distinctions between similarly situated capital defendants. A defendant who had an error-free mitigation hearing could not update his mitigation—no matter how compelling the new mitigation that might be available to him—if the trial judge committed no error *after* the mitigation hearing that called for the case to be remanded. But another defendant, whose mitigation hearing was equally free of error, *would* have the right to update his mitigation in the event that a posthearing sentencing error took place that required a remand.

[\*\*P38] Furthermore, as we noted in *Davis II*, the right to update mitigation would imply that a capital defendant

State v. Roberts

appealing his death sentence would have a right to present new mitigation to the appellate court. *Davis II, 63 Ohio St.3d at 46, 584 N.E.2d 1192, fn.2*. Under *R.C. 2929.05(A)*, this court (and, in pre-1995 cases, the court of appeals) has the obligation to independently review the death [***1109] sentence.[2] Hence, a reviewing court could be considered [****17] a "sentencer" for *Lockett* purposes.

[**P39] For the foregoing reasons, we adhere to our precedent in *Davis II* and *Chinn*. Accordingly, we reject Roberts's claim that [****18] the *Eighth Amendment* required the trial court to admit Roberts's proffered mitigation.

[*238] B. The Trial Court's Compliance with the Remand Order in *Roberts I*

[**P40] Having rejected Roberts's *Eighth Amendment* claim, we will briefly consider certain points not argued by Roberts, but set forth in the concurring and dissenting opinion.

[**P41] The concurring and dissenting opinion asserts that by refusing to admit Roberts's proffered mitigation evidence, the trial court failed to comply with the instructions we issued in *Roberts I* when we remanded this case to the trial court for the first time.[3] *Id* at ¶ 99. The concurring and dissenting opinion interprets *Roberts I* as *ordering* the trial court to hold

---

2

HN3[↑] The court of appeals and the supreme court shall review the judgment in the case and the sentence of death imposed by the court or panel of three judges in the same manner that they review other criminal cases, except that they shall review *and independently weigh* all of the facts and other evidence disclosed in the record in the case and consider the offense and the offender to determine whether the aggravating circumstances the offender was found guilty of committing outweigh the mitigating factors in the case, and whether the sentence of death is appropriate. * * * The court of appeals, in a case in which a sentence of death was imposed for an offense committed before January 1, 1995, or the supreme court shall affirm a sentence of death *only if the particular court is persuaded from the record* that the aggravating circumstances the offender was found guilty of committing outweigh the mitigating factors present in the case and that the sentence of death is the appropriate sentence in the case.

(Emphasis added.) *R.C. 2929.05(A)*.

3 Roberts asserts that our order in *Roberts I* did not *prohibit* the admission of new mitigating evidence on remand, but she does not contend that the order actually *required* the trial court to admit such evidence.

---

a new mitigation hearing and to permit Roberts to introduce mitigating evidence.

[**P42] *Roberts I* did no such thing. In *Roberts I*, we instructed the trial court as follows:

> On remand, the trial judge will afford Roberts her right to allocute, and the trial court shall personally review and evaluate the evidence, [****19] weigh the aggravating circumstances against any relevant mitigating evidence, and determine anew the appropriateness of the death penalty as required by *R.C. 2929.03*. The trial court will then personally prepare an entirely new penalty opinion as required by *R.C. 2929.03(F)* and conduct whatever other proceedings are required by law and consistent with this opinion.

*110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, ¶ 167*.

[**P43] The above order says nothing about holding a new evidentiary hearing. Nor is a requirement to hold a new evidentiary hearing implicit in our instructing [*239] the trial court to "weigh the aggravating circumstances against any relevant mitigating evidence" and "determine anew the appropriateness of the death penalty." HN4[↑] Relevant mitigating evidence may be found in the guilt phase, as well as in the penalty phase. Indeed, *R.C. 2929.03(D)(1)* requires the trial court to [***1110] consider "any evidence raised at trial" that is relevant "to any factors in mitigation of the imposition of the sentence of death."[4]

[**P44] Moreover, the remand order in *Roberts I* must be read against the backdrop of our precedents in *Davis II* and *Chinn*. In *Davis II*, a death sentence had been reversed, and the case remanded for resentencing, because of errors that occurred after mitigating evidence had been heard in the penalty phase. On appeal from remand, we rejected the claim that the trial court had erred by limiting its consideration to the evidence presented in the original mitigation hearing. *Davis II, 63 Ohio St.3d at 45-46, 584 N.E.2d 1192*.

[**P45] In *Chinn*, we adhered to *Davis II* and held that

---

4 We have repeatedly recognized that the sentencer may glean relevant mitigating evidence from the guilt phase. *See, e.g., State v. Jordan, 101 Ohio St.3d 216, 2004-Ohio-783, 804 N.E.2d 1, ¶ 80* [****20] (quoting *R.C. 2929.03(D)(1)*); *State v. Bryan, 101 Ohio St.3d 272, 2004-Ohio-971, 804 N.E.2d 433, ¶ 208* ("much of the trial-phase evidence was relevant to * * * the nature and circumstances of the offense, and the mitigating factors"); *State v. Barton, 108 Ohio St.3d 402, 2006-Ohio-1324, 844 N.E.2d 307, ¶ 49* (capital defendant elicited mitigating testimony on cross-examination of prosecution witnesses during the guilt phase of the trial).

State v. Roberts

HN5[↑] when "errors requiring resentencing occurred after the close of the mitigation phase," the correct procedure was for the trial court "to [****21] proceed on remand from the point at which the error occurred." *Chinn, 85 Ohio St.3d at 565, 709 N.E.2d 1166*. Indeed, we stated that "the trial court was *required* to proceed on remand from the point at which the errors had occurred, i.e., after the jury had returned its recommendation of death." (Emphasis added.) *Id. at 564*.

[**P46] The trial court was bound by those precedents, as well as by our remand order in *Roberts I*. *Roberts I* neither overruled nor modified *Davis II* or *Chinn* and did not order the trial court to hold a new penalty-phase evidentiary hearing, Thus, *Roberts I* cannot reasonably be understood as imposing a requirement that *Davis II* and *Chinn* had expressly declined to impose.

[**P47] The concurring and dissenting opinion also points out that Roberts "proffered four items in mitigation, only one of which dealt with her conduct in prison." *Id.* at ¶ 99. While this is true, it lends no support to the claim that she should have been allowed a fresh opportunity to submit mitigating evidence on remand.

[**P48] As we stated in *Chinn*, "[i]t is of no consequence that the additional mitigating evidence in *Davis* involved *post-trial* accomplishments, whereas appellant's additional mitigation evidence involves [****22] matters appellant claims he could [*240] have presented but did not present during the mitigation phase of his 1989 trial." (Emphasis sic.) *Chinn, 85 Ohio St.3d at 564-565, 709 N.E.2d 1166*. In *neither* case is a capital defendant entitled to present such evidence on remand when "the errors requiring resentencing occurred after the close of the mitigation phase of the trial." *Id. at 565*.

[**P49] Additionally, mitigation evidence pertaining to events that took place before trial could have been presented to the trial court during Roberts's original mitigation hearing in 2003. Instead of doing so at that time, Roberts expressly and validly waived her right to present mitigation.[5] [****1111] Thus, the case for admitting proffered mitigation involving events that took place before trial is, if anything, weaker than the case for admitting posttrial prison records.

[**P50] For all of the foregoing reasons, we overrule Roberts's first proposition of law.

II. [****23] The Trial Court's Failure to Consider Roberts's Allocution

---

[5] In *Roberts I*, we considered and rejected Roberts's claim that the waiver was invalid, *110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, at ¶ 132-145*, and her claim that she did not receive effective assistance of counsel in connection with the waiver, *id. at ¶ 146-148*.

[**P51] In her second proposition of law, Roberts contends that the trial court failed to consider her allocution in determining the sentence.

[**P52] Pursuant to our mandate, the trial judge invited Roberts to make a statement in allocution at the hearing on October 22, 2007, and Roberts did. One week later, on October 29, the trial court imposed sentence and filed its sentencing opinion. Before imposing sentence, the trial court heard a brief statement from Roberts's counsel and asked Roberts if she had anything further to say. The trial court then stated that it had considered the record and the oral statements. The sentencing opinion notes that the trial court had been instructed to provide Roberts with the right of allocution before reimposing a sentence. Beyond this, however, the opinion does not discuss Roberts's allocution.

[**P53] Roberts contends that the trial court's failure to discuss the allocution in its opinion shows that the trial court failed to consider her allocution. This alleged failure, Roberts claims, violated the *Eighth Amendment*'s requirement that the sentencer in a capital case consider all relevant mitigation. *See Eddings, 455 U.S. at 113-114, 102 S.Ct. 869, 71 L.Ed.2d 1*.

[**P54] [****24] We have previously rejected claims that a trial court's failure to *mention* particular mitigating factors in a sentencing opinion obliges a reviewing court to infer that the trial court failed to *consider* those factors. "Appellant erroneously assumes that evidence that is not specifically mentioned in an opinion was not considered. HN6[↑] While a sentencing court must consider all evidence of mitigation, it [*241] need not discuss each [allegedly mitigating] factor individually." *State v. Phillips, 74 Ohio St.3d 72, 102, 1995 Ohio 171, 656 N.E.2d 643 (1995)*, citing *Parker v. Dugger, 498 U.S. 308, 314-315, 111 S.Ct. 731, 112 L.Ed.2d 812 (1991)*.

[**P55] Nevertheless, we conclude that the particular circumstances of this case warrant the inference that the trial judge did, in fact, fail to consider Roberts's allocution in sentencing her to death.

[**P56] To begin with, Roberts's allocution was the *only* relevant matter that was specifically placed before the trial court as mitigation. At her original mitigation hearing in 2003, Roberts had elected to present no evidence. Although she had given an unsworn statement before the jury, that statement contained no mitigation; indeed, Roberts had used it to insist that a sentence of death [****25] be imposed upon her. *See Roberts I, 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, ¶ 137 and 148*. And although Roberts tried to present mitigating evidence during the proceedings on remand, that attempt was (properly, as we hold today) overruled by the trial court. The trial court did find one

State v. Roberts

mitigating factor in the guilt-phase record.[6] But this merely underscores the fact that *nothing* was placed before the **[\*\*\*1112]** trial court for the specific purpose of mitigating the sentence—except Roberts's statement in allocution.

**[\*\*P57]** And this statement contained much information whose relevance as mitigation was clear. For instance, Roberts stated that she grew up in a "very very abusive" household, in which her father abused her mother physically and verbally and in which "guns came out" at times during household disputes. Roberts claimed **[\*\*\*26]** that when she was very young, her cousin raped her. Roberts also said that she "always felt empty" because she never received any attention or affection.

**[\*\*P58]** Roberts recounted a long history of motor-vehicle accidents and resulting injuries, including injuries to her head, that she claimed affected her mental health. In 1963, 1983, and 1999, Roberts said, she was involved in accidents serious enough to put her in the hospital. After the 1963 accident, she said, she was "spacey for awhile." In the 1983 collision, she was thrown through a windshield. She went to a neurosurgeon for many months after that accident.

**[\*\*P59]** In 1999, Roberts was involved in an accident that demolished her car. Roberts remembered being in the hospital, but after that she could not remember anything "for a long time." Roberts said that Fingerhut "was really worried" about her because she was acting "spacey" and "goofy." After this last accident, **[\*242]** Roberts stated, she suffered from depression. She attempted suicide and was hospitalized in a psychiatric ward. She suffered from auditory hallucinations that were successfully treated with Risperdal.[7]

**[\*\*P60]** After the suicide attempt, Roberts began falling down repeatedly, hitting her head, and losing track of what day it was. Eventually, Roberts said, Fingerhut made her "go to Social Security," and she was sent to a psychiatrist.

**[\*\*P61]** In her allocution, Roberts also cited examples of her selflessness and contributions to society. Roberts worked "almost 23 years" in a plastic surgeon's office and "helped a lot of people" during that time. She also volunteered to go to Israel, along with her employer, to treat wounded soldiers.

---

[6] The trial court found, in Roberts's letters to Jackson, indications that Fingerhut "may have been physically abusive to her," which the court considered relevant to the mitigating factors listed in *R.C. 2929.04(B)(1)* (victim-induced or facilitated offense) and *(2)* (duress, coercion, or strong provocation). The trial court gave this factor "very slight weight."

[7] According to Roberts, when she went to prison and stopped taking Risperdal, **[\*\*\*\*27]** she hallucinated "giant anthills."

She recounted how, after her conversion to Judaism, she had raised funds to rescue a person from Ethiopia who was in danger of being murdered for his religious beliefs. She said that when she ran the restaurant in the bus terminal, she gave food and money to people who were short of money at the end of the month. She also gave several thousand dollars to help her sisters and her son.

**[\*\*P62]** *Lockett* explains that *HN7*[⬆] the category of relevant mitigating factors includes "any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." *438 U.S. at 604, 98 S.Ct. 2954, 57 L.Ed.2d 973.* **[\*\*\*\*28]** A court may "exclude, as irrelevant, evidence not bearing on the defendant's character, prior record, or the circumstances of his offense." *Id. at 605, fn. 12.* *See also Brown v. Payton, 544 U.S. 133, 149-150, 125 S.Ct. 1432, 161 L.Ed.2d 334 (2005)* (Souter, J., dissenting) ("it was settled law that a capital defendant has a plenary right to present evidence going to any aspect of [the defendant's] character, background, or record * * * that might justify a sentence less than death"); *Skipper v. South Carolina, 476 U.S. 1, 4, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986).* The information **[\*\*\*1113]** contained in Roberts's allocution was clearly relevant under this definition.

**[\*\*P63]** We note, too, that our opinion in *Roberts I* specifically called the matter of allocution to the attention of the trial judge. When we remanded this case to the trial court, we did so with the following instruction: "The trial court shall provide Roberts with her right of allocution before imposing any new sentence."[8] *Roberts I, 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, ¶ 166.*

**[\*\*P64] [\*243]** When we consider the presence of relevant and potentially significant mitigation in Roberts's allocution, the utter lack of anything else offered for the specific purpose of mitigation, and our order specifically calling the matter of allocution to the trial judge's attention, we can hardly conclude that the trial court's failure to mention the allocution in its sentencing opinion was a mere oversight. Given these unusual circumstances, we are justified in drawing the inference that when the trial judge weighed the aggravating circumstances against the mitigating factors, he did not consider Roberts's allocution.[9]

---

[8] In the original appeal, Roberts alleged that she had not been asked whether she wished to make a statement in allocution and that this omission violated **[\*\*\*\*29]** *Crim.R. 11*. Because we had vacated Roberts's original death sentence on other grounds, we held her allocution claim moot. *Roberts I at ¶ 165-166.*

[9] The dissent suggests that drawing this inference is inconsistent with

State v. Roberts

[**P65]  This failure violated the *Eighth Amendment*. Unquestionably, the allocution contained information relevant [****30] to mitigation. That information (unlike the evidence discussed in relation to Roberts's first proposition of law) was properly before the court. The court could not, therefore, refuse to consider it.[10] *HN8*[⬆] "The sentencer * * * may determine the weight to be given relevant mitigating evidence. But [it] may not give it no weight by excluding such evidence from [its] consideration." *Eddings, 455 U.S. at 114-115, 102 S.Ct. 869, 71 L.Ed.2d 1*.

[**P66]  Our decisions have acknowledged the importance of allocution in capital cases. In *State v. Campbell, 90 Ohio St.3d 320, 323-326, 2000 Ohio 183, 738 N.E.2d 1178 (2000)*, and *State v. Green, 90 Ohio St.3d 352, 358-360, 2000 Ohio 182, 738 N.E.2d 1208 (2000)*, we remanded capital cases for resentencing because the trial courts had failed to comply with *Crim.R. 32(A)(1)*. *HN9*[⬆] "Trial courts must painstakingly adhere to *Crim.R. 32*, guaranteeing the [****31] right of allocution. A *Crim.R. 32* inquiry is much more than an empty ritual: it represents a defendant's last opportunity to plead his case or express remorse." *Green at 359-360*. In a capital case, the denial of allocution can undermine the "constitutional reliability" of a death sentence. *Id. at 360*.

[**P67]  We recognize, as the dissent notes at ¶ 114, that the allocution under *Crim.R. 32(A)(1)* is unsworn and thus may not technically amount to evidence. *See Evid.R. 603* (witness testimony must be preceded by oath or affirmation). However, the dissent concludes that the information contained therein is therefore not [***1114] relevant to weighing the aggravating circumstances against the mitigating factors. Dissenting opinion at ¶ 110 and 116. This conclusion is incorrect. In the context of capital sentencing, as *Lockett* makes plain, relevant information [*244] has to do with content, not form. We do not believe that *HN10*[⬆] a sentencer is licensed to ignore constitutionally relevant mitigating factors brought before the sentencer in accordance with state law, simply because they come labeled "allocution" instead of "evidence."[11]

─────────────────

*Phillips.* Dissenting opinion at ¶ 112-113 and 115-116. As we discussed above, *Phillips* states a general rule. But this case presents exceptional circumstances, which the dissent does not take into account, that justify a narrow exception to the general rule.

[10] The dissent's contention that there is no constitutional right to allocution, dissenting opinion at ¶ 104, is beside the point. Once a capital defendant has used her state-law right of allocution to place constitutionally relevant mitigating factors before the sentencer, the *Eighth Amendment* does not permit the sentencer to disregard that mitigation.

[11] The dissent states that we have "confuse[d] allocution—which is

─────────────────

[**P68]  *People v. Davis, 794 P.2d 159 (Colo.1990)*, exemplifies this point. In Davis, the trial court had instructed the jury that the defendant's penalty-phase unsworn statement[12] was not evidence. The Colorado Supreme Court recognized that this was "technically correct" because the statement, which was unsworn, was not evidence under Colorado law. However,

*HN11*[⬆] in the sentencing phase of a capital case, the jury is not limited to consideration of matters technically defined as evidence. In making the profoundly moral decision of whether to impose a sentence of death, it must consider all the facts and circumstances of the crime, the defendant's background and character and any mitigating factors raised by the defendant.

*Id. at 192.* The court then proceeded to evaluate the likelihood [****33] that a reasonable juror would interpret the trial court's instructions to prevent consideration of the defendant's statement. *Id. at 192-193.* Even though the defendant's unsworn statement lacked the status of evidence under Colorado evidentiary law, *Davis* regarded that statement as "constitutionally relevant evidence" for *Eighth Amendment* purposes:

[O]ur examination of the instructions as a whole, as well as the context of the sentencing hearing, leads us to conclude that there is not a "reasonable likelihood" that the jury applied instructions No. 1 and No. 4 in a manner preventing it from considering constitutionally relevant evidence. On the contrary, reasonable jurors would have properly understood that they should consider fully the statement offered by the defendant in allocution.

[*245]  (Footnote omitted.) *794 P.2d at 193*. We cannot, therefore, agree with the dissent's contention that "[b]ecause the allocution offered by Roberts prior to the imposition of sentence is not evidence, it has no significance in establishing any mitigating factor." Dissenting opinion at ¶ 116.

─────────────────

[****32] not evidence—with the opportunity to present an unsworn statement in the penalty phase of the trial and the right to present mitigating evidence to the jurors or fact-finders." Dissenting opinion at ¶ 114. We have not. We simply disagree with the dissent's conclusion that because an allocution is unsworn, it is irrelevant to sentencing. Indeed, if that were so, there would have been no reason to remand in *Campbell* and *Green*.

[12] *Davis* called the defendant's penalty-phase statement an "allocution," consistent with Colorado precedent deriving [****34] the right to make an unsworn statement to the jury in a capital case from the right to allocution provided in Colorado's version of *Crim.R. 32. See 794 P.2d at 191*, citing *Borrego v. People, 774 P.2d 854, 856 (Colo.1989)*.

State v. Roberts

**[\*\*P69]** For the foregoing reasons, we conclude that the trial court failed to **[\*\*\*1115]** consider Roberts's allocution and that this error violated the _Eighth Amendment_. That leaves us with the question of how to remedy the error. In _Phillips_, we stated: "[E]ven if 'the trial court in this case should have more explicitly analyzed the mitigating evidence,' this court's independent reweighing will rectify the error." _74 Ohio St.3d at 102, 656 N.E.2d 643_, quoting _State v. Lott, 51 Ohio St.3d 160, 171, 555 N.E.2d 293 (1990)._

**[\*\*P70]** In _State v. Maurer, 15 Ohio St.3d 239, 15 Ohio B. 379, 473 N.E.2d 768 (1984)_, we used independent review to rectify a trial court's failure to enunciate its reasoning. There, we observed that the very purpose of an independent appellate review of death sentences is, "at least in part, to correct such omissions." _Id. at 247_.

**[\*\*P71]** However, we also cautioned:

In so holding, we do not intend to trivialize the duty of the trial court under _R.C. 2929.03(F)_ to articulate its reasoning or to suggest **[\*\*\*\*35]** that such an omission is insignificant. It is not. _HN12_[ ] The failure of a trial court to comply with this aspect of _R.C. 2929.03(F)_ disrupts the review procedures enacted by the General Assembly by depriving the defendant and subsequent reviewing courts of the trial court's perceptions as to the weight accorded all relevant circumstances. In a closer case, those perceptions could make a difference in the manner in which a defendant pursues his appeal and in which a reviewing court makes its determination.

_Id._

**[\*\*P72]** This case presents the closer call that we anticipated in _Maurer_.[13] We find that the sentencing opinion is so inadequate as to severely handicap our ability to exercise our power of independent review. Accordingly, we must vacate Roberts's sentence of death and remand this case for resentencing.

**[\*\*P73]** On remand, the trial court is to review the entire record, including Roberts's allocution of October 22, 2007. The trial court shall consider the entire record—again, **[\*246]** including the allocution—in determining whether the aggravating circumstances outweigh the mitigating **[\*\*\*\*36]** factors beyond a reasonable doubt. The trial court shall then write and file a sentencing opinion pursuant to _R.C. 2929.03(F)_ reflecting that it has complied with these instructions.

_____

[13] The dissent, in stressing the role of independent review in curing errors by the sentencing court, fails to take account of _Maurer_.

**[\*\*P74]** In accordance with our holding as to Roberts's first proposition of law, Roberts is not entitled to present any further evidence on remand. Moreover, because Roberts has been given her opportunity to make allocution pursuant to _Crim.R. 32_, she is not entitled to make another one.

**[\*\*P75]** Finally, while the trial court must consider Roberts's allocution, nothing in today's opinion should be interpreted as a determination that the matters discussed in her allocution are true or that the trial court must afford them any particular weight. It is for the trial court to determine in the first instance what mitigating factors, if any, are present in the case, and what weight, if any, they should be given.

**[\*\*P76]** Roberts's second proposition of law is sustained.

**[\*\*\*1116]** III. Nonstatutory Aggravating Circumstances in Sentencing Opinion

**[\*\*P77]** In her third proposition of law, Roberts contends that the trial court's sentencing opinion demonstrates that the trial court erroneously considered nonstatutory aggravating circumstances in sentencing **[\*\*\*\*37]** her to death. Inasmuch as the trial court, on remand, will be required to write a new sentencing opinion, we find that Roberts's third proposition of law is moot.

IV. Denial of Recusal Motion

**[\*\*P78]** In her fourth proposition of law, Roberts contends that the trial judge should have recused himself from her resentencing. However, during the pendency of this appeal, the trial judge died. Because we are remanding this case for resentencing, which necessarily will be conducted by a different judge, we find that Roberts's fourth proposition of law is moot.

V. Ineffective Assistance of Counsel

**[\*\*P79]** In her fifth proposition of law, Roberts contends that her counsel rendered ineffective assistance at her 2003 mitigation hearing. She argues that her counsel "fail[ed] to fully investigate and present all possible evidence of mitigation." Specifically, Roberts complains that trial counsel failed to discover and present information contained in her Social Security file and in a letter to the trial court written by her son, both of which she proffered to the trial court on remand in 2007. The state argues that Roberts's current ineffective-assistance claim with regard to the mitigation hearing is barred by res **[\*\*\*\*38]** judicata, inasmuch as Roberts did not raise it on her original appeal to this court.

**[\*\*P80] [\*247]** In light of our disposition remanding this case to the trial court for resentencing, we decline to address

State v. Roberts

Roberts's fifth proposition of law at this time. If Roberts receives a death sentence on resentencing, the parties may present these arguments (including the state's res judicata argument) to us for review on the ensuing direct appeal.

VI. Competency to Stand Trial

 **[\*\*P81]**  Roberts's sixth and seventh propositions of law address her competency to stand trial during the mitigation hearing in 2003 and during the resentencing proceedings on remand in 2007. *See generally* R.C. 2945.37 (establishing standards and procedures for adjudicating defendant's competency to stand trial).

A. Competency during the 2007 Resentencing

 **[\*\*P82]** *HN13*[🔼] A defendant is competent to stand trial if she has sufficient present ability to consult with her lawyer with a reasonable degree of rational understanding and has a rational as well as a factual understanding of the proceedings against her. *Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960).* In her sixth proposition of law, Roberts contends that the state failed to prove **[\*\*\*\*39]** that she met the standard of competency during her 2007 resentencing proceeding.

 **[\*\*P83]**  Roberts contends that "[t]he trial court may not conduct a sentencing hearing for a death-eligible defendant where the record does not establish by a preponderance of the evidence that the defendant is legally competent," that "there was insufficient evidence of her ability to assist counsel in preparation for the hearing," and that "*[w]ithout evidence* that Roberts *could* properly assist counsel, the [sentencing] hearing should not have been conducted." (Emphasis added.)

 **[\*\*P84]**  Roberts's argument misallocates the burden of persuasion. R.C. 2945.37(G) provides:

   **[\*\*\*1117]** *HN14*[🔼] A defendant is presumed to be competent to stand trial. If, after a hearing, the court finds by a preponderance of the evidence that, because of the defendant's present mental condition, the defendant is incapable of understanding the nature and objective of the proceedings against the defendant or of assisting in the defendant's defense, the court shall find the defendant incompetent to stand trial and shall enter an order authorized by section 2945.38 of the Revised Code.

Thus, *HN15*[🔼] the question is not whether the state introduced sufficient evidence to prove **[\*\*\*\*40]** Roberts competent, but whether a preponderance of the evidence proved **[\*248]** that she was *not* competent. *See State v. Were, 118 Ohio St.3d 448, 2008-Ohio-2762, 890 N.E.2d 263, ¶ 45; State v. Jordan, 101 Ohio St.3d 216, 2004-Ohio-783, 804 N.E.2d 1, ¶ 28; State v. Hicks, 43 Ohio St.3d 72, 79, 538*

N.E.2d 1030 (1989). See also *Medina v. California, 505 U.S. 437, 112 S.Ct. 2572, 120 L.Ed.2d 353 (1992)* (assigning defendant burden of proving incompetency does not violate due process).

 **[\*\*P85]**  The trial court appointed Dr. Thomas Gazley, a psychologist with the Forensic Psychiatric Center of Northeast Ohio, to conduct a competency evaluation. Dr. Gazley interviewed Roberts, had conversations with her defense attorneys and with the director of mental-health services at the Ohio Reformatory for Women, where Roberts was incarcerated, and reviewed her mental-health chart from the reformatory. Dr. Gazley was the sole witness at the hearing on Roberts's competency. After he testified, his report was admitted without objection.

 **[\*\*P86]**  Dr. Gazley testified that Roberts had the ability to "understand the sentencing process and \* \* \* to understand what the alternatives available are to her as well as \* \* \* to provide her counsel **[\*\*\*\*41]** with any mitigating circumstances, should she desire to do so." He concluded that based on her ability to interact with him and to provide information and a coherent account of her perceptions about the situation, she would be able to do so with her defense counsel as well. Dr. Gazley further testified: "[W]hen I saw [Roberts] earlier this year, she was very coherent, her comments and responses to my questions were very relevant and \* \* \* to the point." Dr. Gazley noted in his report that Roberts's "memory for both recent and remote events is intact" and that she "maintains the capacity for abstract thinking."

 **[\*\*P87]**  Dr. Gazley knew that Roberts had been involved in a number of automobile accidents and had had several head injuries. He also knew that she had been diagnosed with depression and that she had engaged in suicidal thinking, which he attributed to her depression. However, Dr. Gazley testified that Roberts's depression had responded to treatment; by the time he saw her, her symptoms were in remission, and "[s]he was progressively getting better."

 **[\*\*P88]**  Dr. Gazley's report states that his opinion, reached "with reasonable psychological certainty," is that Roberts "currently has the cognitive **[\*\*\*\*42]** ability and functioning to understand, in a general way, the penalties that could or will be imposed as a result of her conviction" and that she "has the capacity to communicate relevant facts in mitigation to her attorney."

 **[\*\*P89]**  Roberts argues that there was no testimony relevant to the issue of Roberts's ability to work with and assist counsel. Even if that were so, Roberts could not prevail, because competency is presumed **[\*\*\*1118]** and the defense bears the burden of proving incompetency. R.C. 2945.37(G).

State v. Roberts

[**P90] [*249]    However, Dr. Gazley's testimony was relevant to the criteria for competency, including Roberts's ability to assist counsel. Dr. Gazley testified that Roberts was able to understand the sentencing process and what alternatives were available and to provide mitigating circumstances. After interviewing Roberts, Dr. Gazley concluded that Roberts had the ability to interact with defense counsel and to provide information and a coherent account of her own perceptions about the situation to her counsel.

[**P91] Roberts contends that Dr. Gazley did not know her psychological history before her incarceration and that he had neither reviewed her Social Security records nor obtained a neuropsychological evaluation [****43] of the effects of her head injury. However, Dr. Gazley explained that none of this mattered to his evaluation of Roberts's competency at the time of resentencing, because that evaluation was based on his interview with Roberts:

    I base my opinion * * * on the information that I receive from the subject at the time I do the interview. * * * I make my decision about the opinion based on the responses the person provides me to the questions I asked that I believe are related to the questions the Court needs to address, rather than the [past] diagnosis.

[**P92] *HN16* [🔷] A criminal defendant's competency to stand trial, including competency to assist in a sentencing proceeding, is a question of fact. *See Maggio v. Fulford, 462 U.S. 111, 103 S.Ct. 2261, 76 L.Ed.2d 794 (1983)* (upholding state-court finding of competency that was fairly supported by the record); *State v. Vrabel, 99 Ohio St.3d 184, 2003-Ohio-3193, 790 N.E.2d 303, ¶ 33* (deferring to trial court's "factual findings" that defendant was competent).

[**P93] Dr. Gazley's testimony supports the trial court's finding that Roberts failed to prove by a preponderance of the evidence that she was not competent to stand trial at the time of her sentencing proceeding [****44] in 2007. Because "there was some reliable, credible evidence supporting" the trial court's finding that Roberts was competent, we will not disturb that finding. *Vrabel at ¶ 33*. Roberts's sixth proposition of law is overruled.

B. Competency during the 2003 Mitigation Hearing

[**P94] In her seventh proposition of law, Roberts contends that there was insufficient evidence to prove that she was competent to stand trial during her original mitigation hearing in 2003. Roberts also claims that the trial court failed to conduct a full evidentiary hearing into her competency.

[**P95] These claims are res judicata. They are based entirely on the record of the 2003 hearing. Thus, Roberts could have, and should have, raised these issues [*250] in

*Roberts I*. She is barred from raising them now. *HN17* [🔷] "Where an argument could have been raised on an initial appeal, *res judicata* dictates that it is inappropriate to consider that same argument on a second appeal following remand." *State v. D'Ambrosio, 73 Ohio St.3d 141, 143, 1995 Ohio 129, 652 N.E.2d 710 (1995)*. *See also State v. Gillard, 78 Ohio St.3d 548, 549, 1997 Ohio 183, 679 N.E.2d 276 (1997)* (issues not raised on prior appeal are barred by res judicata and overruled without further consideration).

Conclusion

[**P96] [****45] Under the unique circumstances present here, we find that the trial court [***1119] failed to consider relevant mitigating evidence contained in Roberts's allocution. Accordingly, we vacate the death sentence and remand this case for resentencing on the basis of the existing record. On remand, the trial court must consider all the mitigating evidence reflected in the record, including Roberts's allocution, weigh the aggravating circumstances against the mitigating factors, and file a sentencing opinion that reflects that it has complied with these instructions. In doing so, the trial court must make an independent determination of whether a death sentence is appropriate and may not give deference to the sentences previously entered.

Judgment reversed and cause remanded.

PFEIFER, LANZINGER, and FRENCH, JJ., concur.

O'NEILL, J., concurs in part and dissents in part.

O'DONNELL and KENNEDY, JJ., dissent.

**Concur by:** O'NEILL (In Part)

**Dissent by:** O'NEILL (In Part); O'DONNELL

# Dissent

**O'NEILL, J., concurring in part and dissenting in part.**

[**P97] The questions addressed by the majority and the dissent are significant, but I do not believe it is necessary to decide them in this case. Our previous remand order required the trial court to "afford [****46] Roberts her right to allocute, * * * personally review and evaluate the evidence, weigh the aggravating circumstances against any relevant mitigating evidence, and determine anew the appropriateness of the death penalty as required by *R.C. 2929.03*." *State v. Roberts, 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, ¶ 167*. I believe that order was sufficient on its face, but unfortunately it was not followed by the trial court.

State v. Roberts

**[\*\*P98]**  As Justice O'Donnell points out, a capital defendant's statutory right to make an unsworn statement in mitigation under *R.C. 2929.03(D)(1)* is "'not an allocution under the rule.'" (Emphasis deleted.) Dissenting opinion at ¶ 110, quoting *State v. Campbell, 90 Ohio St.3d 320, 326, 2000 Ohio 183, 738 N.E.2d 1178 (2000)*. And if **[\*251]** we were addressing this issue in the first instance, the dissent might well be correct in concluding that the defendant's allocution "has no significance in establishing any mitigating factor." *Id.* at ¶ 116. But our previous remand order was not limited to permitting allocution—it required the court to evaluate "any relevant mitigating evidence" and make its sentencing decisions "anew." I would hold that the trial court failed to comply with this remand **[\*\*\*\*47]** order in that it failed to accept and evaluate relevant mitigation evidence, including the unsworn statement offered by the defendant.

**[\*\*P99]**  Given the clear language in our prior mandate, the trial court clearly erred by refusing to accept the defendant's evidence in mitigation. Even if I were to accept that the defendant had attempted to "update mitigation" with evidence of her good prison conduct and that such evidence was improper, majority opinion at ¶ 37, the trial court expressed no opinion on the relevance of that evidence and did not render a sentencing decision "anew" as directed. But I must also note that the majority's characterization here is inaccurate. As the majority observes, the defendant proffered four items in mitigation, only one of which dealt with her conduct in prison. And it is apparent that even the defendant's prison records, like her other proffered evidence, were submitted to demonstrate her continued mental illness, not her conduct. Moreover, as the majority itself recognizes, its analysis on this point is likely to be set aside by the federal courts on collateral review. *See* majority **[\*\*\*1120]** opinion at ¶ 31-33, citing *Davis v. Coyle, 475 F.3d 761 (6th Cir.2007)*.

**[\*\*P100]**  Therefore, **[\*\*\*\*48]** I concur in the court's judgment vacating the death sentence and remanding this case for resentencing, but I dissent as to the limitations placed on that resentencing by the majority. The defendant should be permitted to offer a case in mitigation, in accordance with both our prior remand and the Sixth Circuit's judgment in similar cases. And given both my opinion that capital punishment violates the *Eighth Amendment to the Constitution of the United States* and *Article I, Section 9 of the Ohio Constitution, see State v. Wogenstahl, 134 Ohio St.3d 1437, 2013-Ohio-164, 981 N.E.2d 900, ¶ 2* (O'Neill, J., dissenting), and the fact that the record as currently constituted provides strong evidence of the defendant's severe mental illness, I would hold that on remand the trial court is precluded from imposing the death penalty upon the defendant.

**O'DONNELL, J., dissenting.**

**[\*\*P101]**  Respectfully, I dissent.

**[\*\*P102]**  The principal focus of this appeal concerns whether a trial court commits reversible error if it fails to include in its statutorily mandated capital-offense sentencing opinion a statement that it has considered the allocution of a convicted murderer. However, allocution is a statutory right, not **[\*\*\*\*49]** a constitutional one, and it necessarily follows that the court's failure to affirmatively state that it **[\*252]** considered the allocution does not rise to the level of constitutional error. Further, this court has never required the trial court to discuss in its sentencing opinion every consideration that factors into its sentence. Rather, our precedent establishes that any such error is cured by our independent sentence evaluation. Accordingly, this court should independently review the allocution and the sentence and determine whether the penalty imposed is in conformity with others in which the death penalty has been imposed.

**Allocution**

**[\*\*P103]**  The purpose of allocution is "to permit a convicted defendant an opportunity to plead personally to the court for leniency in his sentence," *United States v. Tamayo, 80 F.3d 1514, 1518 (11th Cir.1996)*, based on the consideration that "[t]he most persuasive counsel may not be able to speak for a defendant as the defendant might, with halting eloquence, speak for himself," *Green v. United States, 365 U.S. 301, 304, 81 S.Ct. 653, 5 L.Ed.2d 670 (1961)* (Frankfurter, J., plurality opinion). Thus, courts recognize that "[t]he right to allocute is no more than the **[\*\*\*\*50]** defendant's 'right to stand before the [sentencer] and ask in his own voice that he be spared.'" *People v. Davis, 794 P.2d 159, 192 (Colo.1990)*, quoting *State v. Zola, 112 N.J. 384, 430, 548 A.2d 1022 (1988)*.

**[\*\*P104]**  There is no recognized constitutional right to allocution. In *Hill v. United States, 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962)*, the Supreme Court rejected a claim that the Constitution requires the trial court to invite an accused represented by counsel to make a statement before sentencing, explaining that the failure to do so "is an error which is neither jurisdictional nor constitutional. It is not a fundamental defect which inherently results in a complete miscarriage of justice, nor an omission inconsistent with the rudimentary demands of fair procedure." And in *McGautha v. California, 402 U.S. 183, 91 S.Ct. 1454, 28 L.Ed.2d 711 (1971)*, *judgment vacated sub nom. Crampton v. Ohio, 408 U.S. 941, 92 S.Ct. 2873, 33 L.Ed.2d 765 (1972)*, the court noted that "Ohio has provided for retention of the ritual of allocution, albeit only in its common-law form, precisely to avoid **[\*\*\*1121]** the possibility that a person might be tried,

State v. Roberts

convicted, and sentenced to death in complete silence. **[****51]** We have held that failure to ensure such personal participation in the criminal process is not necessarily a constitutional flaw in the conviction."

**[\*\*P105]** The Sixth Circuit Court of Appeals has also held that "[t]here is no constitutional right to allocution under the United States Constitution," *Pasquarille v. United States, 130 F.3d 1220, 1223 (6th Cir.1997)*, and that federal law does not require Ohio to afford the accused an opportunity to make an unsworn statement, *Bedford v. Collins, 567 F.3d 225, 237 (6th Cir.2009)*. Notably, the Sixth Circuit is not alone; almost every federal circuit court has held that allocution is not a constitutional right. *See United States v. Picard, 464 F.2d 215, 220 [\*253] (1st Cir.1972), fn. 9*; *United States v. Li, 115 F.3d 125, 132 (2d Cir.1997), fn. 3*; *United States v. Saferstein, 673 F.3d 237, 243 (3d Cir.2012)*; *United States v. Lighty, 616 F.3d 321, 365 (4th Cir.2010)*; *United States v. Reyna, 358 F.3d 344, 349 (5th Cir.2004)*; *United States v. Covington, 681 F.3d 908, 910 (7th Cir.2012)*; *United States v. Hoffman, 707 F.3d 929, 937 (8th Cir.2013)*; *United States v. Smith, 705 F.3d 1268, 1274 (10th Cir.2013)*; *United States v. Fleming, 849 F.2d 568, 569 (11th Cir.1988)*. **[****52]** It is only the Ninth Circuit that concludes that "the denial of the right to allocute is a due process violation." *United States v. Dablan, 205 Fed.Appx. 620, 622 (9th Cir.2006)*.

**[\*\*P106]** This court has previously suggested that the Constitution does not require allocution at the sentencing hearing. In *State v. Lynch, 98 Ohio St.3d 514, 2003-Ohio-2284, 787 N.E.2d 1185*, we rejected a claim that the trial court violated the constitutional rights of the accused by denying his request to give his statement through questioning by counsel, explaining that "the majority view [regarding the right to allocution] does not support a holding that a defendant has a constitutional right even to make an unsworn statement, let alone an unsworn statement in a question-and-answer format." *Id. at ¶ 103*. And in *Lancaster v. Green, 175 Ohio St. 203, 192 N.E.2d 776 (1963)*, we denied a writ of habeas corpus to an offender who claimed that the trial court's failure to include the allocution in the sentence invalidated it, stating that "the failure to include the allocution in the certificate of sentence did not void the sentence. In fact, the absolute failure to accord petitioner this right is not a ground for relief **[****53]** by habeas corpus." *Id. at 206*, citing *Hill, 368 U.S. 424, 82 S.Ct. 468, 7 L.Ed.2d 417*.

**Confusion regarding Allocution**

**[\*\*P107]** The term "allocution" has been used to refer to different statements made by an offender. For example, a statement made by a defendant at the time of a plea has been

described as an allocution. Such a statement can give a court a factual basis to adjudicate guilt. *United States v. Garcia, 587 F.3d 509, 514 (2d Cir.2009)* (explaining that the trial court may examine the accused's plea allocution in determining whether a sufficient factual basis supports the plea); *State v. Jones, 6th Dist. Sandusky No. S-08-034, 2010-Ohio-1780, ¶ 17* ("A plea allocution is conducted only after the individual has been fully apprised of and waived a litany of constitutional rights, including *Fifth Amendment* rights").

**[\*\*P108]** In Ohio, *R.C. 2929.03(D)(1)* permits an accused to make a statement to the jury or fact-finder during the penalty phase of a capital-murder trial and further provides that such a statement is not subject to cross-examination unless the accused makes the statement under oath. This unsworn statement permits the accused to address the jury or fact-finder in an effort to influence **[****54]** the penalty **[\*254]** **[***1122]** recommendation and is sometimes referred to as allocution, but in fact, it is a part of the penalty phase of the trial. *State v. Campbell, 90 Ohio St.3d 320, 326, 2000 Ohio 183, 738 N.E.2d 1178 (2000)*; *State v. Roe, 41 Ohio St.3d 18, 26, 535 N.E.2d 1351 (1989)* (noting that the statute provides that all mitigating evidence must be presented before the jury makes a recommendation in the penalty phase of trial; "[a] defendant may not wait for an unfavorable jury recommendation before presenting all relevant evidence in mitigation of sentence").

**[\*\*P109]** The foregoing examples of statements are not implicated in this case. Rather, the common-law right to allocution applicable in capital and noncapital cases is contained in *Crim.R. 32(A)(1)*, which directs the trial court, prior to imposing sentence, to afford counsel an opportunity to speak on behalf of the defendant and to address the defendant personally and ask if he or she wishes to make a statement in his or her own behalf or present any information in mitigation of punishment. This statement is not made under oath, is not subject to cross-examination, and is not evidence—but it can be considered by the court in imposing its sentence.

**[\*\*P110]** We distinguished **[****55]** the right to make an unsworn statement afforded by *R.C. 2929.03(D)(1)* from the allocution before sentence is pronounced in *Campbell*, where we said, "No authority requires a trial court to inform a capital defendant of his right to make an unsworn, penalty-phase statement. *Crim.R. 32(A)(1)* does not apply, because *an unsworn statement under R.C. 2929.03(D)(1) is not an allocution under the rule*." (Emphasis added.) *Id. at 326*. Thus, a penalty-phase statement may be relevant to weighing whether the aggravating circumstances were sufficient to outweigh the mitigating factors, but an allocution is not.

State v. Roberts

[**P111] In this case, pursuant to our order on remand, the trial court allowed Roberts to allocute prior to reimposing sentence. And before it imposed the sentence, the court stated that it had considered the record and the oral statements, which included her allocution. In my view, no reasonable inference may be drawn from the failure of the trial court to specifically incorporate the content of the allocution made by Roberts in its sentencing opinion. Obviously, because we remanded for that right to be accorded before sentencing, the trial court listened to Roberts and was aware of what she presented. [****P56] In this case, then, "'[t]here is no showing of irregularity to contradict the presumption of regularity accorded all judicial proceedings.'" *State v. Raber, 134 Ohio St.3d 350, 2012-Ohio-5636, 982 N.E.2d 684, ¶ 19*, quoting *State v. Sweet, 72 Ohio St.3d 375, 376, 650 N.E.2d 450 (1995)*.

[**P112] We have previously held that in considering mitigating factors in a capital-offense sentencing opinion, the failure to incorporate and discuss all of them in its sentencing opinion does not mean that the trial court did not consider [*255] them and that such a failure is not reversible error. *E.g.,* *State v. Davis, 116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31, ¶ 363*; *State v. Phillips, 74 Ohio St.3d 72, 102, 1995 Ohio 171, 656 N.E.2d 643 (1995)*. In *Phillips*, we considered the argument that "the trial court's sentencing opinion fail[ed] to give effect to all of the mitigation evidence offered by appellant." *Id.* We concluded:

> [Phillips] erroneously assumes that evidence that is not specifically mentioned in an opinion was not considered. While a sentencing court must consider all evidence of mitigation, it need not discuss each factor individually. *Parker v. Dugger (1991), 498 U.S. 308, 314-315, 111 S.Ct. 731, 736, 112 L.Ed.2d 812, 822*. Further, [****P57] even if "the trial [***1123] court in this case should have more explicitly analyzed the mitigating evidence," this court's independent reweighing will rectify the error. *State v. Lott (1990), 51 Ohio St.3d 160, 171-172, 555 N.E.2d 293, 305*.

*Id.* We therefore rejected that claim.

[**P113] This case is less egregious than *Phillips*, because the allocution statement made by Roberts before sentencing is not evidence; rather it is an opportunity for the defendant to make a personal statement in her own behalf or to present any information in mitigation of punishment, such as an apology, a request for mercy, or an appeal for leniency. A trial court may exercise its discretion in considering the allocution when imposing sentence.

[**P114] The majority confuses allocution—which is not evidence—with the opportunity to present an unsworn

statement in the penalty phase of the trial and the right to present mitigating evidence to the jurors or fact-finders, and it concludes that the sentence of death violated the *Eighth Amendment*, specifically because the allocution contained relevant mitigating evidence. It is true that a sentencer cannot refuse to consider mitigating evidence before imposing the death penalty, *see, e.g.,* [****58] *Eddings v. Oklahoma, 455 U.S. 104, 113-114, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982)*, but in this case, Roberts had waived her right to present mitigating evidence during the penalty phase of the trial.

[**P115] More significantly, however, an unsworn statement in allocution is not evidence. *Biddinger v. State, 868 N.E.2d 407, 413 (Ind.2007)*; *People v. Davis, 794 P.2d at 192*. Nor is allocution intended to prove or disprove facts relevant to sentencing. *State v. Lord, 117 Wash.2d 829, 897, 822 P.2d 177 (1991)*; *Davis at 192*. Thus, an allocution statement made prior to sentencing pursuant to *Crim.R. 32(A)(1)* is not admissible evidence. *See Evid.R. 603*; *Allstate Ins. Co. v. Rule, 64 Ohio St.2d 67, 69, 413 N.E.2d 796, 798 (1980)* ("Section 7 of Article I of the Constitution of Ohio requires an oath or affirmation as a prerequisite to the testimony of a witness" [footnote omitted]); *Stores Realty Co. v. Cleveland, 41 Ohio St.2d 41, 42, [*256] 322 N.E.2d 629 (1975)* ("it is error for unsworn testimony to be admitted in evidence"); *Clinton v. State, 33 Ohio St. 27 (1877), paragraph two of the syllabus* ("every one offered as a witness in a court must take an oath or affirmation before giving testimony").

[**P116] I therefore [****59] disagree with the conclusion of the majority that Roberts's statement "contained much information whose relevance as mitigation was clear." Majority opinion at ¶ 57. Because the allocution offered by Roberts prior to the imposition of sentence is not evidence, it has no significance in establishing any mitigating factor.

**Conclusion**

[**P117] Neither the United States nor the Ohio Constitution requires a trial court to permit allocution by a person convicted of a crime. Rather, in Ohio, the legislature has allowed a capital defendant to make a penalty-phase statement on his own behalf and to provide any information relevant to the penalty that should be imposed. But an unsworn allocution statement made after the penalty phase is not mitigating evidence. The omission of any reference to what Roberts said during allocution in the trial court's sentencing opinion does not permit an inference that the court failed to consider those statements, nor does it constitute reversible error.

[**P118] Even if the failure to refer to the allocution in the

State v. Roberts

sentencing opinion did constitute error, "[o]ur independent sentence evaluation and reweighing can cure the effect of errors in previous death-penalty sentencing decisions." [****60] *State v. Bey, 85 Ohio St.3d 487, 505, 1999 Ohio 283, 709 N.E.2d 484 [***1124] (1999)*. Although the sentencer's consideration of mitigating evidence is mandated by the Constitution, *Eddings, 455 U.S. at 113-114, 102 S.Ct. 869, 71 L.Ed.2d 1*, we have held that our independent review can cure a trial court's failure to explain how it weighed that evidence, *State v. Hill, 75 Ohio St.3d 195, 210, 1996 Ohio 222, 661 N.E.2d 1068 (1996)*. And we have recognized that "'[w]hile a sentencing court must consider all evidence of mitigation, it need not discuss each factor individually.'" *State v. Davis, 116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31, ¶ 363*, quoting *Phillips, 74 Ohio St.3d at 102, 656 N.E.2d 643*. Tellingly, in *Clemons v. Mississippi, 494 U.S. 738, 750, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990)*, the court explained that the sentencer need not make written findings concerning mitigating circumstances in order for an appellate court to perform an independent sentence evaluation. Thus, contrary to the majority's conclusion here, the failure to discuss the allocution does not hinder our independent review of the sentence.

 [**P119]  And if it is not reversible error to fail to explain how a court weighed mitigating evidence, how can it [****61] be reversible error to fail to refer to the allocution in a sentencing opinion when that allocution is not evidence?

 [**P120] [*257]   Accordingly, there is no reason for this court to reverse the sentence based on the trial court's failure to expressly mention in its sentencing opinion that it had considered Robert's unsworn statement. I would overrule proposition of law II and address the remaining propositions of law on the merits.

KENNEDY, J., concurs in the foregoing opinion.

End of Document

# The Supreme Court of Ohio



FILED

OCT 22 2013

CLERK OF COURT
SUPREME COURT OF OHIO

State of Ohio

v.

Donna Marie Roberts

Case No. 2007-2288

JUDGMENT ENTRY

APPEAL FROM THE
COURT OF COMMON PLEAS

This cause, here on appeal from the Court of Common Pleas for Trumbull County, was considered in the manner prescribed by law. On consideration thereof, the death sentence is vacated and this cause is remanded to the trial court for resentencing on the basis of the existing record, consistent with the opinion rendered herein.

It is further ordered that mandates be sent to and filed with the clerks of the Court of Appeals for Trumbull County and the Court of Common Pleas for Trumbull County.

(Trumbull County Court of Common Pleas; No. 01CR793)

Maureen O'Connor
Chief Justice

# The Supreme Court of Ohio

FILED

JAN 2 7 2014

CLERK OF COURT
SUPREME COURT OF OHIO

State of Ohio

v.

Donna Marie Roberts

Case No. 2007-2288

E N T R Y

    Upon review of the application for attorney fees filed on January 9, 2014, the court finds that the fees and expenses hereinafter approved are reasonable.

    Accordingly, it is ordered that Robert A. Dixon is granted appointed counsel fees in the sum of $1,251.00 and expenses in the sum of $372.84 for a total allowance of $1,623.84, which amount is ordered certified to the Trumbull County Auditor for payment.

(Trumbull Court of Common Pleas; No. 01CR793)

Maureen O'Connor
Chief Justice

# The Supreme Court of Ohio

FILED

JAN 2 7 2014

CLERK OF COURT
SUPREME COURT OF OHIO

| | | |
|---|---|---|
| State of Ohio | | Case No. 2007-2288 |
| v. | | E N T R Y |
| Donna Marie Roberts | | |

Upon review of the application for attorney fees filed on January 10, 2014, the court finds that the fees and expenses hereinafter approved are reasonable.

Accordingly, it is ordered that David L. Doughten is granted appointed counsel fees in the sum of $6,543.00 and expenses in the sum of $424.01 for a total allowance of $6,967.01, which amount is ordered certified to the Trumbull County Auditor for payment.

It is further ordered that extraordinary fees are approved.

(Trumbull Court of Common Pleas; No. 01CR793)

Maureen O'Connor
Chief Justice

# Supreme Court of the United States
# Office of the Clerk
# Washington, DC  20543-0001



January 27, 2014

Scott S. Harris
Clerk of the Court
(202) 479-3011

Clerk
Supreme Court of Ohio
65 South Front Street
Columbus, OH  43215-3431

    Re:  Donna Roberts
         v. Ohio
         No. 13-8411
         (Your No. 2007-2288)

Dear Clerk:

The petition for a writ of certiorari in the above entitled case was filed on January 21, 2014 and placed on the docket January 27, 2014 as No. 13-8411.

Sincerely,

**Scott S. Harris**, Clerk

by *[signature]*

Jacob C. Travers
Case Analyst

RECEIVED
JAN 30 2014
CLERK OF COURT
SUPREME COURT OF OHIO

FILED
JAN 30 2014
CLERK OF COURT
SUPREME COURT OF OHIO

# Supreme Court of the United States
## Office of the Clerk
## Washington, DC  20543-0001

Scott S. Harris
Clerk of the Court
(202) 479-3011

ORIGINAL

March 24, 2014

Clerk
Supreme Court of Ohio
65 South Front Street
Columbus, OH  43215-3431

      Re:  Donna Roberts
            v. Ohio
            No. 13-8411
            (Your No. 2007-2288)

Dear Clerk:

      The Court today entered the following order in the above-entitled case:

      The petition for a writ of certiorari is denied.

                    Sincerely,



                    **Scott S. Harris**, Clerk

FILED

MAR 2 6 2014

CLERK OF COURT
SUPREME COURT OF OHIO

RECEIVED

MAR 2 6 2014

CLERK OF COURT
SUPREME COURT OF OHIO