## 2001 CR 00793 STATE OF OHIO -VS- ROBERTS, DONNA MARIE JMS

- Case Type:
- CR - Criminal
- Case Status:
- CLOSED
- File Date:
- 12/21/2001
- DCM Track:
-
- Action:
- AGGRAVATED MURDER (prior calculation/design)
- Status Date:
- 12/20/2001
- Case Judge:
- STUARD, JOHN M
- Next Event:
-

| All Information | Party | Charge | Ticket/Citation # | Event | Docket | Financial | Checks | Receipt | Disposition |

### Docket Information

| Date | Docket Text | Amount Owed | Image Avail. |
|------|-------------|-------------|--------------|
| 12/20/2001 | FILING FEE FOR EACH CAUSE OF ACTION AND EACH UNDERTAKING<br>Amount Owed: $27.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 128021  Date: 06/30/2008 | $27.00 | |
| 12/20/2001 | PRISONER FEES<br>Amount Owed: $11.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 128021  Date: 06/30/2008 | $11.00 | |
| 12/20/2001 | GENERAL REVENUE FUND<br>Amount Owed: $11.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 128021  Date: 06/30/2008 | $11.00 | |
| 12/20/2001 | VICTIMS OF CRIME<br>Amount Owed: $30.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 128021  Date: 06/30/2008 | $30.00 | |
| 12/20/2001 | SPECIAL PROJECTS JUDGES<br>Amount Owed: $50.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 128021  Date: 06/30/2008 | $50.00 | |
| 12/21/2001 | WARRANT ON COMPLAINT AND RETURN OF SERVICE FILED. | $0.00 | |
| 12/21/2001 | COMPLAINT AND AFFIDAVIT FILED UNDER SEAL BY ORDER OF THE COURT | $0.00 | |
| 12/21/2001 | DEFT APPEARED WITH COUNSEL. NO PLEA ENTERED. NO BOND SET. | $0.00 | |
| 12/26/2001 | MOTION TO INTERVENE WITH SERVICE FILED BY ATTY STEPHEN BOLTON. | $0.00 | |
| 12/28/2001 | PRELIMINARY HEARING 12/31/2001  11:00 AM<br>BEFORE:HON. JOHN M. STUARD LOC:COURT 2 | $0.00 | |
| 12/28/2001 | DIRECT PRESENTMENT FOR<br>CT 1: AGG MURDER (F) W/SPECS OF AGG CIRCUMSTANCES<br>CT 2: AGG MURDER (F) W/SPECS OF AGG CIRCUMSTANCES<br>CT 3: AGG BURGLARY (F1) W/FIREARM SPEC<br>CT 4: AGG ROBBERY (F1) W/FIREARM SPEC | $0.00 | |

| Date | Docket Text | Amount Owed | Image Avail. |
|------|-------------|-------------|--------------|
| 12/28/2001 | INDICTMENT AND SUMMONS FILED BY PROSECUTOR'S OFFICE AND COPIES OF SAME ISSUED TO SHERIFF.<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number: Receipt: 123746 Date: 04/29/2008 | $2.00 | |
| 12/28/2001 | MOTION OF THE VINDICATOR PRINTING CO IN OPPOSITION TO DEFT DONNA M ROBERTS MOTION TO SEAL COURT RECORDS WITH SERVICE FILED BY ATTY DAVID MARBURGER. | $0.00 | |
| 12/28/2001 | NOTICE OF APPEARANCE AS CO-COUNSEL WITH SERVICE FILED BY ATTY JOHN JUHASZ | $0.00 | |
| 12/28/2001 | DEFTS MOTION AND MEMORANDUM TO HOLD AFFIDAVIT AND EXHIBITS UNDER SEAL WITH SERVICE FILED BY ATTY J GERALD INGRAM | $0.00 | |
| 12/31/2001 | NOT GUILTY PLEA TO ARRAIGNMENT ON INDICTMENT & SUMMONS NO BOND SET | $0.00 | |
| 12/31/2001 | SUMMONS ON INDICTMENT RETURNED BY SHERIFF ON DONNA MARIE ROBERTS SHERIFF ALTIERE<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number: Receipt: 123746 Date: 04/29/2008 | $2.00 | |
| 12/31/2001 | CAPIAS RETURNED AND ENDORSED BY SHERIFF ON DONNA MARIE ROBERTS SHERIFF ALTIERE | $0.00 | |
| 01/03/2002 | PRE TRIAL 01/30/2002  09:00 AM<br>JUDGE:HON. JOHN M. STUARD LOC:COURT 2<br>(N1-3-02) | $0.00 | |
| 01/04/2002 | CERTIFIED MAILER NUMBER 0891 801 SENT TO: THE SUPREME COURT OF OHIO<br>Amount Owed: $5.00<br>Paid Before Conversion: $0.00<br>Receipt Number: Receipt: 128021 Date: 06/30/2008 | $5.00 | |
| 01/07/2002 | VICTIM'S RIGHTS NOTIFICATION FILED. | $0.00 | |
| 01/07/2002 | DEFENDANT'S NOTICE OF REQUEST FOR DISCOVERY FILED BY DEFENDANT'S ATTORNEY JERRY INGRAM AND JOHN JUHASZ | $0.00 | |
| 01/07/2002 | DEFENDANT'S MOTION FOR NOTICE OF INTENTION TO USE EVIDENCE FILED BY THE DEFENDANT'S ATTORNEY JERRY INGRAM AND JOHN JUHASZ | $0.00 | |
| 01/14/2002 | CERTIFIED MAIL NUMBER 891801 RETURNED ENDORSED FROM THE SUPREME COURT OF OHIO ON 1/9/02 BY ? | $0.00 | |
| 02/01/2002 | HEARING ON PENDING MOTIONS 05/23/2002  01:00 PM<br>BEFORE:HON. JOHN M. STUARD LOC:COURT 2 | $0.00 | |
| 02/01/2002 | JURY TRIAL 11/18/2002  09:00 AM<br>BEFORE:HON. JOHN M. STUARD LOC:COURT 2 | $0.00 | |
| 02/01/2002 | 963/427 WAIVER OF SPEEDY TRIAL FOR 300 DAYS UNTIL 11/18/02<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number: Receipt: 128021 Date: 06/30/2008 | $2.00 | |
| 02/11/2002 | DEFENDANT'S MOTION FOR AN ORDER ENLARGING THE TIME FOR FILING PRETRIAL MOTIONS FILED FILED BY THE DEFENDANT'S ATTORNEY JERRY INGRAM AND JOHN JUHASZ | $0.00 | |
| 02/11/2002 | DEFENDANT'S MOTION FPR DISCOVERY FILED  BY THE DEFENDANT'S ATTORNEY JERRY INGRAM AND ATTORNEY JOHN JUHASZ | $0.00 | |
| 02/20/2002 | MOTION TO DETERMINE PROPER STANDARD TO EXCUSE JURORS FOR CAUSE FILED BY THE DEFENDANT'S ATTORNEY JERRY INGRAM AND ATTORNEY JOHN JUHASZ. | $0.00 | |
| 02/26/2002 | DEFENDANT'S MOTION FOR COMPREHENSIVE VOIR DIRE EXAMINATION FILED BY THE DEFENDANT'S ATTORNEY JERRY INGRAM | $0.00 | |
| 03/13/2002 | NOTICE TO SUPREME COURT (COPY) CC02008 | $0.00 | |
| 03/15/2002 | STATE'S REQUEST FOR RECIPROCAL DISCOVERY FILED BY THE PROSECUTOR'S OFFICE | $0.00 | |
| 03/15/2002 | STATE'S RESPONSE TO DEFENDANT'S REQUEST FOR DISCOVERY FILED BY THE PROSECUTOR'S OFFICE | $0.00 | |
| 03/15/2002 | STATE'S RESPONSE TO DEFENDANT'S REQUEST BILL OF PARTICULARS FILED BY THE PROSECUTOR'S OFFICE | $0.00 | |
| 03/20/2002 | MOTION OF INTEREST PARTY FILED BY ATTORNEY ROSEMARY MILBY ATTORNEY FORD MOTOR CREDIT COMPANY FILED | $0.00 | |
| 04/16/2002 | STATES SECOND SUPPLEMENTAL RESPONSE TO DEFTS REQUEST FOR DISCOVERY WITH SERVICE FILED BY PROSECUTOR | $0.00 | |

| Date | Docket Text | Amount Owed | Image Avail. |
|------|-------------|-------------|--------------|
| 04/18/2002 | STATES THIRD SUPPLEMENTAL RESPONSE TO DEFTS REQUEST FOR DISCOVERY WITH SERVICE FILED BY PROSECUTOR | $0.00 | |
| 05/20/2002 | HEARING ON PENDING MOTIONS 07/18/2002  01:00 PM BEFORE:HON. JOHN M. STUARD LOC:COURT 2 | $0.00 | |
| 06/18/2002 | DEFENDANT'S MOTION FOR COMPEHENSIVE VOIR DIRE EXAMINATION FILED BY THE DEFENDANT'S ATTORNEY J. GERALD INGRAM AND JOHN B JUHASZ | $0.00 | |
| 06/18/2002 | DEFENDANT'S MOTION TO PROHIBIT DEATH QUALIFICATION OF JURORS UNLESS AND UNTIL THE GOVERNMENT HAS ESTABLISHED PROBABLE CAUSE THAT THE CASE WILL PROCEED TO A SECOND PHASE EVIDENTIARY HEARING REQUESTED FILED BY THE DEFENDANT'S ATTORNEY J. GERALD INGRAM AND JOHN J JUHASZ | $0.00 | |
| 07/09/2002 | DEFENDANT'S MOTION TO SUPPRESS EVIDENCE REQUEST FOR EVIDENTIARY HEARING FILED BY THE DEFENDANT'S ATTORNEY J. GERALD INGRAM AND JOHN B JUHASZ | $0.00 | |
| 07/15/2002 | DEFENDANT'S MOTION FOR ALTERNATING VOIR EXAMINATION FILED BY THE DEFENDANT'S ATTORNEY JERRY INGRAM | $0.00 | |
| 07/15/2002 | DEFENDANT'S MOTION TO HAVE REASONS FOR OBJECTIONS AND REASONS FOR OVERRULING OBJECTIONS PLACED ON THE RECORD FILED BY THE DEFENANT'S ATTORNEY JERRY INGRAM | $0.00 | |
| 07/18/2002 | MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO PROHIBIT DEATH QUALIFICATIONS UNTIL PROSECUTION HAS SHOWN PROBABLE CAUSE THAT THE CASE WILL PROCEED TO A SECOND PHASE FILED BY THE PROSECUTOR'S OFFICE | $0.00 | |
| 07/18/2002 | STATE'S MEMORANDUM IN RESPONSE TO DEFENDANT'S MOTION TO DETERMINE PROPER STANDARD TO EXCUSE JURORS FOR CAUSE FILED BY THE PROSECUTOR'S OFFICE | $0.00 | |
| 07/18/2002 | MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR COMPREHENSIVE VOIR DIRE FILED BY THE PROSECUTOR'S OFFICE | $0.00 | |
| 07/18/2002 | DEFENDANT'S MOTION TO DISMISS INDICTMENT OR IN THE ALTERNATIVE TO DISMISS DEATH SPECIFICATIONS BECAUSE DEATH PENALTY IN OHIO IS UNCONSTITUTIONAL REQUEST FOR ORAL HEARING FILED BY THE DEFENDANT'S ATTORNEY'S JERRY INGRAM AND JOHN JUHASZ | $0.00 | |
| 07/19/2002 | 976/309 ENTRY OF STIPULATION REGARDING DEFTS JULY 9, 2002 MOTION TO SUPPRESS. SEE J/E. 7/19/02  COPIES SENT TO: J INGRAM, J JUHASZ, S BOLTON, D MARBURGER, A MILLETTE & PROSECUTOR Amount Owed: $4.00 Paid Before Conversion: $0.00 Receipt Number:  Receipt: 128021  Date: 06/30/2008 | $4.00 | |
| 07/19/2002 | POSTAGE Amount Owed: $2.22 Paid Before Conversion: $0.00 Receipt Number:  Receipt: 128021  Date: 06/30/2008 | $2.22 | |
| 07/23/2002 | HEARING ON PENDING MOTIONS 09/20/2002  09:00 AM BEFORE:HON. JOHN M. STUARD LOC:COURT 2 | $0.00 | |
| 08/26/2002 | DEFTS MOTION TO SUPPRESS REFERENCES TO THE JURY THAT A VERDICT OF DEATH IS ONLY A RECOMMENDATION WITH SERVICE FILED BY ATTY JOHN JUHASZ | $0.00 | |
| 09/11/2002 | 981/507 DEFTS MOTION TO SUPPRESS REFERENCES TO THE JURY THAT THE DEATH PENALTY IS BEING SOUGHT IS DENIED. SEE J/E. 9/11/02 COPIES SENT TO: PROSECUTOR, J INGRAM & J JUHASZ Amount Owed: $6.00 Paid Before Conversion: $0.00 Receipt Number:  Receipt: 128021  Date: 06/30/2008 | $6.00 | |
| 09/11/2002 | POSTAGE Amount Owed: $1.11 Paid Before Conversion: $0.00 Receipt Number:  Receipt: 123746  Date: 04/29/2008 | $1.11 | |
| 09/12/2002 | DEFTS MOTION TO DISMISS DEATH SPECIFICATIONS DUE TO INADEQUATE APPELLATE REVIEW REQUEST FOR HEARING WITH SERVICE FILED BY ATTY JOHN JUHASZ | $0.00 | |
| 09/13/2002 | DEFTS MOTION TO PROHIBIT THE GOVERNMENT FROM USING PEREMPTORY CHALLENGES TO EXCLUDE VENIREMEN WHO EXPRESS CONCERN ABOUT IMPOSING CAPITAL PUNISHMENT WITH SERVICE FILED BY ATTY J GERALD INGRAM | $0.00 | |
| 09/16/2002 | DEFTS MOTION TO HAVE REASONS FOR OBJECTIONS AND REASONS FOR OVERRULING OBJECTIONS PLACED ON THE RECORD WITH SERVICE FILED BY ATTY J GERALD INGRAM | $0.00 | |
| 09/16/2002 | DEFTS MOTION TO DISMISS DEATH PENALTY SPECIFICATIONS BECAUSE METHOD OF EXECUTION IS UNCONSTITUTIONAL WITH SERVICE FILED BY ATTY J GERALD INGRAM | $0.00 | |
| 09/20/2002 | HEARING ON PENDING MOTIONS 10/10/2002  01:00 PM BEFORE:HON. JOHN M. STUARD LOC:COURT 2 | $0.00 | |

| Date | Docket Text | Amount Owed | Image Avail. |
|------|-------------|-------------|--------------|
| 10/04/2002 | MOTION TO SUPPRESS WITH SERVICE FILED BY ATTY GERALD INGRAM | $0.00 | |
| 10/10/2002 | MEMORANDUM IN OPPOSITION TO DEFTS MOTION TO DISMISS DEATH PENALTY SPECIFICATIONS DUE TO INADEQUATE APPELLATE REVIEW WITH SERVICE FILED BY PROSECUTOR | $0.00 | |
| 10/10/2002 | MEMORANDUM IN OPPOSITION TO DEFTS MOTION TO DISMISS DEATH PENALTY SPECIFICATIONS BECAUSE METHOD OF EXECUTION IS UNCONSTITUTIONAL WITH SERVICE FILED BY PROSECUTOR | $0.00 | |
| 10/10/2002 | MEMORANDUM CONTRA TO DEFTS MOTION TO DISMISS INDICTMENT: OR IN ALTERNATIVE TO DISMISS DEATH SPECIFICATIONS BECAUSE DEATH PENALTY IN OHIO IS UNCONSTITUTIONAL WITH SERVICE FILED BY PROSECUTOR | $0.00 | |
| 10/10/2002 | MEMORANDUM IN OPPOSITION TO DEFTS MOTION TO HAVE REASONS FOR DEFENSE OBJECTIONS AND REASONS FOR OVERRULING DEFTS OBJECTIONS PLACED ON RECORD WITH SERVICE FILED BY PROSECUTOR | $0.00 | |
| 10/10/2002 | MEMORANDUM IN OPPOSITION TO DEFTS MOTION TO PROHIBIT THE USE OF PEREMPTORY CHALLENGES TO EXCLUDE VERIREMEN WHO EXPRESS CONCERNS ABOUT IMPOSING CAPITAL PUNISHMENT WITH SERVICE FILED BY PROSECUTOR | $0.00 | |
| 10/10/2002 | MEMORANDUM IN OPPOSITION TO DEFTS MOTION FOR ALTERNATING VOIR DIRE WITH SERVICE FILED BY PROSECUTOR | $0.00 | |
| 10/10/2002 | MOTION FOR DEFT TO SUBMIT TO HANDWRITING EXEMPLARS WITH SERVICE FILED BY PROSECUTOR | $0.00 | |
| 10/10/2002 | STATES FOURTH SUPPLEMENTAL RESPONSE TO DEFTS REQUEST FOR DISCOVERY WITH SERVICE FILED BY PROSECUTOR | $0.00 | |
| 10/10/2002 | 983/808 MOTIONS HEARING SCHEDULED FOR 9/20/02 AT 9:00 AM IS RESCHEDULED TO 10/10/02 AT 1:00 PM. 10/10/02 COPIES SENT TO: C BECKER, K BAILEY, TR CO PROSECUTOR, J INGRAM AND J JUHASZ Amount Owed: $2.00 Paid Before Conversion: $0.00 Receipt Number:  Receipt: 123746  Date: 04/29/2008 | $2.00 | |
| 10/15/2002 | HRG ON MOTION TO SUPPRESS 11/08/2002  09:00 AM BEFORE:HON. JOHN M. STUARD LOC:COURT 2 | $0.00 | |
| 10/21/2002 | STATUS CONFERENCE 10/24/2002  11:30 AM BEFORE:HON. JOHN M. STUARD LOC:COURT 2 | $0.00 | |
| 10/25/2002 | 985/232 WAIVER OF SPEEDY TRIAL FOR 210 DAYS UNTIL 4/7/03 Amount Owed: $2.00 Paid Before Conversion: $0.00 Receipt Number:  Receipt: 128021  Date: 06/30/2008 | $2.00 | |
| 10/29/2002 | JURY TRIAL 04/07/2003  09:00 AM BEFORE:HON. JOHN M. STUARD LOC:COURT 2 | $0.00 | |
| 11/01/2002 | PRE TRIAL 12/19/2002  08:45 AM BEFORE:HON. JOHN M. STUARD LOC:COURT 2 | $0.00 | |
| 12/03/2002 | DEFTS MOTION TO DISMISS DEATH SPECIFICATIONS AND TO DECLARE INVALID OHIO CONST ART IV, 2 AND 3 AND ORC ANN 2929.05 AND 2953.02 AND REQUEST FOR HEARING WITH SERVICE FILED BY ATTY J GERALD INGRAM | $0.00 | |
| 12/20/2002 | PRE TRIAL 01/02/2003  08:45 AM BEFORE:HON. JOHN M. STUARD LOC:COURT 2 | $0.00 | |
| 01/03/2003 | SUPPRESSION HEARING 02/26/2003  09:00 AM BEFORE:HON. JOHN M. STUARD LOC:COURT 2 | $0.00 | |
| 02/28/2003 | FINAL PRE TRIAL 03/26/2003  01:00 PM BEFORE:HON. JOHN M. STUARD LOC:COURT 2 | $0.00 | |
| 02/28/2003 | JURY TRIAL 04/08/2003  09:00 AM BEFORE:HON. JOHN M. STUARD LOC:COURT 2 | $0.00 | |
| 02/28/2003 | 995/415 WAIVER OF SPEEDY TRIAL FOR ADDITIONAL 45 DAYS; TRIAL DATE APRIL 8, 2003. Amount Owed: $2.00 Paid Before Conversion: $0.00 Receipt Number:  Receipt: 128021  Date: 06/30/2008 | $2.00 | |
| 03/03/2003 | MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS FILED BY THE PROSECUTOR'S OFFICE | $0.00 | |
| 03/17/2003 | NOTICE OF OPEN FILE DISCOVERY FILED BY THE PROSECUTOR'S OFFICE | $0.00 | |
| 03/18/2003 | DEFENDANT'S MOTION FOR ORDER GRANTING EXPERT ACCESS TO DEFENDANT IN COUNTY JAIL FILED BY THE DEFENDANT'S ATTORNEY JOHN JUHASZ | $0.00 | |

| Date | Docket Text | Amount Owed | Image Avail. |
|---|---|---|---|
| 03/18/2003 | 996/977 JUDGMENT ENTRY GRANTING EXPERT ACESS. 3/18/03 CC SENT TO: C BECKER, K BAILEY, J G INGRAM, J JUHASZ, DR T EBERLE & T ALTIERE<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 123746  Date: 04/29/2008 | $2.00 | |
| 03/18/2003 | POSTAGE<br>Amount Owed: $2.22<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 128021  Date: 06/30/2008 | $2.22 | |
| 03/21/2003 | DEFENDANT'S POST SUPPRESSION HEARING MEMORANDUM FILED BY THE DEFENDANT'S ATTORNEY GERALD INGRAM AND JOHN JUHASZ | $0.00 | |
| 04/04/2003 | 998/433 DEFTS MOTION TO SUPPRESS IS DENIED. 4/4/03 COPIES SENT TO: PROSECUTOR, J INGRAM & J JUHASZ<br>Amount Owed: $6.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 128021  Date: 06/30/2008 | $6.00 | |
| 04/04/2003 | POSTAGE<br>Amount Owed: $1.11<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 123746  Date: 04/29/2008 | $1.11 | |
| 04/07/2003 | PROPOSED ORIENTATION INSTRUCTIONS AS TO PROCEDURE IN A CAPITAL CASE FILED BY THE DEFENDANT'S ATTORNEY J GERALD INGRAM | $0.00 | |
| 04/07/2003 | HEARING ON MOTION TO SUPPRESS EVIDENCE FILED BY THE DEFENDANT'S ATTONREY J GERALD INGRAM AND ATTORNEY JOHN JUHASZ | $0.00 | |
| 04/07/2003 | NOTICE OF APPEAL TO THE 11TH APPELLATE COURT FILED BY ATTY J JUHASZ | $0.00 | |
| 04/07/2003 | DEFENDANTS MOTION TO CHANGE VENUE REQUEST FOR CLOSED ORAL HEARING FILED BY ATTY INGRAM AND JUHASZ | $0.00 | |
| 04/08/2003 | 998/713 MANDATE FROM COURT OF APPEALS. THE INSTANT APPEAL IS DISMISSED FOR LACK OF JURISDICTION<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 128021  Date: 06/30/2008 | $2.00 | |
| 04/08/2003 | SUBPOENA RETURNED AND ENDORSED ON ANDREW HARVEY BY SHERIFF ALTIERE<br>Amount Owed: $3.30<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 128021  Date: 06/30/2008 | $3.30 | |
| 04/09/2003 | SUBPOENA RETURNED AND ENDORSED ON JOSE SANCHEZ MAHONING COUNTY SHERIFF'S DEPARTMENT<br>Amount Owed: $1.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 123746  Date: 04/29/2008 | $1.00 | |
| 04/10/2003 | PRELIMINARY INSTRUCTIONS (DEFENDANT'S SUBMISSION) FILED BY THE DEFENDANT'S ATTORNEY | $0.00 | |
| 04/10/2003 | DEFENDANT'S MOTION FOR SPECIFIC DISCLOSURE OF DUE PROCESS MATERIAL FILED BY THE DEFENDANT'S ATTONREY JERRY INGRAM AND JOHN JUHASZ | $0.00 | |
| 04/14/2003 | STATE'S FIFTH SUPPLEMENTAL RESPONSE TO DEFENDANT'S REQUEST FOR DISCOVERY FILED BY THE PROSECUTOR'S OFFICE | $0.00 | |
| 04/24/2003 | SUBPOENA RETURNED AND ENDORSED ON MELVIN WILLIAMS MAHONING COUNTY SHERIFF<br>Amount Owed: $6.60<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 128021  Date: 06/30/2008 | $6.60 | |
| 04/24/2003 | SUBPOENA RETURNED AND ENDORSED ON SHELIA FIELDS MAHONING COUNTY SHERIFF<br>Amount Owed: $3.80<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 128021  Date: 06/30/2008 | $3.80 | |
| 04/24/2003 | SUBPOENA RETURNED AND ENDORSED ON JEFFREY DIAMANTES MAHONING COUNTY SHERIFF<br>Amount Owed: $27.40<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 128021  Date: 06/30/2008 | $27.40 | |
| 04/24/2003 | SUBPOENA RETURNED AND ENDORSED ON JOSE FLORES RICHLAND COUNTY SHERIFF<br>Amount Owed: $2.50<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 128021  Date: 06/30/2008 | $2.50 | |

| Date | Docket Text | Amount Owed | Image Avail. |
|------|-------------|-------------|--------------|
| 04/24/2003 | SUBPOENA RETURNED AND ENDORSED ON JIM MCCOY CUYAHOGA COUNTY SHERIFF<br>Amount Owed: $16.27<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 128021  Date: 06/30/2008 | $16.27 | |
| 04/24/2003 | SUBPOENA RETURNED AND ENDORSED ON CHRIS GEAR MAHONING COUNTY SHERIFF<br>Amount Owed: $3.80<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 128021  Date: 06/30/2008 | $3.80 | |
| 04/24/2003 | SUBPOENA RETURNED AND ENDORSED ON RALPH ROBERTS MAHONING COUNTY SHERIFF<br>Amount Owed: $14.50<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 128021  Date: 06/30/2008 | $14.50 | |
| 04/24/2003 | SUBPOENA RETURNED AND ENDORSED ON JAMES CULWELL FRANKLIN COUNTY SHERIFF<br>Amount Owed: $2.30<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 128021  Date: 06/30/2008 | $2.30 | |
| 04/25/2003 | SUBPOENA RETURNED AND ENDORSED ON JILL KENYON SHERIFF ALTIERE<br>Amount Owed: $4.30<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 128021  Date: 06/30/2008 | $4.30 | |
| 04/25/2003 | SUBPOENA RETURNED AND ENDORSED ON JENNIFER ROBINSON MAHONING COUNTY SHERIFF<br>Amount Owed: $5.40<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 128021  Date: 06/30/2008 | $5.40 | |
| 04/25/2003 | SUBPOENA RETURNED AND ENDORSED ON JEFFREY PASCARELLA MAHONING COUNTY SHERIFF<br>Amount Owed: $8.60<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 128021  Date: 06/30/2008 | $8.60 | |
| 04/25/2003 | SUBPOENA RETURNED AND ENDORSED ON RITA MORRISON MAHNING COUNTY SJERIFF<br>Amount Owed: $5.40<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 128021  Date: 06/30/2008 | $5.40 | |
| 04/25/2003 | SUBPOENA RETURNED AND ENDORSED ON RITA MOSSISON SHERIFF ALTIERE | $0.00 | |
| 04/25/2003 | SUBPOENA RETURNED AND ENDORSED ON JOHN GUZIK MAHONING COUNTY SHERIFF<br>Amount Owed: $5.40<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 128021  Date: 06/30/2008 | $5.40 | |
| 04/25/2003 | SUBPOENA RETURNED AND ENDORSED ON MIGUEL DIAZ MAHONING SHERIFF ALTIERE<br>Amount Owed: $6.60<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 128021  Date: 06/30/2008 | $6.60 | |
| 04/25/2003 | TRIAL STIPULATION FILED BY THE DEDENDANT'S ATTORNEY ALONG WITH THE PROSECUTOR'S OFFICE | $0.00 | |
| 04/25/2003 | SUBPOENA RETURNED AND ENDORSED ON FRANK REYNOLDS NOT SERVED MAHONING COUNTY SHERIFF<br>Amount Owed: $11.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 128021  Date: 06/30/2008 | $11.00 | |
| 04/25/2003 | SUBPOENA RETURNED AND ENDORSED ON JAMES DANIELS MAHONING COUNTY SHERIFF<br>Amount Owed: $3.80<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 128021  Date: 06/30/2008 | $3.80 | |
| 04/25/2003 | SUBPOENA RETURNED AND ENDORSED ON BRIDGET PAUL SHERIFF ALTIERE<br>Amount Owed: $3.30<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 128021  Date: 06/30/2008 | $3.30 | |
| 04/25/2003 | SUBPOENA RETURNED AND ENDORSED ON PAULA CARSON SHERIFF ALTIERE<br>Amount Owed: $3.30<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 128021  Date: 06/30/2008 | $3.30 | |
| 04/25/2003 | SUBPOENA RETURNED UNABLE TO SERVE IN TIME FOR HEARING (KRIS ELLINGTON) | $0.00 | |
| 04/29/2003 | SUBPOENA RETURNED - UNABLE TO SERVE IN TIME FOR HEARING - NEW ADDRESS 2747 RANDOLPH NW, WARREN, OH 44485 (SANTIAGO MASON) | $0.00 | |

| Date | Docket Text | Amount Owed | Image Avail. |
|------|-------------|-------------|--------------|
| 05/12/2003 | 1001/295 1 - DEFTS MOTION TO PROHIBIT THE GOVERNMENT FROM USING PEREMPTORY CHALLENGES TO EXCLUDE VENIREMEN WHO EXPRESS CONCERN ABOUT IMPOSING CAPITAL PUNISHMENT IS OVERRULED.<br>2 - DEFTS MOTION TO HAVE REASONS FOR OBJECTIONS AND REASONS FOR OVERRULING OBJECTIONS PLACED ON THE RECORD IS GRANTED IN PART. THE COURT WILL PROVIDE ITS REASONS FOR OVERRULING ANY OBJECTIONS ON THE RECORD IF REQUESTED BY EITHER PARTY.<br>3 - DEFTS MOTION TO DISMISS DEATH PENALTY SPECIFICATIONS BECAUSE METHOD OF EXECUTION IS UNCONSTITUTIONAL IS OVERRULED.<br>4 - DEFTS MOTION TO DISMISS DEATH SPECIFICATIONS DUE TO INADEQUATE APPELLATE REVIEW IS OVERRULED.<br>5 - DEFTS MOTION TO SUPPRESS REFERENCES TO THE JURY THAT A VERDICT OF DEATH IS ONLY A RECOMMENDATION IS OVERRULED.<br>6 - DEFTS MOTION TO DISMISS INDICTMENT OR IN THE ALTERNATIVE TO DISMISS DEATH SPECIFICATIONS BECAUSE DEATH PENALTY IN OHIO IS UNCONSTITUTIONAL IS OVERRULED.<br>7 - DEFTS MOTION FOR ALTERNATING VOIR DIRE EXAMINATION IS WITHDRAWN.<br>8 - DEFTS MOTION FOR AN ORDER ENLARGING THE TIME FOR FILING PRETRIAL MOTIONS FILED 2/11/02 IS GRANTED.<br>9 - DEFTS MOTION TO DETERMINE THE PROPER STANDARD TO EXCUSE JURORS FOR CAUSE IS OVERRULED TO THE EXTENT THAT THE COURT WILL DETERMINE BASED UPON THE APPLICABLE LAW THE STANDARD FOR EXCUSING JURORS.<br>10 - DEFTS MOTION FOR COMPREHENSIVE VOIR DIRE EXAMINATION IS GRANTED AND THE COURT WILL PERMIT THE PARTIES 45 MINUTES PER SIDE TO INDIVIDUALLY VOIR DIRE THE PROSPECTIVE JURORS.<br>11 - DEFTS MOTION TO PROHIBIT DEATH QUALIFICATION OF JURORS UNLESS AND UNTIL THE GOVERNMENT HAS ESTABLISHED PROBABLE CAUSE THAT THE CASE WILL PROCEED TO A SECOND PHASE IS OVERRULED.<br>12 - STATES MOTION TO HAVE THE DEFT SUBMIT TO HANDWRITING EXEMPLARS IS MOOT DUE TO THE STIPULATED ENTRY FILED ON 4/25/02.<br>13 - DEFTS MOTION TO DISMISS DEATH SPECIFICATIONS AND TO DECLARE INVALID OHIO CONSTITUTION ART IV, 2 AND 3 AND ORC 2929.05 AND 2953.02 IS OVERRULED.<br>14 - DEFTS MOTION TO CHANGE VENUE IS OVERRULED.<br>5/12/03 COPIES SENT TO: PROSECUTOR, J INGRAM & J JUHASZ<br>Amount Owed: $8.00<br>Paid Before Conversion: $0.00<br>Receipt Number: Receipt: 128021  Date: 06/30/2008 | $8.00 | |
| 05/12/2003 | DEFENDANT'S MOTION IN LIMINE HEARING REQUEST OR HEARING FILED BY THE DEFENDANT'S ATTORNEY JERRY INDRAM AND JOHN JUHASZ | $0.00 | |
| 05/12/2003 | DEFENDANT'S MOTION IN LIMINE CONCERING EXTRANEOUS STATEMENTS IN LETTERS AND TAPES FILED BY THE DEFENDANT'S ATTORNEY JERRY INGRAM & JOHN JUHASZ | $0.00 | |
| 05/12/2003 | STENOGRAPHER FEE FILED BY KELLY J WILSON OFFICIAL COURT REPORTER<br>Amount Owed: $125.00<br>Paid Before Conversion: $0.00<br>Receipt Number: Receipt: 128021  Date: 06/30/2008 | $125.00 | |
| 05/13/2003 | WITNESS FEES FOR CHRIS MONYAK<br>Amount Owed: $24.00<br>Paid Before Conversion: $0.00<br>Receipt Number: Receipt: 128021  Date: 06/30/2008 | $24.00 | |
| 05/14/2003 | WITNESS FEES<br>JAMES DANIELS<br>Amount Owed: $8.00<br>Paid Before Conversion: $0.00<br>Receipt Number: Receipt: 128021  Date: 06/30/2008 | $8.00 | |
| 05/14/2003 | WITNESS FEES<br>$283.90<br>Amount Owed: $283.90<br>Paid Before Conversion: $0.00<br>Receipt Number: Receipt: 132123  Date: 08/25/2008 | $283.90 | |
| 05/15/2003 | WITNESS FEES  SANTIAGO MASON<br>Amount Owed: $24.00<br>Paid Before Conversion: $0.00<br>Receipt Number: Receipt: 128021  Date: 06/30/2008 | $24.00 | |
| 05/15/2003 | STIPULATION FILED BY THE PROSECUTOR'S OFFICE | $0.00 | |
| 05/16/2003 | DEFENDANT'S MTION IN LIMNE REQUEST FOR HEARING FILED BY THE DEFENDANT'S ATTORNEY JERRY AND ATTORNEY JOHN JUHASZ | $0.00 | |

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2340

Case Details - CourtView Justice Solutions

| Date | Docket Text | Amount Owed | Image Avail. |
|------|-------------|-------------|--------------|
| 05/22/2003 | 1002/478 JURORS MARGARET KAY AND TERRY GRAY ARE ORDERED BY THIS COURT NOT TO REPORT TO THEIR PLACES OF EMPLOYMENT DURING THE DURATION OF THEIR JURY SERVICE IN THE ABOVE STYLED CASE. THIS ORDER SHALL REMAIN IN EFFECT UNTIL A FINAL VERDICT IS REACHED IN THIS CASE IN THE GUILT PHASE AS WELL AS THE PENALTY PHASE IF SUCH PHASE IS NECESSARY. 5/22/03 COPIES SENT TO: PROSECUTOR, J INGRAM & J JUHASZ <br> Amount Owed: $2.00 <br> Paid Before Conversion: $0.00 <br> Receipt Number:  Receipt: 123746  Date: 04/29/2008  Receipt: 128021  Date: 06/30/2008 | $2.00 | |
| 05/22/2003 | POSTAGE <br> Amount Owed: $1.11 <br> Paid Before Conversion: $0.00 <br> Receipt Number:  Receipt: 123746  Date: 04/29/2008 | $1.11 | |
| 05/22/2003 | 1004/867 ORDERED THAT JURORS MARGARET KAY & TERRY GRAY ARE NOT TO REPORT TO PLACES OF EMPLOYMENT DURING DURATION OF JURY SERVICE IN THIS CASE 06-30-03 COPIES TO J GERALD INGRAM, JOHN JUHASZ & PROS <br> Amount Owed: $2.00 <br> Paid Before Conversion: $0.00 <br> Receipt Number:  Receipt: 128021  Date: 06/30/2008 | $2.00 | |
| 05/27/2003 | DEFENDANT'S MOTION FOR JUDGEMENT OF ACQUITTAL FILED BY THE DEFENDANT'S ATTOENRY J. INGRAM AND ATTORNEY JOHN JUHASZ | $0.00 | |
| 05/27/2003 | DEFENDANT'S PROPSED INSTRUCTION TO TRIAL JURY FILED BY THE DEFENDANT'S ATTORNEY JERRY INGRAM AND ATTORNEY JOHN JUHASZ | $0.00 | |
| 05/27/2003 | CHARGE IF THE COURT FILED BY THE DEFENDANT'S ATTORNEY JERRY INGRAM AND ATTORNEY JOHN JUHASZ | $0.00 | |
| 05/29/2003 | 1002/761 VERDICT FOR PLAINTIFF - COUNT ONE - COMPLICITY TO AGGRAVATED MURDER (PRIOR CALCULATION AND DESIGN) <br> Amount Owed: $2.00 <br> Paid Before Conversion: $0.00 <br> Receipt Number:  Receipt: 128021  Date: 06/30/2008 | $2.00 | |
| 05/29/2003 | 1002/762 VERDICT FOR PLAINTIFF COUNT ONE - VERDICT ON SPECIFICATION ONE <br> Amount Owed: $2.00 <br> Paid Before Conversion: $0.00 <br> Receipt Number:  Receipt: 128021  Date: 06/30/2008 | $2.00 | |
| 05/29/2003 | 1002/763 VERDICT FOR PLAINTIFF  COUNT ONE - VERDICT ON SPECIFICATION TWO <br> Amount Owed: $2.00 <br> Paid Before Conversion: $0.00 <br> Receipt Number:  Receipt: 128021  Date: 06/30/2008 | $2.00 | |
| 05/29/2003 | 1002/764 VERDICT FOR PLAINTIFF COUNT TWO - COMPLICITY TO AGGRAVATED MURDER (FELONY MURDER) <br> Amount Owed: $2.00 <br> Paid Before Conversion: $0.00 <br> Receipt Number:  Receipt: 128021  Date: 06/30/2008 | $2.00 | |
| 05/29/2003 | 1002/765 VERDICT FOR PLAINTIFF COUNT TWO VERDICT ON SPECIFICATION ONE <br> Amount Owed: $2.00 <br> Paid Before Conversion: $0.00 <br> Receipt Number:  Receipt: 128021  Date: 06/30/2008 | $2.00 | |
| 05/29/2003 | 1002/766 VERDICT FOR PLAINTIFF COUNT TWO - VERDICT ON SPECIFICATION TWO <br> Amount Owed: $2.00 <br> Paid Before Conversion: $0.00 <br> Receipt Number:  Receipt: 128021  Date: 06/30/2008 | $2.00 | |
| 05/29/2003 | 1002/767 VERDICT FOR PLAINTIFF COUNT THREE COMPLICITY TO AGGRAVATED BURGLARY <br> Amount Owed: $2.00 <br> Paid Before Conversion: $0.00 <br> Receipt Number:  Receipt: 128021  Date: 06/30/2008 | $2.00 | |
| 05/29/2003 | 1002/768 VERDICT FOR PLAINTIFF COUNT THREE - VERDICT ON FIREARM SPECIFICATION <br> Amount Owed: $2.00 <br> Paid Before Conversion: $0.00 <br> Receipt Number:  Receipt: 128021  Date: 06/30/2008 | $2.00 | |
| 05/29/2003 | 1002/769 VERDICT FOR PLAINTIFF COUNT 4 COMPLICITY TO AGGRAVATED ROBBERY <br> Amount Owed: $2.00 <br> Paid Before Conversion: $0.00 <br> Receipt Number:  Receipt: 128021  Date: 06/30/2008 | $2.00 | |

| Date | Docket Text | Amount Owed | Image Avail. |
|---|---|---|---|
| 05/29/2003 | 1002/770 VERDICT FOR PLAINTIFF COUNT FOUR - VERDICT ON FIREARM SPECIFICATION<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 128021  Date: 06/30/2008 | $2.00 | |
| 06/03/2003 | MOTION TO MERGE DEATH SPECIFICATIONS FILED BY THE DEFENDANT'S ATTORNEY | $0.00 | |
| 06/03/2003 | MOTION TO PROHIBIT READMISSION OF CERTAIN EXHIBITS FROM THE FIRST TRIAL PHASE FILED BY THE DEFENDANT'S ATTORNEY'S ATTORNEY JERRY INGRAM AND ATTORENY JOHN JUHASZ | $0.00 | |
| 06/03/2003 | MOTION TO PROHIBIT REFERENCE TO THE NATURE AND CIRCUMSTANCES OF THE OFFENSES AT CERTAIN TIMES FILED BY THE DEFENDANT'S ATTONREY | $0.00 | |
| 06/03/2003 | MOTION TO PROHIBIT REFERENCE TO THE NATURE AND CIRCUMSTANCES OF THE OFFENSES AT CERTIN TIMES FILED BY THE DEFENDANT'S ATTORNEY | $0.00 | |
| 06/03/2003 | MOTION TO PROHIBIT IMPROPER COMMENT BY PROSECUTOR ON DEFENDANT'S UNSWORN STATEMENT FILED BY THE DEFENDANT'S ATTORNEY | $0.00 | |
| 06/03/2003 | PROPOSED INSTRUCTION TO JURY FILED BY THE DEFENDANT'S ATTORNEY | $0.00 | |
| 06/05/2003 | 1003/391 JURY FINDING AND RECOMMENDATION OF DEATH SENTENCE. COUNT ONE SPECIFICATION ONE: AGGRAVATED BURGLARY<br>Amount Owed: $4.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 128021  Date: 06/30/2008 | $4.00 | |
| 06/05/2003 | 1003/393 JURY FINDING AND RECOMMENDATION OF DEATH SENTENCE. COUNT ONE SPECIFICATION TWO: AGGRAVATED ROBBERY<br>Amount Owed: $4.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 128021  Date: 06/30/2008 | $4.00 | |
| 06/13/2003 | SENTENCING HEARING 06/20/2003  01:30 PM<br>BEFORE:HON. JOHN M. STUARD LOC:COURT 2 | $0.00 | |
| 06/16/2003 | 1003/911 THE COURT FINDS THAT THERE IS NO AUTHORITY TO ORDER A PRE-SENTENCE INVESTIGATION AND REPORTS, AS WAS ORDERED BY THE COURT ON 6/4/03. AS SUCH A REPORT MAY BE PREPARED ONLY AT THE REQUEST OF THE DEFT AND AS THE DEFT HAS NOT MADE SUCH A REQUEST,THE DIRECTIVE THAT SUCH A REPORT BE PREPARED IS RESCINDED<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 128021  Date: 06/30/2008 | $2.00 | |
| 06/20/2003 | 1004/263 JURORS EXCUSED WITHOUT OBJECTION BY COUNSEL. SEE J/E<br>Amount Owed: $16.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 128021  Date: 06/30/2008 | $16.00 | |
| 06/20/2003 | 1004/271 JURORS EXCUSED FOR CAUSE DURING THE TRIAL. SEE J/E<br>Amount Owed: $8.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 128021  Date: 06/30/2008 | $8.00 | |
| 06/20/2003 | 1004/275 OPINION OF THE COURT IMPOSING DEATH SENTENCE AND FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING IMPOSITION OF DEATH SENTENCE. SEE J/E<br>Amount Owed: $34.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 128021  Date: 06/30/2008 | $34.00 | |
| 06/23/2003 | POST SENTENCING RIGHTS FILED BY PROSECUTOR'S OFFICE | $0.00 | |
| 06/24/2003 | COMPLETE RECORD<br>Amount Owed: $20.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 128021  Date: 06/30/2008 | $20.00 | |
| 06/24/2003 | STENOGRAPHER FEE<br>Amount Owed: $25.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 128021  Date: 06/30/2008 | $25.00 | |
| 06/24/2003 | WARRANT TO CONVEY TO OHIO REFORMATORY FOR WOMEN ISSUED TO SHERIFF ON 6-24-03 | $0.00 | |

DONNA ROBERTS v WARDEN<br>CASE NO. 4:21-cv-00368-DAP<br>APPENDIX – PAGE 2342

| Date | Docket Text | Amount Owed | Image Avail. |
|------|-------------|-------------|--------------|
| 06/24/2003 | 1004/449 SENTENCING: 6/4/03 DEFT IS SENTENCED TO DEATH ON 1/11/04 ON COUNT ONE. DEFT SENTENCED TO THE OHIO REFORMATORY FOR WOMEN AT MARYSVILLE OHIO FOR 10 YEARS ON COUNT 3 PLUS A MANDATORY TERM OF 3 YEARS ON THE FIREARM SPECIFICATION TO BE SERVED PRIOR TO AND CONSECUTIVE TO THE SENTENCE IMPOSED IN COUNT 3; 10 YEARS ON COUNT 4 PLUS A MANDATORY TERM OF 3 YEARS ON THE FIREARM SPECIFICATION TO BE SERVED PRIOR TO AND CONSECUTIVE TO THE SENTENCE IMPOSED IN COUNT 4, SENTENCE IN COUNT 4 TO BE SERVED CONSECUTIVELY TO THE SENTENCE IMPOSED IN COUNT THREE. FIREARM SPECIFICATIONS IN COUNT THREE AND COUNT FOUR SHALL MERGE AS ONE SENTENCE IN COUNT THREE AS A MATTER OF LAW. DEFT TO PAY COSTS. 6/24/03 COPIES SENT TO: PROSECUTOR, J INGRAM & J JUHASZ Amount Owed: $8.00 Paid Before Conversion: $0.00 Receipt Number:  Receipt: 128021  Date: 06/30/2008 | $8.00 | |
| 06/24/2003 | POSTAGE Amount Owed: $1.11 Paid Before Conversion: $0.00 Receipt Number:  Receipt: 123746  Date: 04/29/2008 | $1.11 | |
| 06/25/2003 | 1004/453 WRIT TO CONVEY PRISONER FOR EXECUTION OF PENALTY Amount Owed: $2.00 Paid Before Conversion: $0.00 Receipt Number:  Receipt: 128021  Date: 06/30/2008 | $2.00 | |
| 06/25/2003 | EXECUTION OF COSTS RETURNED ENDORSED BY SHERIFF Amount Owed: $5.00 Paid Before Conversion: $0.00 Receipt Number:  Receipt: 128021  Date: 06/30/2008 | $5.00 | |
| 06/30/2003 | WARRANT RETURNED SHOWING SERVICE ON DEFENDANT DONNA ROBERTS SHERIFF ALTIERE Amount Owed: $82.30 Paid Before Conversion: $0.00 Receipt Number:  Receipt: 128021  Date: 06/30/2008 | $82.30 | |
| 07/23/2003 | NOTICE OF COMMITTMENT AND CALCULATION OF SENTENCE FILED BY OHIO DEPT. OF REHABILITATION/CORRECTION | $0.00 | |
| 08/05/2003 | 1008/468 THE STATE OF OHIO PUBLIC DEFENDER'S OFFICE IS APPOINTED AS COUNSEL FOR THE DEFT IN HER APPEAL OF THIS MATTER. 8/6/03 COPIES SENT TO: PROSECUTOR, J INGRAM & J YUHASZ Amount Owed: $2.00 Paid Before Conversion: $0.00 Receipt Number:  Receipt: 128021  Date: 06/30/2008 | $2.00 | |
| 08/06/2003 | POSTAGE Amount Owed: $1.11 Paid Before Conversion: $0.00 Receipt Number:  Receipt: 123746  Date: 04/29/2008 | $1.11 | |
| 08/18/2003 | ORDER TO FILE RECORD WITH SUPREME COURT BY 10/14/03 Amount Owed: $2.00 Paid Before Conversion: $0.00 Receipt Number:  Receipt: 128021  Date: 06/30/2008 | $2.00 | |
| 12/05/2003 | PETITIONER DONNA ROBERT'S MOTION FOR APPOINTMENT OF COUNSEL FILED BY THE DEFENDANT ALSO MEMORANDUM IN SUPPORT OF PETITIONER DONNA ROBERT'S MOTION FOR APPOINTMENT OF COUNSEL FILED BY THE DEFENDANT DONNA MARIE ROBERTS. | $0.00 | |
| 01/20/2004 | APPELLANTS NOTICE OF APPEAL FOR DELAYED APPEAL IN THE SUPREME COURT OF OHIO FILED. | $0.00 | |
| 01/29/2004 | RECORD TRANSMITTED TO THE SUPREME COURT INCLUDING ORIGINAL PAPERS,TRANSCRIPTS (28 VOLUMES), AND EXHIBITS WITH INDEX BY PERSONAL DELIVERY FROM THE TRUMBULL COUNTY SHERIFFS DEPARTMENT.COPIES OF INDEX SENT TO COUNSEL OF RECORD. Amount Owed: $1.00 Paid Before Conversion: $0.00 Receipt Number:  Receipt: 123746  Date: 04/29/2008 | $1.00 | |
| 02/02/2004 | COPY OF EXHIBIT OF RECORD OF DEATH PENALTY CASE FROM THE SUPREME COURT OF OHIO | $0.00 | |
| 02/13/2004 | HEARING 03/12/2004  01:00 PM BEFORE:HON. JOHN M. STUARD LOC:COURT 2 | $0.00 | |
| 02/27/2004 | MOTION FOR WARRANT FOR REMOVAL FILED BY PROSECUTOR'S OFFICE | $0.00 | |

| Date | Docket Text | Amount Owed | Image Avail. |
|------|-------------|-------------|--------------|
| 02/27/2004 | ONE CERTIFIED COPY OF WARRANT FOR REMOVAL AND COPY OF MOTION FOR WARRANT OF REMOVAL AND WARRANT TO CONVEY TO TRUMBULL COUNTY JAIL ISSUED TO THE SHERIFF ON 2-27-04 | $0.00 | |
| 02/27/2004 | 1024/551 ORDER ON WARRANT TO CONVEY<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number: Receipt: 128021  Date: 06/30/2008 | $2.00 | |
| 03/15/2004 | WARRANT RETURNED SHOWING SERVICE ON DEFENDANT SHERIFF ALTIERE<br>Amount Owed: $240.50<br>Paid Before Conversion: $0.00<br>Receipt Number: Receipt: 132122  Date: 08/25/2008 | $240.50 | |
| 03/23/2004 | 1026/435 THE COURT FINDS THAT THERE IS A CONFLICT OF INTEREST WITH THE PUBLIC DEFENDERS OFFICE. ATTYS DAVID DOUGHTEN AND PATTY SMITH APPOINTED AS COUNSEL FOR DEFT IN HER APPEAL. THE ADDRESS FOR ATTYS IS 4403 ST CLAIR AVE, CLEVELAND OH 44103 (216)361-1112<br>3/23/04 COPIES SENT TO: K CULSHAW, R TROUTMAN, J WILHELM, D WATKINS, C BECKER, K BAILEY & L ANNOS. CC TO THE OHIO SUPREME COURT<br>Amount Owed: $4.00<br>Paid Before Conversion: $0.00<br>Receipt Number: Receipt: 128021  Date: 06/30/2008 | $4.00 | |
| 03/23/2004 | POSTAGE<br>Amount Owed: $2.96<br>Paid Before Conversion: $0.00<br>Receipt Number: Receipt: 128021  Date: 06/30/2008 | $2.96 | |
| 04/14/2004 | 1028/385 ORDER APPOINTING COUNSEL FOR POST CONVICTION PETITION AND SETTING FEES.<br>4/14/04 COPIES SENT TO: J INGRAM, J JUHASZ, D BODIKER, J WILHELM, S BOLTON, D MARGURGER, A MILLETTE, D WATKINS, C BECKER, K BAILEY & L ANNOS<br>Amount Owed: $4.00<br>Paid Before Conversion: $0.00<br>Receipt Number: Receipt: 128021  Date: 06/30/2008 | $2.00 | |
| 04/14/2004 | POSTAGE<br>Amount Owed: $4.07<br>Paid Before Conversion: $0.00<br>Receipt Number: Receipt: 128021  Date: 06/30/2008 | $4.07 | |
| 07/22/2004 | MOTION FOR SUBSTITUTION OF COUNSEL FILED BY THE THE DEFENDANT'S ATTORNEY DAVID L DOUGHTEN AND ATTORNEY PATRICIA J SMITH | $0.00 | |
| 08/20/2004 | 1039/213 MOTION FOR SUBSTITUTION OF COUNSEL IS GRANTED<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number: Receipt: 128021  Date: 06/30/2008 | $2.00 | |
| 09/09/2004 | JOINT MOTION TO TOLL FILING DATE OF POST CONVICTION PETITION FILED BY ATTY LUWAYNE ANNOS | $0.00 | |
| 09/09/2004 | 1040/696 PURSUANT TO A JOINT MOTION FILED BY COUNSEL FOR DEFT DONNA ROBERTS AND COUNSEL FOR THE STATE OF OHIO, THIS COURT IN THE INTEREST OF JUSTICE WILL CONSTRUE DEFTS POSTCONVICTION PETITION TIMELY FILED IF IT IS TIME-STAMPED BY THE CLERK OF COURTS ON OR BEFORE 9/25/04.<br>9/9/04 COPIES SENT TO: PROSECUTOR, J INGRAM, J YUHASZ, D BODIKER, J WILHELM & D DOUGHTEN<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number: Receipt: 128021  Date: 06/30/2008 | $2.00 | |
| 09/09/2004 | POSTAGE<br>Amount Owed: $2.22<br>Paid Before Conversion: $0.00<br>Receipt Number: Receipt: 128021  Date: 06/30/2008 | $2.22 | |
| 09/24/2004 | PETITION TO VACATE OR SET ASIDE SENTENCE FILED BY ATTORNEY DAVID DOUGHTEN COUNSEL FOR PETITIONER ALSO EXHIBIT B FILED  NATHANIEL JACKSON'S VIDEO STATEMENT FILED.SERVED A COPY OF PETITION TO THE TRUMBULL COUNTY PROSECUTORS OFFICE ON THIS DATE. | $0.00 | |
| 10/01/2004 | MOTION TO EXTEND TIME  TO RESPONSE FILED BY THE PROSECUTOR'S OFFICE | $0.00 | |

DONNA ROBERTS v WARDEN<br>CASE NO. 4:21-cv-00368-DAP<br>APPENDIX – PAGE 2344

| Date | Docket Text | Amount Owed | Image Avail. |
|---|---|---|---|
| 10/07/2004 | 1042/898 PURSUANT TO A JOINT MOTION FILED BY COUNSEL FOR DEFT DONNA ROBERTS AND COUNSEL FOR THE STATE OF OHIO, THIS COURT, IN THE INTEREST OF JUSTICE, WILL CONSTRUE DEFTS POSTCONVICTION PETITION TIMELY FILED IF IT IS TIME-STAMPED BY THE CLERK OF COURTS ON OR BEFORE 9/25/04.<br>10/7/04 COPIES SENT TO: PROSECUTOR, J INGRAM, J YUHASZ, D BODIKER, J WILHELM & D DOUGHTEN<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 128021  Date: 06/30/2008 | $2.00 | |
| 10/07/2004 | 1042/899 PURSUANT TO A MOTION BY THE PLAINTIFF-RESPONDENT, THE STATE OF OHIO, AND R.C. 2953.21 (D), THIS COURT FIXES THE DUE DATE FOR THE STATE'S RESPONSE BY ANSWER OR MOTION AT 11/3/04. THE STATE, PER MOTION, HAS SHOWN GOOD CAUSE TO EXTEND THE DUE DATE FROM 10/4/04 TO 11/3/04.<br>10/7/04 COPIES SENT TO: PROSECUTOR & D DOUGHTEN<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 128021  Date: 06/30/2008 | $2.00 | |
| 10/25/2004 | FIRST AMENDED PETITION TO VACATE OR SET ASIDE SENTENCE WITH SERVICE FILED BY ATTY DAVID DOUGHTEN | $0.00 | |
| 11/02/2004 | MOTION FOR SUMMARY JUDGMENT WITH SERVICE FILED BY ATTY LUWAYNE ANNOS | $0.00 | |
| 11/03/2004 | COPY OF MERIT BRIEF OF PLTF/APPLEE OF STATE OF OHIO FILED BY PROSECUTOR | $0.00 | |
| 12/01/2004 | PETITIONER'S MOTION TO TRANSFER THE RECORD OF NATHANIEL JACKSON TO THE CAUSE OF ACTION FILED BY THE DEFENDANT'S ATTORNEY DAVID L DOUGHTEN | $0.00 | |
| 12/01/2004 | PETITIONER'S MOTION IN OPPOSITION TO STATE'S MOTION FOR SUMMARY JUDGMENT FILED BY THE DEFENDANT'S ATTORNEY DAVID DOUGHTEN | $0.00 | |
| 12/01/2004 | MOTION FOR LEAVE OF COURT TO CONDUCT DISCOVERY FILED BY THE DEFENDANT'S ATTORNEY DAVID DOUGHTEN | $0.00 | |
| 01/24/2005 | FILE SIGNED OUT TO JUDGE STUARD ON 1-25-05 | $0.00 | |
| 02/11/2005 | 1052/303 FINDINGS OF FACT AND CONCLUSIONS OF LAW DISMISSING PETITIONERS ORIGINAL AND FIRST AMENDED PETITION FOR POST CONVICTION RELIEF<br>Amount Owed: $28.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 128021  Date: 06/30/2008 | $28.00 | |
| 02/11/2005 | 1052/709 DEFENDANT-PETITIONER DONNA ROBERTS' MOTION FOR LEAVE OF COURT TO CONDUCT DISCOVERY FILED DECEMBER 1, 2004 IS OVERRULED AS MOOT. MOTION TO TRANSFER THE RECORD OF NATHANIEL JACKSON TO THIS CAUSE OF ACTION IS ALSO DENIED AS MOOT.<br>2/14/05 COPIES SENT TO: J INGRAM, J JUHASZ, D BOKER, J WILHELM, D DOUGHTEN, S BOLTEN, D MARBURGER, A MILLETTE, A WATKINS, C BECKER, D BODIKER, K BAILEY, L ANNOS<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 128021  Date: 06/30/2008 | $2.00 | |
| 02/14/2005 | POSTAGE<br>Amount Owed: $4.81<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 128021  Date: 06/30/2008 | $4.81 | |
| 02/23/2005 | 1053/026 ORDER FOR CLERK OF COURTS TO IMMEDIATELY SERVE A COPY OF THIS COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW FILED FEBRUARY 11, 2005 UPON ATTY DAVID DOUGHTEN COUNSEL FOR DEFENDANT-PETITIONER DONNA ROBERTS AND UPON TRUMBULL COUNTY PROSECUTOR'S OFFICE COUNSEL FOR PLAINTIFF RESPONDENT. 2/24/05 COPIES SENT: ATTY D DOUGHTEN, PROSECUTOR<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 128021  Date: 06/30/2008 | $2.00 | |
| 03/01/2005 | MOTION FOR APPOINTMENT OF APPELLATE COUNSEL WITH SERVICE FILED BY ATTY DAVID DOUGHTEN | $0.00 | |
| 03/17/2005 | MOTION FOR LEAVE TO FILE DELAYED APPEAL AND NOTICE OF APPEAL TO THE 11TH APPELLATE COURT FILED BY ATTY D  DOUGHTEN | $0.00 | |
| 03/30/2005 | 1056/564 APPROVAL OF PAYMENT OF COUNSEL FEES CC: AUDITOR<br>Amount Owed: $12.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 128021  Date: 06/30/2008 | $12.00 | |
| 09/13/2006 | NOTICE FILE REQUESTED BY JUDGE STUARD FROM CLERK'S OFFICE | $0.00 | |

| Date | Docket Text | Amount Owed | Image Avail. |
|---|---|---|---|
| 10/10/2006 | ORDER FROM SUPREME COURT OF OHIO.  JUDGMENT OF THE COURT OF COMMON PLEAS IS AFFIRMED IN PART, VACATED IN PART AND THIS CAUSE IS REMANDED TO THE TRIAL COURT CONSISTENT WITH THE OPINION RENDERED HEREON.   SEE JE | $0.00 | |
| 10/10/2006 | ORDERED BY THE SUPREME COURT OF OHIO THAT THE MOTION FOR RECONSIDERATION IN THIS CASE IS DENIED | $0.00 | |
| 11/01/2006 | HEARING SET:<br>Event: STATUS HEARING<br>Date: 12/06/2006  Time: 9:00 am<br>Judge: STUARD, JOHN M  Location: COURTROOM 2<br><br>Result: TO BE RESET | | |
| 11/01/2006 | NOTICE SENT:<br><br>SPEEDY MAILER<br>Sent on:  11/01/2006  10:10:21 | | |
| 12/04/2006 | MOTION FOR APPOINTMENT OF CO-COUNSEL WITH SERVICE FILED BY ATTY DAVID DOUGHTEN | $0.00 | |
| 12/04/2006 | MOTION FOR APPROPRIATION OF FUNDS FOR EXPERT ASSISTANCE WITH SERVICE FILED BY ATTY DAVID DOUGHTEN | $0.00 | |
| 12/04/2006 | MOTION FOR RELEASE OF RECORDS WITH SERVICE FILED BY ATTY DAVID DOUGHTEN | $0.00 | |
| 12/06/2006 | HEARING SET:<br><br>The following event: STATUS HEARING scheduled for 12/06/2006 at 9:00 am has been rescheduled as follows:<br><br>Event: STATUS HEARING<br>Date: 01/17/2007  Time: 3:00 pm<br>Judge: STUARD, JOHN M  Location: COURTROOM 2<br><br>Result: TO BE RESET | | |
| 12/06/2006 | NOTICE SENT:<br><br>SPEEDY MAILER<br>Sent on:  12/06/2006  12:31:39 | | |
| 12/08/2006 | MOTION FOR APPOINTMENT OF CO-COUNSEL IS GRANTED | $0.00 | |
| 01/17/2007 | ORDERED THAT ROBERT A DIXON BE APPOINTED AS CO COUNSEL  Receipt: 128021  Date: 06/30/2008 | $2.00 | |
| 01/17/2007 | ORDER DIRECTIVING EVALUATION OF DEFENDANT'S COMPETENCE TO STAND TRIAL 1-23-97 COPIES TO  J. INGRAM, J. WILHELM, D DOUGHTON, R. DIXON, D. BODIKER, J JUHASZ AND PROS  Receipt: 128021  Date: 06/30/2008 | $2.00 | |
| 01/17/2007 | ORDER FOR FORENSIC EXAM 1-23-07 COPIES TO J. INGRAM, J. WILHELM, D. DOUGTEN, R. DIXON, D BODIKER, J JUHASZ AND PROS  Receipt: 128021  Date: 06/30/2008 | $2.00 | |
| 01/23/2007 | HEARING SET:<br><br>The following event: STATUS HEARING scheduled for 01/17/2007 at 3:00 pm has been rescheduled as follows:<br><br>Event: STATUS HEARING<br>Date: 02/14/2007  Time: 3:30 pm<br>Judge: STUARD, JOHN M  Location: COURTROOM 2<br><br>Result: TO BE RESET | | |
| 01/23/2007 | NOTICE SENT:<br><br>SPEEDY MAILER<br>Sent on:  01/23/2007  14:22:06 | | |
| 01/25/2007 | MOTION FOR APPROPRIATION OF FUNDS FOR LEAD COUNSEL WITH SERVICE FILED BY ATTY DAVID DOUGHTEN | $0.00 | |
| 01/29/2007 | POSTAGE  Receipt: 128021  Date: 06/30/2008 | $2.73 | |
| 01/29/2007 | POSTAGE  Receipt: 128021  Date: 06/30/2008 | $2.73 | |
| 02/01/2007 | REGULAR MAIL SENT TO:ROBERTA A DIXON<br>RETURNED BY POST OFFICE  FOR: ATTEMPTED NOT KNOWN<br>Receipt: 123746  Date: 04/29/2008 | $0.20 | |

DONNA ROBERTS v WARDEN<br>CASE NO. 4:21-cv-00368-DAP<br>APPENDIX – PAGE 2346

Case Details - CourtView Justice Solutions

| Date | Docket Text | Amount Owed | Image Avail. |
|------|-------------|-------------|--------------|
| 02/05/2007 | ORDER FOR DAVID DOUGHTEN TO BE APPOINTED LEAD COUNSEL.  2-8-07  COPIES SENT TO D DOUGHTEN, J INGRAM, J WILHELM, R DIXON, D BODIKER, J JUHASZ AND PROS  Receipt: 128021  Date: 06/30/2008 | $2.00 | |
| 02/08/2007 | POSTAGE  Receipt: 128021  Date: 06/30/2008 | $2.73 | |
| 02/26/2007 | HEARING SET:<br><br>The following event: STATUS HEARING scheduled for 02/14/2007 at 3:30 pm has been rescheduled as follows:<br><br>Event: STATUS HEARING<br>Date: 03/09/2007   Time: 2:00 pm<br>Judge: STUARD, JOHN M   Location: COURTROOM 2<br><br>Result: SET STATUS CONFERENCE | | |
| 02/26/2007 | NOTICE SENT:<br><br>SPEEDY MAILER<br>Sent on: 02/26/2007  11:04:16 | | |
| 03/09/2007 | HEARING SET:<br><br>The following event: STATUS HEARING scheduled for 03/09/2007 at 2:00 pm has been rescheduled as follows:<br><br>Event: STATUS HEARING<br>Date: 05/11/2007   Time: 2:00 pm<br>Judge: STUARD, JOHN M   Location: COURTROOM 2<br><br>Result: TO BE RESET | | |
| 03/09/2007 | NOTICE SENT:<br><br>SPEEDY MAILER<br>Sent on: 03/09/2007  15:21:27 | | |
| 04/24/2007 | RECEIPT FROM THE SUPREME COURT OF OHIO.  ALL ORIGINAL PAPERS (3 BOXES) WERE RETURNED TO THE TRUMBULL COUNTY CLERK OF COURTS | $0.00 | |
| 05/01/2007 | MOTION TO ALLOW FULL PRESENTATION OF MITIGATION AT SENTENCING REHEARING WITH SERVICE FILED BY ATTY DAVID DOUGHTEN | $0.00 | |
| 05/01/2007 | MOTION TO CONTINUE WITH SERVICE FILED BY ATTY DAVID DOUGHTEN | $0.00 | |
| 05/25/2007 | HEARING SET:<br><br>The following event: STATUS HEARING scheduled for 05/11/2007 at 2:00 pm has been rescheduled as follows:<br><br>Event: STATUS HEARING<br>Date: 06/29/2007   Time: 10:30 am<br>Judge: STUARD, JOHN M   Location: COURTROOM 2<br><br>Result: SET SENTENCING | | |
| 05/25/2007 | NOTICE SENT:<br><br>SPEEDY MAILER<br>Sent on: 05/25/2007  14:49:56 | | |
| 06/28/2007 | STATES MEMORANDUM IN OPPOSITION TO DEFTS MOTION TO ALLOW FULL PRESENTATION OF MITIGATION AT SENTENCING  HEARING AND MEMORANDUM IN OPPOSITION WITH SERVICE FILED BY PROSECUTOR | $0.00 | |
| 06/29/2007 | HEARING SET:<br>Event: RE-SENTENCING HEARING<br>Date: 08/15/2007   Time: 3:00 pm<br>Judge: STUARD, JOHN M   Location: COURTROOM 2<br><br>Result: TO BE RESET | | |
| 06/29/2007 | NOTICE SENT:<br><br>SPEEDY MAILER<br>Sent on: 06/29/2007  11:14:40 | | |
| 07/13/2007 | WARRANT FOR REMOVAL.  Receipt: 128021  Date: 06/30/2008 | $2.00 | |
| 07/13/2007 | MOTION FOR WARRANT REMOVAL FILED BY PROSECUTOR'S OFFICE | $0.00 | |

10/20/21, 11:18 AM                            Case Details - CourtView Justice Solutions

| Date | Docket Text | Amount Owed | Image Avail. |
|---|---|---|---|
| 07/13/2007 | WARRANT ISSUED TO SHERIFF ON 7-13-07 | $0.00 | |
| 08/02/2007 | MOTION TO CONTINUE SENTENCING HEARING WITH SERVICE FILED BY ATTY DAVID DOUGHTEN | $0.00 | |
| 08/02/2007 | MOTION FOR VOLUNTARY RECUSAL OF TRIAL JUDGE, TO ASSIGN CASE TO VISITING JUDGE AND TO HOLD CASE IN ABEYANCE WITH SERVICE FILED BY ATTY DAVID DOUGHTEN | $0.00 | |
| 08/07/2007 | XXX COSTS SENT TO CORRECTIONAL FACILITY FOR INMATE PAYMENT OF COSTS | $0.00 | |
| 08/15/2007 | WARRANT RETURNED SHOWING SERVICE ON DEFENDANT  Receipt: 132122  Date: 08/25/2008 | $240.50 | |
| 08/17/2007 | HEARING SET:<br><br>The following event: RE-SENTENCING HEARING scheduled for 08/15/2007 at 3:00 pm has been rescheduled as follows:<br><br>Event: RE-SENTENCING HEARING<br>Date: 09/21/2007   Time: 2:30 pm<br>Judge: STUARD, JOHN M   Location: COURTROOM 2<br><br>Result: TO BE RESET | | |
| 08/17/2007 | NOTICE SENT:<br><br>SPEEDY MAILER<br>Sent on:  08/17/2007  14:44:40 | | |
| 08/17/2007 | HEARING SET:<br>Event: HEARING<br>Date: 09/20/2007   Time: 2:30 pm<br>Judge: STUARD, JOHN M   Location: COURTROOM 2<br><br>Result: TO BE RESET | | |
| 08/17/2007 | NOTICE SENT:<br><br>SPEEDY MAILER<br>Sent on:  08/17/2007  14:49:21 | | |
| 08/27/2007 | MOTION FOR WARRANT REMOVAL FILED BY PROSECUTOR'S OFFICE | $0.00 | |
| 08/27/2007 | WARRANT TO CONVEY TO TRUMBULL COUNTY JAIL  ISSUED TO SHERIFF ON 8-28-07 | $0.00 | |
| 08/27/2007 | WARRANT FOR REMOVAL.<br>8-28-07 ISSUED TO SHERIFF  Receipt: 123746  Date: 04/29/2008 | $2.00 | Image |
| 09/05/2007 | ORDER FOR CONTINUANCE OF TRIAL IS GRANTED TO ALLOW THE COMPETENCY EXAM TO BE CONDUCTED. SENTENCING DATE WILL BE SET AT COMPLETION OF COMPETENCY PROCEEDINGS.  Receipt: 128021  Date: 06/30/2008 | $2.00 | Image |
| 09/11/2007 | MOTION FOR APPROPRIATION OF FUNDS FOR EXPERT ASSISTANCE WITH SERVICE FILED BY DAVID L DOUGHTEN (Attorney) on behalf of DONNA MARIE ROBERTS (DEFENDANT) | $0.00 | |
| 09/14/2007 | DEFENDANTS MOTION TO ALLOW FULL PRESENTATION OF MITIGATION AT SENTENCING HEARING IS DENIED.<br>9-14-07 COPIES TO: PROS, J. INGRAM, D. DOUGHTEN  Receipt: 128021  Date: 06/30/2008 | $2.00 | Image |
| 09/14/2007 | POSTAGE  Receipt: 123746  Date: 04/29/2008 | $0.82 | |
| 09/18/2007 | MOTION TO PROFFER EVIDENCE FILED BY THE  DEFENDANT WITH PROOF OF SERVICE ALSO MEMORANDUM IN SUPPORT FILED BY THE DEFENDANT'S ATTORNEY WITH PROOF OF SERVICE DAVID L DOUGHTEN (Attorney) on behalf of DONNA MARIE ROBERTS (DEFENDANT) | $0.00 | |
| 09/18/2007 | MOTION TO PROFFER EVIDENCE APPENDIX PRISON RECORDS ALONG WITH EXHIBITS FILED BY THE DEFENDANT'S ATTORNEY  FILED BY DAVID L DOUGHTEN (Attorney) on behalf of DONNA MARIE ROBERTS (DEFENDANT) | $0.00 | |
| 09/19/2007 | WARRANT RETURNED SHOWING SERVICE ON DEFENDANT  Receipt: 128021  Date: 06/30/2008  Receipt: 132122  Date: 08/25/2008 | $230.50 | |
| 09/20/2007 | MOTION TO PROFFER EVIDENCE WITH SERVICE FILED BY DAVID L DOUGHTEN (Attorney) on behalf of DONNA MARIE ROBERTS (DEFENDANT) | $0.00 | |
| 09/20/2007 | MOTION FOR APPOINTMENT OF INDEPENDENT EXPERT AND FOR CONTINUANCE WITH SERVICE FILED BY DAVID L DOUGHTEN (Attorney) on behalf of DONNA MARIE ROBERTS (DEFENDANT) | $0.00 | |

| Date | Docket Text | Amount Owed | Image Avail. |
|------|-------------|-------------|--------------|
| 09/21/2007 | HEARING SET:<br><br>The following event: HEARING scheduled for 09/20/2007 at 2:30 pm has been rescheduled as follows:<br><br>Event: HEARING<br>Date: 10/22/2007   Time: 1:00 pm<br>Judge: STUARD, JOHN M   Location: COURTROOM 2<br><br>Result: COMPLETED | | |
| 09/21/2007 | NOTICE SENT:<br><br>SPEEDY MAILER<br>Sent on:  09/21/2007 13:24:22 | | |
| 09/21/2007 | HEARING SET:<br><br>The following event: RE-SENTENCING HEARING scheduled for 09/21/2007 at 2:30 pm has been rescheduled as follows:<br><br>Event: RE-SENTENCING HEARING<br>Date: 10/29/2007   Time: 1:00 pm<br>Judge: STUARD, JOHN M   Location: COURTROOM 2<br><br>Result: SENTENCED | | |
| 09/21/2007 | NOTICE SENT:<br><br>SPEEDY MAILER<br>Sent on:  09/21/2007 13:59:03 | | |
| 10/02/2007 | MOTION FOR WARRANT REMOVAL FILED BY PROSECUTOR'S OFFICE | $0.00 | |
| 10/02/2007 | JOURNAL ENTRY/ WARRANT FOR REMOVAL.  Receipt: 128021  Date: 06/30/2008 | $2.00 | Image |
| 10/03/2007 | WARRANT TO CONVEY TO TRUMBULL COUNTY JAIL  ISSUED TO SHERIFF ON 10-3-07 | $0.00 | |
| 10/18/2007 | WARRANT RETURNED SHOWING SERVICE ON DEFENDANT  Receipt: 132122  Date: 08/25/2008 | $240.50 | |
| 10/22/2007 | MANDATE FROM COURT OF APPEALS. INSTANT APPEAL IS DISMISSED FOR LACK OF JURISDICTION.  Receipt: 128021  Date: 06/30/2008 | $2.00 | Image |
| 10/29/2007 | DEFT ROBERT'S SENTENCING MEMORANDUM WITH SERVICE FILED BY DAVID L DOUGHTEN (Attorney) on behalf of DONNA MARIE ROBERTS (DEFENDANT) | $0.00 | |
| 10/29/2007 | ORDERED THAT THE JURYS RECOMMENDATION IS ACCEPTED AND COURT DOES  FIND THAT THE SENTENCE OF DEATH IS THE APPROPRIATE PENALTY IN THIS CASE.<br>10-29-07 COPIES TO: PROS, D. DOUGTHEN  Receipt: 128021  Date: 06/30/2008 | $48.00 | Image |
| 10/29/2007 | POSTAGE  Receipt: 123746  Date: 04/29/2008 | $0.41 | |
| 11/06/2007 | EXECUTION FOR COSTS IN FELONY  ISSUED TO SHERIFF ON 11-6-07 | $0.00 | |
| 11/06/2007 | WARRANT TO CONVEY TO OHIO REFORMATORY FOR WOMEN  ISSUED TO SHERIFF ON 11-6-07 | $0.00 | |
| 11/06/2007 | EXECUTION OF COSTS RETURNED ENDORSED BY SHERIFF  Receipt: 128021  Date: 06/30/2008 | $5.00 | |
| 11/06/2007 | WRIT TO CONVEY PRISONER FOR EXECUTION OF PENALTY ON OCT. 28, 2008.<br>11-6-07 ISSUED TO SHERIFF  Receipt: 123746  Date: 04/29/2008 | $2.00 | Image |
| 11/06/2007 | SENTENCING: ON OCT. 29, 2007 DEFENDANT RE-SENTENCED TO DEATH ON OCT. 28, 2008 ON COUNT 1; AND IMPRISONED FOR 10 YEARS ON COUNT 3; PLUS MANDATORY TERM OF 3 YEARS OF FIREARM SPECIFICATION TO BE SERVED PRIOR TO AND CONSECUTIVE TO COUNT 3; 10 YEARS ON COUNT 4, PLUS MANDATORY 3 YEARS ON FIREARM SPECIFICATION TO BE SERVED PRIOR TO AND CONSECUTIVE TO SENTENCE IMPOSED IN COUNT 4, SENTENCE IN COUNT 4 TO BE SERVED CONSECUTIVELY TO SENTENCE IMPOSED ON COUNT 3. FIREARM SPECIFICATION IN COUNT 3 & 4 SHALL MERGE AS ONE SENTENCE IN COUNT 3.<br>11-6-07 COPIES TO: PROS, D. DOUGHTEN, BUREAU OF SENTENCE COMPUTATION  Receipt: 128021  Date: 06/30/2008 | $6.00 | Image |
| 11/06/2007 | POSTAGE  Receipt: 123746  Date: 04/29/2008 | $0.82 | |
| 11/07/2007 | WARRANT RETURNED SHOWING SERVICE ON DEFENDANT  Receipt: 132122  Date: 08/25/2008  Receipt: 132123  Date: 08/25/2008 | $240.50 | |
| 11/15/2007 | APPROVAL OF PAYMENT OF COUNSEL FEES FILED  Receipt: 128021  Date: 06/30/2008 | $6.00 | Image |
| 12/03/2007 | MOTION TO APPOINT APPELLATE COUNSEL WITH SERVICE FILED BY DAVID L DOUGHTEN (Attorney) on behalf of DONNA MARIE ROBERTS (DEFENDANT) | $0.00 | |

| Date | Docket Text | Amount Owed | Image Avail. |
|------|-------------|-------------|--------------|
| 12/14/2007 | ORDER TO CERTIFY RECORD IN DEATH PENALTY CASE BY 2-11-08 FILED BY THE SUPREME COURT OF OHIO | $0.00 | |
| 12/18/2007 | TRANSCRIPT OF PROCEEDINGS FILED BY MARY ANN MILLS COURT REPORTER | $0.00 | |
| 12/18/2007 | DEFTS EXHIBIT A, DEFTS EXHIBIT B AND STATES EXHIBIT 1 FILED BY MARY ANN MILLS COURT REPORTER | $0.00 | |
| 01/11/2008 | APPROVAL OF PAYMENT OF COUNSEL FEES FILED  Receipt: 128021  Date: 06/30/2008 | $8.00 | Image |
| 01/11/2008 | ORDERED THAT ATTY JEFFREY J HELMICK TO REPRESENT DEFENDANT FOR PURPOSES OF APPEAL.<br>1-11-08 COPIES TO: PROS, J. HELMICK  Receipt: 128021  Date: 06/30/2008 | $2.00 | Image |
| 01/11/2008 | POSTAGE  Receipt: 123746  Date: 04/29/2008 | $0.41 | |
| 02/07/2008 | INDEX PREPARED AND SENT TO ATTY'S. | $0.00 | |
| 02/12/2008 | RECEIPT FROM THE SUPREME COURT OF OHIO FOR FOUR BOXES WHICH INCLUDE THE CASE FILE, EXHIBITS AND TRANSCRIPTS OF THIS CASE | $0.00 | |
| 02/21/2008 | RECEIPT FROM SUPREME COURT OF OHIO FOR 6 BOXES OF EXHIBITS AND ONE POSTER | $0.00 | |
| 06/24/2008 | MOTION FOR APPOINTMENT OF COUNSEL FILED BY DAVID L DOUGHTEN (Attorney) on behalf of DONNA MARIE ROBERTS (DEFENDANT) | $0.00 | Image |
| 07/01/2008 | COUNTY FEES WITNESS FEES FOR CHRIS MONYAK, JAMES DANIEL AND SANTIAGO MASON  Receipt: 128057  Date: 07/01/2008 | $56.00 | |
| 07/09/2008 | MOTION FOR APPOINTMENT OF COUNSEL IS GRANTED.  Receipt: 132122  Date: 08/25/2008 | $4.00 | Image |
| 07/09/2008 | ATTY DAVID L DOUGHTEN IS REAPPOINTED AS COUNSEL FOR DEFENDANT.<br>7-10-08 COPIES TO: PROS, D. DOUGHTHEN  Receipt: 132122  Date: 08/25/2008 | $2.00 | Image |
| 07/09/2008 | POSTAGE  Receipt: 132122  Date: 08/25/2008 | $0.42 | |
| 08/20/2008 | APPENDIX TO DONNA ROBERTS FILED ALONG WITH EXHIBIT A FILED BY DAVID L DOUGHTEN | $0.00 | |
| 08/20/2008 | PETITION TO VACATE OR SET ASIDE SENTENCE FILED BY DAVID L DOUGHTEN | $0.00 | Image |
| 08/20/2008 | APPENDIX TO DONNA ROBERTS  ALONG WITH EXCHIBIT K FILED BY DAVID L DOUGHTEN | $0.00 | Image |
| 08/22/2008 | MOTION TO EXTEND TIME TO RESPOND FILED WITH PROOF OF SERVICE LUWAYNE ANNOS (Attorney) on behalf of STATE OF OHIO (PLAINTIFF) | $0.00 | Image |
| 08/26/2008 | COUNTY FEES *WITNESS FEES  Receipt: 134296  Date: 09/25/2008  Receipt: 136816  Date: 11/03/2008 | $283.90 | |
| 09/02/2008 | ORDERED THAT DEFENDANTS PETITION TO A FIXED DATE OF SEPT 30, 2008 IS GRANTED.<br>9-2-08 COPIES TO: PROS, D. DOUGHTEN  Receipt: 134296  Date: 09/25/2008 | $2.00 | Image |
| 09/02/2008 | POSTAGE  Receipt: 134296  Date: 09/25/2008 | $0.42 | |
| 09/17/2008 | MOTION FOR APPROPRIATION OF FUNDS FOR EXPERT ASSISTANCE (INDEPENDENT PSYCHOLOGIST) WITH SERVICE FILED BY DAVID L DOUGHTEN (Attorney) on behalf of DONNA MARIE ROBERTS (DEFENDANT) | $0.00 | Image |
| 09/17/2008 | MOTION FOR APPROPRIATION OF FUNDS FOR EXPERT ASSISTANCE (NEUROPSYCHOLOGIST) WITH SERVICE FILED BY DAVID L DOUGHTEN (Attorney) on behalf of DONNA MARIE ROBERTS (DEFENDANT) | $0.00 | Image |
| 09/17/2008 | MOTION TO STAY WITH SERVICE FILED BY DAVID L DOUGHTEN (Attorney) on behalf of DONNA MARIE ROBERTS (DEFENDANT) | $0.00 | Image |
| 09/17/2008 | DONNA ROBERT'S MOTION FOR LEAVE OF COURT TO CONDUCT DISCOVERY WITH SERVICE FILED BY DAVID L DOUGHTEN (Attorney) on behalf of DONNA MARIE ROBERTS (DEFENDANT) | $0.00 | Image |
| 09/22/2008 | STATES RESPONSE TO PETITIONERS MOTION TO STAY POSTCONVICTION PROCEEDINGS WITH SERVICE FILED BY PROSECUTOR | $0.00 | Image |
| 09/22/2008 | STATES OPPOSITION FOR APPOINTMENT OF FUNDS FOR EXPERT ASSISTANCE (INDEPENDENT PSYCHOLOGIST) WITH SERVICE FILED BY PROSECUTOR | $0.00 | Image |
| 09/22/2008 | STATES RESPONSE TO PETITIONERS MOTION FOR LEAVE OF COURT TO CONDUCT DISCOVERY WITH SERVICE FILED BY PROSECUTOR | $0.00 | Image |
| 09/22/2008 | STATES OPPOSITION FOR APPOINTMENT OF FUNDS FOR EXPERT ASSISTANCE (NEUROPSYCHOLOGIST) WITH SERVICE FILED BY PROSECUTOR | $0.00 | Image |
| 09/25/2008 | ORDERED THAT DEFENDANTS MOTION IS GRANTED.<br>9-26-08 COPIES TO: PROS, J. INGRAM  Receipt: 136816  Date: 11/03/2008 | $2.00 | Image |
| 09/25/2008 | POSTAGE  Receipt: 136816  Date: 11/03/2008 | $0.42 | |

10/20/21, 11:18 AM                          Case Details - CourtView Justice Solutions

| Date | Docket Text | Amount Owed | Image Avail. |
|------|-------------|-------------|--------------|
| 10/02/2008 | LETTER FILED BY DEFT REGARDING COURT COSTS | | |
| 10/29/2008 | COUNTY FEES WITNESS FEES  Receipt: 136592  Date: 10/29/2008  Receipt: 136816  Date: 11/03/2008 | $339.90 | |
| 11/03/2008 | DEPOSIT FROM: OVERPAYMENT OF COURT COSTS  Receipt: 136816  Date: 11/03/2008 | $281.41 | |
| 11/04/2008 | REFUND OF OVERPAYMETN OF LEBANON CORRECTIONAL  Voided on 11/19/2008. | $0.00 | |
| 11/19/2008 | REFUND OF DEPOSIT TO: OAKWOOD CORRECTIONAL INSTITUTION | $281.41 | |
| 03/11/2013 | MOTION TO APPOINT COUNSEL WITH CERTIFICATE OF SERVICE FILED BY DAVID L DOUGHTEN (Attorney) on behalf of DONNA MARIE ROBERTS (DEFENDANT) | $0.00 | Image |
| 04/08/2013 | APPOINTMENT OF COUNSEL:  ORDERED THAT ROBERT DIXON, OHIO REGISTRATION #0022466, 4403 ST. CLAIR AVENUE, CLEVELAND, OHIO 44103 BE APPOINTED AS SUBSTITUTE COUNSEL. 4/8/13--COPIES TO:  PROS, ATTY J. INGRAM, ATTY A. MILLETTE, ATTY J. WILHELM, ATTY J. HELMICK, ATTY S. BOLTON, ATTY D. DOUGHTEN, ATTY R. DIXON, ATTY J. JUHASZ  Receipt: 280467  Date: 08/18/2014 | $2.00 | Image |
| 04/08/2013 | POSTAGE  Receipt: 280467  Date: 08/18/2014 | $3.68 | |
| 04/24/2013 | REGULAR MAIL ISSUED TO: JOSEPH E WILHELM RETURNED BY POST OFFICE FOR: RETURN TO SENDER, NOT DELIVERABLE AS ADDRESSED, UNABLE TO FORWARD | $0.00 | |
| 11/18/2013 | APPEAL FROM THE COURT OF COMMON PLEAS:  THE DEATH SENTENCE IS VACATED AND THIS CAUSE IS REMANDED TO THE TRIAL COURT FOR RESENTENCING ON THE BASIS OF THE EXISTING RECORD, CONSISTENT WITH THE OPINION RENDERED HEREIN.  IT IS FURTHER ORDERED THAT MANDATES BE SENT TO AND FILED WITH THE CLERK OF THE COURT OF APPEALS FOR TRUMBULL COUNTY AND THE COURT OF COMMON PLEAS FOR TRUMBULL COUNTY.  Receipt: 280467  Date: 08/18/2014 | $9.00 | Image |
| 01/02/2014 | RETURN OF RECORD OF DEATH PENALTY CASE FROM THE SUPREME COURT OF OHIO.  CONTENTS ARE 4 LARGE BOXES AND 4 REGULAR BOXES.   EXHIBITS SHARED WITH 01 CR 794 (STATE VS JACKSON) RETAINED BY THE SUPREME COURT FOR CONSIDERATION OF SUPREME COURT CASE NO.  2012-1644.   ATTACHED LIST OF PHYSICAL EXHIBITS ARE ALSO RETURNED. | $0.00 | Image |
| 03/25/2014 | HEARING SET: Event: RE-SENTENCING HEARING Date: 04/30/2014   Time: 2:00 pm Judge: RICE, RONALD J   Location: COURTROOM 2 Result: COMPLETED | | |
| 03/25/2014 | NOTICE SENT: SPEEDY MAILER Sent on: 03/25/2014  15:47:33.48 | | |
| 03/27/2014 | NOTICE SENT: SPEEDY MAILER Sent on: 03/27/2014  10:52:01.91 | | |
| 03/27/2014 | HEARING SET: Event: CONFERENCE CALL Date: 03/28/2014   Time: 10:00 am Judge: RICE, RONALD J   Location: COURTROOM 2 Result: COMPLETED | | |
| 03/28/2014 | HEARING SET: Event: HEARING ON PENDING MOTIONS Date: 04/30/2014   Time: 11:00 am Judge: RICE, RONALD J   Location: COURTROOM 2 Result: COMPLETED | | |
| 03/28/2014 | NOTICE SENT: SPEEDY MAILER Sent on: 03/28/2014  11:45:42.97 | | |
| 04/02/2014 | MOTION FOR WARRANT REMOVAL FILED BY PROSECUTOR'S OFFICE | $0.00 | Image |
| 04/02/2014 | WARRANT TO CONVEY TO OHIO REFORMATORY FOR WOMEN ISSUED TO SHERIFF ON: APRIL 2, 2014 | $0.00 | |

| Date | Docket Text | Amount Owed | Image Avail. |
|------|-------------|-------------|--------------|
| 04/02/2014 | WARRANT FOR REMOVAL FOR A MOTIONS HEARING ON APRIL 30, 2014 @ 11:00 A.M. AND A RE-SENTENCING HEARING @ 2:00 P.M.<br>4/3/14--COPIES TO:  PROS, J. INGRAM, A. MILLETTE, J. WHILHELM, L. ANNOS, S. BOLTON, D. DOUGHTEN, R. DIXON, D. BODIKER, J. JUHASZ  Receipt: 280467  Date: 08/18/2014 | $3.00 | Image |
| 04/03/2014 | MOTION TO APPOINT COUNSEL (DEATH PENALTY CASE) WITH CERTIFICATE OF SERVICE FILED BY DAVID L DOUGHTEN (Attorney) on behalf of DONNA MARIE ROBERTS (DEFENDANT) | $0.00 | Image |
| 04/03/2014 | POSTAGE  Receipt: 280467  Date: 08/18/2014 | $4.32 | |
| 04/10/2014 | JE:  ATTORNEY DAVID L. DAUGHTEN AND ATTORNEY ROBERT A. DIXON ARE HEREBY APPOINTED TO REPRESENT THE DEFENDANT, DONNA ROBERTS, IN THE ABOVE CAPTIONED CASE FOR THE SENTENCING HEARING SCHEDULED FOR APRIL 30, 2014.  Receipt: 280467  Date: 08/18/2014 | $3.00 | Image |
| 04/17/2014 | MOTION TO PRECLUDE A SENTENCE OF DEATH; OR IN THE ALTERNATIAVE, ORDER A FULL PENALTY PHASE HEARING WITH CERTIFICATE OF SERVICE FILED  BY DAVID L DOUGHTEN (Attorney) on behalf of DONNA MARIE ROBERTS (DEFENDANT) | $0.00 | Image |
| 04/23/2014 | MOTION FOR CONTINUANCE OF SENTENCING HEARING WITH SERVICE FILED BY: DAVID L DOUGHTEN (Attorney) on behalf of DONNA MARIE ROBERTS (DEFENDANT) | $0.00 | Image |
| 04/24/2014 | REGULAR MAIL ISSUED TO: DAVID H BODIKER<br>RETURNED BY POST OFFICE FOR: ATTEMPTED NOT KNOWN  Receipt: 280467  Date: 08/18/2014 | $0.48 | |
| 04/24/2014 | REGULAR MAIL ISSUED TO: JOSEPH E WILHELM<br>RETURNED BY POST OFFICE FOR: ATTEMPTED NOT KNOWN  Receipt: 280467  Date: 08/18/2014 | $0.48 | |
| 04/28/2014 | WARRANT TO CONVEY RETURNED SHOWING SERVICE ON DEFENDANT  Receipt: 282654  Date: 09/19/2014 | $471.00 | Image |
| 04/30/2014 | NOTICE OF POST RELEASE CONTROL FILED AND SIGNED BY DONNA M ROBERTS (DEFENDANT) AND DAVID L DOUGHTEN (ATTORNEY FOR DEFENDANT) | $0.00 | Image |
| 04/30/2014 | OPINION OF THE COURT:  FINDS OF FACT AND CONCLUSIONS OF LAW REGARDING IMPOSITION OF DEATH PENALTY.  THE COURT HEREBY FINDS THE SENTENCE OF DEATH IS AN APPROPRIATE PENALTY FOR THE DEFENDANT DONNA MARIE ROBERTS IN THIS MATTER.  Receipt: 280467  Date: 08/18/2014 | $69.00 | Image |
| 04/30/2014 | INDIGENT APPLICATION FEE ($25.00) NOTICE FILED  Receipt: 280467  Date: 08/18/2014 | $25.00 | Image |
| 04/30/2014 | JE:  THIS WRIT OF EXECUTION TO CONVEY DONNA MARIE ROBERTS TO THE OHIO REFORMATORY FOR WOMEN OR OTHER FACILITY AS INSTRUCTED BY THE DIRECTOR FOR THE OHIO DEPARTMENT OF REHABILITATION AND CORRECTION WHERE SHE SHALL BE HELD UNTIL THE EXECUTION OF THE DEATH SENTENCE AGAINST DONNA MARIE ROBERTS.  Receipt: 280467  Date: 08/18/2014 | $3.00 | Image |
| 04/30/2014 | JE:  THE COURT FINDS ROBERT'S MOTION TO PRECLUDE A SENTENCE OF DEATH; OR IN THE ALTERNATIVE, ORDER A FULL PENALTY PHASE HEARING IS DENIED.  Receipt: 280467  Date: 08/18/2014 | $9.00 | Image |
| 04/30/2014 | DEATH PENALTY SENTENCING:  DEFENDANT SENTENCE ON APRIL 30, 2014 TO THE OHIO REFORMATORY FOR WOMEN.  DEFENDANT SENTENCED TO DEATH ON COUNT ONE, SHALL SERVE AN IMPRISONMENT TERM OF 10 YEARS ON COUNT 3; PLUS A MANDATORY TERM OF 3 YEARS ON THE FIREARM SPECIFICATION TO BE SERVED PRIOR TO AND CONSECUTIVE TO THE SENTENCE IMPOSED ON COUNT 3; SHALL SERVE AN IMPRISONMENT TERM OF 10 YEARS ON COUNT 4, PLUS A MANDATORY TERM OF 3 YEARS ON THE FIREARM SPECIFICATION TO BE SERVED PRIOR TO AND CONSECUTIVE TO THE SENTENCE IMPOSED IN COUNT 4, SENTENCE IN COUNT 4 TO BE SERVED CONSECUTIVELY TO THE SENTENCE IMPOSED ON COUNT 3 PLUS COSTS.<br>4/30/14--COPIES TO:  PROS, J. INGRAM, A. MILLETTE, J. WILHELM, D. MARBURGER, S. BOLTON, D. DOUGHTEN, J. JUHASZ  Receipt: 280467  Date: 08/18/2014 | $15.00 | Image |
| 04/30/2014 | POSTAGE  Receipt: 280467  Date: 08/18/2014 | $3.36 | |
| 05/01/2014 | WARRANT TO CONVEY TO OHIO REFORMATORY FOR WOMEN ISSUED TO SHERIFF ON: MAY 1, 2014 | $0.00 | |
| 05/01/2014 | EXECUTION FOR COSTS IN FELONY  ISSUED TO SHERIFF ON: MAY 1, 2014 | $0.00 | |
| 05/01/2014 | EXECUTION OF COSTS RETURNED ENDORSED BY SHERIFF  Receipt: 280467  Date: 08/18/2014 | $5.00 | Image |
| 05/05/2014 | STATES MOTION FOR NUNC PRO TUNC ENTRIES WITH PROOF OF SERVICE FILED BY LUWAYNE ANNOS (Attorney) on behalf of STATE OF OHIO (PLAINTIFF) | $0.00 | Image |
| 05/05/2014 | MOTION TO APPOINT APPELLATE COUNSEL DEATH PENALTY CASE WITH CERTIFICATE OF SERVICE FILED BY DAVID L DOUGHTEN (Attorney) on behalf of DONNA MARIE ROBERTS (DEFENDANT) | $0.00 | Image |
| 05/05/2014 | WARRANT TO CONVEY RETURNED SHOWING SERVICE ON DEFENDANT | $471.00 | Image |

| Date | Docket Text | Amount Owed | Image Avail. |
|---|---|---|---|
| 05/12/2014 | ORDER:  ATTORNEY DAVID L. DOUGHTEN IS APPOINTED LEAD COUNSEL AND ROBERT L. DIXON IS APPOINTED AS CO-COUNSEL.  Receipt: 280467  Date: 08/18/2014 | $3.00 | Image |
| 05/14/2014 | REGULAR MAIL ISSUED TO: JOSEPH E WILHELM RETURNED BY POST OFFICE FOR: NO SUCH NUMBER  Receipt: 280467  Date: 08/18/2014 | $0.48 | |
| 06/02/2014 | MOTION TO CLARIFY COURTS SENTENCING OPINION FILED PURSUANT TO R.C. 2929.03(F) WITH CERTIFICATE OF SERVICE FILED BY DAVID L DOUGHTEN (Attorney) on behalf of DONNA MARIE ROBERTS (DEFENDANT) | $0.00 | Image |
| 06/03/2014 | $636.32  COSTS SENT TO CORRECTIONAL FACILITY FOR INMATE PAYMENT OF COSTS | $0.00 | Image |
| 06/10/2014 | OPINION OF THE COURT:  NUNC PRO TUNC FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING IMPOSITION OF DEATH PENALTY.  SEE JE  Receipt: 280467  Date: 08/18/2014 Receipt: 282654  Date: 09/19/2014 | $72.00 | Image |
| 06/16/2014 | ORDER TO CERTIFY RECORD WITH NOTICE OF APPEAL OF APPELLANT DONNA ROBERTS DEATH PENALTY APPEAL | $0.00 | Image |
| 07/07/2014 | APPROVAL OF PAYMENT OF COUNSEL FEES FILED 7/8/2014: CC TO AUDITOR.  Receipt: 280467  Date: 08/18/2014 | $12.00 | Image |
| 07/17/2014 | APPROVAL OF PAYMENT OF COUNSEL FEES CC AUDITOR 7/18/14  Receipt: 280467  Date: 08/18/2014 | $6.00 | Image |
| 07/22/2014 | APPROVAL OF PAYMENT OF COUNSEL FEES FILED CC AUDITOR 7/24/14  Receipt: 280467  Date: 08/18/2014 | $18.00 | Image |
| 09/15/2014 | RECORD TRANSPORTED TO THE SUPREME COURT INCLUDING ORIGINAL PAPERS (1 BOX), TRANSCRIPTS (28 VOLUMES IN 3 BOXES), NUMBERED INDEX AND LIST OF EXHIBITS BY PERSONAL DELIVERY FROM THE TRUMBULL COUNTY CLERK OF COURTS ON SEPTEMBER 15, 2014. COPIES OF INDEX ALSO SENT TO COUNSEL OF RECORD (L ANNOS, D DOUGHTEN, R DIXON)  Receipt: 282654  Date: 09/19/2014 | $1.00 | Image |
| 09/15/2014 | TRANSCRIPT OF PROCEEDINGS FILED BY: OFFICIAL COURT REPORTER:  RICHELLE J. GUERRIERI | $0.00 | |
| 09/18/2014 | RECEIPT OF RECORD DEATH PENALTY CASE (4 BOXES) TRANSMITTED TO THE CLERK OF COURT OF THE SUPREME COURT OF OHIO BY THE TRUMBULL COUNTY CLERK OF COURTS ON 09/15/14  Receipt: 282654  Date: 09/19/2014 | $1.00 | Image |
| 09/23/2014 | EXHIBITS (ONE EXPANDABLE FOLDER)  AND LIST OF EXHIBITS (SEE IMAGE) TRANSPORTED TO THE SUPREME OF COURT OF OHIO BY PERSONAL DELIVERY FROM THE TRUMBULL COUNTY CLERK OF COURTS ON SEPTEMBER 26, 2014 | $0.00 | Image |
| 12/15/2014 | MEMO ENTRY:  4 BOXS OF EVIDENCE, 1 BOX COPIES OF THE RECORD AND 3 BOXES OF TRANSCRIPTS TRANSPORTED TO THE EVIDENCE ROOM ON | $0.00 | |
| 02/17/2015 | MOTION TO AMEND POST-CONVICTION PETITION PURSUANT TO R.C.2929.03(F) FILED BY DAVID L DOUGHTEN (Attorney) on behalf of DONNA MARIE ROBERTS (DEFENDANT) | $0.00 | Image |
| 02/26/2015 | MOTION TO EXTEND TIME TO RESPOND WITH PROOF OF SERVICE FILED BY LUWAYNE ANNOS (Prosecuting Attorney) on behalf of STATE OF OHIO (PLAINTIFF) | $0.00 | Image |
| 03/05/2015 | HEARING SET: Event: MOTION Date: 03/31/2015    Time: 1:30 pm Judge: RICE, RONALD J    Location: COURTROOM 2  Result: COMPLETED | | |
| 03/05/2015 | NOTICE SENT:  SPEEDY MAILER Sent on:  03/05/2015  14:40:00.79 | | |
| 03/05/2015 | NOTICE SENT:  SPEEDY MAILER Sent on:  03/05/2015  14:42:09.60 | | |
| 07/20/2015 | AGREED JUDGMENT ENTRY SUBMITTED BY  ATTORNEY DAVID L. DOUGHTEN AND ATTORNEY LUWAYNE ANNOS | $0.00 | Image |
| 08/19/2015 | AGREED JUDGMENT ENTRY.  SEE JE. | $6.00 | Image |

10/20/21, 11:18 AM                                    Case Details - CourtView Justice Solutions

| Date | Docket Text | Amount Owed | Image Avail. |
|---|---|---|---|
| 08/19/2015 | Issue Date:  08/19/2015<br>Service:  FINAL APPEALABLE ORDER<br>Method:  REGULAR MAIL - ENVELOPE<br>Cost Per:  $<br><br>ROBERTS, DONNA MARIE<br>055 276<br>OAKWOOD CORRECTIONAL FACILITY<br>3200 N WEST STREET<br>LIMA, OH  45801<br>Tracking No: R000005205<br><br>STATE OF OHIO<br>c/o ATTY: ANNOS, LUWAYNE<br>TRUMBULL COUNTY ASSISTANT PROSECUTOR<br>160 HIGH STREET NW-4TH FLOOR<br>WARREN, OH  44481<br>Tracking No: R000005206 | | |
| 08/28/2015 | MOTION FOR SUMMARY JUDGMENT WITH PROOF OF SERVICE FILED BY LUWAYNE ANNOS (Attorney) on behalf of STATE OF OHIO (PLAINTIFF) | $0.00 | Image |
| 09/04/2015 | HEARING SET:<br>Event: MOTION FOR SUMMARY JUDGMENT (MEMO)<br>Date: 10/30/2015   Time: 8:00 am<br>Judge: RICE, RONALD J  Location: COURTROOM 2<br><br>Result: TAKEN UNDER ADVISEMENT | | |
| 09/04/2015 | NOTICE SENT:<br><br>SPEEDY MAILER<br>Sent on:  09/04/2015  08:37:29.79 | | |
| 11/16/2015 | LETTER FILED BY: DONNA MARIE ROBERTS (DEFENDANT); PRO SE (REQUEST FOR COPIES OF TRANSCRIPTS) | $0.00 | Image |
| 07/28/2017 | ENTRY:  RECONSIDERATION IS DENIED FILED BY SUPREME COURT | $6.00 | Image |
| 04/12/2018 | NOTICE FROM THE SUPREME COURT OF OHIO. THE FOLLOWING RECORD IN THE ABOVE-NAMED CASE WAS RECEIVED BY THE UNDERSIGNED.<br>LIST OF CONTENTS:  4 BOXES | $0.00 | Image |
| 04/02/2019 | HEARING SET:<br>Event: MEMO ONLY<br>Date: 06/07/2019   Time: 8:00 am<br>Judge: RICE, RONALD J  Location: COURTROOM 2<br><br>Result: UNDER ADVISEMENT | | |
| 04/02/2019 | NOTICE SENT:<br><br>SPEEDY MAILER<br>Sent on:  04/02/2019  15:53:47.34 | | |
| 04/02/2019 | NOTICE SENT:<br><br>SPEEDY MAILER<br>Sent on:  04/02/2019  15:54:50.16 | | |
| 06/05/2019 | NOTICE OF MEMORANDUM IN SUPPORT WITH CERTIFICATE OF SERVICE FILED BY DAVID L DOUGHTEN (Attorney) on behalf of DONNA MARIE ROBERTS (DEFENDANT) | $0.00 | Image |
| 06/07/2019 | RENEWED MOTION FOR SUMMARY JUDGMENT WITH PROOF OF SERVICE FILED BY CHRISTOPHER D. BECKER (Attorney) on behalf of STATE OF OHIO (PLAINTIFF) | $0.00 | Image |
| 06/13/2019 | OBJECTION TO SUMMARY JUDGMENT WITH CERTIFICATE OF SERVICE FILED BY DAVID L DOUGHTEN (Attorney) on behalf of DONNA MARIE ROBERTS (DEFENDANT) | $0.00 | Image |

| Date | Docket Text | Amount Owed | Image Avail. |
|------|-------------|-------------|--------------|
| 11/20/2019 | Issue Date:  11/20/2019<br>Service:  FINAL APPEALABLE ORDER<br>Method:  REGULAR MAIL - ENVELOPE<br>Cost Per:  $<br><br>ROBERTS, DONNA MARIE<br>c/o ATTY: DIXON, ROBERT A<br>4403 ST CLAIR AVENUE<br>CLEVELAND, OH   44103<br>Tracking No: R000101953<br><br>STATE OF OHIO<br>c/o ATTY: MUSICK, ASHLEIGH<br>ASSISTANT PROSECUTING ATTORNEY<br>160 HIGH ST, N.W. 4TH FLOOR<br>WARREN, OH   44481<br>Tracking No: R000101954 | | |
| 11/20/2019 | POSTAGE | $0.50 | |
| 11/20/2019 | JE: THE PETITION FOR POST-CONVICTION RELIEF FILED BY DEFENDANT IS DENIED WITHOUT HEARING. SEE JE. FAP. | $18.00 | Image |
| 12/02/2019 | MOTION TO APPOINT APPELLATE COUNSEL (DEATH PENALTY CASE) WITH CERTIFICATE OF SERVICE FILED BY DAVID L DOUGHTEN (Attorney) on behalf of DONNA MARIE ROBERTS (DEFENDANT); ROBERT A DIXON (Attorney) on behalf of DONNA MARIE ROBERTS (DEFENDANT) | $0.00 | Image |
| 12/10/2019 | JE: ATTORNEY ROBERT A. DIXON AND ATTORNEY DAVID L. DOUGHTEN ARE APPOINTED AS APPELLATE COUNSEL. | $3.00 | Image |
| 12/18/2019 | NOTICE OF APPEAL TO 11TH DISTRICT COURT OF APPEALS WITH DOCKETING STATEMENT, AFFIDAVIT OF INDIGENCY AND COPY OF JE FILED BY: DAVID L DOUGHTEN (Attorney) on behalf of DONNA ROBERTS (DEFENDANT); ROBERT A DIXON (Attorney) on behalf of DONNA ROBERTS (DEFENDANT) | $0.00 | Image |
| 12/18/2019 | APPROVAL OF PAYMENT OF COUNSEL FEES FILED; CC: TRUMBULL COUNTY AUDITOR'S OFFICE | $12.00 | Image |
| 08/25/2020 | MANDATE FROM COURT OF APPEALS; JUDGMENT OF THE TRUMBULL COUNTY COURT OF COMMON PLEAS IS AFFIRMED. COSTS TO APPELLANT. | $3.00 | |
| 10/06/2020 | IT IS SO ORDERED THAT THE MOTION FOR STAY OF EXECUTION IS GRANTED AND IT IS FURTHER ORDERED THAT THIS STAY SHALL REMAIN IN EFFECT UNTIL EXHAUSTION OF ALL STATE POSTCONVICTION PROCEEDINGS, INCLUDING ANY APPEALS, FILED BY THE SUPREME COURT OF OHIO | $0.00 | Image |

IN THE COURT OF COMMON PLEAS
TRUMBULL COUNTY, OHIO

STATE OF OHIO                  :        Case No. 01 CR 793

    Plaintiff-Respondent,      :        JUDGE RONALD J. RICE

    -vs-                       :

DONNA ROBERT,                  :        **Motion to Appoint Counsel**

    Defendant-Petitioner.      :        **DEATH PENALTY CASE**

Now comes the defendant, by and through undersigned counsel, David L. Doughten, and

requests the appointment of co-counsel for her appeal to the Supreme Court of Ohio. This is

motion is necessitated because prior co-counsel, Jeffrey J. Helmick, has been recently appointed

to and is now sitting as a federal judge in the Northern District of Ohio. Thus, he was required to

withdraw from this case.

The Supreme Court does not appoint appellate counsel. Therefore it is incumbent upon

the trial court to do so. The former Judge John Stuard appointed the undersigned counsel and

Mr. Helmick to represent Ms. Roberts upon her being resentenced to death on October 29, 2007,

following a remand to this Court by the Supreme Court.

Rule 20 of the Supreme Court rules of Superintendency requires two counsel for death

penalty appeals. Ms. Roberts oral argument is set for May 7, 2013. Therefore, it is requested

that this Court appoint Robert A. Dixon in his place. Robert A. Dixon, Regis. No. 0022466,

4403 St. Clair Avenue, Cleveland, OH 44103.



2001 CR
00793
00068952036
CRM

Mr. Dixon is Rule 20 qualified for the appointment.  He was co-counsel at the sentence

hearing in question.  Therefore, his appointment would allow the argument to proceed without

delay.

Respectfully submitted,

DAVID L. DOUGHTEN #0002847
Counsel for Defendant
4403 St. Clair Avenue
Cleveland, Ohio  44103
(216) 361-1112

## CERTIFICATE OF SERVICE

A copy of the foregoing appellant's Brief was served upon Dennis Watkins, Trumbull

County Prosecutor and/or LuWayne Annos, Esq. Assistant Trumbull County Prosecutor,

Administration Building, 160 High Street, Warren, Ohio 44481, by Regular U. S. mail on this

8th day of March, 2013.

DAVID L. DOUGHTEN
Counsel for Defendant

## IN THE COURT OF COMMON PLEAS
## TRUMBULL COUNTY, OHIO

STATE OF OHIO,              )    CASE NO. 2001 CR 0793

                )

        PLAINTIFF,    )    JUDGE RONALD J. RICE

                )

-VS-                )    **JUDGMENT ENTRY**

                )

DONNA ROBERTS,       )

                )

        DEFENDANT.    )

      This cause came on for consideration through motion by the Defendant, Donna Roberts, for the appointment of substitute counsel for her direct appeal to the Supreme Court of Ohio. The Court, being fully advised, finds the motion well-taken.

      Previously appointed co-counsel Jeffrey Helmick has been appointed for the federal judiciary and has therefore withdrawn as counsel in this matter. It is therefore ORDERED that Robert Dixon, Ohio Registration #0022466, 4403 St. Clair Avenue, Cleveland, Ohio, 44103 be appointed as substitute counsel in the above captioned case.

      IT IS SO ORDERED.

                                      _____

                                      JUDGE RONALD J RICE

Date: **4-8-13**

4/8/13
Copies To:
Proce
Atty J. Ingram
Atty A. Millette
Atty J. Wilhelm
Atty J. Helmick
Atty J. Bolten
Atty D. Doughten
Atty R. Dixon
Atty J. Juhasz

**TO THE CLERK OF COURTS: YOU ARE ORDERED TO SERVE COPIES OF THIS JUDGMENT ON ALL COUNSEL OF RECORD OR UPON THE PARTIES WHO ARE UNREPRESENTED FORTHWITH BY ORDINARY MAIL.**



_____
              JUDGE RONALD JAMES RICE

2001 CR
00793
00030181875
OAC

234

**KAREN INFANTE ALLEN**
*Trumbull County Clerk of Courts*
161 High Street
Warren, Ohio 44481

FILED
COURT OF COMMON PLEAS
APR 24 2013
TRUMBULL COUNTY, OH
KAREN INFANTE ALLEN, CLERK



02 1P          $ 000.46⁰
0003150685     APR 09 2013
MAILED FROM ZIP CODE 44481

JOSEPH E. WILHELM
8 EAST LONG ST
11TH
COL...

NIXIE        430   FE 1        00 04/20/13
RETURN TO SENDER
NOT DELIVERABLE AS ADDRESSED
UNABLE TO FORWARD
BC: 44481100699    *0332-01935-09-43

4321532914 C00B

# The Supreme Court of Ohio

### OFFICE OF THE CLERK
65 SOUTH FRONT STREET, COLUMBUS, OH 43215-3431

CHIEF JUSTICE
MAUREEN O'CONNOR

JUSTICES
PAUL E. PFEIFER
TERRENCE O'DONNELL
JUDITH ANN LANZINGER
SHARON L. KENNEDY
JUDITH L. FRENCH
WILLIAM M. O'NEILL

CLERK OF THE COURT
MARK H. REED

TELEPHONE 614.387.9530
FACSIMILE 614.387.9539
www.supremecourt.ohio.gov

November 8, 2013

Karen Infante Allen
Clerk of Courts
Trumbull County Courthouse
160 High St NW
Warren, Ohio 44481

Re:  Supreme Court of Ohio Case No. 2007-2288, *State of Ohio v. Donna Marie Roberts*

Dear Ms. Allen:

Enclosed with this letter are two certified copies of the judgment entry that was issued in
the above-referenced case. Pursuant to S.Ct.Prac.R. 18.04(C), the certified copy of the
enclosed judgment entry constitutes the mandate of the Supreme Court of Ohio in the
case. A copy of the mandate should be filed in both the court of appeals and court of
common pleas case from which this case arose.

Sincerely,

Amie Vetter
Assistant Deputy Clerk

**FILED**
COURT OF COMMON PLEAS

NOV 1 8 2013

TRUMBULL COUNTY, OH
KAREN INFANTE ALLEN, CLERK

# The Supreme Court of Ohio

**FILED**

OCT 22 2013

CLERK OF COURT
SUPREME COURT OF OHIO

| | |
|---|---|
| State of Ohio | Case No. 2007-2288 |
| v. | JUDGMENT ENTRY |
| Donna Marie Roberts | APPEAL FROM THE COURT OF COMMON PLEAS |

This cause, here on appeal from the Court of Common Pleas for Trumbull County, was considered in the manner prescribed by law.  On consideration thereof, the death sentence is vacated and this cause is remanded to the trial court for resentencing on the basis of the existing record, consistent with the opinion rendered herein.

It is further ordered that mandates be sent to and filed with the clerks of the Court of Appeals for Trumbull County and the Court of Common Pleas for Trumbull County.

(Trumbull County Court of Common Pleas; No. 01CR793)

Maureen O'Connor
Chief Justice

**FILED**
COURT OF COMMON PLEAS

NOV 1 8 2013

TRUMBULL COUNTY, OH
KAREN INFANTE ALLEN, CLERK

I CERTIFY that this document is a true and accurate copy of the judgment entry of the Supreme Court of Ohio filed on 10-22-13 in Case No. 07-2288 and constitutes the mandate of the Court pursuant to S.Ct.Prac.R. 18.04.

In witness, I have subscribed my name and affixed the seal of the Supreme Court of Ohio on this ___ day of Nov., 20 13
Clerk of Court
By _____ , Deputy Clerk



2001 CR
00793
00053007460
0

235

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2361

# THE SUPREME COURT OF OHIO

State of Ohio

v.

Donna Marie Roberts

**CASE NO. 2007-2288**
TRUMBULL COUNTY CASE
NO. **01 CR 793**
**RETURN OF RECORD**
**DEATH PENALTY CASE**

       THE FOLLOWING RECORD IN THE ABOVE-NAMED CASE WAS RECEIVED BY THE UNDERSIGNED.

LIST CONTENTS:
- 4 LARGE BOXES
- 4 REGULAR BOXES

EXHIBITS SHARED WITH 01 CR 794, STATE V. JACKSON RETAINED BY THE SUPREME COURT FOR CONSIDERATION OF SUPREME COURT CASE NO. 2012-1644.

THE ATTACHED LIST OF PHYSICAL EXHIBITS ARE BEING RETURNED.

KAREN INFANTE ALLEN, CLERK OF COURTS
TRUMBULL COUNTY, OHIO

12/31/2013
DATE

STEPHEN M. KAHLER, RECORDS SPECIALIST
SUPREME COURT OF OHIO

12/31/13
DATE

2001 CR
00793
00068821555
CRM

234

State's Exhibit 251
State's Exhibit 252
State's Exhibit 252A
State's Exhibit 253
State's Exhibit 254
State's Exhibit 255
State's Exhibit 256
State's Exhibit 257
State's Exhibit 258
State's Exhibit 258
State's Exhibit 265
State's Exhibit 266
State's Exhibit 267
State's Exhibit 268
State's Exhibit 269
State's Exhibit 270
State's Exhibit 287A
State's Exhibit 287B
State's Exhibit 287C
State's Exhibit 288
State's Exhibit 289
State's Exhibit 290
State's Exhibit 291
State's Exhibit 294
State's Exhibit 309
State's Exhibit 309A
State's Exhibit 317
State's Exhibit 318
State's Exhibit 351
State's Exhibit 385
State's Exhibit 386
State's Exhibit 387
State's Exhibit 388
State's Exhibit 389
State's Exhibit 390
State's Exhibit 395
State's Exhibit 395A
State's Exhibit 395B
Defendant's Exhibit B (9 small envelopes)
Joint Exhibit 1



**IN THE COURT OF COMMON PLEAS**
**TRUMBULL COUNTY, OHIO**

STATE OF OHIO,                     )
    Plaintiff                        )        **CASE NO.  2001-CR-793**
                                     )
-vs-                               )        **JUDGE RONALD J. RICE**
                                     )
DONNA MARIE ROBERTS,               )        **MOTION FOR**
INMATE #W55276                     )        **WARRANT FOR REMOVAL**
    Defendant                        )

       Now comes the Plaintiff, State of Ohio, by and through its undersigned counsel, and

pursuant to Ohio Revised Code 2941.40, moves this Honorable Court for a Warrant of

Removal for **DONNA MARIE ROBERTS, INMATE NO. W55276**, who is confined at the

Ohio Reformatory for Woman in Marysville, Ohio.  The said Defendant is to be removed from

the Ohio Reformatory for Women and taken to the Trumbull County Jail in Warren, Ohio, on

or before **April 30, 2014 at 11:00 a.m.**, and incarcerated there until her Motions hearing and

Re-Sentencing is complete.

       The State requests that its requested Warrant be delivered to the Trumbull County Sheriff

Thomas Altiere and conveyed to the Warden at the facility who shall commit the Defendant to the

Trumbull County Jail, **on or before April 30, 2014.**

       For removing the Defendant, the State motions this Court to allow to the Sheriff the fees

allowed for conveying defendant to the Trumbull County Jail.

*3-28-14*

DATED

**FILED**
**COURT OF COMMON PLEAS**

**APR - 2 2014**

**TRUMBULL COUNTY, OH**
**KAREN INFANTE ALLEN, CLERK**

CHRISTOPHER D. BECKER
Assistant Prosecuting Attorney
Trumbull C. Prosecutor's Office
160 High Street - 3rd Floor
Warren, OH  44481

*4-2-14*
*Issued*

2001 CR
00793
00094013192
CRMWR

*2307*

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2364

ORIGINAL

**IN THE COURT OF COMMON PLEAS**
**TRUMBULL COUNTY, OHIO**

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| Plaintiff | ) | CASE NO. 2001-CR-793 |
| | ) | |
| -vs- | ) | JUDGE RONALD J. RICE |
| | ) | |
| DONNA MARIE ROBERTS, | ) | JOURNAL ENTRY |
| INMATE #W55276 | ) | WARRANT FOR REMOVAL |
| Defendant | ) | |

The State's Motion for Warrant for Removal has come before and been heard by this Court.

It is therefore, ORDERED, ADJUDGED, and DECREED that Trumbull County Sheriff Thomas Altiere shall take **DONNA MARIE ROBERTS, INMATE NO. W55276,** from the Ohio Reformatory for Women, in Marysville, Ohio, and that Sheriff Altiere shall convey said Defendant to the Trumbull County Jail, where she shall remain incarcerated until her hearing is complete. The Defendant is scheduled on **April 30, 2014** for a **Motions Hearing at 11:00 a.m. and Re-Sentencing hearing at 2:00 p.m.** before this Court.

It is further ORDERED, ADJUDGED, and DECREED that the County Sheriff shall receive the fees allowed for conveying the defendant to the Trumbull County Jail.

FILED
COURT OF COMMON PLEAS
APR - 2 2014
TRUMBULL COUNTY, OH
KAREN INFANTE ALLEN, CLERK

DATED 4-1-14

HONORABLE RONALD J. RICE
JUDGE, COURT OF COMMON PLEAS
TRUMBULL COUNTY, OHIO

THE CLERK OF COURTS IS HEREBY ORDERED TO SERVE COPIES OF THIS ENTRY TO ALL COUNSEL OF RECORD AND THE SHERIFF'S DEPARTMENT-CIVIL DIVISION.

JUDGE RONALD J. RICE

4.8.14
Copies to:
J. Ingram          R. Dixon
A. Phillette       D. Bodiker
J. Wilhelm         J. Juhasz
L. Annos           Pros
S. Bolton
D. Doughter

4-2-14
Issued to Sheriff
10

238

**KAREN INFANTE ALLEN**
*Trumbull County Clerk of Courts*
161 High Street
Warren, Ohio 44481



UNITED STATES POSTAGE
PITNEY BOWES
02 1P
0000817372    APR 04
MAILED FROM ZIP CODE 44
**$ 000.48⁰**

FILED
COURT OF COMMON PLEAS
APR 24 2014
TRUMBULL COUNTY, OH
KAREN INFANTE ALLEN, CLERK

JOSEPH E. WILHELM
8 EAST LONG ST
11TH
COLU
COLU

NIXIE    430   FE 1009    0004/19/14
RETURN TO SENDER
ATTEMPTED - NOT KNOWN
UNABLE TO FORWARD
BC: 44481100699    *0732-05376-04-43

---

**KAREN INFANTE ALLEN**
*Trumbull County Clerk of Courts*
161 High Street
Warren, Ohio 44481

UNITED STATES POSTAGE
PITNEY BOWES
02 1P
0000817372    APR 04
MAILED FROM ZIP CODE 44
**$ 000.48⁰**

FILED
COURT OF COMMON PLEAS
APR 24 2014
TRUMBULL COUNTY, OH
KAREN INFANTE ALLEN, CLERK

DAVID H BODIKER
8 EAST LONG ST
11TH
COL
COL

NIXIE    430   FE 1009    0004/19/14
RETURN TO SENDER
ATTEMPTED - NOT KNOWN
UNABLE TO FORWARD
BC: 44481100699    *0732-05391-04-43

# WARRANT TO CONVEY

### TO THE TRUMBULL COUNTY JAIL
*Revised Code, Sections 2949.12 TO 2949.17*

## COURT OF COMMON PLEAS, TRUMBULL COUNTY, WARREN, OHIO

### 2001 CR 00793

**STATE OF OHIO**

VS.

**DONNA MARIE ROBERTS**

**TO THE SHERIFF OF SAID COUNTY:**

*WHEREAS*, OUR SAID COURT, BEGUN AND HELD AT WARREN, OHIO IN SAID COUNTY, THE SAID INMATE,

### DONNA MARIE ROBERTS

TO BE BROUGHT/TAKEN BACK TO THE TRUMBULL COUNTY JAIL.

### *OHIO REFORMATORY FOR WOMEN, MARYSVILLE, OHIO*

YOU ARE THEREFORE HEREBY COMMANDED, TO TAKE CHARGE OF AND CONVEY THE SAID **DONNA MARIE ROBERTS** TO THE TRUMBULL COUNTY JAIL AT WARREN, OHIO AND MAKE DUE RETURN OF YOUR PROCEEDING HEREIN TO THIS OFFICE FORTHWITH.

*IN TESTIMONY WHEREOF*, I HAVE HEREUNTO SET MY HAND AND AFFIXED THE SEAL OF SAID COURT AT TRUMBULL COUNTY, WARREN, OHIO
April 2, 2014

**KAREN INFANTE ALLEN,**
*Clerk of Courts*

By:   KIMBERLY REEVES, Deputy Clerk



2001 CR
00793
00042269776
CRWARR

*24/3*

**2001 CR 00793**

**TRUMBULL COUNTY
COMMON PLEAS COURT**
*Trumbull County, Warren, Ohio*

**STATE OF OHIO**

VS.

**DONNA MARIE ROBERTS**

## WARRANT TO CONVEY

### RETURNED AND FILED

_____, 201____

**KAREN INFANTE ALLEN,**
*Clerk of Courts*

By: _____
    **DEPUTY CLERK**

### RETURN

**RECEIVED** THIS WRIT ON THE 2 DAY OF _APRIL_, 201 4, AT 1/4 O'CLOCK P .M. AND ON THE 25 DAY OF _APRIL_, 201 4, I EXECUTED THE SAME BY CONVEYING THE PERSON NAMED TO THE PLACE DESIGNATED AS SHOWN BY THE RECEIPT ENDORSED HEREON.

_T LAUTNER_
SHERIFF

By: _GREGORY J WEAVER_
    *DEPUTY*

| FEES | |
|---|---|
| Mileage: | $ 461.00 |
| Service: | $ 10.00 |
| Other: | $ |
| _____ | $ |
| **TOTAL:** | $ 471.00 |

_____, OHIO

_____, 201____

**RECEIVED** THIS DAY FROM _____ _____ SHERIFF OF _____ COUNTY, OHIO, THE PRISONER NAMED IN THE WITHIN **WARRANT**.

_R Burkes_
*Superintendent*

TRUMBULL COUNTY
CLERK OF COURTS
2014 APR 28 AM 8 45
TRUMBULL COUNTY
C. FOX OF COURTS
KAREN INFANTE ALLEN

IN THE COURT OF COMMON PLEAS
TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO | : | Case No. 01 CR 793 |
| Plaintiff-Respondent, | : | JUDGE RONALD J. RICE |
| -vs- | : | |
| DONNA ROBERT, | : | **Motion to Appoint Counsel** |
| Defendant-Petitioner. | : | **DEATH PENALTY CASE** |

Now comes the defendant, and requests the appointment of  David L. Doughten, and Robert A. Dixon for her sentencing hearing in the Trumbull County Court of Common Pleas scheduled for April 30, 2014.

David L. Doughten and Robert A. Dixon both have previously represented Donna Roberts in both this Court and in the Supreme Court of Ohio.  They have forged a solid attorney-client relationship with the defendant.  Due to this history and the complexity of possible issues, it is requested that this Court allow them to remain as counsel and assign them as counsel in the above-captioned case.

Respectfully submitted,

DAVID L. DOUGHTEN #0002847
4403 St. Clair Avenue
Cleveland, Ohio  44103
(216) 361-1112

2001 CR
00793
00084794201
CRM



ROBERT A. DIXON #0002847
4403 St. Clair Avenue
Cleveland, Ohio 44103
(216) 432-1992


## CERTIFICATE OF SERVICE

A copy of the foregoing appellant's Brief was served upon Dennis Watkins, Trumbull

County Prosecutor and/or Christopher Becker, Esq. Assistant Trumbull County Prosecutor,

Administration Building, 160 High Street, Warren, Ohio 44481, by Regular U. S. mail on this 1st

day of April, 2014.

DAVID L. DOUGHTEN
Counsel for Defendant

## IN THE COURT OF COMMON PLEAS
## TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | ) | CASE NO. 2001 CR 793 |
| | ) | |
| PLAINTIFF, | ) | JUDGE RONALD J. RICE |
| | ) | |
| -VS- | ) | **JUDGMENT ENTRY** |
| | ) | |
| DONNA ROBERTS, | ) | |
| | ) | |
| DEFENDANT. | ) | |

Attorney David L. Daughten and Attorney Robert A. Dixon are hereby appointed to represent the Defendant, Donna Roberts, in the above captioned case for the sentencing hearing scheduled April 30, 2014.

IT IS SO ORDERED.

_____
JUDGE RONALD J RICE

Date:_____

Copies to:
D. Daughter
R. Dixon

FILED
COURT OF COMMON PLEAS

APR 1 0 2014

TRUMBULL COUNTY, OH
KAREN INFANTE ALLEN, CLERK

2001 CR
00793
00062945537
0

IN THE COURT OF COMMON PLEAS
TRUMBULL COUNTY, OHIO
CRIMINAL DIVISION

| STATE OF OHIO, | : | CASE NO. 2001 CR 0793 |
| | : | |
| Respondent, | : | JUDGE RAYMOND RICE |
| | : | |
| -vs- | : | |
| | : | |
| DONNA ROBERTS, | : | MOTION TO PRECLUDE A |
| | : | SENTENCE OF DEATH; OR IN THE |
| Petitioner. | : | ALTERNATIVE, ORDER A FULL |
| | : | PENALTY PHASE HEARING |

Now comes the defendant, Donna Roberts,  by and through her attorneys, David L.

Doughten and Robert A. Dixon, and respectfully moves this Court to order a complete new

penalty phase hearing pursuant to R.C. §2929.06.   Because this Court did not hear the evidence

at trial, the penalty phase of trial, or Roberts' first allocution, it is not now in position to fairly

consider and weigh the mitigation evidence that might have been gleaned from those hearings.

In addition, it would be impossible for this Court to determine how to assess weight to the capital

murder specifications which it must weigh against the available mitigation.

In fact, based upon the specific directions of the Supreme Court of Ohio, Roberts is not

even permitted to make another allocution or re-read for the court her previous allocution.

Therefore, this Court, though no fault of its own, will be unable to judge for itself the sincerity or

credibility of Roberts in the deliverance of her allocution that was provided to this Court's

predecessor.

2001 CR
00793
00045121831
CRM

*241*

The failure to conduct a completely new hearing, including the selection of a jury,

violates the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

Pursuant to the precedent of State v. Penix, (1987), 32 Ohio St. 3d 369, 513 N.E.2d 744, Roberts

must be sentenced to a life term of incarceration.

      This motion will be more fully explained in the attached Memorandum

Respectfully submitted,

DAVID L. DOUGHTEN #0002847
4403 St. Clair Avenue
Cleveland, OH 44103
(216) 361-1112

ROBERT A. DIXON (#0022466)
4403 St. Clair Avenue
Cleveland, Ohio 44103
(216) 432-1992

ATTORNEY FOR DEFENDANT

- 2 -

**CERTIFICATE OF SERVICE**

A copy of the foregoing Petitioner's Motion was served upon Dennis Watkins, Trumbull

County Prosecutor and/Chris Becker, Esq. Assistant Trumbull County Prosecutor,

Administration Building, 160 High Street, Warren, Ohio 44481, by Regular U. S. mail on this ____

day of April,  2014.

_____
DAVID L. DOUGHTEN
Counsel for Petitioner

- 3 -

**MEMORANDUM IN SUPPORT**

<u>**Procedural History**</u>

A Trumbull County grand jury indicted the defendant Donna Roberts on a four- count indictment for various charges, including two alternative theory counts of capital murder surrounding the death of her ex-husband, Robert Fingerhut. The indictment charged Roberts with one count of the purposeful killing of Mr. Fingerhut with prior calculation and design in violation of R.C. §2903.01(A) and one count of the so-called felony murder in violation of R.C. §2903.01(B). Each of these capital murder counts included two capital specifications addressing violations of R.C. §2929.04(A)(7). The first specification alleged that the murder occurred during the commission of an Aggravated Burglary, R.C. §2911.11. The second specification alleged that the murder occurred during the commission of an Aggravated Robbery, R.C. §2911.01.

The charges indicated that Roberts was not the principal offender, but rather she acted in complicity with the principal, and co-defendant, Nathaniel Jackson. Mr. Jackson was tried separately as he was also capitally indicted. Roberts pleaded not guilty to all counts of the indictment at her arraignment on December 31, 2001.

A jury trial began on March 26, 2003. The jury found the appellant guilty of all counts including the capital and firearm specifications.

On June 3, 2003, Roberts indicated to the court that she wanted to waive the presentation of mitigation at the penalty phase hearing. She also indicated the desire to make an unsworn statement to the jury at that hearing. The trial court conducted a hearing to determine her competency to do so, without a re-referral for a competency examination. A psychologist,

- 4 -

Thomas Eberle, who had previously examined her, believed the Roberts to be competent.  The court also directly questioned her.  The court determined her to be competent pursuant to State v. Ashworth (1999) 85 Ohio St. 3d 56, 1999 Ohio 204.

Prior to the commencement of the penalty phase hearing, the prosecutor elected to dismiss Count Two, R.C. §2903.01(B)(felony-murder) and proceeded with Count One, R.C. §2903.01.(A) (prior calculation and design).

The penalty phase hearing began on June 4, 2004.  At Roberts' direction, the defense waived opening and closing argument.  Roberts did provide an unsworn statement.  That same day, the jury recommended a sentence of death.

On June 20, 2003, the trial court, before allowing an allocution from Roberts, accepted the recommendation and sentenced Roberts to death.  The court also sentenced Roberts to serve ten years for both the convictions of Aggravated Robbery and Aggravated Burglary.  These sentences are being served consecutively to each other and the sentence of death.  The trial court also applied a three-year firearm specification, which is also being served consecutively to the principle sentences.

Roberts appealed her convictions and sentence to Supreme Court of Ohio.  In State v. Roberts (2006), 110 Ohio St. 3d 71, 2006 Ohio 3665, the Court affirmed the convictions but reversed the sentence of death.   The matter was remanded to the trial court to allow Roberts to allocute and to have the trial court independently prepare the R.C. 2929.03(F) sentencing opinion.

- 5 -

**Re-Sentencing Procedure in Trumbull County Common Pleas Court**

Judge John M. Stuard, the original trial judge, conducted the proceedings on the re-sentencing mandate. On May 1, 2007, Ms. Roberts moved to expand the sentencing hearing to include all relevant mitigation evidence. The trial court denied the motion and restricted the hearing to only the allocution of Roberts on September 14, 2007.

The defense moved for a competency hearing. The trial court granted the motion. A defense request for an independent psychologist to review her competency was denied by the court. On October 22 , 2007, the trial court conducted a competency hearing. The court found Roberts to be competent.

That same day, the court conducted a hearing for the purpose of allowing the allocution of Ms. Roberts as required by the Ohio Supreme Court decision.

On October 29, 2007, the trial court announced its decision, again finding death to be the appropriate penalty.

Roberts again appealed her sentence. On October 22, 2013, the Supreme Court of Ohio again remanded this matter for a matter on sentencing consideration. State v. Roberts, 137 Ohio St.3d 230, 2013 Ohio 4580. The Court held:

> [**P73] On remand, the trial court is to review the entire record, including Roberts's allocution of October 22, 2007. The trial court shall consider the entire record—again, [*246] including the allocution—in determining whether the aggravating circumstances outweigh the mitigating factors beyond a reasonable doubt. The trial court shall then write and file a sentencing opinion pursuant to R.C. 2929.03(F) reflecting that it has complied with these instructions.

> [**P74] In accordance with our holding as to Roberts's first proposition of law, Roberts is not entitled to present any further evidence on remand. *Moreover, because Roberts has been given her opportunity to make allocution pursuant to Crim.R. 32, she is not entitled to make another one.*  (Emphasis added)

- 6 -

[**P75] Finally, while the trial court must consider Roberts's allocution, nothing in today's opinion should be interpreted as a determination that the matters discussed in her allocution are true or that the trial court must afford them any particular weight. It is for the trial court to determine in the first instance what mitigating factors, if any, are present in the case, and what weight, if any, they should be given.

Thus, on this remand hearing, this Court is permitted only to review the previous statement's of Roberts and the trial testimony without the ability to fairly assess credibility of either Roberts or the state witnesses for that matter.  This limiting instruction does not comport with Ohio law, as the trial court should consider and give effect to all available mitigation at the re-sentencing hearing.   This restriction is also in violation of the Fifth, Eighth and Fourteenth Amendments to the United States Constitution.

- 7 -

## MEMORANDUM IN SUPPORT

### A.    Overview

In State v. Roberts I, (2006), 110 Ohio St. 3d 71, 2006 Ohio 3665, the Ohio Supreme Court reversed the death sentence. The matter was remanded for a new sentencing hearing. The issue here is whether the presentation of evidence in mitigation may be limited by this Court at the new sentencing hearing. Even if this Court is correct in its reading of the decision of the Ohio Supreme Court, such a limitation is contrary to clearly established precedent of the United States Supreme Court.

Specifically, the Ohio Supreme Court held as follows at p. 95:

> [**P167] Having found no prejudicial error in regard to Roberts's conviction, we affirm the conviction and the judgment of the trial court pertaining to them. Because of the prejudicial error in sentencing Roberts to death, the sentence of death is vacated, and the cause is hereby remanded to the trial court. *On remand, the trial judge will afford Roberts her right to allocute, and the trial court shall personally review and evaluate the evidence, weigh the aggravating circumstances against any relevant mitigating evidence, and determine anew the appropriateness of the death penalty as required by R.C. 2929.03.* The trial court will then personally prepare an entirely new penalty opinion as required by R.C. 2929.03(F) and conduct whatever other proceedings are required by law and consistent with this opinion.

In State v. Roberts (2006), 110 Ohio St. 3d 71, 2006 Ohio 3665, the Supreme Court remanded the case for a second time. This time the Court severely limited what this Court may do.

> [**P74] In accordance with our holding as to Roberts's first proposition of law, Roberts is not entitled to present any further evidence on remand. Moreover, because Roberts has been given her opportunity to make allocution pursuant to Crim.R. 32, she is not entitled to make another one.

- 8 -

From the Court's ruling, it appears as if counsel and Roberts may not say or do anything.  The defense is merely permitted to stand in the courtroom as this Court reads its R.C. §2929.03(F) decision.

If this Court had conducted the original trial, including the penalty phase, in addition to hearing her original allocution on the first remand, the above ruling might be within permissible constitutional restrictions.  However, as this Court has not heard a single witness testify, or heard Roberts speak at either prior hearing, this Court is not in position to properly weigh the aggravation versus the mitigation in this case.  This is not in any way the fault of this Court, as it must follow the rule of the case.  However, the Due Process and Eighth Amendment Clauses of the federal constitution trump the order of this state's highest court.

**B.**      <u>**United States Supreme Court Mitigation Case Law is Contrary to Directive Here**</u>

The Supreme Court of Ohio reversed the second sentence of death for Roberts primarily because the trial court ignored consideration of mitigation she introduced in her allocution during her second sentencing procedure.  Interestingly, the Supreme Court's remand instruction this time around commands that this Court:

> [**P75] Finally, while the trial court must consider Roberts's allocution, nothing in today's opinion should be interpreted as a determination that the matters discussed in her allocution are true or that the trial court must afford them any particular weight. It is for the trial court to determine in the first instance what mitigating factors, if any, are present in the case, and what weight, if any, they should be given.

- 9 -

This is a Sisyphean task for this Court. This Court is being asked to assess the credibility of Roberts based on an allucution the Court did not see or hear. It must assess her credibility based on the bare transcript alone. As in all cases, weight given to witness statements are based upon that witnesses demeanor, sincerity, facial expressions, emotion, body language, tone of voice and the list goes on. This is impossible from the reading of a transcript alone.

The United States Supreme Court has long held the a death conviction may not stand if the sentencing body has been precluded from considering relevant evidence suggesting that the death sentence would not be appropriate. The Eighth Amendment mandates an individualized assessment of the appropriateness of the death penalty. In Lockett v. Ohio, 438 U.S. 586 (1978), the Supreme Court held that the Eighth and Fourteenth Amendments require that the sentencer "not be precluded from considering, *as a mitigating factor*, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." Id., at 604 (emphasis in original). Thus, the Court held unconstitutional the Ohio death penalty statute which mandated capital punishment upon a finding of one aggravating circumstance unless one of three statutory mitigating factors were present.

### 1.    Lockett and Its Progeny Mandates Consideration of All Relevant Mitigation

The prohibition against any infringement on the presentation of mitigating evidence to the sentencer or consideration of by the sentencer has been consistently applied throughout the Court's opinions addressing Lockett and its progeny. Eddings v. Oklahoma, 455 U.S. 104 (1982), Skipper v. South Carolina, 476 U.S. 1 (1986), Hitchcock v. Dugger, 107 S.Ct. 1821

- 10 -

(1987).  In Eddings, a majority of the Court reaffirmed that a sentencer may not be precluded from considering, *and may not refuse to consider*, any relevant mitigating evidence offered by the defendant as the basis for a sentence less than death.

In Eddings, the Oklahoma death penalty statute permitted the defendant to introduce evidence of any mitigating circumstance.  The sentencing judge concluded, as a matter of law, that he was unable to consider mitigating evidence of the youthful defendant's troubled family history, beatings by a harsh father, and emotional disturbance.  Applying Lockett, the Supreme Court held that "[j]ust as the State may not by statute preclude the sentencer from considering any mitigating factor, neither may the sentencer refuse to consider, *as a matter of law*, any relevant mitigating evidence." 455 U.S., at 113-114 (emphasis in original). In that case, "it was as if the trial judge had instructed a jury to disregard the mitigating evidence [the defendant] proffered on his behalf." Id., at 114.

The Constitution limits a State's ability to narrow a sentencer's discretion to consider relevant evidence that might cause it to *decline to impose* the death sentence." McCleskey v. Kemp, 481 U.S. 279, 304 (1987) (emphasis in original).  "Indeed, it is precisely because the punishment should be directly related to the personal culpability of the defendant that the jury must be allowed to consider and give effect to mitigating evidence relevant to a defendant's character or record or the circumstances of the offense." Penry v. Lynaugh, 492 U.S. 302, 327-328 (1989).

Here, the Roberts II, opinion has done just that.  By not allowing this Court to hear the actual witnesses, the decision limits this Court's ability to consider relevant evidence that might

- 11 -

be mitigating.  It is a matter of practice in this state that reviewing courts defer to trial courts on matters of credibility because the trial court is in the best position to observe demeanor, voice inflections, gestures, etc. along with the persuasive weight to be given other documents and exhibits *when considered jointly* with the credibility of the relevant witness testimony.  *See* Washington v. Ohio Dept. of Rehab. & Corr., 166 Ohio App. 3d 797 2006 Ohio 2435. (Emphasis added)  One-half of that joint equation is missing from the anticipated sentencing procedure in this case.

**C.    Statutory Provisions of Ohio's Statutory Scheme**

Ohio's statutory death penalty scheme is basically the codification of Lockett.  It does not limit the source or the procedure from where the mitigation evidence is gleaned.

In general, pursuant to Ohio's statutory scheme, during the penalty phase of a capital trial, the aggravating circumstances of an aggravated murder conviction are assessed pursuant to R.C. §2929.04(A).  In order for a sentence of death to be imposed, one or more of the statutorily-enumerated aggravating factors must be proved beyond a reasonable doubt, and the aggravating factor(s) must outweigh any mitigating factors beyond a reasonable doubt.  R.C. §2929.04(B).

In order to arrive at a sentencing determination that appropriately penalizes the capital defendant, Ohio courts are required to follow the sentencing procedure set forth in R.C. §2929.03.

- 12 -

1.  **Presentation of Mitigation Evidence**

Generally, the bulk of mitigation is presented during the penalty phase hearing, although the statute does not preclude the consideration of such evidence from other proceedings. The penalty phase hearing is evidentiary in nature. During this stage, the jury[1] must consider the O.R.C. §2929.04(A) aggravating factors. Although any aggravating circumstances which render the offense death-eligible would have already been considered during the guilt phase, the jury is statutorily required to re-consider those factors during the penalty phase. As a threshold issue, the death penalty may only be imposed if the prosecution proves one or more of the §2929.04(A) factors beyond a reasonable doubt.

As noted, this evidentiary stage provides an opportunity for the defense to present mitigating evidence in accordance with O.R.C. §2929.04(B). The statute further provides that "the defendant shall be given great latitude in the presentation of evidence of the factors listed in division (B) of this section and of any other factors in mitigation of the imposition of the sentence of death."[2] The defense has the burden of presenting mitigating evidence, and the defendant decides what evidence, if any, to present. State v. Keith, 79 Ohio St.3d 514. (1997).

2.  **Jury Assessment and Recommendation**

After the close of evidence, the defendant is permitted to make a statement to the jury, and the prosecution and defense are afforded the opportunity to make a closing argument regarding the penalty that should be imposed. The jury must then consider the "*relevant*

---

[1] Unless waived, a capital defendant is entitled to have a jury present at both the guilt phase and the penalty phase. The composition of the jury should be the same for both phases. Roberts' trial involved a jury.
[2] O.R.C. §2929.04(C)

- 13 -

*evidence raised at trial, the testimony, other evidence*, statement of the offender, [and] arguments of counsel…" and determine "whether the aggravating circumstances the offender was found guilty of committing are sufficient to outweigh the mitigating factors present in the case." R.C. §2929.03(D)(2).  Based on this determination, the jury is then required to make a sentencing recommendation.  The death penalty can only be recommended if the jury unanimously finds that the aggravating circumstances outweigh the mitigating factors.

The Supreme Court of Ohio has held that the relevant evidence at trial, noted above, may not be used as a non-statutory aggravator.  The nature and circumstances of a case may be only used in mitigation.  In other words, trial phase or guilt-non-guilt phase evidence may only be considered in sentencing deliberations if it is mitigating of the sentence of death. State v. Wogenstahl (1996), 75 Ohio St.3d344, 662 N.E.2d 311. *See also* State v. Williams (2003), 99 Ohio St.3d 493, 2003-Ohio-4396.  Thus, for this Court to determine if the nature and circumstances of the case contained any evidence that might call for a sentence of less than death, it would have to have heard the testimony of the various witnesses who testified at that stage of the trial.

### 3.    Allocution

Crim.R. 32(A)(1) provides capital defendants a final opportunity to mitigate their sentence through allocution.  The allocution phase takes place at sentencing.  Specifically, the Ohio Rules of Criminal Procedure provide that "at the time of imposing sentence, the court shall… address the defendant personally and ask if he or she wishes to make a statement in his or her own behalf or present any information in mitigation of punishment."   Crim.R. 32(A)(1).

- 14 -

Consistent with the objectives of Ohio's bifurcated system, this allocution procedure ensures that the defendant's final plea for mercy is made at the appropriate time and afforded adequate consideration in mitigation of the sentence.

### 4.     Findings

Following the sentencing imposition, the court is required to issue an opinion detailing its specific findings with respect to aggravating and mitigating factors considered at sentencing. O.R.C. §2929.03(F) governs the content and format of these findings opinions, which vary slightly depending on the sentence imposed. As is evidenced here, failure to issue a findings opinion in accordance with the statute may be grounds for resentencing. Roberts II, supra. A sentencer must consider and give effect to all mitigation presented. Penry v. Lynaugh, 492 U.S. 302 (1989).

### D.     Resentencing Procedure Here

In its directive for this proceeding, the Supreme Court of Ohio did not address the procedure to be followed if the original sentencing judge was no longer presiding over the case. The original error here occurred during Roberts allocution and the 2929.03(F) opinion. Traditionally, sentencing phase errors mandating reversals of the sentence occurred during the presentation to the jury, not following. In Roberts II, the opinion was based upon the assumption that the re-sentencing would be conducted by the same judge who heard the evidence at trial and in the sentencing procedure. Thus, there is no guidance as to the procedure that should be followed here. Roberts II is silent as to this situation.

- 15 -

1.  Guidance Where There is No Specific Guidance For Procedure to be Invoked

Because there is confusion in the proper procedure to be applied, this Court can look to

two sources for guidance.  First is the rules of statutory construction.  R.C. §2901.04 (A) holds:

> Except as otherwise provided in division ( C) or (D) of this section, sections of the
> Revised Code defining offenses or penalties shall be strictly construed against the
> state, and liberally construed in favor of the accused.

The second source is the precedent of the Supreme Court of Ohio.  In State v. Penix,

(1987), 32 Ohio St. 3d 369, 513 N.E.2d 744, the Court faced a situation in which the a sentence

of death had be reversed on appeal, but the legislature had not enacted a procedure to address a

new penalty phase hearing on remand.  In other words, there was no statute, such as the current

R.C. §2929.06, which allowed the selection of a second jury for the purposes of the penalty phase

only.  In Penix, the Supreme Court held that death was not an option on remand as the case had

originally been tried to a jury.  Penix held as follows.

> Furthermore, R.C. 2929.03(D)(2), which describes the procedure to be followed by the
> jury in reaching a decision on the death penalty, provides as follows:
>
> > Upon consideration of the relevant evidence raised at trial, the
> > testimony, other evidence, statement of the offender, arguments of
> > counsel, and, if applicable, the reports submitted pursuant to
> > division (D)(1) of this section, the trial jury, if the offender was
> > tried by a jury, shall determine whether the aggravating
> > circumstances the offender was found guilty of committing are
> > sufficient to outweigh the mitigating factors present in the case. If
> > the trial jury unanimously finds, by proof beyond a reasonable
> > doubt, that the aggravating circumstances the offender was found
> > guilty of committing outweigh the mitigating factors, the trial jury
> > shall recommend to the court that the sentence of death be imposed
> > on the offender. Absent such a finding, the jury shall recommend
> > that the offender be sentenced to life imprisonment * * *."

- 17 -

(Emphasis added.)

Thus, the decisions leading to a death sentence must be made by the same jury that convicted the offender in the guilt phase. There are simply no statutory provisions for another jury to make these crucial determinations.

Penix at 372-372.

The Penix Court concluded that since there was not statutory authority allowing the imposition of death upon resentencing, "we may not create such procedure out of whole cloth." Id.

Essentially, this is where Roberts stands now. There is no statutory procedure for current sentencing procedure. Ohio's statutory death penalty sentencing scheme does not permit a judge who has not previously presided over the case to read the words of a defendant's allocution, in addition to the testimony from the two phases of original trial, from the cold pages of a transcript to determine whether the defendant lives or dies. Such a procedure in not countenance in the statutory provisions for the purposes of forming the basis of the required R.C.§2929.03(F) sentencing opinion. Even if this were permitted by statute, such a procedure would not meet federal constitutional mandates under the Fifth, Eighth and Fourteenth Amendments. Here, as in Penix, there is no procedure in the statute for sentencing Roberts to death on the remand. Therefore, a life sentence must be instituted.

- 18 -

**E.** **Conclusion**

**Wherefore**, this Court would appear to have two choices.  First, this Court must order a new sentencing phase hearing, including the selection of a jury for that purpose.  The second, and most legally correct, would be to resentence her without the option of death pursuant to the precedent of State v. Penix, supra.

Respectfully submitted,

DAVID L. DOUGHTEN

ROBERT A. DIXON

Attorneys for Defendant

- 19 -

IN THE COURT OF COMMON PLEAS
TRUMBULL COUNTY, OHIO
CRIMINAL DIVISION

STATE OF OHIO,                    :        CASE NO. 2001 CR 0793
                                  :
        Respondent,               :        JUDGE RAYMOND RICE
                                  :
  -vs-                            :
                                  :
DONNA ROBERTS,                    :        MOTION FOR CONTINUANCE
                                  :        OF SENTENCING HEARING
        Petitioner.               :
                                  :

Now comes the defendant, Donna Roberts,  by and through her attorneys, David L.

Doughten and Robert A. Dixon, and respectfully requests that this Court continue the currently

scheduled hearing date of Aril 28, 2014.   The reason for this request is ostensibly so that counsel

has sufficient time to obtain Roberts' mental health records to ensure that she is competent to

make legal decisions that may possibly result in the waiver of rights and issues.

This motion will be more fully explained in the attached Memorandum

Respectfully submitted,



DAVID L. DOUGHTEN #0002847
4403 St. Clair Avenue
Cleveland, OH 44103
(216) 361-1112

2001 CR
00793
00067244532
CRMC

ROBERT A. DIXON (#0022466)
4403 St. Clair Avenue
Cleveland, Ohio 44103
(216) 432-1992


ATTORNEY FOR DEFENDANT


**CERTIFICATE OF SERVICE**

A copy of the foregoing Petitioner's Motion was served upon Dennis Watkins, Trumbull

County Prosecutor and/Chris Becker, Esq. Assistant Trumbull County Prosecutor,

Administration Building, 160 High Street, Warren, Ohio 44481, by Regular U. S. mail on this 2/

day of April, 2014.


DAVID L. DOUGHTEN
Counsel for Petitioner


- 2 -

## MEMORANDUM IN SUPPORT

On Friday, April 18, 2014, counsel was contacted by the Ohio State Reformatory for Women via the telephone.  Counsel was notified the Ms. Roberts requested that she be able to waive her appearance at her April 28, 2014.   Counsel spoke directly with Ms. Roberts at that time.  The reasons for this request were essentially three fold:

1) She is undergoing mental health treatment and to be taken out of the prison system for the hearing would be disruptive of the progress she has made;

2) The bus ride from Marysville causes her great physical and mental discomfort. The trip and stay in the Trumbull County Jail would be extremely stressful; to the point of having a detrimental effect on her mental health;

3) Because she is unable to make a statement of any kind to this Court, pursuant to the Supreme Court limitations on how this Court is to conduct the sentencing remand, she believes her appearance would be futile.

If Roberts' is of sound mind, she is certainly permitted to waive her appearance. However, before she makes such a decision, her  counsel request additional time for the purpose of:

1) Obtaining her medical and psychiatric records to ensure this Court that she is competent to make the decision of whether to appear for her sentencing;

2) Visit Ms. Roberts at Marysville to discuss with her the value of her appearance before this Court regardless of her ability to speak, and;

3) Discuss this matter with her case manager and her treating professionals.  In order for this to be done, counsel must first obtain a proper release from Roberts.

On April 21, 2014 counsel did send through facsimile a request for the release of her records.  But again, Roberts must sign a release of before counsel may obtain the treatment documents.

- 3 -

**Wherefore**, it is respectfully requested that this Court continue the sentencing hearing of April 28, 2014 until a date convenient for all parties.  Counsel will notify the Court when the records have been received from the institution.

Respectfully submitted,

DAVID L. DOUGHTEN

ROBERT A. DIXON

Attorneys for Defendant

- 4 -

# IN THE COURT OF COMMON PLEAS
## GENERAL DIVISION
## TRUMBULL COUNTY, OHIO

State of Ohio        )    Case No. 2001CR00793

         Plaintiff,    )    Judge Ronald J. Rice

vs.        )    **NOTICE OF POST**
       )    **RELEASE CONTROL**

Donna M. Roberts        )

         Defendant.    )

The Court hereby notifies the Defendant of the following pursuant to

ORC Sections: 2929.19; 2943.032 and 2967.28:

Count 1, Complicity To Commit Aggravated Murder, should you ever

be released from prison you will be subject to a life time of parole

supervision. If you violate any of the conditions of your parole then you will

be forced to serve the balance of your life sentence.

Count 3, Complicity To Commit Aggravated Burglary, you will be

subject to a mandatory period of post-release control of 5 years following

your release from prison.

Count 4, Complicity To Commit Aggravated Robbery, you will be

subject to a mandatory period of post-release control of 5 years following

your release from prison.



2001 CR
00793
00040058493
CRN

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2394

If you violate the conditions of a post-release control sanction imposed by the parole board upon the completion of your stated prison term, the parole board may impose upon you as the offender a residential sanction that includes a new prison term of up to nine months for each violation of the rules not to exceed one-half of your stated prison term.

If while on post-release control you are convicted of a new felony offense in addition to being punished for the underlying conduct (new offense), an additional prison term of one year, or what time remains on your post-release control term, may be added as an additional, or consecutive, penalty.

You may not ingest or be injected with a drug of abuse and you must submit to random drug testing while on post release control.


Dated: April 30, 2014                    _Donna M. Roberts_____
                                          Donna M. Roberts, Defendant


I, certify that the Judge has explained to my client the post-release control consequences as set forth above.

                                          _____
                                          David L. Doughten,
                                          Attorney For Defendant


Page 2

# IN THE COURT OF COMMON PLEAS
## GENERAL DIVISION
## TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| State of Ohio | ) | Case No. 2001CR00793 |
| | ) | |
| Plaintiff, | ) | Judge Ronald J. Rice |
| | ) | |
| vs. | ) | **OPINION OF THE COURT** |
| | ) | |
| Donna Marie Roberts | ) | **FINDINGS OF FACT AND** |
| | ) | **CONCLUSIONS OF LAW** |
| Defendant. | ) | **REGARDING IMPOSITION** |
| | ) | **OF DEATH PENALTY** |

This matter was remanded by the Supreme Court of Ohio with the following instruction: "On remand, the trial court must consider all the mitigating evidence reflected in the record, including Roberts's allocution, weigh the aggravating circumstances against the mitigating factors, and file a sentencing opinion that reflects that it has complied with these instructions. In doing so, the trial court must make an independent determination of whether a death sentence is appropriate and may not give deference to the sentences previously entered." *State v. Roberts*, 2013-Ohio-4580, ¶96.

## FACTUAL AND RECORDS REVIEW

Pursuant to the remand of this matter from the Supreme Court of Ohio, the Court has carefully read, reviewed, examined and/or inspected

2001 CR
00793
000019478086
0



DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2396

the entire court record; all of the transcripts from pre-trial & post-trial;

exhibits; pleadings; including, but not limited to the following items:

1. The indictment of the Trumbull County Grand Jury;

2. All of the docket entries filed on this matter;

3. All of the notes entered by the staff as to scheduling;

4. The prior court scheduling of 29 events, including status hearings, hearings, pre-trials, motions to suppress, jury trial, sentencing and re-sentencing hearings;

5. All of the pleadings as filed by the State of Ohio and counsel for the Defendant;

6. The transcript of the Motion To Suppress held on February 3, 2002;

7. Transcripts of Proceedings Volumes 1 through 23 of individual and group voir dire questioning and juror selection;

8. All of the exhibits admitted at trial as listed on a document titled List of Trial Exhibits And Mitigation Hearing Exhibits;

9. The entire trial and sentencing record;

10. The entire record following the remand from *Roberts I*.

In accordance with *Roberts II*, the Court did not permit Roberts to

update her mitigation at the hearing following the recent remand.

"Establishing a right to update mitigation could result in arbitrary

distinctions between similarly situated capital defendants." Id. at ¶37.

Roberts expressly and validly waived her right to present mitigation

evidence during the original sentencing phase. Id. at ¶49.

The Court notes this matter is now before a different judge as Judge John M. Stuard has since retired from the bench and shortly thereafter passed away. As instructed, the Court has not given any deference to the prior decisions of Judge Stuard in this matter. However, the Court notes the acknowledgment as recognized in *Roberts II* that "[t]he trial court then stated that it had considered the record and the oral statements. ***
Beyond this, however, the opinion does not discuss Roberts's allocution."
The Court notes with confidence and respect for Judge Stuard, he would not have acknowledged consideration of the oral statements (including the allocution) had he not, in fact, considered the same. Such was his nature of fairness. Nevertheless, as previously indicated, the Court has given no deference to the prior decisions of Judge Stuard and has complied with the remand instructions as directed.

## ALLOCUTION

Despite the fact that Roberts expressly waived mitigation, Roberts took advantage of her opportunity for allocution at the original sentencing and again following the *Roberts I* remand. Roberts explained in her original allocution she had no intention of offering mitigating factors for consideration. Rather, she advised she chose allocution because it was against her religion to take an oath.

Page 3

Roberts's allocution centered on two salient points. First, she pointed out inconsistencies in the evidence and testimony as she perceived them. Second, she drew attention to the differences between her trial and the trial of Nathaniel Jackson claiming racial inequities.

Roberts accurately characterized in her allocution that the jury had been exposed to "five percent" of her life. That "five percent" included her relationship with Jackson. As she stated, "the other 95 percent of my life was dedicated to my husband, my son, my family and business, and doing charity for unfortunate to share the good fortune that God bestowed upon me and my loved ones." The Court finds this is the most truthful and yet, unfortunate, statement in the Defendant's entire allocution. Five percent comprised of bad decisions has such a profound effect on a lifetime.

Roberts brought attention to the fact that the personnel in the courtroom were white. She likewise opined on inaccurate portrayals in the newspaper regarding the facts of this case.

Roberts explained she did not consider the jury to be a "jury of her peers." She provided some details regarding her life. She worked for a plastic surgeon for 25 years. She lived in Miami for 27 years.  She traveled the world. Roberts expressed concern that some of the jurors indicated they didn't read any newspapers or watch the news.  She also expressed concern regarding the young age of a few of the jurors, citing

Page 4

their lack of life experiences as a hindrance to their ability to judge the case.

Next, Roberts recounted certain aspects regarding the prosecution against Nathaniel Jackson. Roberts pointed out her perceived inconsistencies in the Jackson trial compared to the prosecution by the State in her case. She also alleged racial bias on behalf of the prosecution.

Roberts relayed her opinion on Howland Chief of Police Paul Monroe and his role in this matter prior to holding that position. She claimed Monroe intentionally informed the jury she was Jewish in an effort to sway the jurors against her even more. Roberts used her opportunity at allocution to chastise the jurors for becoming too involved in the operatic drama of the prison letters and communications than the truth.

Roberts reviewed the testimony regarding the life insurance policies. She claimed she had no knowledge the victim had increased the value of his life insurance policies. She also reviewed her financial history and business investments. Roberts pointed out she was earning $200,000 annually and the insurance policy of $250,000 was not enough to seduce her to murder Mr. Fingerhut.

Roberts added personal details about her life with the victim by describing their daily rituals with their beloved pets. She discussed the

Page 5

victim's family life and relationships with his sons from a previous relationship. She insisted she did not want any money from Mr. Fingerhut and relayed the fact that she signed over any life insurance policies to his children.

Next, Roberts spoke regarding Santiago Mason. She explained that Mason sued her for framing him. She protested this characterization and explained why that was not true. She described the victim's sports memorabilia collection. She also attacked Mason's character.

Roberts disputed certain elements of the State's case. Namely, she challenged the eye witness from her neighborhood who saw her driving in the area. She questioned the time frame against the witness's statement and her own activities during the relevant period of time on the night of the murder.

She also challenged the testimony of Frank Reynolds. She pointed out inconsistencies in Reynolds' testimony with the facts of her life. She contradicted the testimony of Reynolds regarding her argument over money with the victim. She was incensed that Reynolds would advise the jury she was upset with Mr. Fingerhut because he would not give her money. She was adamant she did not need any money from Mr. Fingerhut.

Roberts also challenged the physical evidence of the prosecution. She discussed the bloody washcloth found at the Days Inn. She claimed the washcloth and towel were purposefully placed there by the police. She also attacked the validity of other evidence recovered from the hotel and surrounding area.

Roberts questioned the introduction of certain sexual information about her by the State as inappropriate. She claimed it was only meant to influence the jury into forming a low opinion of her. She also challenged the search of the residence as improper.

In addition, Roberts claimed the marijuana found at the residence did not belong to her. She maintained it was also fabricated by the police. However, she admitted to smoking marijuana on a regular basis.

Roberts discussed the letters between her and Jackson as well as the taped telephone conversations while Jackson was incarcerated. She alleged the State manipulated those conversations to fit their case by not admitting the entire transcript of the conversations, only limited portions.

With gratitude, she acknowledged her attorneys. She described when and where she acquired the weapons found at the home. She explained the events when Mason allegedly stole her gun. Roberts also reviewed the coroner's report.

Roberts described her reaction to finding the victim on the night in question. She then relayed her version of the Jackson case running parallel to her prosecution. She challenged the veracity of the location of the murder weapon in the reports. According to the Defendant, the police moved the gun.

Finally, Roberts closed her allocution by advising the jury they are required to recommend a death sentence since she presented no mitigating evidence. She pleaded for equal treatment and a sentence equal to that of Jackson's. However, Roberts reiterated this was not an admission of guilt. Rather, she claimed her plea was one of social justice and equality. She pledged her love for the victim and ended her allocution with the instruction for the jury to "do what is right."

At the resentencing hearing following *Roberts I*, Roberts again offered allocution to the Court. On October 22, 2007, Roberts indicated the record had been "*** a big misrepresentation about me, my character, my personality, and my life ***." Roberts proceeded to provide additional information relative to her personal history.

Roberts explained she grew up on a farm in Austintown, Ohio. She attended a Roman Catholic elementary school. She recounted that she was sexually abused by an older cousin when she was very young. She described her household as "*** very very abusive ***."

Roberts recalled her father abused her mother physically and verbally. Roberts stated she "*** spent a lot of time under my bed, especially when guns came out." When Roberts was taken to a doctor, she described being taken into a room alone with a male doctor and afterward he advised her mother she was "*** a bad girl." According to Roberts, she was always sad and "*** felt empty because nobody had ever paid attention to me or hugged me or anything ***."

Despite this sadness, Roberts achieved good grades and rewards in school. She was on the honor roll and dean's list later in college. She received accolades as a writer. She married her high-school sweetheart and moved to Miami, Florida. She described having her son and acknowledged his many accomplishments.

Roberts was involved in a car accident in 1963. She "*** fell asleep and the car went through big giant trees, hitting something ***." She recalled she was "filled with glass" from the debris. Roberts described herself as "*** spacey for awhile" after the accident.

In 1983, Roberts was again involved in a car accident. She flew through the windshield and experienced numbness in her extremities after the accident. Roberts was treated by a neurosurgeon for some time after this.

Page 9

In 1999, Roberts again fell asleep behind the wheel and was involved in a car accident. Roberts recalled months after this event where she has no memory. Roberts stated, "*** Robert was calling me spacey and goofy, and he was really worried about me, and he told me I should get some kind of help, but I didn't want any help." Roberts acknowledged she ignored the depression.

Roberts recounted a suicide attempt wherein she started her car in the garage with her dog, Blossom. She stated Blossom alerted her by pawing at her arm and she called for help. Roberts was hospitalized after this event in a psychiatric ward. Following this hospitalization, Roberts sought SSI for disability.

Roberts explained she was prescribed three or four medications at that time. One medication was to "stop the voices." Roberts experienced some hallucinations while incarcerated. She described seeing "giant anthills" on her floor. Roberts also described falling and hitting her head on multiple occasions after this event. Roberts described periods of time when she could not identify the day of the week.

Roberts explained she walked away from the restaurant she owned one day because she became overwhelmed. She left the refrigerator and freezers full and never returned.

Page 10

Roberts described her life working with a plastic surgeon. She described helping people with reconstructive surgery. Roberts remembered how she used to help people pay their checks at the restaurant when they didn't have enough money.

Roberts converted to Judaism in 1980. She explained her involvement in a Jewish burial society and the customs therewith. She proudly expressed her involvement in a campaign to rescue a Jewish man from persecution in Ethiopia. She also volunteered in Israel with the plastic surgeons performing skin grafts.

In contrast, Roberts explained the inaccuracies in the record describing Mr. Fingerhut as the entrepreneur. Roberts claimed she was the businesswoman. They divorced to protect her assets; not his. She took out $75,000 from her mutual fund for a down payment on her dream house. She described herself as the breadwinner. Mr. Fingerhut only worked occasionally, according to Roberts. Roberts espoused her talents in trading on the stock market and investing in real estate.

Roberts was fixated on ensuring the Court was aware of her affluence. She was proud of the fact that she had money and wore expensive clothes. She again chastised Frank Reynolds for his testimony that she and Mr. Fingerhut had an argument because he wouldn't give her $3,000. Roberts stated, "The accounts were mine. The house was mine.

Page 11

The only way we had three cars is on my credit." She spoke regarding her gifts of money to her son and her sister.

Roberts closed her allocution with the following words: "I never intended for anything like that to happen, and I couldn't believe it, and I still can't believe it. We loved each other and we had a good life."

## AGGRAVATING CIRCUMSTANCES

R.C. 2929.04(A) sets forth the applicable aggravating circumstance enabling a consideration of the death penalty to be specified in the indictment and proven beyond a reasonable doubt in this case as "*** (7) [t]he offense was committed while the offender was committing, attempting to commit, or fleeing immediately after committing or attempting to commit kidnapping, rape, aggravated arson, aggravated robbery, or aggravated burglary, and either the offender was the principal offender in the commission of the aggravated murder or, if not the principal offender, committed the aggravated murder with prior calculation and design."

On May 28, 2003, Roberts was found guilty following a trial before a petit jury and after due deliberation by said jury of the following: Count One: Complicity to Commit Aggravated Murder in violation of R.C. 2923.03(A)(2), 2903.01(A) and 2941.14(C) of Robert S. Fingerhut, with two separate Specifications of Aggravating Circumstances; to wit,

Page 12

Specification Number One: Aggravated Burglary in violation of R.C.

2929.04(A)(7) and Specification Number Two: Aggravated Robbery in

violation of R.C. 2929.04(A)(7); Count Two: Complicity to Commit

Aggravated Murder in violation of R.C. 2923.03(A)(2), 2903.01(B) and

2941.14(C) of Robert S. Fingerhut, with two separate Specifications of

Aggravating Circumstances, to wit, Specification Number One:

Aggravated Burglary in violation of R.C.2929.04(A)(7) and Specification

Number Two: Aggravated Robbery in violation of R.C. 2929.04(A)(7);

Count Three: Complicity to Commit Aggravated Burglary (F1) with Firearm

Specification in violation of R.C. 2923.03(A)(2), 2911.11(A)(1)(2) and

2941.145; and Count Four: Complicity to Commit Aggravated Robbery

(F1) with Firearm Specification in violation of R.C. 2923.03(A)(2),

2911.01(A)(1)(3) and 2941.145. Count Two was removed from the Jury

pursuant to a Motion to Dismiss by the State.

The Court finds the aggravating circumstances were set forth in the

indictment of Roberts. The Court further finds these elements of the

aggravating circumstances were proven beyond a reasonable doubt in the

trial of this matter. The Court finds Roberts acted with prior calculation and

design in the aggravated murder of Fingerhut.

The Court finds Roberts acted with prior calculation and design in

the aggravated murder of Fingerhut while committing or attempting to

Page 13

commit aggravated burglary. It was proved beyond a reasonable doubt at trial that Roberts provided access to Jackson to trespass in Fingerhut's residence, 254 Fonderlac Drive in Howland Township, Trumbull County, Ohio with the specific purpose of killing Fingerhut with prior calculation and design. It was further proven beyond a reasonable doubt that the tools used to carry out this plot were provided by Roberts: the gloves, ski mask, firearm as well as the access to the residence. Countless recorded telephone calls and written letters outlined this plan to murder Mr. Fingerhut in this manner leaving no reasonable doubt whatsoever.

The Court finds Roberts acted with prior calculation and design in the aggravated murder of Fingerhut while committing or attempting to commit aggravated robbery. It was proven beyond a reasonable doubt at trial that Roberts acted with prior calculation and design. Roberts intended for Jackson to steal Mr. Fingerhut's vehicle, originally to use the car as a means for kidnapping Fingerhut away from the residence to kill him off site. The police recovered Mr. Fingerhut's vehicle a few blocks from where Jackson was arrested. The keys were still in the ignition.

The Court finds beyond a reasonable doubt Roberts acted with complicity to commit aggravated murder while committing or attempting to commit or in fleeing immediately after committing or attempting to commit aggravated burglary. The Court finds beyond a reasonable doubt Roberts

Page 14

acted with complicity to commit aggravated murder while committing or attempting to commit or in fleeing immediately after committing or attempting to commit aggravated robbery. The Court further finds beyond a reasonable doubt Roberts acted with complicity to commit aggravated murder with prior calculation and design.

Having found the aggravating circumstances proven beyond a reasonable doubt, the Court now must "*** weigh against the aggravating circumstances proved beyond a reasonable doubt, the nature and circumstances of the offense, the history, character, and background of the offender ***" along with the additional statutory factors set forth in R.C. 2929.04(B) as mitigating factors.

## MITIGATING FACTORS

Pursuant to R.C. 2929.03(F), the Court makes the following findings regarding the factors listed in R.C. 2929.04(B):

1. *"Whether the victim of the offense induced or facilitated it; ***"*

The Court finds Mr. Fingerhut, the victim in this matter, did nothing to facilitate or induce his own death. The Court gives no weight to the allegations made by Roberts in her letters to Jackson regarding the physical abuse she suffered at the hand of Mr. Fingerhut. Even if the Court were to accept those claims as true, there is no evidence of any imminent threat to Roberts. Likewise, there is no evidence Roberts was

Page 15

prevented from evading the abusive situation by alternate means such as leaving the residence or filing a complaint with the police department.

2. "*Whether it is unlikely that the offense would have been committed, but for the fact that the offender was under duress, coercion, or strong provocation; \*\*\**"

The Court finds there is no evidence before the Court that Roberts was under any duress, coercion or strong provocation to commit the crime.

3. "*Whether, at the time of committing the offense, the offender, because of a mental disease or defect, lacked substantial capacity to appreciate the criminality of the offender's conduct or to conform the offender's conduct to the requirements of the law: \*\*\**"

The Court finds there is no evidence to suggest Roberts lacked substantial capacity to appreciate the criminality of her conduct or to conform her conduct to the rules of law. Although Roberts testified in her allocution regarding the status of her mental health, the Court does not find that statement contained any evidence to suggest or support Roberts did not understand the criminality of her conduct. The Court finds the incidents described by Roberts in her allocution were either isolated events following physical traumas associated with her motor vehicle

accidents or they occurred after the death of Mr. Fingerhut. There is no evidence to suggest Roberts lacked mental capacity at the time of the events in question.

    4. "*The youth of the offender; ***"*

The Court finds the age of Roberts is not a factor for consideration.

    5. "*The offender's lack of a significant history of prior criminal convictions and delinquency adjudications; ***"*

The Court finds Roberts does not have a significant history of prior criminal convictions. This factor does weigh in her favor.

    6. "*If the offender was a participant in the offense but not the principal offender, the degree of the offender's participation in the offense and the degree of the offender's participation in the acts that led to the death of the victim; ***"*

The Court finds although Roberts was not the "triggerman," the evidence clearly demonstrated she orchestrated the entire plot. The record reveals the intentional acts of Roberts in planning the aggravated murder of Mr. Fingerhut in exchange for his life insurance proceeds. Roberts induced Jackson to be her accomplice with promises of payment in the form of a Cadillac or a Lincoln, a wealthy lifestyle, vacations and a home in a desirable neighborhood. Roberts premeditated for months. She

Page 17

checked the balance of the life insurance proceeds. She arranged for Jackson's transportation from prison to a hotel room where she fulfilled his sexual needs, fed him food for sustenance, and provided the necessary tools to carry out the murder. The Court finds that Roberts was the primary mastermind behind Mr. Fingerhut's murder. But for her premeditated calculations, Mr. Fingerhut would not have been murdered by Jackson on that day.

7. "*Any other factors that are relevant to the issue of whether the offender should be sentenced to death.*"

The Court finds there were several mitigating elements presented in Roberts's allocution. Certain elements of Roberts's allocution (at the original sentencing and again upon the earlier remand) are worthy of some discussion.

First, Roberts allegedly grew up in an abusive household. She claims she was witness to physical confrontations between her mother and her father to the point where she would hide under the bed "when the guns came out." This history, coupled with the alleged physical abuse between Roberts and Fingerhut does weigh slightly in favor of Roberts. Perhaps Roberts was still shouldering those childhood burdens into her adult life.

Page 18

However, there is absolutely no evidence before the Court to support the veracity of the physical abuse allegations made by Roberts against Fingerhut. Therefore, the Court is left to ponder whether those allegations were part of her scheme to induce Jackson to act as her accomplice. Roberts failed to alert the Court to any physical violence between her and Fingerhut during her allocution. Instead, Roberts professed her love for the man whom she contracted to have killed. Therefore, the Court finds these facts weigh only slightly in favor of Roberts.

Likewise, the Court gives little weight to Roberts's allocution claims regarding the rape by her cousin when she was very young. The Court finds this is entitled to little weight as there is no direct connection to the underlying crime. Even if Roberts were carrying the psychological scars of this trauma, there is little to no evidence to suggest any connection to the underlying crime.

The Court finds the charitable history of Roberts is entitled to some mitigation weight in her favor. Apparently, Roberts was quite generous with both her time and funds. She assisted plastic surgeons performing reconstructive surgery in Israel. She helped rescue a man from persecution in Ethiopia. On a more day-to-day basis, Roberts would help others in her family as well as strangers who were struggling financially.

Page 19

However, the Court finds this generosity must also be reviewed in totality with Roberts's self-promotion. Roberts frequently referred to her wealth in her allocution. She wanted the Court to know she was the breadwinner, not Mr. Fingerhut. She berated the man who testified she was angry with Fingerhut when he refused to give her $3,000. It seems these mischaracterizations of her social status were more upsetting to Roberts than the guilty verdict against her for complicity to commit murder. The Court finds these two polar self-portraits are not compatible with one another. Therefore, the Court affords no weight to the self-reported acts of generosity and charity of Roberts as mitigation.

The Court finds the reports of mental instability and physical traumas following several car accidents could be mitigating factors in Roberts's favor. Roberts was involved in two motor vehicle accidents which occurred after Roberts fell asleep behind the wheel. The mere fact that one has not only a singular incident of this magnitude, but two, leads the Court to question whether there are other biological or physiological factors at play. In addition, the mental status post-accidents and the lack of memory for an extended period of time is likewise a mitigating factor that weighs in favor of Roberts.

However, the Court finds the self-promotion by Roberts as to her financial prowess, educational accolades and charitable works is

Page 20

contradictory to her assertion that she has suffered mental deficiencies as a result of the motor vehicle accidents described above. The two are juxtaposed; either Roberts is a powerful entrepreneur capable of earning a magnitude of wealth and respect or she is one suffering from mental trauma. The Court gives little to no weight to any evidence of the latter.  In addition, the Court finds Roberts was fairly well-spoken in the delivery of her allocution. Plus, Roberts expressly made a valid waiver of her right to present mitigation evidence. There was no mental deficiency at play in that decision.

There is no question Roberts suffered some physical and mental traumas as a result of these accidents. Roberts even attempted to commit suicide in her garage. However, the Court finds these incidents are isolated and occurred in a time frame so far removed from the murder of Mr. Fingerhut that their relevance for mitigation is significantly decreased. In addition, pursuant to R.C. 2929.04(B), the Court must also consider and weigh "*** the nature and circumstances of the offense, the history, character, and background of the offender ***." The Court finds the history, character and background of Roberts have been sufficiently addressed in the discussion specified in R.C. 2929.04(B)(1-7) above.

Roberts planned and plotted for the murder of Fingerhut over a period of at least three months. She conspired with Jackson, her

Page 21

imprisoned lover, to murder Fingerhut for his life insurance proceeds. The murder plan was well documented through telephone calls recorded from Jackson's residence; the Lorain Correctional Institute. In addition, detailed letters were exchanged between the loving couple outlining their plans. These plans included the acquisition of supplies, the procurement of a hotel room, and the promise of a new vehicle for Jackson – all provided by Roberts. Ultimately, Roberts provided access to the residence in order for Jackson to carry out the murder as planned.

Despite these intricate details, Roberts "forgot" to include Jackson as one of her named lovers to the police during interviews. In addition, Roberts attempted to thwart the investigation into the Fingerhut murder by implicating other individuals; not Jackson. In addition, Roberts's feigned emotional outbursts over Fingerhut's death do not correlate to the insidious behavior relative to the same.

Therefore, the Court has granted little to no weight to any of the mitigating factors outlined by Roberts in her allocution. In addition, the Court finds Roberts's request for "equal treatment" to Jackson is inconsistent with the primary body of her allocution and has not given any weight to that request either.

The presence of mitigating factors does not preclude the imposition of a sentence of death. Rather, those mitigating factors are to then be

Page 22

weighed against the aggravating circumstances of the crime. In conducting this comparison, the Court overwhelmingly finds the aggravating circumstances outweigh the mitigating factors.

## CONCLUSIONS OF LAW

The mitigating factors given little weight by this Court do not even approach an imbalance of the aggravating circumstances present in this matter. Roberts' traumatic childhood, her allegations of physical abuse at the hands of Fingerhut, the physical injuries sustained in multiple motor vehicle accidents, the mental disability, the lack of a prior criminal record and Roberts' charitable tendencies do not even draw the Court's attention away from the aggravating circumstances.

The Court has made a careful and independent review of the entire record, including Roberts's first and second allocutions. Upon this review, the Court finds the aggravating circumstances outweigh the mitigating factors by proof beyond a reasonable doubt.

Therefore, the Court hereby finds the sentence of death is an appropriate penalty for the Defendant Donna Marie Roberts in this matter.

Dated: April 30, 2014

Judge Ronald J. Rice

Page 23

**VIII. $25.00 APPLICATION FEE NOTICE**

By submitting this Financial Disclosure / Affidavit of Indigency Form, you will be assessed a non-refundable $25.00 application fee unless waived or reduced by the court. If assessed, the fee is to be paid to the clerk of courts within seven (7) days of submitting this form to the entity that will make a determination regarding your indigency. No applicant may be denied counsel based upon failure or inability to pay this fee.

**IX. AFFIDAVIT OF INDIGENCY**

I, _Donna M. Roberts_ (applicant or alleged delinquent child) being duly sworn, state:

1. I am financially unable to retain private counsel without substantial hardship to me or my family.

2. I understand that I must inform the public defender or appointed attorney if my financial situation should change before the disposition of the case(s) for which representation is being provided.

3. I understand that if it is determined by the county or the court that legal representation should not have been provided, I may be required to reimburse the county for the costs of representation provided. Any action filed by the county to collect legal fees hereunder must be brought within two years from the last date legal representation was provided.

4. I understand that I am subject to criminal charges for providing false financial information in connection with this application for legal representation, pursuant to Ohio Revised Code sections 120.05 and 2921.13.

5. I hereby certify that the information I have provided on this financial disclosure form is true to the best of my knowledge.

_Donna M. Roberts_ _04.30.14_
Affiant's signature          Date

**Notary Public / Individual duly authorized to administer oath:**

Subscribed and duly sworn before me according to law, by the above named applicant this _30th_ day of _April_, _2014_, at _Warren_, County of _Trumbull_, State of Ohio.

_[signature]_          _Atty - Notary, St of Ohio, My Commission_
Signature of person administering oath          Title (example: Notary, Deputy Clerk of Courts, etc.) _Does Not Expire_
_Robert Dixon_

**X. JUDGE CERTIFICATION**

I hereby certify that above-noted applicant is unable to fill out and / or sign this financial disclosure / affidavit for the following reason: _____. I have determined that the party represented meets the criteria for receiving court-appointed counsel.

_____          _____
Judge's signature          Date

**XI. NOTICE OF RECOUPMENT**

ORC. §120.03 allows for county recoupment programs. Any such program may not jeopardize the quality of defense provided or act to deny representation to qualified applicants. No payments, compensation, or in-kind services shall be required from an applicant or client whose income falls below 125% of the federal poverty guidelines. See OAC 120-1-05.

Through recoupment, an applicant or client may be required to pay for **part** of the cost of services rendered, if he or she can reasonably be expected to pay. See ORC §2941.51(D)

**XII. JUVENILE'S PARENTS' INCOME\* – FOR RECOUPMENT PURPOSES ONLY – NOT FOR APPOINTMENT OF COUNSEL**

|  | Custodial Parents' Income (Do not include parents' income if parent or relative is alleged victim) | Total |
|---|---|---|
| Employment Income (Gross) |  |  |
| Unemployment, Workers Compensation, Child Support, Other Types of Income |  |  |
| **TOTAL INCOME** | $ | |

\*Please complete Section VI on page 1 of this form if you would like the court to consider your monthly expenses when determining the amount of recoupment which you can reasonably be expected to pay.

2001 CR
00793
00042240694
INDIGENT

## FINANCIAL DISCLOSURE / AFFIDAVIT OF INDIGENCY
($25.00 application fee may be assessed—see notice on reverse side)

### I. PERSONAL INFORMATION

| Applicant's Name: Donna M. Roberts | D.O.B. 5-22-44 | Person Represented's Name (if juvenile) | D.O.B. |
|---|---|---|---|

Mailing Address: Ch. Returney for Warren 1479 Collins Ave
City: Maysville Ohio    State: OH.    Zip Code: 43040

Case No.: 2001 CR 0793 (Trumbull Co.)
Phone ( )    Cell Phone ( )

### II. OTHER PERSONS LIVING IN HOUSEHOLD

| Name 1) N/A | D.O.B. | Relationship | Name 3) | D.O.B. | Relationship |
|---|---|---|---|---|---|
| 2) | | | 4) | | |

### III. PRESUMPTIVE ELIGIBILITY

The appointment of counsel is presumed if the person represented meets any of the qualifications below.  Please place an 'X'

Ohio Works First / TANF: ____  SSI: ____  SSD: ____  Medicaid: ____  Poverty Related Veterans' Benefits: ____  Food Stamps: ____

Refugee Settlement Benefits: ____  Incarcerated in state penitentiary: X  Committed to a Public Mental Health Facility: ____

Other (please describe): _____  Juvenile: ____ (if juvenile, please continue at Section VIII)

### IV. INCOME AND EMPLOYER

| | Applicant | Spouse (Do not include spouse's income if spouse is alleged victim) | Total Income |
|---|---|---|---|
| Gross Monthly Employment Income | N/A | | |
| Unemployment, Worker's Compensation, Child Support, Other Types of Income | | | |
| | | TOTAL INCOME | $ |

Employer's Name: _____  Phone Number: _____

Employer's Address: _____

### V. LIQUID ASSETS

| Type of Asset | Estimated Value |
|---|---|
| Checking, Savings, Money Market Accounts | $ —0— |
| Stocks, Bonds, CDs | $ —0— |
| Other Liquid Assets or Cash on Hand | $ —0— |
| Total Liquid Assets | $ —0— |

### VI. MONTHLY EXPENSES

| Type of Expense | Amount | Type of Expense | Amount |
|---|---|---|---|
| Child Support Paid Out | 0 | Telephone | 0 |
| Child Care (if working only) | | Transportation / Fuel | |
| Insurance (medical, dental, auto, etc.) | | Taxes Withheld or Owed | |
| Medical / Dental Expenses or Associated Costs of Caring for Infirm Family Member | | Credit Card, Other Loans | |
| Rent / Mortgage | | Utilities (Gas, Electric, Water / Sewer, Trash) | |
| Food | | Other (Specify) | |
| EXPENSES | $ 0 | EXPENSES | $ 0 |

### VII. DETERMINATION OF INDIGENCY

If applicant's Total Income in Section IV is at or below 187.5% of the Federal Poverty Guidelines, counsel must be appointed.
For applicants whose Total Income in Section IV is above 125% of the Federal Poverty Guidelines, see recoupment notice in Section XI.
If applicant's Liquid Assets in Section V exceed figures provided in OAC 120-1-03, appointment of counsel may be denied if applicant can employ counsel using those liquid assets.
If applicant's Total Income falls above 187.5% of Federal Poverty Guidelines, but applicant is financially unable to employ counsel after paying monthly expenses in Section VI, counsel must be appointed.

# IN THE COURT OF COMMON PLEAS
## GENERAL DIVISION
## TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| State of Ohio | ) | Case No. 2001CR00793 |
| | ) | |
| Plaintiff, | ) | Judge Ronald J. Rice |
| | ) | |
| vs. | ) | |
| | ) | |
| Donna Marie Roberts | ) | **JUDGMENT ENTRY** |
| | ) | |
| Defendant. | ) | |

This Writ of Execution is directed to Thomas Altiere, Sheriff of

Trumbull County, Ohio to convey Donna Marie Roberts to the Ohio

Reformatory for Women or other facility as instructed by the director for

the Ohio Department of Rehabilitation and Correction where she shall be

held until the execution of the death sentence against Donna Marie

Roberts.

IS SO ORDERED.

Dated: April 30, 2014                    _____
                                          Judge Ronald J. Rice



2001 CR
00793
00005064611
O

# IN THE COURT OF COMMON PLEAS
## GENERAL DIVISION
## TRUMBULL COUNTY, OHIO

State of Ohio ) Case No. 2001CR00793

Plaintiff, ) Judge Ronald J. Rice

vs. )

Donna Marie Roberts ) **JUDGMENT ENTRY**

Defendant. )

This cause came before the Court on the Motion to Preclude a Sentence of Death; or in the Alternative, Order a Full Penalty Phase Hearing filed by the Defendant, Donna Marie Roberts. The Court has reviewed the motion, memoranda and pleadings. In addition, the Court heard oral arguments on the motion on the 30th day of April 2014.

This matter is before the Court on remand from the Supreme Court of Ohio with specific instructions to "*** consider all the mitigating evidence reflected in the record, including Roberts's allocution, weigh the aggravating circumstances against the mitigating factors, and file a sentencing opinion that reflects that it has complied with these instructions.  In doing so, the trial court must make an independent determination of whether a death sentence is appropriate and may not give deference to the sentences previously entered." *State v. Roberts*, 2013-Ohio-4580, ¶96.



2001 CR
00793
00072497222
O

*248*

Roberts claims the failure to conduct a completely new sentencing hearing, including the empaneling of a new jury for the mitigation/penalty phase, violates the Fifth, Sixth, Eighth and Fourteenth Amendments of the United States Constitution. Although the Court recognizes the unique position of this Court as a sentencing authority without first-hand knowledge of the events in the original mitigation/penalty phase and the remand following *Roberts I*, the Court also must be cognizant of its position in relation to the directive issued by the Supreme Court of Ohio in *Roberts II*. In addition, the Court has fully complied with the upper Court's directive and has conducted a thorough review of the record, including but not limited to transcripts of all proceedings, pleadings, judgment entries and exhibits.

Further, *Roberts II* already considered and rejected the arguments set forth by Roberts in the pending motion. "In a case in which the defendant was not deprived of any constitutional right – including her Eighth Amendment right to present mitigation – at the time of her mitigation hearing, there seems to be no basis for requiring the trial court to reopen or supplement that evidence in a later proceeding. To hold, as *Coyle* does, that a new mitigation hearing must be held, even though no constitutional error infected the original one, would transform the right to present relevant mitigation into a right to *update* one's mitigation. Such a

right has no clear basis in *Lockett* or its progeny." *Roberts II*, supra, at ¶36.

The Court finds *Roberts II* considered and rejected Roberts's arguments regarding the presentation of any additional evidence at this phase of the proceedings. As stated in *Roberts II*, the correct procedure is "*** to proceed on remand from the point at which the error occurred." Id. at ¶45 (internal citation omitted).

Therefore, the Court finds Roberts's Motion to Preclude a Sentence of Death; or in the Alternative, Order a Full Penalty Phase Hearing is hereby denied.

IT IS SO ORDERED.

Dated: April 30, 2014

Judge Ronald J. Rice



**IN THE COURT OF COMMON PLEAS**
**TRUMBULL COUNTY, OHIO**

| | |
|---|---|
| STATE OF OHIO, ) | CASE NO. 2001 CR 793 |
| ) | |
| PLAINTIFF, ) | JUDGE RONALD J. RICE |
| ) | |
| -VS- ) | **DEATH PENALTY** |
| ) | |
| DONNA MARIE ROBERTS, ) | SENTENCE TO THE OHIO |
| ) | REFORMATORY FOR WOMEN |
| DEFENDANT. ) | |
| ) | ENTRY ON SENTENCE |

The Defendant, Donna Marie Roberts, herein having been indicted by the
September Eighth, 2001, Term of the Grand Jury of Trumbull County, Ohio, for Count
One: Aggravated Murder in violation of R.C. 2903.01(A) and 2941.14(C) of Robert S.
Fingerhut, with two (2) separate Specifications of Aggravating Circumstances to wit:
Specification No. 1: Aggravated Burglary in violation of R.C. 2929.04(A)(7) and
Specification No. 2: Aggravated Robbery in violation of R.C. 2929.04(A)(7); Count
Two: Aggravated Murder in violation of R.C. 2903.01(B) and 2941.14(C) of Robert S.
Fingerhut, with two (2) separate Specifications of Aggravating Circumstances, to wit:
Specification No. 1: Aggravated Burglary in violation of R.C. 2929.04(A)(7), and
Specification No. 2: Aggravated Robbery in violation of R.C. 2929.04(A)(7); Count
Three: Aggravated Burglary (F1) With Firearm Specification in violation of R.C.
2911.11.(A)(1)(2) and 2941.145; and Count Four: Aggravated Robbery (F1) With
Firearm Specification in violation of R.C. 2911.01(A)(1)(3) and 2941.145, and on the
8th day of April, 2003, having been brought into Court for trial before a petit jury and
being represented by counsel, Attorney J. Gerald Ingram and Attorney John B.
Ingram, and the jury having been empaneled and after due deliberation on May 28,

Page 1


2001 CR
00793
00084237606
OSEN

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2425

2003, was found guilty of Count One: Complicity to Commit Aggravated Murder in violation of R.C. 2923.03(A)(2), 2903.01(A) and 2941.14(C) of Robert S. Fingerhut, with two (2) separate Specifications of Aggravating Circumstances, to wit: Specification No. 1: Aggravated Burglary in violation of R.C. 2929.04(A)(7), and Specification No. 2: Aggravated Robbery in violation of R.C. 2929.04(A)(7); Count Two: Complicity to Commit Aggravated Murder in violation of R.C 2923.03(A)(2), 2903.01(B) and 2941.14(C) of Robert S. Fingerhut, with two (2) separate Specifications of Aggravating Circumstances, to wit: Specification No. 1: Aggravated Burglary in violation of R.C. 2929.04(A)(7), and Specification No. 2: Aggravated Robbery in violation of R.C 2929.04(A)(7); Count Three: Complicity to Commit Aggravated Burglary (F1) With Firearm Specification in violation of R.C. 2923.03(A)(2), 2911.11.(A)(1)(2) and 2941.145; and Count Four: Complicity to Commit Aggravated Robbery (F1) With Firearm Specification in violation of R.C. 2923.03(A)(2), 2911.01(A)(1)(3) and 2941.145. Thereafter, Count Two was removed from the Jury pursuant to a Motion to Dismiss by the State.

On June 4, 2003, the Defendant having been brought into Court to give evidence in mitigation on Count One of the indictment, and after arguments of counsel and instructions of law, and after due deliberation, it was the finding and recommendation of the Jury on June 4, 2003, that the sentence of death be imposed on the Defendant.

On April 30, 2014, pursuant to a remand from the Supreme Court of Ohio, the Defendant's sentencing hearing was held pursuant to R.C. 2929.19. Attorney David L. Doughten and Attorney Robert A. Dixon were present as counsel for the Defendant

Page 2

and Assistant County Prosecutor Christopher Becker was present as counsel for the State. The Defendant was also present in Court and was previously afforded all rights pursuant to Crim.R. 32. The Court has considered the record and oral statements, as well as the principles and purposes of sentencing under R.C. 2929.11, and has balanced the seriousness and recidivism factors of R.C. 2929.12.

Pursuant to law, the Court this day, April 30, 2014, having determined in a separate opinion of specific findings that the aggravating circumstances as to the count of Aggravated Murder outweigh the mitigating factors by proof beyond a reasonable doubt, then made inquiry as to whether the Defendant had anything to say why judgment should not be pronounced against her, and the Defendant in answer showed no good cause or sufficient reason why sentence should not be pronounced.

The Court has considered the factors under R.C. 2929.14, and makes the following findings: (1) the shortest prison term will demean the seriousness of the Defendant's conduct; (2) the longest prison term is appropriate because the Defendant committed the worst form of the offense; (3) multiple prison terms are necessary to protect the public from future crime and to punish the offender; (4) consecutive prison sentences are not disproportionate to the seriousness of the Defendant's conduct and to the danger the offender poses to the public; and (5) the harm caused by multiple offenses was so great that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the Defendant's conduct.

It is therefore ORDERED, ADJUDGED, and DECREED that the Defendant, DONNA MARIE ROBERTS:

Page 3

1. Shall be sentenced to death on Count One;

2. Shall serve an imprisonment term of ten (10) years on Count Three; plus a mandatory term of three (3) years on the Firearm Specification to be served prior to and consecutive to the sentence imposed in Count Three;

3. Shall serve an imprisonment term of ten (10) years on Count Four, plus a mandatory term of three (3) years on the Firearm Specification to be served prior to and consecutive to the sentence imposed in Count Four, sentence in Count Four to be served consecutively to the sentence imposed on Count Three;

4. The Firearm Specifications in Count Three and Count Four shall merge as one sentence in Count Three as a matter of law;

5. The Defendant shall submit to DNA testing;

6. The Defendant is Ordered to pay the cost of prosecution taxed in the amount of $_____ for which execution is awarded.

The Court has further notified the Defendant that post-release control is mandatory in this case for five (5) years, as well as the consequences for violating conditions of post-release control imposed by the Parole Board under R.C. 2967.28. The Defendant is ordered to serve as part of this sentence any term of post-release control imposed by the Parole Board, and any prison term for violation of that post-release control.

The Court further disapproves of the Defendant's placement in a program of shock incarceration pursuant to R.C. 5120.031 or for placement in an intensive prison program pursuant to R.C. 5120.032.

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2428

IT IS SO ORDERED.

Dated: April 30, 2014

_____
JUDGE RONALD J. RICE

THE CLERK OF COURTS IS HEREBY ORDERED TO SERVE COPIES OF THIS ENTRY TO
ALL COUNSEL OF RECORD.

_____
JUDGE RONALD J. RICE

You are hereby notified that you have been convicted of a felony of violence
and pursuant to Section 2923.13 of the Ohio Revised Code, you are prohibited
from acquiring, having, carrying or using any firearm or dangerous ordnance.

4/30/14
Copies To:
PROS
J. Ingram
A. Millette
J. Wilhelm
D. Marburger
S. Bolten
D. Doughten
J. Juhasz



Page 5

# WARRANT TO CONVEY

## COURT OF COMMON PLEAS, TRUMBULL COUNTY, WARREN, OHIO

**2001 CR 00793**

**STATE OF OHIO**

VS.

**DONNA MARIE ROBERTS**

**TO THE SHERIFF OF SAID COUNTY:**

*WHEREAS*, OUR SAID COURT, BEGUN AND HELD AT WARREN, OHIO IN SAID COUNTY ON APRIL 30, 2014, THE SAID DEFENDANT **DONNA MARIE ROBERTS** WAS INDICTED FOR:

**AGGRAVATED MURDER (prior calculation/design), 2903.01(A)**
**Aggravated Murder, 2903.01(B**
**Agg Burglary, 2911.11(A)(1),(2)**
**Aggravated Robbery, 2911.01(A)(1)(3)**

AND WAS SENTENCED BY THE COURT TO:

*OHIO REFORMATORY FOR WOMEN*

YOU ARE THEREFORE HEREBY COMMANDED, TO TAKE CHARGE OF AND CONVEY THE SAID **DONNA MARIE ROBERTS** TO *OHIO REFORMATORY FOR WOMEN* AT MARYSVILLE, OHIO

AND MAKE DUE RETURN OF YOUR PROCEEDING HEREIN TO THIS OFFICE FORTHWITH.

> *IN TESTIMONY WHEREOF*, I HAVE
> HEREUNTO SET MY HAND AND
> AFFIXED THE SEAL OF SAID COURT AT
> TRUMBULL COUNTY, WARREN, OHIO
> May 1, 2014
>
> **KAREN INFANTE ALLEN,**
> *Clerk of Courts*
>
> By:   KIMBERLY REEVES, Deputy Clerk



2001 CR
00793
00054896138
CRWARR



# EXECUTION FOR COSTS IN FELONY
*Revised Code, Section 2949.15*

## COURT OF COMMON PLEAS, TRUMBULL COUNTY, WARREN, OHIO

### 2001 CR 00793

**STATE OF OHIO**

     VS.

**DONNA MARIE ROBERTS**

**TO THE SHERIFF OF SAID COUNTY:**

**YOU ARE HEREBY COMMANDED,** THAT OF THE GOODS AND CHATTELS, AND FOR WANT THEREOF, THEN OF THE LANDS AND TENEMENTS OF

**DONNA MARIE ROBERTS**

IN YOUR COUNTY, WHEREOF WAS CONVICTED, AS APPEARS OF RECORD, WITH INTEREST THEREON FROM THE FIRST DAY OF THE TERM AFORESAID; ALSO YOU CAUSE TO BE MADE THE COSTS OF EXECUTION AND INCREASE COSTS THAT ACCRUE.

HEREOF FAIL NOT, BUT OF THIS WRIT AND YOUR PROCEEDINGS ENDORSED HEREON, MAKE DUE RETURN, WITHIN TEN (10) DAYS FROM THE DATE HEREOF.

*IN TESTIMONY WHEREOF*, I HAVE HEREUNTO SET MY HAND AND AFFIXED THE SEAL OF SAID COURT AT TRUMBULL COUNTY, WARREN, OHIO
May 1, 2014

**KAREN INFANTE ALLEN,**
*Clerk of Courts*

By:   KIMBERLY REEVES, Deputy Clerk



2001 CR
00793
00001067766

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2431

**2001 CR 00793**

**TRUMBULL COUNTY
COMMON PLEAS COURT**
*Trumbull County, Warren, Ohio*

**STATE OF OHIO**

Vs.

**DONNA MARIE ROBERTS**

**EXECUTION FOR COSTS**

**RETURNED AND FILED**

_____, 20_____

**KAREN INFANTE ALLEN,**
*Clerk of Courts*

By: _____
    *DEPUTY CLERK*

**RETURN**

**RECEIVED** THIS WRIT ON THE _1_ DAY
OF ___May___ , 20 _14_ , AT _1 26_
O'CLOCK _P_ .M., AND ON THE _____
DAY OF _____, 20_____ ,

_Γι̣αττιενε_

**SHERIFF**

By: ___A. GEORGIADIS___
    *DEPUTY*

| FEES | |
|---|---|
| Mileage: | $ |
| Service: | $ 5.00 |
| Other: | $ |
| _____ | $ |
| **TOTAL:** | $ 5.00 |

_____, OHIO

_____, 20____

.

CLERK OF COURTS

2014 MAY 1 PM 2 51

TRUMBULL COUNTY
CLERK OF COURTS
KAREN INFANTE ALLEN

2001 CR 00793

**TRUMBULL COUNTY
COMMON PLEAS COURT**
*Trumbull County, Warren, Ohio*

**STATE OF OHIO**

Vs.

**DONNA MARIE ROBERTS**

**WARRANT TO CONVEY**

**RETURNED AND FILED**

_____, 201____

**KAREN INFANTE ALLEN,**
*Clerk of Courts*

By: _____
  *DEPUTY CLERK*

**RETURN**

**RECEIVED** THIS WRIT ON THE _1_ DAY
OF _MAY_____, 201_4_, AT _1:26_
O'CLOCK _P_.M., AND ON THE _2_
DAY OF _MAY_____, 201_4_,
I EXECUTED THE SAME BY CONVEYING
THE PERSON NAMED TO THE PLACE
DESIGNATED AS SHOWN BY THE
RECEIPT ENDORSED HEREON.

_Thomas L. Altiere_____
SHERIFF

By: _Dep. Edward M. Poland_____
  *DEPUTY*

**FEES**

| | | |
|---|---|---|
| Mileage: | $ | 461.00 |
| Service: | $ | 10.00 |
| Other: | $ | |
| _____ | $ | |
| **TOTAL:** | $ | 471.00 |

_____, OHIO

_____, 201____

**RECEIVED** THIS DAY FROM _____
_____ SHERIFF OF _____
COUNTY, OHIO, THE PRISONER NAMED
IN THE WITHIN **WARRANT**.

_R. Beddles/JA_____
*Superintendent*

IN THE COURT OF COMMON PLEAS
TRUMBULL COUNTY, OHIO

STATE OF OHIO,            )     CASE No. 01-CR-793
      Plaintiff,        )
                  )     JUDGE: RONALD J. RICE
-vs-               )
                  )
DONNA ROBERTS,       )
      Defendant.     )     STATE'S MOTION FOR
                  )     NUNC PRO TUNC ENTRIES
                  )

Now comes the Plaintiff, the State of Ohio ("State"), by and through undersigned counsel, who respectfully requests that this Court file a Nunc Pro Tunc Judgment Entry on Sentence and a Nunc Pro Tunc Findings of Fact and Conclusions of Law Regarding Imposition of Death Penalty to correctly reflect the court's pronouncements from the bench during Defendant Donna Roberts's ("Defendant") resentencing hearing April 30, 2014.

With respect to the Entry on Sentence, while the Court informed Defendant Donna Roberts from the bench at the re-sentencing hearing that post-release control is mandatory if she is released on parole before serving her Death Sentence and the possible penalties for violation of that post-release control, the Court's admonition does not appear in the written sentencing entry. See *State v. Robinson,* 7th Dist. No. 10 MA 128, 2012-Ohio-1686, ¶122-123 (Regardless of whether the trial court sufficiently notified the defendant of the sanctions for violating post-release control at the sentencing hearing, it failed to include this information in the sentencing entry. This error in and of itself requires that the matter be remanded for resentencing).

1





2001 CR
00793
00078419751

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2434

Also, though this Court orally informed Defendant Roberts about the possibility of earning "good time" while in prison, that information was likewise omitted from the written entry.

Turning attention to the Findings of Fact and Conclusions of Law, the Court described Defendant Roberts's unsworn statement to her trial jury at mitigation as an "allocution" at pages 3, 4, 5, 8, 18, and 22. Though some courts use these two terms interchangeably, the Ohio Supreme Court has held "***an unsworn statement under R.C. 2929.03(D)(1) is not an allocution***." *State v. Campbell,* 90 Ohio St. 3d 320, 326 (2000). Before the resentencing hearing concluded, the Court orally corrected the substitution of the term "allocution" for "unsworn statement," but the correction is not reflected in the written entry filed subsequent to the hearing.

The use of a nunc pro tunc entry is the appropriate vehicle to correct clerical mistakes in order to accurately reflect courtroom proceedings. "The purpose of a *nunc pro tunc* order is to have the judgment of the court reflect its true action. The power to enter a judgment *nunc pro tunc* is restricted to placing upon the record evidence of judicial action which has actually been taken." *State, ex rel. Phillips, v. Indus. Comm.* 116 Ohio St. 261 (1927).

The amendments suggested by the State include language consistent with pronouncements made in open court and in the presence of the Defendant, her counsel and counsel for the State. The State deems these corrections to be prudent in light of the hyper-judicial scrutiny already exercised in the above-captioned case.

2

Respectfully submitted.

CHRISTOPHER D. BECKER (#0047252)

LuWAYNE ANNOS (#0055651)
ASSISTANT PROSECUTING ATTORNEYS
TRUMBULL COUNTY, OHIO
4th Floor Administration Building
160 High St., N.W.
Warren, Ohio  44481-1092
Phone: (330) 675-2907
Fax: (330) 675-2431

PROOF OF SERVICE

A copy of the foregoing document was sent by ordinary U.S. Mail to Atty. David

Doughten (#0002847) and Atty. Robert A. Dixon (#0022466), 4403 St. Clair Ave., Cleveland,

Ohio, 44103, on this 5th Day of May, 2014.

LuWAYNE ANNOS (#0055651)
ASSISTANT PROSECUTING ATTORNEY
TRUMBULL COUNTY, OHIO

3

IN THE COURT OF COMMON PLEAS
TRUMBULL COUNTY, OHIO

STATE OF OHIO                          :        Case No. 01 CR 793

    Plaintiff-Respondent,              :        JUDGE RONALD J. RICE

    -vs-                               :

DONNA ROBERT,                          :        **Motion to Appoint Appellate Counsel**

    Defendant-Petitioner.              :        **DEATH PENALTY CASE**

    Now comes the defendant, and requests the appointment of  David L. Doughten, and Robert A. Dixon for her appeal to the Supreme Court of Ohio.   Ms. Roberts was re-sentenced to death on April 30, 2014.

    David L. Doughten and Robert A. Dixon both have previously represented Donna Roberts in both this Court and in the Supreme Court of Ohio.  They have forged a solid attorney-client relationship with the defendant.  Due to this history and the complexity of possible issues, it is requested that this Court allow them to remain as counsel and assign them as counsel in the above-captioned case.

Respectfully submitted,



DAVID L. DOUGHTEN #0002847
4403 St. Clair Avenue
Cleveland, Ohio  44103
(216) 361-1112

2001 CR
00793
00077848138

_Robert A. Dixon_

ROBERT A. DIXON #0002847
4403 St. Clair Avenue
Cleveland, Ohio  44103
(216) 432-1992


## CERTIFICATE OF SERVICE

A copy of the foregoing appellant's Brief was served upon Dennis Watkins, Trumbull

County Prosecutor and/or Christopher Becker, Esq. Assistant Trumbull County Prosecutor,

Administration Building, 160 High Street, Warren, Ohio 44481, by Regular U. S. mail on this 1st

day of May, 2014.

_David L. Doughten_

DAVID L. DOUGHTEN
Counsel for Defendant

IN THE COURT OF COMMON PLEAS
TRUMBULL COUNTY, OHIO
CRIMINAL DIVISION

STATE OF OHIO,                    :        CASE NO.    2001 CR 0793

          Plaintiff,              :

    -vs-                           :        JUDGE RONALD J. RICE

DONNA ROBERTS,                    :        <u>ORDER</u>

          Defendant.              :

      This case came on for consideration through motion by the defendant Donna Roberts for the appointment of substitute counsel for her direct appeal to the Supreme Court of Ohio. The Court, being fully advised, finds the motion well-taken.

      It is therefore <u>ORDERED</u> that David L. Doughten, 4403 St. Clair Avenue, Cleveland, OH 44103 be appointed as lead counsel for Ms. Roberts in her appeal to the Supreme Court of Ohio. Robert L. Dixon, Ohio Registration #0022466, 4403 St. Clair Avenue, Cleveland, Ohio, 44103 is appointed as co-counsel.

FILED<br>
COURT OF COMMON PLEAS<br>
MAY 1 2 2014<br>
TRUMBULL COUNTY, OH<br>
KAREN INFANTE ALLEN, CLERK

JUDGE RONALD J. RICE

<u>5-9-14</u>
Date



2001 CR
00793
00048209398
0

254

**KAREN INFANTE ALLEN**
*Trumbull County Clerk of Courts*
161 High Street
Warren, Ohio 44481



FILED
COURT OF COMMON PLEAS
MAY 14 2014
TRUMBULL COUNTY, OH
KAREN INFANTE ALLEN, CLERK



JOSEPH E. WILHELM
8 EAST LONG ST
11TH FL
COLU



NIXIE        430    DE 1009      0005/11/14
          RETURN TO SENDER
          NO SUCH NUMBER
          UNABLE TO FORWARD
BC: 44481100699     *1573-08345-01-43

IN THE COURT OF COMMON PLEAS
TRUMBULL COUNTY, OHIO
CRIMINAL DIVISION

STATE OF OHIO,         :        CASE NO. 2001 CR 0793

                    :

      Respondent,    :        JUDGE ~~RAYMOND~~ RICE

                    :

 -vs-              :

                    :

DONNA ROBERTS,     :       MOTION TO CLARIFY COURT'S

                    :       SENTENCING OPINION FILED

      Petitioner.     :       PURSUANT TO R.C. 2929.03(F)

                    :

Now comes the defendant, Donna Roberts, by and through her attorneys, David L. Doughten and Robert A. Dixon, and respectfully moves this Court to clarify its sentencing opinion filed pursuant to R.C. §2929.03(F). This request is being made because the terms "allocution" and "unsworn statement" appear to be used interchangeably. Counsel believes that this is error that can be rectified by a simple *nunc pro tunc* entry.

It is understood that this Court is well aware of the difference of between the two above procedures in a capital proceeding. It appears that the confusion is just an editing error. As an officer of the court, counsel does not want to address this issue to the Supreme Court of Ohio if it is not necessary to do so, as this may amount to a considerable waste of time to all parties involved here if the errors can be corrected at this point of the proceedings.



2001 CR
00793
00032036775
CRM

Counsel has written and advised Roberts of the issue. Roberts does not want to return to Trumbull County for a second reading of this Court's opinion as the ultimate conclusion is unlikely to change.

Therefore, it is requested that this Court review the R.C. 2929.03(F) proceeding as filed and make any corrections of editing error on a *nunc pro tunc* basis. It is further requested that this Court re-file the opinion, with the time for the filing of the Notice of Appeal starting from the date of the filing of the corrected sentencing entry.

Counsel has discussed this procedure with the prosecutors in question. It is believed that the Trumbull County Prosecutor will not object to this procedure.

To be clear, if counsel is incorrect and the opinion does not contain any error in the view of the Court, it is requested that counsel be notified so that Roberts may file a timely notice of appeal on the originally filed opinion.

Respectfully submitted,

DAVID L. DOUGHTEN #0002847
4403 St. Clair Avenue
Cleveland, OH 44103
(216) 361-1112

ROBERT A. DIXON (#0022466)
4403 St. Clair Avenue
Cleveland, Ohio 44103
(216) 432-1992

ATTORNEY FOR DEFENDANT

- 2 -

## CERTIFICATE OF SERVICE

A copy of the foregoing Petitioner's Motion was served upon Dennis Watkins, Trumbull County Prosecutor and/Chris Becker, Esq. Assistant Trumbull County Prosecutor, Administration Building, 160 High Street, Warren, Ohio 44481, by Regular U. S. mail on this ___ day of May, 2014.

DAVID L. DOUGHTEN
Counsel for Petitioner

- 3 -



*First Assistant*
CHRISTOPHER D. BECKER

*Chief - Civil Division*
WILLIAM J. DANSO

*Chief - Criminal Division*
CHARLES L. MORROW

*Chief - Appellate Division*
LuWAYNE ANNOS

*Chief - Juvenile Division*
STANLEY A. ELKINS

*Investigators*
GARY S. HETZEL
ROYANNE RUDOLPH

*Civil Division*
JAMES M. BRUTZ
LYNN B. GRIFFITH, III
JASON M. TOTH

*Criminal Division*
GINA BUCCINO ARNAUT
MICHAEL A. BURNETT
DEENA L. DeVICO

*Chief Assault Division*
DIANE L. BARBER, CHIEF
GABRIEL M. WILDMAN

*Child Support Division*
MATTHEW J. BLAIR
JAMES F. LEWIS

## DENNIS WATKINS
### *Trumbull County Prosecuting Attorney*

4th FLOOR ADMINISTRATION BUILDING
160 HIGH STREET N.W.     WARREN, OHIO 44481-1092
PHONE: 330-675-2426 • FAX: 330-675-2431
Email: Prosecutor@co.trumbull.oh.us

June 3, 2014

Donna Marie Roberts
Attention: Warden
Inmate No. W055276
Ohio Reformatory for Women
1479 Collins Avenue
Marysville, Ohio 43040

Re:   STATE OF OHIO VS. DONNA MARIE ROBERTS

Case No.: 2001 CR 793

Pursuant to Ohio Revised Code §2949.14, §2947.23,  State of Ohio ex. rel. Biros v. Logan,

Trumbull App. No. 2003-T-16, and all applicable Ohio Statutes relating to the payment of costs for

both indigent and non-indigent persons, and pursuant to a court order for payment of costs, I hereby

certify on behalf of the Prosecuting Attorney of Trumbull County that the attached Statement of

Costs as complied by the Clerk of Courts is correct and legal to the best of my knowledge.

Respectfully submitted,
DENNIS WATKINS
Prosecuting Attorney
Trumbull County, Ohio

By:   

Lynn B. Griffith III (0003313)
Assistant Prosecuting Attorney
Trumbull County, Ohio



2001 CR
00793
00086654023
CRCOSTS



**KAREN INFANTE ALLEN**
**COURT OF COMMON PLEAS**
**CLERK OF COURTS**
**TRUMBULL COUNTY**
**WARREN, OHIO**

May 28, 2014

## COST BILL

STATE OF OHIO

     vs.

CASE NO. **2001 CR 00793**

DONNA MARIE ROBERTS

## STATEMENT OF COSTS

| | | |
|---|---|---|
| Clerk Fees: | $ | 86.32 |
| Sheriff Fees: | | 5.00 |
| Witness Fees: | | |
| Other Fees: | | 535.00 |
| **TOTAL BALANCE DUE** | $ | **636.32** |

### NO PERSONAL CHECKS
*(Money Orders Accepted)*

I HEREBY CERTIFY THE ABOVE IS CORRECT:

**KAREN INFANTE ALLEN**
***CLERK OF COURTS***

BY: <u>KIMBERLY REEVES</u>
*Deputy Clerk*

**MAIL PAYMENT TO:**
    **KAREN INFANTE ALLEN**
    *Clerk of Courts*
    161 HIGH STREET, NW
    WARREN, OHIO 44481

**IN THE COURT OF COMMON PLEAS**
**GENERAL DIVISION**
**TRUMBULL COUNTY, OHIO**

| | | |
|---|---|---|
| State of Ohio | ) | Case No. 2001CR00793 |
| | ) | |
| Plaintiff, | ) | Judge Ronald J. Rice |
| | ) | |
| vs. | ) | **OPINION OF THE COURT** |
| | ) | |
| | ) | NUNC PRO TUNC |
| Donna Marie Roberts | ) | **FINDINGS OF FACT AND** |
| | ) | **CONCLUSIONS OF LAW** |
| Defendant. | ) | **REGARDING IMPOSITION** |
| | ) | **OF DEATH PENALTY** |

This Nunc Pro Tunc Opinion is rendered at the requests of the State and the Defendant. Therefore, the Court renders this Nunc Pro Tunc Opinion which shall reflect certain editing inconsistencies in regard to the terms "unsworn statement" and "allocution" in the original Opinion. The substance of the opinion remains unchanged and pursuant to Defendant's request, the Court did not set this matter for a hearing to correct the clerical errors. Rather, the Court rendered this Nunc Pro Tunc Opinion as follows:

This matter was remanded by the Supreme Court of Ohio with the following instruction:  "On remand, the trial court must consider all the mitigating evidence reflected in the record, including Roberts's allocution, weigh the aggravating circumstances against the mitigating factors, and file a sentencing opinion that reflects that it has complied with these

Page 1



2001 CR
00793
00048273620
0

*257*

instructions. In doing so, the trial court must make an independent determination of whether a death sentence is appropriate and may not give deference to the sentences previously entered." *State v. Roberts*, 2013-Ohio-4580, ¶96.

## FACTUAL AND RECORDS REVIEW

Pursuant to the remand of this matter from the Supreme Court of Ohio, the Court has carefully read, reviewed, examined and/or inspected the entire court record; all of the transcripts from pre-trial & post-trial; exhibits; pleadings; including, but not limited to the following items:

1. The indictment of the Trumbull County Grand Jury;

2. All of the docket entries filed on this matter;

3. All of the notes entered by the staff as to scheduling;

4. The prior court scheduling of 29 events, including status hearings, hearings, pre-trials, motions to suppress, jury trial, sentencing and re-sentencing hearings;

5. All of the pleadings as filed by the State of Ohio and counsel for the Defendant;

6. The transcript of the Motion To Suppress held on February 3, 2002;

7. Transcripts of Proceedings Volumes 1 through 23 of individual and group voir dire questioning and juror selection;

8. All of the exhibits admitted at trial as listed and attached to this entry on a document titled List of Trial Exhibits And Mitigation Hearing Exhibits;

9. The entire trial and sentencing record;

Page 2

10.  The entire record following the remand from *Roberts I*.

In accordance with *Roberts II*, the Court did not permit Roberts to update her mitigation at the hearing following the recent remand. "Establishing a right to update mitigation could result in arbitrary distinctions between similarly situated capital defendants." Id. at ¶37. Roberts expressly and validly waived her right to present mitigation evidence during the original sentencing phase. Id. at ¶49.

The Court notes this matter is now before a different judge as Judge John M. Stuard has since retired from the bench and shortly thereafter passed away. As instructed, the Court has not given any deference to the prior decisions of Judge Stuard in this matter. However, the Court notes the acknowledgment as recognized in *Roberts II* that "[t]he trial court then stated that it had considered the record and the oral statements. *** Beyond this, however, the opinion does not discuss Roberts's allocution." The Court notes with confidence and respect for Judge Stuard, he would not have acknowledged consideration of the oral statements (including the allocution) had he not, in fact, considered the same. Such was his nature of fairness. Nevertheless, as previously indicated, the Court has given no deference to the prior decisions of Judge Stuard and has complied with the remand instructions as directed.

## ALLOCUTION/UNSWORN STATEMENT

Page 3

Despite the fact that Roberts expressly waived mitigation, Roberts took advantage of her opportunity to provide an unsworn statement at the original sentencing and again following the *Roberts I* remand. Roberts explained in her original unsworn statement she had no intention of offering mitigating factors for consideration. Rather, she advised she chose to provide the unsworn statement because it was against her religion to take an oath.

Roberts's unsworn statement centered on two salient points. First, she pointed out inconsistencies in the evidence and testimony as she perceived them. Second, she drew attention to the differences between her trial and the trial of Nathaniel Jackson claiming racial inequities.

Roberts accurately characterized in her unsworn statement that the jury had been exposed to "five percent" of her life. That "five percent" included her relationship with Jackson. As she stated, "the other 95 percent of my life was dedicated to my husband, my son, my family and business, and doing charity for unfortunate to share the good fortune that God bestowed upon me and my loved ones." The Court finds this is the most truthful and yet, unfortunate, statement in the Defendant's entire soliloquy.  Five percent comprised of bad decisions has such a profound effect on a lifetime.

Page 4

Roberts brought attention to the fact that the personnel in the courtroom were white. She likewise opined on inaccurate portrayals in the newspaper regarding the facts of this case.

Roberts explained she did not consider the jury to be a "jury of her peers." She provided some details regarding her life. She worked for a plastic surgeon for 25 years. She lived in Miami for 27 years.  She traveled the world. Roberts expressed concern that some of the jurors indicated they didn't read any newspapers or watch the news.  She also expressed concern regarding the young age of a few of the jurors, citing their lack of life experiences as a hindrance to their ability to judge the case.

Next, Roberts recounted certain aspects regarding the prosecution against Nathaniel Jackson. Roberts pointed out her perceived inconsistencies in the Jackson trial compared to the prosecution by the State in her case. She also alleged racial bias on behalf of the prosecution.

Roberts relayed her opinion on Howland Chief of Police Paul Monroe and his role in this matter prior to holding that position. She claimed Monroe intentionally informed the jury she was Jewish in an effort to sway the jurors against her even more. Roberts used her opportunity in this unsworn statement to chastise the jurors for becoming too involved in

the operatic drama of the prison letters and communications than the truth.

Roberts reviewed the testimony regarding the life insurance policies. She claimed she had no knowledge the victim had increased the value of his life insurance policies. She also reviewed her financial history and business investments. Roberts pointed out she was earning $200,000 annually and the insurance policy of $250,000 was not enough to seduce her to murder Mr. Fingerhut.

Roberts added personal details about her life with the victim by describing their daily rituals with their beloved pets. She discussed the victim's family life and relationships with his sons from a previous relationship. She insisted she did not want any money from Mr. Fingerhut and relayed the fact that she signed over any life insurance policies to his children.

Next, Roberts spoke regarding Santiago Mason. She explained that Mason sued her for framing him. She protested this characterization and explained why that was not true. She described the victim's sports memorabilia collection. She also attacked Mason's character.

Roberts disputed certain elements of the State's case. Namely, she challenged the eye witness from her neighborhood who saw her driving in the area. She questioned the time frame against the witness's statement

and her own activities during the relevant period of time on the night of the murder.

She also challenged the testimony of Frank Reynolds. She pointed out inconsistencies in Reynolds' testimony with the facts of her life. She contradicted the testimony of Reynolds regarding her argument over money with the victim. She was incensed that Reynolds would advise the jury she was upset with Mr. Fingerhut because he would not give her money. She was adamant she did not need any money from Mr. Fingerhut.

Roberts also challenged the physical evidence of the prosecution. She discussed the bloody washcloth found at the Days Inn. She claimed the washcloth and towel were purposefully placed there by the police. She also attacked the validity of other evidence recovered from the hotel and surrounding area.

Roberts questioned the introduction of certain sexual information about her by the State as inappropriate. She claimed it was only meant to influence the jury into forming a low opinion of her. She also challenged the search of the residence as improper.

In addition, Roberts claimed the marijuana found at the residence did not belong to her. She maintained it was also fabricated by the police. However, she admitted to smoking marijuana on a regular basis.

Page 7

Roberts discussed the letters between her and Jackson as well as the taped telephone conversations while Jackson was incarcerated. She alleged the State manipulated those conversations to fit their case by not admitting the entire transcript of the conversations, only limited portions.

With gratitude, she acknowledged her attorneys. She described when and where she acquired the weapons found at the home. She explained the events when Mason allegedly stole her gun. Roberts also reviewed the coroner's report.

Roberts described her reaction to finding the victim on the night in question. She then relayed her version of the Jackson case running parallel to her prosecution. She challenged the veracity of the location of the murder weapon in the reports. According to the Defendant, the police moved the gun.

Finally, Roberts closed her unsworn statement by advising the jury they are required to recommend a death sentence since she presented no mitigating evidence. She pleaded for equal treatment and a sentence equal to that of Jackson's. However, Roberts reiterated this was not an admission of guilt. Rather, she claimed her plea was one of social justice and equality. She pledged her love for the victim and ended her statement with the instruction for the jury to "do what is right."

Page 8

At the resentencing hearing following *Roberts I*, Roberts offered allocution to the Court. On October 22, 2007, Roberts indicated the record had been "*** a big misrepresentation about me, my character, my personality, and my life ***." Roberts proceeded to provide additional information relative to her personal history.

Roberts explained she grew up on a farm in Austintown, Ohio. She attended a Roman Catholic elementary school. She recounted that she was sexually abused by an older cousin when she was very young. She described her household as "*** very very abusive ***."

Roberts recalled her father abused her mother physically and verbally. Roberts stated she "*** spent a lot of time under my bed, especially when guns came out." When Roberts was taken to a doctor, she described being taken into a room alone with a male doctor and afterward he advised her mother she was "*** a bad girl." According to Roberts, she was always sad and "*** felt empty because nobody had ever paid attention to me or hugged me or anything ***."

Despite this sadness, Roberts achieved good grades and rewards in school. She was on the honor roll and dean's list later in college. She received accolades as a writer. She married her high-school sweetheart and moved to Miami, Florida. She described having her son and acknowledged his many accomplishments.

Page 9

Roberts was involved in a car accident in 1963. She "*** fell asleep and the car went through big giant trees, hitting something ***." She recalled she was "filled with glass" from the debris. Roberts described herself as "*** spacey for awhile" after the accident.

In 1983, Roberts was again involved in a car accident. She flew through the windshield and experienced numbness in her extremities after the accident. Roberts was treated by a neurosurgeon for some time after this.

In 1999, Roberts again fell asleep behind the wheel and was involved in a car accident. Roberts recalled months after this event where she has no memory. Roberts stated, "*** Robert was calling me spacey and goofy, and he was really worried about me, and he told me I should get some kind of help, but I didn't want any help." Roberts acknowledged she ignored the depression.

Roberts recounted a suicide attempt wherein she started her car in the garage with her dog, Blossom. She stated Blossom alerted her by pawing at her arm and she called for help. Roberts was hospitalized after this event in a psychiatric ward. Following this hospitalization, Roberts sought SSI for disability.

Roberts explained she was prescribed three or four medications at that time. One medication was to "stop the voices." Roberts experienced

Page 10

some hallucinations while incarcerated. She described seeing "giant anthills" on her floor. Roberts also described falling and hitting her head on multiple occasions after this event. Roberts described periods of time when she could not identify the day of the week.

Roberts explained she walked away from the restaurant she owned one day because she became overwhelmed. She left the refrigerator and freezers full and never returned.

Roberts described her life working with a plastic surgeon. She described helping people with reconstructive surgery. Roberts remembered how she used to help people pay their checks at the restaurant when they didn't have enough money.

Roberts converted to Judaism in 1980. She explained her involvement in a Jewish burial society and the customs therewith. She proudly expressed her involvement in a campaign to rescue a Jewish man from persecution in Ethiopia. She also volunteered in Israel with the plastic surgeons performing skin grafts.

In contrast, Roberts explained the inaccuracies in the record describing Mr. Fingerhut as the entrepreneur. Roberts claimed she was the businesswoman. They divorced to protect her assets; not his. She took out $75,000 from her mutual fund for a down payment on her dream house. She described herself as the breadwinner. Mr. Fingerhut only

Page 11

worked occasionally, according to Roberts. Roberts espoused her talents in trading on the stock market and investing in real estate.

Roberts was fixated on ensuring the Court was aware of her affluence. She was proud of the fact that she had money and wore expensive clothes. She again chastised Frank Reynolds for his testimony that she and Mr. Fingerhut had an argument because he wouldn't give her $3,000. Roberts stated, "The accounts were mine. The house was mine. The only way we had three cars is on my credit." She spoke regarding her gifts of money to her son and her sister.

Roberts closed her allocution with the following words: "I never intended for anything like that to happen, and I couldn't believe it, and I still can't believe it. We loved each other and we had a good life."

## AGGRAVATING CIRCUMSTANCES

R.C. 2929.04(A) sets forth the applicable aggravating circumstance enabling a consideration of the death penalty to be specified in the indictment and proven beyond a reasonable doubt in this case as "*** (7) [t]he offense was committed while the offender was committing, attempting to commit, or fleeing immediately after committing or attempting to commit kidnapping, rape, aggravated arson, aggravated robbery, or aggravated burglary, and either the offender was the principal offender in the commission of the aggravated murder or, if not the

Page 12

principal offender, committed the aggravated murder with prior calculation and design."

On May 28, 2003, Roberts was found guilty following a trial before a petit jury and after due deliberation by said jury of the following: Count One: Complicity to Commit Aggravated Murder in violation of R.C. 2923.03(A)(2), 2903.01(A) and 2941.14(C) of Robert S. Fingerhut, with two separate Specifications of Aggravating Circumstances; to wit, Specification Number One: Aggravated Burglary in violation of R.C. 2929.04(A)(7) and Specification Number Two: Aggravated Robbery in violation of R.C. 2929.04(A)(7); Count Two: Complicity to Commit Aggravated Murder in violation of R.C. 2923.03(A)(2), 2903.01(B) and 2941.14(C) of Robert S. Fingerhut, with two separate Specifications of Aggravating Circumstances, to wit, Specification Number One: Aggravated Burglary in violation of R.C.2929.04(A)(7) and Specification Number Two: Aggravated Robbery in violation of R.C. 2929.04(A)(7); Count Three: Complicity to Commit Aggravated Burglary (F1) with Firearm Specification in violation of R.C. 2923.03(A)(2), 2911.11(A)(1)(2) and 2941.145; and Count Four: Complicity to Commit Aggravated Robbery (F1) with Firearm Specification in violation of R.C. 2923.03(A)(2), 2911.01(A)(1)(3) and 2941.145. Count Two was removed from the Jury pursuant to a Motion to Dismiss by the State.

Page 13

The Court finds the aggravating circumstances were set forth in the indictment of Roberts. The Court further finds these elements of the aggravating circumstances were proven beyond a reasonable doubt in the trial of this matter. The Court finds Roberts acted with prior calculation and design in the aggravated murder of Fingerhut.

The Court finds Roberts acted with prior calculation and design in the aggravated murder of Fingerhut while committing or attempting to commit aggravated burglary. It was proved beyond a reasonable doubt at trial that Roberts provided access to Jackson to trespass in Fingerhut's residence, 254 Fonderlac Drive in Howland Township, Trumbull County, Ohio with the specific purpose of killing Fingerhut with prior calculation and design. It was further proven beyond a reasonable doubt that the tools used to carry out this plot were provided by Roberts: the gloves, ski mask, firearm as well as the access to the residence. Countless recorded telephone calls and written letters outlined this plan to murder Mr. Fingerhut in this manner leaving no reasonable doubt whatsoever.

The Court finds Roberts acted with prior calculation and design in the aggravated murder of Fingerhut while committing or attempting to commit aggravated robbery. It was proven beyond a reasonable doubt at trial that Roberts acted with prior calculation and design. Roberts intended for Jackson to steal Mr. Fingerhut's vehicle, originally to use the car as a

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2459

means for kidnapping Fingerhut away from the residence to kill him off site. The police recovered Mr. Fingerhut's vehicle a few blocks from where Jackson was arrested. The keys were still in the ignition.

The Court finds beyond a reasonable doubt Roberts acted with complicity to commit aggravated murder while committing or attempting to commit or in fleeing immediately after committing or attempting to commit aggravated burglary. The Court finds beyond a reasonable doubt Roberts acted with complicity to commit aggravated murder while committing or attempting to commit or in fleeing immediately after committing or attempting to commit aggravated robbery. The Court further finds beyond a reasonable doubt Roberts acted with complicity to commit aggravated murder with prior calculation and design.

Having found the aggravating circumstances proven beyond a reasonable doubt, the Court now must "*** weigh against the aggravating circumstances proved beyond a reasonable doubt, the nature and circumstances of the offense, the history, character, and background of the offender ***" along with the additional statutory factors set forth in R.C. 2929.04(B) as mitigating factors.

### MITIGATING FACTORS

Pursuant to R.C. 2929.03(F), the Court makes the following findings regarding the factors listed in R.C. 2929.04(B):

Page 15

1. *"Whether the victim of the offense induced or facilitated it; ***"*

The Court finds Mr. Fingerhut, the victim in this matter, did nothing to facilitate or induce his own death. The Court gives no weight to the allegations made by Roberts in her letters to Jackson regarding the physical abuse she suffered at the hand of Mr. Fingerhut. Even if the Court were to accept those claims as true, there is no evidence of any imminent threat to Roberts. Likewise, there is no evidence Roberts was prevented from evading the abusive situation by alternate means such as leaving the residence or filing a complaint with the police department.

2. *"Whether it is unlikely that the offense would have been committed, but for the fact that the offender was under duress, coercion, or strong provocation; ***"*

The Court finds there is no evidence before the Court that Roberts was under any duress, coercion or strong provocation to commit the crime.

3. *"Whether, at the time of committing the offense, the offender, because of a mental disease or defect, lacked substantial capacity to appreciate the criminality of the offender's conduct or to conform the offender's conduct to the requirements of the law: ***"*

The Court finds there is no evidence to suggest Roberts lacked

Page 16

substantial capacity to appreciate the criminality of her conduct or to conform her conduct to the rules of law. Although Roberts testified in her allocution regarding the status of her mental health, the Court does not find that statement contained any evidence to suggest or support Roberts did not understand the criminality of her conduct. The Court finds the incidents described by Roberts in her unsworn statement and her allocution were either isolated events following physical traumas associated with her motor vehicle accidents or they occurred after the death of Mr. Fingerhut. There is no evidence to suggest Roberts lacked mental capacity at the time of the events in question.

4.  "*The youth of the offender; ***"*

The Court finds the age of Roberts is not a factor for consideration.

5.  "*The offender's lack of a significant history of prior criminal convictions and delinquency adjudications; ***"*

The Court finds Roberts does not have a significant history of prior criminal convictions. This factor does weigh in her favor.

6.  "*If the offender was a participant in the offense but not the principal offender, the degree of the offender's participation in the offense and the degree of the offender's participation in the acts that led to the death of the victim; ***"*

Page 17

The Court finds although Roberts was not the "triggerman," the evidence clearly demonstrated she orchestrated the entire plot. The record reveals the intentional acts of Roberts in planning the aggravated murder of Mr. Fingerhut in exchange for his life insurance proceeds. Roberts induced Jackson to be her accomplice with promises of payment in the form of a Cadillac or a Lincoln, a wealthy lifestyle, vacations and a home in a desirable neighborhood. Roberts premeditated for months. She checked the balance of the life insurance proceeds. She arranged for Jackson's transportation from prison to a hotel room where she fulfilled his sexual needs, fed him food for sustenance, and provided the necessary tools to carry out the murder. The Court finds that Roberts was the primary mastermind behind Mr. Fingerhut's murder. But for her premeditated calculations, Mr. Fingerhut would not have been murdered by Jackson on that day.

7. *"Any other factors that are relevant to the issue of whether the offender should be sentenced to death."*

The Court finds there were several mitigating elements presented in Roberts's allocution. Certain elements of Roberts's unsworn statement and allocution (at the original sentencing and again upon the earlier remand) are worthy of some discussion.

Page 18

First, Roberts allegedly grew up in an abusive household. She claims she was witness to physical confrontations between her mother and her father to the point where she would hide under the bed "when the guns came out." This history, coupled with the alleged physical abuse between Roberts and Fingerhut does weigh slightly in favor of Roberts. Perhaps Roberts was still shouldering those childhood burdens into her adult life.

However, there is absolutely no evidence before the Court to support the veracity of the physical abuse allegations made by Roberts against Fingerhut. Therefore, the Court is left to ponder whether those allegations were part of her scheme to induce Jackson to act as her accomplice. Roberts failed to alert the Court to any physical violence between her and Fingerhut during her allocution. Instead, Roberts professed her love for the man whom she contracted to have killed. Therefore, the Court finds these facts weigh only slightly in favor of Roberts.

Likewise, the Court gives little weight to Roberts's claims regarding the rape by her cousin when she was very young. The Court finds this is entitled to little weight as there is no direct connection to the underlying crime. Even if Roberts were carrying the psychological scars of this

Page 19

trauma, there is little to no evidence to suggest any connection to the underlying crime.

The Court finds the charitable history of Roberts is entitled to some mitigation weight in her favor. Apparently, Roberts was quite generous with both her time and funds. She assisted plastic surgeons performing reconstructive surgery in Israel. She helped rescue a man from persecution in Ethiopia. On a more day-to-day basis, Roberts would help others in her family as well as strangers who were struggling financially.

However, the Court finds this generosity must also be reviewed in totality with Roberts's self-promotion. Roberts frequently referred to her wealth in her allocution. She wanted the Court to know she was the breadwinner, not Mr. Fingerhut. She berated the man who testified she was angry with Fingerhut when he refused to give her $3,000. It seems these mischaracterizations of her social status were more upsetting to Roberts than the guilty verdict against her for complicity to commit murder. The Court finds these two polar self-portraits are not compatible with one another. Therefore, the Court affords no weight to the self-reported acts of generosity and charity of Roberts as mitigation.

The Court finds the reports of mental instability and physical traumas following several car accidents could be mitigating factors in Roberts's favor. Roberts was involved in two motor vehicle accidents

Page 20

which occurred after Roberts fell asleep behind the wheel. The mere fact that one has not only a singular incident of this magnitude, but two, leads the Court to question whether there are other biological or physiological factors at play. In addition, the mental status post-accidents and the lack of memory for an extended period of time is likewise a mitigating factor that weighs in favor of Roberts.

However, the Court finds the self-promotion by Roberts as to her financial prowess, educational accolades and charitable works is contradictory to her assertion that she has suffered mental deficiencies as a result of the motor vehicle accidents described above. The two are juxtaposed; either Roberts is a powerful entrepreneur capable of earning a magnitude of wealth and respect or she is one suffering from mental trauma. The Court gives little to no weight to any evidence of the latter. In addition, the Court finds Roberts was fairly well-spoken in the delivery of her allocution. Plus, Roberts expressly made a valid waiver of her right to present mitigation evidence. There was no mental deficiency at play in that decision.

There is no question Roberts suffered some physical and mental traumas as a result of these accidents. Roberts even attempted to commit suicide in her garage. However, the Court finds these incidents are

Page 21

isolated and occurred in a time frame so far removed from the murder of Mr. Fingerhut that their relevance for mitigation is significantly decreased. In addition, pursuant to R.C. 2929.04(B), the Court must also consider and weigh "*** the nature and circumstances of the offense, the history, character, and background of the offender ***." The Court finds the history, character and background of Roberts have been sufficiently addressed in the discussion specified in R.C. 2929.04(B)(1-7) above.

Roberts planned and plotted for the murder of Fingerhut over a period of at least three months. She conspired with Jackson, her imprisoned lover, to murder Fingerhut for his life insurance proceeds. The murder plan was well documented through telephone calls recorded from Jackson's residence; the Lorain Correctional Institute. In addition, detailed letters were exchanged between the loving couple outlining their plans. These plans included the acquisition of supplies, the procurement of a hotel room, and the promise of a new vehicle for Jackson – all provided by Roberts. Ultimately, Roberts provided access to the residence in order for Jackson to carry out the murder as planned.

Despite these intricate details, Roberts "forgot" to include Jackson as one of her named lovers to the police during interviews. In addition, Roberts attempted to thwart the investigation into the Fingerhut murder by implicating other individuals; not Jackson. In addition, Roberts's feigned

Page 22

emotional outbursts over Fingerhut's death do not correlate to the insidious behavior relative to the same.

Therefore, the Court has granted little to no weight to any of the mitigating factors outlined by Roberts in her unsworn statement or her allocution. In addition, the Court finds Roberts's request for "equal treatment" to Jackson is inconsistent with the primary body of her allocution and has not given any weight to that request either.

The presence of mitigating factors does not preclude the imposition of a sentence of death. Rather, those mitigating factors are to then be weighed against the aggravating circumstances of the crime. In conducting this comparison, the Court overwhelmingly finds the aggravating circumstances outweigh the mitigating factors.

## CONCLUSIONS OF LAW

The mitigating factors given little weight by this Court do not even approach an imbalance of the aggravating circumstances present in this matter. Roberts' traumatic childhood, her allegations of physical abuse at the hands of Fingerhut, the physical injuries sustained in multiple motor vehicle accidents, the mental disability, the lack of a prior criminal record and Roberts' charitable tendencies do not even draw the Court's attention away from the aggravating circumstances.

Page 23

The Court has made a careful and independent review of the entire record, including Roberts's first and second allocutions. Upon this review, the Court finds the aggravating circumstances outweigh the mitigating factors by proof beyond a reasonable doubt.

Therefore, the Court hereby finds the sentence of death is an appropriate penalty for the Defendant Donna Marie Roberts in this matter.

Date: June 10, 2014

Judge Ronald J. Rice

Page 24



# The Supreme Court of Ohio

To the Clerk of Court of Common Pleas for

**ORDER TO CERTIFY RECORD**

Trumbull County

S.C. Case No.    2014-0989
C.P. Case No.    2001CR00793

**State of Ohio v. Donna Marie Roberts**

You are hereby ordered, pursuant to Rule 11.04 of the Rules of Practice of the Supreme Court of Ohio, to prepare and forward the record in the above-captioned case to the Clerk's Office of the Supreme Court, no later than 90 days from the date of this entry, unless the Supreme Court grants an extension of time under Rule 11.04.

Pursuant to Rule 11.03 and 11.04 the record shall consist of the following:

- The original papers filed in the trial court;

- The transcript of proceedings, and computer diskettes of the transcript, if available;

- A certified copy of the docket and journal entries prepared by the clerk of the trial court; and

Pursuant to Rule 11.03 (B)(2) the custodian of the record shall only transmit audio exhibits, video exhibits, and documents such as papers, maps, or photographs. Pursuant to 11.03 (B)(3) no other physical exhibits shall be transmitted unless directed to do so by the Clerk of the Supreme Court.

You are further ordered, pursuant to Rule 11.04 (B)(1), to number the documents and exhibits comprising the record; to prepare an index of the documents and exhibits, correspondingly numbered and identified; to briefly describe all exhibits listed in the index; and to send a copy of the index to all counsel of record in the case and transmit the index with the record to the Clerk of the Supreme Court.

You are further ordered, pursuant to Rule 11.04 (D), to make a copy of the record and retain the copy for use in any postconviction proceeding. Pursuant to this Court's order in *In re: Reimbursement to Trial Court Clerks for Duplication of Death Penalty Records* (January 25, 1999), a trial court clerk shall be permitted reimbursement to the following extent: five cents per page for photocopying the original papers, transcript of proceedings, and documentary exhibits; the actual costs of duplicating photographs, videotapes, and audiotapes that are part of the record. Any request for reimbursement shall be filed simultaneously with the filing of the record, and reimbursement shall be subject to the availability of funds appropriated by the General Assembly.

Maureen O'Connor
Chief Justice

2001 CR
00793
00023883835
CRM



IN THE SUPREME COURT OF OHIO
No. **14-0989**

| | | |
|---|---|---|
| State of Ohio, | : | |
| | : | From the Trumbull County Common Pleas |
| Appellee, | : | Court Case No. 2001 CR 0793 |
| | : | |
| -v- | : | |
| | : | **DEATH PENALTY APPEAL** |
| Donna Roberts, | : | |
| | : | |
| Appellant. | : | |

---

## NOTICE OF APPEAL OF APPELLANT, DONNA ROBERTS

---

COUNSEL FOR APPELLEE:

Dennis Watkins, Esq.
Trumbull County Prosecutor
Administration Building
160 High Street NW #4
Warren, OH 44481
(330) 675-2426



COUNSEL FOR APPELLANT:

David L. Doughten, Esq. #0002847
4403 St. Clair Avenue
Cleveland, Ohio 44103
(216) 361-1112

Robert A. Dixon, Esq, #0022466
4403 St. Clair Avenue
Cleveland, Ohio 44113
(216) 432-1992

COUNSEL FOR APPELLEE

COUNSEL FOR APPELLANT

**Proof of Service**

A copy of the foregoing Petitioner's Motion was served upon Dennis Watkins, Trumbull

County Prosecutor and/or LuWayne Annos, Esq. Assistant Trumbull County Prosecutor,

Administration Building, 160 High Street, Warren, Ohio 44481, by Regular U. S. mail on this ___

day of June,  2014.

David L. Doughten
Counsel for Appellant

<u>**Notice of Appeal of Appellant Donna Roberts**</u>

      Now comes the appellant, Donna Roberts, and hereby gives Notice of Appeal to the

Supreme Court of Ohio from the Cuyahoga Cuyahoga County Common Pleas Court, R.C.

§2929.03(F) opinion journalized on April 30, 2014.  A nunc pro tunc entry of this sentencing

opinion was filed on June 10, 2014. The appellant is appealing the denial of her sentence of

death for Aggravated Murder in violation of R.C. §2903.01 with capital specifications.

      This case raises a substantial constitutional question and is one of public or great general

interest.  It also involves the affirmance of the death penalty.  This is an appeal of right pursuant

to S. Ct R. II , section 1(A).

                                 Respectfully submitted,

                                 David L. Doughten
                                 Counsel for Appellant

                               Robert A. Dixon
                                 Counsel for Appellant

**CAPITAL CASE PRAECIPE**

**IN THE SUPREME COURT OF OHIO**

| | | |
|---|---|---|
| STATE OF OHIO, | : | DATE OF OFFENSE: 12/11/2001 |
| Appellee, | : | TRIAL COURT CASE NO: <u>2001 CR 793</u> |
| vs. | : | DATE OF FINAL JUDGMENT IN TRIAL COURT: 4/07/2014 |
| DONNA ROBERTS, | : | TRIAL COURT JUDGE: <u>Ronald J. Rice</u> |
| Appellant. | : | DATE OF RULING ON TIMELY MOTION FOR NEW TRIAL IN TRIAL COURT: N/A |

**TO THE COURT REPORTER**:

Immediately prepare a transcript of all proceedings, including but not limited to all pretrial hearings, motions hearings, in chambers conferences, trial phase (including voir dire) proceedings, penalty phase proceedings and sentencing proceedings, in conformance with S. Ct. Par. R XIX, §3, and deliver to the clerk of the court of common pleas.

DAVID L. DOUGHTEN (#0002847)
4403 St. Clair Avenue
Cleveland, OH 44103
(216) 361-1112

I further certify that a true copy of the foregoing Capital Case Praecipe was served upon all other parties in compliance with S. Ct. R. XIX, Section 1(B) on this _____ day of June, 2014.

DAVID L. DOUGHTEN

**IN THE COURT OF COMMON PLEAS**
**TRUMBULL COUNTY, OHIO**

| | | |
|---|---|---|
| STATE OF OHIO, | ) | CASE NO. 2001 CR 793 |
| | ) | |
| PLAINTIFF, | ) | JUDGE RONALD J. RICE |
| | ) | |
| -VS- | ) | **DEATH PENALTY** |
| | ) | |
| DONNA MARIE ROBERTS, | ) | SENTENCE TO THE OHIO |
| | ) | REFORMATORY FOR WOMEN |
| DEFENDANT. | ) | |
| | ) | ENTRY ON SENTENCE |

The Defendant, Donna Marie Roberts, herein having been indicted by the

September Eighth, 2001, Term of the Grand Jury of Trumbull County, Ohio, for Count

One: Aggravated Murder in violation of R.C. 2903.01(A) and 2941.14(C) of Robert S.

Fingerhut, with two (2) separate Specifications of Aggravating Circumstances to wit:

Specification No. 1: Aggravated Burglary in violation of R.C. 2929.04(A)(7) and

Specification No. 2: Aggravated Robbery in violation of R.C. 2929.04(A)(7); Count

Two: Aggravated Murder in violation of R.C. 2903.01(B) and 2941.14(C) of Robert S.

Fingerhut, with two (2) separate Specifications of Aggravating Circumstances, to wit:

Specification No. 1: Aggravated Burglary in violation of R.C. 2929.04(A)(7), and

Specification No. 2: Aggravated Robbery in violation of R.C. 2929.04(A)(7); Count

Three: Aggravated Burglary (F1) With Firearm Specification in violation of R.C.

2911.11.(A)(1)(2) and 2941.145; and Count Four: Aggravated Robbery (F1) With

Firearm Specification in violation of R.C. 2911.01(A)(1)(3) and 2941.145, and on the

8th day of April, 2003, having been brought into Court for trial before a petit jury and

being represented by counsel, Attorney J. Gerald Ingram and Attorney John B.

Ingram, and the jury having been empaneled and after due deliberation on May 28,

Page 1



2001 CR
00793
00064237506
OSEN

2003, was found guilty of Count One: Complicity to Commit Aggravated Murder in violation of R.C. 2923.03(A)(2), 2903.01(A) and 2941.14(C) of Robert S. Fingerhut, with two (2) separate Specifications of Aggravating Circumstances, to wit: Specification No. 1: Aggravated Burglary in violation of R.C. 2929.04(A)(7), and Specification No. 2: Aggravated Robbery in violation of R.C. 2929.04(A)(7); Count Two: Complicity to Commit Aggravated Murder in violation of R.C 2923.03(A)(2), 2903.01(B) and 2941.14(C) of Robert S. Fingerhut, with two (2) separate Specifications of Aggravating Circumstances, to wit: Specification No. 1: Aggravated Burglary in violation of R.C. 2929.04(A)(7), and Specification No. 2: Aggravated Robbery in violation of R.C 2929.04(A)(7); Count Three: Complicity to Commit Aggravated Burglary (F1) With Firearm Specification in violation of R.C. 2923.03(A)(2), 2911.11.(A)(1)(2) and 2941.145; and Count Four: Complicity to Commit Aggravated Robbery (F1) With Firearm Specification in violation of R.C. 2923.03(A)(2), 2911.01(A)(1)(3) and 2941.145. Thereafter, Count Two was removed from the Jury pursuant to a Motion to Dismiss by the State.

On June 4, 2003, the Defendant having been brought into Court to give evidence in mitigation on Count One of the indictment, and after arguments of counsel and instructions of law, and after due deliberation, it was the finding and recommendation of the Jury on June 4, 2003, that the sentence of death be imposed on the Defendant.

On April 30, 2014, pursuant to a remand from the Supreme Court of Ohio, the Defendant's sentencing hearing was held pursuant to R.C. 2929.19. Attorney David L. Doughten and Attorney Robert A. Dixon were present as counsel for the Defendant

and Assistant County Prosecutor Christopher Becker was present as counsel for the State. The Defendant was also present in Court and was previously afforded all rights pursuant to Crim.R. 32. The Court has considered the record and oral statements, as well as the principles and purposes of sentencing under R.C. 2929.11, and has balanced the seriousness and recidivism factors of R.C. 2929.12.

Pursuant to law, the Court this day, April 30, 2014, having determined in a separate opinion of specific findings that the aggravating circumstances as to the count of Aggravated Murder outweigh the mitigating factors by proof beyond a reasonable doubt, then made inquiry as to whether the Defendant had anything to say why judgment should not be pronounced against her, and the Defendant in answer showed no good cause or sufficient reason why sentence should not be pronounced.

The Court has considered the factors under R.C. 2929.14, and makes the following findings: (1) the shortest prison term will demean the seriousness of the Defendant's conduct; (2) the longest prison term is appropriate because the Defendant committed the worst form of the offense; (3) multiple prison terms are necessary to protect the public from future crime and to punish the offender; (4) consecutive prison sentences are not disproportionate to the seriousness of the Defendant's conduct and to the danger the offender poses to the public; and (5) the harm caused by multiple offenses was so great that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the Defendant's conduct.

It is therefore ORDERED, ADJUDGED, and DECREED that the Defendant, DONNA MARIE ROBERTS:

Page 3

1. Shall be sentenced to death on Count One;

2. Shall serve an imprisonment term of ten (10) years on Count Three; plus a mandatory term of three (3) years on the Firearm Specification to be served prior to and consecutive to the sentence imposed in Count Three;

3. Shall serve an imprisonment term of ten (10) years on Count Four, plus a mandatory term of three (3) years on the Firearm Specification to be served prior to and consecutive to the sentence imposed in Count Four, sentence in Count Four to be served consecutively to the sentence imposed on Count Three;

4. The Firearm Specifications in Count Three and Count Four shall merge as one sentence in Count Three as a matter of law;

5. The Defendant shall submit to DNA testing;

6. The Defendant is Ordered to pay the cost of prosecution taxed in the amount of $_____ for which execution is awarded.

The Court has further notified the Defendant that post-release control is mandatory in this case for five (5) years, as well as the consequences for violating conditions of post-release control imposed by the Parole Board under R.C. 2967.28. The Defendant is ordered to serve as part of this sentence any term of post-release control imposed by the Parole Board, and any prison term for violation of that post-release control.

The Court further disapproves of the Defendant's placement in a program of shock incarceration pursuant to R.C. 5120.031 or for placement in an intensive prison program pursuant to R.C. 5120.032.

IT IS SO ORDERED.

Dated: April 30, 2014

_____
JUDGE RONALD J. RICE

THE CLERK OF COURTS IS HEREBY ORDERED TO SERVE COPIES OF THIS ENTRY TO
ALL COUNSEL OF RECORD.

_____
JUDGE RONALD J. RICE

You are hereby notified that you have been convicted of a felony of violence
and pursuant to Section 2923.13 of the Ohio Revised Code, you are prohibited
from acquiring, having, carrying or using any firearm or dangerous ordnance.

4/30/14
Copies To:
PROS
J. Ingram
A. Millette
J. Wilhelm
D. Marburger
S. Bolton
D. Doughten
J. Juhasz



Page 5

IN THE COURT OF COMMON PLEAS
GENERAL DIVISION
TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| State of Ohio | ) | Case No. 2001CR00793 |
| | ) | |
| Plaintiff, | ) | Judge Ronald J. Rice |
| | ) | |
| vs. | ) | **OPINION OF THE COURT** |
| | ) | |
| Donna Marie Roberts | ) | **FINDINGS OF FACT AND** |
| | ) | **CONCLUSIONS OF LAW** |
| Defendant. | ) | **REGARDING IMPOSITION** |
| | ) | **OF DEATH PENALTY** |

This matter was remanded by the Supreme Court of Ohio with the following instruction: "On remand, the trial court must consider all the mitigating evidence reflected in the record, including Roberts's allocution, weigh the aggravating circumstances against the mitigating factors, and file a sentencing opinion that reflects that it has complied with these instructions. In doing so, the trial court must make an independent determination of whether a death sentence is appropriate and may not give deference to the sentences previously entered." *State v. Roberts*, 2013-Ohio-4580, ¶96.

## FACTUAL AND RECORDS REVIEW

Pursuant to the remand of this matter from the Supreme Court of Ohio, the Court has carefully read, reviewed, examined and/or inspected



2001 CR
00793
00019478086
0

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2480

the entire court record; all of the transcripts from pre-trial & post-trial;

exhibits; pleadings; including, but not limited to the following items:

1. The indictment of the Trumbull County Grand Jury;

2. All of the docket entries filed on this matter;

3. All of the notes entered by the staff as to scheduling;

4. The prior court scheduling of 29 events, including status hearings, hearings, pre-trials, motions to suppress, jury trial, sentencing and re-sentencing hearings;

5. All of the pleadings as filed by the State of Ohio and counsel for the Defendant;

6. The transcript of the Motion To Suppress held on February 3, 2002;

7. Transcripts of Proceedings Volumes 1 through 23 of individual and group voir dire questioning and juror selection;

8. All of the exhibits admitted at trial as listed on a document titled List of Trial Exhibits And Mitigation Hearing Exhibits;

9. The entire trial and sentencing record;

10. The entire record following the remand from *Roberts I*.

In accordance with *Roberts II*, the Court did not permit Roberts to

update her mitigation at the hearing following the recent remand.

"Establishing a right to update mitigation could result in arbitrary

distinctions between similarly situated capital defendants." Id. at ¶37.

Roberts expressly and validly waived her right to present mitigation

evidence during the original sentencing phase. Id. at ¶49.

Page 2

The Court notes this matter is now before a different judge as Judge John M. Stuard has since retired from the bench and shortly thereafter passed away. As instructed, the Court has not given any deference to the prior decisions of Judge Stuard in this matter. However, the Court notes the acknowledgment as recognized in *Roberts II* that "[t]he trial court then stated that it had considered the record and the oral statements. \*\*\* Beyond this, however, the opinion does not discuss Roberts's allocution." The Court notes with confidence and respect for Judge Stuard, he would not have acknowledged consideration of the oral statements (including the allocution) had he not, in fact, considered the same. Such was his nature of fairness. Nevertheless, as previously indicated, the Court has given no deference to the prior decisions of Judge Stuard and has complied with the remand instructions as directed.

## ALLOCUTION

Despite the fact that Roberts expressly waived mitigation, Roberts took advantage of her opportunity for allocution at the original sentencing and again following the *Roberts I* remand. Roberts explained in her original allocution she had no intention of offering mitigating factors for consideration. Rather, she advised she chose allocution because it was against her religion to take an oath.

Page 3

Roberts's allocution centered on two salient points. First, she pointed out inconsistencies in the evidence and testimony as she perceived them. Second, she drew attention to the differences between her trial and the trial of Nathaniel Jackson claiming racial inequities.

Roberts accurately characterized in her allocution that the jury had been exposed to "five percent" of her life. That "five percent" included her relationship with Jackson. As she stated, "the other 95 percent of my life was dedicated to my husband, my son, my family and business, and doing charity for unfortunate to share the good fortune that God bestowed upon me and my loved ones." The Court finds this is the most truthful and yet, unfortunate, statement in the Defendant's entire allocution. Five percent comprised of bad decisions has such a profound effect on a lifetime.

Roberts brought attention to the fact that the personnel in the courtroom were white. She likewise opined on inaccurate portrayals in the newspaper regarding the facts of this case.

Roberts explained she did not consider the jury to be a "jury of her peers." She provided some details regarding her life. She worked for a plastic surgeon for 25 years. She lived in Miami for 27 years.  She traveled the world. Roberts expressed concern that some of the jurors indicated they didn't read any newspapers or watch the news.  She also expressed concern regarding the young age of a few of the jurors, citing

their lack of life experiences as a hindrance to their ability to judge the case.

Next, Roberts recounted certain aspects regarding the prosecution against Nathaniel Jackson. Roberts pointed out her perceived inconsistencies in the Jackson trial compared to the prosecution by the State in her case. She also alleged racial bias on behalf of the prosecution.

Roberts relayed her opinion on Howland Chief of Police Paul Monroe and his role in this matter prior to holding that position. She claimed Monroe intentionally informed the jury she was Jewish in an effort to sway the jurors against her even more. Roberts used her opportunity at allocution to chastise the jurors for becoming too involved in the operatic drama of the prison letters and communications than the truth.

Roberts reviewed the testimony regarding the life insurance policies. She claimed she had no knowledge the victim had increased the value of his life insurance policies. She also reviewed her financial history and business investments. Roberts pointed out she was earning $200,000 annually and the insurance policy of $250,000 was not enough to seduce her to murder Mr. Fingerhut.

Roberts added personal details about her life with the victim by describing their daily rituals with their beloved pets. She discussed the

victim's family life and relationships with his sons from a previous relationship. She insisted she did not want any money from Mr. Fingerhut and relayed the fact that she signed over any life insurance policies to his children.

Next, Roberts spoke regarding Santiago Mason. She explained that Mason sued her for framing him. She protested this characterization and explained why that was not true. She described the victim's sports memorabilia collection. She also attacked Mason's character.

Roberts disputed certain elements of the State's case. Namely, she challenged the eye witness from her neighborhood who saw her driving in the area. She questioned the time frame against the witness's statement and her own activities during the relevant period of time on the night of the murder.

She also challenged the testimony of Frank Reynolds. She pointed out inconsistencies in Reynolds' testimony with the facts of her life. She contradicted the testimony of Reynolds regarding her argument over money with the victim. She was incensed that Reynolds would advise the jury she was upset with Mr. Fingerhut because he would not give her money. She was adamant she did not need any money from Mr. Fingerhut.

Page 6

Roberts also challenged the physical evidence of the prosecution. She discussed the bloody washcloth found at the Days Inn. She claimed the washcloth and towel were purposefully placed there by the police. She also attacked the validity of other evidence recovered from the hotel and surrounding area.

Roberts questioned the introduction of certain sexual information about her by the State as inappropriate. She claimed it was only meant to influence the jury into forming a low opinion of her. She also challenged the search of the residence as improper.

In addition, Roberts claimed the marijuana found at the residence did not belong to her. She maintained it was also fabricated by the police. However, she admitted to smoking marijuana on a regular basis.

Roberts discussed the letters between her and Jackson as well as the taped telephone conversations while Jackson was incarcerated. She alleged the State manipulated those conversations to fit their case by not admitting the entire transcript of the conversations, only limited portions.

With gratitude, she acknowledged her attorneys. She described when and where she acquired the weapons found at the home. She explained the events when Mason allegedly stole her gun. Roberts also reviewed the coroner's report.

Page 7

Roberts described her reaction to finding the victim on the night in question. She then relayed her version of the Jackson case running parallel to her prosecution. She challenged the veracity of the location of the murder weapon in the reports. According to the Defendant, the police moved the gun.

Finally, Roberts closed her allocution by advising the jury they are required to recommend a death sentence since she presented no mitigating evidence. She pleaded for equal treatment and a sentence equal to that of Jackson's. However, Roberts reiterated this was not an admission of guilt. Rather, she claimed her plea was one of social justice and equality. She pledged her love for the victim and ended her allocution with the instruction for the jury to "do what is right."

At the resentencing hearing following *Roberts I*, Roberts again offered allocution to the Court. On October 22, 2007, Roberts indicated the record had been "*** a big misrepresentation about me, my character, my personality, and my life ***." Roberts proceeded to provide additional information relative to her personal history.

Roberts explained she grew up on a farm in Austintown, Ohio. She attended a Roman Catholic elementary school. She recounted that she was sexually abused by an older cousin when she was very young. She described her household as "*** very very abusive ***."

Page 8

Roberts recalled her father abused her mother physically and verbally. Roberts stated she "*** spent a lot of time under my bed, especially when guns came out." When Roberts was taken to a doctor, she described being taken into a room alone with a male doctor and afterward he advised her mother she was "*** a bad girl." According to Roberts, she was always sad and "*** felt empty because nobody had ever paid attention to me or hugged me or anything ***."

Despite this sadness, Roberts achieved good grades and rewards in school. She was on the honor roll and dean's list later in college. She received accolades as a writer. She married her high-school sweetheart and moved to Miami, Florida. She described having her son and acknowledged his many accomplishments.

Roberts was involved in a car accident in 1963. She "*** fell asleep and the car went through big giant trees, hitting something ***." She recalled she was "filled with glass" from the debris. Roberts described herself as "*** spacey for awhile" after the accident.

In 1983, Roberts was again involved in a car accident. She flew through the windshield and experienced numbness in her extremities after the accident. Roberts was treated by a neurosurgeon for some time after this.

Page 9

In 1999, Roberts again fell asleep behind the wheel and was involved in a car accident. Roberts recalled months after this event where she has no memory. Roberts stated, "*** Robert was calling me spacey and goofy, and he was really worried about me, and he told me I should get some kind of help, but I didn't want any help." Roberts acknowledged she ignored the depression.

Roberts recounted a suicide attempt wherein she started her car in the garage with her dog, Blossom. She stated Blossom alerted her by pawing at her arm and she called for help. Roberts was hospitalized after this event in a psychiatric ward. Following this hospitalization, Roberts sought SSI for disability.

Roberts explained she was prescribed three or four medications at that time. One medication was to "stop the voices." Roberts experienced some hallucinations while incarcerated. She described seeing "giant anthills" on her floor. Roberts also described falling and hitting her head on multiple occasions after this event. Roberts described periods of time when she could not identify the day of the week.

Roberts explained she walked away from the restaurant she owned one day because she became overwhelmed. She left the refrigerator and freezers full and never returned.

Page 10

Roberts described her life working with a plastic surgeon. She described helping people with reconstructive surgery. Roberts remembered how she used to help people pay their checks at the restaurant when they didn't have enough money.

Roberts converted to Judaism in 1980. She explained her involvement in a Jewish burial society and the customs therewith. She proudly expressed her involvement in a campaign to rescue a Jewish man from persecution in Ethiopia. She also volunteered in Israel with the plastic surgeons performing skin grafts.

In contrast, Roberts explained the inaccuracies in the record describing Mr. Fingerhut as the entrepreneur. Roberts claimed she was the businesswoman. They divorced to protect her assets; not his. She took out $75,000 from her mutual fund for a down payment on her dream house. She described herself as the breadwinner. Mr. Fingerhut only worked occasionally, according to Roberts. Roberts espoused her talents in trading on the stock market and investing in real estate.

Roberts was fixated on ensuring the Court was aware of her affluence. She was proud of the fact that she had money and wore expensive clothes. She again chastised Frank Reynolds for his testimony that she and Mr. Fingerhut had an argument because he wouldn't give her $3,000. Roberts stated, "The accounts were mine. The house was mine.

Page 11

The only way we had three cars is on my credit." She spoke regarding her gifts of money to her son and her sister.

Roberts closed her allocution with the following words: "I never intended for anything like that to happen, and I couldn't believe it, and I still can't believe it. We loved each other and we had a good life."

## AGGRAVATING CIRCUMSTANCES

R.C. 2929.04(A) sets forth the applicable aggravating circumstance enabling a consideration of the death penalty to be specified in the indictment and proven beyond a reasonable doubt in this case as "*** (7) [t]he offense was committed while the offender was committing, attempting to commit, or fleeing immediately after committing or attempting to commit kidnapping, rape, aggravated arson, aggravated robbery, or aggravated burglary, and either the offender was the principal offender in the commission of the aggravated murder or, if not the principal offender, committed the aggravated murder with prior calculation and design."

On May 28, 2003, Roberts was found guilty following a trial before a petit jury and after due deliberation by said jury of the following: Count One: Complicity to Commit Aggravated Murder in violation of R.C. 2923.03(A)(2), 2903.01(A) and 2941.14(C) of Robert S. Fingerhut, with two separate Specifications of Aggravating Circumstances; to wit,

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2491

Specification Number One: Aggravated Burglary in violation of R.C.
2929.04(A)(7) and Specification Number Two: Aggravated Robbery in
violation of R.C. 2929.04(A)(7); Count Two: Complicity to Commit
Aggravated Murder in violation of R.C. 2923.03(A)(2), 2903.01(B) and
2941.14(C) of Robert S. Fingerhut, with two separate Specifications of
Aggravating Circumstances, to wit, Specification Number One:
Aggravated Burglary in violation of R.C.2929.04(A)(7) and Specification
Number Two: Aggravated Robbery in violation of R.C. 2929.04(A)(7);
Count Three: Complicity to Commit Aggravated Burglary (F1) with Firearm
Specification in violation of R.C. 2923.03(A)(2), 2911.11(A)(1)(2) and
2941.145; and Count Four: Complicity to Commit Aggravated Robbery
(F1) with Firearm Specification in violation of R.C. 2923.03(A)(2),
2911.01(A)(1)(3) and 2941.145. Count Two was removed from the Jury
pursuant to a Motion to Dismiss by the State.

The Court finds the aggravating circumstances were set forth in the
indictment of Roberts. The Court further finds these elements of the
aggravating circumstances were proven beyond a reasonable doubt in the
trial of this matter. The Court finds Roberts acted with prior calculation and
design in the aggravated murder of Fingerhut.

The Court finds Roberts acted with prior calculation and design in
the aggravated murder of Fingerhut while committing or attempting to

Page 13

commit aggravated burglary. It was proved beyond a reasonable doubt at trial that Roberts provided access to Jackson to trespass in Fingerhut's residence, 254 Fonderlac Drive in Howland Township, Trumbull County, Ohio with the specific purpose of killing Fingerhut with prior calculation and design. It was further proven beyond a reasonable doubt that the tools used to carry out this plot were provided by Roberts: the gloves, ski mask, firearm as well as the access to the residence. Countless recorded telephone calls and written letters outlined this plan to murder Mr. Fingerhut in this manner leaving no reasonable doubt whatsoever.

The Court finds Roberts acted with prior calculation and design in the aggravated murder of Fingerhut while committing or attempting to commit aggravated robbery. It was proven beyond a reasonable doubt at trial that Roberts acted with prior calculation and design. Roberts intended for Jackson to steal Mr. Fingerhut's vehicle, originally to use the car as a means for kidnapping Fingerhut away from the residence to kill him off site. The police recovered Mr. Fingerhut's vehicle a few blocks from where Jackson was arrested. The keys were still in the ignition.

The Court finds beyond a reasonable doubt Roberts acted with complicity to commit aggravated murder while committing or attempting to commit or in fleeing immediately after committing or attempting to commit aggravated burglary. The Court finds beyond a reasonable doubt Roberts

Page 14

acted with complicity to commit aggravated murder while committing or attempting to commit or in fleeing immediately after committing or attempting to commit aggravated robbery. The Court further finds beyond a reasonable doubt Roberts acted with complicity to commit aggravated murder with prior calculation and design.

Having found the aggravating circumstances proven beyond a reasonable doubt, the Court now must "*** weigh against the aggravating circumstances proved beyond a reasonable doubt, the nature and circumstances of the offense, the history, character, and background of the offender ***" along with the additional statutory factors set forth in R.C. 2929.04(B) as mitigating factors.

## MITIGATING FACTORS

Pursuant to R.C. 2929.03(F), the Court makes the following findings regarding the factors listed in R.C. 2929.04(B):

1. *"Whether the victim of the offense induced or facilitated it; ***"*

The Court finds Mr. Fingerhut, the victim in this matter, did nothing to facilitate or induce his own death. The Court gives no weight to the allegations made by Roberts in her letters to Jackson regarding the physical abuse she suffered at the hand of Mr. Fingerhut. Even if the Court were to accept those claims as true, there is no evidence of any imminent threat to Roberts. Likewise, there is no evidence Roberts was

Page 15

prevented from evading the abusive situation by alternate means such as leaving the residence or filing a complaint with the police department.

2. "*Whether it is unlikely that the offense would have been committed, but for the fact that the offender was under duress, coercion, or strong provocation; \*\*\**"

The Court finds there is no evidence before the Court that Roberts was under any duress, coercion or strong provocation to commit the crime.

3. "*Whether, at the time of committing the offense, the offender, because of a mental disease or defect, lacked substantial capacity to appreciate the criminality of the offender's conduct or to conform the offender's conduct to the requirements of the law: \*\*\**"

The Court finds there is no evidence to suggest Roberts lacked substantial capacity to appreciate the criminality of her conduct or to conform her conduct to the rules of law. Although Roberts testified in her allocution regarding the status of her mental health, the Court does not find that statement contained any evidence to suggest or support Roberts did not understand the criminality of her conduct. The Court finds the incidents described by Roberts in her allocution were either isolated events following physical traumas associated with her motor vehicle

Page 16

accidents or they occurred after the death of Mr. Fingerhut. There is no evidence to suggest Roberts lacked mental capacity at the time of the events in question.

4. *"The youth of the offender; ***"*

The Court finds the age of Roberts is not a factor for consideration.

5. *"The offender's lack of a significant history of prior criminal convictions and delinquency adjudications; ***"*

The Court finds Roberts does not have a significant history of prior criminal convictions. This factor does weigh in her favor.

6. *"If the offender was a participant in the offense but not the principal offender, the degree of the offender's participation in the offense and the degree of the offender's participation in the acts that led to the death of the victim; ***"*

The Court finds although Roberts was not the "triggerman," the evidence clearly demonstrated she orchestrated the entire plot. The record reveals the intentional acts of Roberts in planning the aggravated murder of Mr. Fingerhut in exchange for his life insurance proceeds. Roberts induced Jackson to be her accomplice with promises of payment in the form of a Cadillac or a Lincoln, a wealthy lifestyle, vacations and a home in a desirable neighborhood. Roberts premeditated for months. She

Page 17

checked the balance of the life insurance proceeds. She arranged for Jackson's transportation from prison to a hotel room where she fulfilled his sexual needs, fed him food for sustenance, and provided the necessary tools to carry out the murder. The Court finds that Roberts was the primary mastermind behind Mr. Fingerhut's murder. But for her premeditated calculations, Mr. Fingerhut would not have been murdered by Jackson on that day.

7. *"Any other factors that are relevant to the issue of whether the offender should be sentenced to death."*

The Court finds there were several mitigating elements presented in Roberts's allocution. Certain elements of Roberts's allocution (at the original sentencing and again upon the earlier remand) are worthy of some discussion.

First, Roberts allegedly grew up in an abusive household. She claims she was witness to physical confrontations between her mother and her father to the point where she would hide under the bed "when the guns came out." This history, coupled with the alleged physical abuse between Roberts and Fingerhut does weigh slightly in favor of Roberts. Perhaps Roberts was still shouldering those childhood burdens into her adult life.

Page 18

However, there is absolutely no evidence before the Court to support the veracity of the physical abuse allegations made by Roberts against Fingerhut. Therefore, the Court is left to ponder whether those allegations were part of her scheme to induce Jackson to act as her accomplice. Roberts failed to alert the Court to any physical violence between her and Fingerhut during her allocution. Instead, Roberts professed her love for the man whom she contracted to have killed. Therefore, the Court finds these facts weigh only slightly in favor of Roberts.

Likewise, the Court gives little weight to Roberts's allocution claims regarding the rape by her cousin when she was very young. The Court finds this is entitled to little weight as there is no direct connection to the underlying crime. Even if Roberts were carrying the psychological scars of this trauma, there is little to no evidence to suggest any connection to the underlying crime.

The Court finds the charitable history of Roberts is entitled to some mitigation weight in her favor. Apparently, Roberts was quite generous with both her time and funds. She assisted plastic surgeons performing reconstructive surgery in Israel. She helped rescue a man from persecution in Ethiopia. On a more day-to-day basis, Roberts would help others in her family as well as strangers who were struggling financially.

Page 19

However, the Court finds this generosity must also be reviewed in totality with Roberts's self-promotion. Roberts frequently referred to her wealth in her allocution. She wanted the Court to know she was the breadwinner, not Mr. Fingerhut. She berated the man who testified she was angry with Fingerhut when he refused to give her $3,000. It seems these mischaracterizations of her social status were more upsetting to Roberts than the guilty verdict against her for complicity to commit murder. The Court finds these two polar self-portraits are not compatible with one another. Therefore, the Court affords no weight to the self-reported acts of generosity and charity of Roberts as mitigation.

The Court finds the reports of mental instability and physical traumas following several car accidents could be mitigating factors in Roberts's favor. Roberts was involved in two motor vehicle accidents which occurred after Roberts fell asleep behind the wheel. The mere fact that one has not only a singular incident of this magnitude, but two, leads the Court to question whether there are other biological or physiological factors at play. In addition, the mental status post-accidents and the lack of memory for an extended period of time is likewise a mitigating factor that weighs in favor of Roberts.

However, the Court finds the self-promotion by Roberts as to her financial prowess, educational accolades and charitable works is

Page 20

contradictory to her assertion that she has suffered mental deficiencies as a result of the motor vehicle accidents described above. The two are juxtaposed; either Roberts is a powerful entrepreneur capable of earning a magnitude of wealth and respect or she is one suffering from mental trauma. The Court gives little to no weight to any evidence of the latter.  In addition, the Court finds Roberts was fairly well-spoken in the delivery of her allocution. Plus, Roberts expressly made a valid waiver of her right to present mitigation evidence. There was no mental deficiency at play in that decision.

There is no question Roberts suffered some physical and mental traumas as a result of these accidents. Roberts even attempted to commit suicide in her garage. However, the Court finds these incidents are isolated and occurred in a time frame so far removed from the murder of Mr. Fingerhut that their relevance for mitigation is significantly decreased. In addition, pursuant to R.C. 2929.04(B), the Court must also consider and weigh "*** the nature and circumstances of the offense, the history, character, and background of the offender ***." The Court finds the history, character and background of Roberts have been sufficiently addressed in the discussion specified in R.C. 2929.04(B)(1-7) above.

Roberts planned and plotted for the murder of Fingerhut over a period of at least three months. She conspired with Jackson, her

Page 21

imprisoned lover, to murder Fingerhut for his life insurance proceeds. The murder plan was well documented through telephone calls recorded from Jackson's residence; the Lorain Correctional Institute. In addition, detailed letters were exchanged between the loving couple outlining their plans. These plans included the acquisition of supplies, the procurement of a hotel room, and the promise of a new vehicle for Jackson – all provided by Roberts. Ultimately, Roberts provided access to the residence in order for Jackson to carry out the murder as planned.

Despite these intricate details, Roberts "forgot" to include Jackson as one of her named lovers to the police during interviews. In addition, Roberts attempted to thwart the investigation into the Fingerhut murder by implicating other individuals; not Jackson. In addition, Roberts's feigned emotional outbursts over Fingerhut's death do not correlate to the insidious behavior relative to the same.

Therefore, the Court has granted little to no weight to any of the mitigating factors outlined by Roberts in her allocution. In addition, the Court finds Roberts's request for "equal treatment" to Jackson is inconsistent with the primary body of her allocution and has not given any weight to that request either.

The presence of mitigating factors does not preclude the imposition of a sentence of death. Rather, those mitigating factors are to then be

weighed against the aggravating circumstances of the crime. In conducting this comparison, the Court overwhelmingly finds the aggravating circumstances outweigh the mitigating factors.

## CONCLUSIONS OF LAW

The mitigating factors given little weight by this Court do not even approach an imbalance of the aggravating circumstances present in this matter. Roberts' traumatic childhood, her allegations of physical abuse at the hands of Fingerhut, the physical injuries sustained in multiple motor vehicle accidents, the mental disability, the lack of a prior criminal record and Roberts' charitable tendencies do not even draw the Court's attention away from the aggravating circumstances.

The Court has made a careful and independent review of the entire record, including Roberts's first and second allocutions. Upon this review, the Court finds the aggravating circumstances outweigh the mitigating factors by proof beyond a reasonable doubt.

Therefore, the Court hereby finds the sentence of death is an appropriate penalty for the Defendant Donna Marie Roberts in this matter.


Dated: April 30, 2014

Judge Ronald J. Rice

Page 23

IN THE COURT OF COMMON PLEAS
GENERAL DIVISION
TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| State of Ohio | ) | Case No. 2001CR00793 |
| | ) | |
| Plaintiff, | ) | Judge Ronald J. Rice |
| | ) | |
| vs. | ) | **OPINION OF THE COURT** |
| | ) | |
| | ) | NUNC PRO TUNC |
| Donna Marie Roberts | ) | **FINDINGS OF FACT AND** |
| | ) | **CONCLUSIONS OF LAW** |
| Defendant. | ) | **REGARDING IMPOSITION** |
| | ) | **OF DEATH PENALTY** |

This Nunc Pro Tunc Opinion is rendered at the requests of the State and the Defendant. Therefore, the Court renders this Nunc Pro Tunc Opinion which shall reflect certain editing inconsistencies in regard to the terms "unsworn statement" and "allocution" in the original Opinion. The substance of the opinion remains unchanged and pursuant to Defendant's request, the Court did not set this matter for a hearing to correct the clerical errors. Rather, the Court rendered this Nunc Pro Tunc Opinion as follows:

This matter was remanded by the Supreme Court of Ohio with the following instruction: "On remand, the trial court must consider all the mitigating evidence reflected in the record, including Roberts's allocution, weigh the aggravating circumstances against the mitigating factors, and file a sentencing opinion that reflects that it has complied with these

Page 1

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2503

instructions.  In doing so, the trial court must make an independent determination of whether a death sentence is appropriate and may not give deference to the sentences previously entered." *State v. Roberts*, 2013-Ohio-4580, ¶96.

## FACTUAL AND RECORDS REVIEW

Pursuant to the remand of this matter from the Supreme Court of Ohio, the Court has carefully read, reviewed, examined and/or inspected the entire court record; all of the transcripts from pre-trial & post-trial; exhibits; pleadings; including, but not limited to the following items:

1. The indictment of the Trumbull County Grand Jury;

2. All of the docket entries filed on this matter;

3. All of the notes entered by the staff as to scheduling;

4. The prior court scheduling of 29 events, including status hearings, hearings, pre-trials, motions to suppress, jury trial, sentencing and re-sentencing hearings;

5. All of the pleadings as filed by the State of Ohio and counsel for the Defendant;

6. The transcript of the Motion To Suppress held on February 3, 2002;

7. Transcripts of Proceedings Volumes 1 through 23 of individual and group voir dire questioning and juror selection;

8. All of the exhibits admitted at trial as listed and attached to this entry on a document titled List of Trial Exhibits And Mitigation Hearing Exhibits;

9. The entire trial and sentencing record;

Page 2

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2504

10.    The entire record following the remand from *Roberts I*.

In accordance with *Roberts II*, the Court did not permit Roberts to update her mitigation at the hearing following the recent remand. "Establishing a right to update mitigation could result in arbitrary distinctions between similarly situated capital defendants." Id. at ¶37. Roberts expressly and validly waived her right to present mitigation evidence during the original sentencing phase. Id. at ¶49.

The Court notes this matter is now before a different judge as Judge John M. Stuard has since retired from the bench and shortly thereafter passed away. As instructed, the Court has not given any deference to the prior decisions of Judge Stuard in this matter. However, the Court notes the acknowledgment as recognized in *Roberts II* that "[t]he trial court then stated that it had considered the record and the oral statements. *** Beyond this, however, the opinion does not discuss Roberts's allocution." The Court notes with confidence and respect for Judge Stuard, he would not have acknowledged consideration of the oral statements (including the allocution) had he not, in fact, considered the same. Such was his nature of fairness. Nevertheless, as previously indicated, the Court has given no deference to the prior decisions of Judge Stuard and has complied with the remand instructions as directed.

**ALLOCUTION/UNSWORN STATEMENT**
Page 3

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2505

Despite the fact that Roberts expressly waived mitigation, Roberts took advantage of her opportunity to provide an unsworn statement at the original sentencing and again following the *Roberts I* remand. Roberts explained in her original unsworn statement she had no intention of offering mitigating factors for consideration. Rather, she advised she chose to provide the unsworn statement because it was against her religion to take an oath.

Roberts's unsworn statement centered on two salient points. First, she pointed out inconsistencies in the evidence and testimony as she perceived them. Second, she drew attention to the differences between her trial and the trial of Nathaniel Jackson claiming racial inequities.

Roberts accurately characterized in her unsworn statement that the jury had been exposed to "five percent" of her life. That "five percent" included her relationship with Jackson. As she stated, "the other 95 percent of my life was dedicated to my husband, my son, my family and business, and doing charity for unfortunate to share the good fortune that God bestowed upon me and my loved ones." The Court finds this is the most truthful and yet, unfortunate, statement in the Defendant's entire soliloquy. Five percent comprised of bad decisions has such a profound effect on a lifetime.

Page 4

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2506

Roberts brought attention to the fact that the personnel in the courtroom were white. She likewise opined on inaccurate portrayals in the newspaper regarding the facts of this case.

Roberts explained she did not consider the jury to be a "jury of her peers." She provided some details regarding her life. She worked for a plastic surgeon for 25 years. She lived in Miami for 27 years. She traveled the world. Roberts expressed concern that some of the jurors indicated they didn't read any newspapers or watch the news. She also expressed concern regarding the young age of a few of the jurors, citing their lack of life experiences as a hindrance to their ability to judge the case.

Next, Roberts recounted certain aspects regarding the prosecution against Nathaniel Jackson. Roberts pointed out her perceived inconsistencies in the Jackson trial compared to the prosecution by the State in her case. She also alleged racial bias on behalf of the prosecution.

Roberts relayed her opinion on Howland Chief of Police Paul Monroe and his role in this matter prior to holding that position. She claimed Monroe intentionally informed the jury she was Jewish in an effort to sway the jurors against her even more. Roberts used her opportunity in this unsworn statement to chastise the jurors for becoming too involved in

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX - PAGE 2507

the operatic drama of the prison letters and communications than the truth.

Roberts reviewed the testimony regarding the life insurance policies. She claimed she had no knowledge the victim had increased the value of his life insurance policies. She also reviewed her financial history and business investments. Roberts pointed out she was earning $200,000 annually and the insurance policy of $250,000 was not enough to seduce her to murder Mr. Fingerhut.

Roberts added personal details about her life with the victim by describing their daily rituals with their beloved pets. She discussed the victim's family life and relationships with his sons from a previous relationship. She insisted she did not want any money from Mr. Fingerhut and relayed the fact that she signed over any life insurance policies to his children.

Next, Roberts spoke regarding Santiago Mason. She explained that Mason sued her for framing him. She protested this characterization and explained why that was not true. She described the victim's sports memorabilia collection. She also attacked Mason's character.

Roberts disputed certain elements of the State's case. Namely, she challenged the eye witness from her neighborhood who saw her driving in the area. She questioned the time frame against the witness's statement

Page 6

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2508

and her own activities during the relevant period of time on the night of the murder.

She also challenged the testimony of Frank Reynolds. She pointed out inconsistencies in Reynolds' testimony with the facts of her life. She contradicted the testimony of Reynolds regarding her argument over money with the victim. She was incensed that Reynolds would advise the jury she was upset with Mr. Fingerhut because he would not give her money. She was adamant she did not need any money from Mr. Fingerhut.

Roberts also challenged the physical evidence of the prosecution. She discussed the bloody washcloth found at the Days Inn. She claimed the washcloth and towel were purposefully placed there by the police. She also attacked the validity of other evidence recovered from the hotel and surrounding area.

Roberts questioned the introduction of certain sexual information about her by the State as inappropriate. She claimed it was only meant to influence the jury into forming a low opinion of her. She also challenged the search of the residence as improper.

In addition, Roberts claimed the marijuana found at the residence did not belong to her. She maintained it was also fabricated by the police. However, she admitted to smoking marijuana on a regular basis.

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2509

Roberts discussed the letters between her and Jackson as well as the taped telephone conversations while Jackson was incarcerated. She alleged the State manipulated those conversations to fit their case by not admitting the entire transcript of the conversations, only limited portions.

With gratitude, she acknowledged her attorneys. She described when and where she acquired the weapons found at the home. She explained the events when Mason allegedly stole her gun. Roberts also reviewed the coroner's report.

Roberts described her reaction to finding the victim on the night in question. She then relayed her version of the Jackson case running parallel to her prosecution. She challenged the veracity of the location of the murder weapon in the reports. According to the Defendant, the police moved the gun.

Finally, Roberts closed her unsworn statement by advising the jury they are required to recommend a death sentence since she presented no mitigating evidence. She pleaded for equal treatment and a sentence equal to that of Jackson's. However, Roberts reiterated this was not an admission of guilt. Rather, she claimed her plea was one of social justice and equality. She pledged her love for the victim and ended her statement with the instruction for the jury to "do what is right."

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2510

At the resentencing hearing following *Roberts I*, Roberts offered allocution to the Court. On October 22, 2007, Roberts indicated the record had been "*** a big misrepresentation about me, my character, my personality, and my life ***." Roberts proceeded to provide additional information relative to her personal history.

Roberts explained she grew up on a farm in Austintown, Ohio. She attended a Roman Catholic elementary school. She recounted that she was sexually abused by an older cousin when she was very young. She described her household as "*** very very abusive ***."

Roberts recalled her father abused her mother physically and verbally. Roberts stated she "*** spent a lot of time under my bed, especially when guns came out." When Roberts was taken to a doctor, she described being taken into a room alone with a male doctor and afterward he advised her mother she was "*** a bad girl." According to Roberts, she was always sad and "*** felt empty because nobody had ever paid attention to me or hugged me or anything ***."

Despite this sadness, Roberts achieved good grades and rewards in school. She was on the honor roll and dean's list later in college. She received accolades as a writer. She married her high-school sweetheart and moved to Miami, Florida. She described having her son and acknowledged his many accomplishments.

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2511

Roberts was involved in a car accident in 1963. She "*** fell asleep and the car went through big giant trees, hitting something ***." She recalled she was "filled with glass" from the debris. Roberts described herself as "*** spacey for awhile" after the accident.

In 1983, Roberts was again involved in a car accident. She flew through the windshield and experienced numbness in her extremities after the accident. Roberts was treated by a neurosurgeon for some time after this.

In 1999, Roberts again fell asleep behind the wheel and was involved in a car accident. Roberts recalled months after this event where she has no memory. Roberts stated, "*** Robert was calling me spacey and goofy, and he was really worried about me, and he told me I should get some kind of help, but I didn't want any help." Roberts acknowledged she ignored the depression.

Roberts recounted a suicide attempt wherein she started her car in the garage with her dog, Blossom. She stated Blossom alerted her by pawing at her arm and she called for help. Roberts was hospitalized after this event in a psychiatric ward. Following this hospitalization, Roberts sought SSI for disability.

Roberts explained she was prescribed three or four medications at that time. One medication was to "stop the voices." Roberts experienced

some hallucinations while incarcerated. She described seeing "giant anthills" on her floor. Roberts also described falling and hitting her head on multiple occasions after this event. Roberts described periods of time when she could not identify the day of the week.

Roberts explained she walked away from the restaurant she owned one day because she became overwhelmed. She left the refrigerator and freezers full and never returned.

Roberts described her life working with a plastic surgeon. She described helping people with reconstructive surgery. Roberts remembered how she used to help people pay their checks at the restaurant when they didn't have enough money.

Roberts converted to Judaism in 1980. She explained her involvement in a Jewish burial society and the customs therewith. She proudly expressed her involvement in a campaign to rescue a Jewish man from persecution in Ethiopia. She also volunteered in Israel with the plastic surgeons performing skin grafts.

In contrast, Roberts explained the inaccuracies in the record describing Mr. Fingerhut as the entrepreneur. Roberts claimed she was the businesswoman. They divorced to protect her assets; not his. She took out $75,000 from her mutual fund for a down payment on her dream house. She described herself as the breadwinner. Mr. Fingerhut only

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2513

worked occasionally, according to Roberts. Roberts espoused her talents in trading on the stock market and investing in real estate.

Roberts was fixated on ensuring the Court was aware of her affluence. She was proud of the fact that she had money and wore expensive clothes. She again chastised Frank Reynolds for his testimony that she and Mr. Fingerhut had an argument because he wouldn't give her $3,000. Roberts stated, "The accounts were mine. The house was mine. The only way we had three cars is on my credit." She spoke regarding her gifts of money to her son and her sister.

Roberts closed her allocution with the following words: "I never intended for anything like that to happen, and I couldn't believe it, and I still can't believe it. We loved each other and we had a good life."

## AGGRAVATING CIRCUMSTANCES

R.C. 2929.04(A) sets forth the applicable aggravating circumstance enabling a consideration of the death penalty to be specified in the indictment and proven beyond a reasonable doubt in this case as "*** (7) [t]he offense was committed while the offender was committing, attempting to commit, or fleeing immediately after committing or attempting to commit kidnapping, rape, aggravated arson, aggravated robbery, or aggravated burglary, and either the offender was the principal offender in the commission of the aggravated murder or, if not the

Page 12

Trumbull County 33087530078     Jun/10/2014 2:54:45 PM

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2514

principal offender, committed the aggravated murder with prior calculation and design."

On May 28, 2003, Roberts was found guilty following a trial before a petit jury and after due deliberation by said jury of the following: Count One: Complicity to Commit Aggravated Murder in violation of R.C. 2923.03(A)(2), 2903.01(A) and 2941.14(C) of Robert S. Fingerhut, with two separate Specifications of Aggravating Circumstances; to wit, Specification Number One: Aggravated Burglary in violation of R.C. 2929.04(A)(7) and Specification Number Two: Aggravated Robbery in violation of R.C. 2929.04(A)(7); Count Two: Complicity to Commit Aggravated Murder in violation of R.C. 2923.03(A)(2), 2903.01(B) and 2941.14(C) of Robert S. Fingerhut, with two separate Specifications of Aggravating Circumstances, to wit, Specification Number One: Aggravated Burglary in violation of R.C.2929.04(A)(7) and Specification Number Two: Aggravated Robbery in violation of R.C. 2929.04(A)(7); Count Three: Complicity to Commit Aggravated Burglary (F1) with Firearm Specification in violation of R.C. 2923.03(A)(2), 2911.11(A)(1)(2) and 2941.145; and Count Four: Complicity to Commit Aggravated Robbery (F1) with Firearm Specification in violation of R.C. 2923.03(A)(2), 2911.01(A)(1)(3) and 2941.145. Count Two was removed from the Jury pursuant to a Motion to Dismiss by the State.

Page 13

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2515

The Court finds the aggravating circumstances were set forth in the indictment of Roberts. The Court further finds these elements of the aggravating circumstances were proven beyond a reasonable doubt in the trial of this matter. The Court finds Roberts acted with prior calculation and design in the aggravated murder of Fingerhut.

The Court finds Roberts acted with prior calculation and design in the aggravated murder of Fingerhut while committing or attempting to commit aggravated burglary. It was proved beyond a reasonable doubt at trial that Roberts provided access to Jackson to trespass in Fingerhut's residence, 254 Fonderlac Drive in Howland Township, Trumbull County, Ohio with the specific purpose of killing Fingerhut with prior calculation and design. It was further proven beyond a reasonable doubt that the tools used to carry out this plot were provided by Roberts: the gloves, ski mask, firearm as well as the access to the residence. Countless recorded telephone calls and written letters outlined this plan to murder Mr. Fingerhut in this manner leaving no reasonable doubt whatsoever.

The Court finds Roberts acted with prior calculation and design in the aggravated murder of Fingerhut while committing or attempting to commit aggravated robbery. It was proven beyond a reasonable doubt at trial that Roberts acted with prior calculation and design. Roberts intended for Jackson to steal Mr. Fingerhut's vehicle, originally to use the car as a

Page 14

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2516

means for kidnapping Fingerhut away from the residence to kill him off site. The police recovered Mr. Fingerhut's vehicle a few blocks from where Jackson was arrested. The keys were still in the ignition.

The Court finds beyond a reasonable doubt Roberts acted with complicity to commit aggravated murder while committing or attempting to commit or in fleeing immediately after committing or attempting to commit aggravated burglary. The Court finds beyond a reasonable doubt Roberts acted with complicity to commit aggravated murder while committing or attempting to commit or in fleeing immediately after committing or attempting to commit aggravated robbery. The Court further finds beyond a reasonable doubt Roberts acted with complicity to commit aggravated murder with prior calculation and design.

Having found the aggravating circumstances proven beyond a reasonable doubt, the Court now must "*** weigh against the aggravating circumstances proved beyond a reasonable doubt, the nature and circumstances of the offense, the history, character, and background of the offender ***" along with the additional statutory factors set forth in R.C. 2929.04(B) as mitigating factors.

### MITIGATING FACTORS

Pursuant to R.C. 2929.03(F), the Court makes the following findings regarding the factors listed in R.C. 2929.04(B):

Page 15

The Court finds although Roberts was not the "triggerman," the evidence clearly demonstrated she orchestrated the entire plot. The record reveals the intentional acts of Roberts in planning the aggravated murder of Mr. Fingerhut in exchange for his life insurance proceeds. Roberts induced Jackson to be her accomplice with promises of payment in the form of a Cadillac or a Lincoln, a wealthy lifestyle, vacations and a home in a desirable neighborhood. Roberts premeditated for months. She checked the balance of the life insurance proceeds. She arranged for Jackson's transportation from prison to a hotel room where she fulfilled his sexual needs, fed him food for sustenance, and provided the necessary tools to carry out the murder. The Court finds that Roberts was the primary mastermind behind Mr. Fingerhut's murder. But for her premeditated calculations, Mr. Fingerhut would not have been murdered by Jackson on that day.

7. *"Any other factors that are relevant to the issue of whether the offender should be sentenced to death."*

The Court finds there were several mitigating elements presented in Roberts's allocution. Certain elements of Roberts's unsworn statement and allocution (at the original sentencing and again upon the earlier remand) are worthy of some discussion.

Page 18

First, Roberts allegedly grew up in an abusive household. She claims she was witness to physical confrontations between her mother and her father to the point where she would hide under the bed "when the guns came out." This history, coupled with the alleged physical abuse between Roberts and Fingerhut does weigh slightly in favor of Roberts. Perhaps Roberts was still shouldering those childhood burdens into her adult life.

However, there is absolutely no evidence before the Court to support the veracity of the physical abuse allegations made by Roberts against Fingerhut. Therefore, the Court is left to ponder whether those allegations were part of her scheme to induce Jackson to act as her accomplice. Roberts failed to alert the Court to any physical violence between her and Fingerhut during her allocution. Instead, Roberts professed her love for the man whom she contracted to have killed. Therefore, the Court finds these facts weigh only slightly in favor of Roberts.

Likewise, the Court gives little weight to Roberts's claims regarding the rape by her cousin when she was very young. The Court finds this is entitled to little weight as there is no direct connection to the underlying crime. Even if Roberts were carrying the psychological scars of this

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2519

trauma, there is little to no evidence to suggest any connection to the underlying crime.

The Court finds the charitable history of Roberts is entitled to some mitigation weight in her favor. Apparently, Roberts was quite generous with both her time and funds. She assisted plastic surgeons performing reconstructive surgery in Israel. She helped rescue a man from persecution in Ethiopia. On a more day-to-day basis, Roberts would help others in her family as well as strangers who were struggling financially.

However, the Court finds this generosity must also be reviewed in totality with Roberts's self-promotion. Roberts frequently referred to her wealth in her allocution. She wanted the Court to know she was the breadwinner, not Mr. Fingerhut. She berated the man who testified she was angry with Fingerhut when he refused to give her $3,000. It seems these mischaracterizations of her social status were more upsetting to Roberts than the guilty verdict against her for complicity to commit murder. The Court finds these two polar self-portraits are not compatible with one another. Therefore, the Court affords no weight to the self-reported acts of generosity and charity of Roberts as mitigation.

The Court finds the reports of mental instability and physical traumas following several car accidents could be mitigating factors in Roberts's favor. Roberts was involved in two motor vehicle accidents

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2520

which occurred after Roberts fell asleep behind the wheel. The mere fact that one has not only a singular incident of this magnitude, but two, leads the Court to question whether there are other biological or physiological factors at play. In addition, the mental status post-accidents and the lack of memory for an extended period of time is likewise a mitigating factor that weighs in favor of Roberts.

However, the Court finds the self-promotion by Roberts as to her financial prowess, educational accolades and charitable works is contradictory to her assertion that she has suffered mental deficiencies as a result of the motor vehicle accidents described above. The two are juxtaposed; either Roberts is a powerful entrepreneur capable of earning a magnitude of wealth and respect or she is one suffering from mental trauma. The Court gives little to no weight to any evidence of the latter.  In addition, the Court finds Roberts was fairly well-spoken in the delivery of her allocution. Plus, Roberts expressly made a valid waiver of her right to present mitigation evidence. There was no mental deficiency at play in that decision.

There is no question Roberts suffered some physical and mental traumas as a result of these accidents. Roberts even attempted to commit suicide in her garage. However, the Court finds these incidents are

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2521

The Court has made a careful and independent review of the entire record, including Roberts's first and second allocutions. Upon this review, the Court finds the aggravating circumstances outweigh the mitigating factors by proof beyond a reasonable doubt.

Therefore, the Court hereby finds the sentence of death is an appropriate penalty for the Defendant Donna Marie Roberts in this matter.

Date: _June 10, 2014_

_Judge Ronald J. Rice_

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2522

# The Supreme Court of Ohio

Court of Common Pleas for

_____ TRUMBULL _____ County,

_____ WARREN _____ , Ohio

STATE OF OHIO
_____

v.

DONNA MARIE ROBERTS
_____

CERTIFICATE

S.C. Case No. __2014-989__

C.P. Case No. __2001 CR 793__

 

In accordance with S.Ct. Prac. R. 19.5, I hereby certify that the attached is the record in this case, consisting of the original papers and exhibits to those papers; the transcript of proceedings and exhibits, along with a computer diskette of the transcript, if available; and certified copies of the journal entries and the docket of the case.

I further certify that an index, prepared in accordance with S.Ct. Prac. R. 19.5(B)(1) is also attached.

I further certify that I have sent a copy of the index to all counsel of record in this case.

IN TESTIMONY WHEREOF, I have hereunto subscribed my name as Clerk of the Court of Common Pleas for __TRUMBULL__ County, Ohio, and affixed the seal of the Court, on this __15th__ day of __SEPTEMBER__ , 20__14__ .

Clerk of the Court of Common Pleas in and for __TRUMBULL__ County, Ohio



By _____ Deputy

Telephone: __(330) 675-2557__

E-mail: __clallen@co.trumbull.oh.us__

Sup Ct No 2014-989

STATE OF OHIO -VS- DONNA MARIE ROBERTS

Trial Court Case No. 2001 CR 793

**Trial Court Record**

| ITEM NUMBER | DESCRIPTION | DATE FILED |
|---|---|---|
| 1 | Warrant on complaint and return of service filed | Dec. 21, 2001 |
| 1 | Complaint and affidavit filed under Seal by order of the court | Dec. 21, 2001 |
| 2 | Deft appeared with counsel. No plea Entered. | Dec. 21, 2001 |
| 3 | Motion to intervene filed by Atty Stephen Bolton | Dec. 26, 2001 |
| 4 | Direct presentment | Dec. 28, 2001 |
| 5 | Motion of the vindicator printing co in opposition | Dec. 28, 2001 |
| 6 | Notice of appearance as co-counsel filed By Atty John Juhasz | Dec. 28, 2001 |
| 7 | Defts motion and memorandum to hold affidavit and exhibits under seal filed by Atty J Gerald Ingram | Dec. 28, 2001 |
| 8 | Not guilty plea to arraignment on Indictment and summons no bond set | Dec. 31, 2001 |
| 9 | Summons on indictment returned by Sheriff Altiere on Donna Marie Roberts | Dec. 31, 2001 |
| 10 | Capias returned and endorsed by sheriff on On Donna Marie Roberts | Dec. 31, 2001 |

Issued to Attorneys 9-10-14

| 11 | Certified mailer number 0892 801 sent to To The Supreme Court of Ohio | Jan. 4, 2002 |
|----|----|----|
| 12 | Victim's Rights Notification filed | Jan. 7, 2002 |
| 13 | Defts notice of request for discovery filed By defts attorney Jerry Ingram and John Juhasz | Jan. 7, 2002 |
| 14 | Defts motion for notice of intention to use Evidence filed by defts attorney Jerry Ingram And John Juhasz | Jan. 7, 2002 |
| 15 | Certified mail number 891801 returned Endorsed from The Supreme Court of Ohio On 1/9/02 by ? | Jan. 14, 2002 |
| 16 | 963/427 Waiver of speedy trial for 300 days Until 11/18/02 | Feb. 1, 2002 |
| 17 | Defts motion for an order enlarging time for filing pretrial motions filed by defendants Attorney Jerry Ingram and John Juhasz | Feb. 11, 2002 |
| 18 | Defts motion FPR discovery filed by the Defendants Attorney Jerry Ingram and Attorney John Juhasz | Feb.11, 2002 |
| 19 | Motion to determine proper standard to excuse Jurors for cause filed by the defendants Attorney Jerry Ingram and Attorney John Juhasz | Feb. 20, 2002 |
| 20 | Defts motion for comprehensive voir dire Examination filed by the Attorney Jerry Ingram | Feb. 26, 2002 |

| 21 | Notice to Supreme Court (copy)<br>CC02008 | Mar. 13, 2002 |
| 22 | State's request for reciprocal discovery<br>Filed by the prosecutors office | Mar. 15, 2002 |
| 23 | State's response to defendants request for<br>Discovery filed by the prosecutors office | Mar. 15, 2002 |
| 24 | State's response to defendants request bill<br>Of particulars filed by the prosecutors office | Mar. 15, 2002 |
| 25 | Motion of interest party filed by Attorney<br>Rosemary Milby attorney Ford Motor Credit<br>Company filed | Mar. 20, 2002 |
| 26 | States second supplemental response to defts<br>Request for discovery with service filed by<br>prosecutor | April 16, 2002 |
| 27 | States third supplemental response to defts<br>Request for discovery with service filed by<br>prosecutor | April 18, 2002 |
| 28 | Defts motion for comprehensive voir<br>dire examination filed by the defts<br>Attorney J Gerald Ingram and John B<br>Juhasz | June 18, 2002 |
| 29 | Defts motion to prohibit death penalty<br>Qualification of jurors filed by attorney<br>J Gerald Ingram and John Juhasz | June 18, 2002 |
| 30 | Defts motion to suppress evidence<br>Filed by Attorney J Gerald<br>Ingram and John b Juhasz | July 9, 2002 |
| 31 | Defts motion for alternative voir<br>Examination filed by attorney<br>Jerry Ingram | July 15, 2002 |

| | | |
|---|---|---|
| 32 | Defts motion to have reasons for objections<br>And reasons for overruling objections filed by<br>Attorney Jerry Ingram | July 15, 2002 |
| 33 | Memorandum in opposition to defts motion to<br>Prohibit death qualifications filed by prosecutors<br>office | July 18, 2002 |
| 34 | State's memorandum in response to defts<br>Motion filed by prosecutors office | July 18, 2002 |
| 35 | Memorandum in opposition to defts motion<br>For comprehensive voir dire filed by prosecutors<br>office | July 18, 2002 |
| 36 | Defts motion to dismiss indictment or in the<br>Alternative to dismiss death specifications filed<br>By defts attorneys Jerry Ingram and John Juhasz | July 18, 2002 |
| 37 | Judgment Entry - 976/309<br>Entry of stipulation regarding defts July 9, 2002<br>Motion to suppress | July 19, 2002 |
| 38 | Defts motion to suppress references to the jury<br>Filed by Atty John Juhasz | Aug. 26, 2002 |
| 39 | Judgment Entry -- 981/507<br>Defts motion to suppress references to the<br>Jury is denied | Sept. 11, 2002 |
| 40 | Defts motion to dismiss death specifications<br>Filed by Attorney John Juhasz | Sept. 12, 2002 |
| 41 | Defts motion to prohibit the government from<br>Using peremptory challenges filed by Attorney<br>J Gerald Ingram | Sept. 13, 2002 |

| | | |
|---|---|---|
| 42 | Defts motion to have reasons for objections<br>And reasons for overruling objections placed<br>On the record filed by Attorney J Gerald Ingram | Sept 16, 2002 |
| 43 | Defts motion to dismiss death penalty<br>Specifications filed by Attorney J Gerald Ingram | Sept. 16, 2002 |
| 44 | Motion to suppress filed by Attorney Gerald<br>Ingram | Oct. 4, 2002 |
| 45 | Memorandum in opposition to defts motion to<br>Dismiss death penalty specifications  filed by<br>Prosecutor | Oct. 10, 2002 |
| 46 | Memorandum in opposition to defts motion to<br>Dismiss death penalty specifications filed by<br>prosecutor | Oct. 10, 2002 |
| 47 | Memorandum contra to defts motion to dismiss<br>Indictment: or in the alternative to dismiss death<br>Specifications filed by prosecutor | Oct. 10, 2002 |
| 48 | Memorandum in opposition to defts motion<br>To have reasons for defense objections and<br>Reasons for overruling defts objections placed<br>On the record filed by prosecutor | Oct. 10, 2002 |
| 49 | Memorandum in opposition to defts motion<br>To prohibit the use of peremptory challenges<br>Filed by prosecutor | Oct. 10, 2002 |
| 50 | Memorandum in opposition to defts motion for<br>Alternating voir dire filed by prosecutor | Oct. 10, 2002 |
| 51 | Motion for deft to submit to handwriting<br>Exemplars filed by prosecutor | Oct. 10, 2002 |
| 52 | States fourth supplemental response to deft<br>Request for discovery filed by prosecutor | Oct. 10, 2002 |

| 53 | Judgment Entry – 983/908<br>Motions for hearing rescheduled | Oct. 10, 2002 |
| 54 | Judgment Entry – 985/232<br>Waiver of speedy trial for 210 days | Oct. 25, 2002 |
| 55 | Defts motion to dismiss death specifications<br>With service filed Atty J Gerald Ingram | Dec. 3, 2002 |
| 56 | Judgment Entry – 995/415<br>Waiver of speedy trial  for additional 45 days | Feb. 28, 2002 |
| 57 | Memorandum in opposition to defendants<br>Motion to suppress filed by prosecutors office | Mar.  3, 2003 |
| 58 | Notice of open file discovery filed by the<br>Prosecutors office | Mar. 17, 2003 |
| 59 | Defts motion for order  granting expert access<br>To deft in county jail filed by Atty John Juhasz | Mar. 18, 2003 |
| 60 | Judgment Entry – 996/977<br>Granting expert access | Mar. 18, 2003 |
| 61 | Defts post suppression hearing memorandum<br>Filed by Atty Jerald Ingram and John Juhasz | Mar. 21, 2003 |
| 62 | Judgment Entry – 998/433<br>Defts motion to suppress is denied | April 4, 2003 |
| 63 | Proposed orientation instructions  filed by<br>Atty  J Gerald Ingram | April 7, 2003 |
| 64 | Hearing on motion to suppress evidence<br>Filed by Atty J Gerald Ingram and Atty<br>John Juhasz | April 7, 2003 |
| 65 | Notice of appeal to the 11th Appellate Court<br>Filed by Atty J Juhasz | April 7, 2003 |
| 66 | Judgment Entry – 998/713<br>Mandate from court of appeals. | April 8, 2003 |

| 67 | Subpoena returned and endorsed on Andrew Harvey<br>By Sheriff Altiere | April 8, 2003 |
|----|----|----|
| 68 | Subpoena returned and endorsed on Jose Sanchez<br>By Mahoning County Sheriffs Department | April 9, 2003 |
| 69 | Preliminary instructions (defendants submission)<br>Filed by the defendants attorney | April 10, 2003 |
| 70 | Defts motion for specific disclosure of due process<br>Material filed by Atty Jerry Ingram and John Juhasz | April 10, 2003 |
| 71 | States fifth supplemental response to defts request<br>For discovery filed by prosecutors office | April 14, 2003 |
| 72 | Subpoena returned and endorsed on Melvin Williams<br>By Mahoning County Sheriff | April 24, 2003 |
| 73 | Subpoena returned and endorsed on Shelia Fields<br>By Mahoning County Sheriff | April 24, 2003 |
| 74 | Subpoena returned and endorsed on Jeffrey<br>Diamantes by Mahoning County Sheriff | April 24, 2003 |
| 75 | Subpoena returned and endorsed on Jose Flores<br>By Richland County Sheriff | April 24, 2003 |
| 76 | Subpoena returned and endorsed on Jim Mccoy<br>By Cuyahoga County Sheriff | April 24, 2003 |
| 77 | Subpoena returned and endorsed on Chris Gear<br>By Mahoning County Sheriff | April 24, 2003 |
| 78 | Subpoena returned and endorsed on Ralph<br>Roberts by Mahoning County Sheriff | April 24, 2003 |

| 79 | Subpoena returned and endorsed on James Culwell by Franklin County Sheriff | April 24, 2003 |
| 80 | Subpoena returned and endorsed on Jill Kenyon By Sheriff Altiere | April 25, 2003 |
| 81 | Subpoena returned and endorsed on Jennifer Robinson by Mahoning County Sheriff | April 25, 2003 |
| 82 | Subpoena returned and endorsed on Jeffrey Pascarella by Mahoning County Sheriff | April 25, 2003 |
| 83 | Subpoena returned and endorsed on Rita Morrison By Mahoning County Sheriff | April 25, 2003 |
| 84 | Subpoena returned and endorsed on Rita Morrison By Sheriff Altiere | April 25, 2003 |
| 85 | Subpoena returned and endorsed on John Guzik By Mahoning County Sheriff | April 25, 2003 |
| 86 | Subpoena returned and endorsed on Miguel Diaz by Sheriff Altiere | April 25, 2003 |
| 87 | Trial stipulation filed by defendants attorney along with the prosecutors office | April 25, 2003 |
| 88 | Subpoena returned and endorsed on Frank Reynolds. Not served. Mahoning County Sheriff | April 25, 2003 |
| 89 | Subpoena returned and endorsed on James Daniels by Mahoning County Sheriff | April 25, 2003 |
| 90 | Subpoena returned and endorsed on Bridget Paul By Sheriff Altiere | April 25, 2003 |
| 91 | Subpoena returned and endorsed on Paula Carson by Sheriff Altiere | April 25, 2003 |

| | | |
|---|---|---|
| 92 | Subpoena returned unable to serve in time for hearing (Kris Ellington) | April 25, 2003 |
| 93 | Subpoena returned unable to serve in time for hearing (new address) 2747 Randolph NW Warren, Oh 44485 (Santiago Mason) | April 29, 2003 |
| 94 | The parties 45 minutes per side to individually voir dire The prospective jurors | May 12, 2003 |
| 95 | Defendants motion in limine hearing request or hearing Filed by defts  Atty Jerry Ingram and John Juhasz | May 12, 2003 |
| 96 | Defendants motion in limine concerning extraneous Statements in letters and tapes filed by defts attorney Jerry Ingram and John Juhasz | May 12, 2003 |
| 97 | Stenographer fee filed by Kelly J Wilson Official Court Reporter | May 12, 2003 |
| 98 | Stipulation filed by the prosecutors office | May 15, 2003 |
| 99 | Defendants motion in limine request for hearing Filed by defts  Attorney Jerry Ingram and John Juhasz | May 16, 2003 |
| 100 | Judgment Entry – 1002/478 Jurors M Kay and T Gray are ordered by the court Not to report to their places of employment during The duration of their jury service | May 22, 2003 |
| 101 | Judgment Entry – 1004/867 Ordered that jurors M Kay and T Gray are not to Report to places of employment during duration of Jury service in this case | May 22, 2003 |
| 102 | Defendants motion for judgment of acquittal filed By defts Atty Jerry Ingram and Atty John Juhasz | May 27, 2003 |

| 103 | Defendants proposed instruction to trial jury filed By defts  attorney Jerry Ingram and John Juhasz | May 27, 2003 |
| 104 | Charge if the court filed by defendants attorney Jerry Ingram and John Juhasz | May 27, 2003 |
| 105 | Judgment Entry – 1002/761 Verdict for plaintiff (count one) complicity to agg Murder (prior calculation and design) | May 29, 2003 |
| 106 | Judgment Entry – 1002/106 Verdict for plaintiff (count one) verdict on Specification one | May 29, 2003 |
| 107 | Judgment Entry – 1002/763 Verdict for plaintiff (count one) verdict on Specification two | May 29, 2003 |
| 108 | Judgment Entry – 1002/764 Verdict for plaintiff count two-complicity to agg Murder (felony murder) | May 29, 2003 |
| 109 | Judgment Entry – 1002/765 Verdict for plaintiff  count two – verdict on Specification one | May 29, 2003 |
| 110 | Judgment Entry – 1002/766 Verdict for plaintiff count two -  verdict on Specification two | May 29, 2003 |
| 111 | Judgment Entry 1002/767 Verdict for plaintiff count three – complicity to aggravated burglary | May 29, 2003 |
| 112 | Judgment Entry 1002/768 Verdict for plaintiff count three Verdict on firearm specification | May 29, 2003 |

| 113 | Judgment Entry 1002/769<br>Verdict for plaintiff count 4 -  complicity<br>To aggravated robbery | May 29, 2003 |
| 114 | Judgment Entry 1002/770<br>Verdict for plaintiff count four<br>Verdict on firearm specification | May 29, 2003 |
| 115 | Motion to merge death specification filed by<br>Defendants attorney | June 3, 2003 |
| 116 | Motion to prohibit readmission of certain exhibits<br>Filed by atty Jerry Ingram and atty John Juhasz | June 3, 2003 |
| 117 | Motion to prohibit reference to the nature and<br>Circumstances of the offenses at certain times filed<br>By the defendants attorney | June 3, 2003 |
| 118 | Motion to prohibit reference to the nature and<br>Circumstances of the offenses at certain times filed<br>By the defendants attorney | June 3, 2003 |
| 119 | Motion to prohibit improper comment by<br>Prosecutor on defendants unsworn statement<br>Filed by the defendants attorney | June 3, 2003 |
| 120 | Proposed instruction to jury filed by the defendants<br>attorney | June 3, 2003 |
| 121 | Judgment Entry 1003/391<br>Jury finding and recommendation of death sentence<br>Count one specification one:  aggravated burglary | June 5, 2003 |
| 122 | Judgment Entry 1003/393<br>Jury finding and recommendation of death sentence<br>Count one specification two:  aggravated robbery | June 5, 2003 |

| | | |
|---|---|---|
| 123 | Judgment Entry 1003/911<br>The court fines that there is no authority to order a<br>Pre-sentence investigation and reports | June 16, 2003 |
| 124 | Judgment Entry 1004/263<br>Jurors excused without objection by counsel | June 20, 2003 |
| 125 | Judgment Entry 1004/271<br>Jurors excused for cause during the trial | June 20, 2003 |
| 126 | Judgment Entry 2004/275<br>Opinion of the court imposing death sentence<br>See j/e | June 20, 2003 |
| 126 | Post sentencing rights filed by prosecutors office | June 23, 2003 |
| 127 | Warrant to convey to Ohio Reformatory for Women<br>Issued to sheriff | June 24, 2003 |
| 128 | Judgment Entry 1004/449<br>Sentencing:  6/4/03 See j/e | June 24, 2003 |
| 129 | Judgment Entry 1004/453<br>Writ to convey prisoner for execution of penalty | June 25, 2003 |
| 130 | Execution of costs returned endorsed by sheriff | June 25, 2003 |
| 131 | Notice of commitment and calculation of sentence<br>Filed by ODRC | June 30, 2003 |
| 132 | Judgment Entry 1008/468<br>State of Ohio Public Defenders Office is appointed as<br>Counsel for the deft in her appeal of this matter | Aug. 5, 2003 |
| 133 | Order to file record with Supreme Court | Aug. 18, 2003 |
| 134 | Petitioner Donna Roberts motion for appointment<br>Of counsel | Dec. 5, 2003 |

| | | |
|---|---|---|
| 135 | Appellants notice of appeal for delayed appeal in the Supreme Court of Ohio filed | Jan. 20, 2004 |
| 136 | Transcripts (29 volumes), 1 box of exhibits with list filed by Court reporter | Jan. 20, 2004 |
| 137 | Record transmitted to the Supreme Court including original Papers, transcripts (28 volumes), and exhibits with index by Personal delivery from the Trumbull County Sheriffs Dept. Copies of index sent to counsel of record. | Jan. 29, 2004 |
| 138 | Copy of exhibit record of death penalty case from the Supreme Court of Ohio | Feb. 2, 2004 |
| 139 | Motion for warrant for removal filed by prosecutors office | Feb. 27, 2004 |
| 140 | One certified copy of warrant for removal and warrant to Convey to trumbull county jail issued to the sheriff | Feb. 27, 2004 |
| 141 | Judgment Entry 1024/551<br>Order on warrant to convey | Feb. 27, 2004 |
| 142 | Warrant returned showing service on defendant | Mar. 15, 2004 |
| 143 | Judgment Entry 1026/435<br>Court finds conflict of interest with the public defenders office. David Doughten and Patty Smith appointed as counsel for deft In her appeal. | Mar. 23, 2004 |
| 144 | Judgment Entry 1028/385<br>Order appointing counsel for post conviction petition and Setting fees | April 14, 2004 |
| 145 | Motion for substitution of counsel filed by defts attorney David L Doughten and Patricia J Smith | July 22, 2014 |
| 146 | Judgment Entry 1039/213<br>Motion for substitution of counsel is granted | Aug. 20, 2004 |

| | | |
|---|---|---|
| 147 | Joint motion to toll filing date of post 7conviction petition<br>Filed by Atty Luwayne Annos | Sept. 9, 2004 |
| 148 | Judgment Entry 1040/696<br>Pursuant to joint motion filed by counsel for deft and counsel<br>For state of ohio, this court in the interest of justice will construe<br>Defts postconviciton petition timely filed if it is time-stamped by<br>The clerk of courts on or before 09/25/04 | Sept. 9, 2004 |
| 149 | Petition to vacated or set aside sentence filed by atty David<br>Doughten also exhibit b filed (Nathaniel Jacksons video) | Sept. 9, 2004 |
| 150 | Motion to extend time to response filed by the prosecutors office | Sept. 24, 2004 |
| 151 | Judgment Entry 1042/898<br>Pursuant to joint motion filed by counsel for deft and counsel<br>For state of ohio, this court in the interest of justice will construe<br>Defts postconviciton petition timely filed if it is time-stamped by<br>The clerk of courts on or before 09/25/04 | Oct. 7, 2004 |
| 152 | Judgment Entry 1042/899<br>The court fixes the due date for the states response by answer<br>Or motion at 11/03/04 | Oct. 7, 2004 |
| 153 | First amended petition to vacate or set aside sentence  filed by<br>Atty David Doughten | Oct. 25, 2004 |
| 154 | Motion for summary judgment filed by Atty Luwayne Annos | Nov. 2, 2004 |
| 155 | Copy of merit brief of pltf/applee of state of ohio filed by Pros | Nov. 3, 2004 |
| 156 | Petitioners motion to transfer record of Nathaniel Jackson to<br>The cause of action filed by defts attorney David L Doughten | Dec. 1, 2004 |
| 157 | Petitioners motion in opposition to states motion for summary<br>Judgment filed by defts attorney David Doughten | Dec. 1, 2004 |
| 158 | Motion for leave of court to conduct discovery filed by defts<br>Attorney David Doughten | Dec. 1, 2004 |

159   Judgment Entry 1052/303                                            Feb. 11, 2005
      Findings of fact and conclusions of law

160   Judgment Entry 1052/709                                            Feb. 11, 2005
      Defendant-petitioner Donna Roberts motion for leave of court
      To conduct discovery is overruled as moot. Motion to transfer
      Record of Nathaniel Jackson to this cause of actions is also denied
      As moot.

161   Judgment Entry 1053/026                                            Feb. 23, 2005
      Order for clerk of courts to immediately serve copy of courts
      Findings of fact an conclusions of law up Atty David Doughten and
      And upon Trumbull County Prosecutors Office counsel for plaintiff

162   Motion for appointment of appellate counsel filed by Atty David    Mar. 1, 2005
      Doughten

163   Motion for leave to file delayed appeal and notice of appeal to    Mar. 17, 2005
      The 11th Appellate Court filed by Atty David Doughten

164   Judgment Entry 1056/564                                            Mar. 30, 2005
      Approval of payment of counsel fees

165   Order from Supreme Court of Ohio.                                  Oct. 10, 2006
      Judgment of the court of common pleas is affirmed in part,
      Vacated in part and this cause is remanded to the trial court
      Consistent with the opinion rendered hereon. See J/E

166   Ordered by the Supreme Court of Ohio that the motion              Oct. 10, 2006
      For reconsideration in this case in denied

167   Motion for appointment of co-counsel filed by Atty               Dec. 4, 2006
      David Doughten

168   Motion for appropriation of funds for expert assistance          Dec. 4, 2006
      Filed by Atty David Doughten

169   Motion for release of records filed by Atty David Doughten        Dec. 4, 2006

170   Motion for appointment of co-counsel granted                      Dec. 8, 2006

| | | |
|---|---|---|
| 171 | Ordered that Robert A Dixon be appointed as co-counsel | Jan. 17, 2007 |
| 172 | Order redirectiving evaluation of defts competence to stand Trial | Jan. 17, 2007 |
| 173 | Order for forensic exam 1-23-07 | Jan. 17, 2007 |
| 174 | Motion for appropriation of funds for lead counsel filed by Atty David Doughten | Jan. 25, 2007 |
| 175 | Regular mail sent to: Robert Dixon returned by post office For attempted not known | Feb. 1, 2007 |
| 176 | Order for David Doughten to be appointed lead counsel | Feb. 5, 2007 |
| 177 | Receipt from the Supreme Court of Ohio. All original papers (3 boxes) returned to the Trumbull County Clerk of Courts | Apr. 24, 2007 |
| 178 | Motion to allow full presentation of mitigation at sentencing Rehearing filed by Atty David Doughten | May 1, 2007 |
| 179 | Motion to continue filed by Atty David Doughten | May 1, 2007 |
| 180 | States memorandum in opposition to defts motion to allow Full presentation of mitigation at sentencing hearing and Memorandum in opposition filed by prosecutor | June 28, 2007 |
| 180 | Warrant for removal | July 13, 2007 |
| 181 | Motion for warrant removal filed by prosecutors office | July 13, 2007 |
| 182 | Warrant issued to sheriff on 07-13-07 | July 13, 2007 |
| 183 | Motion to continue sentencing hearing file by Atty David Doughten | Aug. 2, 2007 |
| 184 | Motion for voluntary recusal of trial judge | Aug. 2, 2007 |
| 185 | Warrant returned showing service on defendant | Aug. 15, 2007 |

| 186 | Motion for warrant removal filed by prosecutors office | Aug. 27, 2007 |
| 187 | Warrant to convey to Trumbull County Jail issued to sheriff | Aug. 27, 2007 |
| 188 | Warrant for removal issued to sheriff | Aug. 27, 2007 |
| 189 | Order for continuance of trial is granted to allow the Competency exam to be conducted | Sept. 5, 2007 |
| 190 | Motion for appropriation of funds for expert assistance filed by Atty David Doughten | Sept. 11, 2007 |
| 191 | Defendants motion to allow full representation of litigation At sentencing hearing is denied | Sept. 14, 2007 |
| 192 | Donna Marie Roberts (defendant) motion to proffer evidence Filed by the defendant; also memorandum in support filed by The defendants Atty David L Doughten | Sept. 18, 2007 |
| 193 | Motion to proffer evidence appendix prison records along With exhibits filed by defendants Atty David L Doughten | Sept. 18, 2007 |
| 194 | Warrant returned showing service on defendant | Sept.19, 2007 |
| 195 | Motion to proffer evidence filed by Atty David L Doughten | Sept. 20, 2007 |
| 196 | Motion for appointment of independent expert and  for Continuance filed by Atty David L Doughten | Sept. 20, 2007 |
| 197 | Motion for warrant removal filed by prosecutors office | Oct. 2, 2007 |
| 198 | Journal entry/warrant for removal | Oct. 2, 2007 |
| 199 | Warrant to convey to Trumbull County Jail | Oct. 3, 2007 |
| 200 | Warrant returned showing service on defendant | Oct. 18, 2007 |
| 201 | Mandate from Court of Appeals. Instant appeal is dismissed For lack of jurisdiction | Oct. 22, 2007 |

| 202 | Defendant's Robert's sentencing memorandum filed by Atty David L Doughten | Oct. 29, 2007 |
| 203 | Ordered that the jurys recommendation is accepted and court Does find that the sentence of death is the appropriate penalty In this case | Oct. 29, 2007 |
| 204 | Execution for costs in felony case | Nov. 6, 2007 |
| 205 | Warrant to convey to Ohio Reformatory for Women issued To sheriff on 11-06-07 | Nov. 6, 2007 |
| 206 | Execution of costs returned endorsed by sheriff | Nov. 6, 2007 |
| 207 | Writ to convey prisoner for execution of penalty | Nov. 6, 2007 |
| 208 | Sentencing: on Oct. 29, 2007 | Nov. 6, 2007 |
| 208 | Warrant returned showing service on defendant | Nov. 7, 2007 |
| 209 | Approval of payment of counsel fees filed | Nov. 15, 2007 |
| 210 | Motion to appoint appellate counsel filed by Atty David L Doughten | Dec. 3, 2007 |
| 210 | Order to Certify record in death penalty case by 02-11-08 Filed by the Supreme Court of Ohio | Dec. 14, 2007 |
| 211 | Transcript of proceedings filed by Mary Ann Mills Court Reporter | Dec. 18, 2007 |
| 212 | Defendants exhibit A, defendants exhibit B and states Exhibit 1 filed by Mary Ann Mills court reporter | Dec. 18, 2007 |
| 213 | Approval of payment of counsel fees filed | Jan. 11, 2008 |
| 214 | Ordered that Atty Jeffrey J Helmick to represent defendant For purposes of appeal | Jan. 11, 2008 |

| | | |
|---|---|---|
| 215 | Motion for appointment of counsel filed by Atty David L Doughten on behalf of Donna Marie Roberts (defendant) | June 24, 2008 |
| 216 | Motion for appointment of counsel is granted | July 9, 2008 |
| 217 | Atty David L Doughten is reappointed as counsel for Defendant | July 9, 2008 |
| 218 | Appendix to Donna Roberts filed along with exhibit A David L Doughton | Aug. 20, 2008 |
| 219 | Petition to vacate or set aside sentence filed by David L Doughten | Aug. 20, 2008 |
| 220 | Appendix to Donna Roberts along with exhibit K filed by David L Doughton | Aug. 20, 2008 |
| 221 | Motion to extend time to respond filed by Luwayne Annos (Attorney) on behalf of State of Ohio (plaintiff) | Aug. 22, 2008 |
| 222 | Ordered that defendants petition to a fixed date of Sept 30 2008 is granted | Sept. 2, 2008 |
| 223 | Motion for appropriation of funds for expert assistance (independent psychologist) filed by Atty David Doughten | Sept. 17, 2008 |
| 224 | Motion for appropriation of funds for expert assistance (neuropsychologist) filed by Atty David Doughten | Sept. 17, 2008 |
| 225 | Motion to stay filed by Atty David Doughten | Sept. 17, 2008 |
| 226 | Donna Roberts motion for leave of court to conduct Discovery filed by Atty David Doughten | Sept. 17, 2008 |
| 227 | States response to petitioners motion to stay postconviction Proceedings filed by prosecutor | Sept. 22, 2008 |
| 228 | States opposition for appointment of funds for expert assistance (independent psychologist) filed by prosecutor | Sept. 22, 2008 |

| | | |
|---|---|---|
| 229 | States response to petitioners motion for leave of court to Conduct discovery filed by prosecutor | Sept. 22, 2008 |
| 230 | States opposition for appointment of funds for expert assistance (neuropsychologist) filed by prosecutor | Sept. 22, 2008 |
| 231 | Ordered that defendants motion is granted | Sept. 25, 2008 |
| 232 | Letter filed by defendant regarding court costs | Oct. 2, 2008 |
| 233 | Motion to appoint counsel filed by Atty David L Doughten | Mar. 11, 2013 |
| 234 | Appointment of counsel: Ordered that Robert Dixon Ohio registration #0022466 be appointed as substitute counsel | April 8, 2013 |
| 235 | Appeal from the court of common pleas: The death sentence Is vacated and this cause is remanded to the trial court for Resentencing on the basis of the existing record, consistent With the opinion rendered  herein. | Nov. 18, 2013 |
| 236 | Return of record of death penalty case from The Supreme Court of Ohio | Jan. 2, 2014 |
| 237 | Motion for warrant removal filed by prosecutors office | April 2, 2014 |
| 238 | Motion for removal for a motions hearing on April 30, 2014 And a re-sentencing hearing | April 2, 2014 |
| 239 | Motion to appoint counsel (death penalty case) filed by Filed by Atty David L Doughten | April 3, 2014 |
| 240 | JE:  Atty David L Doughten  and Atty Robert A Dixon Are appointed to represent Donna Roberts in the case for The sentencing hearing scheduled for April 30, 2014 | April 10, 2014 |
| 241 | Motion to preclude a sentence of death; or in the alternative Order a full penalty phase hearing filed by Atty David L Doughten | April 17, 2014 |

| | | |
|---|---|---|
| 242 | Motion for continuance of sentencing hearing filed by Atty David L Doughten | April 23, 2014 |
| 243 | Warrant to convey returned showing service on defendant | April 28, 2014 |
| 244 | Notice of post release control filed and signed by Donna M Roberts (defendant) and Atty David L Doughten | April 30, 2014 |
| 245 | Opinion of the court: findings of fact and conclusions of the Law regarding imposition of death penalty. The court hereby Finds the sentence of death is an appropriate penalty for the Defendant Donna Marie Roberts in this matter | April 30, 2014 |
| 246 | Indigent application fee notice filed | April 30, 2014 |
| 247 | JE: Writ of execution to convey Donna Marie Roberts | April 30, 2014 |
| 248 | JE:  The court finds Robert's motion to preclude a sentence Of death; or in the alternative order a full penalty phase hearing Is denied | April 30, 2014 |
| 249 | Postage | April 30, 2014 |
| 250 | Execution for costs returned endorsed by sheriff | May 1, 2014 |
| 251 | States motion for nunc pro tunc entries filed by Luwayne Annos (attorney) on behalf of State of Ohio (plaintiff) | May 5, 2014 |
| 252 | Motion to appoint appellate counsel death penalty case Filed by Atty David L Doughten | May 5, 2014 |
| 253 | Warrant to convey returned showing service on defendant | May 5, 2014 |
| 254 | Order: Attorney David L Doughten is appointed lead counsel And Robert L Dixon is appointed co-counsel | May 12, 2014 |
| 255 | Motion to clarify courts sentencing opinion filed pursuant to R.C. 2929.03(F) filed by Atty David L Doughten | June 2, 2014 |

| | | |
|---|---|---|
| 256 | Court costs bill sent to correctional facility for payment of costs | June 3, 2014 |
| 257 | Opinion of the court: Nunc pro tunc findings of fact and Conclusions of law regarding imposition of death penalty. See JE | June 10, 2014 |
| 258 | Order to certify record with notice of appeal of appellant Donna Roberts death penalty appeal | June 16, 2014 |
| 259 | Approval of payment of counsel fees filed | July 7, 2014 |
| 260 | Approval of payment of counsel fees | July 17, 2014 |
| 261 | Approval of payment of counsel fees filed | July 22, 2014 |

# THE SUPREME COURT OF OHIO

State of Ohio

CASE NO. **2014-0989**
TRUMBULL COUNTY
CASE No.  2001CR00793

v.

Donna Marie Roberts

**RECEIPT OF RECORD**
**DEATH PENALTY CASE**

THE RECORD IN THE ABOVE-NAMED CASE WAS TRANSMITTED TO THE CLERK OF THE COURT OF THE SUPREME COURT OF OHIO BY THE UNDERSIGNED.

LIST CONTENTS/ITEMS:

**4 BOXES**

KAREN INFANTE ALLEN
TRUMBULL COUNTY CLERK OF COURTS

9/15/14

STEPHEN M. KAHLER
RECORDS SPECIALIST
SUPREME COURT OF OHIO

9/15/14

2001 CR
00793
00034122869
REC

**Karen Infante Allen**

| | |
|---|---|
| **From:** | Karen Infante Allen |
| **Sent:** | Friday, September 19, 2014 10:14 AM |
| **To:** | 'Kahler, Stephen' |
| **Subject:** | RE: 2001CR00793,  State v. Donna Roberts, Supreme Court Case 2014-0989 |

Steve:

We have located most of the exhibits requested except for "State's Exhibit 39:  Photo" and "State's Exhibit 198:  Photo of Chrysler".

Also, we have the transcript of the 4/30/14 re-sentencing hearing.

I will hand-deliver the items to you the week of September 22nd---If you have any questions, please do not hesitate to call.

Thank you—

Karen Infante Allen
Trumbull County Clerk of Courts
(330) 675-2561

**From:** Kahler, Stephen [mailto:Stephen.Kahler@sc.ohio.gov]
**Sent:** Tuesday, September 16, 2014 10:38 AM
**To:** Karen Infante Allen
**Subject:** 2001CR00793, State v. Donna Roberts, Supreme Court Case 2014-0989

Hi Karen,

I finished checking in the State v. Roberts record.  There appear to be several exhibits that are exclusive to this case and not shared with the Nathaniel Jackson record which were not transmitted.  Below is a list of these items and a few of the shared exhibits we are also missing.  Do you mind checking to see if any of them are in your possession?  I went through the exhibits we have for State v. Jackson and they do not appear to have been retained by retained by my office.  From what I can tell, except the highlighted item, we may not have received the exhibits listed below when State v. Roberts was transmitted previously on 2/29/2008.

If any or all of the missing items cannot be located, we can go ahead and file the record with a note or statement (even in the form of a response to this e-mail) indicating they could not be found.

**Misc. Exhibits:**
Defendant's Exhibit B – Letters to Judge John M. Stuard
State's Exhibit No. 1 – Forensic Center's Competency Evaluation

**From Motion to Suppress Hearing:**
State's Exhibit No. 1 – Consent to search form by D. Roberts
Defendant's Exhibit A: Property Report
Defendant's Exhibit B: List of medications

**Trial Exhibits:**



2001 CR
00793
00086048888
EXH

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2547

State's Exhibit 39: Photo--MISSING
State's Exhibit 198: Photo of Chrysler--MISSING
State's Exhibit 381: 12-8-01 Audio Recording
State's Exhibit 381 A: Transcript of 12-8-01 Audio Recording
State's Exhibit 403: Photos (D. Roberts)
Defendant's Exhibit 1: Photo
Defendant's Exhibit 2: Photo
Defendant's Exhibit 3: Photo
Defendant's Exhibit 4: Photo
Defendant's Exhibit 5: Consent to search form
Defendant's Exhibit 6: Consent to search form
Joint Exhibit No. 1: Photos (Returned by the Supreme Court on 12/31/13)
Court's Exhibit 1: Jury Verdict Form
Court's Exhibit 1A: Court's answer to jury question
Court's Exhibit 2: Jury questions
Court's Exhibit 2A: Court's answer to jury question
Court's Exhibit 3: Jury question
Court's Exhibit 3A: Court's answer to jury question
Court's Exhibit 4: Jury question
Court's Exhibit 4A: Court's answer to jury question
Court's Exhibit 5: Jury question
Sentencing Exhibit "A" (sealed by the court)

I also want to confirm that there is not a transcript from the 4/30/2014 re-sentencing hearing on.

Thanks,
-Steve



**Steve Kahler | Records Specialist | Supreme Court of Ohio**
65 South Front Street ■ Columbus, Ohio 43215-3431
614.387.9535 (telephone) ■ 614.387. 9539 (fax)
stephen.kahler@sc.ohio.gov
www.supremecourt.ohio.gov

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2548