Public Docket

# T. e Supreme Court of Ohio
## Case Docket

**State of Ohio v. Donna Marie Roberts**

| **Case Information** | **Number** | 2014-0989 |
|---|---|---|
| | **Type** | Death Penalty Case (offense committed on or after 1/1/95) |
| | **Date Filed** | 06/13/2014 |
| | **Status** | Disposed |
| | | |
| | **Prior Jurisdiction** | Trumbull County, Court of Common Pleas |
| | **Prior Decision Date** | 06/10/2014 |
| | **Prior Case Numbers** | 2001CR00793 |

**Parties**   Donna Roberts; Appellant
    *Represented by:*
        Doughten, David Lawrence (2847), Counsel of Record
        Dixon, Robert Aloysius (22466)

    State of Ohio; Appellee
        *Represented by:*
            Annos, LuWayne (55651), Counsel of Record
            Musick, Ashleigh Jane (96078)
            Watkins, Dennis (9949)

**Docket**

| Date Filed | Description | Filed By |
|---|---|---|
| 06/13/2014 | Notice of appeal of Donna Roberts | Appellant |
| 06/13/2014 | And copy of praecipe to court reporter | Appellant |
| 06/13/2014 | And copy of entry of appointment of counsel | Appellant |
| 06/16/2014 | Order to clerk of court/custodian to certify record | |
| 06/16/2014 | Copy of notice of appeal sent to clerk of court of common pleas | |
| 09/26/2014 | Record | |
| 09/26/2014 | Clerk's notice of filing of record | |
| 03/23/2015 | Appellant's merit brief | Appellant |
| 07/14/2015 | Appellee's merit brief | Appellee |
| 08/27/2015 | Reply brief | Appellant |
| 10/31/2016 | Oral argument scheduled for Tuesday, February 7, 2017 | |
| 11/02/2016 | Notice of oral argument to be held on Tuesday, February 7, 2017 | |
| 01/12/2017 | Notice of appearance of Ashleigh Musick as co-counsel | Appellee |
| 01/18/2017 | List of supplemental authorities | Appellant |
| 01/30/2017 | Supplemental authorities | Appellee |
| 02/07/2017 | Oral argument held | |

10/29/21, 3:44 PM                                   Public Docket

| Date Filed | Description | Filed By |
|---|---|---|
| 05/30/2017 | **DECISION: Affirmed; sentence to be carried into execution on 08/12/2020. See opinion at 2017-Ohio-2998 (https://supremecourt.ohio.gov/rod/docs/pdf/0/2017/2017-ohio-2998.pdf). See announcement at 2017-Ohio-4024 (https://supremecourt.ohio.gov/rod/docs/pdf/0/2017/2017-ohio-4024.pdf).** | DISPOSITIVE |
| 05/31/2017 | Proof of mailing for David Lawrence Doughten; postage $6.49 | |
| 05/31/2017 | Proof of mailing for LuWayne Annos; postage $6.49 | |
| 06/05/2017 | Return receipt for LuWayne Amos | |
| 06/08/2017 | Motion for reconsideration | Appellant |
| | **07/26/17 Denied. See announcement at 2017-Ohio-6964 (https://supremecourt.ohio.gov/rod/docs/pdf/0/2017/2017-ohio-6964.pdf).** | |
| 06/14/2017 | Memorandum in response to motion for reconsideration | Appellee |
| 07/26/2017 | Certified copy of judgment entry/mandate sent to clerk | |
| 07/26/2017 | Copy of reconsideration entry sent to clerk | |
| 07/26/2017 | Copies of entry issued by certified mail | |
| 08/22/2017 | Application for attorney fees of David L. Doughten | Appellant |
| | **09/22/17 Granted in the amount of $5,669.33** | |
| 08/22/2017 | Personal Identifier Form - Application for attorney fees | Appellant |
| 09/11/2017 | Application for attorney fees of Robert A. Dixon | Appellant |
| | **09/22/17 Granted in the amount of $1,786.33** | |
| 09/11/2017 | Personal Identifier Form - Application for attorney fees | Appellant |
| 10/24/2017 | Notice of U.S.S.C. extension of time for filing petition for certiorari to 12/8/17 | |
| 12/18/2017 | Notice of filing petition for certiorari in U.S.S.C. | |
| 02/26/2018 | Notice of U.S.S.C. denial of petition for writ of certiorari | Appellant |
| 04/11/2018 | Return of record to clerk of court/custodian | |
| 04/11/2018 | Return receipt | |
| 06/12/2020 | Motion for stay of execution during pendency of State postconviction remedies pursuant to R.C.2953.21 | Appellant |
| | **06/25/20 Granted; stay shall remain in effect until exhaustion of all state postconviction proceedings, including any appeals. See announcement at 2020-Ohio-3445 (https://supremecourt.ohio.gov/rod/docs/pdf/0/2020/2020-ohio-3445.pdf).** | |
| 09/29/2020 | Copies of entry issued by certified mail | |
| 10/05/2020 | Return receipt; received by Amy Hamilton | |
| 10/07/2020 | Return receipt; received by Sarah Ackman | |
| 10/09/2020 | Return receipt; received by LuWayne Annos | |
| 10/14/2020 | Return receipt; received by Trumbull County Clerk of Courts | |

End of Docket

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2350



# IN THE SUPREME COURT OF OHIO
No.

14-0989

| | | |
|---|---|---|
| State of Ohio, | : | |
| | : | From the Trumbull County Common Pleas |
| Appellee, | : | Court Case No. 2001 CR 0793 |
| | : | |
| -v- | : | |
| | : | **DEATH PENALTY APPEAL** |
| Donna Roberts, | : | |
| | : | |
| Appellant. | : | |

---

## NOTICE OF APPEAL OF APPELLANT, DONNA ROBERTS

---

COUNSEL FOR APPELLEE:

Dennis Watkins, Esq.
Trumbull County Prosecutor
Administration Building
160 High Street NW #4
Warren, OH 44481
(330) 675-2426



FILED

JUN 13 2014

CLERK OF COURT
SUPREME COURT OF OHIO

COUNSEL FOR APPELLEE

RECEIVED

JUN 13 2014

CLERK OF COURT
SUPREME COURT OF OHIO

COUNSEL FOR APPELLANT:

David L. Doughten, Esq. #0002847
4403 St. Clair Avenue
Cleveland, Ohio   44103
(216) 361-1112

Robert A. Dixon, Esq, #0022466
4403 St. Clair Avenue
Cleveland, Ohio 44113
(216) 432-1992

COUNSEL FOR APPELLANT

**Proof of Service**

A copy of the foregoing Petitioner's Motion was served upon Dennis Watkins, Trumbull

County Prosecutor and/or LuWayne Annos, Esq. Assistant Trumbull County Prosecutor,

Administration Building, 160 High Street, Warren, Ohio 44481, by Regular U. S. mail on this _16_

day of June,  2014.

_____
David L. Doughten
Counsel for Appellant

**<u>Notice of Appeal of Appellant Donna Roberts</u>**

Now comes the appellant, Donna Roberts, and hereby gives Notice of Appeal to the Supreme Court of Ohio from the Cuyahoga Cuyahoga County Common Pleas Court, R.C. §2929.03(F) opinion journalized on April 30, 2014.  A nunc pro tunc entry of this sentencing opinion was filed on June 10, 2014. The appellant is appealing the denial of her sentence of death for Aggravated Murder in violation of R.C. §2903.01 with capital specifications.

This case raises a substantial constitutional question and is one of public or great general interest.  It also involves the affirmance of the death penalty.  This is an appeal of right pursuant to S. Ct R. II , section 1(A).

Respectfully submitted,

David L. Doughten
Counsel for Appellant

Robert A. Dixon
Counsel for Appellant

06-11-'14 07:52 FROM- Trumbull Cty Clerk    330-675-2563    T-793  P0001/0001 F-969

IN THE COURT OF COMMON PLEAS
TRUMBULL COUNTY, OHIO
CRIMINAL DIVISION

STATE OF OHIO,                 :        CASE NO.    2001 CR 0793

        Plaintiff,          :

    -vs-                       :        JUDGE RONALD J. RICE

DONNA ROBERTS,                 :        <u>ORDER</u>

        Defendant.          :

    This case came on for consideration through motion by the defendant Donna Roberts for

the appointment of substitute counsel for her direct appeal to the Supreme Court of Ohio. The

Court, being fully advised, finds the motion well-taken.

    It is therefore <u>ORDERED</u> that David L. Doughten, 4403 St. Clair Avenue, Cleveland,

OH 44103 be appointed as lead counsel for Ms. Roberts in her appeal to the Supreme Court of

Ohio.   Robert L. Dixon, Ohio Registration #0022466, 4403 St. Clair Avenue, Cleveland, Ohio,

44103 is appointed as co-counsel.

JUDGE RONALD J. RICE

    <u>5-9-14</u>
    Date

FILED
COURT OF COMMON PLEAS
MAY 1 2 2014
TRUMBULL COUNTY, OH
KAREN INFANTE ALLEN, CLERK

2001 CR
00793
00048205398
0

DATE: 6/11/14

TO: DAVID DOUGHTEN

C/O: DAVID STEBBINS

FROM: JANE KIBLER

FAX #: 614-469-5999

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2355

```
┌─────────────────────────────────────────┐
│ TRANSMISSION VERIFICATION REPORT          │
└─────────────────────────────────────────┘
```

```
                                    TIME  : 06/11/2014 09:41
                                    NAME  : LAURENCE TURBOW
                                    FAX   : 2168816682
                                    TEL   : 2168817939
                                    SER.# : C8J641807
```

```
DATE,TIME                    06/11  09:41
FAX NO./NAME                 16144695999
DURATION                     00:00:33
PAGE(S)                      02
RESULT                       OK
MODE                         STANDARD
                             ECM
```

## CAPITAL CASE PRAECIPE

## IN THE SUPREME COURT OF OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | DATE OF OFFENSE: 12/11/2001 |
| Appellee, | : | TRIAL COURT CASE NO: <u>2001 CR 793</u> |
| vs. | : | DATE OF FINAL JUDGMENT IN TRIAL COURT: 4/07/2014 |
| DONNA ROBERTS, | : | TRIAL COURT JUDGE: <u>Ronald J. Rice</u> |
| Appellant. | : | DATE OF RULING ON TIMELY MOTION FOR NEW TRIAL IN TRIAL COURT: N/A |

**TO THE COURT REPORTER**:

Immediately prepare a transcript of all proceedings, including but not limited to all pretrial hearings, motions hearings, in chambers conferences, trial phase (including voir dire) proceedings, penalty phase proceedings and sentencing proceedings, in conformance with S. Ct. Par. R XIX, §3, and deliver to the clerk of the court of common pleas.

DAVID L. DOUGHTEN (#0002847)
4403 St. Clair Avenue
Cleveland, OH 44103
(216) 361-1112

I further certify that a true copy of the foregoing Capital Case Praecipe was served upon all other parties in compliance with S. Ct. R. XIX, Section 1(B) on this _10_ day of June, 2014.

DAVID L. DOUGHTEN

**IN THE COURT OF COMMON PLEAS**
**TRUMBULL COUNTY, OHIO**

| | | |
|---|---|---|
| STATE OF OHIO, | ) | CASE NO. 2001 CR 793 |
| | ) | |
| PLAINTIFF, | ) | JUDGE RONALD J. RICE |
| | ) | |
| -VS- | ) | **DEATH PENALTY** |
| | ) | |
| DONNA MARIE ROBERTS, | ) | SENTENCE TO THE OHIO |
| | ) | REFORMATORY FOR WOMEN |
| DEFENDANT. | ) | |
| | ) | ENTRY ON SENTENCE |

The Defendant, Donna Marie Roberts, herein having been indicted by the

September Eighth, 2001, Term of the Grand Jury of Trumbull County, Ohio, for Count

One: Aggravated Murder in violation of R.C. 2903.01(A) and 2941.14(C) of Robert S.

Fingerhut, with two (2) separate Specifications of Aggravating Circumstances to wit:

Specification No. 1: Aggravated Burglary in violation of R.C. 2929.04(A)(7) and

Specification No. 2: Aggravated Robbery in violation of R.C. 2929.04(A)(7); Count

Two: Aggravated Murder in violation of R.C. 2903.01(B) and 2941.14(C) of Robert S.

Fingerhut, with two (2) separate Specifications of Aggravating Circumstances, to wit:

Specification No. 1: Aggravated Burglary in violation of R.C. 2929.04(A)(7), and

Specification No. 2: Aggravated Robbery in violation of R.C. 2929.04(A)(7); Count

Three: Aggravated Burglary (F1) With Firearm Specification in violation of R.C.

2911.11.(A)(1)(2) and 2941.145; and Count Four: Aggravated Robbery (F1) With

Firearm Specification in violation of R.C. 2911.01(A)(1)(3) and 2941.145, and on the

8th day of April, 2003, having been brought into Court for trial before a petit jury and

being represented by counsel, Attorney J. Gerald Ingram and Attorney John B.

Ingram, and the jury having been empaneled and after due deliberation on May 28,

Page 1



2001 CR
00793
00064237606
OSEN

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2358

2003, was found guilty of Count One: Complicity to Commit Aggravated Murder in violation of R.C. 2923.03(A)(2), 2903.01(A) and 2941.14(C) of Robert S. Fingerhut, with two (2) separate Specifications of Aggravating Circumstances, to wit: Specification No. 1: Aggravated Burglary in violation of R.C. 2929.04(A)(7), and Specification No. 2: Aggravated Robbery in violation of R.C. 2929.04(A)(7); Count Two: Complicity to Commit Aggravated Murder in violation of R.C 2923.03(A)(2), 2903.01(B) and 2941.14(C) of Robert S. Fingerhut, with two (2) separate Specifications of Aggravating Circumstances, to wit: Specification No. 1: Aggravated Burglary in violation of R.C. 2929.04(A)(7), and Specification No. 2: Aggravated Robbery in violation of R.C 2929.04(A)(7); Count Three: Complicity to Commit Aggravated Burglary (F1) With Firearm Specification in violation of R.C. 2923.03(A)(2), 2911.11.(A)(1)(2) and 2941.145; and Count Four: Complicity to Commit Aggravated Robbery (F1) With Firearm Specification in violation of R.C. 2923.03(A)(2), 2911.01(A)(1)(3) and 2941.145. Thereafter, Count Two was removed from the Jury pursuant to a Motion to Dismiss by the State.

On June 4, 2003, the Defendant having been brought into Court to give evidence in mitigation on Count One of the indictment, and after arguments of counsel and instructions of law, and after due deliberation, it was the finding and recommendation of the Jury on June 4, 2003, that the sentence of death be imposed on the Defendant.

On April 30, 2014, pursuant to a remand from the Supreme Court of Ohio, the Defendant's sentencing hearing was held pursuant to R.C. 2929.19. Attorney David L. Doughten and Attorney Robert A. Dixon were present as counsel for the Defendant

Page 2

and Assistant County Prosecutor Christopher Becker was present as counsel for the State. The Defendant was also present in Court and was previously afforded all rights pursuant to Crim.R. 32. The Court has considered the record and oral statements, as well as the principles and purposes of sentencing under R.C. 2929.11, and has balanced the seriousness and recidivism factors of R.C. 2929.12.

Pursuant to law, the Court this day, April 30, 2014, having determined in a separate opinion of specific findings that the aggravating circumstances as to the count of Aggravated Murder outweigh the mitigating factors by proof beyond a reasonable doubt, then made inquiry as to whether the Defendant had anything to say why judgment should not be pronounced against her, and the Defendant in answer showed no good cause or sufficient reason why sentence should not be pronounced.

The Court has considered the factors under R.C. 2929.14, and makes the following findings: (1) the shortest prison term will demean the seriousness of the Defendant's conduct; (2) the longest prison term is appropriate because the Defendant committed the worst form of the offense; (3) multiple prison terms are necessary to protect the public from future crime and to punish the offender; (4) consecutive prison sentences are not disproportionate to the seriousness of the Defendant's conduct and to the danger the offender poses to the public; and (5) the harm caused by multiple offenses was so great that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the Defendant's conduct.

It is therefore ORDERED, ADJUDGED, and DECREED that the Defendant, DONNA MARIE ROBERTS:

Page 3

1. Shall be sentenced to death on Count One;

2. Shall serve an imprisonment term of ten (10) years on Count Three; plus a mandatory term of three (3) years on the Firearm Specification to be served prior to and consecutive to the sentence imposed in Count Three;

3. Shall serve an imprisonment term of ten (10) years on Count Four, plus a mandatory term of three (3) years on the Firearm Specification to be served prior to and consecutive to the sentence imposed in Count Four, sentence in Count Four to be served consecutively to the sentence imposed on Count Three;

4. The Firearm Specifications in Count Three and Count Four shall merge as one sentence in Count Three as a matter of law;

5. The Defendant shall submit to DNA testing;

6. The Defendant is Ordered to pay the cost of prosecution taxed in the amount of $_____ for which execution is awarded.

The Court has further notified the Defendant that post-release control is mandatory in this case for five (5) years, as well as the consequences for violating conditions of post-release control imposed by the Parole Board under R.C. 2967.28. The Defendant is ordered to serve as part of this sentence any term of post-release control imposed by the Parole Board, and any prison term for violation of that post-release control.

The Court further disapproves of the Defendant's placement in a program of shock incarceration pursuant to R.C. 5120.031 or for placement in an intensive prison program pursuant to R.C. 5120.032.

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2361

IT IS SO ORDERED.

Dated: April 30, 2014

_____
JUDGE RONALD J. RICE

THE CLERK OF COURTS IS HEREBY ORDERED TO SERVE COPIES OF THIS ENTRY TO
ALL COUNSEL OF RECORD.

_____
JUDGE RONALD J. RICE

You are hereby notified that you have been convicted of a felony of violence
and pursuant to Section 2923.13 of the Ohio Revised Code, you are prohibited
from acquiring, having, carrying or using any firearm or dangerous ordnance.

4/30/14
(Copies To:
PROS
J. Ingram
A. Millette
J. Wilhelm
D. Marburger
S. Bolten
D. Doughten
J. Juhasz



Page 5

**IN THE COURT OF COMMON PLEAS**
**GENERAL DIVISION**
**TRUMBULL COUNTY, OHIO**

| | | |
|---|---|---|
| State of Ohio | ) | Case No. 2001CR00793 |
| | ) | |
| Plaintiff, | ) | Judge Ronald J. Rice |
| | ) | |
| vs. | ) | **OPINION OF THE COURT** |
| | ) | |
| Donna Marie Roberts | ) | **FINDINGS OF FACT AND** |
| | ) | **CONCLUSIONS OF LAW** |
| Defendant. | ) | **REGARDING IMPOSITION** |
| | ) | **OF DEATH PENALTY** |

This matter was remanded by the Supreme Court of Ohio with the following instruction: "On remand, the trial court must consider all the mitigating evidence reflected in the record, including Roberts's allocution, weigh the aggravating circumstances against the mitigating factors, and file a sentencing opinion that reflects that it has complied with these instructions. In doing so, the trial court must make an independent determination of whether a death sentence is appropriate and may not give deference to the sentences previously entered." *State v. Roberts*, 2013-Ohio-4580, ¶96.

### FACTUAL AND RECORDS REVIEW

Pursuant to the remand of this matter from the Supreme Court of Ohio, the Court has carefully read, reviewed, examined and/or inspected

Page 1

the entire court record; all of the transcripts from pre-trial & post-trial;

exhibits; pleadings; including, but not limited to the following items:

1. The indictment of the Trumbull County Grand Jury;

2. All of the docket entries filed on this matter;

3. All of the notes entered by the staff as to scheduling;

4. The prior court scheduling of 29 events, including status hearings, hearings, pre-trials, motions to suppress, jury trial, sentencing and re-sentencing hearings;

5. All of the pleadings as filed by the State of Ohio and counsel for the Defendant;

6. The transcript of the Motion To Suppress held on February 3, 2002;

7. Transcripts of Proceedings Volumes 1 through 23 of individual and group voir dire questioning and juror selection;

8. All of the exhibits admitted at trial as listed on a document titled List of Trial Exhibits And Mitigation Hearing Exhibits;

9. The entire trial and sentencing record;

10.    The entire record following the remand from *Roberts I*.

In accordance with *Roberts II*, the Court did not permit Roberts to

update her mitigation at the hearing following the recent remand.

"Establishing a right to update mitigation could result in arbitrary

distinctions between similarly situated capital defendants." Id. at ¶37.

Roberts expressly and validly waived her right to present mitigation

evidence during the original sentencing phase. Id. at ¶49.

Page 2

The Court notes this matter is now before a different judge as Judge John M. Stuard has since retired from the bench and shortly thereafter passed away. As instructed, the Court has not given any deference to the prior decisions of Judge Stuard in this matter. However, the Court notes the acknowledgment as recognized in *Roberts II* that "[t]he trial court then stated that it had considered the record and the oral statements. *** Beyond this, however, the opinion does not discuss Roberts's allocution." The Court notes with confidence and respect for Judge Stuard, he would not have acknowledged consideration of the oral statements (including the allocution) had he not, in fact, considered the same. Such was his nature of fairness. Nevertheless, as previously indicated, the Court has given no deference to the prior decisions of Judge Stuard and has complied with the remand instructions as directed.

## ALLOCUTION

Despite the fact that Roberts expressly waived mitigation, Roberts took advantage of her opportunity for allocution at the original sentencing and again following the *Roberts I* remand. Roberts explained in her original allocution she had no intention of offering mitigating factors for consideration. Rather, she advised she chose allocution because it was against her religion to take an oath.

Page 3

Roberts's allocution centered on two salient points. First, she pointed out inconsistencies in the evidence and testimony as she perceived them. Second, she drew attention to the differences between her trial and the trial of Nathaniel Jackson claiming racial inequities.

Roberts accurately characterized in her allocution that the jury had been exposed to "five percent" of her life. That "five percent" included her relationship with Jackson. As she stated, "the other 95 percent of my life was dedicated to my husband, my son, my family and business, and doing charity for unfortunate to share the good fortune that God bestowed upon me and my loved ones." The Court finds this is the most truthful and yet, unfortunate, statement in the Defendant's entire allocution. Five percent comprised of bad decisions has such a profound effect on a lifetime.

Roberts brought attention to the fact that the personnel in the courtroom were white. She likewise opined on inaccurate portrayals in the newspaper regarding the facts of this case.

Roberts explained she did not consider the jury to be a "jury of her peers." She provided some details regarding her life. She worked for a plastic surgeon for 25 years. She lived in Miami for 27 years.  She traveled the world. Roberts expressed concern that some of the jurors indicated they didn't read any newspapers or watch the news.  She also expressed concern regarding the young age of a few of the jurors, citing

Page 4

their lack of life experiences as a hindrance to their ability to judge the case.

Next, Roberts recounted certain aspects regarding the prosecution against Nathaniel Jackson. Roberts pointed out her perceived inconsistencies in the Jackson trial compared to the prosecution by the State in her case. She also alleged racial bias on behalf of the prosecution.

Roberts relayed her opinion on Howland Chief of Police Paul Monroe and his role in this matter prior to holding that position. She claimed Monroe intentionally informed the jury she was Jewish in an effort to sway the jurors against her even more. Roberts used her opportunity at allocution to chastise the jurors for becoming too involved in the operatic drama of the prison letters and communications than the truth.

Roberts reviewed the testimony regarding the life insurance policies. She claimed she had no knowledge the victim had increased the value of his life insurance policies. She also reviewed her financial history and business investments. Roberts pointed out she was earning $200,000 annually and the insurance policy of $250,000 was not enough to seduce her to murder Mr. Fingerhut.

Roberts added personal details about her life with the victim by describing their daily rituals with their beloved pets. She discussed the

Page 5

victim's family life and relationships with his sons from a previous relationship. She insisted she did not want any money from Mr. Fingerhut and relayed the fact that she signed over any life insurance policies to his children.

Next, Roberts spoke regarding Santiago Mason. She explained that Mason sued her for framing him. She protested this characterization and explained why that was not true. She described the victim's sports memorabilia collection. She also attacked Mason's character.

Roberts disputed certain elements of the State's case. Namely, she challenged the eye witness from her neighborhood who saw her driving in the area. She questioned the time frame against the witness's statement and her own activities during the relevant period of time on the night of the murder.

She also challenged the testimony of Frank Reynolds. She pointed out inconsistencies in Reynolds' testimony with the facts of her life. She contradicted the testimony of Reynolds regarding her argument over money with the victim. She was incensed that Reynolds would advise the jury she was upset with Mr. Fingerhut because he would not give her money. She was adamant she did not need any money from Mr. Fingerhut.

<div align="center">Page 6</div>

Roberts also challenged the physical evidence of the prosecution. She discussed the bloody washcloth found at the Days Inn. She claimed the washcloth and towel were purposefully placed there by the police. She also attacked the validity of other evidence recovered from the hotel and surrounding area.

Roberts questioned the introduction of certain sexual information about her by the State as inappropriate. She claimed it was only meant to influence the jury into forming a low opinion of her. She also challenged the search of the residence as improper.

In addition, Roberts claimed the marijuana found at the residence did not belong to her. She maintained it was also fabricated by the police. However, she admitted to smoking marijuana on a regular basis.

Roberts discussed the letters between her and Jackson as well as the taped telephone conversations while Jackson was incarcerated. She alleged the State manipulated those conversations to fit their case by not admitting the entire transcript of the conversations, only limited portions.

With gratitude, she acknowledged her attorneys. She described when and where she acquired the weapons found at the home. She explained the events when Mason allegedly stole her gun. Roberts also reviewed the coroner's report.

Page 7

Roberts described her reaction to finding the victim on the night in question. She then relayed her version of the Jackson case running parallel to her prosecution. She challenged the veracity of the location of the murder weapon in the reports. According to the Defendant, the police moved the gun.

Finally, Roberts closed her allocution by advising the jury they are required to recommend a death sentence since she presented no mitigating evidence. She pleaded for equal treatment and a sentence equal to that of Jackson's. However, Roberts reiterated this was not an admission of guilt. Rather, she claimed her plea was one of social justice and equality. She pledged her love for the victim and ended her allocution with the instruction for the jury to "do what is right."

At the resentencing hearing following *Roberts I*, Roberts again offered allocution to the Court. On October 22, 2007, Roberts indicated the record had been "*** a big misrepresentation about me, my character, my personality, and my life ***." Roberts proceeded to provide additional information relative to her personal history.

Roberts explained she grew up on a farm in Austintown, Ohio. She attended a Roman Catholic elementary school. She recounted that she was sexually abused by an older cousin when she was very young. She described her household as "*** very very abusive ***."

Page 8

Roberts recalled her father abused her mother physically and verbally. Roberts stated she "*** spent a lot of time under my bed, especially when guns came out." When Roberts was taken to a doctor, she described being taken into a room alone with a male doctor and afterward he advised her mother she was "*** a bad girl." According to Roberts, she was always sad and "*** felt empty because nobody had ever paid attention to me or hugged me or anything ***."

Despite this sadness, Roberts achieved good grades and rewards in school. She was on the honor roll and dean's list later in college. She received accolades as a writer. She married her high-school sweetheart and moved to Miami, Florida. She described having her son and acknowledged his many accomplishments.

Roberts was involved in a car accident in 1963. She "*** fell asleep and the car went through big giant trees, hitting something ***." She recalled she was "filled with glass" from the debris. Roberts described herself as "*** spacey for awhile" after the accident.

In 1983, Roberts was again involved in a car accident. She flew through the windshield and experienced numbness in her extremities after the accident. Roberts was treated by a neurosurgeon for some time after this.

Page 9

In 1999, Roberts again fell asleep behind the wheel and was involved in a car accident. Roberts recalled months after this event where she has no memory. Roberts stated, "*** Robert was calling me spacey and goofy, and he was really worried about me, and he told me I should get some kind of help, but I didn't want any help." Roberts acknowledged she ignored the depression.

Roberts recounted a suicide attempt wherein she started her car in the garage with her dog, Blossom. She stated Blossom alerted her by pawing at her arm and she called for help. Roberts was hospitalized after this event in a psychiatric ward. Following this hospitalization, Roberts sought SSI for disability.

Roberts explained she was prescribed three or four medications at that time. One medication was to "stop the voices." Roberts experienced some hallucinations while incarcerated. She described seeing "giant anthills" on her floor. Roberts also described falling and hitting her head on multiple occasions after this event. Roberts described periods of time when she could not identify the day of the week.

Roberts explained she walked away from the restaurant she owned one day because she became overwhelmed. She left the refrigerator and freezers full and never returned.

Page 10

Roberts described her life working with a plastic surgeon. She described helping people with reconstructive surgery. Roberts remembered how she used to help people pay their checks at the restaurant when they didn't have enough money.

Roberts converted to Judaism in 1980. She explained her involvement in a Jewish burial society and the customs therewith. She proudly expressed her involvement in a campaign to rescue a Jewish man from persecution in Ethiopia. She also volunteered in Israel with the plastic surgeons performing skin grafts.

In contrast, Roberts explained the inaccuracies in the record describing Mr. Fingerhut as the entrepreneur. Roberts claimed she was the businesswoman. They divorced to protect her assets; not his. She took out $75,000 from her mutual fund for a down payment on her dream house. She described herself as the breadwinner. Mr. Fingerhut only worked occasionally, according to Roberts. Roberts espoused her talents in trading on the stock market and investing in real estate.

Roberts was fixated on ensuring the Court was aware of her affluence. She was proud of the fact that she had money and wore expensive clothes. She again chastised Frank Reynolds for his testimony that she and Mr. Fingerhut had an argument because he wouldn't give her $3,000. Roberts stated, "The accounts were mine. The house was mine.

Page 11

The only way we had three cars is on my credit." She spoke regarding her gifts of money to her son and her sister.

Roberts closed her allocution with the following words: "I never intended for anything like that to happen, and I couldn't believe it, and I still can't believe it. We loved each other and we had a good life."

## AGGRAVATING CIRCUMSTANCES

R.C. 2929.04(A) sets forth the applicable aggravating circumstance enabling a consideration of the death penalty to be specified in the indictment and proven beyond a reasonable doubt in this case as "*** (7) [t]he offense was committed while the offender was committing, attempting to commit, or fleeing immediately after committing or attempting to commit kidnapping, rape, aggravated arson, aggravated robbery, or aggravated burglary, and either the offender was the principal offender in the commission of the aggravated murder or, if not the principal offender, committed the aggravated murder with prior calculation and design."

On May 28, 2003, Roberts was found guilty following a trial before a petit jury and after due deliberation by said jury of the following: Count One: Complicity to Commit Aggravated Murder in violation of R.C. 2923.03(A)(2), 2903.01(A) and 2941.14(C) of Robert S. Fingerhut, with two separate Specifications of Aggravating Circumstances; to wit,

Page 12

Specification Number One: Aggravated Burglary in violation of R.C.

2929.04(A)(7) and Specification Number Two: Aggravated Robbery in

violation of R.C. 2929.04(A)(7); Count Two: Complicity to Commit

Aggravated Murder in violation of R.C. 2923.03(A)(2), 2903.01(B) and

2941.14(C) of Robert S. Fingerhut, with two separate Specifications of

Aggravating Circumstances, to wit, Specification Number One:

Aggravated Burglary in violation of R.C.2929.04(A)(7) and Specification

Number Two: Aggravated Robbery in violation of R.C. 2929.04(A)(7);

Count Three: Complicity to Commit Aggravated Burglary (F1) with Firearm

Specification in violation of R.C. 2923.03(A)(2), 2911.11(A)(1)(2) and

2941.145; and Count Four: Complicity to Commit Aggravated Robbery

(F1) with Firearm Specification in violation of R.C. 2923.03(A)(2),

2911.01(A)(1)(3) and 2941.145. Count Two was removed from the Jury

pursuant to a Motion to Dismiss by the State.

The Court finds the aggravating circumstances were set forth in the

indictment of Roberts. The Court further finds these elements of the

aggravating circumstances were proven beyond a reasonable doubt in the

trial of this matter. The Court finds Roberts acted with prior calculation and

design in the aggravated murder of Fingerhut.

The Court finds Roberts acted with prior calculation and design in

the aggravated murder of Fingerhut while committing or attempting to

Page 13

commit aggravated burglary. It was proved beyond a reasonable doubt at trial that Roberts provided access to Jackson to trespass in Fingerhut's residence, 254 Fonderlac Drive in Howland Township, Trumbull County, Ohio with the specific purpose of killing Fingerhut with prior calculation and design. It was further proven beyond a reasonable doubt that the tools used to carry out this plot were provided by Roberts: the gloves, ski mask, firearm as well as the access to the residence. Countless recorded telephone calls and written letters outlined this plan to murder Mr. Fingerhut in this manner leaving no reasonable doubt whatsoever.

The Court finds Roberts acted with prior calculation and design in the aggravated murder of Fingerhut while committing or attempting to commit aggravated robbery. It was proven beyond a reasonable doubt at trial that Roberts acted with prior calculation and design. Roberts intended for Jackson to steal Mr. Fingerhut's vehicle, originally to use the car as a means for kidnapping Fingerhut away from the residence to kill him off site. The police recovered Mr. Fingerhut's vehicle a few blocks from where Jackson was arrested. The keys were still in the ignition.

The Court finds beyond a reasonable doubt Roberts acted with complicity to commit aggravated murder while committing or attempting to commit or in fleeing immediately after committing or attempting to commit aggravated burglary. The Court finds beyond a reasonable doubt Roberts

Page 14

acted with complicity to commit aggravated murder while committing or attempting to commit or in fleeing immediately after committing or attempting to commit aggravated robbery. The Court further finds beyond a reasonable doubt Roberts acted with complicity to commit aggravated murder with prior calculation and design.

Having found the aggravating circumstances proven beyond a reasonable doubt, the Court now must "*** weigh against the aggravating circumstances proved beyond a reasonable doubt, the nature and circumstances of the offense, the history, character, and background of the offender ***" along with the additional statutory factors set forth in R.C. 2929.04(B) as mitigating factors.

## MITIGATING FACTORS

Pursuant to R.C. 2929.03(F), the Court makes the following findings regarding the factors listed in R.C. 2929.04(B):

1. *"Whether the victim of the offense induced or facilitated it; ***"*

The Court finds Mr. Fingerhut, the victim in this matter, did nothing to facilitate or induce his own death. The Court gives no weight to the allegations made by Roberts in her letters to Jackson regarding the physical abuse she suffered at the hand of Mr. Fingerhut. Even if the Court were to accept those claims as true, there is no evidence of any imminent threat to Roberts. Likewise, there is no evidence Roberts was

Page 15

prevented from evading the abusive situation by alternate means such as leaving the residence or filing a complaint with the police department.

2. "*Whether it is unlikely that the offense would have been committed, but for the fact that the offender was under duress, coercion, or strong provocation; \*\*\**"

The Court finds there is no evidence before the Court that Roberts was under any duress, coercion or strong provocation to commit the crime.

3. "*Whether, at the time of committing the offense, the offender, because of a mental disease or defect, lacked substantial capacity to appreciate the criminality of the offender's conduct or to conform the offender's conduct to the requirements of the law: \*\*\**"

The Court finds there is no evidence to suggest Roberts lacked substantial capacity to appreciate the criminality of her conduct or to conform her conduct to the rules of law. Although Roberts testified in her allocution regarding the status of her mental health, the Court does not find that statement contained any evidence to suggest or support Roberts did not understand the criminality of her conduct. The Court finds the incidents described by Roberts in her allocution were either isolated events following physical traumas associated with her motor vehicle

Page 16

accidents or they occurred after the death of Mr. Fingerhut. There is no evidence to suggest Roberts lacked mental capacity at the time of the events in question.

4. "*The youth of the offender; \*\*\**"

The Court finds the age of Roberts is not a factor for consideration.

5. "*The offender's lack of a significant history of prior criminal convictions and delinquency adjudications; \*\*\**"

The Court finds Roberts does not have a significant history of prior criminal convictions. This factor does weigh in her favor.

6. "*If the offender was a participant in the offense but not the principal offender, the degree of the offender's participation in the offense and the degree of the offender's participation in the acts that led to the death of the victim; \*\*\**"

The Court finds although Roberts was not the "triggerman," the evidence clearly demonstrated she orchestrated the entire plot. The record reveals the intentional acts of Roberts in planning the aggravated murder of Mr. Fingerhut in exchange for his life insurance proceeds. Roberts induced Jackson to be her accomplice with promises of payment in the form of a Cadillac or a Lincoln, a wealthy lifestyle, vacations and a home in a desirable neighborhood. Roberts premeditated for months. She

Page 17

checked the balance of the life insurance proceeds. She arranged for Jackson's transportation from prison to a hotel room where she fulfilled his sexual needs, fed him food for sustenance, and provided the necessary tools to carry out the murder. The Court finds that Roberts was the primary mastermind behind Mr. Fingerhut's murder. But for her premeditated calculations, Mr. Fingerhut would not have been murdered by Jackson on that day.

> 7. *"Any other factors that are relevant to the issue of whether the offender should be sentenced to death."*

The Court finds there were several mitigating elements presented in Roberts's allocution. Certain elements of Roberts's allocution (at the original sentencing and again upon the earlier remand) are worthy of some discussion.

First, Roberts allegedly grew up in an abusive household. She claims she was witness to physical confrontations between her mother and her father to the point where she would hide under the bed "when the guns came out." This history, coupled with the alleged physical abuse between Roberts and Fingerhut does weigh slightly in favor of Roberts. Perhaps Roberts was still shouldering those childhood burdens into her adult life.

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2380

However, there is absolutely no evidence before the Court to support the veracity of the physical abuse allegations made by Roberts against Fingerhut. Therefore, the Court is left to ponder whether those allegations were part of her scheme to induce Jackson to act as her accomplice. Roberts failed to alert the Court to any physical violence between her and Fingerhut during her allocution. Instead, Roberts professed her love for the man whom she contracted to have killed. Therefore, the Court finds these facts weigh only slightly in favor of Roberts.

Likewise, the Court gives little weight to Roberts's allocution claims regarding the rape by her cousin when she was very young. The Court finds this is entitled to little weight as there is no direct connection to the underlying crime. Even if Roberts were carrying the psychological scars of this trauma, there is little to no evidence to suggest any connection to the underlying crime.

The Court finds the charitable history of Roberts is entitled to some mitigation weight in her favor. Apparently, Roberts was quite generous with both her time and funds. She assisted plastic surgeons performing reconstructive surgery in Israel. She helped rescue a man from persecution in Ethiopia. On a more day-to-day basis, Roberts would help others in her family as well as strangers who were struggling financially.

Page 19

However, the Court finds this generosity must also be reviewed in totality with Roberts's self-promotion. Roberts frequently referred to her wealth in her allocution. She wanted the Court to know she was the breadwinner, not Mr. Fingerhut. She berated the man who testified she was angry with Fingerhut when he refused to give her $3,000. It seems these mischaracterizations of her social status were more upsetting to Roberts than the guilty verdict against her for complicity to commit murder. The Court finds these two polar self-portraits are not compatible with one another. Therefore, the Court affords no weight to the self-reported acts of generosity and charity of Roberts as mitigation.

The Court finds the reports of mental instability and physical traumas following several car accidents could be mitigating factors in Roberts's favor. Roberts was involved in two motor vehicle accidents which occurred after Roberts fell asleep behind the wheel. The mere fact that one has not only a singular incident of this magnitude, but two, leads the Court to question whether there are other biological or physiological factors at play. In addition, the mental status post-accidents and the lack of memory for an extended period of time is likewise a mitigating factor that weighs in favor of Roberts.

However, the Court finds the self-promotion by Roberts as to her financial prowess, educational accolades and charitable works is

Page 20

contradictory to her assertion that she has suffered mental deficiencies as a result of the motor vehicle accidents described above. The two are juxtaposed; either Roberts is a powerful entrepreneur capable of earning a magnitude of wealth and respect or she is one suffering from mental trauma. The Court gives little to no weight to any evidence of the latter. In addition, the Court finds Roberts was fairly well-spoken in the delivery of her allocution. Plus, Roberts expressly made a valid waiver of her right to present mitigation evidence. There was no mental deficiency at play in that decision.

There is no question Roberts suffered some physical and mental traumas as a result of these accidents. Roberts even attempted to commit suicide in her garage. However, the Court finds these incidents are isolated and occurred in a time frame so far removed from the murder of Mr. Fingerhut that their relevance for mitigation is significantly decreased. In addition, pursuant to R.C. 2929.04(B), the Court must also consider and weigh "*** the nature and circumstances of the offense, the history, character, and background of the offender ***." The Court finds the history, character and background of Roberts have been sufficiently addressed in the discussion specified in R.C. 2929.04(B)(1-7) above.

Roberts planned and plotted for the murder of Fingerhut over a period of at least three months. She conspired with Jackson, her

Page 21

imprisoned lover, to murder Fingerhut for his life insurance proceeds. The murder plan was well documented through telephone calls recorded from Jackson's residence; the Lorain Correctional Institute. In addition, detailed letters were exchanged between the loving couple outlining their plans. These plans included the acquisition of supplies, the procurement of a hotel room, and the promise of a new vehicle for Jackson – all provided by Roberts. Ultimately, Roberts provided access to the residence in order for Jackson to carry out the murder as planned.

Despite these intricate details, Roberts "forgot" to include Jackson as one of her named lovers to the police during interviews. In addition, Roberts attempted to thwart the investigation into the Fingerhut murder by implicating other individuals; not Jackson. In addition, Roberts's feigned emotional outbursts over Fingerhut's death do not correlate to the insidious behavior relative to the same.

Therefore, the Court has granted little to no weight to any of the mitigating factors outlined by Roberts in her allocution. In addition, the Court finds Roberts's request for "equal treatment" to Jackson is inconsistent with the primary body of her allocution and has not given any weight to that request either.

The presence of mitigating factors does not preclude the imposition of a sentence of death. Rather, those mitigating factors are to then be

<div align="center">Page 22</div>

weighed against the aggravating circumstances of the crime. In

conducting this comparison, the Court overwhelmingly finds the

aggravating circumstances outweigh the mitigating factors.

### CONCLUSIONS OF LAW

The mitigating factors given little weight by this Court do not even

approach an imbalance of the aggravating circumstances present in this

matter. Roberts' traumatic childhood, her allegations of physical abuse at

the hands of Fingerhut, the physical injuries sustained in multiple motor

vehicle accidents, the mental disability, the lack of a prior criminal record

and Roberts' charitable tendencies do not even draw the Court's attention

away from the aggravating circumstances.

The Court has made a careful and independent review of the entire

record, including Roberts's first and second allocutions. Upon this review,

the Court finds the aggravating circumstances outweigh the mitigating

factors by proof beyond a reasonable doubt.

Therefore, the Court hereby finds the sentence of death is an

appropriate penalty for the Defendant Donna Marie Roberts in this matter.


Dated: April 30, 2014                    _____

                                         Judge Ronald J. Rice

                                         Page 23

IN THE COURT OF COMMON PLEAS
GENERAL DIVISION
TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| State of Ohio | ) | Case No. 2001CR00793 |
| | ) | |
| Plaintiff, | ) | Judge Ronald J. Rice |
| | ) | |
| vs. | ) | **OPINION OF THE COURT** |
| | ) | |
| | ) | **NUNC PRO TUNC** |
| Donna Marie Roberts | ) | **FINDINGS OF FACT AND** |
| | ) | **CONCLUSIONS OF LAW** |
| Defendant. | ) | **REGARDING IMPOSITION** |
| | ) | **OF DEATH PENALTY** |

This Nunc Pro Tunc Opinion is rendered at the requests of the State and the Defendant. Therefore, the Court renders this Nunc Pro Tunc Opinion which shall reflect certain editing inconsistencies in regard to the terms "unsworn statement" and "allocution" in the original Opinion. The substance of the opinion remains unchanged and pursuant to Defendant's request, the Court did not set this matter for a hearing to correct the clerical errors. Rather, the Court rendered this Nunc Pro Tunc Opinion as follows:

This matter was remanded by the Supreme Court of Ohio with the following instruction: "On remand, the trial court must consider all the mitigating evidence reflected in the record, including Roberts's allocution, weigh the aggravating circumstances against the mitigating factors, and file a sentencing opinion that reflects that it has complied with these

Page 1

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2386

instructions.  In doing so, the trial court must make an independent determination of whether a death sentence is appropriate and may not give deference to the sentences previously entered." *State v. Roberts*, 2013-Ohio-4580, ¶96.

## FACTUAL AND RECORDS REVIEW

Pursuant to the remand of this matter from the Supreme Court of Ohio, the Court has carefully read, reviewed, examined and/or inspected the entire court record; all of the transcripts from pre-trial & post-trial; exhibits; pleadings; including, but not limited to the following items:

1. The indictment of the Trumbull County Grand Jury;

2. All of the docket entries filed on this matter;

3. All of the notes entered by the staff as to scheduling;

4. The prior court scheduling of 29 events, including status hearings, hearings, pre-trials, motions to suppress, jury trial, sentencing and re-sentencing hearings;

5. All of the pleadings as filed by the State of Ohio and counsel for the Defendant;

6. The transcript of the Motion To Suppress held on February 3, 2002;

7. Transcripts of Proceedings Volumes 1 through 23 of individual and group voir dire questioning and juror selection;

8. All of the exhibits admitted at trial as listed and attached to this entry on a document titled List of Trial Exhibits And Mitigation Hearing Exhibits;

9. The entire trial and sentencing record;

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2387

10.    The entire record following the remand from *Roberts I*.

In accordance with *Roberts II*, the Court did not permit Roberts to update her mitigation at the hearing following the recent remand. "Establishing a right to update mitigation could result in arbitrary distinctions between similarly situated capital defendants." Id. at ¶37. Roberts expressly and validly waived her right to present mitigation evidence during the original sentencing phase. Id. at ¶49.

The Court notes this matter is now before a different judge as Judge John M. Stuard has since retired from the bench and shortly thereafter passed away. As instructed, the Court has not given any deference to the prior decisions of Judge Stuard in this matter. However, the Court notes the acknowledgment as recognized in *Roberts II* that "[t]he trial court then stated that it had considered the record and the oral statements. \*\*\* Beyond this, however, the opinion does not discuss Roberts's allocution." The Court notes with confidence and respect for Judge Stuard, he would not have acknowledged consideration of the oral statements (including the allocution) had he not, in fact, considered the same. Such was his nature of fairness. Nevertheless, as previously indicated, the Court has given no deference to the prior decisions of Judge Stuard and has complied with the remand instructions as directed.

**ALLOCUTION/UNSWORN STATEMENT**
Page 3

Trumbull County 330673307 8    Jun/10/2014 2:54:45 PM

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2388

Despite the fact that Roberts expressly waived mitigation, Roberts took advantage of her opportunity to provide an unsworn statement at the original sentencing and again following the *Roberts I* remand. Roberts explained in her original unsworn statement she had no intention of offering mitigating factors for consideration. Rather, she advised she chose to provide the unsworn statement because it was against her religion to take an oath.

Roberts's unsworn statement centered on two salient points. First, she pointed out inconsistencies in the evidence and testimony as she perceived them. Second, she drew attention to the differences between her trial and the trial of Nathaniel Jackson claiming racial inequities.

Roberts accurately characterized in her unsworn statement that the jury had been exposed to "five percent" of her life. That "five percent" included her relationship with Jackson. As she stated, "the other 95 percent of my life was dedicated to my husband, my son, my family and business, and doing charity for unfortunate to share the good fortune that God bestowed upon me and my loved ones." The Court finds this is the most truthful and yet, unfortunate, statement in the Defendant's entire soliloquy.  Five percent comprised of bad decisions has such a profound effect on a lifetime.

Page 4

Roberts brought attention to the fact that the personnel in the courtroom were white. She likewise opined on inaccurate portrayals in the newspaper regarding the facts of this case.

Roberts explained she did not consider the jury to be a "jury of her peers." She provided some details regarding her life. She worked for a plastic surgeon for 25 years. She lived in Miami for 27 years.  She traveled the world. Roberts expressed concern that some of the jurors indicated they didn't read any newspapers or watch the news.  She also expressed concern regarding the young age of a few of the jurors, citing their lack of life experiences as a hindrance to their ability to judge the case.

Next, Roberts recounted certain aspects regarding the prosecution against Nathaniel Jackson. Roberts pointed out her perceived inconsistencies in the Jackson trial compared to the prosecution by the State in her case. She also alleged racial bias on behalf of the prosecution.

Roberts relayed her opinion on Howland Chief of Police Paul Monroe and his role in this matter prior to holding that position. She claimed Monroe intentionally informed the jury she was Jewish in an effort to sway the jurors against her even more. Roberts used her opportunity in this unsworn statement to chastise the jurors for becoming too involved in

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2390

the operatic drama of the prison letters and communications than the truth.

Roberts reviewed the testimony regarding the life insurance policies. She claimed she had no knowledge the victim had increased the value of his life insurance policies. She also reviewed her financial history and business investments. Roberts pointed out she was earning $200,000 annually and the insurance policy of $250,000 was not enough to seduce her to murder Mr. Fingerhut.

Roberts added personal details about her life with the victim by describing their daily rituals with their beloved pets. She discussed the victim's family life and relationships with his sons from a previous relationship. She insisted she did not want any money from Mr. Fingerhut and relayed the fact that she signed over any life insurance policies to his children.

Next, Roberts spoke regarding Santiago Mason. She explained that Mason sued her for framing him. She protested this characterization and explained why that was not true. She described the victim's sports memorabilia collection. She also attacked Mason's character.

Roberts disputed certain elements of the State's case. Namely, she challenged the eye witness from her neighborhood who saw her driving in the area. She questioned the time frame against the witness's statement

Page 6

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2391

and her own activities during the relevant period of time on the night of the murder.

She also challenged the testimony of Frank Reynolds. She pointed out inconsistencies in Reynolds' testimony with the facts of her life. She contradicted the testimony of Reynolds regarding her argument over money with the victim. She was incensed that Reynolds would advise the jury she was upset with Mr. Fingerhut because he would not give her money. She was adamant she did not need any money from Mr. Fingerhut.

Roberts also challenged the physical evidence of the prosecution. She discussed the bloody washcloth found at the Days Inn. She claimed the washcloth and towel were purposefully placed there by the police. She also attacked the validity of other evidence recovered from the hotel and surrounding area.

Roberts questioned the introduction of certain sexual information about her by the State as inappropriate. She claimed it was only meant to influence the jury into forming a low opinion of her. She also challenged the search of the residence as improper.

In addition, Roberts claimed the marijuana found at the residence did not belong to her. She maintained it was also fabricated by the police. However, she admitted to smoking marijuana on a regular basis.

Roberts discussed the letters between her and Jackson as well as the taped telephone conversations while Jackson was incarcerated. She alleged the State manipulated those conversations to fit their case by not admitting the entire transcript of the conversations, only limited portions.

With gratitude, she acknowledged her attorneys. She described when and where she acquired the weapons found at the home. She explained the events when Mason allegedly stole her gun. Roberts also reviewed the coroner's report.

Roberts described her reaction to finding the victim on the night in question. She then relayed her version of the Jackson case running parallel to her prosecution. She challenged the veracity of the location of the murder weapon in the reports. According to the Defendant, the police moved the gun.

Finally, Roberts closed her unsworn statement by advising the jury they are required to recommend a death sentence since she presented no mitigating evidence. She pleaded for equal treatment and a sentence equal to that of Jackson's. However, Roberts reiterated this was not an admission of guilt. Rather, she claimed her plea was one of social justice and equality. She pledged her love for the victim and ended her statement with the instruction for the jury to "do what is right."

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2393

At the resentencing hearing following *Roberts I*, Roberts offered allocution to the Court. On October 22, 2007, Roberts indicated the record had been "*** a big misrepresentation about me, my character, my personality, and my life ***." Roberts proceeded to provide additional information relative to her personal history.

Roberts explained she grew up on a farm in Austintown, Ohio. She attended a Roman Catholic elementary school. She recounted that she was sexually abused by an older cousin when she was very young. She described her household as "*** very very abusive ***."

Roberts recalled her father abused her mother physically and verbally. Roberts stated she "*** spent a lot of time under my bed, especially when guns came out." When Roberts was taken to a doctor, she described being taken into a room alone with a male doctor and afterward he advised her mother she was "*** a bad girl." According to Roberts, she was always sad and "*** felt empty because nobody had ever paid attention to me or hugged me or anything ***."

Despite this sadness, Roberts achieved good grades and rewards in school. She was on the honor roll and dean's list later in college. She received accolades as a writer. She married her high-school sweetheart and moved to Miami, Florida. She described having her son and acknowledged his many accomplishments.

<div align="center">Page 9</div>

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2394

Roberts was involved in a car accident in 1963. She "*** fell asleep and the car went through big giant trees, hitting something ***." She recalled she was "filled with glass" from the debris. Roberts described herself as "*** spacey for awhile" after the accident.

In 1983, Roberts was again involved in a car accident. She flew through the windshield and experienced numbness in her extremities after the accident. Roberts was treated by a neurosurgeon for some time after this.

In 1999, Roberts again fell asleep behind the wheel and was involved in a car accident. Roberts recalled months after this event where she has no memory. Roberts stated, "*** Robert was calling me spacey and goofy, and he was really worried about me, and he told me I should get some kind of help, but I didn't want any help." Roberts acknowledged she ignored the depression.

Roberts recounted a suicide attempt wherein she started her car in the garage with her dog, Blossom. She stated Blossom alerted her by pawing at her arm and she called for help. Roberts was hospitalized after this event in a psychiatric ward. Following this hospitalization, Roberts sought SSI for disability.

Roberts explained she was prescribed three or four medications at that time. One medication was to "stop the voices." Roberts experienced

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2395

some hallucinations while incarcerated. She described seeing "giant anthills" on her floor. Roberts also described falling and hitting her head on multiple occasions after this event. Roberts described periods of time when she could not identify the day of the week.

Roberts explained she walked away from the restaurant she owned one day because she became overwhelmed. She left the refrigerator and freezers full and never returned.

Roberts described her life working with a plastic surgeon. She described helping people with reconstructive surgery. Roberts remembered how she used to help people pay their checks at the restaurant when they didn't have enough money.

Roberts converted to Judaism in 1980. She explained her involvement in a Jewish burial society and the customs therewith. She proudly expressed her involvement in a campaign to rescue a Jewish man from persecution in Ethiopia. She also volunteered in Israel with the plastic surgeons performing skin grafts.

In contrast, Roberts explained the inaccuracies in the record describing Mr. Fingerhut as the entrepreneur. Roberts claimed she was the businesswoman. They divorced to protect her assets; not his. She took out $75,000 from her mutual fund for a down payment on her dream house. She described herself as the breadwinner. Mr. Fingerhut only

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2396

worked occasionally, according to Roberts. Roberts espoused her talents in trading on the stock market and investing in real estate.

Roberts was fixated on ensuring the Court was aware of her affluence. She was proud of the fact that she had money and wore expensive clothes. She again chastised Frank Reynolds for his testimony that she and Mr. Fingerhut had an argument because he wouldn't give her $3,000. Roberts stated, "The accounts were mine. The house was mine. The only way we had three cars is on my credit." She spoke regarding her gifts of money to her son and her sister.

Roberts closed her allocution with the following words: "I never intended for anything like that to happen, and I couldn't believe it, and I still can't believe it. We loved each other and we had a good life."

## AGGRAVATING CIRCUMSTANCES

R.C. 2929.04(A) sets forth the applicable aggravating circumstance enabling a consideration of the death penalty to be specified in the indictment and proven beyond a reasonable doubt in this case as "*** (7) [t]he offense was committed while the offender was committing, attempting to commit, or fleeing immediately after committing or attempting to commit kidnapping, rape, aggravated arson, aggravated robbery, or aggravated burglary, and either the offender was the principal offender in the commission of the aggravated murder or, if not the

Page 12

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2397

principal offender, committed the aggravated murder with prior calculation and design."

On May 28, 2003, Roberts was found guilty following a trial before a petit jury and after due deliberation by said jury of the following: Count One: Complicity to Commit Aggravated Murder in violation of R.C. 2923.03(A)(2), 2903.01(A) and 2941.14(C) of Robert S. Fingerhut, with two separate Specifications of Aggravating Circumstances; to wit, Specification Number One: Aggravated Burglary in violation of R.C. 2929.04(A)(7) and Specification Number Two: Aggravated Robbery in violation of R.C. 2929.04(A)(7); Count Two: Complicity to Commit Aggravated Murder in violation of R.C. 2923.03(A)(2), 2903.01(B) and 2941.14(C) of Robert S. Fingerhut, with two separate Specifications of Aggravating Circumstances, to wit, Specification Number One: Aggravated Burglary in violation of R.C.2929.04(A)(7) and Specification Number Two: Aggravated Robbery in violation of R.C. 2929.04(A)(7); Count Three: Complicity to Commit Aggravated Burglary (F1) with Firearm Specification in violation of R.C. 2923.03(A)(2), 2911.11(A)(1)(2) and 2941.145; and Count Four: Complicity to Commit Aggravated Robbery (F1) with Firearm Specification in violation of R.C. 2923.03(A)(2), 2911.01(A)(1)(3) and 2941.145. Count Two was removed from the Jury pursuant to a Motion to Dismiss by the State.

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2398

The Court finds the aggravating circumstances were set forth in the indictment of Roberts. The Court further finds these elements of the aggravating circumstances were proven beyond a reasonable doubt in the trial of this matter. The Court finds Roberts acted with prior calculation and design in the aggravated murder of Fingerhut.

The Court finds Roberts acted with prior calculation and design in the aggravated murder of Fingerhut while committing or attempting to commit aggravated burglary. It was proved beyond a reasonable doubt at trial that Roberts provided access to Jackson to trespass in Fingerhut's residence, 254 Fonderlac Drive in Howland Township, Trumbull County, Ohio with the specific purpose of killing Fingerhut with prior calculation and design. It was further proven beyond a reasonable doubt that the tools used to carry out this plot were provided by Roberts: the gloves, ski mask, firearm as well as the access to the residence. Countless recorded telephone calls and written letters outlined this plan to murder Mr. Fingerhut in this manner leaving no reasonable doubt whatsoever.

The Court finds Roberts acted with prior calculation and design in the aggravated murder of Fingerhut while committing or attempting to commit aggravated robbery. It was proven beyond a reasonable doubt at trial that Roberts acted with prior calculation and design. Roberts intended for Jackson to steal Mr. Fingerhut's vehicle, originally to use the car as a

Page 14

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2399

means for kidnapping Fingerhut away from the residence to kill him off site. The police recovered Mr. Fingerhut's vehicle a few blocks from where Jackson was arrested. The keys were still in the ignition.

The Court finds beyond a reasonable doubt Roberts acted with complicity to commit aggravated murder while committing or attempting to commit or in fleeing immediately after committing or attempting to commit aggravated burglary. The Court finds beyond a reasonable doubt Roberts acted with complicity to commit aggravated murder while committing or attempting to commit or in fleeing immediately after committing or attempting to commit aggravated robbery. The Court further finds beyond a reasonable doubt Roberts acted with complicity to commit aggravated murder with prior calculation and design.

Having found the aggravating circumstances proven beyond a reasonable doubt, the Court now must "*** weigh against the aggravating circumstances proved beyond a reasonable doubt, the nature and circumstances of the offense, the history, character, and background of the offender ***" along with the additional statutory factors set forth in R.C. 2929.04(B) as mitigating factors.

### MITIGATING FACTORS

Pursuant to R.C. 2929.03(F), the Court makes the following findings regarding the factors listed in R.C. 2929.04(B):

Page 15

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2400

1. *"Whether the victim of the offense induced or facilitated it; ***"*

The Court finds Mr. Fingerhut, the victim in this matter, did nothing to facilitate or induce his own death. The Court gives no weight to the allegations made by Roberts in her letters to Jackson regarding the physical abuse she suffered at the hand of Mr. Fingerhut. Even if the Court were to accept those claims as true, there is no evidence of any imminent threat to Roberts. Likewise, there is no evidence Roberts was prevented from evading the abusive situation by alternate means such as leaving the residence or filing a complaint with the police department.

2. *"Whether it is unlikely that the offense would have been committed, but for the fact that the offender was under duress, coercion, or strong provocation; ***"*

The Court finds there is no evidence before the Court that Roberts was under any duress, coercion or strong provocation to commit the crime.

3. *"Whether, at the time of committing the offense, the offender, because of a mental disease or defect, lacked substantial capacity to appreciate the criminality of the offender's conduct or to conform the offender's conduct to the requirements of the law: ***"*

The Court finds there is no evidence to suggest Roberts lacked

Page 16

substantial capacity to appreciate the criminality of her conduct or to conform her conduct to the rules of law. Although Roberts testified in her allocution regarding the status of her mental health, the Court does not find that statement contained any evidence to suggest or support Roberts did not understand the criminality of her conduct. The Court finds the incidents described by Roberts in her unsworn statement and her allocution were either isolated events following physical traumas associated with her motor vehicle accidents or they occurred after the death of Mr. Fingerhut. There is no evidence to suggest Roberts lacked mental capacity at the time of the events in question.

4. "*The youth of the offender; \*\*\**"

The Court finds the age of Roberts is not a factor for consideration.

5. "*The offender's lack of a significant history of prior criminal convictions and delinquency adjudications; \*\*\**"

The Court finds Roberts does not have a significant history of prior criminal convictions. This factor does weigh in her favor.

6. "*If the offender was a participant in the offense but not the principal offender, the degree of the offender's participation in the offense and the degree of the offender's participation in the acts that led to the death of the victim; \*\*\**"

Page 17

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2402

The Court finds although Roberts was not the "triggerman," the evidence clearly demonstrated she orchestrated the entire plot. The record reveals the intentional acts of Roberts in planning the aggravated murder of Mr. Fingerhut in exchange for his life insurance proceeds. Roberts induced Jackson to be her accomplice with promises of payment in the form of a Cadillac or a Lincoln, a wealthy lifestyle, vacations and a home in a desirable neighborhood. Roberts premeditated for months. She checked the balance of the life insurance proceeds. She arranged for Jackson's transportation from prison to a hotel room where she fulfilled his sexual needs, fed him food for sustenance, and provided the necessary tools to carry out the murder. The Court finds that Roberts was the primary mastermind behind Mr. Fingerhut's murder. But for her premeditated calculations, Mr. Fingerhut would not have been murdered by Jackson on that day.

    7. *"Any other factors that are relevant to the issue of whether the offender should be sentenced to death."*

The Court finds there were several mitigating elements presented in Roberts's allocution. Certain elements of Roberts's unsworn statement and allocution (at the original sentencing and again upon the earlier remand) are worthy of some discussion.

Page 18

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2403

First, Roberts allegedly grew up in an abusive household. She claims she was witness to physical confrontations between her mother and her father to the point where she would hide under the bed "when the guns came out." This history, coupled with the alleged physical abuse between Roberts and Fingerhut does weigh slightly in favor of Roberts. Perhaps Roberts was still shouldering those childhood burdens into her adult life.

However, there is absolutely no evidence before the Court to support the veracity of the physical abuse allegations made by Roberts against Fingerhut. Therefore, the Court is left to ponder whether those allegations were part of her scheme to induce Jackson to act as her accomplice. Roberts failed to alert the Court to any physical violence between her and Fingerhut during her allocution. Instead, Roberts professed her love for the man whom she contracted to have killed. Therefore, the Court finds these facts weigh only slightly in favor of Roberts.

Likewise, the Court gives little weight to Roberts's claims regarding the rape by her cousin when she was very young. The Court finds this is entitled to little weight as there is no direct connection to the underlying crime. Even if Roberts were carrying the psychological scars of this

Page 19

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2404

trauma, there is little to no evidence to suggest any connection to the underlying crime.

The Court finds the charitable history of Roberts is entitled to some mitigation weight in her favor. Apparently, Roberts was quite generous with both her time and funds. She assisted plastic surgeons performing reconstructive surgery in Israel. She helped rescue a man from persecution in Ethiopia. On a more day-to-day basis, Roberts would help others in her family as well as strangers who were struggling financially.

However, the Court finds this generosity must also be reviewed in totality with Roberts's self-promotion. Roberts frequently referred to her wealth in her allocution. She wanted the Court to know she was the breadwinner, not Mr. Fingerhut. She berated the man who testified she was angry with Fingerhut when he refused to give her $3,000. It seems these mischaracterizations of her social status were more upsetting to Roberts than the guilty verdict against her for complicity to commit murder. The Court finds these two polar self-portraits are not compatible with one another. Therefore, the Court affords no weight to the self-reported acts of generosity and charity of Roberts as mitigation.

The Court finds the reports of mental instability and physical traumas following several car accidents could be mitigating factors in Roberts's favor. Roberts was involved in two motor vehicle accidents

Page 20

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2405

which occurred after Roberts fell asleep behind the wheel. The mere fact that one has not only a singular incident of this magnitude, but two, leads the Court to question whether there are other biological or physiological factors at play. In addition, the mental status post-accidents and the lack of memory for an extended period of time is likewise a mitigating factor that weighs in favor of Roberts.

However, the Court finds the self-promotion by Roberts as to her financial prowess, educational accolades and charitable works is contradictory to her assertion that she has suffered mental deficiencies as a result of the motor vehicle accidents described above. The two are juxtaposed; either Roberts is a powerful entrepreneur capable of earning a magnitude of wealth and respect or she is one suffering from mental trauma. The Court gives little to no weight to any evidence of the latter. In addition, the Court finds Roberts was fairly well-spoken in the delivery of her allocution. Plus, Roberts expressly made a valid waiver of her right to present mitigation evidence. There was no mental deficiency at play in that decision.

There is no question Roberts suffered some physical and mental traumas as a result of these accidents. Roberts even attempted to commit suicide in her garage. However, the Court finds these incidents are

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2406

isolated and occurred in a time frame so far removed from the murder of Mr. Fingerhut that their relevance for mitigation is significantly decreased. In addition, pursuant to R.C. 2929.04(B), the Court must also consider and weigh "*** the nature and circumstances of the offense, the history, character, and background of the offender ***." The Court finds the history, character and background of Roberts have been sufficiently addressed in the discussion specified in R.C. 2929.04(B)(1-7) above.

Roberts planned and plotted for the murder of Fingerhut over a period of at least three months. She conspired with Jackson, her imprisoned lover, to murder Fingerhut for his life insurance proceeds. The murder plan was well documented through telephone calls recorded from Jackson's residence; the Lorain Correctional Institute. In addition, detailed letters were exchanged between the loving couple outlining their plans. These plans included the acquisition of supplies, the procurement of a hotel room, and the promise of a new vehicle for Jackson -- all provided by Roberts. Ultimately, Roberts provided access to the residence in order for Jackson to carry out the murder as planned.

Despite these intricate details, Roberts "forgot" to include Jackson as one of her named lovers to the police during interviews. In addition, Roberts attempted to thwart the investigation into the Fingerhut murder by implicating other individuals; not Jackson. In addition, Roberts's feigned

Page 22

emotional outbursts over Fingerhut's death do not correlate to the insidious behavior relative to the same.

Therefore, the Court has granted little to no weight to any of the mitigating factors outlined by Roberts in her unsworn statement or her allocution. In addition, the Court finds Roberts's request for "equal treatment" to Jackson is inconsistent with the primary body of her allocution and has not given any weight to that request either.

The presence of mitigating factors does not preclude the imposition of a sentence of death. Rather, those mitigating factors are to then be weighed against the aggravating circumstances of the crime. In conducting this comparison, the Court overwhelmingly finds the aggravating circumstances outweigh the mitigating factors.

## CONCLUSIONS OF LAW

The mitigating factors given little weight by this Court do not even approach an imbalance of the aggravating circumstances present in this matter. Roberts' traumatic childhood, her allegations of physical abuse at the hands of Fingerhut, the physical injuries sustained in multiple motor vehicle accidents, the mental disability, the lack of a prior criminal record and Roberts' charitable tendencies do not even draw the Court's attention away from the aggravating circumstances.

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2408

The Court has made a careful and independent review of the entire record, including Roberts's first and second allocutions. Upon this review, the Court finds the aggravating circumstances outweigh the mitigating factors by proof beyond a reasonable doubt.

Therefore, the Court hereby finds the sentence of death is an appropriate penalty for the Defendant Donna Marie Roberts in this matter.

Date: _June 10, 2014_

_____
Judge Ronald J. Rice

Page 24

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2409

# IN THE COURT OF COMMON PLEAS
## GENERAL DIVISION
## TRUMBULL COUNTY, OHIO

State of Ohio             )     Case No. 2001CR00793

                 )

         Plaintiff,    )     Judge Ronald J. Rice

                 )

vs.                   )     **NOTICE OF POST**

                 )     **RELEASE CONTROL**

Donna M. Roberts     )

                 )

         Defendant.   )

The Court hereby notifies the Defendant of the following pursuant to

ORC Sections: 2929.19; 2943.032 and 2967.28:

Count 1, Complicity To Commit Aggravated Murder, should you ever
be released from prison you will be subject to a life time of parole
supervision. If you violate any of the conditions of your parole then you will
be forced to serve the balance of your life sentence.

Count 3, Complicity To Commit Aggravated Burglary, you will be
subject to a mandatory period of post-release control of 5 years following
your release from prison.

Count 4, Complicity To Commit Aggravated Robbery, you will be
subject to a mandatory period of post-release control of 5 years following
your release from prison.

Page 1



2001 CR
00793
00040058493
CRN

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2410

If you violate the conditions of a post-release control sanction imposed by the parole board upon the completion of your stated prison term, the parole board may impose upon you as the offender a residential sanction that includes a new prison term of up to nine months for each violation of the rules not to exceed one-half of your stated prison term.

If while on post-release control you are convicted of a new felony offense in addition to being punished for the underlying conduct (new offense), an additional prison term of one year, or what time remains on your post-release control term, may be added as an additional, or consecutive, penalty.

You may not ingest or be injected with a drug of abuse and you must submit to random drug testing while on post release control.


Dated: April 30, 2014                    _Donna M. Roberts_____
                                          Donna M. Roberts, Defendant


I, certify that the Judge has explained to my client the post-release control consequences as set forth above.

                                          _____
                                          David L. Doughten,
                                          Attorney For Defendant


Page 2

# The Supreme Court of Ohio

FILED

JUN 16 2014

CLERK OF COURT
SUPREME COURT OF OHIO

To the Clerk of Court of Common Pleas for

ORDER TO CERTIFY RECORD

Trumbull County

S.C. Case No.    2014-0989
C.P. Case No.   2001CR00793

**State of Ohio v. Donna Marie Roberts**

You are hereby ordered, pursuant to Rule 11.04 of the Rules of Practice of the Supreme Court of Ohio, to prepare and forward the record in the above-captioned case to the Clerk's Office of the Supreme Court, no later than 90 days from the date of this entry, unless the Supreme Court grants an extension of time under Rule 11.04.

Pursuant to Rule 11.03 and 11.04 the record shall consist of the following:

- The original papers filed in the trial court;

- The transcript of proceedings, and computer diskettes of the transcript, if available;

- A certified copy of the docket and journal entries prepared by the clerk of the trial court; and

Pursuant to Rule 11.03 (B)(2) the custodian of the record shall only transmit audio exhibits, video exhibits, and documents such as papers, maps, or photographs. Pursuant to 11.03 (B)(3) no other physical exhibits shall be transmitted unless directed to do so by the Clerk of the Supreme Court.

You are further ordered, pursuant to Rule 11.04 (B)(1), to number the documents and exhibits comprising the record; to prepare an index of the documents and exhibits, correspondingly numbered and identified; to briefly describe all exhibits listed in the index; and to send a copy of the index to all counsel of record in the case and transmit the index with the record to the Clerk of the Supreme Court.

You are further ordered, pursuant to Rule 11.04 (D), to make a copy of the record and retain the copy for use in any postconviction proceeding. Pursuant to this Court's order in *In re: Reimbursement to Trial Court Clerks for Duplication of Death Penalty Records* (January 25, 1999), a trial court clerk shall be permitted reimbursement to the following extent: five cents per page for photocopying the original papers, transcript of proceedings, and documentary exhibits; the actual costs of duplicating photographs, videotapes, and audiotapes that are part of the record. Any request for reimbursement shall be filed simultaneously with the filing of the record, and reimbursement shall be subject to the availability of funds appropriated by the General Assembly.

Maureen O'Connor
Chief Justice

Supreme Court of Ohio Clerk of Court - Filed March 23, 2015 - Case No. 2014-0989

# IN THE SUPREME COURT OF OHIO

| | | |
|---|---|---|
| State of Ohio, | : | |
| | : | |
| Plaintiff - Appellee, | : | **CASE NO.  2014-0989** |
| | : | |
| v. | : | |
| | : | |
| Donna Roberts, | : | |
| | : | |
| Defendant - Appellant. | : | |
| | : | **CAPITAL CASE** |
| | : | |

---

## MERIT BRIEF OF APPELLANT, DONNA ROBERTS

---

COUNSEL FOR APPELLEE:

DENNIS WATKINS,  ESQ.  0009949
Trumbull County Prosecutor
4th Floor Administration Building
160 High Street NW
Warren OH 44481
(330) 675-2426

LUWAYNE ANNOS - 0055651
Assistant Trumbull County Prosecutor

COUNSEL FOR APPELLANT:

DAVID L. DOUGHTEN, ESQ.
Regis. No. 0002847
4403 St. Clair Avenue
Cleveland, OH 44103-1125
(216) 361-1112

ROBERT A. DIXON, ESQ.
Regis. No.  0040197
4403 St. Clair Avenue
Cleveland, OH 44103-1125
(216) 432-1992

## **TABLE OF CONTENTS**

PAGES

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

OVERVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

STATEMENT OF THE FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Proposition of Law One: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Where a capital sentence is remanded for a new sentencing hearing because of the trial court failure to consider and give effect to the defendant's allocution, a sentence of death is precluded if a different judge conducts the hearing without allowing the defendant to speak because proper weighing is impossible without ever having heard the defendant speak.

Proposition of Law Two:  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

When considering the appropriate sentence in a capital trial, the sentencing judge must consider and give effect to all presented evidence in mitigation. This process requires the independent weighing of the available evidence in mitigation separately from the weight assessed to the proven capital specifications. It is not required that the mitigation "draw attention" from the proven aggravating factors before weight is assessed.

Proposition of Law Three: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

In a capital case, the sentencing court may not use its findings of the nature and circumstances of a the case to negate the presence of available factors in mitigation.

ii

Proposition of Law IV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

On remand for a new sentencing procedure requiring a judge who has not had the benefit of hearing the trial, penalty phase or allocution phases of trial to write a R.C. §2929.03(F) opinion, the trial court must conduct a *de novo* penalty phase hearing.

**CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

**CERTIFICATE OF SERVICE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

**APPENDIX** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Notice of Appeal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-1
Entry on Sentence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-6
Sentencing Opinion of the Court . . . . . . . . . . . . . . . . . . . . . . . . . . . A-11
Amended Sentencing Opinion of the Court . . . . . . . . . . . . . . . . . . . A-34
Notice of Post-Release Control . . . . . . . . . . . . . . . . . . . . . . . . . . . A-58
R. C. 2929.03(F) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-62
R. C. § 2929.06 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-60
Fifth Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-63
Sixth Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-64
Eighth Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-65
Fourteenth Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-66

## TABLE OF AUTHORITIES

**CASES**

Barclay v. Florida, 463 U.S. 939 (1983), rehearing denied, 464 U.S. 874 . . . . . . . . . . . . . . . . . 20

Boyde v. California, 494 U.S. 370 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Espinosa v. Florida, 505 U.S. 1079, 1081 (per curium) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Gregg v. Georgia, 428 U.S. 153 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Lockett v. Ohio, 438 U.S. 586 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 15, 20

McCleskey v. Kemp, 481 U.S. 279 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Penry v. Lynaugh, 492 U.S. 302 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Seasons Coal Co. v. Cleveland (1984) 10 Ohio St.3d 77, 461 N.E. 1273 . . . . . . . . . . . . . . . . . 11

State v. Burnside, 100 Ohio St.3d 152, 2003-Ohio-5372 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

State v. Fanning (1982) 1 Ohio St.3d 19, 437 N.E. 2d 583 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

State v. Frazier, 115 Ohio St.3d 139, 2007 Ohio 5048. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

State v. Johnson (1986), 24 Ohio St. 3d 87 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

State v. Jones, 135 Ohio St.3d 10, 2012 Ohio 5677. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

State v. Penix, (1987) 32 Ohio St.3d 369 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 12, 13, 14, 22

State v. Roberts, 110 Ohio St.3d 71, 2006-Ohio-3665 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

State v. Tenace 109 Ohio St.3d 255, 2006 Ohio 2417 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

State v. Williams, 99 Ohio St.3d 493, 2003 Ohio 493. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

State v. Wogenstahl (1996), 75 Ohio St.3d 344, 662 N.E.2d 311, 1996 Ohio 219 . . . . . . . . . . 19

Stringer v. Black, 503 U.S. 222 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Washington v. Dep't of Rehab.& Corr., 166 Ohio App.3d 797, 2006 Ohio 2435 . . . . . . . . . . . 11

iv

**PROVISIONS/STATUTES**

R.C. §2901.04 (A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
R.C. 2929.03(F) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim
R.C. 2929.06 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

**CONSTITUTIONAL PROVISIONS**

Fifth Amendment, United States Constitution . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 23
Sixth Amendment, United States Constitution . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
Eighth Amendment, United States Constitution . . . . . . . . . . . . . . . . . . . . . . . . . 10, 13, 15, 23
Fourteenth Amendment, United States Constitution . . . . . . . . . . . . . . . . . . . . . . . . . 10, 13, 23

v

# CASE OVERVIEW

This is the third occasion this Court has reviewed this case. This Court remanded this case for new sentencing procedure in State v. Roberts (2006), 110 Ohio St. 3d 71, 2006 Ohio 3665. The reversal was based upon the failure of the trial court to allow allocution, coupled with the failure of the trial court to independently prepare its sentencing opinion as required by O.R.C. 2929.03(F).

In Roberts II, State v. Roberts, 137 Ohio St.3d 230, 2013 Ohio 4580, the sentence of death was again reversed because of the trial court's failure to properly consider the allocution of the defendant/appellant.

Based upon this Court's holding in Robert's II, the remand in this instance was extremely limited. The trial judge was limited to reviewing the allocution of Roberts and re-write the O.R.C. 2929.03(F) opinion while considering and giving effect to possible mitigation contained in the allocution. The problem is, the original judge no longer presided over the case. The present judge did not preside over the original trial or the first remand. Thus, the judge could not properly consider the weight to be provided to either the aggravating factors or the mitigation factors already part of the record. He did not hear any witness testify, thus rendering it impossible to fully assess the credibility of that witness. He did not even hear Roberts speak, as she was forbidden to do so.

In Roberts II, this Court determined that a sentencing court must consider the allocution in determining whether the sentence of death is appropriate. Clearly, the key aspect of the allocution is the actual speaking of the defendant. For instance, the court must assess the sincerity of remorse. This can only be ascertained by hearing the voice of the defendant. Without

1

actually listening to the words, how would a judge know what weight to provide the statement without listening to the intonation, watching the struggling for composure, or seeing the hurt and perhaps the shame of the defendant?

Furthermore, the statute does not provide a procedure for a capital resentencing where a different judge must conduct the resentencing.  This is not a situation where a completely new sentencing is conducted pursuant to R.C. §2929.06.  This is a case where a new judge who was asked to correct the error of the original judge without having the benefit of hearing the trial. State v. Penix, (1987) 32 Ohio St.3d 369.

This Court is being asked here to determine whether the statute allows a replacement judge to provide a R.C. §2929.03 (F) opinion without actually hearing the testimony of the trial or the penalty phase of the original trial.  It is also being asked if a judge, who did not hear the original allocution, may assign weight to available mitigation contained in that statement without allowing the defendant to speak the words contained in that allocution.

2

## STATEMENT OF THE CASE

A Trumbull County grand jury indicted the defendant-appellant Donna Roberts (hereinafter Roberts) on a four count indictment for various charges, including two alternative theory counts of capital murder surrounding the death of her husband, Robert Fingerhut. The indictment charged the appellant with one count of the purposeful killing of Mr. Fingerhut with prior calculation and design in violation of R.C. §2903.01(A) and one count of the so-called felony murder in violation of R.C. §2903.01(B). Each of these capital murder counts included two capital specifications addressing violations of R.C. §2929.04(A)(7). The first specification alleged that the murder occurred during the commission of an Aggravated Burglary, R.C. §2911.11. The second specification alleged that the murder occurred during the commission of an Aggravated Robbery, R.C. §2911.01.

The third and fourth counts charged the felonies underlying the aforementioned capital specifications, Aggravated Burglary, R.C. §2911.11 and Aggravated Robbery, R.C. §2911.01. Each count of the indictment included a firearm specification pursuant to R.C. §2929.141.

The charges indicated that the appellant was not the principal offender, but rather she acted in complicity with the principal, and co-defendant, Nathaniel Jackson. Mr. Jackson was tried separately as he also was capitally indicted. The appellant pleaded not guilty to all counts of the indictment at her arraignment on December 31, 2001.

A jury trial began on March 26, 2003, with the death qualification process. The jury found Roberts guilty of all counts including the capital and firearm specifications in May of 2003.

On June 3, 2003, Roberts indicated to the court that she wanted to waive the presentation

3

of mitigation at the penalty phase hearing, with the exception of her right to make an unsworn statement.  The trial court conducted a hearing to determine her competency.  A psychologist, Thomas Eberle, who had previously examined her, testified that in his opinion Roberts was competent.  The court also directly questioned Roberts.  The court determined her to be competent under State v. Ashworth (1999) 85 Ohio St. 3d 56, 1999 Ohio 204.

Prior to the commencement of the penalty phase hearing, the prosecutor elected to dismiss Count Two, R.C. §2903.01(B)(felony-murder) and proceeded with Count One, R.C. §2903.01.(A) (prior calculation and design).  The hearing began on June 4, 2004.  The defense waived opening and closing argument.  The appellant did provide an unsworn statement.  That same day, the jury recommended a sentence of death.

On June 20, 2003, the trial court accepted the recommendation and sentenced Roberts to death.  The court also sentenced her to serve ten years for both the convictions of Aggravated Robbery and Aggravated Burglary.  These sentences are being served consecutively to each other and the sentence of death.  The trial court also applied a three-year firearm specification, which is also being served consecutively to the principle sentences.

**Roberts I**

Roberts appealed her convictions and sentence to this Court.  In State v. Roberts (2006), 110 Ohio St. 3d 71, 2006 Ohio 3665, this Court affirmed the convictions but reversed the sentence of death.  The opinion found that the trial judge had failed to independently prepare the R.C. §2929.03(F) opinion and had not permitted or considered the allocution.  Therefore, the case was remanded to the trial court to allow Roberts to allocute and to have the trial court independently prepare the R.C. §2929.03(F) sentencing opinion after hearing the allocution.

4

**Roberts II**

Judge John M. Stuard, the original trial judge, conducted the proceedings on the re-sentencing mandate. On May 1, 2007, Ms. Roberts moved to expand the sentencing hearing to include all relevant mitigation evidence. The trial court denied the motion and restricted the hearing to only the allocution of Roberts on September 14, 2007.

The defense moved for a competency hearing. The trial court granted the motion. However, a defense request for an independent psychologist to review her competency was denied by the court. On October 22 , 2007, the trial court conducted a competency hearing and found Roberts to be competent.

That same day,  the court conducted a hearing for the purpose of allowing the allocution of Ms. Roberts as required by the Ohio Supreme Court decision.

On October 29, 2007,  the trial court announced its decision, again finding death to be the appropriate penalty.

Roberts again appealed her sentence. On October 22, 2013, this Court again remanded this matter with specific instructions regarding sentencing considerations. State v. Roberts, 137 Ohio St.3d 230, 2013 Ohio 4580. The Court held:

> [**P73] On remand, the trial court is to review the entire record, including Roberts's allocution of October 22, 2007. The trial court shall consider the entire record—again, including the allocution—in determining whether the aggravating circumstances outweigh the mitigating factors beyond a reasonable doubt. The trial court shall then write and file a sentencing opinion pursuant to R.C. 2929.03(F) reflecting that it has complied with these instructions.
>
> [**P74] In accordance with our holding as to Roberts's first proposition of law, Roberts is not entitled to present any further evidence on remand. *Moreover, because Roberts has been given her opportunity to make allocution pursuant to Crim.R. 32, she is not entitled to make another one.* (Emphasis added)

5

[**P75] Finally, while the trial court must consider Roberts's allocution, nothing in today's opinion should be interpreted as a determination that the matters discussed in her allocution are true or that the trial court must afford them any particular weight. It is for the trial court to determine in the first instance what mitigating factors, if any, are present in the case, and what weight, if any, they should be given.

Id. 245-46

**Roberts III**

Thus, in the latest remand hearing, the trial court was permitted only to review the previous statement's of Roberts and the trial testimony without the ability to fairly assess credibility of either Roberts or the state witnesses for that matter.  The trial court followed the order and did not permit Roberts to speak.

On April 17, 2015, Roberts filed a motion to preclude a sentence of death because the judge ordered to comply with the order of this Court in Roberts II no longer presided.  The new judge did not conduct the trial, hear the penalty phase, or listen to the allocution of Roberts on the previous remand.

On April 30, 2014, the trial court denied the defense motion to preclude death or, in the alternative, to grant a de novo sentencing phase hearing.  The court then read its R.C. §2929.03(F) opinion, again finding death to be the appropriate penalty.  The trial court filed the opinion on that date.

The trial court filed an amended R.C. 2929.03(F) opinion on June 10, 2014.  Roberts filed her  Notice of Appeal to this Court on June 13, 2014.

6

## STATEMENT OF THE FACTS

As this Court is well-familiar with the facts of this case, the overview here will be brief. The state charged the appellant Donna Roberts with planning the killing of her husband with a prison inmate, Nathaniel Johnson.  According to the state, the appellant and Mr. Jackson were pen-pals while he was serving time in a state penal institution.  It is alleged that at some point during the letter writing and phone conversations, the two planned the homicide of the appellant husband/roommate, Robert Fingerhut.  Shortly after Mr. Jackson was released from prison, the two allegedly orchestrated the homicide during a time which the appellant established an alibi for herself while shopping and dining away from her home, where the offense transpired.

The defense did not contest that Mr. Jackson was the killer. The defense did argue that the appellant did not act in complicity with him.  While the correspondence between Roberts and Jackson was admittedly sexually graphic and alluded to actions suggestive of a plot, the defense argued that there was insufficient evidence that Roberts actually participated in the homicide or acted in complicity with Mr. Jackson.

The facts will be further discussed in the following Propositions of Law.

7

## ARGUMENT

**Proposition of Law I:**

> **Where a capital sentence is remanded for a new sentencing hearing because of the trial court's failure to consider and give effect to the defendant's allocution, a sentence of death is precluded if a different judge conducts the hearing without allowing the defendant to speak because proper weighing is impossible without ever having heard the defendant speak.**

In State v. Roberts II, this Court determined that a sentencing judge must consider the allocution in determining whether the sentence of death is appropriate. Clearly, the key aspect of the allocution is the actual words spoken by the defendant. In determining the weight to be provided to the potential mitigation contained within the wording the sentencing court must assess the sincerity of those words. This can only be ascertained by hearing the voice of the defendant. Without actually listening to the words, how would a judge know what weight to provide the intonation, the struggling for composure, the hurt and perhaps the shame of the defendant?

The judge to whom Robert's provided her allocution did not ultimately write the required R.C. 2929.03(F) opinion. The sentencing option of death should have been precluded. Ohio's statutory scheme does not provide a procedure for a capital rewriting of the R.C. 2929.03(F) opinion where the original judge is no longer available to write the opinion. This is not a situation where a completely new sentencing hearing or penalty phase was conducted pursuant to R.C. §2929.06. This is a case where a new judge who was asked to correct the error of the original judge without having the benefit of having heard any aspect of the trial or the allocution.

8

Because the statutory scheme does not address a replacement judge in a R.C. §2929.03(F) situation, and a R.C. §2929.03(F) opinion is required before a capital defendant may be sentenced to death, Roberts may not be sentenced to death.  State v. Penix, (1987) 32 Ohio St.3d 369.

**A.      United States Supreme Court Mitigation Case Law is Contrary This Court's Directive Here**

This Court reversed the second sentence of death for Roberts primarily because the trial court ignored consideration of mitigation she introduced in her allocution during her second sentencing procedure.  Interestingly, the Supreme Court's remand instruction this time around limited the scope of the considerations of the sentencing Court:

> [**P75] Finally, while the trial court must consider Roberts's allocution, nothing in today's opinion should be interpreted as a determination that the matters discussed in her allocution are true or that the trial court must afford them any particular weight. It is for the trial court to determine in the first instance what mitigating factors, if any, are present in the case, and what weight, if any, they should be given.

This mandate constituted a Sisyphean task for the trial court.  In effect, opinion required the trial court  to assess the credibility of Roberts based on an allocution the court did not see or hear.  The order required the trial court to assess Roberts' credibility based on the bare transcript alone.  As in all cases, weight given to witness statements are based upon that witnesses demeanor, sincerity, facial expressions, emotion, body language, tone of voice and the list goes on.  This is impossible from the reading of a transcript alone.

**Limitation of Consideration of Mitigation Violates Lockett**

The limiting mandate from this Court restricted Roberts' ability to have her mitigation

9

properly considered. The United States Supreme Court has long held that a death sentence may not stand if the sentencing body has been precluded from considering relevant evidence suggesting that the death sentence would not be appropriate.  The Eighth Amendment mandates an individualized assessment of the appropriateness of the death penalty.  In Lockett v. Ohio, 438 U.S. 586 (1978), the Supreme Court held that the Eighth and Fourteenth Amendments require that the sentencer "not be precluded from considering, *as a mitigating factor*, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." Id., at 604 (emphasis in original).  Thus, the Court held unconstitutional the Ohio death penalty statute which mandated capital punishment upon a finding of one aggravating circumstance unless one of three statutory mitigating factors were present.

In previous appeals Roberts addressed the limitation to her ability to present mitigation. It is understood that this issue cannot be re-argued here.  What is ripe for addressing here is whether the procedure used on remand, having a judge weigh allocution without having heard it actually spoken, improperly infringed on her ability to have it properly presented and considered.

The Constitution limits a State's ability to narrow a sentencer's discretion to consider relevant evidence that might cause it to *decline to impose* the death sentence." McCleskey v. Kemp, 481 U.S. 279, 304 (1987) (emphasis in original).  "Indeed, it is precisely because the punishment should be directly related to the personal culpability of the defendant that the jury must be allowed to consider and give effect to mitigating evidence relevant to a defendant's character or record or the circumstances of the offense." Penry v. Lynaugh, 492 U.S. 302, 327-

10

328 (1989).

The importance of hearing and seeing a witness or defendant has long been recognized by the reviewing courts of this state. "An appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." (Citations omitted.) State v. Roberts, 110 Ohio St.3d 71, 2006-Ohio-3665, ¶ 100, 850 N.E.2d 1168, quoting State v. Burnside, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8, 797 N.E.2d 71; State v. Fanning (1982) 1 Ohio St.3d 19, 437 N.E. 2d 583.

The reason for this deference is self-evident. Reviewing courts defer to trial courts on matters of credibility because the trial court is in the best position to observe demeanor, voice inflections, gestures, etc. along with the persuasive weight to be given other documents and exhibits *when considered jointly* with the credibility of the relevant witness testimony. Washington v. Dep't of Rehab.& Corr., 166 Ohio App.3d 797, 2006 Ohio 2435, *citing* Seasons Coal Co. v. Cleveland (1984) 10 Ohio St.3d 77, 461 N.E. 1273. (Emphasis added)

One-half of that joint equation was missing from the sentencing procedure in this case. By not permitting Roberts to speak, the procedure on remand did limit her ability to have her mitigation fully considered and accurately assessed.

**B.**     **Resentencing Procedure Here**

In its directive for the allocution remand, this Court did not address the procedure to be

11

followed if the original sentencing judge was no longer presiding over the case.  The original

error here occurred during Roberts' allocution and the R.C. §2929.03(F) opinion.  In Roberts II,

the opinion was based upon the assumption that the re-sentencing would be conducted by the

same judge who heard the evidence at trial and in the sentencing procedure.  Thus, there is no

guidance as to the procedure that should be followed here.  Roberts II is silent as to the situation

that actually transpired.

**Guidance Where There is No Specific Guidance For Procedure to be Invoked**

Because there is confusion in the proper procedure to be applied, this Court can look to

two sources for guidance.  First is the rules of statutory construction.  R.C. §2901.04 (A) holds:

> Except as otherwise provided in division ( C) or (D) of this section, sections of the
> Revised Code defining offenses or penalties shall be strictly construed against the
> state, and liberally construed in favor of the accused.

The second source is the precedent of this Court.  In State v. Penix, (1987), 32 Ohio St.

3d 369, 513 N.E.2d 744, this Court faced a situation in which the sentence of death had been

reversed on appeal, but the legislature had not enacted a procedure to address a new penalty

phase hearing on remand.  In other words, there was no statute, such as the current R.C.

§2929.06, which allowed the selection of a second jury for the purposes of the penalty phase

only.  In Penix, this Court held that death was not an option on remand as the case had originally

been tried to a jury.  Penix held as follows.

Furthermore, R.C. 2929.03(D)(2), which describes the procedure to be followed by the
jury in reaching a decision on the death penalty, provides as follows:

12

Upon consideration of the relevant evidence raised at trial, the testimony, other evidence, statement of the offender, arguments of counsel, and, if applicable, the reports submitted pursuant to division (D)(1) of this section, the trial jury, if the offender was tried by a jury, shall determine whether the aggravating circumstances the offender was found guilty of committing are sufficient to outweigh the mitigating factors present in the case. If the trial jury unanimously finds, by proof beyond a reasonable doubt, that the aggravating circumstances the offender was found guilty of committing outweigh the mitigating factors, the trial jury shall recommend to the court that the sentence of death be imposed on the offender. Absent such a finding, the jury shall recommend that the offender be sentenced to life imprisonment * * *."

Thus, the decisions leading to a death sentence must be made by the same jury that convicted the offender in the guilt phase. There are simply no statutory provisions for another jury to make these crucial determinations.

Penix at 372-372.

The Penix Court concluded that since there was not statutory authority allowing the imposition of death upon resentencing. "we may not create such procedure out of whole cloth." Id.

Essentially, this is where Roberts stands now. There is no statutory procedure for current sentencing procedure. Ohio's statutory death penalty sentencing scheme does not permit a judge who has not previously presided over the case to read the words of a defendant's allocution, in addition to the testimony from the two phases of original trial, from the cold pages of a transcript to determine whether the defendant lives or dies. Such a procedure in not countenanced by the statutory provisions for the purposes of forming the basis of the required R.C.§2929.03(F) sentencing opinion.

Here, as in Penix, there is no procedure in the statute for sentencing Roberts to death on the remand. To paraphrase Penix, there are simply no statutory provisions for another judge to

13

make these crucial determinations.  Therefore, a life sentence must be instituted.  Even if a

judicial substitution were permitted by statute, such a procedure would not meet federal

constitutional mandates under the Fifth, Eighth and Fourteenth Amendments.

**Proposition of Law Two:**

> **When considering the appropriate sentence in a capital trial, the sentencing
> judge must consider and give effect to all presented evidence in mitigation.
> This process requires the independent weighing of the available evidence in
> mitigation separately from the weight assessed to the proven capital
> specifications.  It is not required that the mitigation "draw attention"from
> the proven aggravating factors before weight is assessed.**

This Court remanded this case with an instruction of the trial court to consider and weigh

the mitigation presented in her allocution.  Although the trial court did identify numerous factors

in mitigation, this mitigation was not properly considered.

Here, the trial court did identify numerous factors in mitigation his opinion, although

affording them little weight.

> The mitigating factors given little weight by this Court do not even approach an
> imbalance of the aggravating circumstances present in this matter.  Roberts
> traumatic childhood, her allegations of physical abuse at the hands of Fingerhut,
> the physical injuries sustained in multiple motor vehicle accidents, the mental
> disability, the lack of a prior criminal record and Roberts charitable tendencies do
> not even draw the Court's attention away from the aggravating circumstances.

R.C. 2929.03(F) opinion, page 23.

What is disconcerting about this passage is the fact that the mitigation gleaned from

reading the record did "not even draw the Court's attention away from the aggravating

circumstances."  This is not a proper weighing procedure.  It is not incumbent upon a defendant

14

to "draw the Court's attention" from the mitigation. The statute and constitution require the aggravation to be considered independently from the mitigation. It is not required that the mitigation be so overpowering that the judge or jury gives less consideration to the aggravation. Here, the trial judge did not provide the weight due to the mitigation because it failed to sufficiently draw attention from the aggravating factors in the case.

**Strict Compliance with Lockett is Required for a Sentence of Death to be Upheld**

As noted above, the Eighth Amendment mandates an individualized assessment of the appropriateness of the death penalty. In Lockett v. Ohio. Ohio Revised Code 2929.03(F) is a direct codification of the United States Supreme Court's dictates of Lockett. The statute simply requires the sentencing judge to place the analysis required in Lockett into writing and enter the opinion into the record. The statute provides, in relevant part:

> The court or the panel of three judges, when it imposes sentence of death, shall state in a separate opinion its specific findings as to the existence of any of the mitigating factors set forth in division (B) of 2929.04 of the Revised Code, the existence of any other mitigating factors, the aggravating circumstances the offender was found guilty of committing, and the reasons why the aggravating circumstances the offender was found guilty of committing were sufficient to outweigh the mitigating factors.

The trial court's sentencing opinion again falls short of the requirements of 2929.03(F) in the following specific manner.

The opinion identified abuse suffered by Roberts in relation to abuse she had suffered at the hands of Fingerhut during their relationship. However, the court, having not heard the trial, concluded:

15

> However, there is absolutely no evidence before the Court to support the veracity of the physical abuse allegations made by Roberts against Fingerhut. Therefore, the Court is left to ponder whether those allegations were part of her scheme to induce Jackson to act as her accomplice. Roberts failed to alert the Court to any physical violence between her and Fingerhut during her allocution, Instead, Roberts professed her love for the man whom she contracted to have killed. Therefore, the Court finds these facts weigh only slightly in favor of Roberts.

(R.C. §2929.03(F) page 19)

The fact that a women who was suffering from domestic violence did not report it to law enforcement authorities should not been seen as unusual, particularly for a woman of Roberts age.  Although there is no evidence of Roberts having even discussing this with her co-defendant Jackson, the judge simply speculates this may have happened, thus reducing the weight domestic violence should have been provided.

Roberts spoke of sexual abuse at a young age.  Little weight was given by the court as "there is no connection to the underlying crime.  Even if Roberts were carrying the psychological scars of this trauma, there is little evidence to suggest any connection to the underlying crime." (R.C. §2929.03(F) pp. 19-20)  There is no requirement that a direct connection to the underlying crime be established before childhood sexual trauma may be afforded full weight.  Lockett requires an "individualized" consideration of the individual, not just factors connected to the offense. State v. Tenace 109 Ohio St.3d 255, 2006 Ohio 2417; State v. Frazier, 115 Ohio St.3d 139, 2007 Ohio 5048.

Similarly, the court minimized the weight to be afforded to Robert's depression and physical traumas.  But the weight was again minimized or de-valued because of the lack of proof of the proximity of these matters to the offense.  The court found:

16

> There is no question Roberts suffered some physical and mental traumas as a result of these accidents.  Roberts even attempted to commit suicide in her garage.  However, the Court finds these incidents are isolated and occurred in a time frame so far removed from the murder of Mr. Fingerhut that their relevance for mitigation is significantly decreased.

(R.C. §2929.03(F) opinion, p. 21-22)

There is no basis in law for discounting mitigation because the court finds the lack of proximity in time to the offense.  State v. Jones, 135 Ohio St.3d 10, 2012 Ohio 5677.

The court recognized her charitable works and determined that her generosity was due some weight.  But, although not ever hearing her speak, the court determined that this weight was diminished to nothing by her "self-promotion."  (Opinion, p. 20)

> However, the Court finds this generosity must also be reviewed in totality with Roberts's self-promotion.  Roberts frequently referred to her wealth in her allocution.  She wanted the Court to know she was the breadwinner, not Mr. Fingerhut.  She berated the man who testified she was angry with Fingerhut when he refused to give her $3,000, It seems these mischaracterizations of her social status were more upsetting to Roberts than the guilty verdict against her for complicity to commit murder. The Court finds these two polar self-portraits are not compatible with one another.  Therefore, the Court affords no weight to the self-reported acts of generosity and charity as mitigation.

(Id.)

Roberts did not address her wealth in her allocution.  Again, reading a bare transcript, the Court may not negate mitigation by his interpretation of the importance of Robert's "social status" to her.  Even had this been important to her, and Roberts disputes this interpretation of the record, one may be concerned with her status and yet be generous and charitable.  The two concepts do not cancel each other.

This same rationale was imposed to negate possible mental illness or neurological

17

damage suffered from two severe automobile accidents. The court found that Roberts' "self-promotion" as to her financial prowess, educational accolades and charitable works is contradictory to her assertion that she has suffered mental deficiencies. ." Id. 21. The opinion concludes that:

> The two are juxtaposed; either Roberts is either a powerful entrepreneur capable of earning a magnitude of wealth and respect or she is one suffering from mental trauma.

Id.

It is not explained why the two are so contradictory. First, Roberts did not depict herself as a "powerful" entrepreneur. Second, powerful entrepreneur may suffer serious mental trauma. Finally, and most disconcerting, is that the introduction of evidence of mitigation is improperly utilized by the court to cancel out the weight to be afforded clearly established mitigation.

Ultimately, "little to no weight" was given to any of the related mitigation. This was because:

> . . . the Court finds Roberts was fairly well-spoken in the delivery of her allocution. Plus, Roberts expressly made a valid waiver of her right to present mitigation evidence. There was no mental deficiency at play in that decision.

(Id.) (Emphasis added)

The problem her is, of course, the judge did not listen or hear her provide her allocution to the previous judge. Further, because the Court found she was mentally competent at the time of her first trial, she has no mental health issues. As this Court is well aware, one may have severe mental illness and yet be competent to stand trial. It appears the trial court believed that mental health issues are limited to an almost diminished capacity situation. It should not be necessary to point out that mental health is not an all-or-nothing proposition.

18

**Proposition of Law Three:**

> **In a capital case, the sentencing court may not use its findings of the nature and circumstances of a the case to negate the presence of available factors in mitigation.**

    The sentencing court recognized that the law that the nature and circumstance of a case may not be used against a defendant as an aggravator of any type. State v. Wogenstahl (1996), 75 Ohio St.3d 344, 662 N.E.2d 311, 1996 Ohio 219. Nevertheless, that is exactly what the court did here to negate the weight to be provided to recognized factors in mitigation.

    After addressing the identifiable factors in mitigation, the court essentially negated any weight for these factors because of the nature and circumstances of case.

> Roberts planned and plotted for the murder of Fingerhut over a period of at least three months. She conspired with Jackson, her imprisoned lover, to murder Fingerhut for his life insurance proceeds. The murder plan was well documented through telephone calls recorded from Jackson's residence; the Lorain Correctional Institute. In addition, detailed I letters were exchanged between the loving couple outlining their plans, These plans included the acquisition of supplies, the procurement of a hotel room, and the promise of a new vehicle for Jackson - all provided by Roberts. Ultimately, Roberts provided access to the residence in order for Jackson to carry out the murder as planned. Despite these intricate details, Roberts "forgot" to include Jackson as one of her named lovers to the police during interviews. In addition, Roberts attempted to thwart the investigation into the Fingerhut murder by implicating other individuals; not Jackson. In addition, Roberts's feigned emotional outbursts over Fingerhut's death do not correlate to the insidious behavior relative to the same.
>
> ***Therefore, the Court has granted little to no weight to any of the mitigating factors outlined by Roberts in her unsworn statement or her allocution***. In addition, the Court finds Roberts's request for "equal treatment" to Jackson is inconsistent with the primary body of her allocution and has not given any weight to that request either.

(R.C. §2929.03(F) opinion, p. 22-23) (Emphasis added)

<div align="center">19</div>

In the above aspect of the court's opinion, the court admittedly granted little or no weight to the available mitigation because of the manner in which the homicide was carried out and Roberts's perceived part in that offense. This is not only against the statutory interpretation of Ohio's death penalty scheme as interpreted by this Court in Wogenstahl, but also is tantamount to weighing with a non-statutory aggravating factor. *See also* State v. Williams, 99 Ohio St.3d 493, 2003 Ohio 493.

In a weighing state such as Ohio, the consideration of aggravators not part of the statutory scheme is improper. Lockett v. Ohio, 438 U.S. 586 (1978); State v. Johnson (1986), 24 Ohio St. 3d 87.

The trial court apparently did not understand that Ohio statutes requires a court to independently weigh the statutory aggravators found by the jury and independently weigh available mitigation and determine if the aggravators outweighed the mitigation beyond a reasonable doubt. The problem with the above present opinion is that the judge based his determination on the nature and circumstances of the specification, using them to devalue the mitigation, and not on the felony-murder specifications alone.

Although the jury must consider the nature and circumstances of the crime, it is well settled that the nature and circumstances of the crime may not be weighed against the mitigating factors. See State v. Wogenstahl (1996), 75 Ohio St.3d 344, 356, 1996 Ohio 219; The Supreme Court of the United States has consistently condemned the consideration of factors not permitted under a state's statutory scheme. Barclay v. Florida, 463 U.S. 939 (1983), rehearing denied, 464 U.S. 874; Espinosa v. Florida, 505 U.S. 1079, 1081 (per curium). Misguiding a jury during the

20

sentencing phase invites arbitrary and capricious sentencing <u>Gregg v. Georgia</u>, 428 U.S. 153,

193-195 (1976); <u>Stringer v. Black</u>, 503 U.S. 222, 231-235 (1992);. <u>Boyde v. California</u>, 494 U.S.

370, 380-81 (1990).

Because the trial court in its independent decision improperly used the nature and

circumstances of the offense to negate available mitigation instead of the required independent

weighing, this case again must be remanded for a new sentencing hearing.


**Proposition of Law IV**

> **On remand for a new sentencing procedure requiring a judge who has not
> had the benefit of hearing the trial, penalty phase or allocution phases of trial
> to write a R.C. §2929.03(F) opinion, the trial court must conduct a *de novo*
> penalty phase hearing.**


This issue is raised as an alternative to the First Proposition of Law.  If this Court finds

<u>State v. Penix</u> inapplicable, a new penalty phase hearing is required.

Because the trial judge ordered to write the §2929.03(F) opinion on remand was new to

the case, Robert's requested a new penalty phase hearing be conducted.  The trial court refused as

the order from this Court was limited.  This is accurate.  However, as the <u>Roberts II</u> opinion did

not address the possibility of a different judge writing the opinion than the judge who had erred

originally, a new hearing should have been granted. pursuant to R.C. §2929.06.  Because this

Court did not hear the evidence at trial, the penalty phase of trial, or Roberts' first allocution, it

21

was not now in position to fairly consider and weigh the mitigation evidence that might have

been gleaned from those hearings.  Therefore, the trial court, though no fault of its own, was

unable to fairly judge for itself the sincerity or credibility of Roberts in the deliverance of her

allocution that was provided to the court's predecessor

    In addition, it would be impossible for this Court to fairly determine how to assess weight

to the capital murder specifications which it must weigh against the available mitigation.

    The <u>Roberts II</u> ruling deprived the new sentencing judge the ability to properly consider

mitigation from all aspects of Roberts's trial. The judge was directed to only consider the bare

reading of the words from the transcript alone.  Credibility assessments generally are less than

accurate when made from bare print alone.

    Generally when there is a remand for a resentencing,  R.C.§2929.06(B) requires that in

relevant part:

> Whenever any court of this state or any federal court sets aside, nullifies or
> vacates a sentence of death imposed upon an offender because of error that
> occurred in the sentencing phase of the trial and if division (A) of this section
> does not apply, the trial court that sentenced the offender shall conduct a new
> hearing to resentence the offender.  If the offender was tried by a jury, the trial
> court shall impanel a new jury for that hearing.

    This statute should apply here.  Typically, when the capital sentencing framework

outlined above is not properly followed, or if an error occurs at one of the steps in the penalty

phase, a resentencing hearing complete with a full evidentiary hearing is ordered.  However,

because of the change in the presiding judge, the Supreme Court's directive here does not fit

22

squarely within the statute.  It also runs afoul with the constitutional protections addressed above.

Because the current judge is different than the original judge who conducted the trial and subsequent allocution at the first remand, a complete new penalty phase hearing is required.  The failure to hold a new penalty phase hearing deprived Roberts of her protections under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

## CONCLUSION

Pursuant to First Propositions of Law, the defendant-appellant, Donna Roberts, respectfully requests that this Honorable Court reverse the sentence of death and find a life sentence to be appropriate.  In the alternative, pursuant to Propositions of Law II, III and IV,  the defendant-appellant respectfully requests that this Court reverse the sentence of death and remand her case for a new sentencing hearing.  As this judge had not heard the original hearing evidence, it is requested that a full penalty determination hearing be ordered before a newly selected jury.

Respectfully submitted,

/s/David L. Doughten
DAVID L. DOUGHTEN
Counsel for Appellant Roberts


/s/ Robert A. Dixon
ROBERT A. DIXON
Counsel for Appellant Roberts

23

**CERTIFICATE OF SERVICE**

A copy of the foregoing appellant's Brief was served upon Dennis Watkins, Trumbull County Prosecutor and/or LuWayne Annos, Esq. Assistant Trumbull County Prosecutor, Administration Building, 160 High Street, Warren, Ohio 44481, by Regular U. S. mail on this 23<u>rd</u> day of March, 2015.

<div style="text-align: right;">

/s/David L. Doughten

DAVID L. DOUGHTEN

ROBERT A DIXON


Counsel for Appellant Roberts

</div>

24

APPENDIX



IN THE SUPREME COURT OF OHIO

No. 14-0989

| | | |
|---|---|---|
| State of Ohio, | : | |
| | : | From the Trumbull County Common Pleas |
| Appellee, | : | Court Case No. 2001 CR 0793 |
| | : | |
| -v- | : | |
| | : | **DEATH PENALTY APPEAL** |
| Donna Roberts, | : | |
| | : | |
| Appellant. | : | |

---

## NOTICE OF APPEAL OF APPELLANT, DONNA ROBERTS

---

COUNSEL FOR APPELLEE:

Dennis Watkins, Esq.
Trumbull County Prosecutor
Administration Building
160 High Street NW #4
Warren, OH 44481
(330) 675-2426

FILED

JUN 1 3 2014

CLERK OF COURT
SUPREME COURT OF OHIO

COUNSEL FOR APPELLEE

RECEIVED

JUN 1 3 2014

CLERK OF COURT
SUPREME COURT OF OHIO

COUNSEL FOR APPELLANT:

David L. Doughten, Esq. #0002847
4403 St. Clair Avenue
Cleveland, Ohio  44103
(216) 361-1112

Robert A. Dixon, Esq. #0022466
4403 St. Clair Avenue
Cleveland, Ohio 44113
(216) 432-1992

COUNSEL FOR APPELLANT

000001

**Proof of Service**

A copy of the foregoing Petitioner's Motion was served upon Dennis Watkins, Trumbull County Prosecutor and/or LuWayne Annos, Esq. Assistant Trumbull County Prosecutor, Administration Building, 160 High Street, Warren, Ohio 44481, by Regular U. S. mail on this _16_ day of June, 2014.

David L. Doughten
Counsel for Appellant

000002

**<u>Notice of Appeal of Appellant Donna Roberts</u>**

  Now comes the appellant, Donna Roberts, and hereby gives Notice of Appeal to the Supreme Court of Ohio from the Cuyahoga Cuyahoga County Common Pleas Court, R.C. §2929.03(F) opinion journalized on April 30. 2014. A nunc pro tunc entry of this sentencing opinion was filed on June 10, 2014. The appellant is appealing the denial of her sentence of death for Aggravated Murder in violation of R.C. §2903.01 with capital specifications.

  This case raises a substantial constitutional question and is one of public or great general interest. It also involves the affirmance of the death penalty. This is an appeal of right pursuant to S. Ct R. II , section 1(A).

<div align="right">

Respectfully submitted,

David L. Doughten
Counsel for Appellant


Robert A. Dixon
Counsel for Appellant

</div>

000003

OF-11-'14 07:52 FROM- Trumbull Cty Clerk    330-675-2563        T-793  P0001/0001 F-969

IN THE COURT OF COMMON PLEAS
TRUMBULL COUNTY, OHIO
CRIMINAL DIVISION

STATE OF OHIO,              :    CASE NO.    2001 CR 0793

    Plaintiff,              :

  -vs-                        :    JUDGE RONALD J. RICE

DONNA ROBERTS,             :    ORDER

    Defendant.             :

This case came on for consideration through motion by the defendant Donna Roberts for the appointment of substitute counsel for her direct appeal to the Supreme Court of Ohio. The Court, being fully advised, finds the motion well-taken.

It is therefore ORDERED that David L. Doughten, 4403 St. Clair Avenue, Cleveland, OH 44103 be appointed as lead counsel for Ms. Roberts in her appeal to the Supreme Court of Ohio. Robert L. Dixon, Ohio Registration #0022466, 4403 St. Clair Avenue, Cleveland, Ohio, 44103 is appointed as co-counsel.

JUDGE RONALD J. RICE

FILED
COURT OF COMMON PLEAS
MAY 1 2 2014
TRUMBULL COUNTY, OH
KAREN INFANTE ALLEN, CLERK

5-9-14
Date

2001 CR
00793
00048209998
0

000004

## CAPITAL CASE PRAECIPE

## IN THE SUPREME COURT OF OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | DATE OF OFFENSE: 12/11/2001 |
| Appellee, | . | TRIAL COURT CASE NO: <u>2001 CR 793</u> |
| vs. | · | DATE OF FINAL JUDGMENT IN TRIAL COURT: 4/07/2014 |
| DONNA ROBERTS, | : | TRIAL COURT JUDGE: <u>Ronald J. Rice</u> |
| Appellant. | : | DATE OF RULING ON TIMELY MOTION FOR NEW TRIAL IN TRIAL COURT: N/A |

**TO THE COURT REPORTER:**

Immediately prepare a transcript of all proceedings, including but not limited to all pretrial hearings, motions hearings, in chambers conferences, trial phase (including voir dire) proceedings, penalty phase proceedings and sentencing proceedings, in conformance with S. Ct. Par. R XIX, §3, and deliver to the clerk of the court of common pleas.

_____
DAVID L. DOUGHTEN (#0002847)
4403 St. Clair Avenue
Cleveland, OH 44103
(216) 361-1112

I further certify that a true copy of the foregoing Capital Case Praecipe was served upon all other parties in compliance with S. Ct. R. XIX, Section 1(B) on this ___*10*___ day of June, 2014.

_____
DAVID L. DOUGHTEN

## 000005

**IN THE COURT OF COMMON PLEAS**
**TRUMBULL COUNTY, OHIO**

STATE OF OHIO,                          )    CASE NO. 2001 CR 793
                                        )
              PLAINTIFF,                )    JUDGE RONALD J. RICE
                                        )
-VS-                                    )    **DEATH PENALTY**
                                        )
DONNA MARIE ROBERTS,                    )    SENTENCE TO THE OHIO
                                        )    REFORMATORY FOR WOMEN
              DEFENDANT.                )
                                        )    ENTRY ON SENTENCE

The Defendant, Donna Marie Roberts, herein having been indicted by the

September Eighth, 2001, Term of the Grand Jury of Trumbull County, Ohio, for Count

One: Aggravated Murder in violation of R.C. 2903.01(A) and 2941.14(C) of Robert S.

Fingerhut, with two (2) separate Specifications of Aggravating Circumstances to wit:

Specification No. 1: Aggravated Burglary in violation of R.C. 2929.04(A)(7) and

Specification No. 2: Aggravated Robbery in violation of R.C. 2929.04(A)(7); Count

Two: Aggravated Murder in violation of R.C. 2903.01(B) and 2941.14(C) of Robert S.

Fingerhut, with two (2) separate Specifications of Aggravating Circumstances, to wit:

Specification No. 1: Aggravated Burglary in violation of R.C. 2929.04(A)(7), and

Specification No. 2: Aggravated Robbery in violation of R.C. 2929.04(A)(7); Count

Three: Aggravated Burglary (F1) With Firearm Specification in violation of R.C.

2911.11.(A)(1)(2) and 2941.145; and Count Four: Aggravated Robbery (F1) With

Firearm Specification in violation of R.C. 2911.01(A)(1)(3) and 2941.145, and on the

8th day of April, 2003, having been brought into Court for trial before a petit jury and

being represented by counsel, Attorney J. Gerald Ingram and Attorney John B.

Ingram, and the jury having been empaneled and after due deliberation on May 28,

Page 1



2001 CR
00793
00064237606
OSEN

000006

2003, was found guilty of Count One: Complicity to Commit Aggravated Murder in violation of R.C. 2923.03(A)(2), 2903.01(A) and 2941.14(C) of Robert S. Fingerhut, with two (2) separate Specifications of Aggravating Circumstances, to wit: Specification No. 1: Aggravated Burglary in violation of R.C. 2929.04(A)(7), and Specification No. 2: Aggravated Robbery in violation of R.C. 2929.04(A)(7); Count Two: Complicity to Commit Aggravated Murder in violation of R.C 2923.03(A)(2), 2903.01(B) and 2941.14(C) of Robert S. Fingerhut, with two (2) separate Specifications of Aggravating Circumstances, to wit: Specification No. 1: Aggravated Burglary in violation of R.C. 2929.04(A)(7), and Specification No. 2: Aggravated Robbery in violation of R.C 2929.04(A)(7); Count Three: Complicity to Commit Aggravated Burglary (F1) With Firearm Specification in violation of R.C. 2923.03(A)(2), 2911.11.(A)(1)(2) and 2941.145; and Count Four: Complicity to Commit Aggravated Robbery (F1) With Firearm Specification in violation of R.C. 2923.03(A)(2), 2911.01(A)(1)(3) and 2941.145. Thereafter, Count Two was removed from the Jury pursuant to a Motion to Dismiss by the State.

On June 4, 2003, the Defendant having been brought into Court to give evidence in mitigation on Count One of the indictment, and after arguments of counsel and instructions of law, and after due deliberation, it was the finding and recommendation of the Jury on June 4, 2003, that the sentence of death be imposed on the Defendant.

On April 30, 2014, pursuant to a remand from the Supreme Court of Ohio, the Defendant's sentencing hearing was held pursuant to R.C. 2929.19. Attorney David L. Doughten and Attorney Robert A. Dixon were present as counsel for the Defendant

Page 2

**000007**

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX - PAGE 2449

and Assistant County Prosecutor Christopher Becker was present as counsel for the State. The Defendant was also present in Court and was previously afforded all rights pursuant to Crim.R. 32. The Court has considered the record and oral statements, as well as the principles and purposes of sentencing under R.C. 2929.11, and has balanced the seriousness and recidivism factors of R.C. 2929.12.

Pursuant to law, the Court this day, April 30, 2014, having determined in a separate opinion of specific findings that the aggravating circumstances as to the count of Aggravated Murder outweigh the mitigating factors by proof beyond a reasonable doubt, then made inquiry as to whether the Defendant had anything to say why judgment should not be pronounced against her, and the Defendant in answer showed no good cause or sufficient reason why sentence should not be pronounced.

The Court has considered the factors under R.C. 2929.14, and makes the following findings: (1) the shortest prison term will demean the seriousness of the Defendant's conduct; (2) the longest prison term is appropriate because the Defendant committed the worst form of the offense; (3) multiple prison terms are necessary to protect the public from future crime and to punish the offender; (4) consecutive prison sentences are not disproportionate to the seriousness of the Defendant's conduct and to the danger the offender poses to the public; and (5) the harm caused by multiple offenses was so great that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the Defendant's conduct.

It is therefore ORDERED, ADJUDGED, and DECREED that the Defendant, DONNA MARIE ROBERTS:

Page 3

**000008**

1. Shall be sentenced to death on Count One;

2. Shall serve an imprisonment term of ten (10) years on Count Three; plus a mandatory term of three (3) years on the Firearm Specification to be served prior to and consecutive to the sentence imposed in Count Three;

3. Shall serve an imprisonment term of ten (10) years on Count Four, plus a mandatory term of three (3) years on the Firearm Specification to be served prior to and consecutive to the sentence imposed in Count Four, sentence in Count Four to be served consecutively to the sentence imposed on Count Three;

4. The Firearm Specifications in Count Three and Count Four shall merge as one sentence in Count Three as a matter of law;

5. The Defendant shall submit to DNA testing;

6. The Defendant is Ordered to pay the cost of prosecution taxed in the amount of $_____ for which execution is awarded.

The Court has further notified the Defendant that post-release control is mandatory in this case for five (5) years, as well as the consequences for violating conditions of post-release control imposed by the Parole Board under R.C. 2967.28. The Defendant is ordered to serve as part of this sentence any term of post-release control imposed by the Parole Board, and any prison term for violation of that post-release control.

The Court further disapproves of the Defendant's placement in a program of shock incarceration pursuant to R.C. 5120.031 or for placement in an intensive prison program pursuant to R.C. 5120.032.

Page 4

**000009**

IT IS SO ORDERED.

Dated: April 30, 2014

_____
JUDGE RONALD J. RICE

THE CLERK OF COURTS IS HEREBY ORDERED TO SERVE COPIES OF THIS ENTRY TO ALL COUNSEL OF RECORD.

_____
JUDGE RONALD J. RICE

You are hereby notified that you have been convicted of a felony of violence and pursuant to Section 2923.13 of the Ohio Revised Code, you are prohibited from acquiring, having, carrying or using any firearm or dangerous ordnance.

4/30/14

Copies To:
PROS
J. INGRAM
A. Millette
J. Wilhelm
D. MARBURGER
S. Bolten
D. DOUGHTEN
J. JUHASZ



Page 5

000010

**IN THE COURT OF COMMON PLEAS**
**GENERAL DIVISION**
**TRUMBULL COUNTY, OHIO**

| | | |
|---|---|---|
| State of Ohio | ) | Case No. 2001CR00793 |
| | ) | |
| Plaintiff, | ) | Judge Ronald J. Rice |
| | ) | |
| vs. | ) | **OPINION OF THE COURT** |
| | ) | |
| Donna Marie Roberts | ) | **FINDINGS OF FACT AND** |
| | ) | **CONCLUSIONS OF LAW** |
| Defendant. | ) | **REGARDING IMPOSITION** |
| | ) | **OF DEATH PENALTY** |

This matter was remanded by the Supreme Court of Ohio with the

following instruction: "On remand, the trial court must consider all the

mitigating evidence reflected in the record, including Roberts's allocution,

weigh the aggravating circumstances against the mitigating factors, and

file a sentencing opinion that reflects that it has complied with these

instructions. In doing so, the trial court must make an independent

determination of whether a death sentence is appropriate and may not

give deference to the sentences previously entered." *State v. Roberts*,

2013-Ohio-4580, ¶96.

### FACTUAL AND RECORDS REVIEW

Pursuant to the remand of this matter from the Supreme Court of

Ohio, the Court has carefully read, reviewed, examined and/or inspected

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2453

the entire court record; all of the transcripts from pre-trial & post-trial;

exhibits; pleadings; including, but not limited to the following items:

1. The indictment of the Trumbull County Grand Jury;

2. All of the docket entries filed on this matter;

3. All of the notes entered by the staff as to scheduling;

4. The prior court scheduling of 29 events, including status hearings, hearings, pre-trials, motions to suppress, jury trial, sentencing and re-sentencing hearings;

5. All of the pleadings as filed by the State of Ohio and counsel for the Defendant;

6. The transcript of the Motion To Suppress held on February 3, 2002;

7. Transcripts of Proceedings Volumes 1 through 23 of individual and group voir dire questioning and juror selection;

8. All of the exhibits admitted at trial as listed on a document titled List of Trial Exhibits And Mitigation Hearing Exhibits;

9. The entire trial and sentencing record;

10. The entire record following the remand from *Roberts I.*

In accordance with *Roberts II*, the Court did not permit Roberts to

update her mitigation at the hearing following the recent remand.

"Establishing a right to update mitigation could result in arbitrary

distinctions between similarly situated capital defendants." Id. at ¶37.

Roberts expressly and validly waived her right to present mitigation

evidence during the original sentencing phase. Id. at ¶49.

000012

The Court notes this matter is now before a different judge as Judge John M. Stuard has since retired from the bench and shortly thereafter passed away. As instructed, the Court has not given any deference to the prior decisions of Judge Stuard in this matter. However, the Court notes the acknowledgment as recognized in *Roberts II* that "[t]he trial court then stated that it had considered the record and the oral statements. ***  Beyond this, however, the opinion does not discuss Roberts's allocution." The Court notes with confidence and respect for Judge Stuard, he would not have acknowledged consideration of the oral statements (including the allocution) had he not, in fact, considered the same. Such was his nature of fairness. Nevertheless, as previously indicated, the Court has given no deference to the prior decisions of Judge Stuard and has complied with the remand instructions as directed.

## ALLOCUTION

Despite the fact that Roberts expressly waived mitigation, Roberts took advantage of her opportunity for allocution at the original sentencing and again following the *Roberts I* remand. Roberts explained in her original allocution she had no intention of offering mitigating factors for consideration. Rather, she advised she chose allocution because it was against her religion to take an oath.

Page 3

**000013**

Roberts's allocution centered on two salient points. First, she pointed out inconsistencies in the evidence and testimony as she perceived them. Second, she drew attention to the differences between her trial and the trial of Nathaniel Jackson claiming racial inequities.

Roberts accurately characterized in her allocution that the jury had been exposed to "five percent" of her life. That "five percent" included her relationship with Jackson. As she stated, "the other 95 percent of my life was dedicated to my husband, my son, my family and business, and doing charity for unfortunate to share the good fortune that God bestowed upon me and my loved ones." The Court finds this is the most truthful and yet, unfortunate, statement in the Defendant's entire allocution. Five percent comprised of bad decisions has such a profound effect on a lifetime.

Roberts brought attention to the fact that the personnel in the courtroom were white. She likewise opined on inaccurate portrayals in the newspaper regarding the facts of this case.

Roberts explained she did not consider the jury to be a "jury of her peers." She provided some details regarding her life. She worked for a plastic surgeon for 25 years. She lived in Miami for 27 years. She traveled the world. Roberts expressed concern that some of the jurors indicated they didn't read any newspapers or watch the news. She also expressed concern regarding the young age of a few of the jurors, citing

Page 4

**000014**

their lack of life experiences as a hindrance to their ability to judge the case.

Next, Roberts recounted certain aspects regarding the prosecution against Nathaniel Jackson. Roberts pointed out her perceived inconsistencies in the Jackson trial compared to the prosecution by the State in her case. She also alleged racial bias on behalf of the prosecution.

Roberts relayed her opinion on Howland Chief of Police Paul Monroe and his role in this matter prior to holding that position. She claimed Monroe intentionally informed the jury she was Jewish in an effort to sway the jurors against her even more. Roberts used her opportunity at allocution to chastise the jurors for becoming too involved in the operatic drama of the prison letters and communications than the truth.

Roberts reviewed the testimony regarding the life insurance policies. She claimed she had no knowledge the victim had increased the value of his life insurance policies. She also reviewed her financial history and business investments. Roberts pointed out she was earning $200,000 annually and the insurance policy of $250,000 was not enough to seduce her to murder Mr. Fingerhut.

Roberts added personal details about her life with the victim by describing their daily rituals with their beloved pets. She discussed the

Page 5

**000015**

victim's family life and relationships with his sons from a previous relationship. She insisted she did not want any money from Mr. Fingerhut and relayed the fact that she signed over any life insurance policies to his children.

Next, Roberts spoke regarding Santiago Mason. She explained that Mason sued her for framing him. She protested this characterization and explained why that was not true. She described the victim's sports memorabilia collection. She also attacked Mason's character.

Roberts disputed certain elements of the State's case. Namely, she challenged the eye witness from her neighborhood who saw her driving in the area. She questioned the time frame against the witness's statement and her own activities during the relevant period of time on the night of the murder.

She also challenged the testimony of Frank Reynolds. She pointed out inconsistencies in Reynolds' testimony with the facts of her life. She contradicted the testimony of Reynolds regarding her argument over money with the victim. She was incensed that Reynolds would advise the jury she was upset with Mr. Fingerhut because he would not give her money. She was adamant she did not need any money from Mr. Fingerhut.

000016

Roberts also challenged the physical evidence of the prosecution. She discussed the bloody washcloth found at the Days Inn. She claimed the washcloth and towel were purposefully placed there by the police. She also attacked the validity of other evidence recovered from the hotel and surrounding area.

Roberts questioned the introduction of certain sexual information about her by the State as inappropriate. She claimed it was only meant to influence the jury into forming a low opinion of her. She also challenged the search of the residence as improper.

In addition, Roberts claimed the marijuana found at the residence did not belong to her. She maintained it was also fabricated by the police. However, she admitted to smoking marijuana on a regular basis.

Roberts discussed the letters between her and Jackson as well as the taped telephone conversations while Jackson was incarcerated. She alleged the State manipulated those conversations to fit their case by not admitting the entire transcript of the conversations, only limited portions.

With gratitude, she acknowledged her attorneys. She described when and where she acquired the weapons found at the home. She explained the events when Mason allegedly stole her gun. Roberts also reviewed the coroner's report.

Page 7

**000017**

Roberts described her reaction to finding the victim on the night in question. She then relayed her version of the Jackson case running parallel to her prosecution. She challenged the veracity of the location of the murder weapon in the reports. According to the Defendant, the police moved the gun.

Finally, Roberts closed her allocution by advising the jury they are required to recommend a death sentence since she presented no mitigating evidence. She pleaded for equal treatment and a sentence equal to that of Jackson's. However, Roberts reiterated this was not an admission of guilt. Rather, she claimed her plea was one of social justice and equality. She pledged her love for the victim and ended her allocution with the instruction for the jury to "do what is right."

At the resentencing hearing following *Roberts I*, Roberts again offered allocution to the Court. On October 22, 2007, Roberts indicated the record had been "*** a big misrepresentation about me, my character, my personality, and my life ***." Roberts proceeded to provide additional information relative to her personal history.

Roberts explained she grew up on a farm in Austintown, Ohio. She attended a Roman Catholic elementary school. She recounted that she was sexually abused by an older cousin when she was very young. She described her household as "*** very very abusive ***."

Page 8

000018

Roberts recalled her father abused her mother physically and verbally. Roberts stated she "*** spent a lot of time under my bed, especially when guns came out." When Roberts was taken to a doctor, she described being taken into a room alone with a male doctor and afterward he advised her mother she was "*** a bad girl." According to Roberts, she was always sad and "*** felt empty because nobody had ever paid attention to me or hugged me or anything ***."

Despite this sadness, Roberts achieved good grades and rewards in school. She was on the honor roll and dean's list later in college. She received accolades as a writer. She married her high-school sweetheart and moved to Miami, Florida. She described having her son and acknowledged his many accomplishments.

Roberts was involved in a car accident in 1963. She "*** fell asleep and the car went through big giant trees, hitting something ***." She recalled she was "filled with glass" from the debris. Roberts described herself as "*** spacey for awhile" after the accident.

In 1983, Roberts was again involved in a car accident. She flew through the windshield and experienced numbness in her extremities after the accident. Roberts was treated by a neurosurgeon for some time after this.

Page 9

000019

In 1999, Roberts again fell asleep behind the wheel and was involved in a car accident. Roberts recalled months after this event where she has no memory. Roberts stated, "*** Robert was calling me spacey and goofy, and he was really worried about me, and he told me I should get some kind of help, but I didn't want any help." Roberts acknowledged she ignored the depression.

Roberts recounted a suicide attempt wherein she started her car in the garage with her dog, Blossom. She stated Blossom alerted her by pawing at her arm and she called for help. Roberts was hospitalized after this event in a psychiatric ward. Following this hospitalization, Roberts sought SSI for disability.

Roberts explained she was prescribed three or four medications at that time. One medication was to "stop the voices." Roberts experienced some hallucinations while incarcerated. She described seeing "giant anthills" on her floor. Roberts also described falling and hitting her head on multiple occasions after this event. Roberts described periods of time when she could not identify the day of the week.

Roberts explained she walked away from the restaurant she owned one day because she became overwhelmed. She left the refrigerator and freezers full and never returned.

Page 10

000020

Roberts described her life working with a plastic surgeon. She described helping people with reconstructive surgery. Roberts remembered how she used to help people pay their checks at the restaurant when they didn't have enough money.

Roberts converted to Judaism in 1980. She explained her involvement in a Jewish burial society and the customs therewith. She proudly expressed her involvement in a campaign to rescue a Jewish man from persecution in Ethiopia. She also volunteered in Israel with the plastic surgeons performing skin grafts.

In contrast, Roberts explained the inaccuracies in the record describing Mr. Fingerhut as the entrepreneur. Roberts claimed she was the businesswoman. They divorced to protect her assets; not his. She took out $75,000 from her mutual fund for a down payment on her dream house. She described herself as the breadwinner. Mr. Fingerhut only worked occasionally, according to Roberts. Roberts espoused her talents in trading on the stock market and investing in real estate.

Roberts was fixated on ensuring the Court was aware of her affluence. She was proud of the fact that she had money and wore expensive clothes. She again chastised Frank Reynolds for his testimony that she and Mr. Fingerhut had an argument because he wouldn't give her $3,000. Roberts stated, "The accounts were mine. The house was mine.

Page 11

000021

The only way we had three cars is on my credit." She spoke regarding her gifts of money to her son and her sister.

Roberts closed her allocution with the following words: "I never intended for anything like that to happen, and I couldn't believe it, and I still can't believe it. We loved each other and we had a good life."

## AGGRAVATING CIRCUMSTANCES

R.C. 2929.04(A) sets forth the applicable aggravating circumstance enabling a consideration of the death penalty to be specified in the indictment and proven beyond a reasonable doubt in this case as "*** (7) [t]he offense was committed while the offender was committing, attempting to commit, or fleeing immediately after committing or attempting to commit kidnapping, rape, aggravated arson, aggravated robbery, or aggravated burglary, and either the offender was the principal offender in the commission of the aggravated murder or, if not the principal offender, committed the aggravated murder with prior calculation and design."

On May 28, 2003, Roberts was found guilty following a trial before a petit jury and after due deliberation by said jury of the following: Count One: Complicity to Commit Aggravated Murder in violation of R.C. 2923.03(A)(2), 2903.01(A) and 2941.14(C) of Robert S. Fingerhut, with two separate Specifications of Aggravating Circumstances; to wit,

Page 12

000022

Specification Number One: Aggravated Burglary in violation of R.C.
2929.04(A)(7) and Specification Number Two: Aggravated Robbery in
violation of R.C. 2929.04(A)(7); Count Two: Complicity to Commit
Aggravated Murder in violation of R.C. 2923.03(A)(2), 2903.01(B) and
2941.14(C) of Robert S. Fingerhut, with two separate Specifications of
Aggravating Circumstances, to wit, Specification Number One:
Aggravated Burglary in violation of R.C.2929.04(A)(7) and Specification
Number Two: Aggravated Robbery in violation of R.C. 2929.04(A)(7);
Count Three: Complicity to Commit Aggravated Burglary (F1) with Firearm
Specification in violation of R.C. 2923.03(A)(2), 2911.11(A)(1)(2) and
2941.145; and Count Four: Complicity to Commit Aggravated Robbery
(F1) with Firearm Specification in violation of R.C. 2923.03(A)(2),
2911.01(A)(1)(3) and 2941.145. Count Two was removed from the Jury
pursuant to a Motion to Dismiss by the State.

The Court finds the aggravating circumstances were set forth in the
indictment of Roberts. The Court further finds these elements of the
aggravating circumstances were proven beyond a reasonable doubt in the
trial of this matter. The Court finds Roberts acted with prior calculation and
design in the aggravated murder of Fingerhut.

The Court finds Roberts acted with prior calculation and design in
the aggravated murder of Fingerhut while committing or attempting to

000023

commit aggravated burglary. It was proved beyond a reasonable doubt at trial that Roberts provided access to Jackson to trespass in Fingerhut's residence, 254 Fonderlac Drive in Howland Township, Trumbull County, Ohio with the specific purpose of killing Fingerhut with prior calculation and design. It was further proven beyond a reasonable doubt that the tools used to carry out this plot were provided by Roberts: the gloves, ski mask, firearm as well as the access to the residence. Countless recorded telephone calls and written letters outlined this plan to murder Mr. Fingerhut in this manner leaving no reasonable doubt whatsoever.

The Court finds Roberts acted with prior calculation and design in the aggravated murder of Fingerhut while committing or attempting to commit aggravated robbery. It was proven beyond a reasonable doubt at trial that Roberts acted with prior calculation and design. Roberts intended for Jackson to steal Mr. Fingerhut's vehicle, originally to use the car as a means for kidnapping Fingerhut away from the residence to kill him off site. The police recovered Mr. Fingerhut's vehicle a few blocks from where Jackson was arrested. The keys were still in the ignition.

The Court finds beyond a reasonable doubt Roberts acted with complicity to commit aggravated murder while committing or attempting to commit or in fleeing immediately after committing or attempting to commit aggravated burglary. The Court finds beyond a reasonable doubt Roberts

Page 14

# 000024

acted with complicity to commit aggravated murder while committing or attempting to commit or in fleeing immediately after committing or attempting to commit aggravated robbery. The Court further finds beyond a reasonable doubt Roberts acted with complicity to commit aggravated murder with prior calculation and design.

Having found the aggravating circumstances proven beyond a reasonable doubt, the Court now must "*** weigh against the aggravating circumstances proved beyond a reasonable doubt, the nature and circumstances of the offense, the history, character, and background of the offender ***" along with the additional statutory factors set forth in R.C. 2929.04(B) as mitigating factors.

### MITIGATING FACTORS

Pursuant to R.C. 2929.03(F), the Court makes the following findings regarding the factors listed in R.C. 2929.04(B):

1. "*Whether the victim of the offense induced or facilitated it; ***"*

The Court finds Mr. Fingerhut, the victim in this matter, did nothing to facilitate or induce his own death. The Court gives no weight to the allegations made by Roberts in her letters to Jackson regarding the physical abuse she suffered at the hand of Mr. Fingerhut. Even if the Court were to accept those claims as true, there is no evidence of any imminent threat to Roberts. Likewise, there is no evidence Roberts was

Page 15

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2467

prevented from evading the abusive situation by alternate means such as leaving the residence or filing a complaint with the police department.

2. "*Whether it is unlikely that the offense would have been committed, but for the fact that the offender was under duress, coercion, or strong provocation; \*\*\**"

The Court finds there is no evidence before the Court that Roberts was under any duress, coercion or strong provocation to commit the crime.

3. "*Whether, at the time of committing the offense, the offender, because of a mental disease or defect, lacked substantial capacity to appreciate the criminality of the offender's conduct or to conform the offender's conduct to the requirements of the law: \*\*\**"

The Court finds there is no evidence to suggest Roberts lacked substantial capacity to appreciate the criminality of her conduct or to conform her conduct to the rules of law. Although Roberts testified in her allocution regarding the status of her mental health, the Court does not find that statement contained any evidence to suggest or support Roberts did not understand the criminality of her conduct. The Court finds the incidents described by Roberts in her allocution were either isolated events following physical traumas associated with her motor vehicle

Page 16

000026

accidents or they occurred after the death of Mr. Fingerhut. There is no evidence to suggest Roberts lacked mental capacity at the time of the events in question.

4. "*The youth of the offender; ***"*

The Court finds the age of Roberts is not a factor for consideration.

5. "*The offender's lack of a significant history of prior criminal convictions and delinquency adjudications; ***"*

The Court finds Roberts does not have a significant history of prior criminal convictions. This factor does weigh in her favor.

6. "*If the offender was a participant in the offense but not the principal offender, the degree of the offender's participation in the offense and the degree of the offender's participation in the acts that led to the death of the victim; ***"*

The Court finds although Roberts was not the "triggerman," the evidence clearly demonstrated she orchestrated the entire plot. The record reveals the intentional acts of Roberts in planning the aggravated murder of Mr. Fingerhut in exchange for his life insurance proceeds. Roberts induced Jackson to be her accomplice with promises of payment in the form of a Cadillac or a Lincoln, a wealthy lifestyle, vacations and a home in a desirable neighborhood. Roberts premeditated for months. She

000027

checked the balance of the life insurance proceeds. She arranged for Jackson's transportation from prison to a hotel room where she fulfilled his sexual needs, fed him food for sustenance, and provided the necessary tools to carry out the murder. The Court finds that Roberts was the primary mastermind behind Mr. Fingerhut's murder. But for her premeditated calculations, Mr. Fingerhut would not have been murdered by Jackson on that day.

7. *"Any other factors that are relevant to the issue of whether the offender should be sentenced to death."*

The Court finds there were several mitigating elements presented in Roberts's allocution. Certain elements of Roberts's allocution (at the original sentencing and again upon the earlier remand) are worthy of some discussion.

First, Roberts allegedly grew up in an abusive household. She claims she was witness to physical confrontations between her mother and her father to the point where she would hide under the bed "when the guns came out." This history, coupled with the alleged physical abuse between Roberts and Fingerhut does weigh slightly in favor of Roberts. Perhaps Roberts was still shouldering those childhood burdens into her adult life.

Page 18

000028

However, there is absolutely no evidence before the Court to support the veracity of the physical abuse allegations made by Roberts against Fingerhut. Therefore, the Court is left to ponder whether those allegations were part of her scheme to induce Jackson to act as her accomplice. Roberts failed to alert the Court to any physical violence between her and Fingerhut during her allocution. Instead, Roberts professed her love for the man whom she contracted to have killed. Therefore, the Court finds these facts weigh only slightly in favor of Roberts.

Likewise, the Court gives little weight to Roberts's allocution claims regarding the rape by her cousin when she was very young. The Court finds this is entitled to little weight as there is no direct connection to the underlying crime. Even if Roberts were carrying the psychological scars of this trauma, there is little to no evidence to suggest any connection to the underlying crime.

The Court finds the charitable history of Roberts is entitled to some mitigation weight in her favor. Apparently, Roberts was quite generous with both her time and funds. She assisted plastic surgeons performing reconstructive surgery in Israel. She helped rescue a man from persecution in Ethiopia. On a more day-to-day basis, Roberts would help others in her family as well as strangers who were struggling financially.

Page 19

000029

However, the Court finds this generosity must also be reviewed in totality with Roberts's self-promotion. Roberts frequently referred to her wealth in her allocution. She wanted the Court to know she was the breadwinner, not Mr. Fingerhut. She berated the man who testified she was angry with Fingerhut when he refused to give her $3,000. It seems these mischaracterizations of her social status were more upsetting to Roberts than the guilty verdict against her for complicity to commit murder. The Court finds these two polar self-portraits are not compatible with one another. Therefore, the Court affords no weight to the self-reported acts of generosity and charity of Roberts as mitigation.

The Court finds the reports of mental instability and physical traumas following several car accidents could be mitigating factors in Roberts's favor. Roberts was involved in two motor vehicle accidents which occurred after Roberts fell asleep behind the wheel. The mere fact that one has not only a singular incident of this magnitude, but two, leads the Court to question whether there are other biological or physiological factors at play. In addition, the mental status post-accidents and the lack of memory for an extended period of time is likewise a mitigating factor that weighs in favor of Roberts.

However, the Court finds the self-promotion by Roberts as to her financial prowess, educational accolades and charitable works is

Page 20

000030

contradictory to her assertion that she has suffered mental deficiencies as a result of the motor vehicle accidents described above. The two are juxtaposed; either Roberts is a powerful entrepreneur capable of earning a magnitude of wealth and respect or she is one suffering from mental trauma. The Court gives little to no weight to any evidence of the latter.  In addition, the Court finds Roberts was fairly well-spoken in the delivery of her allocution. Plus, Roberts expressly made a valid waiver of her right to present mitigation evidence. There was no mental deficiency at play in that decision.

There is no question Roberts suffered some physical and mental traumas as a result of these accidents. Roberts even attempted to commit suicide in her garage. However, the Court finds these incidents are isolated and occurred in a time frame so far removed from the murder of Mr. Fingerhut that their relevance for mitigation is significantly decreased. In addition, pursuant to R.C. 2929.04(B), the Court must also consider and weigh "*** the nature and circumstances of the offense, the history, character, and background of the offender ***." The Court finds the history, character and background of Roberts have been sufficiently addressed in the discussion specified in R.C. 2929.04(B)(1-7) above.

Roberts planned and plotted for the murder of Fingerhut over a period of at least three months. She conspired with Jackson, her

000031

imprisoned lover, to murder Fingerhut for his life insurance proceeds. The murder plan was well documented through telephone calls recorded from Jackson's residence; the Lorain Correctional Institute. In addition, detailed letters were exchanged between the loving couple outlining their plans. These plans included the acquisition of supplies, the procurement of a hotel room, and the promise of a new vehicle for Jackson – all provided by Roberts. Ultimately, Roberts provided access to the residence in order for Jackson to carry out the murder as planned.

Despite these intricate details, Roberts "forgot" to include Jackson as one of her named lovers to the police during interviews. In addition, Roberts attempted to thwart the investigation into the Fingerhut murder by implicating other individuals; not Jackson. In addition, Roberts's feigned emotional outbursts over Fingerhut's death do not correlate to the insidious behavior relative to the same.

Therefore, the Court has granted little to no weight to any of the mitigating factors outlined by Roberts in her allocution. In addition, the Court finds Roberts's request for "equal treatment" to Jackson is inconsistent with the primary body of her allocution and has not given any weight to that request either.

The presence of mitigating factors does not preclude the imposition of a sentence of death. Rather, those mitigating factors are to then be

Page 22

000032

weighed against the aggravating circumstances of the crime. In conducting this comparison, the Court overwhelmingly finds the aggravating circumstances outweigh the mitigating factors.

## CONCLUSIONS OF LAW

The mitigating factors given little weight by this Court do not even approach an imbalance of the aggravating circumstances present in this matter. Roberts' traumatic childhood, her allegations of physical abuse at the hands of Fingerhut, the physical injuries sustained in multiple motor vehicle accidents, the mental disability, the lack of a prior criminal record and Roberts' charitable tendencies do not even draw the Court's attention away from the aggravating circumstances.

The Court has made a careful and independent review of the record, including Roberts's first and second allocutions. Upon this review, the Court finds the aggravating circumstances outweigh the mitigating factors by proof beyond a reasonable doubt.

Therefore, the Court hereby finds the sentence of death is an appropriate penalty for the Defendant Donna Marie Roberts in this matter.

Dated: April 30, 2014

Judge Ronald J. Rice

Page 23

000033

IN THE COURT OF COMMON PLEAS
GENERAL DIVISION
TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| State of Ohio | ) | Case No. 2001CR00793 |
| | ) | |
| Plaintiff, | ) | Judge Ronald J. Rice |
| | ) | |
| vs. | ) | **OPINION OF THE COURT** |
| | ) | |
| | ) | NUNC PRO TUNC |
| Donna Marie Roberts | ) | **FINDINGS OF FACT AND** |
| | ) | **CONCLUSIONS OF LAW** |
| Defendant. | ) | **REGARDING IMPOSITION** |
| | ) | **OF DEATH PENALTY** |

This Nunc Pro Tunc Opinion is rendered at the requests of the State and the Defendant. Therefore, the Court renders this Nunc Pro Tunc Opinion which shall reflect certain editing inconsistencies in regard to the terms "unsworn statement" and "allocution" in the original Opinion. The substance of the opinion remains unchanged and pursuant to Defendant's request, the Court did not set this matter for a hearing to correct the clerical errors. Rather, the Court rendered this Nunc Pro Tunc Opinion as follows:

This matter was remanded by the Supreme Court of Ohio with the following instruction: "On remand, the trial court must consider all the mitigating evidence reflected in the record, including Roberts's allocution, weigh the aggravating circumstances against the mitigating factors, and file a sentencing opinion that reflects that it has complied with these

Page 1

000034

instructions. In doing so, the trial court must make an independent determination of whether a death sentence is appropriate and may not give deference to the sentences previously entered." *State v. Roberts*, 2013-Ohio-4580, ¶96.

## FACTUAL AND RECORDS REVIEW

Pursuant to the remand of this matter from the Supreme Court of Ohio, the Court has carefully read, reviewed, examined and/or inspected the entire court record; all of the transcripts from pre-trial & post-trial; exhibits; pleadings; including, but not limited to the following items:

1. The indictment of the Trumbull County Grand Jury;

2. All of the docket entries filed on this matter;

3. All of the notes entered by the staff as to scheduling;

4. The prior court scheduling of 29 events, including status hearings, hearings, pre-trials, motions to suppress, jury trial, sentencing and re-sentencing hearings;

5. All of the pleadings as filed by the State of Ohio and counsel for the Defendant;

6. The transcript of the Motion To Suppress held on February 3, 2002;

7. Transcripts of Proceedings Volumes 1 through 23 of individual and group voir dire questioning and juror selection;

8. All of the exhibits admitted at trial as listed and attached to this entry on a document titled List of Trial Exhibits And Mitigation Hearing Exhibits;

9. The entire trial and sentencing record;

000035

Trumbull County 33067530076

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2477

10. The entire record following the remand from *Roberts I*.

In accordance with *Roberts II*, the Court did not permit Roberts to update her mitigation at the hearing following the recent remand. "Establishing a right to update mitigation could result in arbitrary distinctions between similarly situated capital defendants." Id. at ¶37. Roberts expressly and validly waived her right to present mitigation evidence during the original sentencing phase. Id. at ¶49.

The Court notes this matter is now before a different judge as Judge John M. Stuard has since retired from the bench and shortly thereafter passed away. As instructed, the Court has not given any deference to the prior decisions of Judge Stuard in this matter. However, the Court notes the acknowledgment as recognized in *Roberts II* that "[t]he trial court then stated that it had considered the record and the oral statements. *** Beyond this, however, the opinion does not discuss Roberts's allocution." The Court notes with confidence and respect for Judge Stuard, he would not have acknowledged consideration of the oral statements (including the allocution) had he not, in fact, considered the same. Such was his nature of fairness. Nevertheless, as previously indicated, the Court has given no deference to the prior decisions of Judge Stuard and has complied with the remand instructions as directed.

## ALLOCUTION/UNSWORN STATEMENT
Page 3

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2478

Despite the fact that Roberts expressly waived mitigation, Roberts took advantage of her opportunity to provide an unsworn statement at the original sentencing and again following the *Roberts I* remand. Roberts explained in her original unsworn statement she had no intention of offering mitigating factors for consideration. Rather, she advised she chose to provide the unsworn statement because it was against her religion to take an oath.

Roberts's unsworn statement centered on two salient points. First, she pointed out inconsistencies in the evidence and testimony as she perceived them. Second, she drew attention to the differences between her trial and the trial of Nathaniel Jackson claiming racial inequities.

Roberts accurately characterized in her unsworn statement that the jury had been exposed to "five percent" of her life. That "five percent" included her relationship with Jackson. As she stated, "the other 95 percent of my life was dedicated to my husband, my son, my family and business, and doing charity for unfortunate to share the good fortune that God bestowed upon me and my loved ones." The Court finds this is the most truthful and yet, unfortunate, statement in the Defendant's entire soliloquy.  Five percent comprised of bad decisions has such a profound effect on a lifetime.

Page 4

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2479

Roberts brought attention to the fact that the personnel in the courtroom were white. She likewise opined on inaccurate portrayals in the newspaper regarding the facts of this case.

Roberts explained she did not consider the jury to be a "jury of her peers." She provided some details regarding her life. She worked for a plastic surgeon for 25 years. She lived in Miami for 27 years.  She traveled the world. Roberts expressed concern that some of the jurors indicated they didn't read any newspapers or watch the news.  She also expressed concern regarding the young age of a few of the jurors, citing their lack of life experiences as a hindrance to their ability to judge the case.

Next, Roberts recounted certain aspects regarding the prosecution against Nathaniel Jackson. Roberts pointed out her perceived inconsistencies in the Jackson trial compared to the prosecution by the State in her case. She also alleged racial bias on behalf of the prosecution.

Roberts relayed her opinion on Howland Chief of Police Paul Monroe and his role in this matter prior to holding that position. She claimed Monroe intentionally informed the jury she was Jewish in an effort to sway the jurors against her even more. Roberts used her opportunity in this unsworn statement to chastise the jurors for becoming too involved in

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2480

the operatic drama of the prison letters and communications than the truth.

Roberts reviewed the testimony regarding the life insurance policies. She claimed she had no knowledge the victim had increased the value of his life insurance policies. She also reviewed her financial history and business investments. Roberts pointed out she was earning $200,000 annually and the insurance policy of $250,000 was not enough to seduce her to murder Mr. Fingerhut.

Roberts added personal details about her life with the victim by describing their daily rituals with their beloved pets. She discussed the victim's family life and relationships with his sons from a previous relationship. She insisted she did not want any money from Mr. Fingerhut and relayed the fact that she signed over any life insurance policies to his children.

Next, Roberts spoke regarding Santiago Mason. She explained that Mason sued her for framing him. She protested this characterization and explained why that was not true. She described the victim's sports memorabilia collection. She also attacked Mason's character.

Roberts disputed certain elements of the State's case. Namely, she challenged the eye witness from her neighborhood who saw her driving in the area. She questioned the time frame against the witness's statement

Page 6

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2481

and her own activities during the relevant period of time on the night of the murder.

She also challenged the testimony of Frank Reynolds. She pointed out inconsistencies in Reynolds' testimony with the facts of her life. She contradicted the testimony of Reynolds regarding her argument over money with the victim. She was incensed that Reynolds would advise the jury she was upset with Mr. Fingerhut because he would not give her money. She was adamant she did not need any money from Mr. Fingerhut.

Roberts also challenged the physical evidence of the prosecution. She discussed the bloody washcloth found at the Days Inn. She claimed the washcloth and towel were purposefully placed there by the police. She also attacked the validity of other evidence recovered from the hotel and surrounding area.

Roberts questioned the introduction of certain sexual information about her by the State as inappropriate. She claimed it was only meant to influence the jury into forming a low opinion of her. She also challenged the search of the residence as improper.

In addition, Roberts claimed the marijuana found at the residence did not belong to her. She maintained it was also fabricated by the police. However, she admitted to smoking marijuana on a regular basis.

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2482

Roberts discussed the letters between her and Jackson as well as the taped telephone conversations while Jackson was incarcerated. She alleged the State manipulated those conversations to fit their case by not admitting the entire transcript of the conversations, only limited portions.

With gratitude, she acknowledged her attorneys. She described when and where she acquired the weapons found at the home. She explained the events when Mason allegedly stole her gun. Roberts also reviewed the coroner's report.

Roberts described her reaction to finding the victim on the night in question. She then relayed her version of the Jackson case running parallel to her prosecution. She challenged the veracity of the location of the murder weapon in the reports. According to the Defendant, the police moved the gun.

Finally, Roberts closed her unsworn statement by advising the jury they are required to recommend a death sentence since she presented no mitigating evidence. She pleaded for equal treatment and a sentence equal to that of Jackson's. However, Roberts reiterated this was not an admission of guilt. Rather, she claimed her plea was one of social justice and equality. She pledged her love for the victim and ended her statement with the instruction for the jury to "do what is right."

Page 8

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2483

At the resentencing hearing following *Roberts I*, Roberts offered allocution to the Court. On October 22, 2007, Roberts indicated the record had been "*** a big misrepresentation about me, my character, my personality, and my life ***." Roberts proceeded to provide additional information relative to her personal history.

Roberts explained she grew up on a farm in Austintown, Ohio. She attended a Roman Catholic elementary school. She recounted that she was sexually abused by an older cousin when she was very young. She described her household as "*** very very abusive ***."

Roberts recalled her father abused her mother physically and verbally. Roberts stated she "*** spent a lot of time under my bed, especially when guns came out." When Roberts was taken to a doctor, she described being taken into a room alone with a male doctor and afterward he advised her mother she was "*** a bad girl." According to Roberts, she was always sad and "*** felt empty because nobody had ever paid attention to me or hugged me or anything ***."

Despite this sadness, Roberts achieved good grades and rewards in school. She was on the honor roll and dean's list later in college. She received accolades as a writer. She married her high-school sweetheart and moved to Miami, Florida. She described having her son and acknowledged his many accomplishments.

Page 9

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2484

Roberts was involved in a car accident in 1963. She "*** fell asleep and the car went through big giant trees, hitting something ***." She recalled she was "filled with glass" from the debris. Roberts described herself as "*** spacey for awhile" after the accident.

In 1983, Roberts was again involved in a car accident. She flew through the windshield and experienced numbness in her extremities after the accident. Roberts was treated by a neurosurgeon for some time after this.

In 1999, Roberts again fell asleep behind the wheel and was involved in a car accident. Roberts recalled months after this event where she has no memory. Roberts stated, "*** Robert was calling me spacey and goofy, and he was really worried about me, and he told me I should get some kind of help, but I didn't want any help." Roberts acknowledged she ignored the depression.

Roberts recounted a suicide attempt wherein she started her car in the garage with her dog, Blossom. She stated Blossom alerted her by pawing at her arm and she called for help. Roberts was hospitalized after this event in a psychiatric ward. Following this hospitalization, Roberts sought SSI for disability.

Roberts explained she was prescribed three or four medications at that time. One medication was to "stop the voices." Roberts experienced

Page 10

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2485

some hallucinations while incarcerated. She described seeing "giant anthills" on her floor. Roberts also described falling and hitting her head on multiple occasions after this event. Roberts described periods of time when she could not identify the day of the week.

Roberts explained she walked away from the restaurant she owned one day because she became overwhelmed. She left the refrigerator and freezers full and never returned.

Roberts described her life working with a plastic surgeon. She described helping people with reconstructive surgery. Roberts remembered how she used to help people pay their checks at the restaurant when they didn't have enough money.

Roberts converted to Judaism in 1980. She explained her involvement in a Jewish burial society and the customs therewith. She proudly expressed her involvement in a campaign to rescue a Jewish man from persecution in Ethiopia. She also volunteered in Israel with the plastic surgeons performing skin grafts.

In contrast, Roberts explained the inaccuracies in the record describing Mr. Fingerhut as the entrepreneur. Roberts claimed she was the businesswoman. They divorced to protect her assets; not his. She took out $75,000 from her mutual fund for a down payment on her dream house. She described herself as the breadwinner. Mr. Fingerhut only

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2486

worked occasionally, according to Roberts. Roberts espoused her talents in trading on the stock market and investing in real estate.

Roberts was fixated on ensuring the Court was aware of her affluence. She was proud of the fact that she had money and wore expensive clothes. She again chastised Frank Reynolds for his testimony that she and Mr. Fingerhut had an argument because he wouldn't give her $3,000. Roberts stated, "The accounts were mine. The house was mine. The only way we had three cars is on my credit." She spoke regarding her gifts of money to her son and her sister.

Roberts closed her allocution with the following words: "I never intended for anything like that to happen, and I couldn't believe it, and I still can't believe it. We loved each other and we had a good life."

### AGGRAVATING CIRCUMSTANCES

R.C. 2929.04(A) sets forth the applicable aggravating circumstance enabling a consideration of the death penalty to be specified in the indictment and proven beyond a reasonable doubt in this case as "*** (7) [t]he offense was committed while the offender was committing, attempting to commit, or fleeing immediately after committing or attempting to commit kidnapping, rape, aggravated arson, aggravated robbery, or aggravated burglary, and either the offender was the principal offender in the commission of the aggravated murder or, if not the

Page 12

000045

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2487

principal offender, committed the aggravated murder with prior calculation and design."

On May 28, 2003, Roberts was found guilty following a trial before a petit jury and after due deliberation by said jury of the following: Count One: Complicity to Commit Aggravated Murder in violation of R.C. 2923.03(A)(2), 2903.01(A) and 2941.14(C) of Robert S. Fingerhut, with two separate Specifications of Aggravating Circumstances; to wit, Specification Number One: Aggravated Burglary in violation of R.C. 2929.04(A)(7) and Specification Number Two: Aggravated Robbery in violation of R.C. 2929.04(A)(7); Count Two: Complicity to Commit Aggravated Murder in violation of R.C. 2923.03(A)(2), 2903.01(B) and 2941.14(C) of Robert S. Fingerhut, with two separate Specifications of Aggravating Circumstances, to wit, Specification Number One: Aggravated Burglary in violation of R.C.2929.04(A)(7) and Specification Number Two: Aggravated Robbery in violation of R.C. 2929.04(A)(7); Count Three: Complicity to Commit Aggravated Burglary (F1) with Firearm Specification in violation of R.C. 2923.03(A)(2), 2911.11(A)(1)(2) and 2941.145; and Count Four: Complicity to Commit Aggravated Robbery (F1) with Firearm Specification in violation of R.C. 2923.03(A)(2), 2911.01(A)(1)(3) and 2941.145. Count Two was removed from the Jury pursuant to a Motion to Dismiss by the State.

Page 13

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2488

The Court finds the aggravating circumstances were set forth in the indictment of Roberts. The Court further finds these elements of the aggravating circumstances were proven beyond a reasonable doubt in the trial of this matter. The Court finds Roberts acted with prior calculation and design in the aggravated murder of Fingerhut.

The Court finds Roberts acted with prior calculation and design in the aggravated murder of Fingerhut while committing or attempting to commit aggravated burglary. It was proved beyond a reasonable doubt at trial that Roberts provided access to Jackson to trespass in Fingerhut's residence, 254 Fonderlac Drive in Howland Township, Trumbull County, Ohio with the specific purpose of killing Fingerhut with prior calculation and design. It was further proven beyond a reasonable doubt that the tools used to carry out this plot were provided by Roberts: the gloves, ski mask, firearm as well as the access to the residence. Countless recorded telephone calls and written letters outlined this plan to murder Mr. Fingerhut in this manner leaving no reasonable doubt whatsoever.

The Court finds Roberts acted with prior calculation and design in the aggravated murder of Fingerhut while committing or attempting to commit aggravated robbery. It was proven beyond a reasonable doubt at trial that Roberts acted with prior calculation and design. Roberts intended for Jackson to steal Mr. Fingerhut's vehicle, originally to use the car as a

Page 14

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2489

means for kidnapping Fingerhut away from the residence to kill him off site. The police recovered Mr. Fingerhut's vehicle a few blocks from where Jackson was arrested. The keys were still in the ignition.

The Court finds beyond a reasonable doubt Roberts acted with complicity to commit aggravated murder while committing or attempting to commit or in fleeing immediately after committing or attempting to commit aggravated burglary. The Court finds beyond a reasonable doubt Roberts acted with complicity to commit aggravated murder while committing or attempting to commit or in fleeing immediately after committing or attempting to commit aggravated robbery. The Court further finds beyond a reasonable doubt Roberts acted with complicity to commit aggravated murder with prior calculation and design.

Having found the aggravating circumstances proven beyond a reasonable doubt, the Court now must "*** weigh against the aggravating circumstances proved beyond a reasonable doubt, the nature and circumstances of the offense, the history, character, and background of the offender ***" along with the additional statutory factors set forth in R.C. 2929.04(B) as mitigating factors.

### MITIGATING FACTORS

Pursuant to R.C. 2929.03(F), the Court makes the following findings regarding the factors listed in R.C. 2929.04(B):

Page 15

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2490

1. *"Whether the victim of the offense induced or facilitated it; ***"*

The Court finds Mr. Fingerhut, the victim in this matter, did nothing to facilitate or induce his own death. The Court gives no weight to the allegations made by Roberts in her letters to Jackson regarding the physical abuse she suffered at the hand of Mr. Fingerhut. Even if the Court were to accept those claims as true, there is no evidence of any imminent threat to Roberts. Likewise, there is no evidence Roberts was prevented from evading the abusive situation by alternate means such as leaving the residence or filing a complaint with the police department.

2. *"Whether it is unlikely that the offense would have been committed, but for the fact that the offender was under duress, coercion, or strong provocation; ***"*

The Court finds there is no evidence before the Court that Roberts was under any duress, coercion or strong provocation to commit the crime.

3. *"Whether, at the time of committing the offense, the offender, because of a mental disease or defect, lacked substantial capacity to appreciate the criminality of the offender's conduct or to conform the offender's conduct to the requirements of the law; ***"*

The Court finds there is no evidence to suggest Roberts lacked

Page 16

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2491

substantial capacity to appreciate the criminality of her conduct or to conform her conduct to the rules of law. Although Roberts testified in her allocution regarding the status of her mental health, the Court does not find that statement contained any evidence to suggest or support Roberts did not understand the criminality of her conduct. The Court finds the incidents described by Roberts in her unsworn statement and her allocution were either isolated events following physical traumas associated with her motor vehicle accidents or they occurred after the death of Mr. Fingerhut. There is no evidence to suggest Roberts lacked mental capacity at the time of the events in question.

4. *"The youth of the offender; ***"*

The Court finds the age of Roberts is not a factor for consideration.

5. *"The offender's lack of a significant history of prior criminal convictions and delinquency adjudications; ***"*

The Court finds Roberts does not have a significant history of prior criminal convictions. This factor does weigh in her favor.

6. *"If the offender was a participant in the offense but not the principal offender, the degree of the offender's participation in the offense and the degree of the offender's participation in the acts that led to the death of the victim; ***"*

<div align="center">Page 17</div>

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2492

The Court finds although Roberts was not the "triggerman," the evidence clearly demonstrated she orchestrated the entire plot. The record reveals the intentional acts of Roberts in planning the aggravated murder of Mr. Fingerhut in exchange for his life insurance proceeds. Roberts induced Jackson to be her accomplice with promises of payment in the form of a Cadillac or a Lincoln, a wealthy lifestyle, vacations and a home in a desirable neighborhood. Roberts premeditated for months. She checked the balance of the life insurance proceeds. She arranged for Jackson's transportation from prison to a hotel room where she fulfilled his sexual needs, fed him food for sustenance, and provided the necessary tools to carry out the murder. The Court finds that Roberts was the primary mastermind behind Mr. Fingerhut's murder. But for her premeditated calculations, Mr. Fingerhut would not have been murdered by Jackson on that day.

7. *"Any other factors that are relevant to the issue of whether the offender should be sentenced to death."*

The Court finds there were several mitigating elements presented in Roberts's allocution. Certain elements of Roberts's unsworn statement and allocution (at the original sentencing and again upon the earlier remand) are worthy of some discussion.

Page 18

000051

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2493

First, Roberts allegedly grew up in an abusive household. She claims she was witness to physical confrontations between her mother and her father to the point where she would hide under the bed "when the guns came out." This history, coupled with the alleged physical abuse between Roberts and Fingerhut does weigh slightly in favor of Roberts. Perhaps Roberts was still shouldering those childhood burdens into her adult life.

However, there is absolutely no evidence before the Court to support the veracity of the physical abuse allegations made by Roberts against Fingerhut. Therefore, the Court is left to ponder whether those allegations were part of her scheme to induce Jackson to act as her accomplice. Roberts failed to alert the Court to any physical violence between her and Fingerhut during her allocution. Instead, Roberts professed her love for the man whom she contracted to have killed. Therefore, the Court finds these facts weigh only slightly in favor of Roberts.

Likewise, the Court gives little weight to Roberts's claims regarding the rape by her cousin when she was very young. The Court finds this is entitled to little weight as there is no direct connection to the underlying crime. Even if Roberts were carrying the psychological scars of this

Page 19

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2494

trauma, there is little to no evidence to suggest any connection to the underlying crime.

The Court finds the charitable history of Roberts is entitled to some mitigation weight in her favor. Apparently, Roberts was quite generous with both her time and funds. She assisted plastic surgeons performing reconstructive surgery in Israel. She helped rescue a man from persecution in Ethiopia. On a more day-to-day basis, Roberts would help others in her family as well as strangers who were struggling financially.

However, the Court finds this generosity must also be reviewed in totality with Roberts's self-promotion. Roberts frequently referred to her wealth in her allocution. She wanted the Court to know she was the breadwinner, not Mr. Fingerhut. She berated the man who testified she was angry with Fingerhut when he refused to give her $3,000. It seems these mischaracterizations of her social status were more upsetting to Roberts than the guilty verdict against her for complicity to commit murder. The Court finds these two polar self-portraits are not compatible with one another. Therefore, the Court affords no weight to the self-reported acts of generosity and charity of Roberts as mitigation.

The Court finds the reports of mental instability and physical traumas following several car accidents could be mitigating factors in Roberts's favor. Roberts was involved in two motor vehicle accidents

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2495

which occurred after Roberts fell asleep behind the wheel. The mere fact that one has not only a singular incident of this magnitude, but two, leads the Court to question whether there are other biological or physiological factors at play. In addition, the mental status post-accidents and the lack of memory for an extended period of time is likewise a mitigating factor that weighs in favor of Roberts.

However, the Court finds the self-promotion by Roberts as to her financial prowess, educational accolades and charitable works is contradictory to her assertion that she has suffered mental deficiencies as a result of the motor vehicle accidents described above. The two are juxtaposed; either Roberts is a powerful entrepreneur capable of earning a magnitude of wealth and respect or she is one suffering from mental trauma. The Court gives little to no weight to any evidence of the latter.  In addition, the Court finds Roberts was fairly well-spoken in the delivery of her allocution. Plus, Roberts expressly made a valid waiver of her right to present mitigation evidence. There was no mental deficiency at play in that decision.

There is no question Roberts suffered some physical and mental traumas as a result of these accidents. Roberts even attempted to commit suicide in her garage. However, the Court finds these incidents are

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2496

isolated and occurred in a time frame so far removed from the murder of Mr. Fingerhut that their relevance for mitigation is significantly decreased. In addition, pursuant to R.C. 2929.04(B), the Court must also consider and weigh "*** the nature and circumstances of the offense, the history, character, and background of the offender ***." The Court finds the history, character and background of Roberts have been sufficiently addressed in the discussion specified in R.C. 2929.04(B)(1-7) above.

Roberts planned and plotted for the murder of Fingerhut over a period of at least three months. She conspired with Jackson, her imprisoned lover, to murder Fingerhut for his life insurance proceeds. The murder plan was well documented through telephone calls recorded from Jackson's residence; the Lorain Correctional Institute. In addition, detailed letters were exchanged between the loving couple outlining their plans. These plans included the acquisition of supplies, the procurement of a hotel room, and the promise of a new vehicle for Jackson -- all provided by Roberts. Ultimately, Roberts provided access to the residence in order for Jackson to carry out the murder as planned.

Despite these intricate details, Roberts "forgot" to include Jackson as one of her named lovers to the police during interviews. In addition, Roberts attempted to thwart the investigation into the Fingerhut murder by implicating other individuals; not Jackson. In addition, Roberts's feigned

Page 22

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2497

emotional outbursts over Fingerhut's death do not correlate to the

insidious behavior relative to the same.

Therefore, the Court has granted little to no weight to any of the

mitigating factors outlined by Roberts in her unsworn statement or her

allocution. In addition, the Court finds Roberts's request for "equal

treatment" to Jackson is inconsistent with the primary body of her

allocution and has not given any weight to that request either.

The presence of mitigating factors does not preclude the imposition

of a sentence of death. Rather, those mitigating factors are to then be

weighed against the aggravating circumstances of the crime. In

conducting this comparison, the Court overwhelmingly finds the

aggravating circumstances outweigh the mitigating factors.

## CONCLUSIONS OF LAW

The mitigating factors given little weight by this Court do not even

approach an imbalance of the aggravating circumstances present in this

matter. Roberts' traumatic childhood, her allegations of physical abuse at

the hands of Fingerhut, the physical injuries sustained in multiple motor

vehicle accidents, the mental disability, the lack of a prior criminal record

and Roberts' charitable tendencies do not even draw the Court's attention

away from the aggravating circumstances.

000056

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2498

The Court has made a careful and independent review of the entire record, including Roberts's first and second allocutions. Upon this review, the Court finds the aggravating circumstances outweigh the mitigating factors by proof beyond a reasonable doubt.

Therefore, the Court hereby finds the sentence of death is an appropriate penalty for the Defendant Donna Marie Roberts in this matter.

Date: June 10, 2014

Judge Ronald J. Rice

000057

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2499

IN THE COURT OF COMMON PLEAS
GENERAL DIVISION
TRUMBULL COUNTY, OHIO

State of Ohio )  Case No. 2001CR00793
)
            Plaintiff, )  Judge Ronald J. Rice
)
vs. )  **NOTICE OF POST**
)  **RELEASE CONTROL**
Donna M. Roberts )
)
            Defendant. )

The Court hereby notifies the Defendant of the following pursuant

ORC Sections:  2929.19; 2943.032 and 2967.28:

Count 1, Complicity To Commit Aggravated Murder, should you ever

be released from prison you will be subject to a life time of parole

supervision.  If you violate any of the conditions of your parole then you will

be forced to serve the balance of your life sentence.

Count 3, Complicity To Commit Aggravated Burglary, you will be

subject to a mandatory period of post-release control of 5 years following

your release from prison.

Count 4, Complicity To Commit Aggravated Robbery, you will be

subject to a mandatory period of post-release control of 5 years following

your release from prison.

Page 1

2001 CR
00793
00040058493
CRN

000058

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2500

If you violate the conditions of a post-release control sanction imposed by the parole board upon the completion of your stated prison term, the parole board may impose upon you as the offender a residential sanction that includes a new prison term of up to nine months for each violation of the rules not to exceed one-half of your stated prison term.

If while on post-release control you are convicted of a new felony offense in addition to being punished for the underlying conduct (new offense), an additional prison term of one year, or what time remains on your post-release control term, may be added as an additional, or consecutive, penalty.

You may not ingest or be injected with a drug of abuse and you must submit to random drug testing while on post release control.

Dated: April 30, 2014

Donna M. Roberts, Defendant

I, certify that the Judge has explained to my client the post-release control consequences as set forth above.

David L. Doughten,
Attorney For Defendant

Page 2

000059

**§ 2929.06.     Resentencing after sentence of death or life imprisonment without parole is set aside, nullified, or vacated**

(A) If a sentence of death imposed upon an offender is set aside, nullified, or vacated because the court of appeals, in a case in which a sentence of death was imposed for an offense committed before January 1, 1995, or the supreme court, in cases in which the supreme court reviews the sentence upon appeal, could not affirm the sentence of death under the standards imposed by section 2929.05 of the Revised Code, is set aside, nullified, or vacated for the sole reason that the statutory procedure for imposing the sentence of death that is set forth in sections 2929.03 and 2929.04 of the Revised Code is unconstitutional, is set aside, nullified, or vacated pursuant to division (C) of section 2929.05 of the Revised Code, or is set aside, nullified, or vacated because a court has determined that the offender is mentally retarded under standards set forth in decisions of the supreme court of this state or the United States supreme court, the trial court that sentenced the offender shall conduct a hearing to resentence the offender. At the resentencing hearing, the court shall impose upon the offender a sentence of life imprisonment or an indefinite term consisting of a minimum term of thirty years and a maximum term of life imprisonment that is determined as specified in this division. If division (D) of section 2929.03 of the Revised Code, at the time the offender committed the aggravated murder for which the sentence of death was imposed, required the imposition when a sentence of death was not imposed of a sentence of life imprisonment without parole or a sentence of an indefinite term consisting of a minimum term of thirty years and a maximum term of life imprisonment to be imposed pursuant to division (A) or (B)(3) of section 2971.03 of the Revised Code and served pursuant to that section, the court shall impose the sentence so required. In all other cases, the sentences of life imprisonment that are available at the hearing, and from which the court shall impose sentence, shall be the same sentences of life imprisonment that were available under division (D) of section 2929.03 or under section 2909.24 of the Revised Code at the time the offender committed the offense for which the sentence of death was imposed. Nothing in this division regarding the resentencing of an offender shall affect the operation of section 2971.03 of the Revised Code.

(B) Whenever any court of this state or any federal court sets aside, nullifies, or vacates a sentence of death imposed upon an offender because of error that occurred in the sentencing phase of the trial and if division (A) of this section does not apply, the trial court that sentenced the offender shall conduct a new hearing to resentence the offender. If the offender was tried by a jury, the trial court shall impanel a new jury for the hearing. If the offender was tried by a panel of three judges, that panel or, if necessary, a new panel of three judges shall conduct the hearing. At the hearing, the court or panel shall follow the procedure set forth in division (D) of section 2929.03 of the Revised Code in determining whether to impose upon the offender a sentence of death, a sentence of life imprisonment, or an indefinite term consisting of a minimum term of thirty years and a maximum term of life imprisonment. If, pursuant to that procedure, the court or panel determines that it will impose a sentence other than a sentence of death, the court or panel shall impose upon the offender one of the sentences of life imprisonment that could have been imposed at the time the offender committed the offense for which the sentence of death was imposed, determined as specified in this division, or an indefinite term consisting of a minimum

000060

term of thirty years and a maximum term of life imprisonment that is determined as specified in this division. If division (D) of section 2929.03 of the Revised Code, at the time the offender committed the aggravated murder for which the sentence of death was imposed, required the imposition when a sentence of death was not imposed of a sentence of life imprisonment without parole or a sentence of an indefinite term consisting of a minimum term of thirty years and a maximum term of life imprisonment to be imposed pursuant to division (A) or (B)(3) of section 2971.03 of the Revised Code and served pursuant to that section, the court or panel shall impose the sentence so required. In all other cases, the sentences of life imprisonment that are available at the hearing, and from which the court or panel shall impose sentence, shall be the same sentences of life imprisonment that were available under division (D) of section 2929.03 or under section 2909.24 of the Revised Code at the time the offender committed the offense for which the sentence of death was imposed.

(C) If a sentence of life imprisonment without parole imposed upon an offender pursuant to section 2929.021 or 2929.03 of the Revised Code is set aside, nullified, or vacated for the sole reason that the statutory procedure for imposing the sentence of life imprisonment without parole that is set forth in sections 2929.03 and 2929.04 of the Revised Code is unconstitutional, the trial court that sentenced the offender shall conduct a hearing to resentence the offender to life imprisonment with parole eligibility after serving twenty-five full years of imprisonment or to life imprisonment with parole eligibility after serving thirty full years of imprisonment.

(D) Nothing in this section limits or restricts the rights of the state to appeal any order setting aside, nullifying, or vacating a conviction or sentence of death, when an appeal of that nature otherwise would be available.

(E) This section, as amended by H.B. 184 of the 125th general assembly, shall apply to all offenders who have been sentenced to death for an aggravated murder that was committed on or after October 19, 1981, or for terrorism that was committed on or after May 15, 2002. This section, as amended by H.B. 184 of the 125th general assembly, shall apply equally to all such offenders sentenced to death prior to, on, or after March 23, 2005, including offenders who, on March 23, 2005, are challenging their sentence of death and offenders whose sentence of death has been set aside, nullified, or vacated by any court of this state or any federal court but who, as of March 23, 2005, have not yet been resentenced.

000061

**Ohio Revised Code Section 2929.03(F)**

(F) The court or the panel of three judges, when it imposes sentence of death, shall state in a separate opinion its specific findings as to the existence of any of the mitigating factors set forth in division (B) of section 2929.04 of the Revised Code, the existence of any other mitigating factors, the aggravating circumstances the offender was found guilty of committing, and the reasons why the aggravating circumstances the offender was found guilty of committing were sufficient to outweigh the mitigating factors. The court or panel, when it imposes life imprisonment or an indefinite term consisting of a minimum term of thirty years and a maximum term of life imprisonment under division (D) of this section, shall state in a separate opinion its specific findings of which of the mitigating factors set forth in division (B) of section 2929.04 of the Revised Code it found to exist, what other mitigating factors it found to exist, what aggravating circumstances the offender was found guilty of committing, and why it could not find that these aggravating circumstances were sufficient to outweigh the mitigating factors. For cases in which a sentence of death is imposed for an offense committed before January 1, 1995, the court or panel shall file the opinion required to be prepared by this division with the clerk of the appropriate court of appeals and with the clerk of the supreme court within fifteen days after the court or panel imposes sentence. For cases in which a sentence of death is imposed for an offense committed on or after January 1, 1995, the court or panel shall file the opinion required to be prepared by this division with the clerk of the supreme court within fifteen days after the court or panel imposes sentence. The judgment in a case in which a sentencing hearing is held pursuant to this section is not final until the opinion is filed.

000062

**Amendment V of the United States Constitution**

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

000063

**Amendment VI**

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

000064

**Amendment VIII**

**Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.**

000065

**Fourteenth Amendment to the United States Constitution**

Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

Section 2. Representatives shall be apportioned among the several States according to their respective numbers, counting the whole number of persons in each State, excluding Indians not taxed. But when the right to vote at any election for the choice of electors for President and Vice President of the United States, Representatives in Congress, the Executive and Judicial officers of a State, or the members of the Legislature thereof, is denied to any of the male inhabitants of such State, being twenty-one years of age, and citizens of the United States, or in any way abridged, except for participation in rebellion, or other crime, the basis of representation therein shall be reduced in the proportion which the number of such male citizens shall bear to the whole number of male citizens twenty-one years of age in such State.

Section 3. No person shall be a Senator or Representative in Congress, or elector of President and Vice President, or hold any office, civil or military, under the United States, or under any State, who, having previously taken an oath, as a member of Congress, or as an officer of the United States, or as a member of any State legislature, or as an executive or judicial officer of any State, to support the Constitution of the United States, shall have engaged in insurrection or rebellion against the same, or given aid or comfort to the enemies thereof. But Congress may, by a vote of two-thirds of each House, remove such disability.

Section 4. The validity of the public debt of the United States, authorized by law, including debts incurred for payment of pensions and bounties for services in suppressing insurrection or rebellion, shall not be questioned. But neither the United States nor any State shall assume or pay any debt or obligation incurred in aid of insurrection or rebellion against the United States, or any claim for the loss or emancipation of any slave; but all such debts, obligations and claims shall be held illegal and void.

Section 5. The Congress shall have power to enforce, by appropriate legislation, the provisions of this article.

.

000066

Supreme Court of Ohio Clerk of Court - Filed July 14, 2015 - Case No. 2014-0989

## IN THE SUPREME COURT OF OHIO

|  |  |  |
|---|---|---|
| STATE OF OHIO, | ) | **CASE NO. 2014-0989** |
| Appellee, | ) | |
| | ) | On Appeal from the Trumbull |
| v. | ) | County Court of Common Pleas |
| | ) | No. 01-CR-793 |
| DONNA ROBERTS, | ) | |
| Appellant. | ) | |
| | ) | **DEATH PENALTY CASE** |

---

### APPELLEE STATE OF OHIO'S ANSWER BRIEF

---

DENNIS WATKINS (#0009949)
Prosecuting Attorney, by
LuWAYNE ANNOS (#0055651)
Assistant Prosecuting Attorneys
Trumbull County Prosecutor's Office
160 High Street, N.W.
Fourth Floor, Administration Bldg.
Warren, Ohio 44481
Telephone No. (330) 675-2426
Fax No. (330) 675-2431
psannos@co.trumbull.oh.us

DAVID L. DOUGHTEN (#0002847)
4403 St. Clair Ave.
Cleveland, Ohio  44103-1125
Telephone No. (216) 361-1112


ROBERT A. DIXON (#0040197)
4403 St. Clair Avenue
Cleveland, Ohio  44103-1125
Telephone No. (216) 432-1992


COUNSEL FOR
PLAINTIFF-APPELLEE
THE STATE OF OHIO

COUNSEL FOR
DEFENDANT-APPELLANT
DONNA ROBERTS

## TABLE OF CONTENTS

PAGE(S)

TABLE OF AUTHORITIES.................................................................................................iii

STATEMENT OF THE CASE.............................................................................................1

STATEMENT OF FACTS....................................................................................................1

ARGUMENT IN OPPOSITION TO APPELLANT'S PROPOSITIONS OF LAW.............5

STATE'S RESPONSE TO APPELLANT'S PROPOSITION OF LAW I:
    Absent evidence to the contrary, a successor judge may evaluate on remand the
    record of prior proceedings and render a judgment without personally viewing a
    party or witness.......................................................................................................5

STATE'S RESPONSE TO APPELLANT'S PROPOSITION OF LAW II:
    The weight, if any, assigned to a potential mitigating factor lies within the
    sound discretion of the trial court.......................................................................12

STATE'S RESPONSE TO APPELLANT'S PROPOSITION OF LAW III:
    A trial court's decision finding no mitigating value in the "nature and
    circumstances" of an offense does not suggest the court impermissibly
    converted the "nature and circumstances" into statutory or non-statutory
    aggravating circumstances...................................................................................19

STATE'S RESPONSE TO APPELLANT'S PROPOSITION OF LAW IV:
    A capital defendant has no entitlement to a full evidentiary penalty phase hearing
    when a superior court remands a case for the sole purpose of reweighing mitigating
    factors and aggravating circumstances in light of the defendant's
    allocution..............................................................................................................24

CONCLUSION...................................................................................................................29

PROOF OF SERVICE........................................................................................................30

ii

**TABLE OF AUTHORITIES**

**PAGE(S)**

**CASES**

*Dougherty v. Torrence*, 10 Ohio St.3d 139, 461 N.E.2d 1310,  10 O.B.R. 460 (1984)...........6, 7

*State ex rel. Douglas v. Burlew*, 106 Ohio St.3d 180, 2005-Ohio-4382, 833 N.E.2d 293.........26

*State v. Awkal*, 76 Ohio St.3d 324, 1996-Ohio-395, 667 N.E.2d 960...........................22, 23

*State v. Chinn,* 85 Ohio St. 3d 548, 1999-Ohio-288, 709 N.E. 2d 1166…..........................25

*State v. Cunningham,* 105 Ohio St. 3d 197, 2004-Ohio-7007, 824 N.E. 2d 504....................15

*State v. Davie*, 80 Ohio St.3d 311, 1997-Ohio-341, 686 N.E.2d 245...........…...............22, 23

*State v. Davis*, 63 Ohio St. 3d 44, 584 N.E. 2d 1192 (1992).........................................25

*State v. Davis*, 139 Ohio St.3d 122,  2014-Ohio-1615, 9 N.E.3d 1031, *reconsideration denied,*
139 Ohio St.3d 1473, 2014-Ohio-3012, 11 N.E.3d 1194, and *cert. denied,*
135 S.Ct. 1494, 191 L.Ed.2d 452 (2015)...........................................................…......28

*State v. Green,* 90 Ohio St.3d 352,  2000-Ohio-182, 738 N.E.2d 1208 (2000)......................9

*State v. Hancock,* 108 Ohio St.3d 57, 2006-Ohio-160, 840 N.E.2d 1032.....................…..21, 22

*State v. Hoffner*  102 Ohio St. 3d 358, 2004-Ohio-3430, 811 N.E. 2d 48............…...........16

*State v. Jackson,* 107 Ohio St. 3d 300, 2006-Ohio-1, 839 N.E. 2d 362..........................…..21, 23

 *State v. Lott*, 51 Ohio St.3d 160, 555 N.E.2d 293 (1990)...........................................14

*State v. Penix*, 32 Ohio 369, 513 N.E. 2d 744 (1987).................................................10

*State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865.......................14, 15

*State v. Roberts,* 110 Ohio St. 3d 71, 2006-Ohio-3665, 850 N.E. 2d 1168...............…......9, 14

*State v. Roberts,* 137 Ohio St. 3d 230, 2013-Ohio-4580, 998 N.E. 2d 1100, *cert. denied,* 134
S.Ct. 1554, 188 L.Ed.2d 569.............................................2, 5, 6, 7, 9, 20, 24, 25, 26, 27

iii

## TABLE OF AUTHORITIES CONT'D

**PAGES**

**CASES**

*State v. White*, 132 Ohio St.3d 344, 2012-Ohio-2583, 972 N.E.2d 534 ……..………..………10

*State v. White*, 85 Ohio St.3d 433, 1999-Ohio-281, 709 N.E.2d 140……………………….16

*State v. Wogenstahl,* 75 Ohio St. 3d 344, 1996-Ohio-219, 662 N.E. 2d 311……………19, 20, 21

**STATUTES AND RULES**

Crim. R. 25(B)……………………………………………………………………5, 10, 11

Crim. R. 32(A)………………………………………………………………………….8

Crim. R. 52……………………………………………………………………....…..10

R.C. 2929.03(B)…………………………………………………………………....…12, 19

R.C. 2929.03(F)………………………………………………………………………5, 11

R.C. 2929.06(B)………………………………………………………………….10, 26, 27

iv

## STATEMENT OF THE CASE

The Plaintiff-Appellee, the State of Ohio ("State") takes no exceptions to the Statement of the Case as presented by Defendant-Appellant ("Appellant") at pages 3 through 7 of her Merit Brief. However, the State would like to add the following clarification. Though Appellant correctly states that the trial court denied her request for "an independent psychologist" to review her competency prior to re-sentencing in 2007, the court nevertheless ordered that her competency be evaluated, if necessary, by Dr. James Eisenberg. (T.d. 189). Prior to resentencing, Dr. Thomas Gazley of the Forensic Psychiatric Center of Northeast Ohio prepared a 10-page report regarding Appellant's competency to be resentenced. In Dr. Gazley's expert opinion, Appellant was competent to stand for resentencing. (2nd Sentencing T.p. 17-41).

## STATEMENT OF FACTS

As Defendant-Appellant Donna Roberts ("Appellant") correctly notes in her brief, this is the third time for this Court to consider her capital murder case. In *State v. Roberts,* 110 Ohio St. 3d 71, 2006-Ohio-3665, 850 N.E. 2d 1168 (*Roberts I),* this Court reversed and remanded the case to the original trial judge for purposes of conducting a re-sentencing hearing. This Court found error in the trial court's omission of a formal allocution at sentencing and the fact that the trial court permitted counsel for the Plaintiff-Appellee, the State of Ohio ("State") to draft the written sentencing opinion. *Roberts I,* at ¶ 167. While the State does not suggest an unsworn statement to a penalty phase jury and an allocution to the sentencing court are interchangeable presentations, the State would point out that in her unsworn statement, Appellant - in no uncertain terms- told the panel a death recommendation was its only option. "Roberts later presented an unsworn statement to the jury. In that statement, she told the jury that she would not provide any mitigating evidence. She then said, 'You are bound by law to give me one sentence,

- 1 -

the death penalty. You have no other choice. That is what I'm asking you to do, because that is the right thing to do.' She reiterated that objective after the trial court sentenced her to death." *Roberts I,* at ¶137.

Appellant appeared for the first part of the resentencing proceedings on October 22, 2007, before the same judge who presided over her jury trial and sentencing hearing in 2003. She offered a lengthy allocution for the court's consideration. (2nd Sentencing T.p. 45-67). In that entire statement, Appellant never apologized for her actions, nor did she make any statement about what her punishment should be. This Court discussed the content of her allocution in *State v. Roberts,* 137 Ohio St. 3d 230, 2013-Ohio-4580, 998 N.E. 2d 1100, *cert. denied,* 134 S.Ct. 1554, 188 L.Ed.2d 569 (2014), ( *"Roberts* II"). To summarize, this Court noted Appellant discussed her upbringing in an abusive household, rape by a male cousin, sense of isolation, memory lapses, depression and suicide attempt after several car crashes, as well as repeated charitable acts such as volunteering to tend to wounded Israeli soldiers, feeding the hungry and rescuing an Ethiopian persecuted for his religious beliefs. *Roberts II* at ¶¶57-61. While Appellant did not directly ask for the death penalty as she did during the mitigation hearing and 2003 sentencing, she did not specifically request a life sentence. Neither did her attorneys: "We really have nothing to add. I think what she said speaks for itself." (2nd Sentencing T.p. 65).

In *Roberts II,* this Court found an Eighth Amendment error in the trial court's failure to state that it "considered" Appellant's allocution. This Court's very clear instructions were as follows: "In accordance with our holding as to Roberts's first proposition of law, Roberts is not entitled to present any further evidence on remand. Moreover, because Roberts has been given her opportunity to make allocution pursuant to Crim.R. 32, she is not entitled to make another one. Finally, while the trial court must consider Roberts's allocution, nothing in today's opinion

- 2 -

should be interpreted as a determination that the matters discussed in her allocution are true or that the trial court must afford them any particular weight. It is for the trial court to determine in the first instance what mitigating factors, if any, are present in the case, and what weight, if any, they should be given." *Roberts II*, at ¶¶ 74-75.

This Court released *Roberts II* on October 23, 2013. In addition to the full opinion, this Court entered an order stating, in pertinent part: "[T]he death sentence is vacated and this cause is remanded to the trial court resentencing *on the basis of the existing record,* consistent with the opinion rendered herein." (Emphasis added). (T.d. 235). Trumbull County Common Pleas Judge John Stuard, who presided over the trial and sentencing, and the 2007 resentencing, left the bench December 31, 2012. He died 38 days later. (T.d. 257, p. 3) Trumbull County Common Pleas Judge Ronald Rice was elected to replace Judge Stuard. This Court returned the record in Appellant's case to Trumbull County on January 2, 2014 (T.d. 236).

Judge Rice conducted a resentencing hearing on April 30, 2014. Pursuant to this Court's directive, the court took no additional evidence or testimony. The judge stated he reviewed "the entire record following the remand from *Roberts I.*" (T.d. 257). The court read its findings of fact and conclusions of law regarding sentencing Appellant to death for the third time. *Id.* The court first referenced Appellant's unsworn statement to her jury to the penalty phase of her trial. (*Id.* at p. 4-8). The court painstakingly discussed and quoted from Appellant's allocution given October 22, 2007. (*Id.* at p. 9-12). Nevertheless, the judge again found that the aggravating circumstances outweighed the mitigating factors and for the third time sentence Appellant to death. (*Id.*).

Appellant filed timely notice of appeal with this Court.  She filed her Merit Brief in this Court March 23, 2015.  The State files this brief in response.  Other pertinent facts will be brought to the Court's attention as necessary in the Argument portion of the State's brief.

- 4 -

## ARGUMENT IN OPPOSITION TO APPELLANT'S PROPOSITIONS OF LAW

### STATE'S RESPONSE TO APPELLANT'S PROPOSITION OF LAW I:
**Absent evidence to the contrary, a successor judge may evaluate on remand the record of prior proceedings and render a judgment without personally viewing a party or witness.**

In her first Proposition of Law, Appellant argues that her third death sentence should be overturned because the resentencing judge followed the ruling from this Court and did not afford her the right to speak again at her third sentencing hearing. This argument is without merit.

Appellant correctly notes that R.C. 2929.03(F) does not specifically address situation wherein a "replacement judge," or more accurately here, a "successor judge" is called upon to impose a sentence in a capital case. However, Crim. R. 25(B) reads as follows: "If for any reason the judge before whom the defendant has been tried is unable to perform the duties of the court after a verdict or finding of guilt, another judge designated by the administrative judge, or, in the case of a single-judge division, by the Chief Justice of the Supreme Court of Ohio, may perform those duties. If such other judge is satisfied that he cannot perform those duties because he did not preside at the trial, he may in his discretion grant a new trial." Appellant does not challenge the assignment of Judge Ronald Rice to her case.[1] When this Court remanded the case for a second time for a third sentencing, this Court was aware that Judge Stuard had died during the pendency of the second direct appeal and the resentencing exercise would "necessarily*** be conducted by a different judge." *Roberts II,* at ¶78.

---

[1] The State acknowledges that Appellant filed a motion to preclude the imposition of the death sentence because Judge Rice had not heard either the mitigation "evidence" or Appellant's allocution. (T.d. 241). Therefore, the State will not raise the issue of waiver for this Proposition of Law.

Also in *Roberts II,* this Court ordered the trial court as follows: "On remand, the trial court is to review the entire record, including Roberts's allocution of October 22, 2007. The trial court shall consider the entire record—again, including the allocution—in determining whether the aggravating circumstances outweigh the mitigating factors beyond a reasonable doubt. The trial court shall then write and file a sentencing opinion pursuant to R.C. 2929.03(F) reflecting that it has complied with these instructions. In accordance with our holding as to Roberts's first proposition of law, *Roberts is not entitled to present any further evidence on remand. Moreover, because Roberts has been given her opportunity to make allocution pursuant to Crim.R. 32, she is not entitled to make another one.*" (Emphasis added). *Roberts II,* at ¶¶ 73-74. This Court continued, "the trial court must make an independent determination of whether a death sentence is appropriate and may not give deference to the sentences previously entered." *Id.* at ¶96. By its very directive, this Court intended that a judge - who did not hear Appellant deliver her 2007 allocution – would decide her fate.

Appellant argues in this Proposition of Law that because the trial court followed the unambiguous directive from this Court and did not permit additional commentary from Appellant during the 2014 resentencing, a death sentence should have been precluded. The State disagrees. This Court in *Roberts II* left on the table the option of a death sentence for the successor judge when it ordered him to reweigh the aggravating circumstances and the mitigating factors. If this Court sought to preclude the imposition of the death penalty because a successor judge would not hear Appellant personally plead her case, it would not have given the trial court directions to reweigh the facts and evidence and to consider her 2007 allocution.

Importantly, it is well-settled Ohio law from this very Court that "[a]n inferior court has no discretion to disregard the clear mandate of a superior court. *State ex rel. Potain v. Mathews*

- 6 -

(1979), 59 Ohio St.2d 29, 32, 391 N.E.2d 343 [13 O.O.3d 17]. See, also, *Brown v. Borchers Ford, Inc.* (1978), 53 Ohio St.2d 171, 373 N.E.2d 1233 [7 O.O.3d 319]." *Dougherty v. Torrence*, 10 Ohio St.3d 139, 141, 461 N.E.2d 1310, 1312, 10 O.B.R. 460 (1984).  If the trial court had permitted Appellant to either reread her original allocution or deliver a new one, the trial court would have abused its discretion and disregarded a "clear mandate" from this Court.

Appellant argues that by merely rereading her 2007 allocution from the cold record, the successor judge could not properly weigh her "intonation," struggle "for composure" or "the hurt and the shame" that Appellant might endeavor to convey.  Appellant's Brf. at p. 8.  The procedure, as dictated by this Court, compromises the trial court's ability "to assess Roberts' credibility," Appellant argues. *Id.* at p. 9. But a review of the Findings of Facts and Conclusions of Law (T.d 257) reveals that, for the most part, the successor judge did not question the veracity of Appellant's allocution. The entry shows careful attention to any potential mitigating factors Appellant may have presented in 2007.  Appellant does not argue in her brief that the trial court misquoted or misinterpreted the record before it in 2014.

Indeed, at page 4 of the opinion the trial court referenced Appellant's 2003 unsworn statement noting that he found commentary that her jury was judging her on a mere five percent of her life as "the most truthful and yet, unfortunate, statement in the Defendant's entire soliloquy." (T.d. 257, p. 4).  The successor judge did not personally witness her unsworn statement to the jury, but he assessed Appellant's credibility in a manner favorable to her. Moreover, Appellant's deliberate and conscientious decision to forego the presentation of mitigating evidence extracted from the court's consideration a variety of documentary evidence which would have corroborated portions of Appellant's 2007 allocution. See *Roberts II,* ¶¶ 17-22.

- 7 -

Despite that fact, the court accepted her recollection of important life events as true. For example, the court did not question Appellant's story about witnessing abuse in her childhood home, and gave it some weight in mitigation. "Perhaps Roberts was still shouldering these childhood burdens into her adult life." (T.d. 257, p. 19). The court questioned Appellant's veracity about victim Robert Fingerhut being physically abusive towards her, but only because the allegations appeared exclusively in her letters to co-defendant Nathanial Jackson and were directly discounted by Appellant herself during her allocution. *Id.* The court seemed to take at face value Appellant's saga of a childhood rape by a male cousin, but gave it "little weight [in mitigation] as there is no direct connection to the underlying crime." *Id.* The court noted Appellant's self-generated contradictions between her boundless generosity and her insistence of portraying herself as a self-made woman. "The Court finds these two polar self-portraits are not compatible with one another. Therefore, the Court affords no weight to the self-reported acts of generosity and charity of Roberts as mitigation." *Id.* at p. 20. In a similar vein, though the court did not disbelieve Appellant's accounts of her "financial prowess, educational accolades and charitable works," it found these scenarios "contradictory to her assertion that she has suffered mental deficiencies as a result of motor vehicle accidents***." *Id.* at 21. The record reflects that in the rare instances where court seemed to question Appellant's credibility, it was because of conflicting scenarios that she introduced, not due to an inability to evaluate her expressions, demeanor, or intonations.

Regardless of the trial court's inability to actually watch and listen to Appellant's presentation, the State submits that she failed -despite considerable opportunity to do so- to even offer a true "allocution." Crim R. 32(A) orders a trial court, prior to sentencing to **"[a]**fford counsel an opportunity to speak on behalf of the defendant and address the defendant personally

- 8 -

and ask if he or she wishes to make a statement in his or her own behalf or present any information in mitigation of punishment." As the dissent in *Roberts II* properly notes: "The purpose of allocution is 'to permit a convicted defendant an opportunity to plead personally to the court for leniency in his sentence,' *United States v. Tamayo,* 80 F.3d 1514, 1518 (11th Cir.1996), based on the consideration that '[t]he most persuasive counsel may not be able to speak for a defendant as the defendant might, with halting eloquence, speak for himself,' *Green v. United States,* 365 U.S. 301, 304, 81 S.Ct. 653, 5 L.Ed.2d 670 (1961) (Frankfurter, J., plurality opinion). Thus, courts recognize that '[t]he right to allocute is no more than the defendant's right to stand before the [sentencer] and ask in his own voice that he be spared.' *People v. Davis,* 794 P.2d 159, 192 (Colo.1990), quoting *State v. Zola,* 112 N.J. 384, 430, 548 A.2d 1022 (1988)." *Roberts II,* at ¶103. Moreover, "[a] Crim.R. 32 inquiry is much more than an empty ritual: it represents a defendant's last opportunity to plead his case or express remorse. '[I]ts legal provenance was the common-law right of allocution.' *Green,* 365 U.S. at 304, 81 S.Ct. at 655, 5 L.Ed.2d at 673. See, also, *United States v. Myers* (C.A.5, 1998), 150 F.3d 459, 461–462; *United States v. Riascos–Suarez* (C.A.6, 1996), 73 F.3d 616, 627; Annotation (1964), 96 A.L.R.2d 1292, Section 4." *State v. Green,* 90 Ohio St.3d 352, 359-60, 2000-Ohio-182, 738 N.E.2d 1208, 1221 (2000).

As this Court re-reviews Appellant's 20-page soliloquy delivered per order of *Roberts II,* it will see that Appellant never once pled for leniency nor asked to be spared. She expressed absolutely no remorse for her actions. Instead she took her last opportunity to plead her case to instead trash the Howland Police Department, discuss her financial prowess and independence, point out inaccuracies in this Court's decision in *Roberts I,* and educate the trial court about the Chevra Kadisha (Jewish burial society). (2nd Sentencing T.p. 45-65) . Therefore, the trial court's

- 9 -

inability to personally observe Appellant's "allocution" is of no consequence since she made no effort whatsoever to express remorse or shame or to plead for mercy. Therefore, even if this Court opines that the trial committed error in following its directive to the letter by reading the record rather than allowing for an allocution redux, Appellant suffers no prejudice and any error here is harmless. Crim.R. 52. She offered no apology. She did not seek a more lenient sentence.

In this Proposition of Law, Appellant references this Court's decision in *State v. Penix*, 32 Ohio 369, 513 N.E. 2d 744 (1987), arguing that because at the time that case was decided, this Court had held that "the decisions leading to a death sentence  must be made by the same jury that convicted the offender in the guilt phase." *Id.* at 373  However, this holding from *Penix* is inapplicable to Appellant's case, and even more so to this argument. First, *Penix* did not involve a substitute judge assigned to consider an allocution given long after the jury was discharged in the original case and which the jury never heard. Second, *Penix* was abrogated by R.C. 2929.06(B). "It is evident that the intent of R.C. 2929.06(B) was to abrogate *Penix* and to make all capital offenders whose death sentences are set aside eligible for a death sentence on resentencing." *State v. White*, 132 Ohio St.3d 344, 349, 2012-Ohio-2583, 972 N.E.2d 534, 542, ¶ 21 (2012). As will be discussed later in the State's brief, Appellant was still eligible for the death penalty, and her fate, for the third time, was not in the hands of a jury.

Finally, adoption of Appellant's claim that a replacement or successor judge cannot rely on a record rather than a live presentation would contribute to a slippery slope destined to render Crim. R. 25(B) worthless. For a variety of reasons – reelection loss, illness, death, conflict of interest, retirement – the assignment to a single solitary judge to a case for all of time is not a realistic expectation. This is particularly true in capital cases which can drag on for decades and

- 10 -

which may be subject to remand long after the original judge leaves the bench.  Appellant seeks

an interpretation of R.C. 2929.03(F) which is both unreasonable and unworkable.  As a matter of

public policy, Crim. R. 25(B) provides for the inevitable reality of needing to replace a sitting

judge with someone else.  Appellant's proposal would certainly call into question the role of any

reviewing court which also operates under the same limitations of a successor trial judge tasked

with reviewing the record without the ability to see and evaluate live witnesses.  Appellant's

2007 allocution received a full and fair re-review by a successor judge and her first Proposition

of Law.

- 11 -

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2523

**STATE'S RESPONSE TO APPELLANT'S PROPOSITION OF LAW II:**
**The weight, if any, assigned to a potential mitigating factor lies within the**
**sound discretion of the trial court.**

In Proposition of Law No. II, Appellant hones in on the trial court's commentary that the mitigating factors presented by Appellant during her allocution "do not even draw the Court's attention away from the aggravating circumstances" as evidence of an improper weighing exercise. The State disagrees.

R.C. 2929.03(B) instructs the capital sentencing court to "consider, and weigh against the aggravating circumstances proved beyond a reasonable doubt, the nature and circumstances of the offense, the history, character, and background of the offender, and all of the following factors: (1) Whether the victim of the offense induced or facilitated it; (2) Whether it is unlikely that the offense would have been committed, but for the fact that the offender was under duress, coercion, or strong provocation; (3) Whether, at the time of committing the offense, the offender, because of a mental disease or defect, lacked substantial capacity to appreciate the criminality of the offender's conduct or to conform the offender's conduct to the requirements of the law; (4) The youth of the offender; (5) The offender's lack of a significant history of prior criminal convictions and delinquency adjudications; (6) If the offender was a participant in the offense but not the principal offender, the degree of the offender's participation in the offense and the degree of the offender's participation in the acts that led to the death of the victim; (7) Any other factors that are relevant to the issue of whether the offender should be sentenced to death."

A review of the court's 24-page opinion shows the trial court faithfully and fully adhered to the mandate to consider and weigh the aggravating circumstances and the mitigating factors. In fact, the court devoted seven-and-half pages to detailing potential mitigating factors and the weight the judge ascribed thereto. The trial court referenced the record, Appellant's 2003

- 12 -

unsworn statement to the jury, and her 2007 allocution in an effort to mine some plausible

mitigating factors for consideration.  By way of review, those potential mitigating factors

specifically referenced by the trial court include:

- A lack of a prior criminal convictions

- Her co-defendant's role as the lone "triggerman" in Mr. Fingerhut's murder

- Upbringing in abusive household

- Childhood rape by male cousin

- Appellant's charitable history

- Mental instability,  physical trauma and suicide attempt following several car crashes

(T.d. 257, p. 15-23).

These examples, easily gleaned from the sentencing opinion, illustrate that the court paid

scrupulous attention to these factors, but determined that they did not outweigh the aggravating

circumstances.

The Appellant first criticizes the trial court for concluding that no evidence was

submitted to verify that Mr. Fingerhut ever physically abused her.  As stated previously, the only

hint that Mr. Fingerhut was abusive toward Appellant appeared in prison love letters clearly

designed to keep Jackson interested in Appellant and her plot to kill Mr. Fingerhut while Jackson

served his prison time on unrelated charges.  In her unsworn statement to the jury, Appellant

completely disavowed any prior suggestions of domestic abuse and admitted she lied to Jackson:

"I said a lot of things that weren't true to Nathaniel [Jackson].  My husband never touched me.

He never laid a hand on me.  He gave me everything I wanted, the same as I did to him.  He

spoiled me, I spoiled him.  He was a wonderful man.***We had beautiful pictures of all of us

- 13 -

hugging and kissing and smiling. That is the way it really was. I just wanted you to know that." (T.p. Vol. XXVIII, p. 6298-6299).

In one of the few allocution references to the victim or his fate, Appellant stated: "[I]n those letters and those conversations with Nate, that is all they were, stories. I never initiated any talk of hurting anyone in the tapes or the letters. But it was my imagination, and I answered and I wrote what he told me to write, and I'm not a bad person, Your Honor. ***I never intended anything like that to happen, and I couldn't believe it, and I still can't believe it. We loved each other and had a good life." (2nd Sentencing T.p. 64-65). Notably, this Court gave the following assessment of the Appellant/Fingerhut relationship: "Most people who dealt with Roberts and Fingerhut assumed that they were married. Roberts similarly maintains that, in her mind, she did not consider herself divorced because she and Fingerhut were a devout, loving couple." *Roberts, I,* at ¶ 7.

Contrary to Appellant's statement at page 16 of her brief, there is no evidence that she was "suffering from domestic violence." From the previously quoted passages, she portrays herself as "suffering" from domestic bliss. Thus, the sentencing judge did not "speculate" as to the "veracity of the physical abuse allegations made by Roberts against Fingerhut." (Appellant's brief at p. 16; T.d. 257, p 19). The judge reviewed the record and determined her statements to Jackson were made only to fuel his resolve to murder Mr. Fingerhut and had no basis in reality.

Appellant next finds fault with the sentencing opinion because the court gave only "little weight" to Appellant's claim that she was raped by a male cousin when she was a young child. (T.d. 257, p. 19). As this Court has held "the assessment of and weight given to mitigating evidence are within the trial court's discretion. *State v. Lott,* 51 Ohio St.3d 160, 171, 555 N.E.2d 293 (1990). The fact that mitigation evidence is admissible 'does not automatically mean that it

- 14 -

must be given any weight.' *State v. Steffen,* 31 Ohio St.3d 111, 509 N.E.2d 383 (1987), paragraph two of the syllabus. '[T]he weight, if any, to assign a given factor is a matter for the discretion of the individual decisionmaker.' *State v. Fox,* 69 Ohio St.3d 183, 193, 631 N.E.2d 124 (1994)." *State v. Powell*, 132 Ohio St.3d 233, 274, 2012-Ohio-2577, 971 N.E.2d 865, 907, ¶ 230 (2012).

In her allocution, Appellant did not suggest a nexus between the alleged sexual abuse and her decision decades later to kill her common-law husband. With her explicit instructions to forego the presentation of expert testimony at her mitigation hearing, she waived any opportunity for a mental health professional to identify a correlation – if there is one - between the sexual abuse and her plot to kill Mr. Fingerhut for his insurance proceeds. Appellant cites no authority that requires the trial court to speculate on an unproven cause-and-effect relationship. Therefore, the trial court did not abuse its discretion in giving only "little weight" to the self-report of sexual abuse.

Appellant next criticizes the court for downplaying reports of physical and mental traumas suffered by Appellant as a result of two car accidents. Appellant takes issue with the court's statement that "these incidents are isolated in a time frame so far removed from the murder of Mr. Fingerhut that their relevance for mitigation is significantly decreased." (T.d. 257, p. 21-22). One of these accidents occurred in 1999, more than two-and-a-half years before the murder, the second occurring in 1983, 18 years prior to the crime, and a third one occurring in 1963, 38 years before the offense. (2nd Sentencing T.p. 48-50). Even in a light most favorable to Appellant these traumas may have caused Appellant to be depressed, but this Court has previously regarded depression as a "weak" mitigating factor. *State v. Cunningham,* 105 Ohio St. 3d 197, 2004-Ohio-7007, 824 N.E. 2d 504, ¶138. See, also, *State v. Hoffner* 102 Ohio St. 3d

- 15 -

358, 2004-Ohio-3430, 811 N.E. 2d 48, ¶119. Like the trial court, this Court has also assessed

whether the depression was related to the murder. "[D]efendant's mild depression was

undisputed, but it is unclear what role (if any) it played in these crimes. This is, at best, a weak

mitigating factor." *State v. White*, 85 Ohio St.3d 433, 456, 1999-Ohio-281, 709 N.E.2d 140, 161

(1999). Thus, the trial court's reticence to ascribe significant weight to possible case of

depression is reinforced by authority from this Court.

  Notably, the trial court next launches into a point-by-point restatement of Appellant's

three-months' worth of planning and plotting with Jackson to murder Fingerhut and concludes

that "the Court has granted little to no weight to any of the mitigating factors outlined by Roberts

in her unsworn statement or her allocution." (T.d. 257, p. 23). In short, the court focused on

Appellant's activities weeks in advance of the murder which demonstrate she was not unduly

handicapped by the physical or mental trauma emanating from the two automobile accidents.

  Appellant next disputes the trial court's interpretation of the portion of her allocution

where she discusses her social status. "Roberts did not address her wealth in her allocution."

Appellant's brf. at p. 17. The record says otherwise. It was the State's theory of the case that

Appellant teamed with Jackson to murder Mr. Fingerhut in order to collect his $500,000 worth of

life insurance benefits and to continue their affair without interference from the victim.

Appellant expended part of her valuable allocution time trying to deconstruct that theory. "I took

$75,000 out of my tax free Franklin mutual fund as a down payment on that house, and I was

making enough money that I paid it, and Robert [Fingerhut] was working occasional sales jobs

here and here and here. I invested in stocks, bonds, mutual funds. I bought real estate and sold

it, in fact I bought Robert's house so he could finally settle his divorce thing. And I sold it like

- 16 -

60 days later and I did make a great profit. *So, the way they portray me, Your Honor, its [sic] sinful.*" Emphasis added. (2nd Sentencing T.p. 60).

She continued: "The accounts were mine. The house was mine. The only way we had three cars is on my credit. Three because I bought my parents one." (2nd Sentencing T.p. 61). She went on to detail how she wired $10,000 to her son to buy a New Hampshire townhouse and gave her sister $10,000 for the IRS obligations and college tuitions. (2nd Sentencing T.p. 62). The State submits she did not just "address her wealth," but she bragged about it in open court to prove the State was "sinful" in suggesting the love of money was at the heart of this plot to kill Mr. Fingerhut. The court justifiably found that "these mischaracterizations of her social status where more upsetting to Roberts than the guilty verdict against her complicity to commit murder." (T.d. 257, p. 20). Such was fair comment on the evidence before the court.

In the final portion of this argument, Appellant says the court did not explain away why Appellant could not be a "powerful entrepreneur" and a victim of "mental trauma" all at the same time. The State disagrees. The court went on for several paragraphs explaining the lengthy planning involved in this murder which was well documented in phone calls and letters, the procurement of a hide-out for Jackson after the killing, the arrangement for Jackson to have access to the home she shared with Mr. Fingerhut, Appellant's covering for Jackson during her initial interviews with police to the extent where she tossed out red herrings by naming other potential suspects, and her feigned emotional outbursts at the crime scene. (T.d. 257, p. 22-23). In the court's analysis, Appellant's so-called "mental trauma" was not enough to diminish her ability to commit this crime. The absence of mental trauma, however, would certainly explain her ability to make, invest, and share her wealth with others.

- 17 -

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2529

The trial court did not abuse its discretion in assigning "little weight" to the mitigating factors and finding that the aggravating circumstances outweighed those mitigating factors. Appellant's Proposition of Law Two is without merit.

- 18 -

**STATE'S RESPONSE TO APPELLANT'S PROPOSITION OF LAW III:**
**A trial court's decision finding no mitigating value in the "nature and**
**circumstances" of an offense does not suggest the court impermissibly**
**converted the "nature and circumstances" into statutory or non-statutory**
**aggravating circumstances.**

Appellant criticizes the trial court for considering the "nature and circumstances" of the

offense, to the point where she accuses the court of weighing "non-statutory" aggravating

circumstances in rendering its opinion that the aggravating circumstances outweigh the

mitigating factors. This argument is without merit.

As quoted in the State's response to Proposition of Law II, the trial court is mandated by

R.C. 2929.03(B) to "consider, and weigh against the aggravating circumstances proved beyond a

reasonable doubt, the *nature and circumstances* of the offense, the history, character, and

background of the offender" as it weighs the seven potential mitigating factors listed in the

statute. The trial court acknowledged this obligation twice in its entry. (T.d. 257, p. 15, 22). In

*State v. Wogenstahl,* 75 Ohio St. 3d 344, 352-358, 1996-Ohio-219, 662 N.E. 2d 311, a case

relied upon by Appellant, this Court went to great length to differentiate between aggravating

circumstances and the nature and circumstances of the offense.

The State agrees with Appellant that the nature and circumstances of the crime may not

be weighed *against* the mitigating factors. Appellant's brf. at p. 20, quoting *Wogenstahl, supra.*

But the State disagrees that the trial court converted the "nature and circumstances" of

Appellant's crime into an aggravating circumstance or a non-statutory aggravating circumstance.

The State directs the Court's attention to the paragraphs of the trial court's entry complained of

in this Proposition of Law which the court discusses at pages 22-23. Those paragraphs are

included in the section of the opinion clearly labeled "Mitigating Factors" which appear at page

15 of the opinion. However, they are almost identical to factors listed at pages 14 and 15 as to

- 19 -

her role in the killing and in the aggravated burglary of her home and aggravated robbery of Mr. Fingerhut.

As this Court explained in *Wogenstal,* "*** R.C. 2929.03(D)(1) requires that the trial court and jury 'hear' testimony and other evidence that is relevant to the *nature and circumstances of the aggravating circumstances the offender was found guilty of committing.* Again, the 'aggravating circumstances' referred to in the statute are the R.C. 2929.04(A)(1) through (8) death-eligible aggravating circumstances that were required to have been specified in the indictment. R.C. 2929.03(D)(1) also permits the factfinder to hear the arguments of counsel that are relevant to the penalty that should be imposed on the defendant." (Emphasis added). *Id.* at 353. Because Appellant opted to present no mitigation whatsoever at her trial, the jury "heard" nothing from Appellant to assist the panel in matching "other evidence that is relevant" to the nature and circumstances of the aggravating circumstances.

Through Appellant's own choosing, her allocution was the sole source for mitigating evidence at trial. "To begin with, Roberts's allocution was the *only* relevant matter that was specifically placed before the trial court as mitigation. At her original mitigation hearing in 2003, Roberts had elected to present no evidence. Although she had given an unsworn statement before the jury, that statement contained no mitigation; indeed, Roberts had used it to insist that a sentence of death be imposed upon her. *See Roberts I,* 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, ¶ 137 and 148. And although Roberts tried to present mitigating evidence during the proceedings on remand, that attempt was (properly, as we hold today) overruled by the trial court. The trial court did find one mitigating factor in the guilt-phase record. But this merely underscores the fact that *nothing* was placed before the trial court for the specific purpose of

- 20 -

mitigating the sentence—except Roberts's statement in allocution." (Emphasis original).  *Roberts II,* at ¶56.

Appellant had a full opportunity to present "other evidence that is relevant" to the nature of the aggravating circumstances during her lengthy allocution at the re-sentencing ordered by this Court.  Appellant barely mentioned Robert Fingerhut's murder or her involvement therein.  She did nothing to distance herself from the murder itself or the aggravated burglary and aggravated robbery specifications upon which she stood convicted.  Other than bragging that her business acumen was superior to Mr. Fingerhut's, she said almost nothing about him, and deliberately stayed clear of the nature and circumstances surrounding his death.  For example, Appellant could have exploited her co-defendant's claim of self-defense in the shooting of Fingerhut – a "nature and circumstance" in Jackson's case that this Court completely dismissed – but she refrained from advancing this argument.  *State v. Jackson,* 107 Ohio St. 3d 300, 2006-Ohio-1, 839 N.E. 2d 362, at ¶¶ 77,177.  Thus, Appellant presented no evidence that any of the "nature and circumstances" of her offenses are even arguably mitigating.

Moreover, when considering the "nature and circumstances" surrounding the crime, neither the trial court nor the reviewing court are bound to confine those considerations to favorable factors for the capital defendant.  Since issuing *Wogenstahl,* this Court has offered even more direction as to the trial court's obligation in light of *Wogenstahl.*  "We have said that the sentencer must consider the nature and circumstances of the offense, whether they have mitigating impact or not and whether the defense raises them or not. We have further said that the sentencer 'may rely upon and cite the nature and circumstances of the offense as reasons supporting its finding that the aggravating circumstances were sufficient to outweigh the mitigating factors.' *State v. Stumpf* (1987), 32 Ohio St.3d 95, 512 N.E.2d 598, paragraph one of

- 21 -

the syllabus. But, cf., *Wogenstahl*, 75 Ohio St.3d at 356, 662 N.E.2d 311 ('the nature and circumstances of the offense may only enter into the statutory weighing process on the side of mitigation' (emphasis sic))." *State v. Hancock,* 108 Ohio St.3d 57, 76-77, 2006-Ohio-160, 840 N.E.2d 1032, 1054, ¶ 127.

Take for example this Court's analysis of "nature and circumstances" of the offense in another Trumbull County capital case, Roderick Davie: "The nature and circumstances of the offense are not mitigating. On the morning of June 27, 1991, Davie went to the business premises of VCA, from which he had been fired, and made an unauthorized entry while carrying a gun. He rounded up the three VCA employees present that morning and shot two of them, killing one instantly. When his gun ran out of bullets, he chased down the office secretary and bludgeoned her to death. When Everett was able to escape the scene, even though he had been shot, Davie tried to run him over with a VCA truck. Before he fled the scene, Davie robbed two of his victims." *State v. Davie*, 80 Ohio St.3d 311, 333, 1997-Ohio-341, 686 N.E.2d 245, 265.

Just a year earlier, this Court wrote as follows in another capital case: "The nature and circumstances surrounding the offense are not mitigating. Awkal acted in a cold, calculating fashion. He threatened Latife and her family before the murder. He then prepared himself, his car, and his personal effects for the events that would follow. After this preparation, Awkal went to the basement of the courthouse and calmly, repeatedly shot and killed his wife and her brother at close range. Then, in an attempt to escape these killings, he pointed his loaded gun at his daughter's head and threatened to kill her." *State v. Awkal*, 76 Ohio St.3d 324, 338, 1996-Ohio-395, 667 N.E.2d 960, 972 (1996).

It should be noted that both *Davie* and *Awkal* are both post-*Wogenstall* cases. Based on this Court's own analyses, it is not improper for a trial court to recite facts as they relate to the

- 22 -

"nature and circumstances" of the case even though those facts may not be beneficial to the capital defendant.  If the court is duty bound to state why the nature and circumstances are not mitigating, it is incumbent upon the court to articulate what those "nature and circumstances" are.  By doing so, the court does not negate mitigation nor convert the "nature and circumstances" of the crime into aggravating circumstances.

Given that the trial court adopted the format promulgated by this very Court in *Jackson, Awkal,* and *Daive* when determining the effect of the "nature and circumstances" of the offenses for purposes of mitigation, this Court can find no error.  Appellant's Proposition of Law III lacks merit.

- 23 -

**STATE'S RESPONSE TO APPELLANT'S PROPOSITION OF LAW IV: A capital defendant has no entitlement to a full evidentiary penalty phase hearing when a superior court remands a case for the sole purpose of reweighing mitigating factors and aggravating circumstances in light of the defendant's allocution.**

Appellant argued in her first Proposition of Law that because a successor judge was assigned to her resentencing, she was entitled to a life sentence. In her fourth and final Proposition of Law, Appellant argues that because a successor judge presided at her third sentencing, she has a constitutional entitlement to "a completely new penalty phase." This argument for a new hearing is not only without merit, but it is completely contrary to this Court's ruling in *Roberts II.*

As the State addressed in its response to Appellant's Proposition of Law I, this Court gave very clear instructions to the trial court to reopen Appellant's case where the error occurred, which was at the sentencing hearing itself, not during the mitigation phase: "In *Roberts I,* we instructed the trial court as follows: 'On remand, the trial judge will afford Roberts her right to allocute, and the trial court shall personally review and evaluate the evidence, weigh the aggravating circumstances against any relevant mitigating evidence, and determine anew the appropriateness of the death penalty as required by R.C. 2929.03. The trial court will then personally prepare an entirely new penalty opinion as required by R.C. 2929.03(F) and conduct whatever other proceedings are required by law and consistent with this opinion. 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, ¶ 167.' *The above order says nothing about holding a new evidentiary hearing. Nor is a requirement to hold a new evidentiary hearing implicit in our instructing the trial court to 'weigh the aggravating circumstances against any relevant mitigating evidence' and 'determine anew the appropriateness of the death penalty.'*

- 24 -

Relevant mitigating evidence may be found in the guilt phase, as well as in the penalty phase. Indeed, R.C. 2929.03(D)(1) *requires* the trial court to consider 'any evidence raised at trial' that is relevant 'to any factors in mitigation of the imposition of the sentence of death'." (Emphasis added). *Roberts II,* at ¶¶42, 43.

Citing to this Court's prior opinions in *State v. Davis*, 63 Ohio St. 3d 44, 584 N.E. 2d 1192 (1992), and *State v. Chinn,* 85 Ohio St. 3d 548, 1999-Ohio-288, 709 N.E. 2d 1166, this Court clearly explained that upon remand, the resentencing court was required to rewind the proceedings only to the point of the error, not before: "[W]hen 'errors requiring resentencing occurred after the close of the mitigation phase,' the correct procedure was for the trial court 'to proceed on remand from the point at which the error occurred.' *Chinn,* 85 Ohio St.3d at 565, 709 N.E.2d 1166. Indeed, we stated that 'the trial court was *required* to proceed on remand from the point at which the errors had occurred, i.e., after the jury had returned its recommendation of death.' (Emphasis added.) *Id.* at 564, 709 N.E.2d 1166. The trial court was bound by those precedents, as well as by our remand order in *Roberts I. Roberts I* neither overruled nor modified *Davis II* or *Chinn* and did not order the trial court to hold a new penalty-phase evidentiary hearing. Thus, *Roberts I* cannot reasonably be understood as imposing a requirement that *Davis II* and *Chinn* had expressly declined to impose." *Roberts II*, at ¶¶ 45-46.

It is a well-established Ohio precedent that a case is remanded to the trial court at point where the error occurs. " 'Upon remand from an appellate court, the lower court is required to proceed from the point at which the error occurred.' *State ex rel. Stevenson v. Murray* (1982), 69 Ohio St.2d 112, 113, 23 O.O.3d 160, 431 N.E.2d 324. This rule has been applied to criminal cases. See *State v. Filiaggi* (1999), 86 Ohio St.3d 230, 240, 714

- 25 -

N.E.2d 867; *State v. Gonzales,* 151 Ohio App.3d 160, 2002-Ohio-4937, 783 N.E.2d 903,

¶ 61; *State v. Leonard* (June 21, 2001), Franklin App. No. 00AP–1229, 2001 WL 697999.

*State ex rel. Douglas v. Burlew*, 106 Ohio St.3d 180, 182, 2005-Ohio-4382, 833 N.E.2d

293, 295, ¶ 11.  Therefore, Appellant has not been singled out for disparate treatment.

Moreover, she writes in her brief at page 21, that "the *Roberts II* opinion did not

address the possibility of a different judge writing the opinion than the judge who had

erred originally."  Appellant's brf. at p. 21.  The State begs to differ.  This Court was well

aware at the time it decided *Roberts II,* that Trumbull County Common Pleas Judge John

Stuard, who presided over Appellant's trial and first resentencing, had not only left the

bench but died and that Appellant's second resentencing "necessarily will be conducted

by a different judge." *Roberts* II, at ¶ 78. In light of Judge Stuard's unavailability, this

Court still specifically instructed the new judge to pick up where Appellant's 2007

allocution left off, to reweigh the mitigating factor and aggravating circumstances in light

of that allocution, and to impose a new sentence.  This Court went to great lengths to say

a new evidentiary hearing, as sought by Appellant in this Proposition of Law, is

decidedly *not* part of the court-ordered remand.

Appellant in her brief references R.C. 2929.06(B) which reads as follows:

"Whenever any court of this state or any federal court sets aside, nullifies, or vacates a

sentence of death imposed upon an offender because of error that occurred in the

sentencing phase of the trial and if division (A) of this section does not apply, the trial

court that sentenced the offender shall conduct a new hearing to resentence the offender.

If the offender was tried by a jury, the trial court shall impanel a new jury for the hearing.

- 26 -

If the offender was tried by a panel of three judges, that panel or, if necessary, a new panel of three judges shall conduct the hearing."

In light of R.C. 2929.06(B), Appellant's demand in this Proposition of Law is murky. Appellant was tried by a jury, but the error in this case occurred long after the jury was discharged.  She repeatedly requests a "fully evidentiary hearing," but does not specifically request that pursuant to R.C. 2929.06(B), a jury should be empanelled. While the State does not presume that Appellant seeks a remand to a jury, it should be noted that R.C. 2929.06(B) was modified in most recent form January 1, 2008, which was well before this Court decided *Roberts II.* This Court nevertheless ruled that Appellant's case would be remanded to Judge's Stuard's replacement, not to a jury for further consideration.

And though the case is distinguishable because of a jury waiver, this Court has held since *Roberts II* that even on resentencing in a capital case, there is no constitutional right to a jury.  "Because there is no constitutional right to be sentenced by a jury, the Sixth Amendment does not require a waiver in order for a defendant to be sentenced without a jury. 'Almost without exception, the requirement of a knowing and intelligent waiver has been applied only to those rights which the Constitution guarantees to a criminal defendant in order to preserve a fair trial.' *Schneckloth v. Bustamonte,* 412 U.S. 218, 237, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Thus, even were we to hold the 1984 jury waiver insufficient or inapplicable as to the 2009 resentencing hearing, we would find no constitutional bar to conducting that hearing without a jury pursuant to R.C. 2929.06(B)." *State v. Davis,* 139 Ohio St.3d 122, 130, 2014-Ohio-1615, 9 N.E.3d 1031,

- 27 -

1042, ¶ 40. *reconsideration denied,* 139 Ohio St.3d 1473, 2014-Ohio-3012, 11 N.E.3d 1194, ¶ 40 and *cert. denied,* 135 S.Ct. 1494, 191 L.Ed.2d 452 (2015).

Though Appellant does not distinguish whether she is seeks a remand to a lone judge or to a 12-member jury for further consideration, the State points out that no constitutional error occurred merely because a judge, without the assistance of a jury, imposed Appellant's death sentence for the third time.

As in her first Proposition of Law, Appellant rehashes her argument that the successor judge was somehow disadvantaged because he did not personally listen to Appellant pleading her case in allocution. Again, this supposed handicap would have been evident to this Court when it remanded the case for a third sentencing hearing. She argues that "[c]redibility assessments generally are less than accurate when made from bare print alone." Appellant's Brf. at p. 22. Yet nothing appears in the record to suggest Judge Rice disbelieved Appellant's version of the possible mitigating factors she articulated in her 2007 allocution. For example, there is no corroborating evidence in the record that Appellant was raped by a male cousin when she was a young child; but the court nevertheless addressed this potential mitigating factor giving it "little weight as there is no direct connection to the underlying crime." (T.d 257, p. 19).

It also merits mention that appellate courts, including this one, are constantly relegated to the review of "bare print alone." Such is the very nature of appellate review. And while there may be some nuisances missed without the benefit of live testimony, the reviewing courts manage to soldier through and render sound opinions based on the entirety of the record. That is exactly what happened in the court below and it happened without constitutional error.

- 28 -

Appellant is not entitled to a new evidentiary hearing. The trial court scrupulously followed this Court's instructions in *Roberts II.* For this Court to reverse itself and find otherwise would set a dangerous precedent signaling to the lower courts that this Court's plain directives cannot be followed with confidence and judicial certainty. Appellant's Proposition of Law IV lacks merit.

## CONCLUSION

The State respectfully request that this Court affirm Appellant's death sentence, a sentence specifically requested by the Appellant and recommended by a jury.

Respectfully submitted:
DENNIS WATKINS (#0009949)
Trumbull County Prosecuting Attorney


LuWAYNE ANNOS (#0055651)
Assistant Prosecuting Attorney
Trumbull County Prosecutor's Office
160 High St. 4th Floor
Warren, Ohio        44481

Telephone: (330) 675-2426
Facsimile: (330) 675-2431

COUNSEL FOR PLAINTIFF-APPELLEE,
THE STATE OF OHIO

- 29 -

**PROOF OF SERVICE**

I do hereby certify that a copy of the foregoing brief was sent by ordinary U.S. Mail to

Atty. David L. Doughten (#0002847) and Atty. Robert Dixon (#0040197) 4403 St. Clair Ave.,

Cleveland, Ohio 44103-1125, and  Counsel for Defendant-Appellant Donna Roberts on this 14th

Day of July, 2015.


LuWAYNE ANNOS (#0055651)
Assistant Prosecuting Attorney

- 30 -

Supreme Court of Ohio Clerk of Court - Filed August 27, 2015 - Case No. 2014-0989

# IN THE SUPREME COURT OF OHIO

| | | |
|---|---|---|
| **State of Ohio,** | : | |
| | : | |
| **Plaintiff - Appellee,** | : | **CASE NO.  2014-0989** |
| | : | |
| **v.** | : | |
| | : | |
| **Donna Roberts,** | : | |
| | : | |
| **Defendant - Appellant.** | : | |
| | : | **CAPITAL CASE** |
| | : | |

---

### REPLY MERIT BRIEF OF APPELLANT, DONNA ROBERTS

---

COUNSEL FOR APPELLEE:

DENNIS WATKINS,  ESQ.  0009949
Trumbull County Prosecutor
4th Floor Administration Building
160 High Street NW
Warren OH 44481
(330) 675-2426

LUWAYNE ANNOS - 0055651
Assistant Trumbull County Prosecutor

COUNSEL FOR APPELLANT:

DAVID L. DOUGHTEN, ESQ.
Regis. No. 0002847
4403 St. Clair Avenue
Cleveland, OH 44103-1125
(216) 361-1112

ROBERT A. DIXON, ESQ.
Regis. No.  0040197
4403 St. Clair Avenue
Cleveland, OH 44103-1125
(216) 432-1992

**TABLE OF CONTENTS**

**PAGES**

**TABLE OF AUTHORITIES**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

**REPLY OVERVIEW**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**ARGUMENT**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      Proposition of Law One:  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      Where a capital sentence is remanded for a new sentencing hearing because of the  trial court failure to consider and give effect to the defendant's allocution, a sentence of death is precluded if a different judge conducts the hearing without allowing the defendant to speak because proper weighing is impossible without ever having heard the defendant speak.

**CONCLUSION**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**CERTIFICATE OF SERVICE**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

ii

## TABLE OF AUTHORITIES

**CASES**

Buchanan v. Angelone (1998), 522 U.S. 269 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Lockett v. Ohio (1978), 438 U.S. 586 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

State v. Campbell, 90 Ohio St.3d 320, 2000-Ohio-183 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

State v. Drummond, 111 Ohio St.3d 14, 2006-Ohio-5048 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

State v. Gapen, 104 Ohio St.3d 358, 2004-Ohio-6548 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

State v. Goff, 82 Ohio St.3d 123, 1998-Ohio-369 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

State v. Hughbanks, 99 Ohio St.3d 365, 2003-Ohio-4121 . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

State v. Hunter, 131 Ohio St.3d 67, 2011 Ohio 6524 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

State v. Jones, 135, Ohio St.3d 10; 2012 Ohio 5677 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

State v. Keene, 81 Ohio St.3d 646, 671, 1998-Ohio-342 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

State v. Myers, 97 Ohio St.3d 335, 2002-Ohio-6658 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

State v. Penix, (1987) 32 Ohio St.3d 369 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

State v. Reynolds, 80 Ohio St.3d 670, 1998-Ohio-171 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

State v. Roberts (2006), 110 Ohio St. 3d 71, 2006 Ohio 3665 . . . . . . . . . . . . . . . . . . . . . . . . 4

State v. Roberts, 137 Ohio St.3d 230, 2013 Ohio 4580 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

State v. Short, 129 Ohio St. 3d 360, 2011 Ohio 3641 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Tuilaepa v. California (1994), 512 U.S. 967 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Woodson v. North Carolina  (1976), 428 U.S. 280 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Zant v. Stephens (1983), 462 U.S. 862 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

iii

**PROVISIONS/STATUTES**

R.C. 2929.03(F) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5


**RULES**

Criminal Rule 25(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 6


**CONSTITUTIONAL PROVISIONS**

Fifth Amendment, United States Constitution . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Eighth Amendment, United States Constitution . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8

Fourteenth Amendment, United States Constitution . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8

iv

**REPLY OVERVIEW**

Roberts here responds to the prosecutors argument for the First Assignment of Error only.  She rests on her arguments addressed in her Brief on the Merits for the Second, Third and Fourth Assignments of Error.

1

## ARGUMENT

**Proposition of Law I:**

> **Where a capital sentence is remanded for a new sentencing hearing because of the trial court's failure to consider and give effect to the defendant's allocution, a sentence of death is precluded if a different judge conducts the hearing without allowing the defendant to speak because proper weighing is impossible without ever having heard the defendant speak.**

As noted in Roberts' Brief on the Merits, in <u>State v. Roberts II</u>, this Court determined that a sentencing judge must consider the allocution in determining whether the sentence of death is appropriate.  In determining the weight to be provided to the potential mitigation contained within the words of the allocution, the sentencing court must assess the sincerity of those words.  This can only be ascertained by hearing the voice of the defendant.  Inherent in ones right to speak is the right to be heard.  A defendant's allocution is made up of more than mere words.  It is a culmination of her presentation of self; body language, tone, cadence, emotional expression, and the general appearance of the defendant.  Often one's appearance communicates more information, or at least different information,  than the actual words emanating from the speaker's mouth. Because of this, a judge cannot fulfill the purpose of allocution from reading a defendant's words from a piece of paper.

The Appellee argues that Criminal Rule 25(B) allowed the sitting judge here to write the R.C. §2929.03 opinion in this case without ever having personally heard a single word from Roberts in any aspect of this case.  This rule is not germane to the argument.  Roberts did not and does not object to the fact that a different judge presided over the case.  Obviously there was not other option.  The argument is simply whether in a death penalty case, where the judge is required to provide weight to identifiable mitigating factors, the judge may not meet allocution

2

requirements without actually listening to the defendant and watching the defendant in the presentation of that allocution.

The Appellee stresses that the here judge did identify some factors in mitigation in the opinion.  This is accurate.  But this is beside the point.  If the Appellee is correct in the position that a judge may accurately consider allocution without the defendant being able to actually present it, there would be no need for a defendant's presence for this purpose.

In State v. Campbell, 90 Ohio St.3d 320, 2000-Ohio-183, this Court held that pursuant to Crim.R. 32(A)(1), before imposing sentence, a trial court must address the defendant personally and ask whether he or she wishes to make a statement in his or her own behalf or present any information in mitigation of punishment.  This is a strict interpretation of the rule, Crim.R. 32(A)(1), which holds "[b]efore imposing sentence the court shall afford counsel an opportunity to speak on behalf of the defendant and also shall address the defendant *personally* and ask if he or she wishes to make a statement in his or her own behalf or present any information in mitigation of punishment." ( Emphasis added)

Campbell held that this rule applies to both capital cases and noncapital cases.  In a case in which the trial court has imposed sentence without first asking the defendant whether he or she wishes to exercise the right of allocution created by Crim.R. 32(A), re-sentencing is required unless the error is invited error or harmless error.

Roberts has the duty to provide this Court with possible contrary authority.  To that end, this Court's decision in State v. Reynolds, 80 Ohio St.3d 670, 684, 1998-Ohio-171, must be addressed. Reynolds held that the penalty phase in a capital case is not a substitute for defendant's right of allocution.  In Reynolds, the trial court failed to ask the defendant if he

3

wished to allocute.  This Court found no prejudicial error because the defendant had already made an unsworn statement, and presented a personal letter to the court during the mitigation phase, and had defense counsel make a statement on his behalf. Id.

It is accurate that Roberts made an unsworn statement.  It could be argued that her reduced to writing allocution was similar to the personal letter Reynolds provided to his judge during mitigation.  However, unlike Reynolds, the judge writing the R.C. §2929.03(F) for Roberts has no prior contact with her.  Roberts' judge did not hear her present her unsworn statement. He did not watch her as she presented it.

In another case in which the judge failed to allow allocution, this Court did not find prejudicial error in State v. Myers, 97 Ohio St.3d 335, 2002-Ohio-6658.  However, Myers exercised the right to speak on his own behalf during the mitigation phase and subjected himself to cross-examination. This testimony encompassed over 200 pages of the mitigation phase transcript. This enabled him to directly appeal to the judge for his life.

This did not occur in Roberts' trial.  She did not subject herself to cross-examination. Roberts' unsworn statement expressed anger and outrage at the jury and lead detective, and was not utilized by the Roberts to address the court directly, as apparently occurred in Myers.

Further, both the above cases pre-dated Roberts I, State v. Roberts (2006), 110 Ohio St. 3d 71, 2006 Ohio 3665, where her sentence of death was reversed because of the failure to allow her allocution (in addition to the failure of the judge to write an independent R.C. §2929.03(F) opinion).  In Roberts II, State v. Roberts, 137 Ohio St.3d 230, 2013 Ohio 4580, this Court again reversed her sentence again because of the failure of the sentencing judge to consider and give effect to the possible mitigation Roberts referenced in her allocution.  Clearly this Court has

4

recognized the constitutional mandate of allowing a capital defendant the ability to present

mitigation at all procedures available under the criminal procedure of this state prior to the actual

sentencing by the sentencing court.

The issue then, is what constitutes the term "personally" in the rule.  If a judge merely

reads what the defendant stated on a previous occasion, is this in compliance with the rule and as

argued elsewhere, Eighth Amendment requirements?

**Present Case**

Roberts' judge rendered a sentence without personally addressing the defendant.  The

present sitting judge has never addressed the defendant, but rather has merely read a transcript of

the allocution made to a prior judge.

The prosecutor argues that no error occurred here because "for the most part, the

successor judge did not question the veracity of Appellant's allocution. The entry shows careful

attention to any potential mitigating factors Appellant may have presented in 2007."  Appellee

Brief p. 7.   This argument highlights the difference between the views of the parties.  The

prosecutor believes that it is sufficient for Eighth Amendment purposes that the mitigation be

gleaned for the bare written word of her presentation; basically a proffer of the information.

Roberts argues that this process deprives her the opportunity of the *weight* of the possible

mitigation to be properly assessed.

It is understood that the Robert's judge was under a limited order on the remand to not

hear a second allocution.  But Roberts II did not address what procedure to use if a different

judge was to write the R.C. §2929.03(F) opinion than had heard the allocution.

**There Is No Waiver by Roberts for Failing to Provide a "True Allocution"**

The Appellee attacks Roberts for not offering a "true allocution." Appellee Brief p. 8.  A "true allocution" is defined, according to Crim R. 32(A) as a ". . . statement his or her own behalf or present any information in mitigation of punishment."  The Appellee believed that "the inability to personally observe Appellant's "allocution" is of no consequence since she made no effort whatsoever to express remorse or shame or plead for mercy."  Appellee brief, p. 10.  This argument reveals a basic misunderstanding of the presentation of mitigation in a capital context.

Mitigation is not limited to the above expressions. This Court has not so limited the purpose of allocution in a capital sentencing.  "The purpose of allocution is to permit the defendant to speak on is own behalf or present any information in mitigation of punishment." State v. Short, 129 Ohio St. 3d 360, 2011 Ohio 3641.

The Supreme Court has clearly established that "in capital cases the fundamental respect for humanity underlying the Eighth Amendment . . . requires consideration of the character and record of the individual offender and the circumstances of the particular offense as a constitutionally indispensable part of the process of inflicting the penalty of death." Lockett v. Ohio (1978), 438 U.S. 586, at 604,(quoting Woodson v. North Carolina (1976), 428 U.S. 280, 304. This means that "the Eighth and Fourteenth Amendments require that the sentencer . . . not be precluded from considering, as a mitigating factor, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." Id.

This consideration of mitigating factors -- required by the Eighth Amendment -- is necessary to allow the required individualized determination of whether a defendant should be

6

sentenced to death.  <u>Tuilaepa v. California</u> (1994), 512 U.S. 967, 971-73; <u>Zant v. Stephens</u>

(1983), 462 U.S. 862, 878-79. The Supreme Court's "consistent concern has been that

restrictions on the jury's sentencing determination not preclude the jury from being able to give

effect to mitigating evidence." <u>Buchanan v. Angelone</u> (1998), 522 U.S. 269, 276.  This applies

to restrictions of consideration by the sentencer, judge or jury.

> To meet that requirement, this Court has defined the term broadly.
>
> Mitigating factors under Ohio Rev. Code Ann. § 2929.04(B) are not related to a defendant's culpability but, rather, are those factors that are relevant to the issue of whether a defendant convicted under Ohio Rev. Code Ann. §§ 2903.01 should be sentenced to death. A sentencing authority may not refuse to consider, as a matter of law, any relevant mitigating evidence.

<u>State v. Goff</u>, 82 Ohio St.3d 123, 130, 1998-Ohio-369.

> Furthermore, where a defendant does express remorse, it is often downgraded as

insincere or otherwise provided little weight.  Indeed, this Court has found on numerous

occasions that statement of remorse are afforded little weight, particularly, as in the present

Roberts, where the defendant is not admitting full responsibility.  <u>State v. Keene</u>, 81 Ohio St.3d

646, 671, 1998-Ohio-342 (remorse entitled to little weight in mitigation); <u>State v. Hughbanks</u>, 99

Ohio St.3d 365, 2003-Ohio-4121 at ¶¶ 143; <u>State v. Drummond</u>, 111 Ohio St.3d 14, 2006-Ohio-

5048 (sending condolences to family given little weight due to denial of any responsibility for

death); <u>State v. Gapen</u>, 104 Ohio St.3d 358, 2004-Ohio-6548 (Gapen's apologies to the victims'

families are entitled to weight in mitigation. However, Gapen never specifically apologized for

murdering victim); <u>State v. Jones</u>, 135, Ohio St.3d 10; 2012 Ohio 5677 (full acceptance for his

actions resulted in court not providing full weight that it might otherwise have provided for

expression of remorse, *citing* <u>State v. Hunter</u>, 131 Ohio St.3d 67, 2011 Ohio 6524)

7

Thus, Roberts did not waive her allocution by failing to express remorse.  She did express and offer her statement as to why the sentencing court ought not sentence her to death, which is permissible by statute and the rule of this Court.

**Summary**

Here, as in <u>State v. Penix</u>, (1987) 32 Ohio St.3d 369, there is no procedure in the statute for sentencing Roberts to death on the remand.  To paraphrase <u>Penix</u>, there are simply no statutory provisions for another judge to make these crucial determinations.  Therefore, a life sentence must be instituted.  Even if a judicial substitution were permitted by statute, such a procedure would not meet federal constitutional mandates under the Fifth, Eighth and Fourteenth Amendments.

8

## **CONCLUSION**

Pursuant to First Propositions of Law, the defendant-appellant, Donna Roberts, respectfully requests that this Honorable Court reverse the sentence of death and find a life sentence to be appropriate.  In the alternative, pursuant to Propositions of Law II, III and IV,  the defendant-appellant respectfully requests that this Court reverse the sentence of death and remand her case for a new sentencing hearing.  As this judge had not heard the original hearing evidence, it is requested that a full penalty determination hearing be ordered before a newly selected jury.

<div style="margin-left:50%">

Respectfully submitted,

/s/David L. Doughten
DAVID L. DOUGHTEN
Counsel for Appellant Roberts

/s/ Robert A. Dixon
ROBERT A. DIXON
Counsel for Appellant Roberts

</div>

9

## CERTIFICATE OF SERVICE

A copy of the foregoing appellant's Reply Brief was served upon Dennis Watkins, Trumbull County Prosecutor and/or LuWayne Annos, Esq. Assistant Trumbull County Prosecutor, Administration Building, 160 High Street, Warren, Ohio 44481, by Regular U. S. mail on this <u>27th</u> day of August, 2015.

/s/David L. Doughten
DAVID L. DOUGHTEN
ROBERT A DIXON

Counsel for Appellant Roberts

10

# The Supreme Court of Ohio



NOV -2 2016

November 2, 2016 SUPREME COURT OF OHIO
CLERK OF COURT

State of Ohio

v.                                                    Case No. 2014-0989

Donna Marie Roberts

**NOTICE OF ORAL ARGUMENT**

TO:    Dennis Watkins                                David L. Doughten

        The Supreme Court of Ohio will hold an oral argument on the merits in this case on Tuesday, February 7, 2017. Time allowed for oral argument will be 30 minutes per side.

        Attorneys who argue before the court must comply with the provisions of Rule 17.03 through 17.05 of the Rules of Practice of the Supreme Court of Ohio and the instructions that follow. Pursuant to Rule 17.03, counsel for either or both parties may waive oral argument and submit the case upon briefs. The Clerk must be notified by filing a waiver of oral argument at least seven days before the date scheduled for the oral argument.

        Court convenes promptly at 9 a.m. Counsel in all cases are expected to be present when court convenes. Counsel must register with the Chief Deputy Clerk **prior to 8:45 a.m.** at the information desk outside the Courtroom on the first floor of the Ohio Judicial Center.

        For more information on protocol for presenting oral argument before the Supreme Court of Ohio, counsel may refer to the "Guide for Counsel Presenting Oral Argument" located at www.supremecourt.ohio.gov/clerk.

        *Note:  Pursuant to S.Ct.Prac.R. 17.01(D), assignments in the Supreme Court take precedence over other assignments.*


_____SANDRA H. GROSKO_____ CLERK

_____ CHIEF DEPUTY CLERK

Supreme Court of Ohio Clerk of Court - Filed January 12, 2017 - Case No. 2014-0989

IN THE SUPREME COURT OF OHIO

| | | |
|---|---|---|
| STATE OF OHIO,<br>Appellee , | )<br>)<br>) | **CASE NO. 2014-0989** |
| | )<br>) | On Appeal from the Trumbull |
| v. | )<br>) | County Court of Common Pleas,<br>No. 2001 CR 793 |
| DONNA ROBERTS<br>Appellant. | )<br>)<br>) | |

NOTICE OF APPEARANCE

DENNIS WATKINS (#0009949)
Prosecuting Attorney, by
LuWAYNE ANNOS (#0055651)
Assistant Prosecuting Attorney
ASHLEIGH MUSICK (#0096078)
Assistant Prosecuting Attorney
Trumbull County Prosecutor's Office
160 High Street, N.W.
4th Floor, Administration Building
Warren, Ohio 44481
Telephone No. (330) 675-2426
Fax No. (330) 675-2431
psannos@co.trumbull.oh.us
psmusick@co.trumbull.oh.us

DAVID. L. DOUGHTEN (#0002847)
4403 St. Clair Ave.
Cleveland, Ohio 44103-1125
Telephone No. (216) 361-1112


ROBERT A. DIXON (#0040197)
4403 St. Clair Ave.
Cleveland, Ohio 44103-1125
Telephone No. (216) 432-1992


COUNSEL FOR
PLAINTIFF-APPELLEE
STATE OF OHIO

COUNSEL FOR
DEFENDANT-APPELLANT
DONNA ROBERTS

IN THE SUPREME COURT OF OHIO

STATE OF OHIO,                          )
    Appellee ,                          )     **CASE NO. 2014-0989**
                                        )
                                        )     On Appeal from the Trumbull
    v.                                  )     County Court of Common Pleas,
                                        )     No. 2001 CR 793
DONNA ROBERTS                           )
    Appellant.                          )
                                        )

---

NOTICE OF APPEARANCE

---

Now comes, the State of Ohio, by and through the Trumbull County Prosecuting

Attorney and hereby files a Notice of Appearance as co-counsel in the above-captioned case.

Undersigned counsel will appear in addition to current counsel of record, Atty. LuWayne Annos,

for oral arguments scheduled on February 7, 2017.


Respectfully submitted,
DENNIS WATKINS (#0009949)
Prosecuting Attorney,

*Ashleigh Musick*

ASHLEIGH MUSICK (#0096078)
Assistant Prosecuting Attorney
Trumbull County Prosecutor's Office
160 High Street, N.W.
4th Floor, Administration Building
Warren, Ohio 44481
Telephone No. (330) 675-2426
Fax No. (330) 675-2431
psannos@co.trumbull.oh.us

ATTORNEY FOR
PLAINTIFF-APPELLEE
STATE OF OHIO

**PROOF OF SERVICE**

I do hereby certify that a copy of the foregoing Notice of Appearance was sent by

ordinary mail to Attys. David Doughten and Robert Dixon, Counsel for Defendant-Appellant

Donna Roberts, 4403 St. Clair Ave., Cleveland, Ohio 44103 on this _12th_ day of January, 2017.

ASHLEIGH MUSICK (#0096078)
Assistant Prosecuting Attorney

Supreme Court of Ohio Clerk of Court - Filed January 18, 2017 - Case No. 2014-0989

# IN THE SUPREME COURT OF OHIO

| | | |
|---|---|---|
| State of Ohio, | : | |
| | : | |
| Plaintiff - Appellee, | : | CASE NO.  2014-0989 |
| | : | |
| v. | : | |
| | : | |
| Donna Roberts, | : | |
| | : | |
| Defendant - Appellant. | : | |
| | : | CAPITAL CASE |
| | : | |

_____

## APPELLANT'S SUPPLEMENTAL AUTHORITIES

_____

COUNSEL FOR APPELLEE:

DENNIS WATKINS,  ESQ.  0009949
Trumbull County Prosecutor
4th Floor Administration Building
160 High Street NW
Warren OH 44481
(330) 675-2426

LUWAYNE ANNOS - 0055651
Assistant Trumbull County Prosecutor

COUNSEL FOR APPELLANT:

DAVID L. DOUGHTEN, ESQ.
Regis. No. 0002847
4403 St. Clair Avenue
Cleveland, OH 44103-1125
(216) 361-1112

ROBERT A. DIXON, ESQ.
Regis. No.  0040197
4403 St. Clair Avenue
Cleveland, OH 44103-1125
(216) 432-1992

IN THE SUPREME COURT OF OHIO
No.  2014-0989


State of Ohio,                                :
                                              :
                        Appellee,             :
                                              :
        -v-                                   :
                                              :
Donna Roberts,                                :
                                              :
                        Appellant.            :


        Now comes the appellant, Donna Roberts, and pursuant to Supreme Court Rule of Practice

17.8, hereby provides this Court a list of Additional Authorities to be that may relied upon during

oral argument scheduled for February 7, 2017.   The additional authorities are:

Proposition of Law One.

1.    <u>Hurst v. Florida</u>, ___ U.S. _____, 136 S.Ct. 616, 193 L.Ed.2d 504 (2016).

2.    <u>State v. Campbell</u>, (2000), 90 Ohio St.3d 320, 2000 Ohio 183.

3.    <u>State v. Kirkland</u>, 2010-0854, 2016-Ohio-2807

4.    <u>State v. Rogers II</u>, 28 Ohio St.2d, 504 N.E.2d 52 (Ohio 1986)

5.    <u>Spaziano v. Florida</u> , 468 U.S. 447 (1984)(expressly overruled by <u>Hurst</u>)

                                        Respectfully submitted,


                                        <u>S/David L. Doughten</u>
                                        David L. Doughten


                                        <u>S/Robert A. Dixon</u>
                                        Robert A. Dixon

                                        Counsel for Appellant

**Proof of Service**

A copy of the foregoing Notice of Appellant's Supplemental Authorities was served upon Dennis Watkins, Trumbull County Prosecutor and/or LuWayne Annos, Esq. Assistant Trumbull County Prosecutor, Administration Building, 160 High Street, Warren, Ohio 44481, through this electronic filing system and by Regular U. S. mail on this <u>18th</u> day of January, 2017.

/s/David L. Doughten
DAVID L. DOUGHTEN
ROBERT A DIXON

Counsel for Appellant Roberts

Supreme Court of Ohio Clerk of Court - Filed January 30, 2017 - Case No. 2014-0989

## IN THE SUPREME COURT OF OHIO

STATE OF OHIO,              )    **CASE NO. 2014-0989**
     Plaintiff-Appellee,    )

    v.                )    On Appeal from the Trumbull

DONNA ROBERTS,
     Defendant-Appellant.

| | | |
|---|---|---|
| STATE OF OHIO,<br>  Plaintiff-Appellee,<br><br>  v.<br><br>DONNA ROBERTS,<br>  Defendant-Appellant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **CASE NO. 2014-0989**<br><br>On Appeal from the Trumbull<br>County Court of Common Pleas<br>No. 01-CR-793<br><br>**DEATH PENALTY CASE** |

---
### APPELLEE'S SUPPLEMENTAL AUTHORITIES
---

DENNIS WATKINS (#0009949)
Prosecuting Attorney, by
LuWAYNE ANNOS (#0055651)
ASHLEIGH MUSICK (#0096078)
Assistant Prosecuting Attorneys
Trumbull County Prosecutor's Office
160 High Street, N.W.
Fourth Floor, Administration Bldg.
Warren, Ohio 44481
Telephone No. (330) 675-2426
Fax No. (330) 675-2431
psannos@co.trumbull.oh.us

DAVID L. DOUGHTEN (#0002847)
4403 St. Clair Ave.
Cleveland, Ohio  44103-1125
Telephone No. (216) 361-1112


ROBERT A. DIXON (#0040197)
4403 St. Clair Avenue
Cleveland, Ohio  44103-1125
Telephone No. (216) 432-1992


COUNSEL FOR
PLAINTIFF-APPELLEE
THE STATE OF OHIO

COUNSEL FOR
DEFENDANT-APPELLANT
DONNA ROBERTS

IN THE SUPREME COURT OF OHIO

STATE OF OHIO,
     Plaintiff-Appellee,

     v.

DONNA ROBERTS,
     Defendant-Appellant.

)
)
)
)
)
)
)
)
)

**CASE NO. 2014-0989**

On Appeal from the Trumbull
County Court of Common Pleas
No. 01-CR-793

**DEATH PENALTY CASE**

---

**APPELLEE'S SUPPLEMENTAL AUTHORITIES**

---

     Now comes the Plaintiff-Appellee, the State of Ohio, pursuant to S.Ct. Prac. R. 17.8, and hereby provides this Court and opposing counsel a list of additional authorities that may be relied upon during oral arguments scheduled before this Court on February 7, 2017:

- *State v. Belton,* --- N.E.3d ----2016 WL 1592786, 2016 -Ohio- 1581, *reconsideration denied,* 147 Ohio St.3d 1440.

- *State v. Mason,* 3rd Dist. No. 9-16-34, 2016 -Ohio- 8400, 2016 WL 7626193.

- *State v. Sheppard,* OSC #1997-1474, 147 Ohio St. 3d 1439, 2016-Ohio-7681.

- *State v. Fears,* OSC # 1998-0019, 147 Ohio St. 3d 1439, 2016-Ohio-7681.

- *State v. Myers,* OSC # 1999-0395, 147 Ohio St. 3d 1440, 2016-Ohio-7681.

- *State v. Gapen,* OSC # 2001-1518, 147 Ohio St. 3d 1440, 2016-Ohio-7681.

Respectfully submitted,
DENNIS WATKINS (#0009949)
Prosecuting Atty. By


LuWAYNE ANNOS (#0096078)


ASHLEIGH MUSICK (#0096078)
Assistant Prosecuting Attorneys
Trumbull County Prosecutor's Office
160 High St. N.W.
4th Floor, Administration Building
Warren, Ohio   44481
Telephone No. (330) 675-2426
Fax No. (330) 675-2431
psannos@co.trumbull.oh.us


COUNSEL FOR PLAINTIFF-
APPELLEE, STATE OF OHIO


## PROOF OF SERVICE

I do hereby certify that a copy of the foregoing document was sent by ordinary U.S. Mail to Attys. David L. Doughten (#0002847), and Robert Dixon, Counsel for Donna Roberts, 4403 St. Clair Ave., Cleveland, OH, 44103-1125, on this 30th Day of January, 2017.


LuWAYNE ANNOS (#0055651)
Assistant Prosecuting Attorney

 Caution
As of: January 1, 2022 2:16 AM Z

## *State v. Roberts*

Supreme Court of Ohio

February 7, 2017, Submitted; May 30, 2017, Decided

No. 2014-0989

**Reporter**

150 Ohio St. 3d 47 *; 2017-Ohio-2998 **; 78 N.E.3d 851 ***; 2017 Ohio LEXIS 994 ****; 2017 WL 2403357

THE STATE OF OHIO, APPELLEE, v. ROBERTS, APPELLANT.

**Subsequent History:** Reconsideration denied by *State v. Roberts, 150 Ohio St. 3d 1411, 2017-Ohio-6964, 2017 Ohio LEXIS 1561, 78 N.E.3d 910 (July 26, 2017)*

US Supreme Court certiorari denied by *Roberts v. Ohio, 138 S. Ct. 998, 200 L. Ed. 2d 270, 2018 U.S. LEXIS 976 (U.S., Feb. 20, 2018)*

Stay granted by *State v. Roberts, 2020-Ohio-3445, 2020 Ohio LEXIS 1463 (Ohio, June 25, 2020)*

**Prior History:** **[****1]** APPEAL from the Court of Common Pleas of Trumbull County, No. 2001 CR 793.

*State v. Roberts, 137 Ohio St. 3d 230, 2013-Ohio-4580, 998 N.E.2d 1100, 2013 Ohio LEXIS 2332 (Oct. 22, 2013)*

**Disposition:** Judgment affirmed.

## Core Terms

sentencing, murder, trial court, death sentence, mitigating factors, aggravated, allocution, aggravating circumstances, mitigation, resentencing, mitigating evidence, proposition of law, offender, specifications, circumstances, capital case, trial judge, contends, presided, childhood, burglary, planned, unsworn statement, weigh, aggravated robbery, calculation, outweigh, beyond a reasonable doubt, indictment, letters

## Case Summary

### Overview

HOLDINGS: [1]-Nothing in the language of *R.C. 2929.06(B)* precluded its operation in a capital case, allowing replacement

of the judge on remand. Because the original trial judge retired and subsequently died before the case was remanded, he was unable to perform the duties of the court after a verdict or finding of guilt; [2]-Because a legally valid penalty-phase jury verdict had already been rendered, there was no reason to empanel a jury and retry the evidentiary portion of either the guilt or penalty phases; [3]-The death penalty was appropriate because the aggravating circumstances under *R.C. 2929.04* outweighed the mitigating factors, since the evidence of the recorded telephone calls and the letters exchanged between defendant and her paramour showed that over a period of months, they planned to kill defendant's husband and that she facilitated the burglary of her home.

### Outcome
Judgment affirmed.

## LexisNexis® Headnotes

Criminal Law & Procedure > Sentencing > Capital Punishment > Death-Qualified Jurors

*HN1*[ ] **Capital Punishment, Death-Qualified Jurors**

A death sentence cannot be imposed on resentencing, because *R.C. 2929.03(C)(2)(b)* specifically provides that the trial jury and the trial judge shall sentence a defendant who has been tried by jury and convicted of aggravated murder and one or more death specifications. Further, *R.C. 2929.03(D)(2)* makes repeated reference to "the trial jury" weighing mitigating factors against aggravating circumstances and making a sentencing recommendation. Thus, the decisions leading to a death sentence must be made by the same jury that convicted the offender in the guilt phase. There are simply no statutory provisions for another jury to make these crucial

State v. Roberts

determinations. Absent statutory authority, a court cannot create such a procedure out of whole cloth.

Criminal Law & Procedure > Sentencing > Capital Punishment > Death-Qualified Jurors

*HN2*[⬇] **Capital Punishment, Death-Qualified Jurors**

*R.C. 2929.03(C)(2)(b)* and (D)(2) specifically entrust the trial jury with making the necessary findings in capital cases. Until the enactment of *R.C. 2929.06(B)*, no provision of law authorized any other jury to perform that task. It is true that *R.C. 2929.03(C)(2)(b)(ii)* similarly provides that a capital defendant shall be sentenced by the trial jury and the trial judge, if the offender was tried by jury. However, *R.C. 2929.06(B)* now authorizes resentencing on remand in capital cases. And, *R.C. 2929.06(B)* does not require that the "trial judge" preside over a capital defendant's resentencing. Rather, it provides that if a death sentence is set aside due to sentencing error, the trial court that sentenced the offender shall conduct a new hearing to resentence the offender. The Ohio General Assembly's use of the term "trial court" in *R.C. 2929.06(B)* suggests that it did not intend to require that the "trial judge," i.e., the individual who presided over the capital defendant's trial, necessarily must also preside over that defendant's resentencing.

Criminal Law & Procedure > Sentencing > Imposition of Sentence

Governments > Courts > Judges

*HN3*[⬇] **Sentencing, Imposition of Sentence**

The Ohio Rules of Criminal Procedure specifically authorize a trial judge who has not presided over a trial to sentence a defendant. *Crim.R. 25(B)* provides that, if for any reason the judge before whom the defendant has been tried is unable to perform the duties of the court after a verdict or finding of guilt, another judge designated by the administrative judge, or, in the case of a single-judge division, by the Chief Justice of the Supreme Court of Ohio, may perform such duties. If such other judge is satisfied that he cannot perform those duties because he did not preside at the trial, he may in his discretion grant a new trial. Thus, it is "entirely proper" for a substitute judge to sentence a defendant after the retirement or death of the judge who presided over the defendant's trial.

Governments > Legislation > Interpretation

Governments > Legislation > Types of Statutes

*HN4*[⬇] **Legislation, Interpretation**

Sections of the Ohio Revised Code providing for criminal procedure shall be construed so as to effect the fair, impartial, speedy, and sure administration of justice. *R.C. 2901.04(B)*.

Criminal Law & Procedure > Appeals > Remand & Remittitur

*HN5*[⬇] **Appeals, Remand & Remittitur**

Upon remand from an appellate court, the lower court is required to proceed from the point at which the error occurred.

Governments > Legislation > Interpretation

*HN6*[⬇] **Legislation, Interpretation**

It is a cardinal rule of statutory construction that a statute should not be interpreted to yield an absurd result.

Criminal Law & Procedure > Sentencing > Capital Punishment

*HN7*[⬇] **Sentencing, Capital Punishment**

It would be absurd to read *R.C. 2929.06(B)* as requiring that a new hearing be held and a new jury be empaneled for resentencing in a case where the original jury's recommendation of death is untainted by error. Such an interpretation would be especially illogical in light of recent precedent interpreting *R.C. 2929.06(B)*. It is evident that the intent of *R.C. 2929.06(B)* was to abrogate Penix and to make all capital offenders whose death sentences are set aside eligible for a death sentence on resentencing. Therefore, when a capital case is remanded to a trial court for resentencing pursuant to *R.C. 2929.06(B)*, the trial court need not empanel a new jury if the case has been remanded for an error, such as a postverdict sentencing error on the part of the trial judge, that does not invalidate the jury's verdict recommending a death sentence.

Constitutional Law > Bill of Rights > Fundamental Rights > Criminal Process

State v. Roberts

Governments > Courts > Judges

**_HN8_[⬇]  Fundamental Rights, Criminal Process**

When the original trial judge is unavailable, necessity requires the replacement judge to evaluate the credibility of the witnesses as best he or she can from the written record. There is no constitutional obligation to provide more.

Criminal Law & Procedure > Sentencing > Capital Punishment > Mitigating Circumstances

**_HN9_[⬇]  Capital Punishment, Mitigating Circumstances**

_R.C. 2929.03(D)(3)_ requires the trial court to determine whether the aggravating circumstances outweigh the mitigating factors in a capital case.

Criminal Law & Procedure > Sentencing > Capital Punishment > Mitigating Circumstances

**_HN10_[⬇]  Capital Punishment, Mitigating Circumstances**

A sentencer may not refuse to consider mitigating evidence in a capital case on the ground that no connection exists between that evidence and the murder for which the defendant is being sentenced.

Criminal Law & Procedure > Sentencing > Capital Punishment > Mitigating Circumstances

**_HN11_[⬇]  Capital Punishment, Mitigating Circumstances**

In a capital case, whether mitigating factors help to explain the murder is obviously relevant to the weight of those factors and may be considered by the sentencer in assigning weight to them.

Criminal Law & Procedure > Sentencing > Capital Punishment > Mitigating Circumstances

**_HN12_[⬇]  Capital Punishment, Mitigating Circumstances**

In a capital case, the passage of many years between an alleged traumatic event and an aggravated murder can diminish the mitigating weight attributed to the traumatic event.

Criminal Law & Procedure > Sentencing > Capital Punishment > Aggravating Circumstances

Criminal Law & Procedure > Sentencing > Capital Punishment > Mitigating Circumstances

**_HN13_[⬇]  Capital Punishment, Aggravating Circumstances**

Pursuant to _R.C. 2929.04(B)_, the nature and circumstances of the offense are mitigating factors and may not be weighed on the side of aggravation in determining whether aggravation outweighs mitigation.

Criminal Law & Procedure > Sentencing > Capital Punishment > Aggravating Circumstances

**_HN14_[⬇]  Capital Punishment, Aggravating Circumstances**

When a court correctly identifies the aggravating circumstances in its sentencing opinion in a capital case, an appellate court will presume that the court relied only on those circumstances and not on nonstatutory aggravating circumstances.

Criminal Law & Procedure > Sentencing > Capital Punishment > Aggravating Circumstances

**_HN15_[⬇]  Capital Punishment, Aggravating Circumstances**

_R.C. 2929.03(D)(1)_ requires a sentencing court in a capital case to consider the nature and circumstances of the aggravating circumstances the offender was found guilty of committing.

Criminal Law & Procedure > Sentencing > Capital Punishment > Aggravating Circumstances

Criminal Law & Procedure > ... > Murder > Definitions > Deliberation & Premeditation

Criminal Law & Procedure > ... > Murder > Felony Murder > Elements

HN16[⬇]    **Capital Punishment, Aggravating Circumstances**

In a capital case, felony-murder specifications pursuant to *R.C. 2929.04(A)(7)* include findings that the offender if not the principal offender, committed the offense with prior calculation and design.

Criminal Law & Procedure > Sentencing > Capital Punishment > Aggravating Circumstances

Criminal Law & Procedure > Sentencing > Capital Punishment > Mitigating Circumstances

HN17[⬇]    **Capital Punishment, Aggravating Circumstances**

It is settled law that the nature and circumstances of the offense may also be used to explain why the aggravating circumstances outweigh the mitigating factors in a death penalty case.

Criminal Law & Procedure > Appeals > Procedural Matters > Briefs

HN18[⬇]    **Procedural Matters, Briefs**

When an appellant's initial brief fails to mention an argument as a basis for reversing the judgment under review, an appellate court need not address that argument in deciding the appeal.

## Headnotes/Summary

**Headnotes**

*Criminal law—Aggravated murder—Death penalty—Sentence of death imposed after resentencing hearing—Death penalty affirmed.*

**Counsel:** Dennis Watkins, Trumbull County Prosecuting Attorney, and LuWayne Annos and Ashleigh Musick, Assistant Prosecuting Attorneys, for appellee.

David L. Doughten and Robert A. Dixon, for appellant.

**Judges:** O'DONNELL, J. KENNEDY, FRENCH, FISCHER, and DEWINE, JJ., concur. O'CONNOR, C.J., concurs in judgment only. O'NEILL, J., concurs in part and dissents in part, for the reasons set forth in his dissenting opinion in State

v. Wogenstahl, 134 Ohio St.3d 1437, 2013-Ohio-164, 981 N.E.2d 900.

**Opinion by:** O'DONNELL

## Opinion

[***853] [*47] O'DONNELL, J.

[**P1]  This is the third time this case has been appealed to this court. After our review of the first appeal, we affirmed convictions for aggravated murder, aggravated burglary, and aggravated robbery but vacated the death sentence imposed on Donna Roberts and remanded the matter to the trial court for resentencing because the trial court had engaged in an ex parte communication with the prosecuting attorney and allowed the prosecutor to participate in [*48] drafting the sentencing opinion. On remand, [****2] the trial court again imposed capital punishment.

[**P2]  On the second appeal, we again vacated the death sentence and remanded the case, this time because we concluded that the trial court had failed to consider [***854] the defendant's allocution, since it was not referenced in the sentencing opinion.

[**P3]  Pending our appeal, the trial judge retired and subsequently died, and therefore a different judge presided over the third resentencing and imposed a sentence of death.

[**P4]  Roberts now appeals from that third sentence and presents four propositions of law. For the following reasons, we affirm the judgment of the trial court.

**Facts and Procedural History**

[**P5]  Previous opinions in this case have set forth the facts of the killing in detail. *See State v. Roberts, 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168 ("Roberts I"), ¶ 1-86; State v. Roberts, 137 Ohio St. 3d 230, 2013-Ohio-4580, 998 N.E.2d 1100 ("Roberts II"), ¶ 1-7.* For purposes of this opinion, we summarize the facts as follows.

[**P6]  On December 12, 2001, Roberts reported the shooting death of Robert Fingerhut at their home in Howland Township, located in Trumbull County. After a week-long investigation, police arrested Roberts and Nathaniel Jackson,[1]

---

[1] Jackson was separately tried and convicted of murdering Fingerhut and sentenced to death. *See State v. Jackson, 107 Ohio St.3d 300, 2006-Ohio-1, 839 N.E.2d 362, and State v. Jackson, ___ Ohio St.3d ___,*

a man she had been dating for two years and with whom she had been having an affair. Roberts was separately indicted and tried for the aggravated [****3] murder of Fingerhut. A jury found her guilty of aggravated murder with death penalty specifications and recommended a sentence of death, and at sentencing, the trial court imposed that sentence.

[**P7] The evidence presented at that trial reveals that although she and Fingerhut were divorced, they lived together and were regarded as husband and wife. Fingerhut owned two insurance policies on his life with a total benefit amount of $550,000, both of which named Roberts as the sole beneficiary.

[**P8] Roberts began an affair with Nathaniel Jackson, who later went to prison on convictions unrelated to this case. During his incarceration, he and Roberts exchanged numerous letters, which police recovered from her house and the trunk of her car. Prison authorities also recorded 18 of their telephone conversations.

[**P9] [*49] The letters and conversations included extensive discussion of how they intended to deal with Fingerhut upon Jackson's release from prison. Jackson repeatedly avowed that when he obtained his release, he would kill Fingerhut. In one letter, Roberts complained about Fingerhut's control of her finances and urged Jackson to "[d]o whatever you want to him ASAP." At Jackson's request, Roberts bought [****4] a ski mask and a pair of gloves for Jackson to use during the murder.

[**P10] On December 9, 2001, upon Jackson's release, Roberts picked him up at the prison and spent that night and much of the next two days with him.

[**P11] On December 11, Fingerhut left work around 9:00 p.m. A witness saw Roberts in her car around 9:30 p.m. She had given her cell phone to Jackson, and telephone records show six calls from her cell phone to the phone in her car between 9:45 and 10:00 p.m., and two more at 11:01 and 11:44 p.m. One call had been placed from her car phone to her cell phone at 10:03 p.m.

[**P12] That night, Roberts went to the Days Inn in Boardman, Ohio, and reserved a room for a week. Police later found Jackson's fingerprints in that room.

[**P13] [***855] After midnight on December 12, Roberts called 9-1-1 from her residence and told the operator that something was wrong with her husband. When police arrived, they found Fingerhut's body on the kitchen floor. An autopsy revealed that he had been shot and died from multiple gunshot

2016-Ohio-5488, _ N.E.3d _.

wounds.

[**P14] At 3:38 a.m., while officers were processing the crime scene, the telephone rang. Howland Township Detective Sergeant Paul Monroe answered, but after a pause, the caller hung up without [****5] speaking. At trial, the state established that this call originated from Roberts's cell phone. Roberts later admitted to detectives that "Nate [Jackson] must have had the phone. He's always borrowing it."

[**P15] On the afternoon of December 12, Monroe and Detective Sergeant Frank Dillon interviewed Roberts at Howland Township police headquarters. Roberts described her relationship with Fingerhut as "loving," but claimed that sexually, Fingerhut "did his thing [and] she did hers." She also told the detectives that she had been in a sexual relationship for six months with someone named Carlos. When Monroe asked Roberts whether she had relationships with anyone else, Roberts replied, "No, there's nobody else. I told you everybody." Monroe then asked about Jackson, and Roberts claimed she had forgotten about him.

[**P16] She then admitted that she had been dating Jackson for two years, that he had phoned her from prison, and that they had corresponded. She also stated that she had last seen Jackson on December 9, when she picked him up at the [*50] prison, but she added that she had last spoken to him over the telephone on the morning of December 11.

*Indictment, Trial, and Verdict*

[**P17] A grand jury indicted Roberts on [****6] two counts of aggravated murder, *R.C. 2903.01(A)* (purposely causing death with prior calculation and design) and *(B)* (felony murder). Both counts contained two death specifications pursuant to *R.C. 2929.04(A)(7)*: one charging aggravated murder during the commission of aggravated burglary and one charging aggravated murder during the commission of aggravated robbery, with each alleging prior calculation and design and/or that Roberts was the principal offender. The indictment also charged her with aggravated burglary, *R.C. 2911.11*, with a firearm specification, *R.C. 2941.145*, and aggravated robbery, *R.C. 2913.01*, with a firearm specification. The jury found Roberts guilty of all counts and specifications. At sentencing, the state elected to proceed on Count One (prior calculation and design) and the trial court dismissed Count Two (felony murder) and its specifications.

*Sentencing*

State v. Roberts

[**P18]  Before the mitigation hearing, Roberts informed her counsel that she did not wish to present any mitigating evidence except an unsworn statement. As a result, the court conducted an *Ashworth* hearing and found her competent to make that decision. *See generally State v. Ashworth, 85 Ohio St.3d 56, 1999-Ohio-204, 706 N.E.2d 1231 (1999)*, paragraph one of the syllabus. At the mitigation hearing, Roberts exercised her right pursuant to *R.C. 2929.03(D)(1)* to make an unsworn [****7] statement to the jury and declined to present any other evidence. The jury recommended a death sentence, and the trial court sentenced Roberts to death.

*First Appeal*

[**P19]  On direct appeal, we affirmed her convictions for aggravated murder, aggravated burglary, and aggravated robbery, but we vacated the death sentence and remanded the case to the trial court because the judge had improperly allowed [***856] the prosecutor to participate in drafting the sentencing opinion, and in doing so had engaged in ex parte communication with the prosecutor. *Roberts I, 110 Ohio St. 3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, at ¶ 153-164*. We ordered the trial judge on remand to "afford Roberts her right to allocute" provided by *Crim.R. 32(A)(1)*, to "personally review and evaluate the evidence, weigh the aggravating circumstances against any relevant mitigating evidence, and determine anew the appropriateness of the death penalty," and to prepare "an entirely new penalty opinion." *Roberts I at ¶ 167*.

[**P20]  On remand, the trial court afforded Roberts her right to allocution, and one week later, after asking her whether she had anything further to say and [*51] hearing argument from defense counsel, the court sentenced her to death and filed its sentencing opinion pursuant to *R.C. 2929.03(F)*.

*Second Appeal*

[**P21]  Roberts appealed as of right from [****8] the second judgment imposing the death sentence. On that appeal, we sustained the second proposition of law, concluding that the court had failed to consider her allocution in determining her sentence during the proceeding on remand. *Roberts II, 137 Ohio St. 3d 230, 2013-Ohio-4580, 998 N.E.2d 1100, ¶ 51-76*. For the second time, we vacated the death sentence and remanded the case for resentencing. We directed the trial court as follows:

On remand, the trial court is to review the entire record, including Roberts's allocution of October 22, 2007. The trial court shall consider the entire record—again,

including the allocution—in determining whether the aggravating circumstances outweigh the mitigating factors beyond a reasonable doubt. The trial court shall then write and file a sentencing opinion pursuant to *R.C. 2929.03(F)* reflecting that it has complied with these instructions.

In accordance with our holding as to Roberts's first proposition of law, Roberts is not entitled to present any further evidence on remand. Moreover, because Roberts has been given her opportunity to make allocution pursuant to *Crim.R. 32*, she is not entitled to make another one.

Finally, while the trial court must consider Roberts's allocution, nothing in today's opinion should be interpreted as a determination [****9] that the matters discussed in her allocution are true or that the trial court must afford them any particular weight. It is for the trial court to determine in the first instance what mitigating factors, if any, are present in the case, and what weight, if any, they should be given.

*Id. at ¶ 73-75*. We further specified that "the trial court must make an independent determination of whether a death sentence is appropriate and may not give deference to the sentences previously entered." *Id. at ¶ 96*.

[**P22]  The original trial judge in this case retired and subsequently died during the pendency of the second appeal. *Id. at ¶ 78*. On remand, Judge Ronald Rice presided over the resentencing.

[**P23]  Roberts filed a motion in the trial court to preclude a death sentence, or in the alternative, to order a full penalty-phase hearing. In this motion, Roberts argued that because Judge Rice had neither presided over the trial nor personally [*52] heard her allocution, he could not [***857] properly weigh the aggravating circumstances against the mitigating factors and sentence her to death.

[**P24]  On April 30, 2014, Judge Rice heard arguments on the defense motion. He denied the motion on the grounds that (1) our instructions in *Roberts* [****10] *II* regarding the proceedings on remand precluded granting the motion and (2) this court in *Roberts II* had "already considered and rejected [Roberts's] arguments" with regard to the presentation of additional evidence.

[**P25]  Judge Rice then imposed sentence. He stated that he had carefully reviewed the entire record, including the guilt and penalty phases of Roberts's trial, the record of proceedings on remand, including Roberts's allocution, and all exhibits. He also announced that he had "given no deference

to the prior decisions of" the original trial judge. Finally, he announced his finding that "the aggravating circumstances outweigh the mitigating factors by proof beyond a reasonable doubt" and that death was an appropriate sentence. He incorporated those findings into a sentencing opinion that was later reissued nunc pro tunc to correct "editing inconsistencies" in the original version. At the hearing, he also reimposed sentences on the noncapital counts and notified Roberts about postrelease control.

[**P26]  On this appeal, Roberts presents four propositions of law. Finding merit in none, we overrule them all and affirm the judgment of the trial court.

## Substitute Judge

[**P27]  Roberts's first and [****11] fourth propositions of law are related and will be discussed together.

[**P28]  Roberts contends that when a capital case is remanded for resentencing before a judge other than the one who originally imposed sentence, capital punishment is precluded because no statutory provision specifically permits such a procedure. She further argues that the *Eighth Amendment* precludes a death sentence in these circumstances unless the substitute judge at least permits the defendant to make a new allocution. In her fourth proposition, Roberts contends that if a death sentence is permissible in such a situation, R.C. 2929.06(B) requires that the substitute judge empanel a new jury and conduct a new mitigation hearing before imposing a death sentence.

[**P29]  We begin by examining the statutory arguments presented.

*Statutory Arguments*

[**P30]  In the first proposition of law, Roberts argues that "[t]he sentencing option of death should have been precluded" on remand because "Ohio's statutory scheme does not provide a procedure for a * * * rewriting of the R.C. 2929.03(F) opinion where the original judge is no longer available to write the opinion."

[**P31] [*53]  Roberts bases this argument on *State v. Penix, 32 Ohio St.3d 369, 513 N.E.2d 744 (1987).* In *Penix*, a capital defendant appealed his conviction of aggravated murder and sentence of death, [****12] The court of appeals affirmed the conviction, but vacated the death sentence due to erroneous penalty-phase jury instructions and remanded the case for resentencing. We affirmed the judgment of the court of appeals. *Id. at 370-372.*

[**P32]  We then considered "the procedure to be employed, and the penalties which may be imposed, upon resentencing." *Id. at 372.* We held that *HN1* a death sentence could not be imposed on resentencing, because R.C. 2929.03(C)(2)(b) specifically provided that "the *trial jury* and the *trial judge* shall sentence a defendant who has been tried by jury and convicted of aggravated murder [**88]" and one or more [death] specifications." *Id.* Further, we noted that R.C. 2929.03(D)(2) makes repeated reference to "the trial jury" weighing mitigating factors against aggravating circumstances and making a sentencing recommendation. *Id. at 372-373.* "Thus, the decisions leading to a death sentence must be made by the same jury that convicted the offender in the guilt phase. There are simply no statutory provisions for another jury to make these crucial determinations." *Id. at 373.* Absent statutory authority, we declined to "create such a procedure out of whole cloth." *Id.*

[**P33]  In 1996, the General Assembly enacted legislation abrogating the specific holding of *Penix* [****13]. *See State v. White, 132 Ohio St. 3d 344, 2012-Ohio-2583, 972 N.E.2d 534, ¶ 6, 21,* and paragraph one of the syllabus (discussing effect of 1996 amendments to R.C. 2929.06(B)).

[**P34]  Roberts argues by analogy that because no statutory provision specifically authorizes a judge who has not previously presided over the case to sentence a capital defendant on remand, such a procedure is as impermissible as the retrial of an offender's sentencing phase before a new jury was in *Penix.*

[**P35]  The analogy fails. In *Penix,* we relied heavily on the language of *HN2* R.C. 2929.03(C)(2)(b) and 2929.03(D)(2), which specifically entrust the trial jury with making the necessary findings in capital cases. At that time, and until the enactment of R.C. 2929.06(B), no provision of law authorized any other jury to perform that task.

[**P36]  It is true that R.C. 2929.03(C)(2)(b)(ii) similarly provides that a capital defendant shall be sentenced "[b]y the trial jury and *the trial judge,* if the offender was tried by jury." (Emphasis added.) However, R.C. 2929.06(B) now authorizes resentencing on remand in capital cases. And R.C. 2929.06(B) does not require that the "trial judge" preside over a capital defendant's resentencing. Rather, it provides that if a death sentence is set aside due to sentencing error, [*54] "the *trial court* that sentenced the offender shall conduct a new hearing to resentence the offender." (Emphasis added.) [****14]

[**P37]  The General Assembly's use of the term "trial *court*" in R.C. 2929.06(B) suggests that it did not intend to require that the "trial *judge,*" i.e., the individual who presided over the capital defendant's trial, also preside over that defendant's resentencing. *See Metro. Secs. Co. v. Warren*

*State Bank*, 117 Ohio St. 69, 76, 5 Ohio Law Abs. 404, 158 N.E. 81 (1927) (when General Assembly uses certain language in one instance and wholly different language in another, it will "be presumed that different results were intended"); *Indus. Commn. v. Snyder*, 113 Ohio St. 405, 415, 3 Ohio Law Abs. 675, 149 N.E. 397 (1925); *State v. Herbert*, 49 Ohio St.2d 88, 113, 358 N.E.2d 1090 (1976) (Corrigan, J., dissenting) ("the use of different language gives rise to a presumption that different meanings were intended").

[**P38] In addition, *HN3*⟨⟩ the Rules of Criminal Procedure specifically authorize a trial judge who has not presided over a trial to sentence a defendant. *Crim.R. 25(B)* provides:

If for any reason the judge before whom the defendant has been tried is unable to perform the duties of the court *after a verdict or finding of guilt*, another judge designated by the administrative judge, or, in the case of a single-judge division, by the Chief Justice of the Supreme Court of Ohio, may perform such duties. If such other judge is satisfied that he cannot perform those [***P859] duties because he did not preside at the trial, he may in his discretion grant a new trial.

(Emphasis added.) [***P15]

[**P39] Thus, it is "entirely proper" for a substitute judge to sentence a defendant after the retirement or death of the judge who presided over the defendant's trial. *State v. Green*, 122 Ohio App.3d 566, 571, 702 N.E.2d 462 (12th Dist.1997). *See also State v. Fitzpatrick*, 1st Dist. Hamilton Nos. C-930413, C-930439, B-927123, and B-928955, 1994 Ohio App. LEXIS 1835, 1994 WL 164189 (May 4, 1994) (*Crim.R. 25(B)* authorized substitution of judge on sentencing when substitute judge stated on record that trial judge "would not be available for several months" and substitute "had familiarized himself with the file").

[**P40] *Crim.R. 25(B)* applies to sentencing in general. We can find nothing in its language that precludes its operation in a capital case. Moreover, the rule applies by its terms to the situation in this case. Because the original trial judge retired and subsequently died before we remanded the case in *Roberts II*,[2] he was [**55] "unable to perform the duties of the court after a verdict or finding of guilt." *Crim.R. 25(B)*.

[**P41] Roberts contends that we should take "guidance" from *R.C. 2901.04(A)*, the rule of lenity. But the rule of lenity is not relevant here. *R.C. 2901.04(A)* provides that "sections of the Revised Code defining *offenses or penalties* shall be strictly construed against the state, and liberally construed in favor of the accused." (Emphasis added.) No statutory definition [***P16] of "offenses or penalties" is at issue here. This case involves the *procedure* for imposing a death sentence on remand. *HN4*⟨⟩ "[S]ections of the Revised Code providing for criminal procedure shall be construed so as to effect the fair, impartial, speedy, and sure administration of justice." *R.C. 2901.04(B)*.

[**P42] For the foregoing reasons, we reject Roberts's claim that Ohio law does not authorize the resentencing of a capital defendant on remand by a judge other than the judge who presided over the trial.

[**P43] The fourth proposition of law urges that if we reject the first proposition of law, *R.C. 2929.06(B)* should apply to the resentencing and require a de novo penalty-phase hearing before a new jury.

[**P44] Roberts cites the following language of the statute:

*Whenever* any court of this state or any federal court sets aside, nullifies, or vacates a sentence of death imposed upon an offender because of error that occurred in the sentencing phase of the trial and if division (A) of this section does not apply, the trial court that sentenced the offender *shall conduct a new hearing to resentence the offender. If the offender was tried by a jury, the trial court shall impanel a new jury* for the hearing.

(Emphasis added.) R.C 2929.06(B).

[**P45] However, the error that invalidated [***17] the death sentence imposed in this case—i.e., the trial court's failure to consider Roberts's allocution—took place [***860] *after* the trial court discharged the jury. And the general rule is that *HN5*⟨⟩ "[u]pon remand from an appellate court, the lower court is required to proceed from the point at which the error occurred." *State ex rel. Stevenson v. Murray*, 69 Ohio St.2d 112, 113, 431 N.E.2d 324 (1982); *see also State v. Chinn*, 85 Ohio St.3d 548, 565, 1999-Ohio-288, 709 N.E.2d 1166 (1999). We find no indication in *R.C. 2929.06(B)* that the General Assembly intended to abrogate that rule in capital cases. Thus, on the [**56] second remand, the trial court was required to proceed from the point of error, not from an earlier point in the sentencing proceedings.

[**P46] In *Roberts I*, we left the jury's penalty-phase recommendation undisturbed because no reversible error infected it. Because a legally valid penalty-phase jury verdict has already been rendered in this case, there is no reason to

---

[2] Roberts incorrectly states that when we ordered resentencing in *Roberts II*, we assumed that the trial judge would conduct the resentencing. In fact, we understood that resentencing "necessarily [would] be conducted by a different judge." *Roberts II*, 137 Ohio St. 3d 230, 2013-Ohio-4580, 998 N.E.2d 1100, ¶ 78.

State v. Roberts

empanel a jury and retry the evidentiary portion of either the guilt or penalty phases of the proceeding.

[**P47]   *HN5* "It is a cardinal rule of statutory construction that a statute should not be interpreted to yield an absurd result." *Mishr v. Poland Bd. of Zoning Appeals, 76 Ohio St.3d 238, 240, 1996-Ohio-400, 667 N.E.2d 365 (1996).* *HN7* It would be absurd to read *R.C. 2929.06(B)* as requiring that a new hearing be held and a new jury be empaneled for resentencing in a case where the original jury's recommendation of death is [****18] untainted by error. Such an interpretation would be especially illogical in light of recent precedent interpreting *R.C. 2929.06(B)*. As we have observed, "[i]t is evident that the intent of *R.C. 2929.06(B)* was to abrogate *Penix* and to make all capital offenders whose death sentences are set aside eligible for a death sentence on resentencing." *White, 132 Ohio St. 3d 344, 2012-Ohio-2583, 972 N.E.2d 534, at ¶ 21.*

[**P48]   Therefore, when a capital case is remanded to a trial court for resentencing pursuant to *R.C. 2929.06(B)*, the trial court need not empanel a new jury if the case has been remanded for an error, such as a postverdict sentencing error on the part of the trial judge, that does not invalidate the jury's verdict recommending a death sentence.

[**P49]   Here, the matter involves a postverdict sentencing error on the part of a trial judge that can be corrected on remand without the involvement of the jury. Thus, we overrule the fourth proposition of law.

*Constitutional Argument*

[**P50]   Stressing the importance of the trial judge's ability to see and hear the defendant's allocution and the evidence adduced in the penalty phase, Roberts contends that it is impossible for a judge to properly consider or weigh the mitigating factors present in the case by reviewing a cold record, and she urges that such a procedure infringes [****19] on a capital defendant's ability to have mitigation properly presented and accurately assessed. She further contends that the *Eighth Amendment* requires that the sentencer in a capital case "must be allowed to consider and give effect to mitigating evidence relevant to a defendant's character or record or the circumstances of the offense." *Penry v. Lynaugh, 492 U.S. 302, 327-328, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989), overruled on other grounds, Atkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002).*

[**P51]   [*57]   Roberts cites *Lockett v. Ohio, 438 U.S. 586, 604, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978)* (plurality opinion), which states that the sentencer in a capital case may "not be

precluded from considering, *as a mitigating factor,* any aspect of a defendant's character or record and any of the circumstances of the offense that defendant [***861] proffers as a basis for a sentence less than death." (Emphasis sic.) *See also Eddings v. Oklahoma, 455 U.S. 104, 113-114, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982)* (sentencer may not "refuse to consider, *as a matter of law,* any relevant mitigating evidence" [emphasis sic]); *Skipper v. South Carolina, 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986)* (testimony about defendant's good behavior in jail pending trial was relevant and therefore could not be excluded); *Hitchcock v. Dugger, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987)* (death sentence invalid when instructions precluded jury's consideration of mitigating circumstances not enumerated in statute); *Penry at 319-328* (instructions preventing jury from giving effect to evidence of intellectual disability were inconsistent with *Lockett* and *Eddings*).

[**P52]   However, none of [****20] these cases address the question presented in this case. In *Saffle v. Parks, 494 U.S. 484, 490, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990),* the Supreme Court explained, "There is no dispute as to the precise holding in [*Lockett* and *Eddings*]: that the State cannot bar relevant mitigating evidence from being presented and considered during the penalty phase of a capital trial." *See also Buchanan v. Angelone, 522 U.S. 269, 276, 118 S.Ct. 757, 139 L.Ed.2d 702 (1998)* ("Our consistent concern has been that restrictions on the jury's sentencing determination not preclude the jury from being able to give effect to mitigating evidence"). We recognized as much in *Roberts II:* "Each case in the *Lockett-Eddings-Skipper-Hitchcock* tetralogy involved the trial court's exclusion of, or refusal to consider, evidence in the original sentencing proceeding." *137 Ohio St. 3d 230, 2013-Ohio-4580, 998 N.E.2d 1100, at ¶ 34.*

[**P53]   In this case, the issue is not what information is constitutionally relevant, but rather, it is whether a sentencing judge in a capital case may consider mitigation presented by the defendant without having *personally* observed its presentation in court.

[**P54]   Here, the assignment of Judge Rice to conduct the third sentencing hearing based on review of the record and without hearing additional mitigating evidence did not "bar relevant mitigating evidence from being presented and considered during the penalty [***21] phase." *Saffle at 490.* Roberts had an opportunity to present mitigating evidence during the penalty phase of her trial, but she elected not to do so. Previously, she had made an unsworn statement and had an opportunity for allocution. Judge Rice reviewed and considered her unsworn statement, her allocution, and the evidence in the trial record before imposing sentence for the third time.

[**P55] [*58] *Saffle* rejected a capital defendant's attempt to derive from *Lockett* and *Eddings* "a rule relating, not to *what* mitigating evidence the jury must be permitted to consider in making its sentencing decision, but to *how* it must consider the mitigating evidence." (Emphasis sic.) *Saffle, 494 U.S. 490, 110 S.Ct. 1257, 108 L.Ed.2d 415.* Likewise, Roberts seeks to derive from *Lockett* and *Penry* a rule "relating, not to what mitigating evidence the [judge] must be permitted to consider," but to *how* the judge must obtain it (i.e., by live presentation as opposed to reviewing a record). Neither *Lockett* nor its progeny state or imply any such rule.

[**P56] Indeed, the California Supreme Court has rejected similar constitutional claims in two capital cases: *People v. Espinoza, 3 Cal.4th 806, 12 Cal.Rptr.2d 682, 838 P.2d 204 (1992),* and *People v. Lewis, 33 Cal.4th 214, 14 Cal.Rptr.3d 566, 91 P.3d 928 (2004).*

[**P57] [***862] In *Espinoza,* the trial judge became ill during the guilt phase of the trial and another judge reviewed the transcript and completed [***22] the trial. *Espinoza at 827-828. Lewis,* like this case, involved a capital case that had been remanded for resentencing due to postverdict error. *Lewis at 218.* The original trial judge withdrew, and the resentencing was assigned to a different judge, who denied a defense request to present the guilt-and penalty-phase evidence by live testimony and proceeded to sentence the defendant on the basis of the record. *Id at 224.*

[**P58] In both cases, the defendants argued that because the substitute judge had not personally heard all the evidence, he could not properly impose a death sentence. And in both cases, the court rejected that argument. *Espinoza at 839; Lewis at 226.* The court in *Lewis* explained: HN9 "[W]hen the original trial judge is unavailable, necessity requires the replacement judge to evaluate the credibility of the witnesses as best he or she can from the written record. We find no constitutional obligation to provide more." *Id.*

[**P59] In the instant cases, the retirement and death of the original trial judge and the substitution of Judge Rice did not deny Roberts the ability to present mitigating evidence or to have it considered by the sentencer. Her claim to the contrary is not supported by the *Lockett* line of cases she cites, and both *Lewis* and *Espinoza,* the only [***23] cases we have found that address this issue in the capital-sentencing context, reject the notion that a capital defendant may be sentenced to death only by a judge who has personally presided over one or both phases of the trial. We therefore reject this *Eighth Amendment* argument.

[**P60] Accordingly, we overrule the first and fourth propositions of law.

## [*59] The Sentencing Opinion

### *Weighing the Mitigating Factors*

[**P61] The second proposition of law concerns the weight the trial court afforded the mitigating factors evidenced in the allocution. Roberts concedes that "the trial court did identify numerous factors in mitigation" but contends that they received little weight because they were not properly considered by the trial court.

[**P62] Roberts further argues that the trial court erred in stating that the mitigating factors found in her allocution "do not even draw the Court's attention away from the aggravating circumstances," and she suggests that the use of this phrase reflects improper weighing, because a defendant is not required to offer mitigation that "draw[s] the Court's attention from the [aggravating circumstances]."

[**P63] The trial court's use of this phrase does not constitute error. The opinion of the trial court reflects [***24] that the proffered mitigating factors were weak and lacked significance in comparison to the aggravating circumstances. HN10 *R.C. 2929.03(D)(3)* requires the trial court to determine whether the aggravating circumstances outweigh the mitigating factors, and the language to which Roberts objects does no more than express the trial court's conclusion in that regard.

[**P64] Roberts contends that the trial court engaged in improper speculation that she made up allegations of domestic violence to induce Jackson to help her. The sentencing opinion notes that Roberts made allegations in her letters to Jackson "regarding the physical abuse she [***863] suffered at the hand of Mr. Fingerhut." The opinion later notes that "absolutely no evidence before the Court * * * support[ed] the veracity of the physical abuse allegations." Roberts claims that the trial court's discussion improperly "reduc[ed] the weight domestic violence should have been provided."

[**P65] Roberts's argument is premised on two misunderstandings of the record. First, contrary to Roberts's claim, the record *does* contain evidence that Roberts falsely told Jackson that Fingerhut abused her. She implied as much in her unsworn statement when she said: "I said a lot of things that weren't true [***25] to Nathaniel. My husband never touched me. He never laid a hand on me." And several of her letters describe physical altercations.

[**P66] Second, as the trial court found, the record contains no evidence to corroborate the claim of domestic violence found in Roberts's letters. Roberts herself repudiated that

State v. Roberts

claim in her unsworn statement. Thus, the trial court did not improperly "reduce the weight" of domestic violence as a mitigating factor; absent any evidence of domestic violence, the court properly determined that domestic violence should receive no weight.

**[\*\*P67]  [\*60]**  Next, she contends that the trial court gave improper reasons for minimizing the weight to be given to her statements in allocution that she had been sexually abused as a child and that her auto accidents caused physical and mental trauma and related depression. With respect to childhood sexual abuse, the trial court noted the lack of any connection between the abuse and the murder of Fingerhut. Roberts contends that "[t]here is no requirement" that a defendant establish a "direct connection" between childhood sexual abuse and a capital crime.

**[\*\*P68]**  It is true that *HN10*[⬆] a sentencer may not refuse to *consider* mitigating evidence on the ground that no [\*\*\*\*26] connection exists between that evidence and the murder for which the defendant is being sentenced. *See Smith v. Texas, 543 U.S. 37, 45, 48, 125 S.Ct. 400, 160 L.Ed.2d 303 (2004)* (evidence of defendant's troubled childhood and low IQ was constitutionally relevant despite lack of nexus with murder; hence, instruction preventing jury from giving effect to that evidence violated *Eighth Amendment*).

**[\*\*P69]**  But the trial court in this case did not refuse to consider Roberts's claim of childhood sexual abuse. Nothing in the sentencing opinion suggests that the court would exclude or ignore the alleged abuse simply because no nexus could be found between it and the murder.

**[\*\*P70]**  Instead, the trial court merely recognized that a childhood trauma that *did* contribute in some way to a defendant's crime would necessarily have greater impact on the defendant's moral blameworthiness—and therefore would deserve greater weight in mitigation—than a childhood trauma having no connection to the crime. *HN11*[⬆] Whether mitigating factors help to explain the murder is obviously relevant to the weight of those factors and may be considered by the sentencer in assigning weight to them. *See State v. Davis, 116 Ohio St. 3d 404, 2008-Ohio-2, 880 N.E.2d 31, ¶ 402* (holding defendant's childhood abuse "entitled to weight" but noting that "there was no evidence of any significant connection [\*\*\*\*27] between [the defendant's] childhood abuse and [the victim's] murder").

**[\*\*P71]**  Next, Roberts contends that the sentencing opinion improperly "minimized or de-valued" the mitigating weight of her auto accidents (which took place in 1963, 1983, and 1999) and her resulting physical injuries, depression, and suicide attempt. The opinion states that "these incidents are isolated and occurred [\*\*\*864] in a time frame so far removed from the murder of Mr. Fingerhut that their relevance for mitigation is significantly decreased."

**[\*\*P72]**  Without citation to authority, she asserts: "There is no basis in law for discounting mitigation because the court finds the lack of proximity in time to the offense." In other words, she argues that a sentencer may not attach less significance to a mitigating factor on the ground that the factor came into existence long before the murder.

**[\*\*P73]  [\*61]**  Yet in assigning weight to a defendant's traumatic childhood in *State v. Campbell, 95 Ohio St.3d 48, 2002-Ohio-1626, 765 N.E.2d 334 (2002)*, we took into account that the defendant

> was nearly forty-nine years old when he committed the murder that is the subject of this case. He had reached "an age when \* \* \* maturity could have intervened" and "had clearly made life choices as an adult before committing [this] murder." [\*\*\*\*28] \* \* \* At forty-nine, [the defendant] *had considerable time to distance himself from his childhood* and allow other factors to assert themselves in his personality and his behavior.

(Emphasis and second brackets added.) *Id. at 53*, quoting *State v. Murphy, 65 Ohio St.3d 554, 588, 605 N.E.2d 884 (1992)* (Moyer, C.J., dissenting).

**[\*\*P74]**  The trial court's reasoning here is similar to ours in *Campbell*—*HN12*[⬆] the passage of many years between an alleged traumatic event and an aggravated murder can diminish the mitigating weight attributed to the traumatic event—and we adhere to the analysis in *Campbell* in this case.

**[\*\*P75]**  Finally, Roberts complains that the sentencing opinion states that her charitable works and "generosity," as reported by her on allocution, and her claim that she suffered from "mental trauma" seem inconsistent with her insistent references to her financial success during the same allocution. Roberts argues that the trial court improperly used "evidence of mitigation \* \* \* to cancel out the weight to be afforded clearly established mitigation." She cites no authority for this argument, nor does she explain why it is improper for the sentencing judge to point out what appear to be contradictions in the defendant's presentation.

**[\*\*P76]**  Thus, the second proposition of law [\*\*\*\*29] is not well taken.

*Consideration of the Nature and Circumstances of the Offense*

**[\*\*P77]**  The third proposition of law contends that the trial

State v. Roberts

court improperly used the nature and circumstances of the offense as an aggravating circumstance based on the following language from the sentencing opinion:

> Roberts planned and plotted for the murder of Fingerhut over a period of at least three months. She conspired with Jackson, her imprisoned lover, to murder Fingerhut for his life insurance proceeds. The murder plan was well documented through telephone calls recorded from Jackson's residence[:] the Lorain Correctional Institut[ion]. In addition, detailed **[\*62]** letters were exchanged between the loving couple outlining their plans. These plans included the acquisition of supplies, the procurement of a hotel room, and the promise of a new vehicle for Jackson—all provided by Roberts. Ultimately, Roberts provided access **[\*\*\*865]** to the residence in order for Jackson to carry out the murder as planned.
>
> Despite these intricate details, Roberts "forgot" to include Jackson as one of her named lovers to the police during interviews. In addition, Roberts attempted to thwart the investigation into the Fingerhut murder by implicating other **[\*\*\*\*30]** individuals[,] not Jackson. In addition, Roberts's feigned emotional outbursts over Fingerhut's death do not correlate to the insidious behavior relative to the same.
> Therefore, the court has granted little to no weight to any of the mitigating factors outlined by Roberts in her unsworn statement or her allocution.

 **[\*\*P78]** Roberts argues that her planning and preparation, her pecuniary motive, and her attempts to deceive the police and impede their investigation are part of the nature and circumstances of the offense. _HN13_[⬆] Pursuant to _R.C. 2929.04(B)_, the nature and circumstances of the offense are mitigating factors and may not be weighed on the side of aggravation in determining whether aggravation outweighs mitigation. _See generally State v. Stumpf, 32 Ohio St.3d 95, 99, 512 N.E.2d 598 (1987); State v. Wogenstahl, 75 Ohio St.3d 344, 354-355, 1996-Ohio-219, 662 N.E.2d 311 (1996);_ State v. Davis, 76 Ohio St.3d 107, 120, 1996-Ohio-414, 666 N.E.2d 1099 (1996). Since the trial court used these facts to determine that Roberts's proffered mitigating factors were to be "granted little or no weight," she contends that the trial court in effect weighed them _against_ mitigation.

 **[\*\*P79]** This contention lacks merit. _HN14_[⬆] "When a court correctly identifies the aggravating circumstances in its sentencing opinion, we will presume that the court relied only on those circumstances and not on nonstatutory aggravating circumstances." _State v. Clemons, 82 Ohio St.3d 438, 447, 1998-Ohio-406, 696 N.E.2d 1009 (1998)._ That presumption applies **[\*\*\*\*31]** here because the sentencing opinion

correctly identifies the aggravating circumstances in this case, and Roberts failed to overcome the presumption.

 **[\*\*P80]** _HN15_[⬆] R.C. 2929.03(D)(1) requires the court to consider "the nature and circumstances of the aggravating circumstances the offender was found guilty of committing." Aggravating circumstances here consist of _HN16_[⬆] felony-murder specifications pursuant to _R.C. 2929.04(A)(7)_, which include findings that "the offender * * * if not the principal offender, committed the offense with prior calculation and design." Thus, the detailed planning of this killing, which was referenced in the sentencing opinion, is evidence that supports the finding of prior calculation **[\*63]** and design and therefore was properly considered as part of the statutory aggravating circumstances in this case.

 **[\*\*P81]** Moreover, _HN17_[⬆] it is settled law that the nature and circumstances of the offense may also be used to explain _why_ the aggravating circumstances outweigh the mitigating factors. _See, e.g. State v. Frazier, 115 Ohio St. 3d 139, 2007-Ohio-5048, 873 N.E.2d 1263, ¶ 183,_ citing _State v. Sheppard, 84 Ohio St.3d 230, 238, 1998-Ohio-323, 703 N.E.2d 286 (1998)._ In this case, the facts cited in the sentencing opinion are relevant to the mitigation offered because they refute the defendant's factual assertions.

 **[\*\*P82]** In her unsworn statement and in her allocution, Roberts asserted that she and **[\*\*\*\*32]** Fingerhut had a good relationship and loved each other deeply. The trial court reasonably viewed these statements to be inconsistent with the relationship she had maintained with Jackson, her conspiracy **[\*\*\*866]** with him to murder Fingerhut, her pecuniary motive for that murder, and her feigned emotional outbursts during police interviews. The sentencing opinion properly referred to these facts to refute her claims.

 **[\*\*P83]** The sentencing opinion does not treat the nature and circumstances of the offense as nonstatutory aggravating circumstances. Instead, the opinion correctly identifies the aggravating circumstances found by the jury's verdict and then discusses the facts of the case as they relate to those aggravating circumstances and to the claimed mitigating factors. Roberts's third proposition of law is therefore overruled.

### _Sixth Amendment_ Claim

 **[\*\*P84]** During oral argument, Roberts argued that the sentencing procedure employed on remand violated _Hurst v. Florida, U.S. , 136 S.Ct. 616, 193 L.Ed.2d 504 (2016)_, which held that Florida's capital-sentencing scheme violated the _Sixth Amendment_ right to a jury trial because it "[did] not require the jury to make the critical findings necessary to

State v. Roberts

impose the death penalty" but instead allowed the trial judge to increase the defendant's "authorized [***33] punishment based on her own findings." *Id.* at ___, 136 S. Ct. at 622. We recognize that the United States Supreme Court decided *Hurst* after the submission of briefs in this case, but Roberts could have made essentially the same *Sixth Amendment* argument by relying on *Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000)*, and *Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002)*.

[**P85] We therefore decline to address this claim because it has not been presented in a proposition of law or briefed by the parties, having been raised for the first time during oral argument. HN78 When an appellant's initial brief fails to mention an argument as a basis for reversing the judgment under review, we [*64] need not address that argument in deciding the appeal. *State v. Quarterman, 140 Ohio St. 3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 17-19; State v. Smith, 6 Ohio St.3d 530, 533, 6 Ohio B. 387, 453 N.E.2d 632 (1983), fn. 2.* Because Roberts failed to brief her *Sixth Amendment* claim, it is not properly before the court.

**Independent Sentence Review**

[**P86] Pursuant to *R.C. 2929.05*, we are directed to independently review Roberts's death sentence and determine whether the evidence supports the jury's finding of aggravating circumstances, whether the aggravating circumstances [****34] outweigh the mitigating factors, and whether the death sentence is proportionate to those affirmed in similar cases.

*Aggravating Circumstances*

[**P87] *R.C. 2929.04* describes the death-penalty specifications to be included in an indictment and provides:

(A) Imposition of the death penalty for aggravated murder is precluded unless one or more of the following is specified in the indictment or count in the indictment pursuant to *section 2941.14 of the Revised Code* and proved beyond a reasonable doubt:

* * *

(7) The offense was committed while the offender was committing, [**867] attempting to commit, or fleeing immediately after committing or attempting to commit kidnapping, rape, aggravated arson, aggravated robbery, or aggravated burglary, and either the offender was the principal offender in the commission of the aggravated murder or, if not the principal offender, committed the aggravated murder with prior calculation and design.

[**888] In this case, the jury returned verdicts finding Roberts guilty of two felony-murder specifications pursuant to *R.C. 2929.04(A)(7)*: one predicated on aggravated burglary and one predicated on aggravated robbery. And on each of the felony-murder specifications, the jury found that Roberts had acted with prior calculation and design in the [***35] aggravated murder.

[**889] We have previously determined that the state presented proof beyond a reasonable doubt to support the jury's verdict on the aggravated-robbery specification. The evidence at trial established that Jackson murdered Fingerhut during the commission of aggravated burglary and that Roberts aided and abetted in the commission of that crime. *See R.C. 2929.01(A)(1) and (2).*

[**890] The state also presented proof beyond a reasonable doubt to support the jury's finding of guilty in connection with the aggravated-burglary specification. The evidence at trial established that Jackson murdered Fingerhut during the commission of aggravated burglary and that Roberts aided and abetted in the commission of that crime. *See R.C. 2923.01(A)(1) and (2).*

[**891] On December 8, Jackson told Roberts that he needed to be in the house when Fingerhut came home. The murder that Roberts and Jackson had planned over a two-month period took place in the house sometime between 9:00 p.m., when Fingerhut left work, and 12:01 a.m., when Roberts called 9-1-1. Jackson and Roberts were seen together several times on the day of the murder and had dinner at a restaurant, where they paid their check at 6:43 p.m.

[**892] The evidence further showed that Jackson had Roberts's cell phone in his possession, and phone records introduced at trial established that he and Roberts were in near-constant communication [***36] between 9:45 and 11:45 p.m. on the evening of the murder. And police found no signs of forced entry at the house, permitting the inference that Roberts encouraged Jackson to commit the aggravated burglary and gave him access to the house on the night of the murder, thereby aiding and abetting the killing and the aggravated burglary.

[**893] Finally, the jury's finding of prior calculation and design as alleged in both capital specifications is supported by evidence of the correspondence and taped conversations in

State v. Roberts

which Roberts and Jackson planned the murder, as well as Roberts's purchase of a ski mask and gloves for Jackson's use in carrying out the plan. *See Roberts I, 110 Ohio St. 3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, at ¶ 35-84*.

*Mitigating Factors*

[**P94]  When considering whether the aggravating circumstances proved in this case outweigh the mitigating factors beyond a reasonable doubt, we review whether there is anything mitigating about the "nature and circumstances of the offense, [and] the history, character, and background of the offender," *R.C. 2929.04(B)*, as well as the following specific mitigating factors: *R.C. 2929.04(B)(1)* (victim inducement), *(B)(2)* (duress, coercion, or strong provocation), *(B)(3)* (mental disease or defect), *(B)(4)* (youth of the offender), *(B)(5)* [***868] (lack of a significant [****37] criminal record), *(B)(6)* (accomplice only), and *(B)(7)* (any other relevant factors).

[**P95]  At the mitigation hearing, Roberts declined to present any evidence but did make an unsworn statement. In that statement, she asserted that she would not beg the jury to spare her life. Instead, she used her statement to expose witnesses who she claimed had lied, cheated, and abused their power while [*66] testifying at trial. She disputed the testimony of various witnesses and the evidence recovered from the Days Inn. She complained that her home had been illegally searched and accused Sergeant Monroe, who had headed the investigation, of planting evidence in order to further his ambition to become Howland Township chief of police.

[**P96]  In her unsworn statement, Roberts contended that the trial had shown the jury approximately 5 percent of her life, including the eight times she had been with Jackson in the 14 months preceding the murder. She decried the media coverage of the case because the coverage allegedly had ignored her 40-year career as a businesswoman. She also criticized the jurors as "young inexperienced people" who did not read newspapers or watch the news.

[**P97]  She derided the idea that she would [****38] murder someone for $250,000,[3] claiming that she and Fingerhut earned more than $200,000 per year. Roberts stated: "I had everything. Now I have nothing. But the most important thing I don't have is Robert [Fingerhut], and my two little girls"—her dogs. She then showed the jury

photographs of the dogs.

[**P98]  Roberts denied that her correspondence with Jackson reflected an actual plot to murder Fingerhut. She claimed that she had made a number of false statements to Jackson and that she actually loved Fingerhut "very much." She said Fingerhut "never laid a hand on me" and "gave me everything I wanted, the same as I did to him."

[**P99]  Roberts also accused the prosecutor of appealing to racial and religious prejudice and used her statement "to demand racial equality." She explained that she had refused to present mitigating evidence so that the jury would have no choice but to return a death verdict. Her case and Jackson's, she argued, differed only in that she is white and he is black. Because Jackson had been sentenced to death, she told the jury, "the right thing" would be to sentence her to death too.

[**P100]  In her October 22, 2007 allocution, Roberts told her life story. She was born in Youngstown in [****39] 1944. When she was five, her family moved to a farm in what is now Austintown. As a child, Roberts said, she "tried to be happy and positive," but because there were five children in the family, she never got any attention or affection, so she "always felt empty."

[**P101]  Roberts stated that she grew up in an abusive household, observing her father beat and verbally abuse her mother. Roberts said she "spent a lot of time under [her] bed," especially "when guns came out." She also stated that when she was very young, a cousin raped her, resulting in internal injuries.

[**P102] [*67]  Roberts said she had always been on the honor roll in school and on the dean's list in college. After college, she married her first husband, moved to Florida, and had a son in 1969. Her son enlisted in the Army, served in the Judge Advocate [***869] General's Corps, and then worked for the New Hampshire Attorney General's office.

[**P103]  Roberts recounted a long history of motor-vehicle accidents and resulting injuries. In 1963, while attending college and working two jobs, she fell asleep while driving and had a collision. As a result, she was hospitalized. She told the jury, "[T]hey spent a long time picking glass out of me and I was like spacey for [****40] awhile." In 1983, a car ran a red light and collided with a car she was in. She was hospitalized again and went to a neurosurgeon for months afterward.

[**P104]  In 1999, Roberts sustained serious injuries in a third accident. Roberts remembered being in the hospital, but after that she could not remember anything "for a long time." She said she suffered from depression after the accident,

---

[3] In reality, Fingerhut's two life insurance policies had a combined benefit amount of over twice that. Roberts claimed in her unsworn statement that she had not known about one of the policies.

State v. Roberts

culminating in a suicide attempt. After this incident, she found herself in a psychiatric ward, where she claimed to have suffered from auditory hallucinations.

[**P105]  After the suicide attempt, Roberts began falling down repeatedly, hitting her head, and losing track of what day it was. About seven months after her hospitalization, the Social Security Administration sent her to a psychiatrist. As a result, Roberts began receiving benefits.

[**P106]  Roberts stated that she worked for "almost 23 years" in a plastic surgeon's office, where they "helped a lot of people." She said that when she operated a restaurant in the Youngstown bus terminal that Fingerhut owned, she gave food and money to people who were short of money at the end of the month. She also gave several thousand dollars to help her sisters and her son.

[**P107]  In 1980, [****41]  Roberts converted to Judaism. She recounted how she had raised money to rescue an Ethiopian Jew who was in danger of being murdered in his home country. She also volunteered to assist wounded soldiers in Israel.

[**P108]  Roberts renewed her accusation that the police had committed perjury at her trial. Contrary to both trial testimony and her own letter to Jackson, she insisted that she had plenty of money and did not need to ask Fingerhut for it.

[**P109]  Roberts stated that she had been a "good writer" in high school and college, was "creative," and "had a great imagination." Her correspondence and conversations with Jackson, she said, were merely "stories." She never initiated discussions about "hurting anyone," but just went along and wrote "what he told me to write."

[**P110]  [*68]  Roberts concluded her allocution by saying: "I never intended for anything like that to happen * * * and I still can't believe it. We loved each other and we had a good life."

[**P111]  The statutory mitigating factor set forth in _R.C. 2929.04(B)(6)_ exists in this case, since the evidence at trial establishes that Roberts was not the principal offender in the aggravated murder. Nonetheless, she had a central role in the murder, which diminishes the weight of [****42]  this factor. See _State v. Herring, 94 Ohio St.3d 246, 267, 2002-Ohio-796, 762 N.E.2d 940 (2002)_. There is no other evidence of the statutory mitigating factors in this record. See _Stumpf, 32 Ohio St.3d at 101-102, 512 N.E.2d 598_ (defendant bears burden of proving existence of mitigating factors).

[**P112]  Roberts's history, character, and background, as recounted in her allocution and reflected in the trial record,

present some mitigating features. Roberts worked for a plastic surgeon in Florida, helped treat wounded soldiers in Israel, operated a restaurant, and helped Fingerhut run the bus terminals. Her [***870]  work history and compassion for others deserve some weight in mitigation. See, e.g._State v. Hand, 107 Ohio St. 3d 378, 2006-Ohio-18, 840 N.E.2d 151, ¶ 281_ (work history as mitigating factor). However, her uncorroborated claims of an unhappy childhood are entitled to little weight, as is her claimed history of mental problems stemming from injuries resulting from traffic accidents.

[**P113]  In light of the trial evidence, her claim that she loved Fingerhut lacks credibility. And although she expressed sadness about Fingerhut's murder, she never accepted any responsibility for it; rather, she chose to deny that she had ever made plans with Jackson to kill Fingerhut, notwithstanding overwhelming evidence to the contrary.

[**P114]  Finally, the nature and circumstances of the offense offer nothing in mitigation. [****43]  Motivated at least in part by greed, she assisted Jackson in murdering Fingerhut in his home, which they planned prior to Jackson's release from prison.

_Sentence Evaluation_

[**P115]  After our independent review and weighing, we find that the aggravating circumstances present in this case outweigh the mitigating factors beyond a reasonable doubt. The evidence of the recorded telephone calls and the letters exchanged between Roberts and Jackson shows that over a period of months, Roberts and Jackson planned to kill Fingerhut and that she facilitated the burglary of her home. Her active participation in the murder of Fingerhut and the accompanying felonies was essential to successfully committing these crimes. By comparison, the mitigating factors carry little weight.

[**P116]  [*69]  We find that the death penalty in this case is appropriate and proportionate when compared with capital cases involving aggravated murder committed during aggravated burglary, see _State v. Davie, 80 Ohio St.3d 311, 1997-Ohio-341, 686 N.E.2d 245 (1997)_, and for aggravated murder committed during aggravated robbery, see _State v. Burke, 73 Ohio St.3d 399, 1995-Ohio-290, 653 N.E.2d 242 (1995)_; _State v. Raglin, 83 Ohio St.3d 253, 1998-Ohio-110, 699 N.E.2d 482 (1998)_.

[**P117]  We further find that the death sentence is proportionate to the death sentence imposed on Jackson. See _State v. Jackson, 107 Ohio St.3d 300, 2006-Ohio-1, 839 N.E.2d 362_ (affirming death sentence), and _State v. Jackson, 149 Ohio St.3d 55, 2016-Ohio-5488, 73 N.E.3d 414_

State v. Roberts

(affirming death sentence on appeal from resentencing). **[****44]**

 **[**P118]**  Accordingly, we affirm the judgment of the Trumbull County Court of Common Pleas.

Judgment affirmed.

KENNEDY, FRENCH, FISCHER, and DEWINE, JJ., concur.

O'CONNOR, C.J., concurs in judgment only.

O'NEILL, J., concurs in part and dissents in part, for the reasons set forth in his dissenting opinion in *State v. Wogenstahl, 134 Ohio St.3d 1437, 2013-Ohio-164, 981 N.E.2d 900.*

End of Document

# The Supreme Court of Ohio

MAY 30 2017

CLERK OF COURT
SUPREME COURT OF OHIO

State of Ohio                                            Case No. 2014-0989

v.                                                       JUDGMENT ENTRY

Donna Marie Roberts                                      APPEAL FROM THE
                                                         COURT OF COMMON PLEAS

This cause, here on appeal from the Court of Common Pleas for Trumbull County, was considered in the manner prescribed by law. On consideration thereof, the judgment of the Trumbull County Court of Common Pleas is affirmed, consistent with the opinion rendered herein.

Furthermore, it appearing to the court that the date fixed for the execution of judgment and sentence of the Trumbull County Court of Common Pleas has passed, it is ordered by the court that the sentence be carried into execution by the Warden of the Southern Ohio Correctional Facility or, in his absence, by the Deputy Warden on Wednesday, the 12th day of August, 2020, in accordance with the statutes so provided.

It is further ordered that a certified copy of this entry and a warrant under the seal of this court be certified to the Warden of the Southern Ohio Correctional Facility, and that the Warden shall make due return to the Clerk of the Court of Common Pleas for Trumbull County.

It is further ordered by the Court that a mandate be sent to the Court of Common Pleas for Trumbull County to carry this judgment into execution, and that a copy of this entry be certified to the Clerk of the Court of Common Pleas for Trumbull County for entry.

(Trumbull County Court of Common Pleas; No. 2001CR00793)

Maureen O'Connor
Chief Justice

**The Official Case Announcement can be found at http://www.supremecourt.ohio.gov/ROD/docs/**

Supreme Court of Ohio Clerk of Court - Filed June 08, 2017 - Case No. 2014-0989

IN THE SUPREME COURT OF OHIO

No.  2014-0989

| | | |
|---|---|---|
| STATE OF OHIO, | : | **MOTION FOR REHEARING AND TO** |
| | : | **STAY THE ISSUANCE OF MANDATE** |
| Plaintiff-Appellee, | : | |
| | : | |
| -vs- | : | |
| | : | **DEATH PENALTY APPEAL** |
| DONNA ROBERTS, | : | |
| | : | |
| Defendant-Appellant. | : | |
| | : | |
| | : | |

COUNSEL FOR APPELLEE:

DENNIS WATKINS,  ESQ.   0009949
Trumbull County Prosecutor
4th Floor Administration Building
160 High Street NW
Warren OH 44481
(330) 675-2426

LUWAYNE ANNOS - 0055651
Assistant Trumbull County Prosecutor

COUNSEL FOR APPELLANT:

DAVID L. DOUGHTEN, ESQ.
Regis. No. 0002847
4403 St. Clair Avenue
Cleveland, OH 44103-1125
(216) 361-1112

ROBERT A. DIXON, ESQ.
Regis. No.  0040197
4403 St. Clair Avenue
Cleveland, OH 44103-1125
(216) 432-1992

# IN THE SUPREME COURT OF OHIO

## No. 2014-0989

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | |
| Plaintiff-Appellee, | : | MOTION FOR RECONSIDERATION AND TO |
| | : | STAY THE ISSUANCE OF MANDATE |
| -vs- | : | |
| | : | |
| DONNA ROBERTS, | : | |
| | : | |
| Defendant-Appellant. | : | |
| | : | |
| | : | **DEATH PENALTY APPEAL** |

Now comes the appellant, Donna Roberts, by and through her attorneys, David L.

Doughten and Robert A. Dixon, and pursuant to Supreme Court  Practice Rule 18.02(B)(4),

moves this Honorable Court to reconsider the above-captioned case decided, May 30, 2017, and

to stay the issuance of the mandate.

Respectfully submitted,


S/David L. Doughten
DAVID L. DOUGHTEN

Counsel for Appellant


 S/Robert A. Dixon
ROBERT A. DIXON

Counsel for Appellant

## CERTIFICATE OF SERVICE

A copy of the foregoing appellant's Brief was served upon Dennis Watkins, Trumbull County Prosecutor and/or LuWayne Annos, Esq. Assistant Trumbull County Prosecutor, Administration Building, 160 High Street, Warren, Ohio 44481, through the electronic filing system and/or regular U. S. mail on this <u>8th</u> day of June, 2017.

 S/David L. Doughten
DAVID L. DOUGHTEN

S/Robert A. Dixon
ROBERT A. DIXON

Counsel for Appellant

## Overview

In *Ring v. Arizona*, 536 U.S. 584 (2002), the Supreme Court of the United States Supreme Court held that the Sixth Amendment requires a jury to *find any fact necessary* to qualify a capital defendant for a death sentence.  In *Hurst v. Florida*, ___ U.S. _____, 136 S.Ct. 616, 193 L.Ed.2d 504 (2016), the Court emphasized capital statutory schemes which require a judge to make independent findings in addition to or instead of a jury recommendations of death are in violation of the Sixth Amendment.  *Hurst*, 136 S. Ct. at 621.

Donna Roberts appeal had already been filed with this Court when *Hurst v. Florida* was announced.  *Hurst* is particularly applicable to her case as this Court in *State v. Roberts* (2006), 110 Ohio St. 3d 71, 2006 Ohio 3665, reversed her sentence because the failure of the trial court to independently prepare its sentencing opinion as required by O.R.C. 2929.03(F), but now is prohibited by *Hurst*.

Although this issue was not raised nor could it have been raised in her brief, the case was listed in Robert's supplemental authority and addressed at oral argument.

It is undisputed in this case that the sentencing judge independently determined the presence of individual factors in mitigation.  This is a factual finding that must be found by the jury under the Sixth Amendment.  In addition, the weighing of aggravation and mitigation is also an element of the offense, as a finding that the found aggravators outweighs the combined mitigation beyond a reasonable doubt is necessary before the maximum penalty for Aggravated Murder, in the instance death, may be applied.

At some point this Court will address *Hurst*'s applicability to the Ohio Statute.  It is requested that the issue be addressed here, as the issue will be settled for future capital considerations sooner than later.

<u>ARGUMENT</u>

**Proposition of Law II:**

  **Ohio's statutory scheme for capital punishment violates the Sixth Amendment of the United States Constitution as it requires the judge rather than the jury to making findings of fact to determine whether the death penalty is the appropriate penalty.**

  In *Hurst v. Florida*, ___ U.S. _____, 136 S.Ct. 616, 193 L.Ed.2d 504 (2016), the Supreme  Court of the United States held that in capital trials, advisory jury verdicts as to the punishment to be imposed, which in turn require the trial court judge to make factual findings before imposition of the death penalty, violate of the Sixth Amendment to the United States Constitution.  As Ohio's statutory scheme for capital punishment requires the trial judge to make factual determinations that are statutorily required to be independent of a jury recommendation of death, Ohio's scheme is constitutionally invalid.

  This flaw is particularly prevalent in the present case.  Not only did the judge make the necessary findings of facts to determine whether particular factors mitigation existed in the record, the judge also, without ever having heard from the defendant, made a factual determination that the factors in mitigation the court had found were outweighed by the aggravating factors that had been found by the jury, beyond a reasonable doubt.  It was also the judge, not the jury, who assigned the weight to both the mitigation and the aggravation when making that determination.

  In doing so, the trial judge was following the mandates of this Court and  R.C. §2929.03(F), which  requires that the judge make these findings independently, without any input from the jurors.  This statue is in direct contradiction of <u>Hurst.</u>

  Therefore, Ohio's death penalty scheme as constructed and applied violates the liberties

<center>1</center>

secured by the Sixth, Eighth and Fourteenth Amendments to the United States Constitution; and the immunities specified in Ohio Constitution, Article I, §§1, 2, 5, 9, 10, and 16.

**A.       Supreme Court of the United States Opinion in *Hurst***

In *Hurst v. Florida*, *supra*, a jury had convicted the defendant of first-degree murder, but had not identified which of the presented theories – premeditated murder or felony murder – buttressed their finding, *Hurst*, 136 S. Ct. at 619-20.  In Florida, first degree murder is a capital felony, but the maximum sentence a capital defendant may receive based solely on that conviction is life imprisonment.  Fla. Stat. §775.082(1).  The defendant will receive the death penalty only after an additional sentencing proceeding "results in findings by the court that such person shall be punished by death."  *Id*.  Otherwise, the defendant is punished by life imprisonment without parole.  *Id*.

Accordingly, after Hurst was found guilty of first-degree murder, the judge conducted an evidentiary hearing before the jury.  *Hurst*, 136 S. Ct. At 620.  At the conclusion of the evidentiary hearing, the jury rendered an "advisory sentence" of death without specifying the factual basis of its recommendation.  *Id*.  Under Florida law, the trial court must give the jury's recommendation "great weight," but must independently weigh the aggravated and mitigating circumstances before entering a sentence of life imprisonment or death.  *Id*.  The trial court in *Hurst* did this, and imposed a death sentence.  *Id*.

On post-conviction review, the Florida Supreme Court vacated the sentence for reasons that are not relevant here.  *Id*.  At Hurst's re-sentencing hearing, a jury again recommended death and the judge so sentenced, basing its decision on the independent findings of aggravating circumstances as well as the jury's recommendation.  *Id*.

2

The United States Supreme Court accepted certiorari of Hurst's appeal to resolve the tension between *Ring v. Arizona*, 536 U.S. 584 (2002) and its earlier decisions, *Hildwin v. Florida*, 490 U.S. 638 (1989) and *Spaziano v. Florida*, 468 U.S. 447 (1984).  In *Ring*, the Supreme Court held that the Sixth Amendment requires a jury to *find any fact necessary* to qualify a capital defendant for a death sentence.  *Hurst*, 136 S. Ct. at 621.  Although *Ring* had not expressly overruled *Hildwin* and *Spaziano*, cases which approved the constitutionality of Florida's capital sentencing scheme, *Ring's* holding seemed to compel such an outcome.  *Hurst* laid the confusion to rest, holding that Florida's law "violates the Sixth Amendment in light of *Ring*."  *Id*. At 620.

Justice Sotomayor explained in her 8-1 majority opinion that like Arizona, the state whose sentencing scheme was at issue in *Ring*, "Florida does not require the jury to make the critical findings necessary to impose the death penalty.  Rather, Florida requires a judge to find these facts."  *Id*., at 622.  Justice Sotomayor continued: "Although Florida incorporates an advisory jury verdict that Arizona lacked, we have previously made clear that this distinction is immaterial."  *Id*.  Because "the maximum punishment Timothy Hurst could have received without any judge-made findings was life in prison without parole," and because "a judge increased Hurst's authorized punishment based on her own factfinding," the Court held that "Hurst's sentence violates the Sixth Amendment."  *Id*.

In so holding, the Court rejected Florida's argument that the jury's recommendation necessitated that finding of an aggravating circumstance, noting "the Florida sentencing statute does not make a defendant eligible for death until 'findings *by the court* that such person shall be punished by death'" *Id*.  (quoting Fla. Stat. §775.082(1)) (emphasis in opinion).  Because "[t]he

3

trial court *alone* must find 'the facts...[t]hat sufficient aggravating circumstances exist' and '[t]hat there are insufficient mitigating circumstances to outweigh the aggravating circumstances,'" the Court found that a Florida jury's function is solely advisory and does not satisfy the constitutional standard outlined by *Ring*. *Id.* (quoting §921.141(3)) (emphasis in original).

**B.    Analysis Changed Because of Re-Defining of an Element**

*Hurst* must be viewed in light of the evolution of how the Supreme Court came to define exactly what constitutes an element of a criminal offense. Prior to *Apprendi v. New Jersey* and *Ring v. Arizona*, in *Walton v. Arizona*, the Supreme Court held a weighing sentencing scheme such as that in Arizona, was compatible with the Sixth Amendment because the additional facts found by the judge qualified as sentencing considerations, not "elements of the offense of capital murder." *Id.*, at 649. This has all changed.

Within ten years of the opinion in *Walton*, the analysis of Sixth Amendment right to jury trial and jury findings shifted. Now an element is defined by the Supreme Court of the United States, as, in essence, any finding that must be made to extend the possible maximum sentence. *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428 (2002); *Blakely v. Washington*, 542 U.S. 296 (2004). Here, and in any death penalty case, a defendant is not eligible for the death penalty unless the government proves beyond a reasonable doubt that the aggravating circumstance or circumstances outweigh the mitigation. Without that specific jury finding, the maximum statutory sentence for Aggravated Murder, R.C. §2903.01 with capital murder specifications pursuant to R.C. §2929.04(A) is a life sentence. Thus, the finding by judge the mitigation outweighs the found aggravating factors, by definition, an element.

4

1.    **Review of Apprendi Lineage**

A further review of *Apprendi v. New Jersey* and its progeny will assist in evaluating this

issue.  In *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the United States Supreme Court held

that the Fifth Amendment's Due Process Clause and the Sixth Amendment's notice and jury trial

guarantees require that any fact other than prior conviction that increases the maximum penalty

for a crime must be charged in an indictment, submitted to a jury, and proved beyond a

reasonable doubt.  *Apprendi* at 476, *citing Jones v. United States*, 526 U.S. 227 (1999).  The

Fourteenth Amendment commands the same answer when a state statute is involved.  The

historical foundation for these principles extends down centuries into the common law. While

judges in this country have long exercised discretion in sentencing, such discretion is bound by

the range of sentencing options prescribed by the legislature.  Apprendi, supra.

The Court addressed the issue of what constitutes and element in a capital punishment

context in *Ring v. Arizona*, 536 U.S. 584 (2002).  In Ring, the Court struck down a critical aspect

of the Arizona capital sentencing procedure, which had allowed the judge rather than the jury to

determine the existence of aggravating factors.  Because the aggravating factors were held to be

the "functional equivalent of an element of a greater offense," only the jury could determine their

existence.  Ring, Holding syl. (quoting Apprendi v. New Jersey, 530 U.S. 466, 494 n.19 (2000)).

In a case decided on the same day as Ring, the Court noted that "read together, McMillan

v. Pennsylvania, 477 U.S. 79, (1986) and Apprendi mean that those facts setting the *outer limits*

of a sentence and of the judicial power to impose it are elements of the crime for constitutional

analysis." Harris v. United States, 536 U.S.545, 567 ( 2002) (Emphasis added).

In Harris, the Supreme Court of the United States again considered the distinction the law

5

has drawn between the elements of a crime and factors that influence a criminal sentence.

Legislatures define crimes in terms of the facts that are their essential elements, and

constitutional guarantees attach to these facts.  The Court again noted that:

> A crime was not alleged, and a criminal prosecution not complete, **unless the indictment and the jury verdict included all of the facts to which the legislature had attached the maximum punishment.**  Any "fact that . . . exposes the criminal defendant to a penalty *exceeding* the maximum he would receive if punished according to the facts reflected in the jury verdict alone" the Court concluded, would have been, under the prevailing historical practice, an element of an aggravated offense.

Id., *quoting* from Apprendi, 530 U.S. at 483.  (emphasis added)

> The Harris Court explained:

> *If the grand jury has alleged*, and the trial jury has found, all the facts necessary to impose the maximum, the barriers between government and defendant fall. The judge may select any sentence within the range, based on facts not alleged in the indictment or proved to the jury -- even if those facts are specified by the legislature, and even if they persuade the judge  to choose a much higher sentence than he or she otherwise would have imposed. That a fact affects the defendant's sentence, even dramatically so, does not by itself make it an element.

*Id*. 543-544. (Emphasis added)

In other words, a finding which would persuade the judge to give the maximum instead

of a lesser sentence within the legislatively established range is not an element.  However, if the

finding allowed the judge to sentence the defendant beyond the maximum otherwise allowed by

the legislature, that finding is an element.

### 2.    Finding of an Statutory Aggravating Factor Alone Insufficient for Death Sentence

In further explanation of this point, it is not the mere presence or finding by the jury of

the R.C. §2929.04(A) aggravating factors that allow the death penalty to be implemented.  The

maximum sentence permitted by the legislature in a case where death aggravators are proven is a

6

life sentence.  Only where the jury makes an additional factual finding that such proven aggravators outweigh the available mitigators beyond a reasonable doubt is the statutory maximum raised to death.

The mere fact that a statutory aggravator has been found by the jury to have been proven by the state renders the defendant death eligible is irrelevant.  The Supreme Court specifically addressed such scenarios in a non-capital scenario in <u>Blakely v. Washington</u> , 542 U.S. 296 (2004).  It did not matter, the Court explained, that Blakely's sentence, though outside the standard range, was within the 10-year maximum for that class of felonies:

> Our precedents make clear . . . that the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant* . . . . In other words, the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts 'which the law makes essential to the punishment,' . . . and the judge exceeds his proper authority." *Id*., at 303, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (emphasis in original) (quoting 1 J. Bishop, Criminal Procedure § 87, p. 55 (2d ed. 1872)).

<u>Id</u>. at 303, cited with approval in <u>Cunningham v. California</u>, 549 U.S. 270, 127 S. Ct. 856, 870 (2007).

## C.    Ohio's Statutory Scheme

In general, Ohio's death-penalty sentencing scheme is similar to Florida's in several significant ways.  Ultimately it is the judge, not the jury, who determines whether factors in mitigation exists, and if found, the weight to be afforded to each individual factor.  In addition, the determination of whether such mitigators outweigh the found aggravator or capital specification beyond a reasonable doubt is also an element as it raised the *outer limits* of the possible sentence.  Because that finding, the weighing, allows a greater penalty, death, than

7

would otherwise be admissible, that finding constitutes an element and must be found by the jury

"alone".  *Hurst* at 622.

Specifically, pursuant to R.C. §2929.02(B), a jury in an Ohio capital case must find the

defendant guilty or not guilty of the principal charge and then it must also adjudicate "whether

the offender is guilty or not guilty of each specification."  The jury will be instructed that each

aggravating circumstance "shall be proved beyond a reasonable doubt in order to support a guilty

verdict on the specification."  *Id*.

If the jury finds a defendant guilty of both the charge and one or more of the

specifications, then, like in Florida, a sentencing hearing is conducted where:

> The court, an the trial jury if the offender was tried by a jury, shall consider any
> report prepared pursuant to this division and furnished to it and any evidence
> raised at trial that is relevant to the aggravating circumstances the offender was
> found guilty of committing or to any factors in mitigation of the imposition of the
> sentence of death, shall hear testimony and other evidence that is relevant to the
> nature and circumstances of the aggravating circumstances the offender was
> found guilty of committing, the mitigating factors set forth in division (B) of
> section 2929.04 of the Revised Code, and any other factors in mitigation of the
> imposition of the sentence of death, and shall hear the statement, if any, of the
> offender, and the arguments, if any, of counsel for the defense and prosecution,
> that are relevant to the penalty that should be imposed on the offender.

R.C. §2929.03(D)(1).  During this sentencing hearing, the defendant has the burden of

introducing evidence of any mitigating factors, but the prosecution has the ultimate burden of

"proving, by proof beyond a reasonable doubt, that the aggravating circumstances the defendant

was found guilty of committing are sufficient to outweigh the factors in mitigation of the

imposition of the sentence of death." *Id*.

At the conclusion of the sentencing hearing, if the jury unanimously finds that the

prosecutor has met this burden, "the jury shall *recommend* to the court that the sentence of death

8

be imposed on the offender." R.C. §2929.03(D)(2) (emphasis added). Unlike the federal death

penalty statutory scheme, this finding is not required to be rendered in writing and does not set

forth the factual findings underlying the jury's recommendation.[1] Unlike the Florida statute, the

trial judge need not give any weight to the jury findings.

Once an Ohio jury makes a death-sentence recommendation, as in Florida, the Ohio trial

court must independently consider "the relevant evidence raised at trial, the testimony, other

evidence, statement of the offender, arguments of counsel, and, if applicable, the reports

submitted to the court pursuant to division (D)(1) of this section." R.C. §2929.03(D)(3). The

trial court can then sentence a defendant to death if it finds "by proof beyond a reasonable

doubt...that the aggravating circumstances te offender was found guilty of committing outweigh

the mitigating factors." *Id*. As in Florida, the Ohio trial court, when it imposes a death sentence,

shall:

> . . . state in a separate opinion its specific findings as to the existence of any of
> the mitigating factors set forth in division (B) of section 2929.04 of the Revised
> Code, the existence of any other mitigating factors, the aggravating circumstances
> the offender was found guilty of committing, and the reasons why the aggravating
> circumstances the offender was found guilty of committing were sufficient to
> outweigh the mitigating factors.

R.C. §2929.03(F).

As noted above, in making the finding pursuant to this statute, the sentencing judge is not

bound by any finding of the jury. Indeed, because there are no written finding by the jury, the

judge has no idea of what the jury considered or rejected as mitigation or how the jury or

---

[1]In Florida, the jury's recommendation does not need to be unanimous. *Hurst*, 136 S. Ct.
At 620. Nevertheless, the point is that, like in Florida, Ohio juries make a recommendation to
the trial court for imposing a death sentence .

individual jurors conducted the weighing process.  The judge's decision is, by statute, to be wholly independent of the jury's deliberation and verdict.  State v. Roberts (2006), 110 Ohio St. 3d 71, 2006 Ohio 3665.

R.C. §2929.03(F) is a direct codification of the United States Supreme Court's dictates of *Lockett v. Ohio*, 438 U.S. 586 (1978).  The statute requires the trial court to determine initially whether any mitigating factors have been established.  Once isolated, the court must determine what weight to supply the identified factors individually and collectively against the found aggravating circumstances. Ohio's statute does not require judge to pay any heed to the jury finding in this regard, emphasizing the mandated independence of this opinion.  It is the judge who sentences a capital defendant to death, not the jury.

**Summary of Hurst**

In *Hurst*, the Supreme Court of the United States broadly criticized the Florida scheme because the jury "does not make specific factual findings with regard to the existence of mitigating or aggravating circumstances.  A Florida trial court no more has the assistance of a jury's findings of fact with respect to sentencing issues than does a trial judge in Arizona." *Hurst*, 136 S. Ct. At 622 (quoting *Walton v. Arizona*, 497 U.S. 639, 648 (1990)).

Because Arizona's enumerated aggravating factors operated as the functional equivalent of an element of a greater offense, an enhancement above the standard sentence for the offense, the Sixth Amendment required that they be found by a jury.  The Court overruled *Walton* to the extent that it allowed a sentencing judge to find an aggravating circumstance necessary for imposition of the death penalty.

The *Hurst* Court's opinion not only pointed out the absence of factual findings about the

10

existence of mitigating or aggravating factors, nor does it ask the jury to make any specific findings about their balancing of the mitigating and aggravating factors.  Therefore, the judge must implement a sentence without those critical findings.  Absent those factual findings, and given the advisory nature of the jury's sentencing determination, the Ohio death penalty scheme suffers from the same constitutional deficiencies as the scheme in Florida and should be invalidated.  Because the Court in *Hurst* emphasized the language in the Florida statute that defined the jury's decision as advisory in nature, Ohio's scheme that similarly classifies a jury's decision as a recommendation does not accord with the Sixth Amendment right to trial by jury. [2]

**Application to Present Case**

As has been noted, the judge in this matter sentenced Roberts to death without her ever having the ability to address the judge.  The judge did not sit or hear evidence for any aspect of her trial.  Therefore, the mitigation found or not found, and the weight assigned not only to the factors in mitigation that were found but also to the aggravation were based only on his read of a bare transcript.  This procedure is unequivocally in violation of *Hurst* principles.

---

[2]As a jury determination of less than death is binding on the court under the current statute, the portion Ohio's sentencing scheme for a sentence of less than death is not in violation of *Hurst*.

11

**CONCLUSION**

Pursuant to the above argument, the defendant-appellant Donna Roberts respectfully requests that this Honorable Court reconsider her case and reverse the penalty of death based upon above issue.

Respectfully submitted,


 S/David L. Doughten_____
DAVID L. DOUGHTEN


S/ Robert A. Dixon_____
ROBERT A. DIXON

Attorneys for Appellant Roberts

12

Supreme Court of Ohio Clerk of Court - Filed June 14, 2017 - Case No. 2014-0989

IN THE SUPREME COURT OF OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | ) | CASE No. 2014-989 |
| | ) | |
|     Plaintiff-Appellee | ) | Appeal from the Trumbull County |
| | ) | Court of Common Pleas |
| -vs- | ) | Case No. 01-CR-793 |
| | ) | |
| DONNA ROBERTS, | ) | |
| | ) | A DEATH PENALTY CASE |
|     Defendant-Appellant | ) | |

STATE'S MEMORANDUM IN RESPONSE TO APPELLANT'S MOTION FOR
RECONSIDERATION

DENNIS WATKINS
Atty. Reg. No. 0009949
LuWAYNE ANNOS (Counsel of Record)
Atty. Reg. No. 0055651
ASHLEIGH MUSICK
Atty. Reg. No. 0096078
Trumbull County Prosecutor's Office
160 High Street, N.W.
4th Floor, Administration Building
Warren, Ohio     44481
Telephone No. (330) 675-2426
Fax No. (330) 675-2431
psannos@co.trumbull.oh.us

COUNSEL FOR PLAINTIFF-APPELLEE
STATE OF OHIO

DAVID L. DOUGHTEN, ESQ
Atty. Reg. No. 0002847
4403 St. Clair Avenue
Cleveland, Ohio  44103
Telephone No. (216) 361-1112

ROBERT A. DIXON
Atty. R. No. 0022466
4403 St. Clair Avenue
Cleveland, Ohio  44103
Telephone No. (216) 432-1992

COUNSEL FOR DEFENDANT-
APPELLANT DONNA ROBERTS

### MEMORANDUM IN OPPOSITION TO APPELLANT'S MOTION FOR RECONSIDERATION

Now comes the Plaintiff-Appellee, the State of Ohio, pursuant to S.Ct. Prac. R. 18.03, who through undersigned counsel **oppose** Defendant-Appellant Donna Roberts's ("Appellant") Motion for Reconsideration filed in this Court June 8, 2017. Appellant seeks a reopening of this Court's decision in *State v. Roberts*, ---N.E.3d--, 2017-Ohio-2998, released by this Court on May 30, 2017.

Before addressing the single Proposition of Law raised in Appellant's motion, the State believes it is useful to discuss the limited guidelines by which this Court reviews a S.Ct. Prac. 18.02 motion. Elaborating on the above-stated rule, this Court has said, "***[w]e use our reconsideration authority to 'correct decisions which, upon reflection, are deemed to have been made in error.' *State ex rel. Huebner v. W. Jefferson Village Council,* 75 Ohio St.3d 381, 383, 662 N.E.2d 339 (1995). We will not, however, grant reconsideration when a movant seeks merely to reargue the case at hand. S.Ct.Prac.R. 18.02(B)." *Dublin City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 139 Ohio St.3d 212, 214, 2014-Ohio-1940, 11 N.E.3d 222, 224.

The companion rule for S.Ct. R. 18.02 in Ohio's district appellate courts is App. R. 26(A) under which an application for reconsideration is made. While the rule provides the procedure for such application, it is devoid of any standard a court should use on review. Such standard has evolved through caselaw, however, and is best expressed in the syllabus to *Columbus v. Hodge,* 37 Ohio App.3d 68, 523 N.E.2d 515 (10th Dist. ,1987): "The test generally applied upon the filing of a motion for reconsideration in the court of appeals is whether the motion calls to the attention of the court an obvious error in its decision, or raises an issue for consideration that was

1

either not considered at all or was not fully considered by the court when it should have been." See, also, *Matthews v. Matthews*, 5 Ohio App.3d 140, 450 N.E.2d 278 (10th Dist., 1981).

In order to prevail in its application, a party seeking reconsideration *must* raise one of those three errors in its application and support the request with the necessary portions of the appellate record. An application for reconsideration may not be filed simply on the basis that a party disagrees with the logic used by the appellate court or the conclusions it reached. *State v. Owens*, 112 Ohio App.3d 334, 678 N.E.2d 956. (11th Dist., 1996). With this guidance in mind, the State turns to the sole proposition of law upon which Appellant seeks reconsideration.

In her motion, Appellant designates "Proposition of Law II" as the focal point of her argument for reconsideration, and interjects the U.S. Supreme Court's recent decision in *Hurst v. Florida* ___U.S. ___, 136 S.Ct. 616, 193 L.Ed. 2d 504 (2016) as the basis for her argument. Based on the above-quoted authority, this argument must fail.

First, this Court did in fact consider the *Hurst* case in deciding the instant appeal, even though it was not announced until after both parties had submitted their briefs.  As Appellant correctly notes in her motion, this Court permitted Appellant to submit *Hurst* as supplemental authority and then questioned both parties about its possible ramifications in the case at bar during oral arguments.  This Court correctly pointed out that while *Hurst* may not have been available at the time the parties briefed this case, the alleged constitutional infirmities of Ohio's death penalty scheme, which Appellant *now* attempts to raise through her motion for reconsideration, would have been obvious and apparent and subject to challenge in Appellant's initial brief to this Court. "We recognize that the United States Supreme Court decided *Hurst* after the submission of briefs in this case, but Roberts could have made essentially the same Sixth Amendment argument by relying on *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct.

2

2348, 147 L.Ed.2d 435 (2000), and *Ring v. Arizona,* 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). "*State v. Roberts*, 2017-Ohio-2998, ¶ 84. Appellant failed to cite to either *Ring* or *Apprendi* in her brief. Therefore, Appellant attempts to use a motion for reconsideration to formulate for the first time here an issue that was fair game and easily arguable in initial briefing.

This Court made it clear that any *Hurst* argument is foreclosed at this juncture: "We therefore decline to address this claim because it has not been presented in a proposition of law or briefed by the parties, having been raised for the first time during oral argument. When an appellant's initial brief fails to mention an argument as a basis for reversing the judgment under review, we need not address that argument in deciding the appeal. *State v. Quarterman,* 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 17–19; *State v. Carter,* 27 Ohio St.2d 135, 139, 272 N.E.2d 119 (1971) (failure to include issue in brief 'would warrant our refusal to consider it'). As we observed in *Quarterman,* 'justice is far better served when it has the benefit of briefing, arguing, and lower court consideration before making a final determination.' *Quarterman* at ¶ 19, quoting *Sizemore v. Smith,* 6 Ohio St.3d 330, 333, 453 N.E.2d 632 (1983), fn. 2. Because Roberts failed to brief her Sixth Amendment claim, it is not properly before the court." *State v. Roberts*, 2017-Ohio-2998, ¶ 85. Pursuant to *Hodge, supra,* this Court fully considered the applicability of a possible *Hurst* challenge and determined it was not properly before the Court.

Second, Appellant in the Overview section of her motion writes: "At some point this Court will address *Hurst's* applicability to the Ohio Statute." This Court has already done that. Well before oral arguments in the instant matter, this Court opined that the irregularities in Florida's death penalty process are not reflected in Ohio law.

3

"Ohio's capital-sentencing scheme is unlike the laws at issue in *Ring* and *Hurst*. In Ohio, a capital case does not proceed to the sentencing phase until *after* the fact-finder has found a defendant guilty of one or more aggravating circumstances. *See* R.C. 2929.03(D); R.C. 2929.04(B) and (C); **337 *State v. Thompson*, 141 Ohio St.3d 254, 2014-Ohio-4751, 23 N.E.3d 1096, ¶ 147. Because the determination of guilt of an aggravating circumstance renders the defendant eligible for a capital sentence, it is not possible to make a factual finding during the sentencing phase that will expose a defendant to greater punishment. Moreover, in Ohio, if a defendant is tried by a jury, then the judge cannot impose a sentence of death unless the jury has entered a unanimous verdict for a death sentence. R.C. 2929.03(D)(2). Federal and state courts have upheld laws similar to Ohio's, explaining that if a defendant has already been found to be death-penalty eligible, then subsequent weighing processes for sentencing purposes do not implicate *Apprendi* and *Ring*. Weighing is *not* a fact-finding process subject to the Sixth Amendment, because '[t]hese determinations cannot increase the potential punishment to which a defendant is exposed as a consequence of the eligibility determination.' *State v. Gales*, 265 Neb. 598, 628, 658 N.W.2d 604 (2003); *see, e.g., State v. Fry*, 138 N.M. 700, 718, 126 P.3d 516 (2005); *Ortiz v. State*, 869 A.2d 285, 303–305 (Del.2005); *Ritchie v. State*, 809 N.E.2d 258, 268 (Ind.2004)." *State v. Belton*, 149 Ohio St.3d 165, 2016-Ohio-1581, 74 N.E.3d 319, ¶¶ 59-60, *reconsideration denied*, 147 Ohio St.3d 1440, 2016-Ohio-7681, 63 N.E.3d 158.

Appellant does not acknowledge *Belton* in her motion for reconsideration. The State submits this Court has determined that *Hurst* is inapplicable to the Ohio death penalty statutes. Pursuant to *Belton* and the Ohio Revised Code, Appellant's jury, not the trial judge, found her guilty of the aggravating circumstance in the case at bar. "A grand jury indicted Roberts on two counts of aggravated murder, R.C. 2903.01(A) (purposely causing death with prior calculation

4

and design) and (B) (felony murder). Both counts contained two death specifications pursuant to R.C. 2929.04(A)(7): one charging aggravated murder during the commission of aggravated burglary and one charging aggravated murder during the commission of aggravated robbery, with each alleging prior calculation and design and/or that Roberts was the principal offender. The indictment also charged her with aggravated burglary, R.C. 2911.11, with a firearm specification, R.C. 2941.145, and aggravated robbery, R.C. 2913.01, with a firearm specification *The jury found Roberts guilty of all counts and specifications*. At sentencing, the state elected to proceed on Count One (prior calculation and design), and the trial court dismissed Count Two (felony murder) and its specifications." (Emphasis added). *State v. Roberts*, 2017-Ohio-2998, ¶ 17. These findings made Appellant death eligible, and this Court has determined this procedure distinguishes the Ohio procedure from Florida's.

Finally, post-*Belton,* this Court has on at least four occasions refused to reconsider previously imposed death sentences for a supposed *Hurst* error. See, *State v. Sheppard* and *State v. Fears,* 147 Ohio St. 3d 1439 (2016); *State v. Myers* and *State v. Gapen* 147 Ohio St. 3d 1440 (2016). Again, Appellant fails to acknowledge these denials in her motion, nor does she attempt to distinguish her case from *Sheppard, Fears, Myers* or *Gapen.* Pursuant to solid legal authority, much of it issued by this very Court, Appellant has no legal ground upon which to stand to advance her motion.

Having discussed the applicable legal authority, the State would point to a handful of factual anomalies from this case about which the State would be remiss in not emphasizing at this juncture. At page 7 of her motion, Appellant writes: "Ultimately, it is the judge, not the jury, who decides whether factors in mitigation exists, and if found, the weight to be afforded to each individual factor." As a reminder, Appellant flatly refused to present mitigating evidence to

5

her jury.  In a lengthy unsworn statement, Appellant unequivocally told the panel that with no
mitigating evidence, they were obligated to recommend a death sentence.  "She then said, 'You
are bound by law to give me one sentence, the death penalty. You have no other choice. That is
what I'm asking you to do, because that is the right thing to do.' She reiterated that objective
after the trial court sentenced her to death. *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665,
850 N.E.2d 1168, ¶ 137 (2006).

Next, Appellant writes at page 9, "because there are no written findings by the jury, the
judge has no idea of what the jury considered or rejected as mitigation or how the jury or
individual jurors conducted the weighing process."  In Appellant's case, the jury very well may
have "considered" nothing because she presented nothing. Therefore, this argument has no
applicability to her case.  At page 11 of her motion, Appellant again raises the argument that the
judge who sentenced Appellant to death for the third time did not hear directly from Appellant,
presumably in terms of her allocution.  Indeed, the trial judge left the bench and died in between
the second and third sentencing proceedings.  But the substitute judge argument did not sway this
Court: "In the instant case, the retirement and death of the original trial judge and the substitution
of Judge Rice did not deny Roberts the ability to present mitigating evidence or to have it
considered by the sentencer. ***[T]he only cases we have found that address this issue in the
capital-sentencing context, reject the notion that a capital defendant may be sentenced to death
only by a judge who has personally presided over one or both phases of the trial. We therefore
reject this Eighth Amendment argument." *State v. Roberts*, 2017-Ohio-2998, ¶ 59.

Moreover, the State would point out that Appellant has *never* argued for a sentence less
than death.  Appellant never apologized for her actions and never personally requested that the
court sentence her to a life-in-prison option even when given the opportunity to offer an

6

allocution – in addition to her lengthy unsworn statement- when this Court ordered a second sentencing hearing. Her counsel was equally silent as to the appropriate punishment during her second and third sentencing hearings.

Even though resentenced twice, Appellant has never asked a trial judge, or for that matter, this Court, to reconsider the sentence of death. The record reflects that Appellant told Dr. Thomas Gazley during a post-sentencing competency examination that she preferred her sheltered lifestyle on death row to coping with life in general population with "these animals." (State's Ex. 1, Competency Hearing Oct. 22, 2007). Appellant told Dr. Gazley "[g]ive me death instead of having to live here among these animals and eating slop." (Ex. 1, 9). See, also, T.d. 211, T.p. of Competency Hearing, Oct. 22, 2007). To this day, Appellant has never retreated from this position. Neither have her attorneys. Thus, any reconsideration of the instant appeal would prove hollow and quite frankly, contrary to Appellant's well-documented desire to remain on Ohio's death row.

## CONCLUSION

Appellant has failed to present a persuasive argument for this Court to take the rare action of reconsidering one of its own opinions by granting her S.Ct. Prac. R. 18.02 motion. Pursuant to the above-quoted Ohio authority, this Court fully considered Appellant's *Hurst* argument broached for the first time during oral arguments. Essentially, this Court determined the argument was not timely presented for appellate review regardless of the release date of *Hurst*. Even if it had been, this Court's decision in *Belton,* as well as the denial of reconsiderations in *Sheppard, Fears, Myers* and *Gapen,* make it clear that Ohio's death penalty scheme does not suffer the same constitutional infirmities as criticized in *Hurst.* Therefore, the State submits Appellant's S.Ct.Prac. R. 18.02 motion should be **denied.**

7

Respectfully submitted,
DENNIS WATKINS (0009949),
Trumbull County Prosecuting Attorney By:

LuWAYNE ANNOS (0055651)

ASHLEIGH MUSICK (0096078)
Assistant Prosecuting Attorneys
4th Floor, Administration Bldg.
160 High St.N.W.
Warren, OH    44481

## CERTIFICATION

I do hereby certify that a copy of the foregoing memorandum has been sent by ordinary

U.S. Mail to Atty. David L. Doughten (0002847) and Atty. Robert Dixon (0040197) 4403 St.

Clair Ave., Cleveland, OH 44103-1125 on this 14th Day of June, 2017.

LuWAYNE ANNOS (0055651)
Assistant Prosecuting Attorney

8

# The Supreme Court of Ohio



FILED

JUL 26 2017

CLERK OF COURT
SUPREME COURT OF OHIO

State of Ohio

v.

Donna Marie Roberts

Case No. 2014-0989

RECONSIDERATION ENTRY

Trumbull County

It is ordered by the court that the motion for reconsideration in this case is denied.

(Trumbull County Court of Common Pleas; No. 2001CR00793)

Maureen O'Connor
Chief Justice

**The Official Case Announcement can be found at http://www.supremecourt.ohio.gov/ROD/docs/**



# The Supreme Court of Ohio

FILED

SEP 22 2017

CLERK OF COURT
SUPREME COURT OF OHIO

| | | |
|---|---|---|
| State of Ohio | | Case No. 2014-0989 |
| v. | | E N T R Y |
| Donna Marie Roberts | | |

Upon review of the application for attorney fees filed on August 22, 2017, the court finds that the fees and expenses hereinafter approved are reasonable.

Accordingly, it is ordered that David L. Doughten is granted appointed counsel fees in the sum of $5,413.50 and expenses in the sum of $255.83 for a total allowance of $5,669.33, which amount is ordered certified to the Trumbull County Auditor for payment.

(Trumbull County Court of Common Pleas; No. 2001CR00793)

Maureen O'Connor
Chief Justice

# The Supreme Court of Ohio



SEP 22 2017

CLERK OF COURT
SUPREME COURT OF OHIO

State of Ohio

v.

Donna Marie Roberts

Case No. 2014-0989

E N T R Y

Upon review of the application for attorney fees filed on September 11, 2017, the court finds that the fees and expenses hereinafter approved are reasonable.

Accordingly, it is ordered that Robert A. Dixon is granted appointed counsel fees in the sum of $1,552.50 and expenses in the sum of $233.83 for a total allowance of $1,786.33, which amount is ordered certified to the Trumbull County Auditor for payment.

(Trumbull County Court of Common Pleas; No. 2001CR00793)

Maureen O'Connor
Chief Justice

# Supreme Court of the United States
## Office of the Clerk
## Washington, DC  20543-0001



Scott S. Harris
Clerk of the Court
(202) 479-3011

October 18, 2017

Clerk
Supreme Court of Ohio
65 South Front Street
Columbus, OH  43215-3431

> Re:  Donna Roberts
>       v. Ohio
>       Application No. 17A428
>       (Your No. 2014-0989)

Dear Clerk:

The application for an extension of time within which to file a petition for a writ of certiorari in the above-entitled case has been presented to Justice Kagan, who on October 18, 2017, extended the time to and including December 8, 2017.

This letter has been sent to those designated on the attached notification list.

Sincerely,

Scott S. Harris, Clerk

by

Michael Duggan
Case Analyst

RECEIVED
OCT 2 4 2017
CLERK OF COURT
SUPREME COURT OF OHIO

FILED
OCT 2 4 2017
CLERK OF COURT
SUPREME COURT OF OHIO

# Supreme Court of the United States
## Office of the Clerk
## Washington, DC  20543-0001

Scott S. Harris
Clerk of the Court
(202) 479-3011

NOTIFICATION LIST

Mr. Jeffrey M. Gamso
340 Lakeside Avenue
Suite 200
Cleveland, OH  44113

Clerk
Supreme Court of Ohio
65 South Front Street
Columbus, OH  43215-3431

# Supreme Court of the United States
# Office of the Clerk
# Washington, DC  20543-0001

**Scott S. Harris**
Clerk of the Court
(202) 479-3011

December 12, 2017

Clerk
Supreme Court of Ohio
65 South Front Street
Columbus, OH  43215-3431

      Re:  Donna Roberts
           v. Ohio
           No. 17-7066
           (Your No. 2014-0989)

Dear Clerk:

    The petition for a writ of certiorari in the above entitled case was filed on
December 8, 2017 and placed on the docket December 12, 2017 as No. 17-7066.

Sincerely,

**Scott S. Harris, Clerk**

by

Michael Duggan
Case Analyst

FILED
DEC 1 8 2017
CLERK OF COURT
SUPREME COURT OF OHIO

RECEIVED
DEC 1 3 2017
CLERK OF COURT
SUPREME COURT OF OHIO

**ORIGINAL**

# Supreme Court of the United States
## Office of the Clerk
## Washington, DC  20543-0001

Scott S. Harris
Clerk of the Court
(202) 479-3011

February 20, 2018

Clerk
Supreme Court of Ohio
65 South Front Street
Columbus, OH  43215-3431

Re:  Donna Roberts
      v. Ohio
      No. 17-7066
      (Your No. 2014-0989)

Dear Clerk:

The Court today entered the following order in the above-entitled case:

The petition for a writ of certiorari is denied.

Sincerely,

*Scott S. Harris*

**Scott S. Harris**, Clerk

RECEIVED
FEB 2 6 2018
CLERK OF COURT
SUPREME COURT OF OHIO

FILED
FEB 2 6 2018
CLERK OF COURT
SUPREME COURT OF OHIO

# THE SUPREME COURT OF OHIO

State of Ohio

      v.

Donna Marie Roberts

**CASE NO. 2014-0989**
**TRUMBULL COUNTY**
**COMMON PLEAS COURT**
CASE NO. **2001CR00793**
**RETURN OF RECORD**
**DEATH PENALTY CASE**

THE FOLLOWING RECORD IN THE ABOVE-NAMED CASE WAS RECEIVED BY THE UNDERSIGNED.

LIST CONTENTS:
- 4 BOXES

_Mary Vassis_  For         4-11-18
MARY VASSIS                        4/11/2018
TRUMBULL COUNTY CLERK OF COURTS

_Kara Schulkers_          4 11 18
KARA N. SCHULKERS            4/11/2018
DEPUTY CLERK, SUPREME COURT OF OHIO

Supreme Court of Ohio Clerk of Court - Filed June 12, 2020 - Case No. 2014-0989

# IN THE OHIO SUPREME COURT

### No. 2014-0989

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | |
| Plaintiff-Respondent, | : | |
| | : | |
| vs | : | **DEATH PENALTY CASE** |
| | : | |
| DONNA ROBERTS, | : | |
| | : | |
| | : | |
| Defendant-Petitioner. | : | |
| | : | |

---

### MOTION FOR STAY OF EXECUTION DURING PENDENCY OF STATE POSTCONVICTION REMEDIES PURSUANT TO R.C. §2953.21

---

FOR THE PLAINTIFF-APPELLEE

DENNIS WATKINS, ESQ.
Trumbull County Prosecutor
Adminstration Building
160 High Street
Warren, Ohio 44481

FOR DEFENDANT-APPELLANT:

DAVID L. DOUGHTEN, ESQ.
Ohio Reg. No. 0002847
4403 St. Clair Avenue
Cleveland, OH 44103
(216) 361-1112
ddoughten@yahoo.com


ROBERT A. DIXON, ESQ
Ohio Reg. No. #0022466
4403 St. Clair Avenue
Cleveland, Ohio 44103
216-432-1992
dixonlaws@aol.com

IN THE OHIO SUPREME COURT

No. **2014-0989**

STATE OF OHIO,             :
                               :

      Plaintiff-Respondent,     :
                                 :

        vs                        :
                                 :

DONNA ROBERTS,         :
                                 :      **MOTION TO STAY**
                                 :      **EXECUTION DURING PENDENCY**

      Appellant-Petitioner.      :      **OF STATE POSTCONVICTION**
                                 :      **REMEDIES; R.C. § 2953.21**

Now comes the appellant-petitioner, Donna Roberts, by and through undersigned counsel and respectfully moves this Court to grant this motion for a stay of execution of the death sentence. Although an execution date for Ms. Roberts, W55276, does not appear on the ODRC schedule, there is an pending order from this Court that has not been stayed.  An execution date of August 12, 2020, has been set by this Court. To ensure no confusion on this issue, Roberts is requesting a stay of this order.

On August 20, 2008, a petition to vacate pursuant to R.C. §2953.21 was filed by Roberts in the Trumbull County Common Pleas Court.  The trial court stayed the proceeding during the pendency of her direct appeals.  The trial court ultimately granted the the State's motion for summary judgment on December 20, 2019.  The matter remains pending in the Eleventh District Court of Appeal, CA 2019 TR 89.   The reasons in support of this motion are more fully set forth in the following memorandum.

Respectfully submitted,


S/David L. Doughten
DAVID L. DOUGHTEN

S/Robert A. Dixon
ROBERT A. DIXON, ESQ

Counsel for Donna Roberts


## CERTIFICATE OF SERVICE

The foregoing appellant's Brief was served upon Dennis Watkins, Trumbull County

Prosecutor and/or Christopher Becker, Esq. Assistant Trumbull County Prosecutor,

Administration Building, 160 High Street, Warren, Ohio 44481, by Regular U. S. mail and/or

email on this   12th   day of June, 2020.


S/David L. Doughten
DAVID L. DOUGHTEN

Counsel for Appellant

## **MEMORANDUM**

Roberts originally filed her petition to vacate pursuant to R.C. §2953.21 on September 24, 2004.  On February 11, 2005, the trial court, denied the petition and affirmed the convictions and sentence.  The Notice of Appeal was filed to the Eleventh District Court of Appeals, but stayed by agreement of the parties pending the disposition by the Supreme Court of Ohio.

On October 10, 2006, this Court affirmed the convictions but reversed the sentence of death and remanded this matter for a new sentencing. State v. Roberts, 110 Ohio St.3d 71, 2006-Ohio-3665.  On the remand, pursuant to a defense motion, Roberts was referred for a competency evaluation.  On October 28, 2007, the trial court found Roberts competent for the hearing. Roberts had filed a motion to the court to allow her to present a full mitigation hearing, but this request was denied by the court.  Roberts was permitted only to allocute for the judge.

That same day, the remand hearing was conducted.  The trial court again sentenced Roberts to death. Roberts again appealed her case to this Court.

In the meantime, on August 20, 2008, Roberts again filed a motion to vacate as her original petition was essentially moot, and had been filed before, as it turns out, she had been actually sentenced.  The parties agreed this to be the appropriate action.  The proceedings were kept in abeyance pending her second appeal.

On May 7, 2013, this Court again reversed her sentence of death and remanded the matter for the limited purpose of having the sentencing judge prepare a sentencing opinion which complied with the mandates of R.C. §2929.03. State v. Roberts, 137 Ohio St.3d 230, 2013-Ohio-4580.

On April 30, 2014, the trial court again, albeit a different judge, sentenced Roberts to death and filed its independent opinion in compliance with the Supreme Court mandate.  Roberts appealed the decision a third time.  Roberts was unsuccessful as this Court affirmed her sentence

of death.  <u>State v. Roberts</u>, 150 Ohio St.3d 47, 2017-Ohio-2998.  Her motion for reconsideration

was denied by that court on July 28, 2017.  Roberts appealed her case to the United States

Supreme Court on December 18, 2017.  Her petition for an issuance of a writ of certiorari was

denied on February 20, 2018.  <u>Roberts v. Ohio</u>, 138 S.Ct.  998 (2018) .

   While the direct appeal was pending, the parties agreed that a filing of an amended

postconviction petition, in which claims that were deemed moot were actually dropped, would be

appropriate.  It was also agreed that the proceeding would stay in abeyance until her direct

appeal process was completed.  The agreed judgment was filed on July 20, 2015 in this Court.

   On December 20, 2019, the trial court granted the State's summary judgment to dismiss

the petition without an evidentiary hearing.  I

   Roberts timely filed her appeal of the denial of the postconviction petition to the Eleventh

District Court of appeals.  The briefs have been filed.  Oral argument is set for July 22, 2020.

    The petitions raises issues that draw into question not only the sentence, but also the

legitimacy of the convictions.

   Therefore, pursuant to <u>State v. Glenn</u> (1987), 33 Ohio St. 3d 601 the appellant-petitioner

Roberts respectfully requests a stay of the execution of his death sentence so that he may pursue

his Petition to Vacate or Set Aside Sentence pursuant to Ohio Revised Code  2953.21.

   The petitioner requests a stay of the execution of his death sentence until the state

postconviction proceedings have been completed.

                                        Respectfully submitted,


                                         S/David L. Doughten_____
                                        DAVID L. DOUGHTEN

                                        Counsel for Appellant



# The Supreme Court of Ohio

State of Ohio

v.

Donna Marie Roberts

Case No. 2014-0989

E N T R Y

    This cause came on for further consideration upon the filing of appellant's motion for stay of execution during pendency of state postconviction remedies pursuant to R.C.2953.21. It is ordered by the court that the motion for stay of execution is granted.

    It is further ordered that this stay shall remain in effect until exhaustion of all state postconviction proceedings, including any appeals.

    (Trumbull County Court of Common Pleas; No. 2001CR00793)

Maureen O'Connor
Chief Justice

**The Official Case Announcement can be found at http://www.supremecourt.ohio.gov/ROD/docs/**



**U.S. Postal Service®**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

USPS® ARTICLE NUMBER

9414 7266 9904 8170 7367 06

| | |
|---|---|
| Certified Mail Fee | $ 2.80 |
| Return Receipt (Hardcopy) | $ |
| Return Receipt (Electronic) | $ |
| Certified Mail Restricted Delivery | $ |
| Postage | $ |
| Total Postage and Fees | $ 6.80 |

Sent to:  LuWayne Annos
Trumbull County Prosecutor's Office
County Administration Building, 160 High St
Warren, OH 44481

Reference Information

SCOCLERK/POL
2014-0989

PS Form 3800, Facsimile, July 2015



# WALZ

Certified Mail Automation

Walz Certified Mailer™ form #45663
Version E1119

Used with WCM Plus™ software

Reorder forms online at:
www.walzpostal.com

FILED

SEP 29 2020

CLERK OF COURT
SUPREME COURT OF OHIO

or contact WALZ at:
Email: sales@walzpostal.com
Toll Free: (800) 381-3811

For a better, faster and easier way!



**U.S. Postal Service®**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

**USPS® ARTICLE NUMBER**

9414 7266 9904 2170 7369 13

| | |
|---|---|
| Certified Mail Fee | $ 2.80 |
| Return Receipt (Hardcopy) | $ |
| Return Receipt (Electronic) | $ |
| Certified Mail Restricted Delivery | $ |
| Postage | $ 6.80 |
| Total Postage and Fees | $ |

Sent to:  David Lawrence Doughten
David L. Doughten, Co. LPA
4403 St. Clair Avenue
Cleveland, OH 44103-1125   43216

**Reference Information**

SCOCLERK/POL
2014-0989

PS Form 3800, Facsimile, July 2015



**WALZ**

Certified Mail Automation

Walz Certified Mailer™ form #45663
Version E1119

Used with WCM Plus™ software

Reorder forms online at:
www.walzpostal.com

or contact WALZ at:
Email: sales@walzpostal.com
Toll Free: (800) 381-3811

For a better, faster and easier way!

FILED
SEP 29 2020
CLERK OF COURT
SUPREME COURT OF OHIO









**WALZ**
Certified Mail Automation

Walz Certified Mailer™ form #45663
Version E1119

Used with WCM Plus™ software

FILED

SEP 29 2020

CLERK OF COURT
SUPREME COURT OF OHIO

Reorder forms online at:
www.walzpostal.com

or contact WALZ at:
Email: sales@walzpostal.com
Toll Free: (800) 381-3811

For a better, faster and easier way!





# WALZ

Certified Mail Automation

Walz Certified Mailer™ form #45663
Version E1119

Used with WCM Plus™ software

Reorder forms online at:
www.walzpostal.com

or contact WALZ at:
Email: sales@walzpostal.com
Toll Free: (800) 381-3811

For a better, faster and easier w

FILED
SEP 29 2020
CLERK OF COURT
SUPREME COURT OF OHIO










USPS TRACKING #

9590 9266 9904 2170 7368 79

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

**United States**
**Postal Service®**

● Sender: Please print your name, address and ZIP+4® below ●

**SUPREME COURT OF OHIO**
**CLERKS OFFICE 8TH FLR**
**65 SOUTH FRONT STREET**
**COLUMBUS OH 43215-3431**



FILED

OCT - 7 2020

CLERK OF COURT
SUPREME COURT OF OHIO



USPS TRACKING #

9590 9266 9904 2170 7369 09

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

**United States**
**Postal Service®**

• Sender: Please print your name, address and ZIP+4® below •

SUPREME COURT OF OHIO
CLERKS OFFICE 8TH FLR
65 SOUTH FRONT STREET
COLUMBUS OH 43215-3431

FILED

OCT - 9 2020

CLERK OF COURT
SUPREME COURT OF OHIO



USPS TRACKING #

9590 9266 9904 2170 7368 93

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

**United States Postal Service®**

● Sender: Please print your name, address and ZIP+4® below ●

SUPREME COURT OF OHIO
CLERKS OFFICE 8TH FLR
65 SOUTH FRONT STREET
COLUMBUS OH 43215-3431

FILED

OCT 1 4 2020

CLERK OF COURT
SUPREME COURT OF OHIO

Return Receipt (Form 3811) Barcode

9590 9266 9904 2170 7368 62

1. Article Addressed to:
Warden's Assistant
Amy Hamilton
Chillicothe Correctional Institution
15802 State Route 104 N.
Chillicothe, OH 45601

2. Certified Mail (Form 3800) Article Number

9414 7266 9904 2170 7368 69

PS Form 3811, Facsimile, July 2015

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X ☐ Agent
☐ Addressee

B. Received by (Printed Name) | C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type:
☒ Certified Mail
☐ Certified Mail Restricted Delivery

Reference Information
2014-0989
SCOCLERK/POL

Domestic Return Receipt

for using Return Receipt Service

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 2639



Return Receipt (Form 3811) Barcode

9590 9266 9904 2170 7368 79

1. Article Addressed to:
Deputy Counsel
Sarah Ackman
Governor's Office
77 South High Street, 30th Floor
Columbus, OH 43215

2. Certified Mail (Form 3800) Article Number

9414 7266 9904 2170 7368 76

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X COVID-19
☐ Agent
☐ Addressee

B. Received by (Printed Name)

C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

COLUMBUS MAIN OFFICE
OCT 02 2020
43216

3. Service Type:
☒ Certified Mail
☐ Certified Mail Restricted Delivery

Reference Information

2014-0989
SCOCLERK/POL

PS Form 3811, Facsimile, July 2015 | Domestic Return Receipt

| Return Receipt (Form 3811) Barcode | COMPLETE THIS SECTION ON DELIVERY |
|---|---|

A. Signature

X ___C-A___   ☐ Agent  ☐ Addressee

B. Received by (Printed Name)  C. Date of Delivery

___C-A___   10/1/2020

9590 9266 9904 2170 7369 09

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

Article Addressed to:

LuWayne Annos
Trumbull County Prosecutor's Office
County Administration Building, 160
High St
Warren, OH 44481

3. Service Type:
☒ Certified Mail
☐ Certified Mail Restricted Delivery

Reference Information

2014-0989

SCOCLERK/POL

Certified Mail (Form 3800) Article Number

9414 7266 9904 2170 7369 06

S Form 3811, Facsimile, July 2015                    Domestic Return Receipt

| Return Receipt (Form 3811) Barcode | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| | A. Signature |
| 9590 9266 9904 2170 7368 93 | X  C-19          ☐ Agent    ☐ Addressee |
| | B. Received by (Printed Name)    C. Date of Delivery |
| | C-19                    10/6/2020 |
| 1. Article Addressed to: | D. Is delivery address different from item 1?  ☐ Yes |
| Trumbull County Clerk of Courts | If YES, enter delivery address below:  ☐ No |
| Trumbull County Courthouse | |
| 160 High St. NW | |
| Warren, OH 44481 | 3. Service Type: |
| | ☒ Certified Mail |
| | ☐ Certified Mail Restricted Delivery |
| | Reference Information |
| | 2014-0989 |
| 2. Certified Mail (Form 3800) Article Number | SCOCLERK2POL |
| 9414 7266 9904 2170 7368 90 | |
| PS Form 3811, Facsimile, July 2015 | Domestic Return Receipt |