1/28/2016 CourtView Justice Solutions

## 2005 TR 00034

| Case Type | TR - Court of Appeals | Action: | NOTICE OF APPEAL-11TH DIST. APPELLATE COURT |
|---|---|---|---|
| Case Status: | CLOSED | Status Date: | 03/17/2005 |
| File Date: | 03/17/2005 | Case Judge: | |
| DCM Track: | | Next Event: | |

| All Information | Party | Docket | Financial | Disposition |

### Docket Information

| Date | Docket Text | Amount Owed |
|---|---|---|
| 11/18/2013 | ENTRY FROM SUPREME COURT FILED. DEATH SENTENCE IS VACATED AND CAUSE IS REMANDED TO TRIAL COURT FOR RESENTENCING ON THE BASIS OF THE EXISTING RECORD, CONSISTENT WITH THE OPINION RENDERED. COPY TO COA | $0.00 |
| 02/15/2008 | 63/844 IT IS THEREFORE ORDERED THAT COUNSEL FEES AND EXPENSES BE, AND ARE HEREBY APPROVED.  SEE JE COPY TO TRUM CO AUDITOR | $0.00 |
| 01/17/2008 | MOTION FOR PAYMENT OF ATTORNEY FEES, JE AND CERTIFICATION FILED BY ATTY D DOUGHTEN | $0.00 |
| 11/14/2007 | ORIGINAL PAPERS, EXHIBITS AND 28 VOL TP (COPIES) RETURNED TO:  COMMON PLEAS | $0.00 |
| 10/22/2007 | 63/148 OPINION FROM 11TH DISTRICT COURT OF APPEALS FILED. JUDGMENT:  APPEAL DISMISSED.  SEE OPINION AND JE COPY TO ATTYS | $0.00 |
| 10/22/2007 | MANDATE ISSUED TO:  COMMON PLEAS | $0.00 |
| 09/15/2006 | 60/948 THIS MATTER IS CURRENTLY PENDING BEFORE THIS COURT ON APPELLANT'S APPEAL. ON 09/01/06, THE PARTIES FILED A JOINT MOTION TO STAY THE PROCEEDINGS. THE BASIS FOR THE MOTION IS THAT THE SUPREME COURT ISSUED AN OPINION IN APPELLANT'S DIRECT APPEAL.  THEREIN, THE COURT VACATED APPELLANT'S SENTENCE AND REMANDED THE MATTER TO THE TRIAL COURT FOR RESENTENCING.  THE PARTIES JOINT MOTION TO STAY IS GRANTED. COUNSEL FOR BOTH PARTIES ARE INSTRUCTED TO SUBMIT VERIFICATION TO THIS COURT OF THE TRIAL COURT'S NEW JUDGMENT ENTRY OF SENTENCE, WITHIN 10 DAYS OF FILING OF THE NEW JE.  IN ADDITION, WITHIN THIRTY DAYS OF THE ISSUING OF THE NEW JE, THE PARTIES ARE INSTRUCTED TO NOTIFY THIS COURT, BY WAY OF WRITTEN MENORANDA, OF THE EFFECT THE NEW JE HAS ON THIS APPEAL.  SEE JE COPY TO ATTYS | $0.00 |
| 09/01/2006 | JOINT MOTION TO STAY PROCEEDINGS AND CERTIFICATION FILED BY ATTY L ANNOS | $0.00 |
| 01/06/2006 | 59/52 APPELLEE'S MOTION TO EXCEED THE MAXIMUM PAGE LENGTH OF ITS BREIF TO THIRTY EIGHT (38) PAGES IS HEREBY GRANTED. COPY TO ATTYS | $0.00 |
| 10/11/2005 | REPLY BRIEF FILED WITH CERTIFICATE OF SERVICE FILED ATTY D DOUGHTEN | $0.00 |
| 09/30/2005 | 58/439 APPELLANT'S MOTION FOR AN EXTENSION OF TIME TO FILE HER REPLY BRIEF IS HEREBY GRANTED TO 10/11/05.  NO FURTHER EXTENSIONS WILL BE GRANTED APPELLANT IN THIS MATTER. COPY TO ATTYS | $0.00 |
| 09/29/2005 | MOTION FOR EXTENSION OF TIME TO FILE REPLY BRIEF AND CERTIFICATION FILED BY ATTY D DOUGHTEN | $0.00 |
| 09/19/2005 | BRIEF OF APPELLEE AND CERTIFICATION FILED BY ATTY L ANNOS | $0.00 |
| 09/19/2005 | MOTION FOR LEAVE TO FILE BRIEF IN EXCESS OF PAGE LIMIT AND CERTIFICATION FILED BY ATTY L ANNOS | $0.00 |
| 08/29/2005 | BRIEF OF APPELLANTAND ASSIGNMENT OF ERROR AND CERTIFICATION FILED BY ATTY D DOUGHTEN | $0.00 |

1/28/2016                                CourtView Justice Solutions

| | | |
|---|---|---|
| 07/28/2005 | 57/926 MOTION GRANTED TO FILE BRIEF BY 08/26/05. COPY TO ATTYS | $0.00 |
| 07/26/2005 | MOTION FOR EXTENSION OF TIME TO FILE APPELLANTS BRIEF WITH CERTIFICATION FILED BY ATTY DAVID DOUGHTEN | $0.00 |
| 07/07/2005 | RECORD FILED WITH 28 VOL TP.  NOTICE OF FILING TO COURT OF APPEALS AND ATTORNEYS | $0.00 |
| 07/06/2005 | 57/833  APPELLANTS NOTICE OF APPEAL IS THIS CASE WAS TIMELY FILED.  APPELLANTS MOTION FOR A DELAYED APPEAL IS HEREBY OVERRULED AS MOOT. THE CASE SHALL PROCEED.  APPELLANTS PRO SE MOTION FOR APPOINTMENT OF COUNSEL IS GRANTED. ATTY DAVID DOUGHTEN AS COUNSEL TO REPRESENT APPELLANT FOR PURPOSES OF APPEAL.  THE CLERK OF COURTS IS INSTRUCTED TO IMMEDIATELY FILE THE RECORD. COPIES TO ATTYS | $0.00 |
| 03/17/2005 | NOTICE OF APPEAL TO 11TH DIST. APP. CT. WITH DOCKETING STATEMENT AND COPY OF JE FILED BY ATTY D DOUGHTEN COPY TO ATTY L ANNOS AND COURT OF APPEALS Amount Owed: $100.00 Paid Before Conversion: $0.00 Receipt Number: | $100.00 |
| 03/17/2005 | MOTION FOR LEAVE TO FILE DELAYED APPEAL, CERTIFICATION AND EXHIBITS FILED BY ATTY D DOUGHTEN | $0.00 |
| 03/17/2005 | MOTION FOR APPOINTMENT OF APPELLATE COUNSEL AND CERTIFICATION FILED BY ATTY DOUGHTEN | $0.00 |



OSTR 34

IN THE COURT OF COMMON PLEAS
TRUMBULL COUNTY, OHIO
CRIMINAL DIVISION

STATE OF OHIO,                    :        CASE NO. 2001 CR 0793
                                  :
          Respondent,             :        JUDGE JOHN M. STUARD
                                  :
    -vs-                          :
                                  :
DONNA ROBERTS,                    :        MOTION FOR APPOINTMENT
                                  :        OF APPELLATE COUNSEL
          Petitioner.             :


Now comes the Petitioner-defendant, Donna Roberts, by and through her attorney, David

L. Doughten, and respectfully moves this Court to appoint her appellate counsel for the appeal of the

February 11. 2005, denial of her postconviction petition. Undersigned counsel was appointed by this

Court for her direct appeal and the R.C. §2953.21 postconviction proceedings in the trial court. No

appointment has been made for the appellate procedure. Ms. Roberts is on death row and remains

indigent. The state public defenders office has been conflicted out as they are representing the co-

defendant, Nathaniel Jackson.

It is further requested that this court make a finding of indigence for the purpose of the filing

of her notice of appeal. Counsel has sent Ms. Roberts an affidavit of indigency, but as counsel only

received notice of the denial on February 22, 2005, there is concern as to whether is will be returned

in time for the filing of the Notice of Appeal.

162

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 3005

Respectfully Submitted,

David L. Doughten #0002847
4403 St. Clair Avenue
Cleveland, OH 44103
216.361.1112
ddoughten@yahoo.com

## CERTIFICATE OF SERVICE

A copy of the foregoing Petitioner's Motion was served upon Dennis Watkins, Trumbull
County Prosecutor and/or LuWayne Annos, Esq. Assistant Trumbull County Prosecutor,
Administration Building, 160 High Street, Warren, Ohio 44481, by Regular U. S. mail on this 26th
day of February, 2005.

DAVID L. DOUGHTEN
Counsel for Petitioner

- 2 -

IN THE COURT OF APPEALS
ELEVENTH JUDICIAL DISTRICT OF OHIO
COUNTY OF TRUMBULL

CA

**FILED**
COURT OF APPEALS

MAR 1 7 2005

TRUMBULL COUNTY, OH
KAREN INFANTE ALLEN, CLERK

05-TR-34

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Respondent-Appellee, | : | |
| | : | |
| -vs- | : | |
| | : | |
| DONNA ROBERTS | : | **MOTION FOR LEAVE TO** |
| | : | **FILE DELAYED APPEAL** |
| Petitioner-Appellant. | : | |

COUNSEL FOR APPELLEE:

DENNIS WATKINS, ESQ.
Trumbull County Prosecutor
160 High Street
Warren, Ohio 44481

COUNSEL FOR APPELLANT:

DAVID L. DOUGHTEN, ESQ.
Regis No. 0002847
4403 St. Clair Avenue
Cleveland, Ohio 44103
(216) 361-1112

163

IN THE COURT OF APPEALS
ELEVENTH JUDICIAL DISTRICT OF OHIO
COUNTY OF TRUMBULL

CA

| | | |
|---|---|---|
| STATE OF OHIO | : | 05-TR-34 |
| | : | |
| Respondent-Appellee | : | |
| | : | |
| -vs- | : | |
| | : | |
| DONNA ROBERTS | : | MOTION FOR LEAVE TO |
| | : | FILE DELAYED APPEAL |
| Petitioner-Appellant | : | |

Now comes the Petitioner-Appellant, Donna Roberts, by and through undersigned

counsel and pursuant to Rule 5(A) and 3(B) of the Ohio Rules of Appellate Procedure, requests

that this Honorable Court grant the appellant leave to appeal the denial of her postconviction

petition filed pursuant to R.C. §2953.21. Ms. Roberts has been convicted of Aggravated Murder

and sentenced to death. The reasons in support of this motion are included in the attached brief.

Respectfully Submitted,

DAVID L. DOUGHTEN
Counsel for Appellant

## CERTIFICATE OF SERVICE

A copy of the foregoing Notice of Appeal was served by regular U.S. mail upon Dennis Watkins and /or LuWayne Annos, Trumbull County Prosecutor's Office, 160 High Street, Warren, Ohio 44481, on this 17th day of March, 2005.

DAVID L. DOUGHTEN
Counsel for Appellant

## BRIEF IN SUPPORT

The Petitioner-appellant Donna Roberts has been capitally convicted and sentenced to death. She filed a postconviction petition challenging the conviction in the Trumbull County Common Pleas Court. On February 11, 2005, the trial court denied her petition. However, the court did not order the opinion delivered to counsel until February 23, 2005. Counsel did not receive the opinion until after this date. (Exhibit C)

Counsel had called Assistant County Prosecutor LuWayne Annos and asked about the status of the case. Ms. Annos did inform counsel that the petition had been denied. It is believed that Ms. Annos assisted in having the opinion sent to counsel. Upon learning of the denial, counsel sent an affidavit of indigence to Ms. Roberts for her signature to facilitate the filing to the Notice of Appeal.

In the meantime, counsel filed a motion for appointment of counsel for the appeal. The clerks office received the motion on March 1, 2005. See Exhibit A. (attached) Counsel was appointed by the trial court for the preparation of the petition, but not the appeal should it be denied. The state public defenders office could not represent Ms. Roberts as that office is representing her co-defendant, Nate Jackson, who is also on death row. The motion appointment of appellate counsel did not include an affidavit of indigence as the affidavit had not been returned by Ms. Roberts.

Ms. Roberts signed the affidavit on March 3, 2005. Exhibit B. (Attached) It was not received by counsel's office in time to include it with a timely filed Notice of Appeal. Counsel is not aware if the trial court has ruled on Ms. Roberts motion for appellate counsel. She is filing a motion with this Court contemporaneously with this motion requesting such. Undersigned counsel is currently assisting Ms. Roberts on a pro bono basis as she does not have access to

other counsel.

Therefore, it is respectfully requested that this appeal be allowed to continue on a delayed basis.  The failure to allow the defendant to continue her appeal is violative of the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

DAVID L DOUGHTEN
Counsel for Appellant

FILED
COURT OF APPEALS

MAR 1 7 2005

TRUMBULL COUNTY, OH
KAREN INFANTE ALLEN, CLERK

IN THE COURT OF COMMON PLEAS
COUNTY OF TRUMBULL
CRIMINAL DIVISION

| | | |
|---|---|---|
| STATE OF OHIO | : | Case No. 2001 CR 0793 |
| Plaintiff-Appellee | : | JUDGE JOHN M. STUARD |
| -vs- | : | |
| DONNA ROBERTS | : | **NOTICE OF APPEAL** |
| Defendant-Appellant | : | |

05-TR-34

Now comes the defendant, Donna Roberts, and hereby gives notice that she will appeal, on questions of law, her denial of her postconvictiion petition pursuant to R.C. §2953.21. This appeal is taken pursuant to Ohio Rule of Appellate Procedure 4(B).

Respectfully submitted,

DAVID L. DOUGHTEN #0002847
4403 St. Clair Avenue
Cleveland, Ohio 44103
(216) 361-1112
FAX: (216) 881-3928

Dennis Watkins
Trumbull County Prosecutor
160 High Street
Warren, Ohio 44481

Counsel for Plaintiff-Appellee

Counsel for Defendant-Appellant

163

## CERTIFICATE OF SERVICE

A copy of the foregoing Notice of Appeal was served by regular U.S. mail upon Dennis Watkins and/or LuWayne Annos, Trumbull County Prosecutor's Office, 160 High Street, Warren, Ohio 44481, on this 17th day of March, 2005.

David L. Doughten
Counsel for Appellant

<u>**ELEVENTH DISTRICT COURT OF APPEALS -- LOCAL RULE NO. 9**</u>

<u>**DOCKETING STATEMENT**</u>

David L. Doughten
4403 St. Clair Avenue
Cleveland, Ohio 44103
216-361-1112
Reg. No. 0002847

**F I L E D**
COURT OF APPEALS

MAR 1 7 2005

TRUMBULL COUNTY, OH
KAREN INFANTE ALLEN, CLERK

State of Ohio,

      Plaintiff-Appellee,

      vs.

Donna Roberts

      Defendant-Appellant.

Appeal No. 05-TR-34

Trial Court Case No.2001 CR 0793

TYPE OF CASE:

__x__ A. No transcript of proceedings required.
_____ B. Length of transcript is such that preparation time will not be a source of delay.
_____ C. Agreed or narrative statement to be submitted pursuant to App. R. 9C or D.
_____ D. Record was made in administrative hearing and filed with trial court.
_____ E. All parties to case approve assignment to accelerated calendar.
_____ F. Criminal cases involving:
      _____ 1. Crim. R. 11 challenges.
      __x__ 2. Post-conviction appeals alleging ineffective assistance of counsel.
      _____ 3. Challenges to sentencing to revocation of probation or to failure to grant
      probation.
      _____ 4. Crim. R. 29 or weight of evidence challenges, especially with lesser crimes.
      _____ 5. Routine DUI cases and other minor traffic offenses.
      _____ 6. Expungement cases.
_____ G. Civil cases involving:
      _____ 1. Routine administrative appeals.
      _____ 2. Actions on account.
      _____ 3. Slip and fall.
      _____ 4. Civ. R. 60(B) motions.

_____ 5. Simple contract cases.
_____ 6. Minor negligence actions.
_____ 7. Property division in divorce case or post-decree support motions.
_____ H. Other _____

PROBABLE ISSUE FOR REVIEW:
 Denial of an evidentiary hearing _____
_____
_____
_____

CERTIFICATE OF SERVICE

I certify that I have mailed or otherwise delivered a copy of this Docketing Statement to all counsel of record or the parties if unrepresented.

Date ___3-16-05___                    Signature _____

TRANSCRIPT INFORMATION(App. R. 9[B])

No transcript or statement pursuant to either App. R. 9(C) or (D) is necessary.

Date _3-16-05_____          Signature _____

STATE OF OHIO    )        IN THE COURT OF APPEALS

                    ) SS.

COUNTY OF TRUMBULL  )        ELEVENTH DISTRICT

STATE OF OHIO,              JUDGMENT ENTRY

        Plaintiff-Appellee,     CASE NO. 2005-T-0034

   -vs-

DONNA ROBERTS,

        Defendant-Appellant.

On March 17, 2005, Appellant, Donna Roberts, filed a notice of appeal from a February 11, 2005 judgment of the Trumbull County Court of Common Pleas. On that same day, Appellant also filed a motion for delayed appeal pursuant to App.R. 5(A).

From a review of the trial court docket, it is clear that notice of the judgment being appealed was not sent to Appellant until February 23, 2005. Civ.R. 58(B) requires that notice be sent within three days. When that occurs, a party has thirty days from when notice was received to file a notice of appeal. Appellant's notice of appeal in this case was, therefore, timely filed.

Hence, there was no need to file a motion for a delayed appeal in this case. Additionally, since this is a postconviction relief proceeding, the case is civil in nature and, therefore, App.R. 5(A) is inapplicable.

Based upon the foregoing analysis, Appellant's motion for a delayed appeal is hereby overruled as moot. The case shall proceed.

It is further ordered that Appellant's pro se motion for appointment of counsel, filed March 17, 2005, is granted. This Court appoints Attorney David L. Doughten,

It is further ordered that Appellant's pro se motion for appointment of counsel, filed March 17, 2005, is granted.  This Court appoints Attorney David L. Doughten, 4403 St. Clair Avenue, Cleveland, OH 44103, as counsel to represent Appellant for purposes of appeal.

The Clerk of Courts is instructed to immediately file the record.


*Donald R. Ford*
ADMINISTRATIVE JUDGE DONALD R. FORD


**F I L E D**
COURT OF APPEALS

JUL − 6 2005

TRUMBULL COUNTY, OH
KAREN INFANTE ALLEN, CLERK

IN THE COURT OF APPEALS
ELEVENTH JUDICIAL DISTRICT OF OHIO
COUNTY OF TRUMBULL

CA 2005 T 0034

STATE OF OHIO,                          :
                                        :
    Respondent-Appellee,                :
                                        :
    -vs-                                :     MOTION FOR EXTENSION OF TIME
                                        :     TO FILE APPELLANT'S BRIEF
DONNA ROBERTS,                          :
                                        :
    Petitioner-Appellant.               :

Now comes the appellant, by and through undersigned counsel and, pursuant to Ohio

Rule of Appellate Procedure 14(B) and Local Rule 10, requests that this Honorable Court extend

the time to file the Appellant's Brief for the reasons set forth in the attached Memorandum.

Respectfully submitted,

_____
DAVID L. DOUGHTEN
Counsel for Defendant
Regis. No. 0002847
4403 St. Clair Avenue
Cleveland, OH 44103-1125
(216) 361-1112

## MEMORANDUM IN SUPPORT

Counsel is unable to complete the brief due to his appellate and trial court caseload. Counsel is filing a death penalty brief in the federal Sixth Circuit Court of Appeals on August 4, 2005.  The brief must be to the printers by August 2, 2004, in the matter of Daniel Wilson v. Betty Mitchell, Warden. Case No. 03-3362.  Mr. Wilson is appealing the denial of his habeas petition.

In addition, counsel if filing the brief in State v. David Thurman, CA 86170, in the Ohio Eighth District Court of Appeals on July 25, 2004.  Mr. Thurman is appeal a conviction of Aggravated Murder.

This is the first  request for an extension for the purposes of filing the brief.  This request is not being made for the purposes of delay.

Respectfully submitted,

DAVID L. DOUGHTEN
Counsel for Defendant

## CERTIFICATE OF SERVICE

A copy of the foregoing Motion was served upon Dennis Watkins, Trumbull County Prosecutor and/or LuWayne Annos, Esq. Assistant Trumbull County Prosecutor, Administration Building, 160 High Street, Warren, Ohio 44481, by Regular U. S. mail on this 25th day of July, 2005.

DAVID L. DOUGHTEN

Counsel for Appellant

IN THE COURT OF APPEALS
ELEVENTH JUDICIAL DISTRICT OF OHIO
COUNTY OF TRUMBULL

CA 2005 T 0034



FILED
COURT OF APPEALS

JUL 2 6 2005

TRUMBULL COUNTY, OH
KAREN INFANTE ALLEN, CLERK

STATE OF OHIO,                          :
                                        :
         Plaintiff-Appellee,            :
                                        :
    -vs-                                :       MOTION FOR EXTENSION OF
                                        :       TIME TO FILE APPELLANT'S BRIEF
DONNA ROBERTS,                          :
                                        :
         Defendant-Appellant.           :       DEATH PENALTY APPEAL


MOTION GRANTED TO
FILE BRIEF BY 8-26-2005

JUL 27 2005

Donald R. Ford
JUDGE

FILED
COURT OF APPEALS

JUL 2 8 2005

TRUMBULL COUNTY, OH
KAREN INFANTE ALLEN, CLERK


COUNSEL FOR APPELLEE:

DENNIS WATKINS, ESQ.
Trumbull County Prosecutor
160 High Street, N.W.
4th Floor, Administration Bldg.
Warren, Ohio
(330) 675-2431

COUNSEL FOR APPELLANT:

DAVID L. DOUGHTEN, ESQ.
Regis. No. 0002847
4403 St. Clair Avenue
Cleveland, OH 44103
(216) 361-1112



IN THE COURT OF APPEALS
ELEVENTH JUDICIAL DISTRICT
TRUMBULL COUNTY, OHIO

CASE NO. ~~2003-A-111~~ $05$-TR-34
$4JD$

STATE OF OHIO                    :

    Plaintiff-Appellee,       :

-vs-                             :

                                 **FILED**
DONNA ROBERTS                    :    COURT OF APPEALS

    Defendant-Appellant.      :    AUG 2 9 2005

                                 TRUMBULL COUNTY, OH
                            KAREN INFANTE ALLEN, CLERK

---

## APPELLANT'S BRIEF AND ASSIGNMENTS OF ERROR

---

COUNSEL FOR APPELLEE:

DENNIS WATKIND, ESQ. 0009949
Trumbull County Prosecutor
4th Floor Administration Building
160 High Street NW
Warren OH 44481
(330) 675-2426

LUWAYNE ANNOS - 0055651
Assistant Trumbull County Prosecutor

COUNSEL FOR APPELLANT:

DAVID L. DOUGHTEN, ESQ.
Regis. No. 0002847
4403 St. Clair Avenue
Cleveland, OH 44103-1125
(216) 361-1112

ORIGINAL

## TABLE OF CONTENTS

### and

## ASSIGNMENT OF ERROR

PAGES

**STATEMENT OF THE CASE**

PROCEDURAL POSTURE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**First Assignment of Error**

**The trial court erred by failing to grant Appellant Roberts an evidentiary hearing
which would allow her to establish the prejudice of the errors which occurred
during her capital trial.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

ISSUE PRESENTED FOR REVIEW

May a the trial court deny an evidentiary hearing on a properly filed R. C.
§2953.21 petition which relies upon evidence *de hors* the record?

AUTHORITIES

R.C §2953.21 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8
State v. Milanovich (1975), 42 Ohio St. 46 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
State v. Calhoun (1999), 86 Ohio St.3d 279 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
State v. Jackson (1980), 64 Ohio St. 2d 107 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
State v. Cole (1982), 2 Ohio St. 3d 112 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
State v. Moore (1994) 99 Ohio App.3d 748 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**Second Assignment of Error**

**The appellant was denied her right to a fair and impartial jury and equal
protection because there was an under-representation of African Americans
in the venire from which his jury was drawn.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

ISSUE PRESENTED FOR REVIEW

Must a trial court hold an evidentiary hearing to determine the defendant is denied a fair cross section of the community where a prima facie case is made that a class of citizens has been precluded from jury service?

AUTHORITIES

Peters v. Kiff, 470 U.S. 493, 501 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
Sixth Amendment to the United States Constitution . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
Taylor v. Louisiana, 419 U.S. 522, 531 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
Equal Protection Clause of the Fourteenth Amendment . . . . . . . . . . . . . . . . . . . . . . . . 14

**Third Assignment of Error**

**The appellant's convictions and sentence are void or voidable because the grand jury that indicted her was drawn from a venire in which African-Americans were disportionately excluded in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.** . . . . . . . . . 15

ISSUE PRESENTED FOR REVIEW

Must a trial court hold an evidentiary hearing to determine the defendant is denied a fair cross section of the community where a prima facie case is made that a class of citizens has been precluded from grand jury selection?

AUTHORITIES

O.R.C. §§ 2939.02, 2313.07, 2313.08, 2313.35 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
Powers v. Ohio, 499 U.S. 400 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
Vasquez v. Hillery, 474 U.S. 254 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16
Rose v. Mitchell, 443 U.S. 545 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
Alexander v. Louisiana, 405 U.S. 625 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
Castaneda v. Partida, 430 U.S. 482 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
Taylor v. Louisiana, 419 U.S. 522 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
Atwell v. Blackburn, 800 F.2d 502, 505 (5th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . 16
Machetti v. Linahan, 479 F.2d 236, 239 (11th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . 16

**Fourth Assignment of Error**

> **The appellant's was denied the effective assistance of counsel**
> **during the culpability stage of her capital case.** . . . . . . . . . . . . . . . . . . . . . 17

ISSUE PRESENTED FOR REVIEW

Is capital defense counsel deficient in the performance of his duties where he fails
to offer an opening or closing argument, offer evidence of exculpatory evidence
and refuses to allow his client to testify?

AUTHORITIES

Powell v. Alabama, 287 U.S. 45 (1932) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
Sixth Amendment to the United States Constitution . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
Strickland v. Washington (1984), 466 U.S.668 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
Batson v. Kentucky (1986), 476 U.S. 79 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
State v. Pratt, 1987 Ohio App. LEXIS 8622 (Sept. 9, 1987), Hamilton App. No C-
860436, unreported. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
State v. White (1999) 85 Ohio St. 3d 433 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
State v. Walker (1st Dist.-2000) 139 Ohio App.3d 52 . . . . . . . . . . . . . . . . . . . . . . . . . 19
Rock v. Arkansas, 483 U.S. 44, 52-53, 97 L. Ed. 2d 37, 107 S. Ct. 2704 & n.10,
483 U.S. 44, 97 L. Ed. 2d 37, 107 S. Ct. 2704 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . 22
Rogers-Bey v. Lane, 896 F.2d 279 (7th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
Jones v. Barnes, 463 U.S. 745, 77 L. Ed. 2d 987, 103 S. Ct. 3308 (1983) . . . . . . . . . . 22
Schneckloth v. Bustamonte, 412 U.S. 218, 241, 36 L. Ed. 2d 854, 93 S. Ct. 2041
(1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
Johnson v. Zerbst, 304 U.S. 458, 464, 82 L. Ed. 1461, 58 S. Ct. 1019 (1938) . . . . . . . 22

**Fifth Assignment of Error**

> **The death sentence against Appellant Roberts is void and/or voidable**
> **because the death penalty as administered by lethal injection violates her**
> **constitutional right to protection from cruel and unusual punishment as**
> **guaranteed by the Eighth Amendment and federal due process of law.** . . . . . . . . 23

ISSUE PRESENTED FOR REVIEW

Does the use of lethal injection violate the Eighth Amendment?

AUTHORITIES

Eighth Amendment to the United States Constitution. . . . . . . . . . . . . . . . . . . . . . . . . . . 25
Fourteenth Amendment to the United States Constitution . . . . . . . . . . . . . . . . . . . . . . 25

**Sixth Assignment of Error**

**Ohio's post-conviction procedures do not provide an adequate corrective
process, in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments
to the United States.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

ISSUE PRESENTED FOR REVIEW

Does the use of lethal injection violate the Eighth Amendment?

AUTHORITIES

R. C. §2953.21 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
Young v. Ragen, 337 U.S. 235, 239 (1949) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
State v. Perry, 10 Ohio St. 2d 175, 226 N.E. 104 (1967) . . . . . . . . . . . . . . . . . . . . . . . 26
Fifth Amendment to the United States Constitution . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
Sixth Amendment to the United States Constitution . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
Eighth Amendment to the United States Constitution . . . . . . . . . . . . . . . . . . . . . . . . . . 27
Fourteenth Amendment to the United States Constitution . . . . . . . . . . . . . . . . . . . . . . 27

**CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

**SERVICE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

## STATEMENT OF THE CASE

**Procedural Posture**

A Trumbull County grand jury indicted the defendant-appellant Donna Roberts (hereinafter appellant) on a four count indictment for various charges, including two alternative theory counts of capital murder surrounding the death of her husband, Robert Fingerhut.  The indictment charged the appellant with one count of the purposeful killing of Mr. Fingerhut with prior calculation and design in violation of R.C. §2903.01(A) and one count of the so-called felony murder in violation of R.C. §2903.01(B).  Each of these capital murder counts included two capital specifications addressing violations of R.C. §2929.04(A)(7).  The first specification alleged that the murder occurred during the commission of an Aggravated Burglary, R.C. §2911.11.  The second specification alleged that the murder occurred during the commission of an Aggravated Robbery, R.C. §2911.01.

The third and fourth counts charged the felonies underlying the aforementioned capital specifications, Aggravated Burglary, R.C. §2911.11 and Aggravated Robbery, R.C. §2911.01.  Each count of the indictment included a firearm specification pursuant to R.C. §2929.141.

The charges indicated that the appellant was not the principal offender, but rather she acted in complicity with the principal, and co-defendant, Nathaniel Jackson.  Mr. Jackson was tried separately as he also was capitally indicted.  The appellant pleaded not guilty to all counts of the indictment at her arraignment on December 31, 2001.

On February 26, 2002, the trial court conducted a hearing on the appellant motion to suppress items taken from her home the night of the homicide.  The trial court denied the motion.

1

A jury trial began on March 26, 2003, with the death qualification process. The jury found the appellant guilty of all counts including the capital and firearm specifications on May 2003.

On June 3, 2003, the appellant indicated to the court that she wanted to waive the presentation of mitigation at the penalty phase hearing, except she did desire to make an unsworn statement. The trial court conducted a hearing to determine her competency to do so. A psychologist, Thomas Eberle, who had previously examined her, believed the appellant to be competent. The court also directly questioned the appellant. The court determined her to be competent under State v. Ashworth (1999) 85 Ohio St. 3d 56, 1999 Ohio 204.

Prior to the commencement of the penalty phase hearing, the prosecutor elected to dismiss Count Two, R.C. §2903.01(B)(felony-murder) and proceeded with Count One, R.C. §2903.01.(A) (prior calculation and design). The hearing began on June 4, 2004. The defense waived opening and closing argument. The appellant did provide an unsworn statement. That same day, the jury recommended a sentence of death.

On June 20, 2003, the trial court accepted the recommendation and sentenced the appellant to death. The court also sentenced the appellant to serve ten years for both the convictions of Aggravated Robbery and Aggravated Burglary. These sentences are being served consecutively to each other and the sentence of death. The court also applied a three-year firearm specification, which is also being served consecutively to the principle sentences.

The appellant filed a Notice of Appeal for a delayed appeal on August 13, 2003. This Court granted the motion on September 24, 2003. The original counsel for the appellant, the

Ohio Public Defender Office, withdrew representation as that office also represented the co-defendant Nathaniel Jackson.

The appellant filed her brief on direct appeal in the Ohio Supreme Court on July 19, 2004. The cases has not been set for argument as of the filing of this brief.

Postconviction Filings

On September 24, 2004, the appellant filed a postconviction petition pursuant to R. C. §2953.21. An amended petition was filed on October 25, 2004.

The common pleas court denied the postconviction and denied the request to hold an evidentiary hearing on.

The appellant filed a timely Notice of Appeal on March 17, 2005. The Brief and Assignments of Error follow.

3

## STATEMENT OF THE FACTS

The appellant Donna Roberts was convicted of complicity in the murder of her ex-husband/housemate Robert Fingerhut.  It was alleged that she maintained a relationship with the co-defendant Nathaniel Jackson while Mr. Jackson was imprisoned on an unrelated charge.  The two hatched a plot through letters and phone calls to kill Mr. Fingerhut for the purpose of obtaining the proceeds of his life insurance policies, of which Ms. Roberts was the beneficiary.  Mr. Jackson was convicted and sentenced to death in a trial prior to that of the appellant.

Ms. Roberts waived her right to present mitigation evidence in the penalty phase.  Angered at a verdict that she believed to be unjust, she waived her mitigation to receive a sentence proportional to her co-defendant, a black male.  To receive a lesser sentence as a Jewish white woman, would be another indication of inequality in the justice system based upon race.  The waiver was believed to have been entered to establish this point.  The validity of the waiver is being addressed at the Supreme Court and is not an issue here.  It is mentioned only so this Court understands why no mitigation issues are being presented in this procedure.

### State's Case

The state charged the appellant Donna Roberts with planning the killing of her husband with a prison inmate, Nathaniel Johnson.  According to the state, the appellant and Mr. Jackson were pen-pals while he was serving time in a state penal institution.  It is alleged that at some point during the letter writing and phone conversations, the two planned the homicide of the appellant husband/roommate, Robert Fingerhut.  Shortly after Mr. Jackson was released from prison, the two allegedly orchestrated the homicide during a time which the appellant established an alibi for herself while shopping and eating away from her home, where the offense transpired.

4

On December 11, 2001, a screaming Donna Roberts made a call to 911 at 11:00 p.m. (T. 5138)  In response the call, Howland Township police officer Albert Ray was dispatched to the home of the appellant Donna Roberts to investigate a purported homicide.  He arrived to find the appellant yelling and screaming hysterically outside the home. (T. 5156)  Officer Ray found the decedent, Robert Fingerhut, laying in the entrance to the home from the garage.  The appellant told him to "Do whatever you have to do to catch the bastard." (T. 5161) A gun was located by the body on a step in the garage. (T. 5165)

The coroner reported that Mr. Fingerhut died from multiple gunshot wounds.  One of the shots entered his brain, causing the death. (T.5596) The time of death was estimated from as little as two hours to a s great as six hours prior to the 1:00 a.m. autopsy which was performed on December 12, 2001.  (T. 5603)

Sgt. Frank Dillon arrived on the scene to investigate the homicide.  He found a partial footprint of blood near the body.  He checked everyone's shoes but was unable to determine who stepped in the blood. (T.  5613, 5618) Upon checking the weapon, Sgt. Dillon discovered that all five chambers were filled with a bullet.  (T. 5615)

A search of the body revealed that money remained in the wallet and pants pocket of the decedent. (T. 5629) He also noticed that Mr. Fingerhut's car was not at the home. (T. 5631)  This was later discovered near the location of the residence where Nathaniel Jackson was living. (T. 5654)

Sgt. Dillon first became suspicious of the appellant when he noticed that she seemed to cry loudly only when the officers checked on her condition.  She became silent when the officers talked amongst themselves as if trying to listen.  (T. 5640)

5

Appellant' Alibi

The appellant informed the police that she was not at home at the time of Mr. Fingerhut's death. She described her day for the officers. (T. 5649-5650) She indicated that she was at the Greyhound station until 5:30 p.m. (T. 5868) She went to dinner at a Red Lobster and went shopping and bought some rotisserie chicken for her dogs. (T. 5868-5871) She did not arrive home until shortly before midnight to find the decedent. (T. 5872)

The connection to Nathaniel Jackson was made when the officer found letter correspondence in the bedroom and the trunk of her car. (T. 5886, 5897) The officers called the Lorain Correctional Institution and obtained CD's of 18 phone calls between the appellant and Mr. Jackson. (T. 5147) Jose Sanchez worked for Mr. Fingerhut, who operated a Greyhound Bus station in Youngstown, Ohio. He knew the appellant as she worked at the location. He also knew Mr. Jackson, who visited the station. (T. 5235) Sanchez described a video from December 11, 2001, in which Mr. Fingerhut left the station at about 9:00 p.m. (T. 5240)

Jeff Diamantes worked at a Days Inn Hotel in Boardman, Ohio. On December 11, 2001, he rented a room to the appellant. He identified her because she offered a picture ID.(T. 5377, 5386) Blood stains were found throughout the room where he stayed, including on hand towels and a comforter. (T. 5533) Mr. Jackson's fingerprints were found in the hotel room. (T. 5843)

Detective Mike Yanucci found leather gloves in the residence where Mr. Jackson was living. The left index finger was torn. (T. 5403)

6

## ARGUMENT

**First Assignment of Error**

> **The trial court erred by failing to grant Appellant Roberts an evidentiary hearing which would allow her to establish the prejudice of the errors which occurred during her capital trial.**

The trial court summarily dismissed the appellant's postconviction action without granting her relief or an evidentiary hearing.   The trial court also denied the appellant discovery or her ability to supplement the record with the trial record of her co-defendant Nathaniel Jackson.  The trial court's action denied the appellant her constitutional rights as guaranteed by the Fifth, Sixth, and Fourteenth Amendments, United States Constitution and Section 16, Article I, Ohio Constitution.

The trial court dismissed the appellant's postconviction petition without a hearing.  The trial court's action was erroneous and in contravention of R.C. §2953.21, the Ohio Rules of Civil Procedure and the applicable case law.  The appellant had included evidence outside the record to support her claim that he had not been afforded effective assistance of counsel during the penalty phase of trial.

The issues which were summarily denied without a hearing were based upon:

1. Roberts' convictions and sentences are void and/or voidable because she was denied her right to a fair and impartial jury and equal protection. There was an under-representation of African Americans in the venire from which her jury was drawn.

2. Roberts's convictions and sentence are void or voidable because the grand jury that indicted her was drawn from a venire in which African-Americans were disportionately excluded in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

7

3.  Roberts' convictions and sentences are void and/or voidable because she was denied the effective assistance of counsel during the trial stage of her capital case. The acts and omissions of trial counsel deprived her of the Sixth Amendment right to effective assistance of counsel in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution. Strickland v. Washington, 486 U.S. 668 (1984).

4.  The death sentence against Roberts is void and/or voidable because the death penalty as administered by lethal injection violates her constitutional right to protection from cruel and unusual punishment as guaranteed by the Eighth Amendment and to due process of law. Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution

As addressed above, the appellant was unable to develop the record without discovery and without a hearing. Nevertheless, the record did include sufficient evidence including additional affidavits and other documents (tape of co-defendant's confession) to mandate a hearing if no outright granting of the petition.

Ohio Postconviction Law

The right to postconviction relief is set forth in Section (A) of R.C. §2953.21, which provides:

> (A) Any person convicted of a criminal offense or adjudicated delinquent claiming that there was such a denial or infringement of his rights as to render that the judgment void or voidable under the Ohio Constitution or the Constitution of the United States, may file a petition at any time in that court which imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief. The petitioner may file such supporting affidavit and other documentary evidence as will support his claim for relief.

As such, any person convicted of a criminal offense in Ohio whose rights have been infringed under either the Ohio or Federal Constitutions may seek relief under the Ohio postconviction statutes.

8

Postconviction actions are civil proceedings. State v. Milanovich (1975), 42 Ohio St. 46. As such, the Ohio Rules of Civil Procedure were thought to apply. Milanovich, supra, at 52. This conclusion is somewhat clouded by the decision of State v. Calhoun (1999), 86 Ohio St.3d 279, which emanated from this court. In Calhoun, the Ohio Supreme Court reiterated that a postconviction petition was a "collateral civil attack on the judgment." Id. 281. However, the rights of a appellant were seemingly greatly curtailed by this decision.

Previously the Ohio Supreme Court had held that generally only three (3) issues can be the basis for a dismissal without a hearing. The first issue centered upon whether the individual cause of action or claim alleges a state or federal constitutional violation which affects appellant's conviction.

The second issue was whether the appellant has met her burden to submit evidentiary documents containing sufficient operative facts to support her claims. State v. Jackson (1980), 64 Ohio St. 2d 107. Finally, the third issue was whether the evidence or documentation attached to the petition is so specious as to not warrant a hearing. State v. Cole (1982), 2 Ohio St. 3d 112, 115. This issue turns on an assessment of the evidence or documentation *dehors* the record that is attached to the petition. If such evidence or documentation is merely specious, then no hearing on the petition is warranted. Id. However, the evidence submitted by appellant can only be deemed specious when, in comparison to evidence in the record, such *dehors* evidence fails to establish or support a claim.

Present Case

In addition to the jury exclusion matter relating to the jury composition, the appellant argued in her petition that her counsel failed to perform his duties within the boundaries accepted

9

as permissible under the professional norm. These issues are argued specifically in the following Propositions of Law. For the purposes of this Proposition, it should be noted that the petition included an affidavit supporting the claim that the appellant was under duress and entered into the plea without being properly advised as to the law as it related to the appellant and her charges. The allegations were not included in the record for direct appeal.

The issue to be determined is whether the trial judge could find the exhibits attached to the petition to be unworthy of a hearing. The Calhoun decision would seem to provide greater discretion to the trial judge in determining whether the appellant met her proof burden in filing the petition. The court held that a petitioner receives no more rights than those granted by the statute. The court also held that the summary judgment opinions in civil cases do not apply because the trial court "has presumably been presented with evidence sufficient to support the original entry of conviction." Calhoun, Id. 284. The court, thus, under certain conditions, found that the reviewing court may rule on the credibility of the affidavits attached.

In reviewing the attached documents, the court noted that an affidavit, being by definition a statement that the affiant has sworn to be truthful, should not lightly be deemed false. The court followed the guidelines of the First Appellate District in State v. Moore (1994) 99 Ohio App.3d 748. Among these factors:

(1) Whether the judge reviewing the postconviction relief petition also presided at trial;

(2) Whether multiple affidavits contained merely identical language or otherwise appear to have been drafted by the same person;

(3) Whether the affidavits contained or rely on hearsay;

10

(4)     Whether the affiants are relatives of the petitioner or otherwise interested in the success of the petitioner's efforts, and;

(5)     Whether the affidavits contradict evidence proffered by the defense at trial.

Moreover, a trial court may find sworn testimony in an affidavit to be contradicted by evidence in the record by the same witness, or to be internally inconsistent, thereby weakening the credibility of that testimony. The decision court concluded that depending on the entire record, one or more of these factors may be sufficient to justify the conclusion that an affidavit asserting information outside of the record lacks credibility. Id. 285.

In applying the above factors, the trial court in this case did abuse its discretion by summarily dismissing the petition. Multiple affidavits are not contained in the petition. The affidavits rely on the personal experience of the affiant. The affidavits do not contradict evidence in the record of the plea. The sole item in favor of questioning the credibility of the affiant is that the appellant clearly has her interest to consider.

R.C. §2953.21(c) requires that the reviewing judge consider the entire record. This section holds that "the court *shall* consider, in addition to the petition, the supporting affidavits, the documentary evidence," in addition to the other items in the court file. In this case, there is no evidence that the trial court reviewed the required documentation.

Subsection (E) of this statute mandates in relevant part that: *unless the petition and the files and records of the case show the petitioner is not entitled to relief, the court shall proceed to a prompt hearing on the issues* . . .

There was no clear showing by the trial court that the appellant was not entitled to relief. A hearing is thus mandated in this instance. He was denied his rights to effective assistance of

11

counsel and to due process of law as guaranteed by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 16 of the Ohio Constitution.

12

**Second Assignment of Error**

> **The appellant was denied her right to a fair and impartial jury and equal protection because there was an under-representation of African Americans in the venire from which her jury was drawn.**

Racial discrimination in the selection of the members of a petit jury venire constitutes a denial of an impartial jury as guaranteed by the Sixth Amendment and the Equal Protection Clause of the Fourteenth Amendment. It is alleged her that the jury was underrepresented by minorities, particularly prosepective jurors of African-American heritage. The lack of discovery and a hearing hindered the development of this issue. The record does not reveal which jurors were of African-American heritage. The jury questionaires are also silent as to the racial heritage of the prospective jurors.

African-Americans comprised 7.9 percent of the population in Trumbull County Consequently there should have been approximately eleven African-Americans in the one-hundred-forty-persons who appeared for jury duty. Even if the prosecutors second statement was accurate, there was still a substantial under-representation of African-Americans.

In <u>State v. Davie</u>, Trumbull C.P. No. 91 CR 288, the Court presided over another capital case. The clerk drew two hundred names and approximately one-hundred thirty of the one-hundred fifty individuals appeared for jury duty. Not one African-American appeared for jury duty.

Subsequent to Mr. Davie's jury trial, Diane Wiley of the National Jury Project reviewed the venire that was drawn in that case. Ms. Wiley has conducted jury evaluations in more than fifty cases throughout the United States. She is co-author of one of the leading treatises on juries,

13

<u>Jurywork: Systematic Techniques</u>.  Ms. Wiley made the following findings concerning the racial

discrimination in the <u>Davie</u> case:

> The number of African American citizens called to serve as jury venirepersons for
> *State of Ohio v. Roderick Davie*, on February 3, 1992 in Trumbull County
> Common Pleas Court underrepresented the percentage of African Americans in
> Trumbull County by 100%.

> This underrepresentation represents a statistically significant deviation from the
> number of African American persons who would be expected utilizing a truly
> random sampling method from a truly random pool representative of the county . .
> . .

> It is disturbing to find a venire of this size without even one African American
> juror being included in a jurisdiction with 6% African Americans.  This simply
> should not occur unless there was some kind of systematic discrimination.
> [Emphasis added.]

The under-representation of African-Americans on juries in cases over which this Court

presides continued in co-defendant Donna Roberts case and that of the co-defendent. There were

no African-Americans on the jury which convicted her of capital murder and returned a death

recommendation.

The under-representation of a cognizable group in a petit jury venire constitutes a denial

of the Due Process Clause of the Fourteenth Amendment, <u>Peters v. Kiff</u>, 470 U.S. 493, 501

(1972); the Fair Cross Section requirement of the Sixth Amendment, <u>Taylor v. Louisiana</u>, 419

U.S. 522, 531 (1975); and the Equal Protection Clause of the Fourteenth Amendment, <u>Taylor v.</u>

<u>Louisiana</u>, 419 U.S. at 531.

The wrongful exclusion of African-Americans from the venire is a structural error.  Ms.

Roberts is entitled to relief without the demonstration of prejudice.  At minimum, it is requested

that this issue be remanded for an evidentiary hearing.

14

**Third Assignment of Error**

> **The appellant's convictions and sentence are void or voidable because the grand jury that indicted her was drawn from a venire in which African-Americans were disportionately excluded in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.**

In the Second Assignment of Error, Roberts alleged that African-Americans were under-represented in the venire from which the jury was drawn that convicted him of capital murder and recommended that he be sentenced to death. This racial discrimination is most likely not limited to the petit jury venire. The venire from which the Grand Jury was selected that capitally indicted Appellant was drawn using the same procedures as the petit jury venire. O.R.C. §§ 2939.02, 2313.07, 2313.08, 2313.35. Thus, there is a reasonable likelihood that the grand jury venire suffers from the same constitutional flaw that the petit jury suffered.

As with the Second Assignment of Error, the failure to allow an evidentiary hearing limited Ms. Roberts ability to develop this issue. A remand for an evidentiary hearing with discovery is necessary to properly present this issue.

The grand jury acts as a vital check against the wrongful exercise of power by the State and its prosecutors. Powers v. Ohio, 499 U.S. 400, 411 (1991). It controls not only the initial decision to indict, but contradicts other significant decisions including the number of counts to charge and whether to charge a lesser offense. Vasquez v. Hillery, 474 U.S. 254, 263. (1986). The integrity of these decisions depends on the integrity of the process used to select the grand jurors. If that selection process is infected with racial discrimination, doubt is cast over the fairness of all subsequent decision. Rose, 433 U.S. at 555-556 (Selection of members of a grand

15

jury because they are of one race and not another destroys the appearance of justice and thereby casts doubt on the integrity of the judicial process).

The grand jury process must be free of racial discrimination. Rose v. Mitchell, 443 U.S. 545, 557 (1979); Vasquez v. Hillery, 474 U.S. at 261-262 .The Supreme Court in an unbroken line of cases has held that a criminal conviction cannot stand under the Equal Protection Clause if it is based on an indictment returned by a grand jury from which individuals were excluded on the basis of race. Alexander v. Louisiana, 405 U.S. 625, 628 (1972); Castaneda v. Partida, 430 U.S. 482, 492-495 (1977).

To achieve an impartial grand jury, the panels from which grand jurors are chosen must also be drawn from a fair cross section of the community. Taylor v. Louisiana, 419 U.S. 522, 527 (1975); Atwell v. Blackburn, 800 F.2d 502, 505 (5th Cir. 1986) (fair cross section requirement applies to grand jury panels); Machetti v. Linahan, 479 F.2d 236, 239 (11th Cir. 1982) (same).

Where racial exclusion has occurred, the Court must presume prejudice as to this constitutional violation because it is a structural error.  If racial discrimination occurs in the selection process of the grand jury, the conviction must be reversed notwithstanding overwhelming evidence of guilt. Vasquez, 474 U.S. at 263. In the alternative the prosecutor must be required to demonstrate by proof beyond a reasonable doubt that this racial discrimination did not infect the trial and mitigation phases.

16

**Fourth Assignment of Error**

**The appellant's was denied the effective assistance of counsel during the culpability stage of her capital case.**

Both the Federal and State Constitutions guarantee a minimum standard of proficiency of a criminally accused's counsel. The Sixth Amendment of the United States Constitution guarantees that "in all criminal prosecutions, the accused shall enjoy the right...to take the assistance of counsel for his defense." In Powell v. Alabama, 287 U.S. 45 (1932), the United States Supreme Court first recognized that a defendant has a right not only to the timely appointment of counsel but also to the quality of performance above a minimal level of effectiveness. Both State and Federal courts recognized that the failure of trial counsel to properly represent his or her client might affect the legitimacy of the fact finding process just as errors by the court or prosecution might require the reversal of a conviction.

Here, the acts and omissions of trial counsel deprived him of the Sixth Amendment right to effective assistance of counsel. Counsel did not provide an articulated defense for the Appellant at trial. Counsel failed to object to at least two jurors of African-American heritage during the jury selection. Although counsel did cross-examine and challenge evidence throughout the culpability stage of trial, counsel failed to give an opening statement, present a tape of the co-defendant in which he precluded her participation in the homicide, failed to present the co-defendant Nate Jackson's claim of self-defense, obstructed the appellant's right to testify and failed to provide a closing argument to the jury. This confusing strategy would only suggest to the jury that the Appellant was not professing her innocence. There is no articulable reasonable strategy for counsels' above actions or inactions at trial.

17

## Ineffective Standard

Counsel's performance here violated the standards set by the United States Supreme Court in <u>Strickland v. Washington</u> (1984), 466 U.S.668.  The two-step test commands that, first, the defendant must show that counsel's performance was deficient. <u>Id</u>.  That right is violated when counsel's performance falls below an objective standard of reasonableness and the client is prejudiced by counsel's breach of duty.  <u>Strickland</u>, 466 U.S. at 690, 696.

While indulging a strong presumption that counsel's conduct falls within the wide range of reasonable, professional assistance, a court hearing an ineffective assistance claim must determine whether counsel's conduct caused a breakdown in the adversary process so as to destroy the fundamental fairness of the proceeding.  Under the appropriate test for prejudice, the defendant must demonstrate a reasonable probability that, but for the counsel's errors, the result of the proceeding would have been different.  <u>Strickland</u>, 466 U.S. at 692.  A "reasonable probability" of a different outcome means that defense counsels' error, or deficient performance, undermines the confidence in the adversarial nature of the trial.  <u>Id</u> at 694.

## Failures to Make Batson Challenge

Counsel failed to object to the use of peremptory challenges on at least two black jurors by the prosecution.  These jurors were dismissed in violation of in <u>Batson v. Kentucky</u> (1986), 476 U.S. 79.  In <u>Batson</u>, the United States Supreme Court recognized that the Equal Protection Clause of the Fourteenth Amendment precludes purposeful discrimination by the state in the exercise of its peremptory challenges so as to exclude members of minority groups from service on petit juries. See <u>Id</u>. at 89.  Defense Exhibit D.

18

The United States Supreme Court, in Batson, explicitly "rejected the evidentiary formulation * * * which required a defendant * * * to demonstrate the systematic exclusion of a group of jurors * * *." State v. Pratt, 1987 Ohio App. LEXIS 8622 (Sept. 9, 1987), Hamilton App. No C-860436, unreported. The existence of a pattern of discriminatory strikes is not a prerequisite to a prima facie case or to a finding of actual discrimination by the trial court. State v. White (1999) 85 Ohio St. 3d 433, 436. The fact that other African-American jurors remained on the jury does not exonerate the state for the discriminatory exercise of a peremptory challenge, although in the Appellant's case, not other blacks were selected for the final jury.

In State v. Walker (1st Dist.-2000) 139 Ohio App.3d 52, the First Appellate District held that where a defendant identified facts and circumstances in a prospective juror's voir dire responses sufficient to establish the inference that the prosecutor used a peremptory challenge to exclude a juror because he was an African-American, the prosecutor's explanation that the defendant had not established a pattern of discriminatory exclusion based on race, and that three African-Americans remained on panel, was not a facially valid, race-neutral justification for a peremptory strike. The trial court was clearly erroneous in accepting the state's impermissible explanation, and the defendant's convictions for murder and felonious assault are reversed and remanded.

Here, the record does not reflect the race of the jurors dismissed by use of a peremptory challenge. The jury questionnaires do not reflect the race of the jurors. The Appellant remembers the use of the peremptory challenges on these jurors. Therefore, discovery and the assistance of an investigator are necessary to further develop this claim.

19

<u>Failure to Make Opening Statement</u>

Counsel for Appellant Roberts did not present an opening statement. Counsel had the Appellant read a statement to the jury. Counsel did discuss having the Appellant read the statement to the jury prior to the opening statement, but not indicate to her or make clear to her that counsel themselves would not be addressing the jury. The statement provided by the Appellant was ambiguous at best and did not state a defense. Exhibit A, D.

<u>Failure to Introduce Defense of Co-Defendant</u>

The defense failed to present the defense of the co-defendant, Nate Jackson, to the jury. At his trial, Mr. Jackson argued self-defense as the basis for his actions resulting in the death of Robert Fingerhut. The consideration of Mr. Jackson's self-defense claim was relevant to Appellant Roberts' claim that she did not conspire to have her husband killed.

Defense counsel failed to introduce a video tape of Nathaniel Jackson in which he exculpates Roberts and explains how the homicide occurred. Defense Exhibit B.

On the tape, Nathaniel Jackson was interviewed by police detectives. Jackson, who described himself as a street hustler, explained the on the day of the incident the decedent Fingerhut had purchased a small amount of marijuana from Jackson for about $100.00. Jackson had known Fingerhut for a couple of years. Jackson had been to Fingerhut's house previously. Defense Exhibit B.

Fingerhut took Jackson to his, Fingerhut's, home to watch a sporting event. Fingerhut pulled the car into the garage. The two exited the car and went into the house. They sat at the kitchen table. Fingerhut was looking over his mail. Jackson was hoping Fingerhut could give him some work at the restaurant. Fingerhut then said words to the effect of "you black guys are

20

the same, you don't want to do anything for yourself." Fingerhut continued to lecture Jackson. Defense Exhibit B.

Jackson did not want to be subjected to the lecture and be "disrespected." He asked to be taken home. Fingerhut told him to walk. Jackson refused to walk. When Jackson looked up, the Fingerhut was pointed a gun at him. Jackson felt that Fingerhut had "flipped." Jackson described the change in Fingerhut's demeanor as being like, "Dr. Jeckyl and Mr. Hyde." Defense Exhibit B.

Jackson then said that, "He squeezed on me, man," referring to Fingerut pulling the trigger. Jackson had grabbed the gun which had been pointed at him. The shot injured Jackson's finger. Jackson thought that he "was a done deal," meaning himself. He then shot Fingerhut. After the first shot, Fingerhut kept coming at him. Jackson shot again and killed him. Defense Exhibit B.

Jackson said that he did not intend to kill Fingerhut. He has not thought about shooting Fingerhut ahead of time. Defense Exhibit B.

The videotape of Jackson's rendition of the events is evidence of the Appellant's actual innocence. An attorney performing withing the professional norm would have presented it for the jury's consideration.

Waiver of Closing Argument

Defense counsel waived closing argument in the culpability phase of the trial. This was not discussed with the Appellant prior to the closing. No strategic reason for not providing an argument is apparent from the record.

21

Refusal to Allow Appellant's Testimony

Defense counsel would not allow Appellant Roberts to testify. According to Robert's affidavit, the Appellant begged counsel to allow her to testify. The attorneys wavered on the matter, but instructed her not do. There was no valid waiver by the Appellant of her right to testify. Defense Exhibit D.

A defendant's right to testify was fundamental. See Rock v. Arkansas, 483 U.S. 44, 52-53, 97 L. Ed. 2d 37, 107 S. Ct. 2704 & n.10, 483 U.S. 44, 97 L. Ed. 2d 37, 107 S. Ct. 2704 (1987) ("An accused's right to present his own version of events in his own words" is "even more fundamental to a personal defense than the right of self-representation"); see also Rogers-Bey v. Lane, 896 F.2d 279, 283 (7th Cir. 1990). And it noted that the right is personal to the accused, and not capable of being waived by counsel on the defendant's behalf. See Jones v. Barnes, 463 U.S. 745, 751, 77 L. Ed. 2d 987, 103 S. Ct. 3308 (1983).

Roberts' personal waiver of this fundamental right, which protects the fairness of the criminal proceeding, must be made in a knowing and intelligent manner to be valid. See Schneckloth v. Bustamonte, 412 U.S. 218, 241, 36 L. Ed. 2d 854, 93 S. Ct. 2041 (1973) ("A strict standard of waiver has been applied to those rights guaranteed to a criminal defendant to insure that he will be accorded the greatest possible opportunity to utilize every facet of the constitutional model of a fair criminal trial."); see also Johnson v. Zerbst, 304 U.S. 458, 464, 82 L. Ed. 1461, 58 S. Ct. 1019 (1938) ("Courts indulge in every reasonable presumption against waiver of fundamental rights, and . . . we do not presume acquiescence in the loss of fundamental rights.") (quotation omitted).

The failure of defense counsel to adequately represent her at the trial stage resulted in a

22

sentence of death that does not comply with the minimum constitutional standards of reliability

required for the imposition of a death sentence under the Eighth and Fourteenth Amendments of

the United States Constitution and Article I, Sec. 9 of the Ohio Constitution .

**Fifth Assignment of Error**

**The death sentence against Appellant Roberts is void and/or voidable because the death penalty as administered by lethal injection violates her constitutional right to protection from cruel and unusual punishment as guaranteed by the Eighth Amendment and federal due process of law.**

This issue, as with the others, was not fully developed because of a lack of discovery and

the failure to grant an evidentiary hearing.  Nonetheless, if a hearing had been allowed, it is

believed that the following would have been elicited.

The chemicals that will be used to bring about Ms. Robert's execution will result in

undue pain and suffering.  Typically, the chemicals include Sodium Thiopental or Sodium

Pentothal (an ultra short-acting barbiturate); Pancuronium Bromide or Pavulon (a curare-derived

agent which paralyzes all skeletal or voluntary muscles, but which has no effect whatsoever on

awareness, cognition or sensation); and potassium chloride (an extraordinarily painful chemical

which activates the nerve fibers living the inmate's veins and which can interfere with the

rhythmic contractions of the heart and cause cardiac arrest).

This particular combination of chemicals will cause Appellant Roberts to consciously

suffer an excruciatingly painful and protracted death.

23

Sodium thiopental, or sodium pentothal, is an ultra short-acting barbiturate which is ordinarily used to render a surgical patient unconscious for mere minutes, only in the induction phase of anesthesia, specifically so that the patient may re-awaken and breathe on their own power if any complications arise from the insertion of a breathing tube prior to the surgery. Because of its brief duration, sodium thiopental may not provide a sedative effect of the sodium thiopental is neutralized by the second chemical typically use, pancuronium bromide. The second chemical involved in the lethal injection process, pancuronium bromide, or Pavulon, is a derivative of curare that acts as a neuromuscular blocking agent.

While Pavulon paralyzes skeletal muscles, including the diaphragm, it has no effect on consciousness or the perception of pain or suffering. To the extent that the first chemical, sodium thiopental, is neutralized by the second, Pavulon, the paralytic chemical (Pavulon) will serve only to mask Appellant's excruciating pain.

The risk of inflicting severe and unnecessary pain and suffering upon Appellant in the lethal injection process is particularly grave because, upon information and belief, the procedures and protocols designed by the State of Ohio do not include safeguards regarding the manner in which the execution is to be carried out, do not establish the minimum qualifications and expertise required of the personnel performing the critical tasks in the lethal injection procedure, and do not establish appropriate criteria and standards that these personnel must rely upon in exercising their discretion during the lethal injection procedures.

Executioners in administering to Ms. Roberts chemicals that will cause unnecessary pain in the execution of a sentence of death, thereby depriving Roberts of her rights under the Eighth and Fourteenth Amendments to be free from cruel and unusual punishment.

24



**Sixth Assignment of Error**

**Ohio's post-conviction procedures do not provide an adequate corrective process, in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States.**

Ms. Roberts understands that the Eleventh District Court of Appeals has previously previously found that postconviction is an improper venue for challenging the constitutionality of the procedure.  However, the Appellant alleges that even though the state court's have decided the issue, the federal aspect has not been definitively decided in the federal Sixth Circuit Court of Appeals.

Ohio provides for collateral proceedings to attack void or voidable judgments in criminal cases.  Ohio's post-conviction procedure is set forth in Ohio Rev. Code Ann. § 2953.21, et seq. Subsection (A) provides:

> (A) Any person convicted of a criminal offense or adjudged delinquent claiming that there was such a denial or infringement of his rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States, may file a petition at any time in the court which imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief.  The petitioner may file such supporting affidavit and other documentary evidence as will support his claim for relief.

Under Ohio law, the state appellate courts on direct appeal will consider only errors apparent from the record of the proceedings, if they consider the error at all.  As such, all state or federal constitutional violations which depend upon off-the-record evidence must be raised in state post-conviction proceedings.  Examples would include claims of ineffective assistance of

counsel which depend on development of the facts and evidence not in the record, as well as claims of newly discovered evidence.

The Due Process Clause of the Fourteenth Amendment requires that the states must provide their prisoners with some "clearly defined method by which they may raise claims of denial of federal rights." See, e.g., Young v. Ragen, 337 U.S. 235, 239 (1949).

The Eighth Amendment also establishes a need for heightened reliability of death sentences, as well as the need to eliminate the arbitrary imposition of the death penalty.

Although the Ohio post-conviction statutes as enacted by the Ohio General Assembly were designed to meet federal constitutional requirements, the entire state post-conviction process has been effectively rendered meaningless by subsequent decisions of the Ohio state courts. For example, in State v. Perry, 10 Ohio St. 2d 175, 226 N.E. 104 (1967), the Ohio Supreme Court held that it would use the doctrine of res judicata to bar post-conviction relief as to any issue that was raised or could have been raised by the defendant at the trial or on appeal. Id., at Syllabus 8 and 9. This doctrine has been applied with fervor by the state courts to preclude Ohio prisoners from receiving adequate post-conviction review of their convictions.

In addition to the doctrine of res judicata, the courts have adopted and applied numerous other procedural bars to preclude Ohio prisoners from obtaining adequate review of their state and federal constitutional claims or from even obtaining an evidentiary hearing on their claims. The state appellate courts are not conducting any meaningful review of the trial courts' dismissals of state post-conviction actions on appeal. The Ohio Supreme Court, since the reintroduction of the death penalty in Ohio in 1981, has refused to exercise its discretion to review even a single case where a capital defendant has requested discretionary review of the denial of the

26

postconviction petition.   Only one capital case, <u>State v. Sterling Barnes</u> CR. 83-5911 (Lucas

County 5/17/91), has been reversed by a state trial court.

The policies adopted and procedures employed by the state trial and appellate courts in

summarily disposing of state post-conviction claims have deprived Ms. Roberts of her rights to

due process, equal protection, adequate trial and appellate review, and to be free from cruel and

unusual punishment in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments to the

United States Constitution.

<u>**CONCLUSION**</u>

Pursuant to the above Assignments of Error, the petitioner-appellant, Donna Roberts,

respectfully requests that this Honorable Court reverse her convictions and remand this case with

a new trial order.  In the alternative, the appellant respectfully requests that this Court remand

this matter to the to the trial court with an order to grant discovery and to hold an evidentiary

hearing on the above issues.

Respectfully submitted,

DAVID L. DOUGHTEN
Counsel for Appellant

27

**SERVICE**

A copy of the foregoing appellant's Brief was served upon Dennis Watkins, Trumbull

County Prosecutor and/or LuWayne Annos, Esq. Assistant Trumbull County Prosecutor,

Administration Building, 160 High Street, Warren, Ohio 44481, by Regular U. S. mail on this

25th day of July, 2005.

DAVID L. DOUGHTEN

Counsel for Appellant

28

IN THE ELEVENTH DISTRICT COURT OF APPEALS
TRUMBULL COUNTY, OHIO

F I L E D
COURT OF APPEALS

SEP 1 9 2005

TRUMBULL COUNTY, OH
KAREN INFANTE ALLEN, CLERK

STATE OF OHIO, )
)
    Plaintiff-Appellee )   CASE No. 2005-T-0034
-vs-- )
) Appeal from the Trumbull
) County Court of Common Pleas
DONNA ROBERTS, ) Case No. 01-CR-793
)
    Defendant-Appellant )   MOTION FOR LEAVE TO FILE
) BRIEF IN EXCESS OF PAGE
) LIMIT

      Now comes the State of Ohio, by and through the undersigned counsel, and moves this

Court for leave to file its answer brief in excess of the 35-page limit as promulgated in Loc. R.

16(D). For cause, Appellant's initial brief was 26-pages in length and contained six Assignments

of Error. The record in the case is quite lengthy; the transcript is comprised of 28 separate

volumes. The case at issue is a death penalty case and a thorough response is of the utmost

importance. As such, to fully and fairly respond to Appellant's six Assignments of Error,

undersigned counsel exceeded the Court's page limit by a mere three pages.

      For these reasons, the State moves this Court to grant permission to file a brief in excess

of the 35-page limit.



COPY

Respectfully submitted by:

LuWAYNE ANNOS (#0055651)
Assistant Prosecuting Attorney
Trumbull County Prosecutor's Office
160 High St. 4th Floor
Warren, Ohio        44481
Telephone: (330) 675-2426

COUNSEL FOR PLAINTIFF-APPELLEE
THE STATE OF OHIO

PROOF OF SERVICE

I do hereby certify that a copy of the foregoing Motion was sent by ordinary U.S. Mail to Atty. David L. Doughten (Atty. Reg. #0002847) 4403 St. Clair Ave. Cleveland, Ohio  44103, Counsel for Defendant-Appellant Donna Roberts, on this 19th Day of September, 2005.

LuWAYNE ANNOS (#0055651)
Assistant Prosecuting Attorney

IN THE ELEVENTH DISTRICT COURT OF APPEALS
TRUMBULL COUNTY, OHIO

STATE OF OHIO,                              )
                                           )
        Plaintiff-Appellee                 )        CASE No. 2005-T-0034
-vs-                                       )
                                           )        Appeal from the Trumbull
                                           )        County Court of Common Pleas
DONNA ROBERTS,                             )        Case No. 01-CR-793
                                           )
        Defendant-Appellant                )

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

BRIEF OF PLAINTIFF-APPELLEE

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

DENNIS WATKINS
Atty. Reg. No. 0009949
LuWAYNE ANNOS (Counsel of Record)
Atty Reg. No. 0055651
Trumbull County Prosecutor's Office
160 High Street, N.W.
4th Floor, Administration Building
Warren, Ohio  44481
Telephone No.(330)675-2426
Fax No. (330) 675-2431
psannos@co.trumbull.oh.us

*FILED*
*COURT OF APPEALS*
*SEP 1 9 2005*
*TRUMBULL COUNTY, OH*
*KAREN INFANTE ALLEN, CLERK*

COUNSEL FOR PLAINTIFF-APPELLEE
STATE OF OHIO

DAVID . L. DOUGHTEN, ESQ
Atty. Reg. No. 0002847
4403 St. Clair Avenue
Cleveland, Ohio   44103
Telephone No. (216) 361-1112

COUNSEL FOR DEFENDANT-
APPELLANT DONNA ROBERTS



## TABLE OF CONTENTS & ASSIGNMENTS OF ERROR

PAGE(S)

TABLE OF AUTHORITIES...............................................................................vi

STATEMENT OF THE CASE............................................................................1
    Procedural Posture..................................................................................1
    Statement of Facts..................................................................................1

ARGUMENT................................................................................................12

**APPELLANT'S FIRST ASSIGNMENT OF ERROR:**................................................12
    The trial court erred by failing to grant Appellant Roberts an evidentiary hearing
    which would allow her to establish the prejudice of the errors which occurred
    during her capital trial.

**APPELLEE'S ISSUE PRESENTED FOR REVIEW AND ARGUMENT:**...........................12
    A trial court commits no error in dismissing a postconviction petition without
    hearing when it finds no substantive grounds for relief.

**Authorities**
R.C. 2953.21(A)..........................................................................................12
R.C.2953.21(C)...........................................................................................13
*State v. Jackson* (1980), 64 Ohio St.2d 107....................................................13, 17
*State v. Kapper* (1983), 5 Ohio St. 3d 36.......................................................13, 17
*State v. Combs* (1994), 100 App.3d 90...........................................................13
*State v. Calhoun* (1999), 86 Ohio St. 3d 279...................................................13
*State v. Perry* (1967), 10 Ohio St. 175..........................................................13
*State v. Cole* (1982), 2 Ohio St. 3d 112.........................................................14
*State v. Lawson* (1995), 103 Ohio App. 3d 307................................................14
*State v. Powell* (1993), 90 Ohio App. 3d 260...................................................14
Civ.R. 56..................................................................................................14
*State v. DePew* (1994), 97 Ohio App.3d 111....................................................14
*Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64..........................14
*State v. Lorraine* (Feb. 23, 1996), 11th Dist. No.  95-T-5196..............................14, 15
*State v. Byrd* (2001), 145 Ohio App. 3d 318....................................................15
*State v. Dean* (2002), 149 Ohio App. 3d 93.....................................................15
Crim. R. 35...............................................................................................17
*State v. White*, 9th Dist. No. 19040, 1999 WL 394938.......................................17

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 3059

TABLE OF CONTENTS AND ASSIGNMENTS OF ERROR CONT'D

PAGE(S)

**APPELLANT'S SECOND ASSIGNMENT OF ERROR:**......................................................18
> The appellant was denied her right to a fair and impartial jury and equal
> protection because there was an under-representation of African Americans in the
> venire from which her jury was drawn.

**APPELLEE'S ISSUE PRESENTED FOR REVIEW AND ARGUMENT:**..........................18
> Appellant's petition contained no evidentiary documentation to demonstrate an
> under-representation of minorities in her venire of potential jurors, and offered
> nothing more than unfounded speculation that African-Americans were
> "wrongfully excluded."

Authorities
*State v. Kapper* (1983), 5 Ohio St. 3d 36.................................................................19
*State v. Spirko* (1991), 59 Ohio St. 3d 1.................................................................19
*State v. Fulton* (1991), 57 Ohio St. 3d 120...........................................................19
*Duren v. Missouri* (1979), 439 U.S. 357.................................................................19
*State v. McNeill* (1998), 83 Ohio St. 3d 438.........................................................19
*State v. Perry* (1967), 10 Ohio St. 175.................................................................20
*State v. Cole* (1982), 2 Ohio St. 3d 112.................................................................20
*State v. Wilson* (June 24, 1998), 9th Dist. No. 97 CA006683...............................20
*State v. Combs* (1994), 100 App.3d 90.................................................................21
*State v. Hill* (2001), 92 Ohio St. 3d 191...............................................................22

**APPELLANT'S THIRD ASSIGNMENT OF ERROR:**........................................................22
> The appellant's convictions and sentence are void or voidable because the grand
> jury that indicted her was drawn from a venire in which African Americans were
> disproportionately excluded in violation of the Fifth, Sixth, Eighth, and
> Fourteenth Amendments to the United States Constitution.

**APPELLEE'S ISSUE PRESENTED FOR REVIEW AND ARGUMENT:**..........................22
> A postconviction petitioner is not entitled to a hearing on alleged exclusion of
> African Americans on her grand jury when Appellant cannot even prove the racial
> composition of the panel, let alone allegation of exclusion, under-representation or
> discrimination.

Authorities
*State v. Williams,* 11th Dist. No. 97-T-0153.........................................................23
*State v. Kapper* (1983), 5 Ohio St. 3d 36.............................................................23
*State v. Williams* (1997), 79 Ohio St. 3d 1...........................................................23
*State v. Issa* (2001), 93 Ohio St. 3d 49.................................................................23

-iii-

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 3060

TABLE OF CONTENTS AND ASSIGNMENTS OF ERROR CONT'D

PAGE(S)

**APPELLANT'S FOURTH ASSIGNMENT OF ERROR:**......................................24
  The appellant's was denied effective assistant of counsel during the culpability
  state of her capital case.

**APPELLEE'S ISSUE PRESENTED FOR REVIEW AND ARGUMENT:**.......................24
  A postconviction petitioner is not entitled to relief on a claim of ineffective
  assistance of counsel where deficient performance and prejudice are not
  demonstrated.

**Authorities**
*State. v. Pankey* (1981), 68 Ohio St. 2d 58.......................................24
*State v. Pierce* (1998), 128 Ohio App. 3d 578.....................................24
*Strickland v. Washington* (1984), 466 U.S. 668..............................24, 33
*State v. Bradley* (1989), 42 Ohio St. 3d 136..................................25, 28
*Vaughn v. Maxwell* (1965), 2 Ohio St. 2d 299......................................25
*State v. Smith* (1987), 36 Ohio App. 3d 152.......................................25
*United States v. Weisman*(C.A.8, 1988), 858 F.2d 389..............................26
*Batson v. Kentucky* (1986), 476 U.S. 79.......................................26, 27
*State v. Phillips* (1995), 74 Ohio St. 3d 72......................................28
Evid. R. 804(B)(3).................................................................29
*State v. Akers* (April 4, 1997), No. 95-P-0073....................................30
*State v. Bellew* (1996) 76 Ohio St. 3d 244........................................31
*State v. Burke* (1995), 73 Ohio St. 3d 399........................................31
*State v. Adkins* (2001), 144 Ohio App.3d 633......................................32
*State v. McKay*, 11th Dist. No. 2001-A-0008, 2002-Ohio-3960........................32
Crim. R. 35.......................................................................33

**APPELLANT'S FIFTH ASSIGNMENT OF ERROR:**......................................33
  The death sentence against Appellant Roberts is void and/or voidable because the
  death penalty as administered by lethal injection violates her constitutional right to
  protection from cruel and unusual punishment as guaranteed by the Eighth
  Amendment and federal due process of law.

**APPELLEE'S ISSUE PRESENTED FOR REVIEW AND ARGUMENT:**.......................33
  The Ohio Supreme Court has upheld the method of execution which the Appellant
  specifically requested, and which she now wants declared unconstitutional.

**Authorities**
*State v. Perry* (1967), 10 Ohio St. 175...........................................34
*State v. Cole* (1982), 2 Ohio St. 3d 112..........................................34

-iv-

## TABLE OF CONTENTS AND ASSIGNMENTS OF ERROR CONT'D

PAGE(S)

*State v. Kapper* (1983), 5 Ohio St. 3d 36.................................................................34
*State v. Carter* (2000), 89 Ohio St. 3d 593...........................................................34
*In re Williams* (C.A. 2004), 395 F. 3d 811.......................................................34, 35
*Callins v. Collins* (1994), 114 S.Ct. 1127..............................................................35

**APPELLANT'S SIXTH ASSIGNMENT OF ERROR:**........................................................35
    Ohio's post-conviction procedures do not provide an adequate corrective process,
    in the violation of the Fifth, Sixth Eighth, and Fourteenth Amendments to the
    United States [Constitution].

**APPELLEE'S ISSUE PRESENTED FOR REVIEW AND ARGUMENT:**...........................36
    A procedure which promotes finality of judgments, judicial economy and a bar to
    a second appeal does not violate the right to due process and equal protection.

**Authorities**
R.C. 2953.21...........................................................................................................36
*State v. Kapper* (1983), 5 Ohio St. 3d 36.............................................................36
*State v. Zuern* (1987), 32 Ohio St.3d 56............................................................36
*State v. Jones*, 11th Dist. No. 2000-A-0083, 2002-Ohio-2074....................................37
*Jamison v. Collins* (S.D. Ohio 1998), 100 F. Supp. 2d 521...........................................37
*State v. Wiles* (1998), 126 Ohio App. 3d 71........................................................37

CONCLUSION ........................................................................................................38

PROOF OF SERVICE................................................................................................38

APPENDIX                           APPX. PAGE
    *State v. Lorraine* (Feb. 23, 1996), 11th Dist. No. 95-T-5196.............................A-1
    *State v. White*, 9th Dist. No. 19040, 1999 WL 394938....................................A-5
    *State v. Wilson* (June 24, 1998), 9th Dist. No. 97 CA006683.........................A-10
    *State v. Williams* (Oct. 19, 1998), 97-T-0153................................................A-16
    *State v. Akers* (April 4, 1997), No. 95-P-0073...............................................A-27
    *State v. McKay*, 11th Dist. No. 2001-A-0008, 2002-Ohio-3960.......................A-34
    *State v. Jones*, 11th Dist. No. 2000-A-0083, 2002-Ohio-2074........................A-39

# TABLE OF AUTHORITIES

**CASES**                                                                                              **PAGE(S)**

*Batson v. Kentucky* (1986), 476 U.S. 79.................................................................26, 27

*Callins v. Collins* (1994), 114 S.Ct. 1127.................................................................35

*Duren v. Missouri* (1979), 439 U.S. 357.................................................................19

*Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64.................................14

*In re Williams* (C.A. 2004), 395 F. 3d 811.................................................................34, 35

*Jamison v. Collins* (S.D. Ohio 1998), 100 F. Supp. 2d 521.................................37

*State v. Adkins* (2001), 144 Ohio App.3d 633.................................................................32

*State v. Akers* (April 4, 1997), No. 95-P-0073.................................................................30

*State v. Bellew* (1996) 76 Ohio St. 3d 244.................................................................31

*State v. Bradley* (1989), 42 Ohio St. 3d 136.................................................................25, 28

*State v. Burke* (1995), 73 Ohio St. 3d 399.................................................................31

*State v. Byrd* (2001), 145 Ohio App. 3d 318.................................................................15

*State v. Calhoun* (1999), 86 Ohio St. 3d 279.................................................................13

*State v. Carter* (2000), 89 Ohio St. 3d 593.................................................................34

*State v. Cole* (1982), 2 Ohio St. 3d 112.................................................................14, 20, 34

*State v. Combs* (1994), 100 App.3d 90.................................................................13 , 21

*State v. Dean* (2002), 149 Ohio App. 3d 93.................................................................15

*State v. DePew* (1994), 97 Ohio App.3d 111.................................................................14

*State v. Fulton* (1991), 57 Ohio St. 3d 120.................................................................19

*State v. Hill* (2001), 92 Ohio St. 3d 191.................................................................22

-vi-

TABLE OF AUTHORITIES CONT'D

*State v. Issa* (2001), 93 Ohio St. 3d 49.........................................................................................23

*State v. Jackson* (1980), 64 Ohio St.2d 107.............................................................................13, 17

*State v. Jones*, 11th Dist. No. 2000-A-0083, 2002-Ohio-2074.........................................................37

*State v. Kapper* (1983), 5 Ohio St. 3d 36................................................13, 17, 19, 23, 34,36

*State v. Lawson* (1995), 103 Ohio App. 3d 307.........................................................................14

*State v. Lorraine* (Feb. 23, 1996), 11th Dist. No. 95-T-5196..................................................14, 15

*State v. McKay*, 11th Dist. No. 2001-A-0008, 2002-Ohio-3960.......................................................32

*State v. McNeill* (1998), 83 Ohio St. 3d 438.................................................................................19

*State. v. Pankey* (1981), 68 Ohio St. 2d 58.................................................................................24

*State v. Pierce* (1998), 128 Ohio App. 3d 578............................................................................24

*State v. Perry* (1967), 10 Ohio St. 175..............................................................................13, 20, 34

*State v. Phillips* (1995), 74 Ohio St. 3d 72.................................................................................28

*State v. Powell* (1993), 90 Ohio App. 3d 260............................................................................14

*State v. Smith* (1987), 36 Ohio App. 3d 152.............................................................................25

*State v. Spirko* (1991), 59 Ohio St. 3d 1.................................................................................19

*State v. White*, 9th Dist. No. 19040, 1999 WL 394938............................................................17

*State v. Williams*, 11th Dist. No. 97-T-0153.............................................................................23

*State v. Williams* (1997), 79 Ohio St. 3d 1............................................................................23

*State v. Wiles* (1998), 126 Ohio App. 3d 71............................................................................37

*State v. Wilson* (June 24, 1998), 9th Dist. No. 97 CA006683.......................................................20

*State v. Zuern* (1987), 32 Ohio St.3d 56..................................................................................36

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 3064

## TABLE OF AUTHORITIES CONT'D

*Strickland v. Washington* (1984), 466 U.S. 668.................................................24, 33

*United States v. Weisman*(C.A.8, 1988), 858 F.2d 389................................................26

*Vaughn v. Maxwell* (1965), 2 Ohio St. 2d 299...............................................................25

## STATUTES & RULES

Civ.R. 56...............................................................................................................14

Crim. R. 35......................................................................................................... 17, 35

Evid. R. 804(B)(3)..................................................................................................29

R.C. 2953.21.........................................................................................................36

R.C. 2953.21(A)......................................................................................................12

R.C.2953.21(C)......................................................................................................13

-viii-

IN THE ELEVENTH DISTRICT COURT OF APPEALS
TRUMBULL COUNTY, OHIO

STATE OF OHIO, )
)
    Plaintiff-Appellee )    CASE No. 2005-T-0034
-vs- )
)    Appeal from the Trumbull
)    County Court of Common Pleas
DONNA ROBERTS, )    Case No. 01-CR-793
)
    Defendant-Appellant )

**************************************************************************
BRIEF OF PLAINTIFF-APPELLEE
**************************************************************************
STATEMENT OF THE CASE

**Procedural Posture:**

    The Plaintiff-Appellee, the State of Ohio ("State"), takes no exception to the Procedural

Posture and Postconviction Filings as they appear at pages 2 and 3 Defendant Appellant Donna

Roberts' ("Appellant") brief. The State files this brief in response to Appellant's brief filed with

this Court Aug. 29, 2005.

**Statement of Facts:**

    Shortly after midnight on December 12, 2001, Appellant phoned a Trumbull County 911

operator. She was clearly hysterical and the 911 dispatcher had considerable difficulty

understanding her. From the fragmented portions of the conversation which were intelligible, the

dispatcher thought there may have been a suicide at Appellant's home at 254 Fonderlac Drive,

Howland Township, Trumbull County, Ohio, a suburb east of Warren, Ohio. (T.p. Vol. XXIV, p.

5184). When the police arrived, they discovered Appellant's former husband, Robert Fingerhut,

lying dead on the kitchen floor in a pool of his own blood. (T.p. Vol. XXIV, p. 5157). He had

-1-

suffered a bullet wound to the top of skull, chest and back.  A fully loaded .38 Taurus special was recovered  nearby on the garage steps. (T.p. Vol.  XXVII, p. 5614, 5615).   As police converged upon the scene, the suicide theory began to quickly  dissipate. Though there were no signs of forced entry, Mr. Fingerhut's car keys and silver Chrysler 300M were missing. (T.p. Vol. XXIV, p. 5159, XXVII, p. 5863).

Appellant spoke briefly with officers concerning her whereabouts that day, as well as those of her late ex husband.  Though divorced, the couple shared the home on Fonderlac Drive. Mr. Fingerhut operated two Greyhound Bus terminals, one in Youngstown, Ohio, and one in Warren, Ohio.  Both businesses were in Appellant's name.  Appellant told officers that while Mr. Fingerhut prepared to go to work at the Youngstown terminal around 8 a.m., Dec. 11, 2001, she lounged around in bed until 10 a.m. According to Appellant's initial statement, she  worked that day at the Warren terminal until 5:30 p.m., dined alone at the Red Lobster restaurant in Niles, Ohio, arrived home around 6 p.m.  Mr. Fingerhut was not home.  He phoned her and suggested she do some shopping because he was going to be late.  Appellant stated she stopped by a Giant Eagle supermarket near their home, and visited  local Wal-mart and Super K-Mart stores.  Indeed, Appellant produced a Wal-Mart bag containing make-up and cigarette lighters which she had purchased at 9:37 p.m. Dec. 11, 2001. ( T.p. Vol. XXVI, p. 5635-5649; T.p. Vol. XXVII, p. 5856).

As officers first arrived at Appellant's home, she initially remained at the scene.  At least three officers testified that Appellant was prone to intermittent fits of uncontrollable weeping and wailing, and then total silence.  (T.p. Vol. XXIV, p. 5162; XXVI, p. 5639-5640; T.p.Vol. XXVII, p. 5860).  According to Det. Sgt. Paul Monroe, the lead investigator, and Det. Sgt. Frank Dillon,

-2-

Appellant would stifle the histrionics every time the officers started conferring with each other. (T.p. Vol. XXVI, p. 5639-5640 , XXVII, p. 5833). Monroe advised Appellant that it would take hours to process the crime scene, and suggested that she stay with family or a neighbor. (T.p. Vol. XXVI, p. 5642). Officers advised her that they needed to search the entire property. In no uncertain terms, Appellant told Monroe "to do whatever had to be done, search the entire house if we had to, just find whoever did this." (T.p. Vol. XXVII, p. 5885; see, also, T.p. Vol. XXIII, p. 5161, T.p. Vol. XXVI, p. 5642; Supp. T.p. 235-241). Appellant eventually left with her brother and sister-in law at approximately 3 a.m. and spent the remainder of the night at their Austintown Township home in Mahoning County. (T.p. Vol. XXVI, p. 5642).

Monroe began to search the Fingerhut house and garage. He located two life insurance policies in the headboard of the bed in the master bedroom. (T.p. Vol. XXVII, p. 5898-5899, State's Ex. 322, 323). Robert Fingerhut was named as the insured and Appellant was the sole beneficiary of both policies. The total value of the two policies was $550,000 (T.p. Vol. XXIV, p. 5275, 5279). Monroe also located a brown paper shopping bag in the trunk of Appellant's car labeled "Nate Jackson." The bag contained some clothing, and a treasure trove of 145 handwritten letters from Appellant to Jackson. (State's Ex. 270, T.p. Vol. XXVII, p. 5888). Back in the house, Monroe discovered another set of 143 letters written by Jackson to Appellant and mailed to a Warren, Ohio, post office box from the Lorain Correctional Institution. (T.p. Vol. XXVII, p. 5889). During the course of the search, a phone in the home rang. When Monroe answered the phone, the caller hung up. Using the "star 69" tracking system, the number "330-506-0373" appeared as the source of the call. After daybreak, Monroe visited Appellant at her brother's home where she signed a consent to search the house, Mr. Fingerhut's silver Chrysler

-3-

300M, and her own red Chrysler 300M.  (Supp. T.p. 249-250).

      Appellant agreed to give a statement later that afternoon to the Howland Township Police Department. Appellant discussed some of her employment and personal history with Monroe. Appellant and Mr. Fingerhut had been together since 1983, and were married for three years before divorcing.  When they met, she was working for Dr. Mort Freeman, a  plastic surgeon in Miami, Florida.  Her duties included general secretarial assignments, but she would also assist the doctor in basic medical procedures such a skin grafts.  She claimed to have accompanied the doctor to Israel and would assist him in dressing battle wounds.  According to Appellant, she and Mr. Fingerhut divorced, and his assets were placed in Appellant's name so that he would be uncollectable in the event of a lawsuit.  She told Monroe that she and Mr. Fingerhut "got along great."  He was never physically abusive, and their biggest running dispute concerned whose turn it was to fill the dogs' water dish.  (T.p. Vol. XXVII, p. 5892-5895).

      This idyllic scenario  sharply contrasted to the living hell described by Appellant in her 145 letters of  prison correspondence to Nate Jackson.[1]   Many of the letters recovered by Det. Monroe were sexually graphic.  Several detailed Appellant's contempt for Mr. Fingerhut, and spoke of both parties' desire to kill Fingerhut and to enjoy the benefits of his lucrative insurance proceeds.  For example, in a letter dated Oct. 20, 2001, at 11:20 p.m., Appellant wrote, "And I get sick when he is about to come home at night.  I wonder what's going to happen in our house....If there was any way I could leave and just live half as well as I do - I would leave that house right now." (State Ex. 271-D-82).

-------------------------

[1]Both parties stipulated that Appellant wrote the set of letters found her trunk, and that Jackson wrote the letters recovered from Appellant's bedroom.  (T.p. Vol. XXVI, p. 5484).

-4-

In a six-page letter dated Nov. 26, 2001,  addressed to "My dearest sweetheart" Appellant

told Jackson:

> "***And yes sneaking to see you for a couple hours doesn't do it.  It
> leaves us both with no real life together and when you go your way, and you have
> to fend for yourself and eat alone and sleep alone and be out with the wolves.
> And me - I (live) exist in hell on earth.  Like last night - I got so sick of just
> looking at him.  And hearing the same shit over and over.  And smelling his
> breath.  And every other little thing - it's all bad.  And seeing his skin.  And
> watching him walk - or breathe.  I can't hold in my disgust and contempt for him
> well at all and he sees it every time he looks at me now.  Which makes me make
> him feel worse about me in return and treat me like dirt."

(State's Ex. 271-D-8).  In that same letter, Appellant discussed looking for various items of

apparel for which she had been shopping:

> "Oh - I have been looking all over for a ski mask.  I only see those knitted
> caps.  Any suggestions on who might have them?  And I'm still looking for gloves
> because I don't think the thick ones I'm seeing are good to work with as would be
> thinner leather ones."  (Id).

Appellant  complained in a letter dated Nov. 10, 2001,  that she had insufficient funds  for

marijuana and was accustomed carrying around $200 cash. "I have got to figure a way to get

some money before you get home!  That's for sure.  He has me on a real short rope here. ...I

HAVE TO ASK PERMISSION TO USE A CREDIT CARD OR WRITE A FUCKING

CHECK!" (State's Ex. 271-D-35).  Mr.  Fingerhut's curtailment of Appellant's carefree spending

practices were apparently rooted in business downturns, because in a letter date Nov. 20, 2001,

Appellant told Jackson  that business was off  $19,000 at the Youngstown terminal.  (State's Ex

271-D-20).  In a letter dated Oct. 20, 2001, "And I haven't been allowed to use any of my 52

charge cards -emergency only.  I am not used to living like this.  I am used to having  plenty of

cash for whatever I want and buying everything I want.  Maybe those days will return again

-5-

soon....Do whatever you want to him ASAP. Amen." (State's Ex. 271-D-81). Appellant's

discontent with her spending restrictions was reinforced at trial by Greyhound employee Frank

Reynolds. He claimed to have known Mr. Fingerhut and Appellant for nine years, and the only

time he ever saw them argue is when she asked for money on Dec. 10, 2001, and he refused to

give it to her. (T.p. Vol. XXIV, p. 5131-5138).

In another letter to Jackson , Appellant  stated she had obtained a map to the Lorain

Correctional Institution, a ski mask, boxers, and fleece-lined black gloves. (State's Ex.271-D-2).

In turn, Jackson  wrote Appellant on Oct. 2, 2001, "...let me do what I was gonna do to him...Its

getting done when I come home." (State's Ex. 273-N-58).  Six days later on Oct. 8, 2001,

Jackson  wrote, "Donna, I got it already planned out on how we're gonna take care of the Robert

situation? An baby, it's the best plan ever!....I promise on my kids." (State's Ex.273-N-53).  On

Oct. 14, 2001, Jackson  referenced putting "the gun to that dummy's head." (State Ex 273-N-49).

In letters dated Oct. 20 and 23, 2001, Jackson repeated that "Robert has to go." (State Ex 273-N-

42 & 273-N-38).  He promised to carry out his plan Monday, December 10, 2001, in a letter

dated Oct. 24, 2001. (State's Ex 273-N-37).  Jackson  reiterated the Dec. 10, 2001, target date in

another letter dated Oct. 26, 2001, in which he drew a tombstone engraved with "Rest in piss."

(State's Ex. 275 B).  Apparently dissatisfied with the selection of Chryslers at the

Fingerhut/Roberts residence, Jackson  in a letter Oct. 29, 2001, requested that Appellant  get him

a 2002 Cadillac Deville. He further wrote, "An even if I gotta come to the house an shoot Robert

in his f-ing head you're gonna be with me.  An do you know what mandatory means?....I want

you to  marry me...Will you marry me after I take care of things." (State's Ex 275-A).

Upon reviewing the collection of letters, Monroe asked Appellant whether she had any

-6-

boyfriends.  Appellant stated she did, and gave the name "Carlos."  She also added that the late
Mr. Fingerhut also had a boyfriend named "Bobby."  She stated each was aware of the other's
affairs, but did not interfere.  (T.p. Vol. XXVII, p. 5906-5908).  Appellant made no mention of
Nate Jackson.  When Monroe brought up his name, Appellant admitted to having been
romantically involved with him for two years, that he had recently been incarcerated, and that
they would exchange letters.  Appellant admitted picking him up from prison on Dec. 9, 2001,
and to dropping him off on Wirt St., Youngstown, Ohio. Contrary to the very sexually graphic
nature of the letters found in Appellant's bedroom and automobile, she insisted she and Jackson
were just "friends."  She admitted that it was probably Jackson who telephoned her home in the
early morning hours of Dec. 12, 2001, and hung up on Monroe. (T.p. Vol. XXVII, p. 5909-
5913).

To further explore the readily apparent clues provided in the series of letters exchanged
between Appellant and Jackson,  Howland Township Police contacted the Lorain Correctional
Institution("LCI") to see if Jackson had telephoned Appellant from the prison.  Indeed, Jackson
had made 18 collect calls to Appellant from LCI from Oct. 25, 2001 through December 8, 2001.
(T.p. Vol. XXIV, p. 5113).   Both disregarded periodic, pre-recorded warnings stating, "[t]his call
is originating from an Ohio Correctional Institution and may be recorded or monitored."  For
inmate Nathaniel Jackson, the calls were monitored AND recorded.   The Ohio State Patrol was
able to preserve those 18 calls and they were played for the jury.

For example, Jackson telephoned Appellant on October 25, 2001, and told her that he
would be released from prison December 9, 2001, just in time for the holiday shopping season.
When Jackson asked Appellant what she wanted for Christmas, she replied, "You." Jackson

-7-

promised Appellant that:

> "I'm goin to go ahead and do that the next day, okay. All right.***My mind
> is made up. My mind made – I wrote it in my letters, you know what I'm saying,
> but you know, I don't like to talk too much like that but when I come home, you
> know what I mean, it's going be in full detail. Okay. I'm goin to let you know
> how I'm goin to do it and everything. I'm goin to do it for sure the next day."

(State 's Ex. 362, 362A). In unbridled anticipation of his first free night's activities, Jackson

requested that Appellant book a room at the Wagon Wheel Motel, and that she wear thong

underwear. (Id., State's Ex. 371, 371A)

In a call Nov. 8, 2001, the pair discussed Appellant performing oral sex on Jackson while

Fingerhut watches "before he goes away man." (State's Ex. 366, 366A). Appellant cautions

Jackson in a call Nov. 22, 2001, that "the story with the trunk and handcuffs, that's too

involved.***It's much too involved. Your [sic] gonna leave hair, your [sic] gonna leave prints,

your [sic]***" (State's Ex. 371, 371A). Jackson, in a subsequent phone call Nov. 24, 2001,

attempts to reassure Appellant about possible DNA evidence. Appellant  tells him that she has a

gun, a "big 38." Jackson also requests that she arrange a hotel room for him:

> "N. Jackson: After the 9th, you know what I'm saying, I get out, I'm going to be with you,
> you know what I'm saying. I next day, you know what I'm saying, I mean, that's when
> it's gonna to go down, you know what I mean. And then, you know what I mean, after
> that then I'm going to the hotel. You know what I'm saying."

> "D. Roberts: And you have to know a thousand percent, ***[t]hat you can trust
> me with your life and my life. Because it's my life too you know."

(State's Ex. 372, 373, 372A, 373A).  In one of the final calls Dec. 6, 2001, a gleeful Appellant

and Jackson discuss his imminent release, though the mood changes when Jackson tells

Appellant:

> "N. Jackson: I just need to be in that house when he come home.

-8-

"D. Roberts: Oh no.

"N. Jackson: Huh?

"D. Roberts: No.

"N. Jackson: Baby, it ain't gonna happen in the house. It ain't gonna happen in the house man, I promise you.

"Recording: This call is originating from an Ohio Correctional Institution and may be recorded or monitored."

(State's Ex. 379, 379A).

Because the phone calls were both recorded and monitored, Monroe was able to recover the DNA evidence which Appellant feared would link her jailbird boy toy to her ex-husband's homicide. He discovered that Appellant had not only booked the Jacuzzi suite at the Wagon Wheel Motel in neighboring Mahoning County for December 9, 2001, but she had left a pair of red thong underwear behind. (T.p. Vol. XXIV, p. 5329-5338, State's Ex. 312). Appellant also made good on Jackson's request to supply him with a post homicide, hotel hideout. She rented a room for an entire week of December 11, 2001 at the Days Inn, Boardman. (T.p. Vol. XXV, p. 5376).

On Dec. 18, 2001, a special agent from the Bureau of Criminal Identification searched the Days Inn room reserved by Appellant for finger prints, blood and hairs. Though he found no fingerprints in the room, he discovered a red and yellow stained washcloth and pubic hairs, possible blood stains on a comforter and in a waste basket. (T.p. Vol. XXV, p. 5528-5535). Monroe went through a trash dumpster at the same motel and recovered additional physical evidence.(T.p. Vol. XXVII, p. 5925).

BCI Serologist Brenda Gerardi linked Jackson's DNA to bloodied gauze recovered from

-9-

the Days Inn. Mr. Fingerhut's silver Chrysler was found in Youngstown, Ohio, on Dec. 12, 2001, approximately three blocks from where Appellant stated she dropped Jackson off the day of his release from prison. (T.p. Vol. XXV, p. 5357-5360). From Mr. Fingerhut's car, Gerardi also detected a mixture of Mr. Fingerhut and Jackson's DNA on the visor and on the trunk release. (T.p. Vol. XXVII, p. 5767-5768., State's Ex. 286 A,C, D). Cynthia Mayle, a latent fingerprint examiner matched Jackson's prints to the key card envelope from the Days Inn. (T.p. XXVII, p. 5834). Finally, Michael Roberts, a forensic firearms expert, opined that the bullets recovered from the victim, his jacket, and the dry wall at the Fingerhut home were fired from a .38 caliber gun. (T.p. Vol. XXVII, p. 5814).

During the course of his investigation, Monroe discovered that Jackson and Appellant had been seen together by several people just hours before the murder. For instance, Greyhound employee Frank Reynolds stated he saw Appellant and Jackson hugging and kissing at the Youngstown terminal the morning of Dec. 11, 2001. (T.p. Vol. XXIV, p. 5133). Jose Flores, the general manager of the Wagon Wheel, saw both Appellant and Jackson pull into the hotel in Appellant's red Chrysler on Dec. 9, 2001. (T.p. Vol. XXIV, p. 5332). Jim McCoy, a Greyhound bus driver, saw Appellant at the Warren terminal at approximately 5 p.m. December 11, 2001, with a black male named "Nate," and they were in a hurry to leave. (T.p. Vol. XXVI, p. 5508-5509). Contrary to her statement that she dined alone at the Red Lobster restaurant, Jill Kenyon, Red Lobster server, selected both Appellant and Jackson from photo-line-ups and stated that she waited on the couple until approximately 6:43 p.m. Dec. 11, 2001. (T.p. Vol. XXIV p. 5171-5179).

Monroe testified that Jackson became his prime suspect in Fingerhut's murder on

-10-

December 15, 2001. (T.p. Vol. XXVII, p. 5920). Appellant agreed to permit Monroe to monitor

a phone conversation between herself and Jackson from her home. Monroe had prepared a set of

questions which Appellant was to ask Jackson concerning an injury to his finger. Though she

was able to reach him by phone Dec. 16, 2001, Monroe testified that Appellant strayed from the

script and did not cooperate in asking the pre-discussed questions concerning the injury. (T.p.

Vol. XXVII, p. 5923, 6048-6049). In further efforts to protect herself and Jackson prior to the

homicide, Appellant attempted to set up Santiago Mason as a likely suspect. She had accused

him of stealing a .38 caliber hand gun. She filed a complaint in Warren Municipal Court and had

him arrested. (T.p. Vol. XXV, p. 5445-5448).

Despite Appellant's obfuscation and lack of cooperation, Jackson was arrested for Robert

Fingerhut's murder on Dec. 21, 2001, at 791 Wirt St., Youngstown. After Jackson was

extracted from the home, SWAT team members located a pair of men's black leather gloves in

the closet. They were thin and the left index finger was torn and smeared with a red substance.

(T.p. Vol. XXV, p. 5401-5405). At the time of his arrest, Jackson was wearing a bandage on his

left index finger.(T.p. Vol. XXVII, p. 5926).

Jackson was convicted and sentenced to death for Mr. Fingerhut's murder. Jackson's

direct appeal is pending in the Ohio Supreme Court in Case No. 03-137. Oral arguments were

held May 10, 2005. His post-conviction appeal is pending in this Court in case No. 04-89. This

Court conducted oral arguments Aug. 17, 2005. Appellant was also convicted. She presented no

witnesses in the penalty phase. For the mitigation phase, she specifically waived her right to

present mitigation, and chose instead to give a lengthy unsworn statement denouncing the justice

system and requesting the death penalty. The jury and the trial honored her request.

-11-

Other necessary facts will be brought to the Court's attention in the Argument portion of this brief.

## ARGUMENT

**APPELLANT'S FIRST ASSIGNMENT OF ERROR:** The trial court erred by failing to grant Appellant Roberts an evidentiary hearing which would allow her to establish the prejudice of the errors which occurred during her capital trial.

**APPELLEE'S ISSUE PRESENTED FOR REVIEW AND ARGUMENT:** A trial court commits no error in dismissing a postconviction petition without hearing when it finds no substantive grounds for relief.

In her First Assignment of Error, Appellant argues that the trial court improperly denied her an evidentiary hearing on the claim posited in her postconviction relief petition. This argument lacks merit.

The purpose of postconviction relief proceedings under Ohio R.C. 2953.21 is set forth in subsection (A), which provides:

(A) Any person convicted of a criminal offense or adjudicated delinquent claiming that there was such a denial or infringement of his rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States, may file for relief relied upon, and asking the court to vacate or set aside judgment or sentence or to grant other appropriate relief.

Subsection (C) of 2953.21 provides that before a hearing is granted on such a petition, the trial court "shall determine whether there are substantive grounds for relief." In making this determination, the trial court is to consider the allegations of the petition for postconviction relief and the particular facts upon which a petitioner bases his claim. The court is also required to consider "in addition to the petition and supporting affidavits, all the files and records pertaining to the proceedings against the petitioner, including but not limited to, the indictment, the court's

-12-

journal entries, the journalized records of the clerk of the court and the court reporter's

transcript." R.C.2953.21(C). If, upon such consideration, the trial court finds that there are no

substantive grounds for relief which would warrant a hearing, the court may dismiss the petition

without a hearing. *State v. Jackson* (1980), 64 Ohio St.2d 107, 110.

In addition, the Ohio Supreme Court has determined that it is incumbent upon a petitioner

to do more than simply assert a claim to be entitled to a hearing on his petition. Where the record

indicates that the petitioner is not entitled to relief, the petitioner must also support the

allegations in a petition for postconviction relief with evidentiary documents containing

sufficient operative facts to support the allegations or claims for relief. Otherwise, the petition is

subject to dismissal without a hearing. *State v. Kapper* (1983), 5 Ohio St. 3d 36, 38.

Moreover, such supporting evidence must meet a minimum level of cogency, and

evidence in the form of the petitioner's own self-serving affidavit alleging a constitutional

deprivation will not compel a hearing. *State v. Combs* (1994), 100 App.3d 90, 98, citing *State v.*

*Kapper,* supra. In *State v. Calhoun*, (1999), 86 Ohio St. 3d 279, 282, the Ohio Supreme Court

held that a trial court should give due deference to a petitioner's affidavit sworn under oath, but

may, in its sound discretion, judge their credibility in determining whether to accept the

affidavits as true statements of fact. Furthermore, the doctrine of res judicata is applicable to

postconviction relief proceedings. In *State v. Perry* (1967), 10 Ohio St. 175, the Ohio Supreme

Court held that:

> Under the doctrine of *res judicata,* a final judgment of conviction bars the
> convicted defendant from raising and litigating in any proceeding, except on
> appeal from that judgement, any defense or claimed lack of due process that was
> raised or could have been raised by the defendant at the trial which resulted in the
> judgment of conviction or on appeal from that judgment. Id. at 180.

-13-

In *State v. Cole* (1982), 2 Ohio St. 3d 112, the court clarified that res judicata is a proper basis upon which to dismiss a petition for postconviction relief where the issue sought to be presented could have been raised at trial or on direct appeal, and where "such issue could fairly have been determined without resort to evidence de hors the record." *Cole* at paragraph one of the syllabus. Evidence de hors the record must demonstrate that these claims could not have been raised on appeal based on the information in the original record. *State v. Lawson* (1995), 103 Ohio App. 3d 307, 315. Finally, "the violation upon which the petitioner relies to establish his right to relief must be of constitutional dimension, and it must have occurred at the time the petitioner was tried and convicted of a criminal offense." *State v. Powell* (1993), 90 Ohio App. 3d 260, 264.

Summary judgment in the State's favor in postconviction proceedings is appropriate when: (1) the state is entitled to judgment as a matter of law, (2) the state identifies affirmative evidence showing no genuine issue as to any material fact and (3) reasonable minds could come to but one conclusion, which is against the defendant, who is entitled to have the evidence construed most strongly in his favor. Civ.R. 56; *State v. DePew* (1994), 97 Ohio App.3d 111, 113, *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66.

In this Assignment of Error, Appellant briefly notes that she was forced to fashion her postconviction petition without the benefit of court-ordered discovery. But this Court summarily dismissed the concept of court-ordered discovery at the preliminary phases of the postconviction process in *State v. Lorraine* (Feb. 23, 1996), 11th Dist. No. 95-T-5196. This Court held the burden is on the *petitioner* to submit evidentiary documents to support his claim, and the trial court has no statutory authority to compel discovery. Therefore, unless a hearing is granted, the

-14-

petitioner is not entitled to conduct discovery. *Lorraine,* supra, at *5. These sentiments have been echoed by other appellate districts across the state including the First Appellate District in *State v. Byrd* (2001), 145 Ohio App. 3d 318, 332 and the Fifth Appellate District in *State v. Dean* (2002), 149 Ohio App. 3d 93, ¶10.   Therefore, while as Appellant writes in her brief at page 8, she may have been "unable to develop the record without discovery and without hearing," the trial court committed no error in failing to order discovery in Appellant's case.  The discovery issue is raised in Appellant's other Assignments of Error, and for the sake of judicial economy, the State will incorporate this analysis by reference in other Assignments of Error rather than reprinting it several times.

In reviewing Appellant's original and amended petitions, this Court can only conclude that the trial court did not abuse its discretion in dismissing both petitions without hearing. Though Appellant did affix some evidence de hors the record to her petitions, the trial court found that evidence insufficient to warrant a hearing.

The evidence de hors the record as introduced by Appellant is as follows: In her Original petition, Appellant supplied Exhibit A,  her own unsigned affidavit with her thoughts of where her trial counsel performed ineffectively. Also with the original petition, Appellant supplied a videotape, Exhibit B, memorializing the interview her co-defendant, Nathaniel Jackson, gave to the police wherein he readily admitted  shooting  Robert Fingerhut, but claimed he did so in self-defense after Mr. Fingerhut "disrespected" him.  Appellant's Exhibit C was an affidavit from appellate and postconviction counsel, David Doughten, explaining why Exhibit A was unsigned.  (T.d. # 149, Ex. A, B, C).  In her amended petition, Appellant submitted only Exhibit D, her own signed affidavit complaining about her trial

-15-

counsel's representation.

A review of these exhibits make it abundantly clear why these petitions were dismissed without hearing.  Even in its final form, Appellant's self-serving affidavit does not set forth a colorable claim of ineffective assistance of counsel.  She claims in her affidavit that, "I know I did not do this crime and I believe that Nate Jackson acted in self-defense because we did not plan this together."  (Ex. A, ¶3, Ex. D, ¶4).  The trial court completely dismissed any suggestion that Appellant and Jackson did not plan Mr. Fingerhut's killing.

> "***This theory is positively irrational in light of the substantial paper trail and
> audio trail left by Petitioner and Jackson indicating that both wanted Mr.
> Fingerhut dead so they could carry on their affair and spend his insurance
> proceeds.*** Petitioner's claim that she and Jackson did not plan Robert
> Fingerhut's murder is completely belied by the record in this case."

(T.d. #159, p. 11, ¶11).  In addition to the insufficient evidence supplied by Appellant on the claim of her trial counsel's purported ineffectiveness, the trial court also found the issue barred by the doctrine of res judicata:

> "The Court would first note that several of the complaints raised by Petitioner
> were obvious from the face of the trial record and therefore could have been raised
> on direct appeal.  Specifically, an omission of opening statements and closing
> arguments in mitigation, counsel's alleged lack of cross examination or challenge
> of culpability, Petitioner's assertion of her Fifth Amendment right not to testify,
> would have been apparent from the record, and is therefore barred by the doctrine
> of res judicata, a bar which Petitioner does not overcome."

(T.d. #159, p. 10, ¶6).  Further, the trial court dismissed Appellant's allegation of ineffective assistance  without hearing because in her original petition the claim spanned four pages (T.d #149, ¶¶39-57) and in the amended petition it covered nearly five pages.  (T.d. # 153,

-16-

¶39-58[2]). Claims which extend over more than three pages violate Crim. R. 35. The claim was subject to dismissal solely on this reason alone. *State v. White* , 9th Dist. No. 19040, 1999 WL 394938, at * 3-4. The State will address this issue in more detail in its response to Appellant's Fourth Assignment of Error, infra. Suffice it to say that the issue was barred by the doctrine of res judicata, the evidence was insufficient and contradicted by the record, and the claim exceeded the three-page limit of Crim. R. 35.

The trial court also found Appellant's petition totally lacking evidentiary material with respect to her other claims. For example, the court noted that no evidentiary material was affixed to support her claim of under-representation of African Americans from the petit and grand jury venire (First and Second Claims for Relief ), the unconstitutional use of lethal injection (Fourth Claim for Relief), and the inadequate corrective process of postconviction review (Fifth Claim for Relief). (T.d. # 159, p.5,¶2; p.7,¶2; p. 12,¶4; p. 13, ¶2). As such, Appellant did not meet her burden as articulated in *Kapper* and *Jackson,* supra, and the trial court did not abuse its discretion in outright dismissing these claims without hearing.

The trial court held that the doctrine of res judicata barred her First, Fourth and Fifth Claims for Relief. (T.d. #159, p. 6, ¶4; p. 12,¶1; p. 13, ¶1). Appellant does not dispute that these claims were or could have been raised in her direct appeal.

The trial court did not abuse its discretion in dismissing these petitions without hearing. Appellant either filed no evidentiary material or insufficient evidentiary material to warrant a hearing. She cannot overcome a res judicata bar in at least three of her five Claims for Relief. The trial court did not abuse its discretion in dismissing this petition without hearing.

---

[2]Paragraphs 57 and 58 were incorrectly numbered 56 and 57).

-17-

Her First Assignment of Error is without merit.

> **APPELLANT'S SECOND ASSIGNMENT OF ERROR:** The appellant was
> denied her right to a fair and impartial jury and equal protection because there was
> an under-representation of African Americans in the venire from which her jury
> was drawn.

> **APPELLEE'S ISSUE PRESENTED FOR REVIEW AND ARGUMENT:**
> Appellant's petition contained no evidentiary documentation to demonstrate an
> under-representation of minorities in her venire of potential jurors, and offered
> nothing more than unfounded speculation that African-Americans were
> "wrongfully excluded."

Appellant next argues an under-representation of African-Americans in her petit jury

venire.  This argument is without merit and the court properly dismissed this claim without a

hearing.

Appellant supplied no evidence to support her broad brush statement at page 13 of her

brief that there was an under-representation of prospective jurors of African-American heritage.

She attached no exhibits to support this claim (T.d#159, p 5¶2).  Appellant sought discovery to

bolster this otherwise unsupported claim, and pursuant to reasons discussed in the State's

response to Appellant's First Assignment of Error, the trial court denied her request for court-

ordered discovery. (T.d. #159, p. 6,¶7)

The lack of evidentiary support notwithstanding, Appellant pegs the African American

population in Trumbull County at 7.9 percent and claims 140 persons reported for jury duty for

her case.  Not only did she not supply the trial court with any figures as to the actual racial and

ethnic mix of her jury pool, she even acknowledges that both the record and the juror

-18-

Furthermore, the court also properly found the claim is barred by the doctrine of res judicata. The racial make-up of the final jury panel or the jury pool would have been evident from the jurors who appeared for jury service. If, in fact, there was an under-representation of minorities, such a fact could have been noted in the record, and the claim could have been raised as a proposition of law in Petitioner's direct appeal. It was not, therefore, the doctrine of res judicata applies. *Perry,* supra, at 180; *Cole,* supra, at paragraph one of the syllabus.

The application of the doctrine of res judicata was affirmed by the Ninth District Court of Appeals in *State v. Wilson* (June 24, 1998), 9th Dist. No. 97 CA006683, in another capital murder case wherein the defendant attempted to argue that his jury pool was minority deficient. Wilson, like Appellant, relied upon the Diane Wiley article concerning minority under-representation. The Ninth District held, "We find that because Defendant could have asserted his argument that the jury make-up was underrepresented by non-Whites and Hispanics in his direct appeal, he is barred by the doctrine of *res judicata* from raising it in his petition for postconviction relief." *Wilson,* supra at *7. Furthermore, Appellant's reliance upon the Wiley study is misplaced. Wiley cites to another Trumbull County capital case, *State v. Roderick Davie,* wherein Wiley opines there was an under-representation of African Americans in the jury panel. The State would point out that Roderick Davie's conviction and sentence has been upheld through numerous state and one federal court reviews, and Ms. Wiley's study has failed to persuade any court that the racial make-up of his jury pool warranted a reversal of Davie's conviction and death sentence.

The only shred of support for this claim is contained in Appellant's affidavits labeled as "A" and "D." In this exhibit, Appellant claimed there were no "blacks" on her jury, and that she

-20-

questionnaires are silent on this issue. (Appellant's brief at p. 13). The State will acknowledge that no African-American was ultimately seated on her panel. Because Appellant has failed to submit sufficient evidentiary documents to support her claim, the court properly dismissed this matter without hearing. See *Kapper,* supra, at 38.

Furthermore, Trumbull County selects its potential jurors from the voter registration roles, a practice which has been upheld repeatedly by various courts, including the Ohio Supreme Court. *State v. Spirko* (1991), 59 Ohio St. 3d 1, 36, citing *State v. Johnson* (1972), 31 Ohio St. 3d 106. To demonstrate an alleged constitutional violation in the jury selection process, Appellant must show that the jury selection process systematically excluded members of a distinctive group. *State v. Fulton* (1991), 57 Ohio St. 3d 120, 125, citing *Duren v. Missouri* (1979), 439 U.S. 357, 364. *Duren* sets forth the following standards in determining whether a petit jury was selected from a fair cross section of the community:

> "To establish a prima facie violation of the Sixth Amendment's fair cross-section requirement, a defendant must show: "(1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that the underrepresentation is due to systematic exclusion of the group in the jury-selection process."

*Duran* at 364. Even if this Court takes at face value that Appellant's venire is under-represented by African Americans, she does not demonstrate that the purported under-representation is due to any wrongful exclusion as is alleged in her brief. Under-representation on a single venire is insufficient to show systematic exclusion. *State v. McNeill* (1998), 83 Ohio St. 3d 438, 444. Therefore, the court below properly found that Appellant failed to set forth sufficient operative facts establishing substantive grounds for relief.

-19-

"thinks" there were two or three blacks in the jury pool. She further claimed the prosecutor used peremptory challenges to excuse "both jurors." This claim is not supported by any other piece of evidence, such as a corroborating affidavit from any of the trial attorneys. Such supporting evidence must meet a minimum level of cogency, and evidence in the form of the petitioner's own self-serving affidavit alleging a constitutional deprivation will not compel a hearing. *State v. Combs* (1994), 100 App.3d 90, citing *State v. Kapper,* supra.

However, the State attached to its Motion for Summary Judgment affidavits of Assistant Prosecutors Christopher Becker and Kenneth Bailey who prosecuted Appellant on behalf of the State of Ohio and who were present during the peremptory challenges. (T.d. # 154). By their recollection, there *were* in fact two African American women dismissed with the use of a peremptory challenge, Karen Tilton, and Maxine Howard. However, the prosecutors recalled it was the *defense* who excused Tilton, while the State excused only one African-American, Howard. (T.p. Vol. XXI, p. 4600-4601, p.4603). In their affidavits, the prosecutors recalled that Howard was excused for numerous race neutral reasons, including the fact that she would require the State to prove its case "beyond a shadow of a doubt," would be inclined to believe any one who proclaimed their innocence, had apprehensions about convicting the wrong person of a crime and was uncertain as to when she would impose the death penalty. (T.p. Vol. IV, p. 966-1015, T.p. Vol. V, p. 1023-1070). As a result, even if her counsel had raised a so-called *Batson* challenge, or objected to Ms. Howard's dismissal, it is likely such objection would have been overruled.

In her final paragraph, Appellant claims that the "wrongful exclusion of African Americans from the venire is a structural error" and therefore she is not required to demonstrate

-21-

prejudice. The Ohio Supreme Court has defined "structural errors" as those which " are so intrinsically harmful as to require automatic reversal (*i.e.,* 'affect substantial rights') without regard to their effect on the outcome." *State v. Hill* (2001), 92 Ohio St. 3d 191, 196. The court found an error to be "structural," and thus subject to automatic reversal, only in a "very limited class of cases." Id. citing *Johnson v. U.S.* (1997), 520 U.S. 461, 468. The case presented by Appellant is decidedly not one of those limited cases. Appellant never demonstrated that *anyone* was wrongfully excluded from her venire, let alone African-Americans. As such, she cannot argue any error, structural or plain.

For these reasons, the trial court properly held that her claims of "under-representation" and "wrongful exclusion" were not supported by the petition and therefore no hearing was warranted. Furthermore, the claims are barred by the doctrine of res judicata. Appellant's Second Assignment of Error is without merit.

> **APPELLANT'S THIRD ASSIGNMENT OF ERROR:** The appellant's convictions and sentence are void or voidable because the grand jury that indicted her was drawn from a venire in which African Americans were disproportionately excluded in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

> **APPELLEE'S ISSUE PRESENTED FOR REVIEW AND ARGUMENT:** A postconviction petitioner is not entitled to a hearing on alleged exclusion of African Americans on her grand jury when Appellant cannot even prove the racial composition of the panel, let alone allegation of exclusion, underrepresentation or discrimination.

As a logical spin-off from her Second Assignment of Error, Appellant next argues that because there was an under-representation of African Americans in her petit jury pool, there was an under-representation of African Americans in her *grand* jury pool. However, this argument is equally flawed her as her previous assignment of error.

-22-

As the court noted Appellant again failed to attach any documentary evidence to support her charge of minority under representation at the grand jury level. (T.d. #159, page 7, ¶2). She requested both discovery and court-appointed experts to support her claim. The State refers the Court to its response to Appellant's First Assignment of Error for the analysis as to why discovery was denied. The trial court denied the appointment of experts pursuant to this Court's decision in *State v. Williams* (Oct. 16, 1998), 11th Dist. No. 97-T-0153, at *9. Furthermore, she failed to supply the trial court with *any* data with respect to the racial composition of her grand jury. If she cannot prove the racial *composition* of the grand jury, it is axiomatic that she cannot prove racial *discrimination*. Therefore, this claim is equally subject to dismissal without hearing. *Kapper,* supra, 38.

The trial court noted, "Petitioner merely hypothesizes, rather than demonstrates, that her grand jury was selected in a racially discriminatory manner. Her hypothesis crumbles because she fails to inform this Court as to what the racial composition of the grand jury was, much less that anyone of any race was excluded in a racially discriminatory manner." (T.d. #159, p. 8, ¶3).

Moreover, the Ohio Supreme Court has held that "not every grand jury has to represent a 'fair cross-section,' so long as the selection process is nondiscriminatory." *State v. Williams* (1997), 79 Ohio St. 3d 1, 17. Likewise, the court specifically held that since the use of voter registration in petit jury selection was constitutionally sound and neither systematically nor intentionally excludes any racial group, the same method of selection should be equally permissible for the selection of the grand jury. "We see no reason to apply a different principle to the selection of the grand jurors." *State v. Issa* (2001), 93 Ohio St. 3d 49, 62. As stated supra, Trumbull County relies upon the voter registration rosters for its grand jurors. Because the Ohio

-23-

Supreme Court has consistently ruled that this method does not exclude any minority, Appellant

cannot and did not prove discrimination or constitutional violation.

For the above stated reasons, Appellant did not demonstrate substantive grounds for

relief, and the court below properly dismissed this claim without hearing. This assignment of

error lacks merit.

**APPELLANT'S FOURTH ASSIGNMENT OF ERROR:** The appellant's was
denied effective assistant of counsel during the culpability state of her capital
case.

**APPELLEE'S ISSUE PRESENTED FOR REVIEW AND ARGUMENT:** A
postconviction petitioner is not entitled to relief on a claim of ineffective
assistance of counsel where deficient performance and prejudice are not
demonstrated.

In her Fourth Assignment of Error, Appellant alleges that her petition demonstrated her

trial counsel's ineffectiveness at both the trial and penalty phase of her proceedings. The record

says otherwise, and this assignment lacks merit.

As a general principle, it is well-settled law where a petitioner asserts a claim of

ineffective assistance of counsel, he or she bears the initial burden to submit evidence to

demonstrate that his defense was prejudiced by counsel's ineffectiveness. If he or she fails to do

so, no evidentiary hearing is required. *State. v. Pankey* (1981), 68 Ohio St. 2d 58, 59 citing

*Jackson, supra,* at syllabus.

This Court explained in *State v. Pierce* (1998), 128 Ohio App. 3d 578, 586, that in

asserting an ineffective assistance claim, the petitioner must submit materials containing

sufficient operative facts to demonstrate both prongs of the two-part test set forth in *Strickland v.*

*Washington* (1984), 466 U.S. 668, 687: (1) that counsel's performance was deficient and (2) that

-24-

the deficient performance prejudiced the defense. Prejudice will not be found unless appellant demonstrates there is a reasonable possibility that, if not for counsel's errors, the result of the trial would have been different. *State v. Bradley* (1989), 42 Ohio St. 3d 136, 143. "In the absence of positive proof to the contrary, certainly there is a reasonable inference that one licensed by the state to practice law and appointed by a court to represent an accused did competently and properly represent such accused during his trial." *Vaughn v. Maxwell* (1965), 2 Ohio St. 2d 299, 301. In order to overcome this presumption of effectiveness, a petitioner must submit sufficient operative facts or evidentiary documents that, if proven would show that the petitioner was prejudiced by ineffective assistance of counsel. *State v. Smith* (1987), 36 Ohio App. 3d 152, 163. Defendant must overcome the "presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy." ' *Strickland,* 466 U.S. at 689, quoting *Michel v. Louisiana* (1955), 350 U.S. 91, 101.

The State submits the record before this Court demonstrates no "errors" by her highly experienced and competent counsel and her lone exhibit, her own self-serving affidavit, does nothing to bolster this claim. Therefore, the trial court properly dismissed this claim without hearing.

At page 17 of her brief, Appellant gives a summary of the areas in which she now argues she received ineffective assistance of counsel. Among the criticisms is that counsel did not provide an "articulated defense," that their strategy was "confusing" and that the jury would not believe Appellant was not professing her innocense. The laundry list of critiques ignores the fact that the State's case included nearly 300 letters and 18 phone calls between Appellant and her prison pen pal lover, Jackson, in which they expressed their love and lust for each other,

-25-

Appellant's dissatisfaction with Mr. Fingerhut's curtailment of her spendthrift lifestyle, Mr. Fingerhut's purported abusive behavior toward her (something Appellant denied in her statement to police and unsworn statement to the jury), their common desire to see Mr. Fingerhut dead so that they might share in his $550,000 life insurance proceeds, and the fatal plan to effectuate that common desire.   Appellant offered no suggestion in her petition, nor in her brief, as to how even the most able attorneys could counteract this mountain of evidence stacked against her.

She also ignores the fact that the record is replete with examples as to Appellant's controlling and interactive nature with respect to her own defense.  Despite having two highly qualified and experienced capital litigators at her disposal, Appellant opted to make her own opening statement during the guilt phase.  (T.p. Vol. XXI V, p. 5095-5096).   For Appellant to now criticize this strategy is to effectively argue ineffectiveness of one's pro se representation.  "[I]t is settled law that a defendant who has elected to proceed pro se cannot later complain of his own ineffectiveness as a grounds for reversal." *United States v. Weisman*(C.A.8, 1988), 858 F.2d 389, 391, citing *Faretta v. California*  (1975), 422 U.S. 806, 834-35 n. 46. Nevertheless, in her opening statement she professed her innocense and told the jury the trial would reveal the "real Donna Roberts." (T.p. Vol. XXIV, p. 5095-5096).  Apparently, the jury saw the real Donna Roberts for what she is: a capital murderer, and rendered verdicts in accordance therewith.

With these introductory comments, the State will attempt to address each of the five areas raised in Appellant's brief.

**The Batson Challenge**

Appellant first claims her counsel failed to object to the State's removal of two black jurors in contravention of *Batson v. Kentucky* (1986), 476 U.S. 79.  As Appellant concedes in her

-26-

brief, the record does not address the race of any of the jurors dismissed or seated.  However, as

detailed in Appellant's Assignment of Error No. II, Appellant recalled, through her own affidavit,

that two black jurors were dismissed.  According to affidavits submitted by the two trial attorneys

from the prosecutor's office,  the *defense*  dismissed one of these potential jurors, Karen Tipton.

(T.d. #154, State's Ex. 1 & 2). Appellant's trial counsel cannot be held ineffective for not

objecting to their own peremptory challenge. As for the State's peremptory challenge of Maxine

Howard, the record reveals that the State introduced several race neutral reasons pursuant to

*Batson*,  supra, at 97,  for dismissing her, including  the fact that she would require the State to

prove its case "beyond a shadow of a doubt,"  would be inclined to believe any one who

proclaimed their innocense, had apprehensions about convicting the wrong person of a crime and

was uncertain as to when she would impose the death penalty.  (T.p. Vol. IV, p. 966-1015, T.p.

Vol. V, p. 1023-1070). The record before this Court is clear: regardless of race, Ms. Howard

could not be a fair and impartial juror.  Appellant's affidavit did nothing to contradict the record

or the prosecutors' affidavits in this case.   As a result, even if her counsel had raised a so-called

*Batson* challenge, or objected to Ms. Howard's dismissal, it is patently obvious from the record

that said objection would have been overruled

**Failure to Make Opening Statements**

Appellant in her brief fails to distinguish whether she is referencing trial counsel's

"failure" to make opening statements during the penalty phase or the guilt phase.  The State will

consider both for purposes of this argument.   As for the guilt phase, Appellant's claims that she

was unaware her counsel  was *not* going to make an opening statement is belied by the record.

At the conclusion of the State's opening statement, defense attorney Jerry Ingram is quoted as

-27-

saying aloud and in open court, "Donna Roberts, pursuant to statute, will give *the* defense

opening statement." (T.p. Vol. XXIII, p. 5095).  Appellant then delivered said statement. At the

end of her opening statement, she did not say "and now jurors, you will hear from my able-

bodied trial counsel," or words to that effect.   Based on Atty. Ingram's introduction of his client

and Appellant's lack of a segue,  it is clear that when Appellant took the podium she knew she

was delivering the only defense opening statement the jury was going to hear.  Thus, even if her

affidavit had specified which opening statements she was referring to, the record contradicts her

self-serving statement that  she did not know only she would be addressing the jury.

 If Appellant was referring to the opening statements in mitigation, as the trial court

presumed, her affidavit is self-contradicting because he writes "I did instruct my attorneys that I

did not want them to participate in the penalty phase of the trial."  Delivering opening statements

would qualify as participating.  She cannot argue ineffectiveness if they were following her

instructions.

 Nonetheless, the Ohio Supreme Court has declined to label capital litigators ineffective

by the mere waiver of an opening statement. "[C]ounsel's actions must be viewed as tactical

decisions and do not rise to the level of ineffective assistance. In any event, appellant does not

show that there is a 'reasonable probability' that but for counsel's actions, the result of the case

would have been different." *State v. Bradley* (1986), 42 Ohio st. 3d 136, 144. "Debatable trial

tactics generally do not constitute a deprivation of effective counsel. " *State v. Phillips* (1995), 74

Ohio St. 3d 72, 85.  Thus, even if  the decision to waive opening statements is "debatable,"

Appellant cannot now argue ineffective assistance of counsel in a postconviction petition. She

does not offer any evidence as to what counsel would have said had they given opening

-28-

statements.  Appellant does not argue that had they given an opening statement in either the guilt or the penalty phase the outcome of the case would have been different.  As such, Appellant's affidavits demonstrate no prejudice and without a determination of prejudice an ineffective assistance claim must fail.

**The Co-defendant's Defense**

Appellant argues in her brief that an attorney performing within the professional norm would have introduced the video taped statement co-defendant Nathaniel Jackson made to Howland Police wherein he admitted killing Mr. Fingerhut, but claimed he did so in self-defense.  Undoubtedly, Appellant would have relished the introduction to her co-defendant's statement without subjecting him to the rigors of courtroom cross examination.  However, Appellant's relish is superceded by Ohio's Rules of Evidence proscription against hearsay evidence.  Evid. R. 804(B)(3) reads as follows:

> "(3) *Statement against interest.* A statement that was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless the declarant believed it to be true. A statement tending to expose the declarant to criminal liability, whether offered to exculpate or inculpate the accused, is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement."

Appellant does not elucidate  this Court  how her co-defendant's self-serving and implausible excuse of self-defense has any indicia of trustworthiness as required by Evid. R. 804(B)(3).  Indeed, as this Court has held, "circumstantial indicia of corroboration may include proof that the declarant repeated his story often and consistently, or evidence that the statement was made to someone who would respond officially, e.g., a law enforcement officer." *State v. Akers* (April 4,

-29-

1997), No. 95-P-0073, at *9, quoting *State v. Long* (July 12, 1984), Clark App. No. 1893, at *8.
Not only was co-defendant Jackson's "exculpatory" statement not repeated, it was not
corroborated by any evidence introduced at his trial. Jackson did not testify on his own behalf to
reinforce this theory of self defense at his own trial. Therefore, Appellant cannot demonstrate
that the video tape would have been admissible, and therefore, she cannot argue her trial counsel
ineffectiveness in following the rules of evidence and declining to admit the tape. Obviously,
co-defendant Jackson was chivalrous enough to defend his lover during the course of the police
interview, but for reasons which are not part of the record, he was not called to stand to do the
same.

This Court could speculate as to why Appellant did not testify. Perhaps he elected to
exercise his constitutional right not to incriminate himself in the unlikely event that his own
direct appeal should result in retrial. Perhaps he offered to testify on Appellant's behalf and trial
counsel made the strategic decision not to call him because his testimony or demeanor could
prove more harmful than beneficial. Neither of these scenarios appear anywhere in the record.
Appellant fails to offer any insight as to how, from an evidentiary standpoint, this video is
admissible.

Momentarily vanishing the obvious evidentiary constrictions, Appellant's trial counsel
may have deliberately opted NOT to use Appellant's video tape because it is unfavorable to
Appellant. It certainly demonstrates that Appellant, while living with Robert Fingerhut, was
involved with Jackson. In the tape, he discusses calling her after the homicide (apparently
knowing her cell phone number), and telling her to arrange a place for him to stay. His evasive
answers to police regarding the true nature of their relationship may have been off-putting. He

-30-

attempted to disavow knowledge of the incriminating tapes and letters which may have eroded

his credibility with the jury. Despite Appellant's wishes that the jury hears from Appellant's own [Jackson's]

lips that "Donna had nothing to do with it," trial counsel may have concluded that the rest of the

tape may not have helped Appellant.

The tape certainly did not sway Jackson's jurors. Even with its admission in his trial,

Jackson's jurors convicted Appellant and sentenced him to death. Furthermore, as the trial court

stated in the Findings of Fact, Appellant argued to the jury in her unsworn statement that the

shooting was in self defense. (T.d. #159, p. 11, ¶11, citing T.p. Vol. XXVIII, p. 6292). Thus, at

least during the mitigation phase, the jurors heard Appellant's hollow claim that Jackson killed

Mr. Fingerhut in self defense.

To conclude, the tape was inadmissible pursuant to the Rules of Evidence, the contents

of the tape were not wholly favorable to Appellant, and trial counsel may have made a strategic

decision not to use the tape. As such, the trial court properly concluded that Appellant's trial

counsel were not ineffective for failing to introduce the tape.

**Waiver of Closing Argument**

The Supreme Court has held that "[t]he choice to make a closing argument and the

content thereof is generally considered a tactical decision." *State v. Bellew* (1996) 76 Ohio St. 3d

244, 257. The obvious tactical advantage to a criminal defendant waiving a closing argument is

that the State is then short circuited from offering a rebuttal argument. "As to defense counsel's

waiver of closing argument at the mitigation hearing, we find that this may have simply been a

tactical decision made by defense counsel to prevent the state from splitting closing argument

and staging a strong rebuttal." *State v. Burke* (1995), 73 Ohio St. 3d 399, 405. Appellant cannot

-31-

speculate as to how the outcome of her trial would have changed if counsel and offered a closing argument.

Finally, because the lack of a closing statement was evident from the face of the record, Appellant could have raised this issue in her direct appeal but did not. Therefore, the claim is waived by the doctrine of res judicata.

Based on the foregoing, Appellant cannot establish prejudice and did not demonstrate in her petition that the waiver of closing argument was tantamount to ineffective assistance.

**Refusal to Allow Appellant's Testimony**

This claim is also barred by the doctrine of res judicata because the lack of the Appellant's testimony would have been apparent from the face of the record and could therefore been used as an example counsel's purported ineffectiveness on direct appeal. Further the decision whether to call a defendant as a witness falls within the purview of trial strategy. *State v. Adkins* (2001), 144 Ohio App.3d 633, 646, . As such, a failure to call a defendant as a witness will not be grounds for a claim of ineffective assistance of counsel unless prejudice is demonstrated. Id. This Court has taken this issue one step further and held, "[s]ince the advice of an attorney to their client regarding the decision to testify is a tactical decision, it cannot be challenged on appeal on the grounds of ineffective assistance of counsel, unless it is shown that the decision was the result of coercion." *State v. McKay*, 11th Dist. No. 2001-A-0008, 2002-Ohio-3960, at ¶43.

Appellant said the following about the debate over whether she should testify:

> "I wanted to testify on my behalf. I begged my attorneys to let me testify. They wavered, agreeing I should testify one day and changing their mind the next. When it came time for me to testify, they said no."

-32-

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 3097

(T.d. # 149, Ex. A¶7, #153, Ex. D¶7). Nothing in Appellant's affidavit demonstrates coercion. At best, it indicates trial counsel waffled on the decision, and eventually advised against Appellant testifying. Therefore, Appellant fails to demonstrate coercion. She also fails to articulate ineffective assistance of counsel on this issue.

The trial court denied discovery based on reasons previously discussed.On a final note, the trial court found that Appellant's entire claim was subject to dismissal because she failed to confine the claim to three pages as required by Crim. R. 35. (T.d. #159, p. 11, ¶13; 9, ¶1).

Appellant failed to show that her trial counsel were ineffective pursuant to the *Strickland* standard. None of the five above listed areas were outcome determinative in either the guilt or penalty phase. Several of the criticisms are barred by the doctrine of res judicata. The trial court properly found that Appellant's claim is barred because it is beyond the three-page limit promulgated in Crim. R. 35. Notwithstanding, the trial court properly held that Appellant's self-serving affidavit failed to articulate a colorable claim of ineffective assistance of counsel. Her Assignment of Error No. IV is without merit.

> **APPELLANT'S FIFTH ASSIGNMENT OF ERROR:** The death sentence against Appellant Roberts is void and/or voidable because the death penalty as administered by lethal injection violates her constitutional right to protection from cruel and unusual punishment as guaranteed by the Eighth Amendment and federal due process of law.

> **APPELLEE'S ISSUE PRESENTED FOR REVIEW AND ARGUMENT:** The Ohio Supreme Court has upheld the method of execution which the Appellant specifically requested, and which she now wants declared unconstitutional.

In Appellant's Fifth Assignment of Error, she argues that lethal injection violates the constitutional proscription against cruel and unusual punishment. For numerous reasons, the trial court properly dismissed this claim without hearing.

-33-

First, the trial court properly found this claim is barred by the doctrine of res judicata because Petitioner could and did raise it on her direct appeal to the Ohio Supreme Court. (Petitioner's Merit Brief, p. 82, T.d. #159, p. 12, ¶3). *Perry,* supra, at 180; *Cole* supra, at paragraph one of the syllabus. Second, trial court found that the claim was barred by the doctrine of invited error because Appellant specifically requested the imposition of the death penalty, and now should not be permitted to claim that the very penalty she requested is constitutionally infirm. (T.d #159, p. 12, ¶4, citing *Caldwell v. Mississippi* (1985), 472 U.S. 320, 336-337). Appellant went so far as to *thank* the trial court for imposing the death penalty. (T.p. Vol. XXVIII, p. 6294-6295).

Furthermore, Appellant stated in her petition and reiterates in her brief that her execution will cause undue suffering and pain. She supplied no evidentiary documentation to support this claim, and it is therefore subject to dismissal without hearing. *Kapper,* supra, at 38. For reasons previously stated, the court denied discovery.

Additionally, the Ohio Supreme Court has previously held, in another Trumbull County capital case, that lethal injection does not constitute cruel and unusual punishment. *State v. Carter* (2000), 89 Ohio St. 3d 593, 608. The U.S. Sixth Circuit Court of Appeals summarily dismissed Appellant's claim that Sodium Thiopental is not a powerful enough sedative for the remainder of the drugs being administered in the execution process.

> "***[Petitioner] proffers affidavits from a physician who states that if thiopental sodium is not administered for a sufficient length of time to complete the other steps of the procedure, petitioner will suffer severe pain. A lay person who experienced this difficulty describes the pain in her affidavit. In response, the state submits an affidavit from an extremely well-qualified physician explaining why, in the dose to be used by the state, two (2) grams, the condition described by plaintiffs expert will almost certainly not occur. He notes that when thiopental

-34-

sodium is commonly used for general anesthesia in surgery, it is normally administered in a dose of 300 to 400 milligrams. Petitioner's motions for remand to the district court, for preliminary injunctive relief and for stay of execution are DENIED."

*In re Williams* (C.A. 2004), 395 F. 3d 811, 813-814.

Perhaps a review of the wise words of U.S. Supreme Court Justice Antonin Scalia are in order

given the tone of Appellant's Assignment of Error:

> "Justice BLACKMUN begins his statement by describing with poignancy the death of a convicted murderer by lethal injection. He chooses, as the case in which to make that statement, one of the less brutal of the murders that regularly come before us--the murder of a man ripped by a bullet suddenly and unexpectedly, with no opportunity to prepare himself and his affairs, and left to bleed to death on the floor of a tavern. The death-by-injection which Justice BLACKMUN describes looks pretty desirable next to that. It looks even better next to some of the other cases currently before us which Justice BLACKMUN did not select as the vehicle for his announcement that the death penalty is always unconstitutional--for example, the case of the 11-year-old girl raped by four men and then killed by stuffing her panties down her throat. See *McCollum v. North Carolina,* cert. pending, No. 93-7200. How enviable a quiet death by lethal injection compared with that! If the people conclude that such more brutal deaths may be deterred by capital punishment; indeed, if they merely conclude that justice requires such brutal deaths to be avenged by capital punishment; the creation of false, untextual, and unhistorical contradictions within 'the Court's Eighth Amendment jurisprudence' should not prevent them."

*Callins v. Collins* (1994), 114 S.Ct. 1127, 1128. Without question, Appellant will endure an

"enviable quiet death" by lethal injection when compared to the violent death suffered by

Robert Fingerhut.

Finally, Appellant cites to no authority whatsoever, from *any* state or federal court which

has held lethal injection to be violative of the Eighth Amendment to the U.S. Constitution. The

court below specifically held that lethal injection does not constitute cruel and unusual

punishment. (T.d. #159, p. 12, ¶4).

-35-

Appellant's claim is clearly barred by the doctrine of res judicata. She failed to submit sufficient evidentiary documentation to support this claim and the trial court properly granted summary judgment and dismissed the petition without hearing.

**APPELLANT'S SIXTH ASSIGNMENT OF ERROR:** Ohio's post-conviction procedures do not provide an adequate corrective process, in the violation of the Fifth, Sixth Eighth, and Fourteenth Amendments to the United States [Constitution].

**APPELLEE'S ISSUE PRESENTED FOR REVIEW AND ARGUMENT:** A procedure which promotes finality of judgments, judicial economy and a bar to a second appeal does not violate the right to due process and equal protection.

Appellant in her Sixth and final Assignment of Error, argues that Ohio's postconviction procedure as set forth in R.C. 2953.21 et seq is constitutionally infirm. This Court has held otherwise.

In her petition to the lower court, Appellant failed to supply any evidentiary material to support this claim. As such it was subject to dismissal without hearing. *Kapper,* supra, at 38. (T.d. #159, p. 13, ¶2). The trial court also noted the claim was barred by the doctrine of res judicata because Appellant could have raised this constitutional challenge in her direct appeal to the Ohio Supreme Court and did not. (T.d. #159, p. 13, ¶1). "Generally, the law in Ohio is that the failure to raise the issue of a statute's constitutionality at the trial level constitutes a waiver of such issue." *State v. Zuern* (1987), 32 Ohio St.3d 56, 63. In her brief to the Ohio Supreme Court, Appellant raised a host of boiler plate arguments regarding the constitutionality of Ohio's death penalty scheme. (i.e., Appellant's Proposition of Law Nine, Ten, Eleven, Twelve, Thirteen, Fourteen). She did not challenge the constitutionality of Ohio's postconviction statutes.

-36-

Additionally, as Appellant concedes in her brief, this Court has already of record stating

that Ohio's postconviction procedures are constitutionally sound.  In *State v. Jones*, 11th Dist.

No. 2000-A-0083, 2002-Ohio-2074, this Court cited to the U.S. District Court for Ohio's

Southern District's position in *Jamison v. Collins* (S.D. Ohio 1998), 100 F. Supp. 2d 521, that

Ohio's postconviction system does not run afoul of due process.

> "In *Jamison,* the petitioner argued that Ohio's postconviction system was
> inadequate because it did not provide an opportunity to identify, investigate, or
> prove constitutional violations. *Id.* at 567. The *Jamison* court rejected those
> arguments and ruled that Ohio's system did not violate due process. *Id.* The court
> noted that although Ohio has imposed strict standards for granting an evidential
> hearing and discovery pursuant to a petition for postconviction relief, those
> standards were 'supported by reasonable policy reasons, such as the finality of
> judgments, judicial economy, and the intention that postconviction review not be
> a second appeal * * *.' *Id.* at 568."

*Jones,* supra, at *7.

Relying upon the U.S. District Court for Ohio's Northern District this Court found that

Ohio's system does not preclude review but "forces a petitioner to prove he or she is entitled to a

remedy." Id, citing *Dennis v. Mitchell* (N.D. Ohio 1999), 68F. Supp. 2d 863, 885. The fact that

Appellant did not show she was entitled to a remedy does not mean the postconviction system as

a whole is unconstitutional or inadequate.   Likewise, this Court could find no equal protection

violations in Ohio's system. *Jones,* supra, at *7.

Appellant attacks the postconviction process in her brief because there are so few

successful postconviction petitioners. This Court dismissed this argument in *State v. Wiles*

(1998), 126 Ohio App. 3d 71, 84, stating, "we do not share appellant's rather dismal opinion of

the efficacy of the postconviction system. Although rare, there are instances where

postconviction relief is appropriate."

-37-

Appellant's postconviction relief petition was dismissed by the trial court not because the system is constitutionally infirm, but because her petition was lacking the necessary demonstration of an entitlement to relief.  For these reasons, Appellant's Sixth Assignment of Error is without merit.

CONCLUSION

For the above stated reasons, Appellant's six Assignment of Errors are without merit. The State urges this Court to affirm the trial court's decision to deny Appellant's postconviction relief petitions without hearing.

Respectfully submitted by:

LaWAYNE ANNOS (#0055651)
Assistant Prosecuting Attorney
Trumbull County Prosecutor's Office
160 High St. 4th Floor
Warren, Ohio        44481
Telephone: (330) 675-2426

COUNSEL FOR PLAINTIFF-APPELLEE
THE STATE OF OHIO

PROOF OF SERVICE

I do hereby certify that a copy of the foregoing brief was sent by ordinary U.S. Mail to Atty. David L. Doughten (Atty. Reg. #0002847)  4403 St. Clair Ave. Cleveland, Ohio  44103, Counsel for Defendant-Appellant Donna Roberts, on this 19th Day of September, 2005.

LaWAYNE ANNOS (#0055651)
Assistant Prosecuting Attorney

-38-

# APPENDIX

-39-



Not Reported in N.E.2d
Not Reported in N.E.2d, 1996 WL 207676 (Ohio App. 11 Dist.)
**(Cite as: 1996 WL 207676 (Ohio App. 11 Dist.))**

Only the Westlaw citation is currently available.

CHECK OHIO SUPREME COURT RULES FOR REPORTING OF OPINIONS AND WEIGHT OF LEGAL AUTHORITY.

Court of Appeals of Ohio, Eleventh District, Trumbull County.
STATE of Ohio, Plaintiff-Appellee,
v.
Charles L. LORRAINE, Defendant-Appellant.
No. 95-T-5196

Feb. 23, 1996.

Marc S. Triplett, Bellefontaine, Luigia Tenuta, Dublin, for defendant-appellant.

Dennis Watkins, Trumbull County Prosecutor, Patrick F. McCarthy, Assistant County Prosecutor, Warren, for plaintiff-appellee.

MAHONEY.

*1 Appellant, Charles L. Lorraine, appeals the trial court's decision denying his post-conviction relief petition brought pursuant to R.C. 2953.21. On December 9, 1986, appellant was sentenced to death for the murders of Raymond and Doris Montgomery. Appellant was also convicted of two counts of aggravated burglary. On appeal, this court affirmed the trial court's decision in *State v. Lorraine* (Aug. 13, 1990), Trumbull App. No. 3838, unreported. The Supreme Court of Ohio affirmed these decisions in *State v. Lorraine* (1993), 66 Ohio St.3d 414.

On September 30, 1994, appellant filed a post-conviction relief petition in the trial court claiming twenty-nine violations of his constitutional rights. Appellee, the State of Ohio, responded to the application by filing a motion for judgment pursuant to R.C. 2953.21(C). The court, without conducting a hearing, denied appellant's petition for post-conviction relief and filed findings of fact and conclusions of law on January 5, 1995.

Appellant timely filed a notice of appeal with the following assignments of error:
"1. The trial court erred in denying appellant an evidentiary hearing on the claims as raised by his Section 2953.21 petition for post-conviction relief."
"2. When denying this petition under Code Section 2953.21, the trial court erred by failing to consider the record and by adopting the findings of fact and conclusions of law submitted by the State of Ohio. These adopted findings, both unreasonable and inadequate, further violate appellant's rights guaranteed by the fifth and fourteenth amendments to the United States Constitution."
"3. The trial court erred in its application of the doctrine of *res judicata* to the claims for relief raised by appellant."
"4. The trial court erred when it granted the state's motion for summary judgment by failing to adhere to Civil Rule 56 when considering the constitutional violations stated in each claim of this petition for post-conviction relief under Section 2953.21 of the code."
"5. The trial court erred when it denied appellant the opportunity for discovery proceedings that are necessary to support his claims of constitutional violations as set forth in this petition for post-conviction relief under Section 2953.21 of the code."
"6. The trial court erred in denying appellant's claims of ineffective assistance of counsel."
"7. The trial court erred by its 'standardized' dismissal of appellant's Section 2953.21 petition for relief from a capital conviction, denying the appellant due process and equal protection under law."

In the first assignment of error, appellant contends that the trial court erred in denying an evidentiary hearing on the claims he raised in his post-conviction relief petition.

R.C. 2953.21 provides, in relevant part:
"(C) Before granting a hearing, the court shall determine whether there are substantive grounds for relief. In making such a determination, the court shall consider, in addition to the petition and supporting affidavits, all the files and records pertaining to the proceedings against the petitioner, including, but not limited to, the indictment, the court's journal entries, the journalized records of the clerk of the court, and the court reporter's transcript. * * *
*2 "(D) Within ten days after the docketing of the petition, * * * the prosecuting attorney shall respond by answer or motion.* * *
"(E) Unless the petition and the files and records of the case show the petitioner is not entitled to relief, the court shall proceed to a prompt hearing on the issues * * *."



Thus, it is clear that the court is permitted to dispose of a post-conviction relief petition without holding a hearing. As this court stated in *State v. Hill* (June 19, 1995), Trumbull App. No. 94-T-5116, unreported, at 4:
> "[I]f the court can resolve the averments contained within the petitioner's request based upon the material contained within the petition, and the files and records, it may properly dismiss the matter without conducting a hearing. *State v. Milanovich* (1975), 42 Ohio St.2d 46."

Additionally, the Supreme Court of Ohio has held that the doctrine of *res judicata* is applicable in post-conviction relief proceedings. In *State v. Perry* (1967), 10 Ohio St.2d 175, the court held:
> "Under the doctrine of *res judicata*, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was *raised or could have been raised by the defendant at the trial*, which resulted in that judgment of conviction, *or on an appeal* from that judgment. *Id.* at paragraph nine of the syllabus. (Emphasis *sic*.)

In the case *sub judice*, the first claim made by appellant relates to ineffective assistance of trial counsel. Appellant asserts that his trial counsel were also his appellate counsel and that they made numerous errors in his representation depriving him of a fair trial. However, a review of the court record reveals that appellant had three attorneys from the public defender's office represent him at trial, and four attorneys from the public defender's office represent him on appeal. Of his three trial attorneys, only one was a member of his appellate counsel team. Thus, appellant's three different appellate attorneys could have raised the ineffectiveness of his trial counsel on direct appeal.

The Supreme Court of Ohio has specifically applied the doctrine of *res judicata* to post-conviction proceedings alleging ineffective assistance of counsel. In *State v. Cole* (1982), 2 Ohio St.3d 112, the court held:
> "Where defendant, represented by new counsel upon direct appeal, fails to raise therein the issue of competent trial counsel and said issue could fairly have been determined without resort to evidence *dehors* the record, *res judicata* is a proper basis for dismissing defendant's petition for postconviction relief. (*State v. Hester*, 45 Ohio St.2d 71 [74 O.O.2d 156], modified.)" *Id.* at the syllabus.

Thus, because appellant was represented by three different attorneys on appeal than at the trial level, any claim of ineffective assistance of counsel had to be brought on direct appeal or it was forever waived. In the present case, appellant failed to bring a claim of ineffective assistance of counsel on direct appeal and is, therefore, barred from bringing one in a post-conviction relief petition by the doctrine of *res judicata*.

*3 Appellant argues that because all of his prior counsel worked for the public defender's office, they were, for all practical purposes, the same attorney and, thus, unable to raise an ineffective assistance of counsel claim on direct appeal. This argument, however, has been specifically rejected by the Supreme Court of Ohio in *State v. Lentz* (1994), 70 Ohio St.3d 527, wherein the court stated:
> "We hold that when a criminal defendant is represented by two different attorneys from the same public defender's office at trial and on direct appeal, *res judicata* bars a claim of ineffective assistance of trial counsel raised for the first time in a petition for postconviction relief when such claim could have been made on direct appeal without resort to evidence beyond the record, unless the defendant proves that an actual conflict of interest enjoined appellate counsel from raising a claim of ineffective assistance of trial counsel on direct appeal." *Id.* at 529.

In the present case, appellant failed to even allege an actual conflict of interest. Accordingly, appellant's claim of ineffective assistance of counsel must fail and the trial court did not err in denying appellant an evidentiary hearing as to this claim.

Next, appellant argues that he presented claims of "system-wide defects" which affected his conviction and sentence and that there were "numerous pretrial errors" in the proceedings. Appellant contends that these claims depend upon factual allegations that could not be determined from the record. Appellant fails, however, to elaborate or offer any argument as to how it was error for the trial court to dismiss these claims without a hearing.

Accordingly, pursuant to App.R. 16(A)(7) and App.R. 12(A)(2), we decline to address these claims as appellant has not supported these portions of his first assignment of error with necessary arguments. As the Supreme Court of Wisconsin so aptly stated in *State v. Waste Management of Wisconsin, Inc.* (Wisc.1978), 261 N.W.2d 147, 151:
> "An appellate court is not a performing bear, required to dance to each and every tune played on an appeal."

Appellant's first assignment of error is without merit.

In the second assignment of error, appellant contends that the trial court erred by failing to consider the record and by adopting the findings of fact and conclusions of law submitted by the State of Ohio.

The Ohio Revised Code imposes certain mandates upon the trial court in considering a post-conviction relief petition. R.C. 2953.21(C) provides, in relevant part:
> " * * * the court shall consider, in addition to the petition and supporting affidavits, all the files and records pertaining to the proceedings against the petitioner, including, but not limited to, the indictment, the court's journal entries, the journalized records of the clerk of the court, and the court reporter's transcript."

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 3106

The trial court, in the case *sub judice,* explicitly stated that in reaching its decision, it considered:

**\*4** "Defendant-Petitioner Charles L. Lorraine's 'Petition to Vacate or Set Aside Judgment and/or Sentence Pursuant to Ohio Revised Code Annotated Section 2953.21' filed on September 30, 1994; Defendant-Petitioner's 'Amendment to Petition to Vacate of [*sic* ] Set Aside Judgment and/or Sentence Pursuant to Ohio Revised Code Annotated Section 2953.21'; *the entire record in Trumbull County Common Pleas Court Case No. 86-CR-182;* the direct appeals in Eleventh District Court of Appeals Case No. 3838 and Supreme Court of Ohio Case No. 90-1927 [reported at 66 Ohio St.3d 414 (1993)]; the state's 'Motion for Judgment Pursuant to R.C. 2953.21(C),' and 'Petitioner's Memorandum in Opposition to Respondent's Motion for Judgment under R.C. 2953.21(C).' " (Emphasis added.)

Thus, it is clear that the trial court complied with its duty under R.C. 2953.21(C) to consider all the files and records pertaining to the proceedings against the petitioner. Appellant has failed to submit any evidence to support his claim to the contrary.

Furthermore, it should be noted that on April 14, 1995, appellant filed a motion in this court to supplement the record with evidence that would allegedly show that the trial court did not have access to the entire record from the original proceedings. On June 14, 1995, this court denied appellant's motion based upon the general rule of law that a reviewing court cannot add matter to the record before it, which was not a part of the trial court's proceedings, and that nothing in appellant's motion indicated that the requested supplemental matter was before the trial court.

Based upon the doctrine of *res judicata,* appellant is barred from raising that issue again at this time.

Next, appellant argues that it was error for the trial court to essentially adopt the state's proposed findings of fact and conclusions of law as its own. By doing so, appellant submits that the court failed in its statutory duty to consider, determine and review the claims made by his petition. Appellant concludes that the trial court's "adopted" findings are inadequate and unreasonable.

In *State v. Sowell* (1991), 73 Ohio App.3d 672, however, the First District Court of Appeals determined that the trial court's adoption of the state's findings of fact and conclusions of law does not, by itself, deprive the petitioner of a meaningful review of his petition for post-conviction relief. *Id.* at 676. See, also, *State v. Powell* (1993), 90 Ohio App.3d 260, 263, *State v. Murphy* (May 12, 1995), Marion App. No. 9-94-52, unreported. We agree. Without showing that the trial court failed to comply with its statutory duty pursuant to R.C. 2953.21(C), appellant has failed to show that the trial court acted inappropriately by merely agreeing with the state.

Appellant's second assignment of error is without merit.

In the third assignment of error, appellant asserts that the trial court erred in its application of *res judicata* to the claims for relief he raised in his post-conviction relief petition.

**\*5** The issue of the application of *res judicata* to a petition for post-conviction relief was addressed in the analysis of appellant's first assignment of error, however, and will not be repeated here. The trial court did not err in its application of *res judicata.*

Appellant's third assignment of error is without merit.

In the fourth assignment of error, appellant maintains that the trial court erred when it granted the state's motion for summary judgment by failing to adhere to Civ.R. 56. Appellant argues that since the state's motion for judgment pursuant to R.C. 2953.21(C) "fundamentally asked for 'judgment as a matter of law,' " the motion should have been considered as a motion for summary judgment pursuant to Civ.R. 56. Thus, appellant asserts that the state needed to demonstrate in its motion that there were no genuine issues of material fact. Appellant states, in his brief:

"The state does not avoid the prescription [*sic* ] of *Civil Rule 56* by simply calling its pleading 'a motion for judgment.' Either the state promotes dismissal for facial insufficiency under Civ. Rule 12(B) or it claims there are no genuine issues of fact debatable by a reasonable mind under Civil Rule 56. The state cannot, now, assert that the motion claims both premises when the motion actually asserts neither."

While appellant is correct that the state's motion was neither a Civ.R. 12(B) nor a Civ.R. 56 motion, it is clear that the motion was properly made pursuant to R.C. 2953.21. As this court previously held in *Hill, supra,*

"R.C. 2953.21(D) permits the appellee to respond by either '*answer or motion.*' It does not specify that the motion be one for summary judgment. Indeed, the language employed clearly permits a pre-answer motion such as a motion to dismiss. Therefore, the court was free to consider appellee's motion." *Id.* at 13. (Emphasis *sic.*)

A review of the trial court's judgment dismissing appellant's post-conviction relief petition reveals that the court properly reviewed the material before it and granted the state's motion for judgment only after it complied with the mandates of R.C. 2953.21(C).

Appellant's fourth assignment of error is without merit.



DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 3107

In the fifth assignment of error, appellant contends that the trial court erred when it denied him the opportunity for discovery. We disagree.

In *State v. Smith* (1986), 30 Ohio App.3d 138, the Ninth District Court of Appeals held that R.C. 2953.21 does not permit the use of interrogatories in determining whether a hearing is warranted in a post-conviction proceeding. *Id.* at 140. Instead, the burden is on the petitioner to submit evidentiary documents containing sufficient operative facts to demonstrate his claim and to merit a hearing. It is well established that the power to conduct and compel discovery is not included within the trial court's statutorily-defined authority. *State v. Lott* (Nov. 3, 1994), Cuyahoga App. Nos. 66388, 66389, 66390, unreported; *State v. Zuern* (Dec. 4, 1991), Hamilton App. Nos. C-900481, C-910229, unreported; *State v. Robison* (June 19, 1989), Pickaway App. No. 88 CA 15, unreported.

*6 Thus, since the underlying petition was dismissed without a hearing, appellant was not entitled to conduct discovery.

Appellant's fifth assignment of error is without merit.

In the sixth assignment of error, appellant submits that the trial court erred when it denied his claims of ineffective assistance of counsel.

For the reasons set forth in our analysis of appellant's first assignment of error, which will not be repeated here, the trial court did not err in denying appellant's claims of ineffective assistance of counsel.

Appellant's sixth assignment of error is without merit.

In the seventh assignment of error, appellant contends that the trial court erred by its "standardized" dismissal of his petition of post-conviction relief.

Specifically, appellant claims that the trial court used what was essentially the same "standardized" judgment entry dismissing his petition as the one the court used in dismissing the post-conviction relief petition in *State v. Hill*, Trumbull County Case No. 85 CR 317, affirmed by this court in *Hill, supra*. Appellant also argues that the judgment entry was insufficient as it offered no substantive explanation for the court's dismissal.

Regarding appellant's assertion that the trial court's judgment entry was the same as the one used in *Hill*, we are unable to compare the trial court's judgment entry in *Hill* with the one used by the trial court in this case as the former is not part of the record before us. Thus, since appellant has failed to adequately support this claim, it is without merit. Additionally, it should be noted that there is no prohibition against using similar judgment entries in multiple cases if the same law is applicable to various fact scenarios. If separate petitions for post-conviction relief are without merit because of the application of the doctrine of *res judicata*, for example, the judgment entries dismissing the petitions are bound to be similar.

Regarding appellant's claim that the trial court's judgment entry lacked substantive analysis, our review of the fifty-one page entry indicates otherwise. It is clear that the trial court individually addressed each of the twenty-nine claims for relief submitted by appellant. The fact that none of the claims warranted a hearing as they were either barred by the doctrine of *res judicata* or appellant simply failed to set forth substantive grounds for relief does not equate to error on the part of the trial court to fulfill its statutory obligation.

Appellant's seventh assignment of error is without merit.

The judgment of the trial court is affirmed.

CHRISTLEY, P.J. and DONOFRIO, J., concur.

JUDGMENT ENTRY

For the reasons stated in the opinion of this Court, appellant's assignments of error are without merit; and it is the judgment and order of this Court that the judgment of the trial court is affirmed.

Not Reported in N.E.2d, 1996 WL 207676 (Ohio App. 11 Dist.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 3108

Not Reported in N.E.2d
Not Reported in N.E.2d, 1999 WL 394938 (Ohio App. 9 Dist.)
**(Cite as: 1999 WL 394938 (Ohio App. 9 Dist.))**

Only the Westlaw citation is currently available.

CHECK OHIO SUPREME COURT RULES FOR REPORTING OF OPINIONS AND WEIGHT OF LEGAL AUTHORITY.

Court of Appeals of Ohio, Ninth District, Summit County.
STATE of Ohio, Appellee,
v.
Clifton WHITE, III, Appellant.
**No. 19040.**

June 16, 1999.

Appeal from Judgment Entered in the Court of Common Pleas, County Of Summit, Ohio, Case No. CR 96 01 0059.

Cynthia A. Yost, Assistant State Public Defender, Office of the Ohio Public Defender, Columbus, OH, for Appellant.

Michael T. Callahan, Prosecuting Attorney, and Paul Michael Maric, Assistant Prosecuting Attorney, Akron, OH, for Appellee.

DECISION AND JOURNAL ENTRY

CACIOPPO. [FN*]

    FN* (Cacioppo, J., retired Judge of the Ninth District Court of Appeals, sitting by assignment pursuant to Section 6(C), Article IV, Constitution.)

**\*1** Appellant-defendant Clifton White, III, appeals from the denial of his petition for postconviction relief. We affirm.

I.

White began dating Heather Kawczk in 1992. In 1995, White and Heather moved into an apartment together. Shortly thereafter, the couple began arguing and White became possessive and violent.

During this time, Heather worked at a Kentucky Fried Chicken restaurant with Michael Thorpe and his mother Deborah Thorpe. As Heather's relationship with White deteriorated, she began to develop a relationship with Michael. In December 1995, without informing White, Heather moved into the Thorpe home with Michael and his parents.

In an attempt to find Heather, White confronted Heather's parents, Dennis and Julie Schrey. Upon learning that Heather was living with Michael Thorpe, White began to harass Heather at work.

Heather eventually agreed to have lunch with White. However, instead of taking Heather to lunch, White took Heather back to his apartment where he showed Heather a shotgun and threatened to commit suicide. Heather calmed White down and returned to work.

A few days later, White overdosed on medication and was taken to the hospital. When Heather went to visit him in the hospital, White indicated that he had overdosed as an attempt to win Heather back. Nevertheless, Heather refused to renew their relationship.

On December 24, 1995, White called Heather and asked her to come over to the apartment to collect some of the personal items that she had left behind. Heather refused to go.

That evening, White called Julie Schrey and Deborah Thorpe. After receiving the phone calls from White, Julie picked up Deborah and they drove over to White's apartment intending to collect the rest of Heather's personal items. After arriving at White's apartment, Deborah called Heather at work. Heather still refused to come to the apartment.

While Deborah and Julie were attempting to gather Heather's personal items, White produced a shotgun and shot Julie Schrey in the neck. White then turned to Deborah. White fired the shotgun once at Deborah and missed. As Deborah attempted to escape through the front door of the apartment, White fired the gun at Deborah a second time, striking her in the back. Julie and Deborah both died from their wounds before they were discovered.

After shooting Deborah and Julie, White took his shotgun and drove to the Kentucky Fried Chicken restaurant where



DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 3109

Heather was working. White entered the restaurant unarmed and told Heather that he had some of her belongings outside in his car and that she should come out and get them. When Heather refused to go, White went back outside to his car and got the shotgun. White came back into the restaurant with the shotgun and pointed it at Heather. Michael was also working at the restaurant that night. Michael stepped in front of White and told him to leave. White then pointed the shotgun at Michael and shot Michael in the head. Michael survived, but required brain surgery and was in a coma for three months. Michael is now missing a portion of his brain and is deaf in one ear.

*2 After shooting Michael, White exited the restaurant, dropped the shotgun on the sidewalk outside, and went to a friend's house. White told the friend that he had just shot three people and called one of his girlfriends to take him to the police station. At the police station, White turned himself in and gave a full confession.

On September 12, 1996, White was found guilty of murder for the killing of Julie Schrey, guilty of attempted murder for the shooting of Michael Thorpe, and guilty of aggravated murder for the killing of Deborah Thorpe. In relation to the aggravated murder of Deborah Thorpe, White was also found guilty of two death penalty specifications: (1) "[t]he offense was committed for the purpose of escaping detection, apprehension, trial, or punishment for another offense committed by the offender," R.C. 2929.04(A)(3), and (2) "the offense at bar was part of a course of conduct involving the purposeful killing of or attempt to kill two or more persons by the offender," R.C. 2929.04(A)(5). As such, White was subject to the death penalty. R.C. 2929.02(A); R.C. 2929.03(C)(2)(a)(i).

After hearing evidence in mitigation of the imposition of the death penalty pursuant to R.C.2929.03(D)(1), the jury found that the aggravating circumstances outweighed the mitigating factors and recommended that White be sentenced to death. The trial court agreed with the jury's recommendation. On October 31, 1996, White was sentenced to death for the aggravated murder of Deborah Thorpe.

On December 2, 1996, White filed a direct appeal to the Supreme Court of Ohio, which affirmed White's conviction and sentence. *State v. White* (1999), 85 Ohio St.3d 433, 709 N.E.2d 140.

On October 16, 1997, White filed the petition for postconviction relief that is the subject of this appeal and an accompanying motion for discovery. White's request for discovery was denied on November 20, 1997, and his petition for postconviction relief was denied without a hearing on March 20, 1998. White timely appeals.

White's five assignments of error have been rearranged for ease of discussion.

II.

White's fifth assignment of error states:
    THE TRIAL COURT ERRED IN DENYING PETITIONER'S MOTIONS AND DISMISSING HIS POST CONVICTION PETITION WITHOUT FIRST GRANTING DISCOVERY OR A HEARING.

In *State v. Benner* (Aug. 27, 1997), Summit App. No. 18094, unreported, we noted that this Court has repeatedly held that there is no right to conduct discovery in postconviction relief proceedings. See, also, *State v. Fox* (May 16, 1997), Wood App. No. WD-96-031, unreported. Once again, there is no right to discovery in postconviction relief proceedings. Therefore, the trial court's denial of the motion for discovery is affirmed.

In regard to the trial court's failure to hold an evidentiary hearing prior to denying White's petition for postconviction relief, R.C. 2953.21 states:
    *3 (C) * * * Before granting a hearing on a petition filed under division (A) of this section, the court shall determine whether there are substantive grounds for relief. In making such a determination, the court shall consider, in addition to the petition, the supporting affidavits, and the documentary evidence, all the files and records pertaining to the proceedings against the petitioner * * *. * * *
* * *
    (E) Unless the petition and the files and records of the case show the petitioner is not entitled to relief, the court shall proceed to a prompt hearing on the issues * * *.
Because this statute does not expressly mandate a hearing for every postconviction petition, a hearing is not automatically required. See *State v. Jackson* (1980), 64 Ohio St.2d 107, 110, 413 N.E.2d 819. "Thus, the pivotal concern is whether there are substantive grounds for relief which would warrant a hearing based upon the petition, the supporting affidavit and the files and records * * *." *Id.* Because White's other assignments of error discuss whether his petition established substantive grounds for relief, we will address the necessity of an evidentiary hearing in conjunction with his other assignments of error.

III.

White's fourth assignment of error states:
    THE TRIAL COURT ERRED IN DENYING MR. WHITE'S FIFTH GROUND FOR RELIEF AS HE WAS NOT AFFORDED AN ADEQUATE CORRECTIVE PROCESS IN HIS STATE COLLATERAL REVIEW PROCEEDINGS * * *.

Under this assignment of error, White argues: "The State mischaracterize [*sic* ] Mr. White's Fifth Ground for Relief as a complaint pertaining to the page limitations imposed by Crim R. 35 * * *. Appellant's assertion of his due process rights are much broader than an issue of page limitations and should be addressed by this Court." However, in White's



DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 3110

fifth ground for relief in his petition for postconviction relief, White merely challenges the page limits imposed by Crim.R. 35:

> The judgment and sentence against Clifton White are void or voidable because the recent amendments to the Ohio post-conviction process violate his constitutional rights to procedural due process which the Ohio and United States Constitutions afford him.
>
> The amendments by the Ohio Legislature to Rule 35 of Criminal Procedure [sic ], which became effective on July 1, 1997, curtail the post-conviction process, rendering it practically devoid of any meaning. * * * Rule 35(A) now demands that each ground for relief contained in a post-conviction petition cannot exceed three pages. The Staff Notes to the amendment state that the purpose of this change is to "introduce some uniformity in post-conviction relief proceedings and aid in the administration of justice." * * *
> * * *
>
> * * * Because the three-page limit does not afford sufficient due process to capital defendants, the amendments are unconstitutional.

Beyond the page limit imposed by Crim.R. 35, White fails to identify any other "amendment" to the postconviction relief process that allegedly violates his right to due process. As such, this Court will only address the page limit issue that was properly raised in White's petition.

*4 In discussing the constitutionality of page limitations for appellate briefs, the Ohio Supreme Court has noted that "[c]ourts have inherent power to supervise the proceedings before them to ensure the orderly and efficient exercise of jurisdiction. Page limits are a valid exercise of that power." (Citations omitted.) Ziegler v. Wendel Poultry Serv., Inc. (1993), 67 Ohio St.3d 10, 22, 615 N.E.2d 1022, overruled on other grounds Fidelholtz v. Peller (1998), 81 Ohio St.3d 197, 203, 690 N.E.2d 502. In Ziegler, the court of appeals limited the appellant's brief to forty pages. The Ziegler court found that limitation to be constitutional:

> A limit of forty pages was reasonable and afforded [the appellant] ample opportunity to concisely present all of its arguments. The fact that the appellate court required [the appellant] to be succinct does not amount to a denial of due process.

Id. at 23, 615 N.E.2d 1022. The Ziegler court also noted that "[e]ven in capital cases, we have upheld page limitations, finding that they force counsel to winnow out weaker arguments and focus on key issues." Id. at 22, 615 N.E.2d 1022, citing State v. Davis (1991), 62 Ohio St.3d 326, 352, 581 N.E.2d 1362, and State v. Bonnell (1991), 61 Ohio St.3d 179, 186, 573 N.E.2d 1082.

The three page limit provided by Crim.R. 35 is reasonable and afforded White ample opportunity to concisely present each of his grounds for relief. Merely requiring a petitioner to be succinct does not amount to a denial of due process. Ziegler, supra, at 23, 615 N.E.2d 1022. Moreover, Crim.R. 35 does not place any restriction on the number of grounds for relief that can be alleged. Thus, counsel is not actually forced to "winnow out" any ground for relief. Also, Crim.R. 35 permits a trial court to extend the page limit. White points to nothing in the record where the trial court rejected a request for additional pages. Additionally, because the alleged unconstitutionality of the Crim.R. 35 page limit is unrelated to anything that occurred at trial, it is not cognizable in an action for postconviction relief. See State v. Powell (1993), 90 Ohio App.3d 260, 271-272, 629 N.E.2d 13; Fox, supra.

White's fourth assignment of error is not well taken.

### IV.

White's second and third assignments of error state:

> THE TRIAL COURT ERRED IN DENYING THE SIXTH GROUND FOR RELIEF WHEN APPELLANT SUPPORTED THE CLAIM WITH EVIDENCE DEHORS THE RECORD THAT PRESENTED SUFFICIENT OPERATIVE FACTS THAT THE DEATH PENALTY IS DISPROPORTIONATELY METED OUT IN SUMMIT COUNTY TO THOSE DEFENDANTS WHO ARE ACCUSED OF HOMICIDES OF CAUCASIANS * * *.
> *5 THE TRIAL COURT ERRED IN FAILING TO GRANT RELIEF OR DISCOVERY AND AN EVIDENTIARY HEARING ON THE SEVENTH GROUND FOR RELIEF THAT THE USE OF ELECTROCUTION AS A METHOD OF EXECUTION VIOLATES THE EIGHTH AMENDMENT'S GAURANTEE AGAINST CRUEL AND UNUSUAL PUNISHMENT.

It is well established in Ohio that the doctrine of res judicata applies to postconviction relief proceedings:

> 8. The Supreme Court of Ohio will apply the doctrine of res judicata in determining whether postconviction relief should be given * * *.
>
> 9. Under the doctrine of res judicata, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial, which resulted in that judgment of conviction, or on an appeal from that judgment.

(Emphasis sic.) State v. Perry (1967), 10 Ohio St.2d 175, 226 N.E.2d 104, paragraphs eight and nine of the syllabus. It is equally well established that the bar of res judicata applies to constitutional issues:

> Constitutional issues cannot be considered in postconviction relief proceedings * * * where they have already been or could have been fully litigated by the prisoner while represented by counsel, either before his judgment of conviction or on direct appeal from that judgment * * *.

Id. at paragraph seven of the syllabus. In that regard, the Supreme Court of Ohio has noted that constitutional challenges to the death penalty are properly raised before a judgment of conviction:

> Generally, the law in Ohio is that the failure to raise the issue of a statute's constitutionality at the trial level



DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 3111

constitutes a waiver of such issue. The acceptable procedure is to raise any constitutional challenges to the death penalty statute by way of specific motions, with the opportunity for the state to respond and the trial court to rule on said motions.
(Citation omitted.) *State v. Zuern* (1987), 32 Ohio St.3d 56, 63, 512 N.E.2d 585.

In the instant case, White raised these same constitutional arguments in a fifty-five page motion prior to trial. Because White actually raised his constitutional challenges to the death penalty prior to his judgment of conviction, he is barred by the doctrine of *res judicata* from raising these issues again in a petition for postconviction relief. Therefore, White's second and third assignments of error are not well taken.

V.

White's first assignment of error states:
   THE TRIAL COURT ERRED IN DISMISSING APPELLANT'S FIRST, SECOND, THIRD AND FOURTH GROUNDS FOR RELIEF REGARDING INEFFECTIVE ASSISTANCE OF COUNSEL WITHOUT FIRST GRANTING DISCOVERY AND AN EVIDENTIARY HEARING * * *.

As previously discussed, White was not entitled to any discovery in support of his petition. *Benner, supra.* Therefore, that portion of White's first assignment of error is not well taken.

*6 In regard to the trial court's failure to hold an evidentiary hearing on these claims:
   Before a hearing is granted, the petitioner bears the initial burden in a post-conviction proceeding to submit evidentiary documents containing sufficient operative facts to demonstrate the lack of competent counsel and *also* that the defense was prejudiced by counsel's ineffectiveness.
(Emphasis sic.) *Jackson, supra,* at 111, 413 N.E.2d 819. When a defendant alleges that his counsel was ineffective, he must prove that counsel's performance was deficient and that the deficiency was prejudicial to the defense. *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674, 693. "[T]he defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688, 80 L.Ed.2d at 693. "[T]he performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." *Id.* at 688, 80 L.Ed.2d at 694. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689, 80 L.Ed.2d at 694.

White's first ground for relief claimed that his trial counsel was ineffective for failing to present evidence of White's alleged brain damage and central nervous system dysfunction, for failing to challenge the allegedly faulty testing performed by the prosecution's expert, and for detrimentally relying on an unqualified defense expert. In support of this ground for relief, White submitted the affidavit of a psychologist named Haskins, copies of sixteen psychological journal articles, records from the Children Services Board concerning White's upbringing, records from the Lima State Hospital concerning White's father, an affidavit from White's mother, affidavits from three of White's siblings, and a copy of a law review article.

Initially, none of this evidence undermines the qualifications or conclusions of White's expert witness. At best, the affidavit of Haskins indicates some professional disagreement over the extent of White's mental problems. Nevertheless, we see nothing objectively unreasonable about an attorney's reliance on the conclusions of his own qualified expert witness. Moreover, "[a] postconviction petition does not show ineffective assistance merely because it presents a new expert opinion that is different from the theory used at trial." *State v. Combs* (1994), 100 Ohio App.3d 90, 103, 652 N.E.2d 205. Therefore, the documentary evidence submitted with White's first ground for relief failed to contain sufficient operative facts to demonstrate the lack of competent counsel.

White's second ground for relief claimed that trial counsel was ineffective for failing to discover and present evidence of White's turbulent upbringing, including allegations of abuse and neglect. In support of this ground for relief, White submitted the Children Services Board records, a memorandum from the Child Welfare office concerning White's mother, the affidavits from White's family members, and two law review articles.

*7 "It is quite clear * * * that the duty of defense counsel to investigate his client's background for mitigating factors is an indispensable component of the constitutional requirement that a criminal defendant--and particularly one on trial for his life--be afforded effective representation and assistance from his lawyer." *State v. Johnson* (1986), 24 Ohio St.3d 87, 90, 494 N.E.2d 1061. As such, White's trial counsel had a duty to make a reasonable investigation. See *id.* at 89, 494 N.E.2d 1061.

In the instant case, White's trial counsel went far beyond the "maladroit presentation" that was declared ineffective in *Johnson.* In *Johnson,* the Supreme Court vacated a death sentence based in part on the fact that "[n]o mitigating evidence of any kind was offered." *Id.* In the instant case, White's trial counsel performed extensive discovery and presented volumes of mitigating evidence. As such, trial counsel's actions were more than sufficient to discharge his duty to conduct a reasonable investigation. See *State v. Bradley* (1989), 42 Ohio St.3d 136, 144, 538 N.E.2d 373 (distinguishing *Johnson, supra,* by finding that the duty to investigate was satisfied solely by trial counsel's use of expert reports and expert testimony regarding the defendant's mental state in mitigation).

The evidence that White now claims should have been discovered and presented by his trial counsel does not

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 3112

undermine our conclusion. The affidavits from White's family members do not provide any new or additional evidence. White's trial counsel obtained the testimony of White's mother, sister Erica, and cousin Valinda Hall concerning White's childhood. This testimony covered in detail all of the issues that are set forth in the affidavits attached to White's petition for postconviction relief. As such, trial counsel did present this evidence to the jury. Trial counsel's choice of witnesses with which to present this evidence is a trial tactic. See *State v. Hunt* (1984), 20 Ohio App.3d 310, 312, 486 N.E.2d 108. The use of debatable trial tactics does not amount to ineffective assistance. *State v. Clayton* (1980), 62 Ohio St.2d 45, 49, 402 N.E.2d 1189.

Similarly, the welfare records concerning the conditions of the White household depicted the same abuse and neglect that was set forth at trial by the testimony of White's relatives and White's expert witness. Although the welfare records depict the abuse and neglect in greater detail than the trial testimony, trial counsel's failure to discover and utilize the actual welfare records to present this evidence did not render the investigation and presentation unreasonable. Therefore, the documentary evidence submitted in support of White's second ground for relief failed to contain sufficient operative facts to demonstrate the lack of competent counsel.

*8 White's third ground for relief claimed that trial counsel was ineffective because co-counsel failed to participate in any meaningful way. This ground for relief is properly barred by *res judicata*. White is represented by different counsel on direct appeal and co-counsel's alleged failure to participate should appear on the face of the record.

White's fourth ground for relief referred to the errors alleged in the previous three grounds for relief and claimed that their cumulative impact rendered counsel's assistance ineffective. Having addressed the previous three grounds for relief and found them wanting, we also find that the documentary evidence submitted with White's fourth ground for relief failed to contain sufficient operative facts to demonstrate the lack of competent counsel.

Because the documentary evidence submitted with White's first, second, and fourth grounds for relief all failed to contain sufficient operative facts to demonstrate the lack of competent counsel, and because White's third ground for relief was barred by *res judicata*, White was not entitled to a hearing on any of his first four grounds for relief. As such, White's first assignment of error is not well taken.

*Judgment affirmed.*

The Court finds that there were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the County of Summit, Court of Common Pleas, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).

Costs taxed to appellant.

Exceptions.

SLABY, P.J., and MAHONEY, J., [FN**] concur.

      FN** (Mahoney, J., retired Judge of the Ninth District Court of Appeals, sitting by assignment pursuant to Section 6(C), Article IV, Constitution.)

Not Reported in N.E.2d, 1999 WL 394938 (Ohio App. 9 Dist.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 3113



Not Reported in N.E.2d
Not Reported in N.E.2d, 1998 WL 332940 (Ohio App. 9 Dist.)
**(Cite as: 1998 WL 332940 (Ohio App. 9 Dist.))**

Only the Westlaw citation is currently available.

NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION IN THE PERMANENT LAW REPORTS. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL.

Court of Appeals of Ohio, Ninth District, Lorain County.
STATE Of Ohio, Appellee,
v.
Daniel WILSON, Appellant.
**C.A. NO. 97CA006683**

June 24, 1998

APPEAL FROM JUDGMENT ENTERED IN THE COMMON PLEAS COURT COUNTY OF LORAIN, OHIO, CASE NO. 91CR040383.

DAVID H. BODIKER, Ohio Public Defender, and A. RUBEN LOPEZ, Assistant State Public Defender, Ohio Public Defender Commission, 8 East Long Street, 11th Floor, Columbus, Ohio 43215-2998, for Appellant.

GREGORY A. WHITE, Prosecuting Attorney, and JONATHAN E. ROSENBAUM, Assistant Prosecuting Attorney, 226 Middle Avenue, 4th Floor, Elyria, Ohio 44035, for Appellee.

*DECISION AND JOURNAL ENTRY*

SLABY

*1 Defendant-appellant, Daniel Wilson, appeals from the Lorain County Court of Common Pleas' denial of his petition for postconviction relief. We affirm.

During the late afternoon hours of May 3, 1991, Defendant drank screwdrivers at the Empire Tavern in Elyria. He left the tavern and visited his girlfriend. His girlfriend terminated their relationship during Defendant's visit. Later that evening, Defendant returned to the tavern and met Ms. Carol Lutz. In the early morning hours of May 4, 1991, Defendant and Ms. Lutz left the tavern together and drove around in Ms. Lutz's car. Defendant proceeded to lock Ms. Lutz in the trunk of the car, to puncture the gas tank, and to light the car on fire. As a result, Ms. Lutz burned to death. A mother and daughter discovered Ms. Lutz's burning car at approximately 1:30 p.m. on May 4, 1991. A paramedic also saw the burning car, stopped, and tried to put out the fire. Members of the Elyria Fire Department discovered the remains of a person in the trunk, and dental records revealed that the remains were those of Ms. Lutz.

On June 4, 1991, a Lorain County Grand Jury indicted Defendant for three counts of aggravated murder in violation of R.C. 2903.01[ (1) Count I, aggravated murder by prior calculation and design; (2) Count II, felony-murder (kidnaping); (3) amended Count III, felony-murder (aggravated arson) ]. Each count contained three death specifications: (1) murder to escape "detention, apprehension, trial, or punishment" for another crime, R.C. 2929.04 (A)(3); (2) murder during kidnaping, R.C. 2929.04(A)(7), and (3) murder during aggravated arson, R.C. 2929.04(A)(7). The grand jury also indicted Defendant for kidnaping in violation of R.C. 2905.01(B)(1) and for aggravated arson in violation of R.C. 2909.02(A)(1). On June 12, 1991, Defendant entered a plea of not guilty. The jury trial took place from March 23 to March 27, 1992. The jury found Defendant guilty on all counts.

At the penalty phase of the trial, the State elected to proceed on the aggravated murder count of the indictment with the specification that Defendant committed the murder "to escape detection, apprehension, trial, or punishment for the offense of kidnaping." The jury determined that the aggravating circumstance contained in the specification outweighed the mitigating factors presented by Defendant beyond a reasonable doubt and recommended that Defendant be sentenced to death. The trial court conducted its independent review and sentenced Defendant to death on his conviction for aggravated murder, to ten to twenty-five years in prison for his conviction of kidnaping, and to ten to twenty-five years in prison for his conviction for aggravated arson. The trial court ordered that these sentences run consecutively with one another.

This Court and the Supreme Court of Ohio affirmed Defendant's convictions and death sentence in Defendant's direct appeal. See *State v. Wilson* (Oct. 12, 1994), Lorain App. No. 92CA005396, unreported; *State v. Wilson* (1996), 74 Ohio St.3d 381, 659 N.E.2d 292.

*2 On September 20, 1996, Defendant filed a petition for postconviction relief with the trial court. On January 2,

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 3114

1997, the trial court denied Defendant's petition and found that each of the arguments raised by the Defendant in his petition and the amendment thereto were raised or could have been raised on direct appeal and therefore were barred by *res judicata.*

Defendant timely appeals the trial court's judgment and raises twelve assignments of error.

## ASSIGNMENT OR ERROR I

The trial court erred when it denied [Defendant's] petition for post-conviction relief without issuing findings of fact.

In his first assignment of error, Defendant contends that the trial court erred by denying his petition without making findings of fact as required by R.C. 2953.21(C) and (G). We agree with Defendant that the trial court must issue findings of fact. However, based upon a review of the trial court's judgment entry, we find that the trial court did issue findings of fact and conclusions of law.

When a trial court denies a petition for postconviction relief, it is required to provide findings of fact and conclusions of law. *State v. Lester* (1975), 41 Ohio St.2d 51, 322 N.E.2d 656, paragraph two of the syllabus. These findings and conclusions shall "apprise [the] petitioner of the grounds for the judgment of the trial court and [ ] enable the appellate courts to properly determine appeals in such a cause." *State ex rel. Carrion v. Harris* (1988), 40 Ohio St.3d 19, 530 N.E.2d 1330, quoting *Jones v. State* (1966), 8 Ohio St.2d 21, 22, 222 N.E.2d 313.

The trial court's order stated that all of Defendant's claims were barred by the doctrine of *res judicata.* The trial court also included findings of fact in this order that provided such information as the fact that Defendant was represented by different counsel in his direct appeal than at his trial. We find that the trial court's findings apprised the Defendant and this Court of the grounds for its decision. Accordingly, Defendant's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

The trial court erred when it dismissed [Defendant's] fourth claim without an evidentiary hearing that included discovery in violation of the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution; and Ohio Rev.Code § 2929.03.

In his second assignment of error, Defendant avers that the trial court erred by denying his petition for postconviction relief because juror Alan Siliac did not consider mitigating factors when he voted for the sentence of death. Defendant further alleges that the trial court improperly defined "mitigating factors."

R.C. 2953.21(A)(1) provides that postconviction relief is available to
Any person who has been convicted of a criminal offense * * * who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief.
*3 Nonetheless, "[u]nder the doctrine of *res judicata,* a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding, except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial, which resulted in that judgment of conviction, or on an appeal from that judgment." *State v. Szefcyk* (1996), 77 Ohio St.3d 93, 671 N.E.2d 233, syllabus, citing *State v. Perry* (1967), 10 Ohio St.2d 175, 226 N.E.2d 104, paragraph nine of the syllabus. A defendant can overcome the bar of *res judicata* through the submission of evidence *dehors* the record. *State v. Combs* (1994), 100 Ohio App.3d 90, 97, 652 N.E.2d 205. In such an effort, a defendant must offer evidence demonstrating that he could not have advanced the claims on appeal based upon the information contained in the original trial record. *Id.* See, also, *State v. Greer* (Oct. 28, 1992), Summit App. No. 15217, unreported at 12-13.

Defendant contends that his postconviction Exhibit I, the affidavit of juror Alan Siliac, demonstrates that this juror did not consider mitigating factors in voting for the sentence of death. Defendant avers that the trial court erred because it did not explain to juror Siliac the definition of "mitigating factors" during the trial. In his affidavit, Alan Siliac states that he was interviewed by Matt Franklin and A. Ruben Lopez of the Ohio Public Defender Association on August 6, 1996. He admits that he told Mr. Franklin that "I didn't consider the mitigation factors during the mitigation hearing and to this day, I still don't understand what mitigation means."

Evid.R. 606(B) states:
Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith. * * * His affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying will not be received for these purposes.
The aliunde doctrine provides:
the verdict of a jury may not be impeached by the testimony or affidavits of a member of that jury unless there is evidence aliunde impeaching the verdict * * * [and], thus, before a juror may testify as to his own verdict, a foundation for that testimony must be acquired by the court, other than by testimony volunteered by the jurors themselves.
*State v. Mills* (Mar. 15, 1995), Hamilton App. No. C-930817, unreported, 1995 Ohio App. LEXIS 910, at *9, quoting



DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 3115

_State v. Kehn_ (1977), 50 Ohio St.2d 11, 18, 361 N.E.2d 1330, certiorari denied (1977), 434 U.S. 858, 98 S.Ct. 180, 54 L.Ed.2d 130. The aliunde doctrine and Evid.R. 606(B) bar the consideration of affidavits of jurors when a record fails to provide "the foundation required to establish prima facie evidence that extraneous prejudicial information was considered by the jury." (Citation omitted.) _State v. Mills, supra,_ at *10.

*4 We will not consider the affidavit of juror Alan Siliac because Defendant has failed to provide evidence that extraneous prejudicial information was considered by the jury. We further acknowledge that Defendant previously asserted as an assignment of error in his direct appeal that the trial court improperly instructed the jury regarding the definition of mitigating factors. _State v. Wilson,_ Lorain App. No. 92CA005396, unreported, at 71. Thus, we find that Defendant is barred by the doctrine of _res judicata_ from asserting this claim in his petition for postconviction relief. Accordingly, Defendant's second assignment of error is overruled.

### ASSIGNMENT OF ERROR III
The trial court erred when it dismissed [Defendant's] eleventh claim without an evidentiary hearing that included discovery in violation of the Sixth, Eighth and Fourteenth Amendments to the United States Constitution; and Ohio R.Crim. P. 24.

In his third assignment of error, Defendant asserts that he was prejudiced by a juror's familiarity with three testifying witnesses and with Defendant. Defendant also argues that he was denied effective assistance of counsel because his attorneys were made aware of this information by his mother, but failed to do anything concerning the matter. We will address Defendant's ineffective assistance of trial counsel claim in the seventh assignment of error. Defendant presents four postconviction exhibits to support his claim that a juror at Defendant's trial was familiar with the Defendant and witnesses. First, Exhibit P is a Juror Questionnaire that indicates that Rick Smith had heard about the death of Carol Lutz. Second, Exhibit L is the affidavit of Defendant's mother, Linda Wilson, that reveals that while she was testifying, one of the jurors possessed a "cocky attitude." In addition, Ms. Wilson shared this information with her sister, Carol Mele. Third, Exhibit M is the affidavit of Defendant's aunt, Carol Mele, that shows that she recognized one of the jurors. Fourth, Exhibit O is the affidavit of Mr. Matt Franklin, a Criminal Investigator at the Ohio Public Defender Commission, who interviewed juror Rick Smith. Mr. Franklin maintains that Rick Smith admitted to knowing three witnesses and the Defendant.

We find that Defendant has failed to demonstrate that he could not have raised the above argument based upon information in the original trial record. Pursuant to the doctrine of _res judicata,_ Defendant is barred from asserting this claim in his petition for postconviction relief. Defendant's third assignment of error is overruled.

### ASSIGNMENT OF ERROR IV
The trial court erred when it dismissed [Defendant's] sixth claim without an evidentiary hearing that included discovery in violation of the Eighth and Fourteenth Amendments to the United States Constitution; and O.R.C. § 2929.04.

In his fourth assignment of error, Defendant purports that the trial court erred by denying his petition because he was prejudiced when the jury misused his mitigating confession as an aggravating circumstance in voting for his sentence of death. We disagree.

*5 Defendant contends that Exhibit K, the affidavit of Professor Michael L. Geis, and Exhibit O, the affidavit of Matt Franklin, Criminal Investigator at the Ohio Public Defender Commission who interviewed seven of the jurors from Defendant's trial, reveal that the jurors treated Defendant's mitigating confession as an aggravating circumstance. In Exhibit K, Professor Geis determined that the State's broad definition of the term "aggravating circumstance" during the closing arguments of the penalty phase was linguistically contrary to the technical definition of such term under R.C. 2929.04(A). Professor Geis concluded that this confused the jurors during the deliberations. In Exhibit O, Mr. Franklin described the result of his interviews with seven jurors that served on Defendant's penalty panel. He discovered that the jurors interviewed used Defendant's mitigating confession as an aggravating circumstance.

We find that Defendant's argument that the trial court defined "aggravating circumstance" too broadly could have been raised in Defendant's direct appeal. Thus, Defendant is barred by the doctrine of _res judicata_ from asserting that contention in his petition for postconviction relief. Defendant's fourth assignment of error is overruled.

### ASSIGNMENT OF ERROR V
The trial court erred when it dismissed [Defendant's] third claim without an evidentiary hearing that included discovery in violation of the Fifth, and Fourteenth Amendments to the United States Constitution.

In Defendant's fifth assignment of error, Defendant suggests that his petition for postconviction relief should have been granted because the Elyria Police relied on promises, threats, and the denial of counsel to coerce Defendant into confessing to aggravated murder. We disagree.

Defendant submitted Exhibit F, Defendant's self-executed affidavit; Exhibit G, the affidavit of another prisoner; and Exhibit H, an Adult Parole Authority Report containing statements made by Detective Riley, as evidence supporting his contention. In Exhibit F, Defendant states that Detective Riley coerced a confession out of him. Exhibit H reveals that Detective Riley said "I never imagined that I would say this but I would volunteer to pull the switch." Detective



Riley also stated that he believed that Defendant was involved in other criminal incidents that he would confess to either at the time of his death or shortly before. This Adult Parole Authority report was created in 1992. In Exhibit G, the affidavit of prisoner Curtis McMillan, McMillan maintains that Detective Riley violated his constitutional and civil rights by coercing a confession out of him and by failing to give him the *Miranda* warning.

We find that Defendant already argued that his confession was coerced in his direct appeal. See *State v. Wilson*, Lorain App. No. 92CA005396, unreported, at 7. Furthermore, even if Defendant had not raised the issue in his direct appeal, the evidence that he now submits to support his claim does not demonstrate that he could not have raised the issue in his direct appeal. Based on the doctrine of *res judicata,* Defendant's fifth assignment of error is overruled.

### ASSIGNMENT OF ERROR VI
**\*6** The trial court erred when it dismissed [Defendant's] seventh claim without an evidentiary hearing that included discovery in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

In his sixth assignment of error, Defendant alleges that the trial court improperly denied his petition for postconviction relief because the waiver form used by the Elyria Police to obtain Defendant's confession was deceptive. Defendant further contends that his counsel's ineffectiveness impeded the introduction of this evidence at trial. We will address Defendant's claim regarding ineffective assistance of counsel in his seventh assignment of error.

Defendant presents Exhibit J, the affidavit of Michael L. Geis, Emeritus Professor of Linguistics at Ohio State University, and Exhibit H, a 1992 Adult Parole Authority Report, as evidence *dehors* the record. Exhibit J is Professor Gies' analysis of the waiver form used by Detective Riley. Professor Geis concluded that the waiver form was deceitful to an "ordinary, average person." Exhibit H allegedly demonstrates that Detective Riley possessed ill-will against Defendant. This exhibit also reveals Detective Riley's belief that Defendant will confess to other crimes at the time of his death or shortly before his death.

We find that Defendant's contention that the waiver form was deceptive could have been raised in his direct appeal based upon the information available in the original trial record. Therefore, Defendant's sixth assignment of error is overruled pursuant to *res judicata.*

### ASSIGNMENT OF ERROR VII
The trial court erred when it dismissed [Defendant's] fifth claim without an evidentiary hearing that included discovery in violation of the Sixth, and Fourteenth Amendments to the United States Constitution.

In his seventh assignment of error, Defendant avers that he received ineffective assistance of trial counsel. Defendant was represented by different counsel at trial than during his direct appeal, and Defendant failed to raise the issue of ineffective assistance of counsel in his direct appeal.

*Res judicata* may be the basis for dismissing an ineffective assistance of trial counsel claim raised in a petition for postconviction relief. *State v. Cole* (1982), 2 Ohio St.3d 112, 443 N.E.2d 169, syllabus, states:
> Where defendant, represented by new counsel upon direct appeal, fails to raise therein the issue of competent trial counsel and said issue could fairly have been determined without resort to evidence *dehors* the record, *res judicata* is a proper basis for dismissing defendant's petition for postconviction relief.

See, also, *State v. Dawson* (Jan. 19, 1994), Summit App. No. 16402, unreported, at 3-4; *State v. Alexander* (June 19, 1991), Lorain App. No. 90CA004923, unreported, at 2-3. New or alternative theories and cumulative evidence to support them have never been recognized as grounds for postconviction relief even if they come from new and/or different experts. *State v. Combs,* 100 Ohio App.3d at 102-07, 652 N.E.2d 205.

**\*7** In several assignments of error, Defendant argues that he has submitted evidence with his petition for postconviction relief to support his ineffective assistance of counsel claim. Furthermore, Defendant offered Exhibit D, a psychological report, and Exhibit S and T, affidavits of two alleged experts who conclude that Defendant's trial counsel was ineffective for failing to develop his alcohol and drug abuse problems more as mitigating factors. In addition, Defendant presented Exhibit E, the affidavit of Defendant's mother, that shows that Defendant's father hit Defendant's mother when she was pregnant with Defendant. The affidavit also reveals that Defendant was placed in the foster home of a woman who was an active alcoholic and that Defendant abused alcohol as a child and a teenager. Exhibit D is a psychological report that purportedly illustrates that the crime resulted from Defendant's abuse of alcohol and drugs.

We find that because Defendant was represented by new counsel in his direct appeal, as noted by the trial court in its findings of fact, Defendant's assertion of ineffective assistance of trial counsel is barred by *res judicata*. Defendant's exhibits fail to demonstrate that Defendant could not have raised an ineffective assistance of counsel claim in his direct appeal. Accordingly, Defendant's seventh assignment of error is overruled.

### ASSIGNMENT OF ERROR VII
The trial court erred when it dismissed [Defendant's] twelfth claim without an evidentiary hearing that included discovery and funds for expert assistance, in violation of the Fifth, Sixth, Eighth, Ninth and Fourteenth Amendments to the United States Constitution.



DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 3117

In his eighth assignment of error, Defendant argues that his petition for postconviction relief should have been granted because he was prejudiced by the substantial and systematic under-representation of minorities in his venire panel. We disagree.

Defendant presents Exhibits Q and R, affidavits of Diane Wiley, president of the National Jury Project, as evidence that Defendant was prejudiced by the make-up of his jury venire panel. Ms. Wiley concluded that in Defendant's trial and in another capital case, Lorain County non-White and Hispanic residents were seriously under-represented in the jury panels. Defendant further contends that counsel's ineffectiveness impeded the introduction of this evidence at trial.

We have already addressed Defendant's ineffective assistance of counsel claim in his seventh assignment of error. We find that because Defendant could have asserted his argument that the jury make-up was underrepresented by non-Whites and Hispanics in his direct appeal, he is barred by the doctrine of *res judicata* from raising it in his petition for postconviction relief. Thus, Defendant's eighth assignment of error is overruled.

## ASSIGNMENT OF ERROR IX
The trial court erred when it dismissed [Defendant's] second claim for relief without an evidentiary hearing that included discovery in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

*8 In his ninth assignment of error, Defendant contends that the trial court should have granted him relief because of the preferential courtroom seating granted to the victim's family and judicial bias. He argues that on at least one occasion, the victim's family entered the courtroom through the judge's chambers. Defendant further avers that his counsel's ineffectiveness impeded the introduction of this evidence at trial.

Defendant submitted Exhibits B and C to support his argument. Exhibit B is the affidavit of Howard Mills, Defendant's grandfather. He attests that he observed the victim's family receiving this treatment. He further maintains that he alerted Defendant's counsel about this activity. Exhibit C is the affidavit of one of Defendant's trial attorneys. He confirms that the victim's family received this treatment and that the courtroom was small.

We have already addressed Defendant's ineffective assistance of counsel claim in his seventh assignment of error. Defendant's grandfather and Defendant's trial attorney observed the actions of the jury during Defendant's trial. Thus, we find that Defendant's contentions regarding the jury receiving preferential treatment and judicial bias could have been raised in his direct appeal. Accordingly, Defendant's ninth assignment of error is overruled on the basis of *res judicata*.

## ASSIGNMENT OF ERROR X
The trial court erred when it dismissed [Defendant's] second claim (paragraph no. 66), tenth claim, and the motion to recuse Judge McGough, without an evidentiary hearing that included discovery in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

In his tenth assignment of error, Defendant contends that the trial court improperly denied his petition for postconviction relief because the Defendant was prejudiced when the trial judge communicated with the jury during the course of the penalty phase deliberations. Defendant also avers that the trial court erred by denying his motion for a recusal.

On February 3, 1997, Defendant filed his notice of appeal and indicated that he was appealing from the trial court's January 3, 1997, entry dismissing his petition for postconviction relief. Defendant did not file a notice of appeal that indicated that he was appealing from the trial court entry denying his motion for a recusal. Pursuant to App.R. 3, Defendant must designate the judgment appealed from in his notice of appeal. Because Defendant did not file a notice of appeal regarding the trial court's denial of his motion for a recusal, we will not address the trial court's denial of that motion.

Defendant submitted two exhibits as evidence *dehors* the record to support his claim that the trial judge was biased and committed an *ex parte* communication. Exhibit N is the affidavit of Defendant's mother, Linda Wilson. Defendant's mother maintains that during the penalty phase deliberations, she saw the trial judge go to talk to three or four "hold out" jurors. She further states that after the trial judge spoke with the jurors, the jurors unanimously decided for the death penalty. Exhibit B is the affidavit of Defendant's grandfather, Howard Mills. He states that he observed the victim's family entering the courtroom through the door leading to the judge's chambers.

*9 Defendant's mother and grandfather observed the conduct of the judge and jury during the Defendant's trial. Thus, we find that the Defendant's contention regarding the existence of an *ex parte* communication is barred by the doctrine of *res judicata* because Defendant could have raised this argument in his direct appeal. Accordingly, Defendant's tenth assignment of error is overruled.

## ASSIGNMENT OF ERROR XI
The trial court erred when it dismissed [Defendant's] eighth and ninth claims without an evidentiary hearing that included discovery in violation of the Sixth and Fourteenth Amendments to the United States Constitution.



DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 3118

In his eleventh assignment of error, Defendant asserts that the trial court erred by denying his petition for postconviction relief because the definition of "purpose" to commit aggravated murder in the guilt-innocence instructions was ambiguous and unconstitutional. Defendant also avers that the definition of the term "causation" in the trial phase jury instructions was unintelligible and unconstitutional. Defendant further contends that he was denied effective assistance of counsel because his trial attorneys failed to object to this error at trial and neglected to hire an expert to advise them about the linguistic validity of the court's charge.

As evidence to support these definition errors, Defendant submitted Exhibit K, the affidavit of Michael L. Geis, Emeritus Professor of Linguistics at Ohio State University. Professor Geis reviewed the guilt-innocence instructions on "purpose." He concluded that the instructions on "purpose" were contradictory and ambiguous. Professor Geis also reviewed the trial instructions on "causation" to commit aggravated murder and concluded that the definition of "causation" was unintelligible because no English dictionary defines "causation" as the foreseeable result of an act. Defendant further contends that he was denied effective assistance of counsel because his trial attorneys failed to object to this error at trial and neglected to hire an expert to advise them about the linguistic validity of the court's charge.

We addressed Defendant's ineffective assistance of counsel claim in his seventh assignment of error. In addition, we find that Defendant's averments that the trial court erred in defining "purpose" and "causation" are barred by the doctrine of *res judicata* because Defendant could have asserted these claims in his direct appeal. Defendant's eleventh assignment of error is overruled.

### ASSIGNMENT OF ERROR XII
The trial court erred when it dismissed [Defendant's] first claim without an evidentiary hearing that included discovery in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

In his twelfth assignment of error, Defendant purports that death by electrocution constitutes cruel and unusual punishment. Defendant presented Exhibit A, the affidavit of Dale A. Baich, who witnessed the execution of a death penalty sentence in July of 1996, to support his averment that death by electrocution constitutes cruel and unusual punishment. We find that this exhibit does not demonstrate that Defendant could not have raised this claim based upon information available from the original trial record. Accordingly, Defendant is barred from raising this issue in his petition for postconviction relief because he could have raised it in his direct appeal. Defendant's twelfth assignment of error is overruled.

*10 Defendant's twelve assignments of error are overruled. The judgment of the trial court is affirmed.

*Judgment affirmed.*

The Court finds that there were reasonable grounds for this appeal.

We order that a special mandate issue out of this court, directing the County of Lorain Common Pleas Court to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).

Costs taxed to appellant.

Exceptions.

QUILLIN, J. and REECE, J., *CONCUR.*

Not Reported in N.E.2d, 1998 WL 332940 (Ohio App. 9 Dist.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



FILED
COURT OF APPEALS

OCT 19 1998

TRUMBULL COUNTY, OHIO
MARGARET R. O'BRIEN, Clerk

COURT OF APPEALS

ELEVENTH DISTRICT

TRUMBULL COUNTY, OHIO

J U D G E S

STATE OF OHIO,

    Plaintiff-Appellee,

- vs -

ANDRE R. WILLIAMS,

    Defendant-Appellant.

HON. ROBERT A. NADER, P.J.,
HON. WILLIAM M. O'NEILL, J.,
HON. EDWARD J. MAHONEY, J.,
Ret., Ninth Appellate District,
sitting by assignment.

CASE NO. 97-T-0153

O P I N I O N

CHARACTER OF PROCEEDINGS:

Civil Appeal from the
Court of Common Pleas
Case No. 88 CR 365

JUDGMENT: Affirmed.

DENNIS WATKINS
TRUMBULL COUNTY PROSECUTOR

LUWAYNE ANNOS
ASSISTANT PROSECUTOR
Administration Bldg., Third Floor
160 High Street, N.W.
Warren, OH 44481

(For Plaintiff-Appellee)

ATTY. JOHN B. JUHASZ
7330 Market Street
Youngstown, OH 44512

(For Defendant-Appellant)

*A-16*

2

MAHONEY, J., (EDWARD), Ret.

This appeal is taken from a final judgment of the Trumbull County Court of Common Pleas that dismissed the petition for postconviction relief of appellant, Andre R. Williams, without a hearing. We affirm.

In September 1988, the Trumbull County Grand Jury indicted appellant on three counts of aggravated murder with capital specifications, as well as attempted aggravated murder, aggravated robbery, aggravated burglary, and rape. The charges stemmed from the brutal slaying of George Melnick and the severe beating of his wife, Katherine, on August 15, 1988 at their residence in Warren, Ohio.

Following a jury trial, appellant was convicted of all but the rape count, for which he was convicted of attempted rape. Following the penalty phase, appellant was sentenced to death. Appellant was also sentenced to various terms of incarceration on the non-capital convictions. On appeal, this court affirmed the conviction and death sentence, but reversed that portion of the conviction that was predicated upon the underlying felony of attempted rape. *State v. Williams* (Mar. 24, 1995), Trumbull App. No. 89-T-4210, unreported, 1995 WL 237092. Thereafter, appellant appealed to the Supreme Court of Ohio and the state cross-appealed. The Supreme Court reversed the partial reversal by this court, thereby reinstating appellant's original conviction. *State v. Williams* (1996), 74 Ohio St.3d 569. The United States Supreme

*A-17*

3

Court denied appellant's petition for a writ of certiorari. *Williams v. Ohio* (1996), __

U.S. __, 117 S.Ct. 109, 136 L.Ed.2d 62.

On September 23, 1996, appellant filed a petition for postconviction relief.[1]  The

state responded by filing a motion for judgment, requesting that the trial court deny the

petition without a hearing.  After reviewing the petition and other materials, the trial

court determined that appellant was not entitled to relief under R.C. 2953.21 and

denied his petition without a hearing.

Appellant filed a timely notice of appeal with this court.  He asserted the following

three assignments of error for our review:

> "[1.]   The trial court erred in denying Appellant a hearing
> on his petition[,] T.d. 142, thus depriving Appellant of liberties
> secured by U.S. Const.[,] amend. VI and XIV, and Ohio
> Const.[,] art. I, [sections] 1, 2, 10, and 16, including
> meaningful access to the courts of this State.

> "[2.]   The granting of the government's motion for
> judgment by the trial court, T.d. 142, was error, depriving
> Appellant of liberties secured by U.S. Const.[,] amend. XIV
> and Ohio Const.[,] art. I, [sections] 1, 2, 10, and 16.

> "[3.]   The trial court erred in denying Appellant expert
> assistance, T.d. 136, in violation of liberties secured by U.S.
> Const.[,] amend. XIV and Ohio Const., art. I, [sections] 1, 2,
> and 16.

---

[1.]   Because appellant was convicted before the effective date of the amendment
to R.C. 2953.21, his petition was timely filed.  See *State v. Watters* (Dec. 26, 1997),
Trumbull App. No. 96-T-5606, unreported.

*A-18*

4

In his first assignment or error, appellant maintains that the trial court erred by denying his petition for postconviction relief without a hearing. This assigned error focuses on the substantive merit of his petition. R.C. 2953.21(E) provides that the trial court must hold a hearing on a petition for postconviction relief "[u]nless the petition and the files and records of the case show the petitioner is not entitled to relief[.]" R.C. 2953.21 "does not expressly mandate a hearing for every post-conviction relief petition and, therefore, a hearing is not automatically required." *State v. Jackson* (1980), 64 Ohio St.2d 107, 110. Under R.C. 2953.21, a petition for postconviction relief is subject to dismissal without a hearing if the petitioner fails to submit evidentiary materials setting forth sufficient operative facts to demonstrate substantive grounds for relief. The trial court concluded, and we agree, that appellant was not entitled to postconviction relief.

Appellant asserted several claims for relief, including ineffective assistance of trial counsel, trial court errors during the trial, prosecutorial misconduct, and defects in the grand jury indictment process. The trial court concluded that most of appellant's claims were barred by the doctrine of *res judicata* because they were, or could have been, raised on direct appeal. We find no abuse of discretion in the application of the doctrine of *res judicata* to appellant's claims. A defendant is barred by the doctrine of *res judicata* from raising any defense or constitutional claim that was or could have been raised at trial or on direct appeal from his conviction. *State v. Perry* (1967), 10

A-19

5

Ohio St.2d 175, paragraph nine of the syllabus.  Because an appeal from the judgment of conviction is limited to the trial court record, a petition for postconviction relief may defeat the *res judicata* bar only if its claims are based on evidence outside the record. *State v. Cole* (1982), 2 Ohio St.3d 112, 113-114.

New evidence attached to the petition for postconviction relief does not automatically defeat the *res judicata* bar.  Evidence outside the record must meet "'some threshold standard of cogency; otherwise it would be too easy to defeat the holding of *Perry* by simply attaching as exhibits evidence which is only marginally significant and does not advance the petitioner's claim[.]'" *State v. Lawson* (1995), 103 Ohio App.3d 307, 315, quoting *State v. Coleman* (Mar. 17, 1993), Hamilton App. No. C-900811, unreported, at 7, 1993 WL 74756.  Evidence *dehors* the record must demonstrate that these claims could not have been raised on appeal based on the information in the original record. *Lawson* at 315.

Appellant failed to demonstrate that his claims could not have been raised on appeal.  Although appellant attempted to support several of his claims by attaching affidavits to his petition, this evidence added little, if anything, to the substance of each claim.  At best, some of the affidavits presented mere surplusage; others failed even to support the alleged errors.

For example, appellant asserted various claims of ineffective assistance of trial counsel.  Because he had different counsel at trial and on appeal, these claims could

*A-20*

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 3124

6

have been, and some in fact were, raised on direct appeal.  See *Cole* at syllabus.  In order to establish ineffective assistance of counsel, a defendant must demonstrate that his counsel's performance fell below an objective standard of reasonable representation and that he was prejudiced by that performance.  *State v. Bradley* (1989), 42 Ohio St.3d 136, paragraph two of the syllabus.  "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]"  *Strickland v. Washington* (1984), 466 U.S. 668, 689.  Debatable trial tactics and strategies do not constitute a denial of effective assistance of counsel.  *State v. Clayton* (1980), 62 Ohio St.2d 45, 49.  Within the purview of trial tactics is defense counsel's selection of witnesses to call at trial.  *State v. Coulter* (1992), 75 Ohio App.3d 219, 230.

The primary support appellant offered for his claims of ineffective assistance of counsel, as well as several of his other claims, were the affidavits of other attorneys familiar with capital cases.  These experts found fault with the strategy taken by trial counsel and gave their opinions regarding the alleged errors.  The fact that other experts differed with the strategy taken by trial counsel, however, merely established that it was  a debatable strategy.  Even if this evidence demonstrated that counsel did not choose the best strategy, it did not establish ineffectiveness.  Appellant was constitutionally entitled to a fair trial, not a perfect one.  *State v. Williams* (1992), 80

*A-21*

7

Ohio App.3d 648, 661.  Not only was this evidence not essential to litigating such a claim, it was entirely irrelevant.

Appellant asserted various claims relating to his need for expert assistance in preparing mitigating evidence for the penalty phase of the trial.  He again submitted evidence by way of attorney affidavits.  These affidavits failed to defeat the *res judicata* bar for a variety of reasons.  The opinion evidence was beyond the area of expertise of the attorneys, was not necessarily based on firsthand knowledge, and more importantly, merely supplemented evidence that was already in the record.  Evidence of appellant's declining I.Q. was introduced at trial and was considered in mitigation.  See *Williams*, 74 Ohio St.3d at 572.  Appellant failed to demonstrate that he could not have raised these claims based on the trial court record.

The only claim that was even arguably based on evidence beyond the record was appellant's claim that there were irregularities in the grand jury indictment process.  As to this claim, however, appellant failed to demonstrate any prejudice, and the trial court dismissed it accordingly.

Because appellant failed to demonstrate any substantive grounds for relief, the trial court did not err in dismissing his petition for postconviction relief without a hearing.  The first assignment of error is without merit.

In his second assignment of error, appellant again challenges the trial court's dismissal of his petition, this time on procedural grounds.  Specifically, he asserts that

A.22

8

the state's motion for judgment could not be considered as a response to his petition. We disagree.  R.C. 2953.21(D) provides in part:

> "Within ten days after the docketing of the petition, or within any further time that the court may fix for good cause shown, the prosecuting attorney shall respond by answer or motion.  Within twenty days from the date the issues are made up, either party may move for summary judgment."

R.C. 2953.21(D) does not mandate that the state even respond to a petition for postconviction relief, and a petitioner cannot compel a response if one is not forthcoming.  *State v. Sklenar* (1991), 71 Ohio App.3d 444, 446; *State v. Roberts* (1991), 66 Ohio App.3d 654, 656.  If the state does choose to respond, R.C. 2953.21(D) provides that it should do so "by answer or motion."  The state's "motion" need not necessarily be one for summary judgment, but could be a pre-answer motion, such as a motion to dismiss.  *State v. Hill* (June 16, 1995), Trumbull App. No. 94-T-5116, unreported, at 17-18, 1995 Ohio App. LEXIS 2684.

The state's "Motion for Judgment Pursuant to Ohio R.C. 2953.21(C)" was, in effect, a motion to dismiss the petition.  In fact, this court has previously viewed a motion filed by the state with the same caption as a motion to dismiss.  *Id*. at 2. Appellant has failed to demonstrate that the trial court committed any procedural error by considering the state's motion for judgment.  The second assignment of error is without merit.

*A- 23*

9

Appellant's third assignment of error is that the trial court denied his constitutional rights by denying him the assistance of experts during his postconviction proceedings. After filing his petition for postconviction relief, appellant moved the trial court to provide him state assistance "to retain the services of an investigator, a mitigation specialist, and a neuropsychologist[.]"  He cited no authority, nor does he now on appeal, to support his position that he has such a right.

The trial court denied appellant's request, stating that it would reconsider the request if it later determined that appellant's pending petition warranted an evidentiary hearing.  We find no violation of appellant's constitutional rights in this ruling.  The right to expert assistance is linked to the constitutional right to counsel.  See *State v. Richey* (1992), 64 Ohio St.3d 353, 359.  Because postconviction proceedings are civil in nature, a petitioner has no constitutional right to court-appointed counsel.  *State v. Mapson* (1987), 41 Ohio App.3d 390, 391.  Consequently, a petitioner would have no corresponding right to expert assistance.  If the trial court grants a hearing, a petitioner may have a statutory right to legal representation by the public defender's office if his petition is found to have arguable merit.  *State v. Crowder* (1991), 60 Ohio St.3d 151, paragraphs one and two of the syllabus; R.C. 120.16.  The trial court's ruling fully preserved any corresponding statutory right to the assistance of experts.

The only authority cited by appellant is inapplicable here.  Appellant cites a portion of Section 848(q)(4)(B), Title 21, U.S.Code which provides for the assistance of

*A. 24*

10

experts during the federal habeas corpus process.  This right is created by federal statute, not the United States Constitution, and it applies only to certain types of drug-related federal capital cases.  Also, the right is not absolute.  An indigent petitioner must demonstrate that such services are "reasonably necessary" for his representation, and the decision whether to grant such services lies within the discretion of the trial court.  Section 848(q)(9), Title 21, U.S. Code.

Moreover, even if there was a right to expert assistance during the postconviction process, appellant failed to demonstrate his entitlement to it.  A criminal defendant has a right to expert assistance only upon the showing of a particularized need.  *State v. Brown* (1988), 40 Ohio St.3d 277, 283-284.  Appellant's request was not supported by such a demonstration of need.  Because appellant failed to demonstrate any infringement of his right to the assistance of experts, his third assignment of error is without merit.

The judgment of the trial court is affirmed.

JUDGE EDWARD J. MAHONEY, Ret.,
Ninth Appellate District,
sitting by assignment.

NADER, P.J.,

O'NEILL, J.,

concur.

A.25

FILED
COURT OF APPEALS

OCT 19 1998

TRUMBULL COUNTY, OHIO
MARGARET R. O'BRIEN, Clerk

STATE OF OHIO                                    IN THE COURT OF APPEALS

                                    ) SS.
COUNTY OF TRUMBULL       )                       ELEVENTH DISTRICT


STATE OF OHIO,

      Plaintiff-Appellee,                        **JUDGMENT ENTRY**

      - vs -                                      CASE NO. 97-T-0153

ANDRE R. WILLIAMS,

      Defendant-Appellant.


      For the reasons stated in the Opinion of this court, the assignments of error are

wthout merit.  It is the judgment and order of this court that the judgment of the trial court

is affirmed.


                              _____
                              JUDGE EDWARD J. MAHONEY, Ret.,
                                    Ninth Appellate District
                                    sitting by assignment


                                    FOR THE COURT

A-26

Page 1 of 7



Not Reported in N.E.2d
Not Reported in N.E.2d, 1997 WL 184760 (Ohio App. 11 Dist.)
**(Cite as: 1997 WL 184760 (Ohio App. 11 Dist.))**

Only the Westlaw citation is currently available.

CHECK OHIO SUPREME COURT RULES FOR REPORTING OF OPINIONS AND WEIGHT OF LEGAL AUTHORITY.

Court of Appeals of Ohio, Eleventh District, Portage County.
STATE of Ohio, Plaintiff-Appellee,
v.
Charles R. AKERS, Defendant-Appellant.
**No. 95-P-0073.**

April 4, 1997.

CHARACTER OF PROCEEDINGS: Criminal Appeal from Court of Common Pleas Case No. 93 CR 0352.

VICTOR V. VIGLUICCI PORTAGE COUNTY PROSECUTOR and EUGENE L. MULDOWNEY ASSISTANT PROSECUTOR 466 South Chestnut Street Ravenna, OH 44266 (For Plaintiff-Appellee).

ATTY. MICHAEL A. PARTLOW The Burgess Building, # 400 1406 West Sixth Street Cleveland, OH 44113 (For Defendant-Appellant).

DONALD R. FORD, P.J., JUDITH A. CHRISTLEY, J., and ROBERT A. NADER, J.

*OPINION*

FORD, P.J.

*1 Appellant, Charles R. Akers, appeals from a conviction on one count of aggravated trafficking in drugs, R.C. 2925.03(A)(6), (C)(6), and (H)(6). Appellant was sentenced to serve an indefinite term of five to twenty-five years in the Grafton Correctional Institute. The court also sentenced appellant to pay a fine of $10,000 and the costs of the proceedings.

On December 4, 1993, a few minutes before 3:00 a.m., Officer Jerry Giulitto was seated in his police cruiser in the parking lot of the Y-Mart on West Main Street in Ravenna when he observed a vehicle traveling eastbound with only one working headlight. The officer pulled behind the automobile and activated the overhead emergency lights. The driver of the vehicle, Walter Collins, did not stop or pull over, but continued to travel north two more blocks down to Highland Street, turned right and then turned into the first driveway on the corner of Highland and Sycamore, a suspected drug house. Giulitto radioed the dispatcher that he had stopped a vehicle and requested a back-up unit because the vehicle had not stopped immediately on West Main Street after the emergency lights were engaged.

Officer Giulitto testified, at trial, that he saw the passenger, appellant, open the door and begin to exit the vehicle. Giulitto stated that, he opened the door of his cruiser, stepped outside, and shouted at appellant to get back into the car, and appellant complied. Officer Giulitto further testified that as appellant was getting back into the car, he saw appellant throw a "baggy" underneath the vehicle. He also stated that the "baggy" appeared to contain a white substance.

Officer Mark Cooper soon arrived at the scene. Officer Giulitto stated that he walked to the driver's side of the vehicle and recognized the driver, Collins, as driving under suspension. Giulitto also testified that Collins was known to run with gangs and to be armed at times. As Giulitto looked into the vehicle, he noticed an open nylon bag with a lot of money in it sitting on the console between Collins and appellant. He also stated that Collins and appellant acted nervously. Officer Giulitto removed Collins from the vehicle, patted him down, arrested him, and placed him in the back of his cruiser. Appellant was ordered by Officer Cooper to exit the vehicle, was patted down, handcuffed, $200 in cash was recovered, and appellant was placed in Sergeant Bennett's cruiser.

The officers walked back to the automobile and Officer Cooper began to search the passenger compartment. Officer Giulitto told Officer Cooper that appellant had thrown something under the vehicle, shined his flashlight, and the officers saw the bag underneath the passenger side of the automobile. Chief Michael Swartout arrived and photographed the bag as it appeared under the passenger side of the vehicle. The baggy was later determined to contain 80.3 grams of crack cocaine. As a result of the vehicle search, the officers recovered the nylon bag, which contained $900, and a pipe used for smoking crack cocaine.

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 3131

**\*2** Appellant testified at trial that he had admonished Collins to stop the vehicle and let him out after the police had begun their pursuit, because he did not want to have anything to do with the drugs. He also stated that after Collins stopped the automobile, Collins had taken the nylon bag out of his jacket pocket, unzipped the bag, removed the crack and had thrown the crack out of the door, causing the bag to hit appellant's leg as he was in the process of getting out and/or getting back in the automobile. Appellant denied having thrown the bag under the vehicle himself, and contended that it had bounced off his leg and landed underneath the vehicle.

Appellant testified that because of the way in which Officer Giulitto's cruiser was situated in relation to the vehicle which Collins had been driving, that it would have been impossible for the officer to have seen appellant's arm and leg from that particular angle, or to have seen the cocaine in his hand. He also claimed that the money on his person had come from a paycheck he had cashed earlier in the day and that Collins had bragged earlier in the day about having $2,200. He concluded by stating that the officers searched for approximately forty minutes before they found the cocaine, then gave each other "high-fives" and exclaimed, "we got them motherfuckers now." The officers received permission to enter the home and locate a .22 rifle and a scale.

Appellant was indicted December 29, 1993, for aggravated trafficking, R.C. 2925.03(A)(6), (C)(6), and (H)(6). Appellant's motion to suppress evidence was overruled on February 7, 1994, and the trial commenced on March 9, 1994. The jury convicted appellant of aggravated drug trafficking on March 11, 1994, and also rendered a separate verdict which determined that appellant was previously convicted of aggravated trafficking in drugs. The court sentenced appellant to an indefinite term of five to twenty-five years, the first five years consisting of actual incarceration, plus a $10,000 fine and costs. Appellant filed a timely notice of appeal, and raises the following assignments of error:

"1. The trial court erred, to the prejudice of the appellant, by denying the appellant's motion to suppress evidence seized in violation of the Fourth Amendment to the Constitution of the United States.

"2. The trial court erred, to the prejudice of the appellant, by permitting the state's witnesses to testify concerning other 'crimes, wrongs, or acts' purportedly committed by the appellant which went well beyond the requirements of R.C. 2945.75(B).

"3. The conduct of defense counsel constituted ineffective assistance of counsel prejudicial to constitutional rights guaranteed to the appellant by the [Sixth] and [Fourteenth] Amendments to the Constitution of the United States and Article I, Section 10, of the Ohio Constitution.

"4. The appellant's conviction was against the manifest weight of the evidence." [FN1]

FN1. Appellant's second motion for delayed appeal was granted on November 15, 1995.

In appellant's first assignment, he argues that the trial court committed reversible error by overruling his motion to suppress where the record demonstrated that the police had no probable cause to seize or search the passenger of a vehicle that had been stopped for a minor traffic violation.

**\*3** A review of the record reveals that Officer Giulitto had probable cause to execute a valid traffic stop. In _State v. Haynes_ (July 19, 1996), Portage App. No. 95-P-0007, unreported, at 5, this court stated:

"A police officer's observation of a traffic violation constitutes probable cause for a valid traffic stop. _State v. Shearer_ (Sept. 30, 1994), Portage App. No. 93-P-0052, unreported. 'Probable cause exists where the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a man of reasonable caution in the belief that an offense ha(s) been committed.' (* * *) (Citations omitted.) _State v. Roach_ (Sept. 27, 1995), Gallia App. No. 94CA22, unreported, at 3 (1995 WL 669173)."

In this case, Officer Giulitto observed that the passenger side headlight was not illuminated. This traffic violation constituted probable cause to enable the officer to effect a valid traffic stop. Additionally, Collins' failure to stop the automobile, immediately after receiving a signal from a law enforcement officer, constituted a violation of R.C. 2921.331(B). This additional factor undergirds the finding of probable cause for the initial traffic stop. See _State v. Wilfong_ (Aug. 13, 1993), Ashtabula App. No. 92- A-1761, unreported.

There was a discrepancy concerning the exact time when Officer Giulitto determined that Collins' license was suspended. Whether he learned of Collins' suspended driver's license before or after the automobile was stopped is not determinative. The traffic violation, in the form of the passenger headlight, had already occurred and that infraction alone provided probable cause for the traffic stop. [FN2]

> FN2. Assuming _arguendo_ that the facts here suggest, to some degree, the existence of a pretextual stop, the Supreme Court of Ohio recently held: "Where a police officer stops a vehicle based on probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under the Fourth Amendment to the United States Constitution even if the officer had some ulterior motive for making the stop, such as a suspicion that the violator was engaging in more nefarious criminal activity. (_United States v. Ferguson_ [C.A.6, 1993], 8 F.3d 385, applied and followed.)" _Dayton v. Erickson_ (1996), 76 Ohio St.3d 3, 665 N.E.2d 1091, syllabus.

Turning to the validity of the continued detention of appellant, the holding stated by the court in _State v. Waldroup_ (1995), 100 Ohio App.3d 508, 513, 654 N.E.2d 390, is applicable:

"If during the scope of the initial stop an officer encounters additional specific and articulable facts which give rise



DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 3132

to a reasonable suspicion of criminal activity beyond that which prompted the stop, the officer may detain the vehicle and driver for as long as the new articulable and reasonable suspicion continues. *State v. Myers* (1990), 63 Ohio App.3d 765, 771* * *." (Parallel citation omitted.)

In *Haynes,* this court applied this rule to the passenger of a vehicle and concluded that the passenger had been lawfully detained when the officer had observed additional facts which triggered suspicion of other illegal activity relating to the occupants of the vehicle. *Haynes* at 7.

Three facts are important in our determination here. First, appellant attempted to exit the vehicle upon stopping. This reaction could reasonably have been interpreted by Officer Giulitto as an attempt by appellant to flee the scene, which would suggest that more serious criminal activity was ongoing and that appellant was trying to evade capture. Second, and most important, Officer Giulitto testified that he saw appellant throw the plastic baggy underneath the vehicle. In *State v. Bobo* (1988), 37 Ohio St.3d 177, 179, 524 N.E.2d 489, the court stated that a furtive movement by a defendant can justify further investigation by a police officer when "such a movement might indicate an attempt to conceal a gun or drugs." Third, the stop occurred at night in front of a suspected drug house. " 'The reputation of an area for criminal activity is an articulable fact upon which a police officer may legitimately rely' in determining whether an investigative stop is warranted. * * * " (Citations omitted.) *Id.* The totality of the circumstances warranted further investigation by the officers, and supported the inference that there was ongoing activity above and beyond the facts which prompted the initial traffic stop. Thus, the continued detention of appellant was justified.

*4 In our considered opinion, the search and seizure of appellant were properly executed. The proper resolution of this assignment turns on the applicability of the rule in *Pennsylvania v. Mimms* (1977), 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331. *Mimms* stands for the proposition that once an automobile has been stopped for a traffic violation, the officer may validly order the driver out of the automobile because the intrusion into the driver's personal liberty not does not outweigh the legitimate concern for the officer's personal safety. *Id.* at 111. Further, the officer may search the driver if the officer reasonably believes that the person might be armed and present a present danger to the safety of the officer. *Id.* at 112.

In *State v. Townsend* (1991), 77 Ohio App.3d 651, 654, 603 N.E.2d 261, we held that the pat-down search of the defendant in that case was invalid where the police officer had no reason to believe that the defendant, as a passenger, was engaged in any criminal activity. In *Townsend,* the passenger's only suspicious behavior was his inability to provide the officer with correct information about his name, birth date, or Social Security number. *Id.* See, also, *State v. Bevan* (1992), 80 Ohio App.3d 126, 608 N.E.2d 1099.

In this case, the driver, and not the passenger, was suspected to be armed. Officer Giulitto testified that Collins was known to run with gangs and to be armed on occasion. He also stated that he was concerned for his own safety, as well as Officer Cooper's safety, and wanted to search under the driver's seat for a weapon. He further stated that he removed appellant and Collins from the vehicle because he wanted to preserve the scene to prevent the suspects from removing whatever was lying underneath the vehicle. Again, we note that the stop occurred at night in front of a suspected drug house. Under those circumstances, it was reasonable for the officers to execute a protective search. [FN3] See, also, *State v. Curry* (Jan. 24, 1997), Montgomery App. No. 15028, unreported, 1997 Ohio App. Lexis 197.

> FN3. "Where a police officer stops and approaches a motor vehicle at night for a traffic violation and sees the driver, while exiting the car, furtively conceal something under the front seat, a limited search of that area is reasonable for the purpose of the officer's protection. (*Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889; *Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612; *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685, controlling)" *State v. Smith* (1978), 56 Ohio St.2d 405, 384 N.E.2d 280, syllabus.

The facts of the case *sub judice* are distinguishable from *Townsend,* taking into account appellant's attempt to exit the vehicle, his furtive hand/arm movement with the baggy, and his proximity to Collins who was known to be armed at times. Under the totality of the circumstances, we conclude that it was entirely proper for the officers to order appellant out of the automobile, conduct a pat-down search, and place him in custody. Accordingly, the trial court did not err by overruling appellant's motion to suppress evidence. Appellant's first assignment of error is without merit.

*5 Under the second assignment, appellant contends that the testimony of Assistant Prosecutor Robert Andrews, concerning appellant's prior indictments, exceeded the limits set forth in R.C. 2945.75(B), and was prejudicial to him. Upon review, we determine that appellant's contention is not well-founded.

R.C. 2945.75(B), states:
"Whenever in any case it is necessary to prove a prior conviction, a certified copy of the entry of judgment in such prior conviction together with evidence sufficient to identify the defendant named in the entry as the offender in the case at bar, is sufficient to prove such prior conviction."

Evid.R. 404(B) states:
"(B) *Other crimes, wrongs, or acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 3133

mistake or accident."

In *State v. Amos* (Jan. 15, 1988), Lake App. No. 12-088, unreported, at 9- 11, the witness not only testified regarding the judgment entries regarding the defendant's prior conviction, but also testified concerning certain aspects of the defendant's probation, subjects which were outside the scope of the prior convictions. The trial court failed to give a limiting instruction to the jury. This court held that such testimony was prejudicial, primarily due to the absence of the cautionary instruction. *Id.* at 12.

In the instant case, Andrews testified concerning the following matters: (1) appellant's three prior indictments for three counts of aggravated trafficking in 1990; (2) a certified copy of appellant's written guilty plea; (3) a certified copy of the judgment entry stating that appellant had previously entered guilty pleas to three counts of aggravated trafficking; and (4) a certified copy of the judgment entry indicating that appellant was sentenced to prison on each count. Andrews also identified appellant as being the subject of those prior indictments. Appellant admitted during cross-examination that he had pleaded guilty to three counts of aggravated trafficking.

An indictment is not the functional equivalent of a judgment of conviction; it simply provides notice to the accused of the charges against him. Unlike a conviction, it does not conclusively establish guilt with regard to a charged offense. Due to the nature of an indictment, and the fact that an indictment does not fall within the stated exceptions to the rule, the admission of testimony regarding an indictment is erroneous. See *State v. Dulaney* (Mar. 27, 1992), Jefferson App. No. 90-J-50, unreported, at 3, 1992 WL 73597. In the instant case, the trial court should not have admitted those portions of Andrews' testimony pertaining to the indictments. The testimony relating to the judgment entry indicating that appellant was sentenced to prison on each count would have been sufficient and proper under the rule.

*6 Nevertheless, we determine that the trial court's erroneous admission of Andrews' testimony concerning the indictments did not rise to the crest of prejudicial error. "To support the reversal of a judgment, [the] appellant has the burden to establish that any error was prejudicial. * * * " (Citation omitted.) *State v. Sibert* (1994), 98 Ohio App.3d 412, 428, 648 N.E.2d 861. The other evidence presented in this case, *i.e.*, appellant's admission that he had pleaded guilty to the charges, was sufficient to satisfy the requirement of R.C. 2945.75. Under similar circumstances, the Eighth District Court of Appeals held that "[i]n light of the fact that [the defendant] pleaded guilty to grand theft with the prior offense specifications, we find that he admitted the prior convictions." *State v. Jackson* (Sept. 2, 1993), Cuyahoga App. No. 63672, unreported, at 3, 1993 WL 335439. This reasoning is equally applicable here since appellant admitted that he was guilty of the prior offenses and that he had pleaded guilty for that reason. Most importantly, the limiting instruction given by the trial court was sufficient to avert the prejudicial effect of the evidence. *Amos.*

Notwithstanding our decision, this court strongly disapproves of the manner in which the prosecutor intentionally flaunted the evidential rule by introducing the indictments. This type of conduct is categorically improper. Under different factual circumstances than the case *sub judice,* any future similar conduct on the part of the prosecutor may well result in a reversal. Appellant's second assignment is without merit.

In the third assignment, appellant submits two alleged errors which he argues demonstrate that he received ineffective assistance of counsel and, therefore, warrants a reversal of his conviction. These arguments are not well-founded.

*Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674, states:
"A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable."

"Furthermore, a defendant must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' * * * " (Parallel citation omitted.) *State v. Phillips* (1995), 74 Ohio St.3d 72, 84, 656 N.E.2d 643, quoting *Strickland* at 694. See, also, *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph three of the syllabus.

*7 Initially, appellant posits that his attorney's failure to impeach Officer Giulitto, with prior inconsistent testimony from the suppression hearing, constitutes deficient representation warranting reversal of his conviction. We disagree.

The testimony of Officer Giulitto varied regarding two matters: (1) what he saw in appellant's hand, either an "object," "something," or a "baggy"; and (2) exactly when he saw appellant throw or make a movement with the "object" or baggy. After reviewing the hearing and trial transcripts, we cannot say that the trial attorney's failure to impeach Officer Giulitto's hearing testimony on the basis of prior inconsistent statements was a dereliction of duty.

Regardless of the precise moment at which Giulitto made the observation, *i.e.*, whether appellant was either exiting or reentering, the fact remains that the officer saw appellant with something in his hand at some point after the automobile had stopped and before he approached the vehicle. Admittedly, in his suppression hearing testimony,



DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 3134

Officer Giulitto described appellant as holding an "object" or "something" and later described the "object" as being a baggy containing a white substance in his trial testimony. Notwithstanding these minor discrepancies, a juror could logically conclude that even if Officer Giulitto had only seen some type of object, and was not sure of the precise moment at which he saw appellant make the throwing movement, *i.e.*, while exiting or reentering the automobile, a baggy containing a white substances was, nevertheless, found underneath the passenger side of the vehicle. Thus, it could be inferred circumstantially that the baggy retrieved from under the vehicle was the same "object" that Officer Giulitto had previously seen in appellant's hand and the same "object" or "something" that he had seem him throw. We concur with appellee's statement that Officer Giulitto's "testimony was only semantically inconsistent[.]"

The critical fact in both statements is that Officer Giulitto observed appellant throw something underneath the automobile. In our opinion, the inconsistencies were not so egregious as to wholly negate the credibility of Officer Giulitto's testimony or the reliability of this evidence. If appellant's trial attorney had attempted to impeach the officer on the discrepancies, we cannot say that the outcome of the trial would have been different. Further, the record reveals that the attorney conducted reasonable cross-examination.

Under his second argument, appellant asserts that the failure of his trial counsel to provide exculpatory testimony, *i.e.,* a confession allegedly made by appellant's codefendant to the crime for which appellant was charged, where that testimony was available and admissible as a "statement against interest" constituted ineffective assistance. This argument is similarly not well-founded.

The record indicates that Goldbloch, a cellmate of Walter Collins, was subpoenaed to testify at the hearing, but failed to appear. During the suppression hearing, the trial court stated that any potential testimony from Goldboch, concerning Collins' alleged jailhouse confession to him would be inadmissible hearsay. The subpoena reflects that service was attempted at Goldboch's last known address, but was not executed because he could not be located there. Neither Goldbloch nor Collins was subpoenaed to testify at trial, and their names did not appear on the list of potential trial witnesses. During redirect examination of appellant, the court reiterated its position concerning the hearsay nature of the testimony and sustained the state's objection to a question posed to appellant about Collins' alleged confession:

*8 "[DEFENSE COUNSEL] Didn't Walter [Collins] make a statement to one of the Detectives that the crack and money both belonged to him?
"[PROSECUTION] Objection.
"[THE COURT] Objection sustained. It's hearsay."

Appellant argues that had his trial counsel subpoenaed Collins, that he would have offered direct testimony that would have exculpated appellant. A similar factual scenario occurred in *State v. Malone* (Dec. 13, 1989), Montgomery App. No. 10564, unreported, at 5, 1989 WL 150798, where the defendant's trial attorney failed to subpoena a witness that might have given testimony favorable to the defendant. The *Malone* court noted that the record did not contain an offer of proof concerning the testimony of the potential witness. The court held that the defendant's trial attorney had been "neglectful" because he had assumed that the witness would be subpoenaed by the state, but in actuality the state did not produce the witness. *Id.* at 8. Notwithstanding that error, the court overruled the appellant's ineffective assistance claim, stating that the record provided an insufficient basis to consider whether prejudice actually occurred under *Strickland. Id.* The court reasoned that mere suggestions and general statements were insufficient to prove that manifest injustice had resulted from the error.

There is no showing in the record before us that appellant's attorney did *not* talk to Collins. Arguably, he might have made a conscious decision not to subpoena Collins based on credibility concerns. Appellee aptly asserts that there is nothing in the record to demonstrate, "that [Collins'] testimony [would have been] even tacitly reliable." Additionally, there was no proffer regarding the particulars of Collins' alleged exculpatory statement, or that of Goldboch's in connection with it.

When reviewing a claim alleging ineffective assistance, the attorney being challenged is subject to a strong presumption in favor of competent representation. *State v. Bradley* at 142, 538 N.E.2d 373, quoting *Strickland* at 689. Under the rationale espoused by the *Malone* court, the failure to subpoena a witness who might have offered exculpatory testimony is neglectful and constitutes deficient representation. In our considered opinion, the bare allegation that Collins might have offered exculpatory testimony, without more, is insufficient to demonstrate error. After reviewing the entire record, we cannot state that appellant has demonstrated that the failure of his trial counsel to subpoena Collins constituted a dereliction of duty.

Turning to the admissibility of Collins' alleged confession through Goldboch's testimony, Evid.R. 804(B)(3) speaks to a statement against penal interest, and reads as follows:

"(3) *Statement against interest.* A statement that was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless the declarant believed it to be true. A statement tending to expose the declarant to criminal liability, whether offered to exculpate or inculpate the accused, is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement."

*9 In *State v. Cohen* (Apr. 29, 1988), Lake App. No. 12-011, unreported, at 9-10, this court stated:

*A-31*

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 3135

"[O]ut-of-court statements against the declarant's penal interest are admissible when three tests are met: (1) the declarant is unavailable; (2) the statement must so far tend to subject the declarant to criminal liability that a reasonable man in his position would not have made the statement unless he believed it to be true[;] and (3) if offered to exculpate the accused, the statement must be corroborated by circumstances clearly indicating its trustworthiness. * * * " (Citations omitted.)

"[C]ircumstantial indicia of corroboration may include proof that the declarant repeated his story often and consistently, or evidence that the statement was made to someone who would respond officially, *e.g.*, a law enforcement officer. See Weinstein, Federal Rules of Evidence, Sec. 804(b)(3) at 804-105." *State v. Long* (July 12, 1984), Clark App. No. 1893, unreported, at 8, 1984 WL 5375. "[T]he corroboration requirement is derived from a long-standing recognition that third-party out-of-court confessions are inherently subject to fabrication and abuse." Weissenberger, Ohio Evidence (1997), 508, Section 804.53.

In *State v. Landrum* (1990), 53 Ohio St.3d 107, 114, 559 N.E.2d 710, the Supreme Court of Ohio reviewed the case law concerning exculpatory out-of-court statements:
   "[I]n *Chambers v. Mississippi* (1973), 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297, the Supreme Court reversed a murder conviction because the court excluded out-of-court admissions from another, admitting the murder of which the accused was convicted. The *Chambers* court relied upon several factors supporting the reliability of the statements: (a) the statements were made spontaneously shortly after the murder to a close acquaintance; (b) other evidence corroborated the statements; (c) the statements were 'in a very real sense self-incriminatory and unquestionably against interest (* * *)'; and (d) the declarant was available for cross-examination. * * *
   "In *Green v. Georgia* (1979), 442 U.S. 95, 99 S.Ct. 2150, 60 L.Ed.2d 738, the Supreme Court, on due process grounds, reversed a death sentence because the trial court excluded an accomplice's confession that he rather than the defendant had pulled the trigger. *Green* cited *Chambers*, affirming that ' "the hearsay rule may not be applied mechanistically to defeat the ends of justice" ' * * * " (Citation omitted.)

Evid.R. 804(A)(5) provides the foundational requirement for the admissibility of such statements and states, in part, that unavailability as a witness can be based on the fact that the declarant "is absent from the hearing and the proponent of the declarant's statement has been unable to procure the declarant's attendance * * * by process or other reasonable means." Where the "movant seeks to introduce hearsay evidence which purports to be within the declaration-against-penal-interest exception to the hearsay rule, he must first establish the unavailability of the declarant." *State v. Williams* (1975), 43 Ohio St.2d 88, 330 N.E.2d 891, paragraph one of the syllabus.

*10 Appellant's contention, that Collins' statement against interest would have been admissible is not well-founded for several reasons. First, appellant failed to satisfy his burden that the declarant, Collins, was unavailable. There is no showing in the record of what means were used to secure Collins' physical presence. Presumably Collins was "subject to the subpoena power of which the instant appellant was possessed *but chose not to exercise*." (Emphasis added.) *State v. Davenport* (Apr. 17, 1985), Hamilton App. Nos. C-840419, unreported, at 6, 1985 WL 6752.

Second, "[a] statement against penal interest must be carefully scrutinized to insure that the declaration was contrary to the declarant's interest at the time of its utterance." *Long, supra*, at 8. The alleged confession is facially self-incriminatory, but we have not been provided with sufficient facts to conclude that Collins' alleged declaration was actually against his penal interest.

Third, the corroboration requirement has not been satisfied. We do not know if or exactly when the statement was made, *i.e.*, whether it was made to one or more of the officers shortly after appellant and Collins were arrested, whether it was uttered spontaneously in the arrest or booking room, or only to Goldboch while he was incarcerated. Appellant's trial attorney inferred that Collins had also confessed to a police officer, yet no testimony was elicited from any officer concerning any exculpatory statement allegedly made by Collins. In our opinion, the corroborating evidence in this case is inadequate.

Thus, had Goldboch been located and subpoenaed to testify at trial, we cannot say that his testimony regarding Collins' alleged confession would have been admissible, in any event. Finally, a review of the entire record indicates that appellant's trial counsel provided representation that was competent. He conducted effective cross-examinations and made persuasive opening and closing statements. Accordingly, appellant's third assignment of error is without merit.

Appellant contends in his fourth assignment that his conviction was against the manifest weight of the evidence and submits three arguments in support of those propositions. We determine that none of his arguments are well-founded.

As the court stated in *State v. Schlee* (Dec. 23, 1994), Lake App. No. 93-L-082, unreported, 11:
   " '[M]anifest weight' requires a review of the weight of the evidence presented, not whether the state has offered sufficient evidence on each element of the offense.
   " 'In determining whether the verdict was against the manifest weight of the evidence, "(* * *)(t)he court reviewing the entire record, *weighs the evidence* and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. (* * *)" ' * * * *." (Citations omitted and emphasis *sic*.)

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 3136

*11 With regard to the alleged inconsistencies between Officer Giulitto's suppression hearing and his trial testimony, we reiterate that the inconsistencies of which appellant complains were *de minimis*. Further, the testimony given by Officer Giulitto during the suppression hearing and at trial represented competent, credible evidence in support of the jury's conclusion that appellant was in possession of a large amount of cocaine. The jury evidently found Officer Giulitto's version of the events, concerning appellant's possession of the baggy and how the baggy came to rest underneath the passenger side of the automobile, to be more credible than appellant's version. We see no reason to disturb that decision. *State v. DeHass* (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus.

Second, appellant urges us to consider the effect of the omission of Collins' alleged confession on the validity of the jury verdict. Again, there is nothing in the record to support appellant's claim of innocence based on Collins' purported ownership of the cocaine, other than appellant's own averment that the cocaine did not belong to him. Assuming *arguendo* that the confession testimony had been offered and admitted, there would have been nothing to prevent the jury from finding the testimony of the law enforcement officers to be the most credible regarding who was in possession of the cocaine. We conclude that the jury verdict finding appellant illegally in possession of 80.3 grams of cocaine was supported by the evidence.

Third, as previously analyzed, the trial court's handling of the testimony concerning appellant's prior offenses was admittedly improper, but the prejudice to appellant, if any, was negated by: (1) appellant's admission that he had pleaded guilty to the charged offenses; and (2) the curative effect of the court's limiting instruction concerning the indictments. Under these circumstances, the jury verdict was not undermined.

In conclusion, there is nothing in the record to suggest that the jury lost its way or that a miscarriage of justice occurred. The jury's verdict was not against the manifest weight of the evidence, and appellant's fourth assignment of error is not well-founded.

The assignments of error are without merit, and the judgment of the trial court is affirmed.

CHRISTLEY and NADER, JJ., concur.

Not Reported in N.E.2d, 1997 WL 184760 (Ohio App. 11 Dist.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in N.E.2d
Not Reported in N.E.2d, 2002 WL 1781111 (Ohio App. 11 Dist.), 2002-Ohio-3960
**(Cite as: 2002 WL 1781111 (Ohio App. 11 Dist.))**

CHECK OHIO SUPREME COURT RULES FOR REPORTING OF OPINIONS AND WEIGHT OF LEGAL AUTHORITY.

Court of Appeals of Ohio,
Eleventh District, Ashtabula County.
STATE of Ohio, Plaintiff-Appellee,
v.
Michael P. McKAY, Defendant-Appellant.
**No. 2001-A-0008.**

Decided Aug. 2, 2002.

Defendant was convicted in the Court of Common Pleas, Ashtabula County, of illegal manufacture of drugs, aggravated possession of drugs, and possessing criminal tools for a felony purpose, and received concurrent sentences of seven years on each drug count and 11 months for possessing criminal tools. Defendant appealed. The Court of Appeals, William M. O'Neill, P.J., held that: (1) state established sufficient foundation for forensic chemist to testify as expert regarding pseudoephedrine; (2) any deficiency in notice afforded defendant of chemist's proposed testimony was cured at trial; (3) evidence that defendant had access to and control of items found in car in which evidence was found was sufficient to support convictions; and (4) defendant received effective assistance of counsel.

Affirmed.

West Headnotes

**[1] Criminal Law** ⊜478(1)
110k478(1) Most Cited Cases
State established sufficient foundation for state forensic chemist to testify as expert regarding pseudoephedrine found in drug defendant's car, despite fact that pseudoephedrine was not controlled substance and was not specifically listed in chemist's report, where chemist testified that she had bachelor's degree in forensic chemistry and had tested for pseudoephedrine hundreds of times, and also explained testing procedure. Rules of Evid., Rule 702.

**[2] Criminal Law** ⊜486(3)
110k486(3) Most Cited Cases
Omission from state forensic chemist's report of any mention of pseudoephedrine did not deprive drug defendant of adequate notice of chemist's testimony with respect thereto, where bill of particulars disclosed that defendant was being charged with possession of pseudoephedrine, and where state submitted amended bill of particulars for the sole purpose of correcting misspelling of pseudoephedrine.

**[3] Criminal Law** ⊜1166(10.10)
110k1166(10.10) Most Cited Cases
Any deficiency in notice afforded drug defendant of state forensic chemist's intent to testify at trial concerning pseudoephedrine found in defendant's car was cured at trial, where trial court held sidebar discussion with counsel to discuss admissibility of pseudoephedrine evidence, allowed defense counsel opportunity to question chemist outside jury's presence, and informed defense counsel that continuance could be requested.

**[4] Controlled Substances** ⊜77
96Hk77 Most Cited Cases

**[4] Controlled Substances** ⊜80
96Hk80 Most Cited Cases

**[4] Controlled Substances** ⊜89
96Hk89 Most Cited Cases
Evidence that defendant had access to and control of items found in car being driven by his girlfriend at time of his arrest was sufficient to support convictions of illegal manufacture of drugs, aggravated possession of drugs, and possessing criminal tools for a felony purpose; defendant was found by police at out-of-state truck stop, attempting to enter car at issue through driver's side door, defendant's girlfriend was in driver's seat, male clothes were found in car, and truck stop clerk testified that defendant initially got out of car's driver's seat and told her that he had to ditch his car.

A34

Page 2 of 5

**[5] Controlled Substances** ⊘28
96Hk28 Most Cited Cases
Statutory prohibition against inferring ownership or control of an item from a person's access to premises on which item is found did not apply to drugs and drug paraphernalia found in defendant's car. R.C. § 2925.01(K).

**[6] Controlled Substances** ⊘77
96Hk77 Most Cited Cases

**[6] Controlled Substances** ⊘80
96Hk80 Most Cited Cases

**[6] Controlled Substances** ⊘89
96Hk89 Most Cited Cases
Contradictions between state's evidence and defendant's testimony on his own behalf did not render evidence insufficient to support defendant's convictions of illegal manufacture of drugs, aggravated possession of drugs, and possessing criminal tools for a felony purpose, where differences in testimony were factual issues for jury.

**[7] Criminal Law** ⊘641.13(6)
110k641.13(6) Most Cited Cases
Defense counsel's rejection of trial court's offer of court-appointed expert witness to testify about chemical content of methamphetamine in prosecution for manufacture and possession thereof, in favor of putting defendant on the stand to testify with respect thereto, was tactical decision, did not prejudice defendant, and did not rise to level of ineffective assistance of counsel, in absence of any evidence that counsel coerced defendant to testify, where defense counsel had opportunity to cross-examine state's expert witnesses. U.S.C.A. Const.Amend. 6.

**[8] Criminal Law** ⊘641.13(2.1)
110k641.13(2.1) Most Cited Cases
Since the advice of an attorney to their client regarding the decision to testify is a tactical decision, it cannot be challenged on appeal on the grounds of ineffective assistance of counsel, unless it is shown that the decision was the result of coercion. U.S.C.A. Const.Amend. 6.
Criminal Appeal from the Court of Common Pleas, Case No.2000 CR 206.

Thomas L. Sartini, Ashtabula County Prosecutor, Angela M. Scott, Assistant Prosecutor, Jefferson, OH, for plaintiff-appellee.

Atty. Michael A. Partlow, Cleveland, OH, for defendant-appellant.

WILLIAM M. O'NEILL, P.J.

*1 {¶ 1} Appellant, Michael P. McKay ("McKay"), appeals the judgment entered by the Ashtabula County Court of Common Pleas. A jury found McKay guilty of illegal manufacture of drugs, aggravated possession of drugs, and possessing criminal tools for a felony purpose. The trial court sentenced McKay to a term of seven years on each of the first two counts, and eleven months on the possessing criminal tools conviction. The sentences are concurrent.

{¶ 2} On August 23, 2000, McKay was at the Flying J Truck Stop in Saybrook, Ohio. McKay approached the store clerk, Ms. Levee, and asked her for directions. He then asked her if she did "crank." He told her that he was running from the law and that he needed to ditch his car.

{¶ 3} That morning, Deputy Rose of the Ashtabula County Sheriff's Department was dispatched to the truck stop for a report of suspicious person and a suspicious car. Deputy Rose ran the Tennessee license plate of a Pontiac 2000 and found out the plates were issued for a van.

{¶ 4} Deputy Rose then went inside the truck stop and spoke to Ms. Levee, the store clerk who initially contacted the authorities. Ms. Levee identified the Pontiac as the suspicious car and McKay as the suspicious individual. Deputy Rose attempted to speak with McKay about the fictitious license plates, as McKay attempted to enter the Pontiac through the driver side door. His girlfriend, Kimberly Casey ("Casey"), was seated in the driver's seat. Deputy Rose began to question McKay about the plates. McKay questioned Deputy Rose about why he was bothering him. Deputy Rose testified that McKay then reached for his back pocket, and Deputy Rose placed him under arrest.

{¶ 5} While McKay was being handcuffed, Casey was attempting to start the Pontiac. Deputy Rose went to stop Casey, and McKay started to run away. Deputy Rose caught McKay, maced him, and placed him in a police cruiser. Casey was also taken into custody, because the police could not verify her identity. Deputy Rose looked inside the vehicle and noticed numerous items associated with drug use, including a white powdery substance and hypodermic needles. Casey died before trial.

{¶ 6} McKay raises four assignments of error on appeal. His first assignment of error is:



DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 3139

{¶ 7} "The trial court abused its discretion by allowing, over repeated objections, an expert witness to testify about matters beyond the knowledge or experience possessed by lay persons and which were not included in the expert's report."

{¶ 8} Brooklynn Porter ("Porter") is a forensic chemist for the Ohio Bureau of Criminal Investigation. She testified for the state. McKay asserts that Porter should not have been permitted to testify to her findings that a substance found in the car contained pseudoephedrine. First, McKay argues that Porter was not qualified as an expert to testify to her findings of pseudoephedrine, because it is not a controlled substance. The second argument McKay sets forth is that Porter should not have been able to testify regarding pseudoephedrine, because it was not in her report.

*2 {¶ 9} The admission of evidence is within the sound discretion of the trial court. [FN1] That decision may not be overturned by a reviewing court absent a showing of an abuse of that discretion. [FN2]

FN1. *State v. Kinley,* 72 Ohio St.3d 491, 497, 651 N.E.2d 419, 1995-Ohio-279.

FN2. *Peters v. Ohio State Lottery Comm.* (1992), 63 Ohio St.3d 296, 299, 587 N.E.2d 290.

{¶ 10} Porter was testifying as an expert witness. In order to testify as an expert, the following requirements of Evid.R. 702 must be met:

{¶ 11} "(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;

{¶ 12} "(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;

{¶ 13} "(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:

{¶ 14} "(1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived form widely accepted knowledge, facts, or principles;

{¶ 15} "(2) The design of the procedure, test, or experiment reliably implements the theory;

{¶ 16} "(3) the particular procedure, test, or experiment was conducted in a way that will yield an accurate result."

{¶ 17} Porter was qualified to testify as an expert concerning pseudoephedrine. She testified that she has a bachelor's degree in forensic chemistry. She testified that she has tested for pseudoephedrine hundreds of times. She also explained the testing procedure.

{¶ 18} McKay asserts that Porter was only recognized as an expert in the identification of controlled substances and that she was not an expert in non-controlled substances. McKay points to the fact that all non-controlled substances are merely listed as "non-controlled" in Porter's report.

[1] {¶ 19} The state established a sufficient foundation for Porter to testify as an expert regarding pseudoephedrine. The fact that the substance was not specifically listed in her report goes to the weight to be given the evidence, not its admissibility. The trial court did not abuse its discretion in allowing Porter to testify concerning pseudoephedrine.

[2] {¶ 20} McKay next asserts that he was prejudiced by this testimony because it was not in the report and, thus, not disclosed to the defense. This argument is dispelled by the state's bill of particulars, which disclosed that McKay was being charged with possession of pseudoephedrine. Further, the state submitted an amended bill of particulars for the sole purpose of correcting the misspelling of pseudoephedrine.

[3] {¶ 21} Further, if there was an error in disclosing this topic to the defense, it was cured at trial. The trial court held a side-bar with counsel to discuss the admissibility of this evidence. After the side-bar had concluded, the court allowed defense counsel the opportunity to question Porter outside of the jury. The trial court also informed defense counsel that a continuance could be requested. None was requested.

*3 {¶ 22} McKay's first assignment of error is without merit.

{¶ 23} McKay's second assignment of error is:

{¶ 24} "The appellant's convictions were not supported by sufficient evidence."

{¶ 25} To determine if there is sufficient evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." [FN3]

FN3. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, following *Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.

[4] {¶ 26} With the testimony of Deputy Rose, Porter, and DEA Agent Gregory Westfall ("Westfall"), the state provided sufficient evidence that there were items found in the Pontiac 2000 to support a conviction on all of the charges.

{¶ 27} The crux of McKay's sufficiency argument is that the state did not provide sufficient evidence linking him to

*A-36*

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 3140

the Pontiac. McKay was found at an out of state truck stop. His girlfriend was in the car when Deputy Rose approached the Pontiac. Deputy Rose also testified that McKay was attempting to enter the Pontiac. There were male clothes found in the Pontiac. Ms. Levee testified that McKay initially got out of the driver's seat of the Pontiac. Ms. Levee also testified that McKay told her he had to ditch his car. All of this evidence, taken together, is sufficient to show that McKay had access and control of the items in the Pontiac.

[5] {¶ 28} McKay argues that R.C. 2925.01(K) prohibits possession from being inferred from mere access to the thing or substance through ownership of the premises upon which the thing was found. The criminal items were found in an automobile, not a "premises." "Premises" is not defined in R.C. 2925. [FN4] Therefore, it will be construed according to its plain and ordinary meaning. [FN5] In a criminal law context, premises is defined as "[t]he term used to in a search warrant includes land, buildings, and appurtenances thereto." [FN6]

FN4. *State v. Thomas* (1995), 107 Ohio App.3d 239, 243, 668 N.E.2d 542.

FN5. *Id.* citing *Youngstown Club v. Porterfield* (1970), 21 Ohio St.2d 83, 255 N.E.2d 262.

FN6. *Id.* citing Black's Law Dictionary (6Ed.1990).

{¶ 29} The state provided sufficient evidence that McKay was in constructive possession of the items in the automobile. Constructive possession requires the ability to exercise dominion or control over the item. [FN7] There was sufficient evidence presented to establish that McKay had the ability to exercise dominion or control over them.

FN7. *Id.* at 245, 255 N.E.2d 262, citing *State v. Boyd* (1989), 63 Ohio App.3d 790, 796, 580 N.E.2d 443.

{¶ 30} McKay's second assignment of error is without merit.

{¶ 31} McKay's third assignment of error is:

{¶ 32} "The appellant's convictions are against the manifest weight of the evidence."

[6] {¶ 33} In determining whether a verdict is against the manifest weight of the evidence, the Supreme Court of Ohio has adopted the following language as a guide:
{¶ 34} "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." [FN8]

FN8. (Citations omitted.) *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541, 1997-Ohio-52.

*4 {¶ 35} McKay testified on his own behalf. He stated that he arrived at the truck stop in his own black pick-up truck. He then testified that he had a friend come and retrieve the black pick-up from the truck stop. This testimony was inconsistent with the testimony of Ms. Levee, who testified that McKay arrived in the Pontiac. McKay also disputed Westfall's testimony about the chemical make-up of methamphetamine.

{¶ 36} This differing testimony was a factual issue to be determined by the jury. We do not see that the jury clearly lost its way by choosing to believe the state's witnesses rather than the testimony of McKay.

{¶ 37} McKay's third assignment of error is without merit.

{¶ 38} McKay's fourth assignment of error is:

{¶ 39} "The appellant received ineffective assistance of trial counsel in violation of his constitutional rights to such."

[7] {¶ 40} McKay claims that he was denied the effective assistance of trial counsel because of counsel's failure to use the services of an expert witness. Rather than using a court appointed expert to contradict the state's expert witness, defense counsel chose to put McKay on the stand as an expert to testify about the chemical content of methamphetamine. McKay argues that defense counsel should have used the expert that the trial court offered.

{¶ 41} In *State v. Bradley*, the Supreme Court of Ohio has adopted the following test to determine if counsel's performance is ineffective: "[c]ounsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation, and, in addition, prejudice arises from counsel's performance." [FN9]

FN9. *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph two of the syllabus. (Adopting the test set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674.)

{¶ 42} The decision to call witnesses is one of trial strategy, and will not be grounds for a claim of ineffective

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 3141

assistance of counsel unless prejudice is shown. [FN10] The decision to use an expert was one of trial strategy. Further, McKay was not prejudiced by this decision, because defense counsel had an opportunity to cross-examine the state's expert witnesses and McKay testified to the composition of methamphetamine.

> FN10. *State v. Williams* (1991), 74 Ohio App.3d 686, 695, 600 N.E.2d 298.

[8] {¶ 43} Whether or not a defendant testifies is a tactical decision. [FN11] Since the advice of an attorney to their client regarding the decision to testify is a tactical decision, it cannot be challenged on appeal on the grounds of ineffective assistance of counsel, unless it is shown that the decision was the result of coercion. [FN12] McKay has not alleged or shown that there was any coercion by his attorney to get him to testify.

> FN11. *State v. Bey,* 85 Ohio St.3d 487, 499, 709 N.E.2d 484, 1999- Ohio-283, quoting *Brooks v. Tennessee* (1972), 406 U.S. 605, 612, 92 S.Ct. 1891, 32 L.Ed.2d 358.

> FN12. *State v. Winchester,* 8th Dist. No. 79739, 2002-Ohio-2130, at ¶ 12, citing *Hutchins v. Garrison* (C.A.4, 1983), 724 F.2d 1425, 1436, cert. Denied, 464 U.S. 1065, 104 S.Ct. 750, 79 L.Ed.2d 207, and *Lema v. United States* (C.A.1, 1993), 987 F.2d 48, 52-53.

{¶ 44} Further, the ultimate decision of whether a defendant will testify on his own behalf is the defendant's. [FN13] As McKay has not shown any evidence of coercion, and the ultimate decision to testify was his own, his claim for ineffective assistance of counsel must fail. McKay's fourth assignment of error is without merit.

> FN13. *State v. Edwards,* (1997), 119 Ohio App.3d 106, 109, 694 N.E.2d 534, quoting *Government of the Virgin Islands v. Weatherwax* (C.A.3, 1996), 77 F.3d 1425, citing (1983), *Jones v. Barnes* 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987.

*5 {¶ 45} The judgment of the trial court is affirmed.

ROBERT A. NADER and DIANE V. GRENDELL, JJ., concur.

Not Reported in N.E.2d, 2002 WL 1781111 (Ohio App. 11 Dist.), 2002-Ohio-3960

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 3142

Not Reported in N.E.2d
Not Reported in N.E.2d, 2002 WL 737074 (Ohio App. 11 Dist.), 2002-Ohio-2074
**(Cite as: 2002 WL 737074 (Ohio App. 11 Dist.))**

CHECK OHIO SUPREME COURT RULES FOR REPORTING OF OPINIONS AND WEIGHT OF LEGAL AUTHORITY.

Court of Appeals of Ohio, Eleventh District, Ashtabula County.
STATE of Ohio, Plaintiff-Appellee,
v.
Odraye G. JONES, Defendant-Appellant.
No. 2000-A-0083.

April 26, 2002.

Defendant, who was convicted of aggravated murder of a police officer, and sentenced to death, sought post-conviction relief. The Court of Appeals, Donald R. Ford, J., held that: (1) defendant was not deprived of effective assistance of counsel; (2) State did not violate *Brady* by withholding exculpatory evidence; (3) defendant's claims based on expert affidavits were barred by res judicata; and (4) Ohio's postconviction system did not violate petitioner's right to due process or equal protection.

Affirmed.

West Headnotes

**[1] Criminal Law ☞1427**
110k1427 Most Cited Cases

**[1] Criminal Law ☞1436**
110k1436 Most Cited Cases
An alleged constitutional error that could have been raised and fully litigated on direct appeal is res judicata and cannot be litigated in the postconviction proceeding, although if the alleged error is supported by evidence outside the record and could not have been fully litigated on direct appeal, it is not subject to res judicata.

**[2] Sentencing and Punishment ☞1782**
350Hk1782 Most Cited Cases
Evidence that would have allegedly humanized defendant, including testimony of defendant's father and paternal grandmother that they were not part of defendant's life, which defendant's trial counsel failed to present, would have been unnecessarily cumulative of evidence offered during penalty phase of capital murder prosecution, where testimony intended to humanize defendant was covered by testimony of defendant's foster mother, his aunt, and other witnesses called as mitigation witnesses.

**[3] Criminal Law ☞641.13(7)**
110k641.13(7) Most Cited Cases
Defense counsel's conduct in not seeking to humanize defendant during penalty phase of capital murder prosecution by calling defendant's absent father, his uninvolved paternal grandmother, and witnesses who were currently in prison, was reasonable trial strategy and, therefor, was not ineffective assistance, where such witnesses were subject to impeachment given their noninvolvement in defendant's life and/or their criminal history, while counsel did present such evidence through expert witnesses and other generally law abiding citizens of the community. U.S.C.A. Const.Amend. 6.

**[4] Criminal Law ☞641.13(7)**
110k641. 3(7) Most Cited Cases
Defense counsel's failure to obtain medical records demonstrating that defendant received follow-up care for a head injury suffered as a result of being struck by a hammer in the course of an assault did not prejudice defendant in penalty phase of capital murder prosecution and, therefore, was not ineffective assistance; there was substantial testimony as to nature and extent of defendant's injuries, and, regardless of whether defendant received follow-up treatment, the severity of his injuries from the hammer attack would have been minimized by the testimony of the neurosurgeon who operated on defendant. U.S.C.A. Const.Amend. 6.

**[5] Sentencing and Punishment ☞1746**
350Hk1746 Most Cited Cases
Prosecution's failure to produce police photographs of a hammer attack on defendant, which allegedly would have

demonstrated the physical and psychological impact that the assault had on defendant for purposes of penalty phase in capital murder prosecution, did not constitute a *Brady* violation for failure to produce exculpatory evidence, where defendant failed to show that photographs were gathered as evidence in case, when they were instead collected in connection with the hammer attack, itself.

**[6] Criminal Law** ⊙==700(2.1)
110k700(2.1) Most Cited Cases
To establish that the prosecution unlawfully suppressed evidence under *Brady*, defendant must demonstrate the following: (1) the prosecution failed to disclose evidence upon request; (2) the evidence was favorable to the defense; and (3) the evidence was material.

**[7] Sentencing and Punishment** ⊙==1746
350Hk1746 Most Cited Cases
Prosecution's alleged withholding of police photographs of a hammer attack that defendant had sustained was not material, so as to constitute a *Brady* violation, where in penalty phase in capital murder prosecution, state's expert medical witness testified as to physical consequences of the attack, discussing the surgery and extent of fragmentation of defendant's skull, while a neuropsychologist testified as to the psychological consequences, noting that the injury resulted in irritability and paranoia that lowered defendant's threshold for aggressive outbursts.

**[8] Criminal Law** ⊙==1433(2)
110k1433(2) Most Cited Cases
Post-conviction petitioner's claim that he did not receive effective assistance of counsel during his capital murder trial because a breakdown in the attorney-client relationship denied him his Sixth Amendment right to counsel was raised on petitioner's direct appeal, and thus, he was barred by res judicata from raising it in his petition for postconviction relief.

**[9] Criminal Law** ⊙==1440(1)
110k1440(1) Most Cited Cases
Affidavit offering opinion of post-conviction petitioner's attorney-expert, whose opinions were based upon his review of the trial record, did not constitute evidence outside the record, and thus, petitioner's claim for relief that he was denied effective assistance of counsel because his trial attorneys failed to properly voir dire the jury on issues of race was barred by res judicata. U.S.C.A. Const.Amend. 6.

**[10] Criminal Law** ⊙==700(7)
110k700(7) Most Cited Cases
Prosecution's failure to inform defendant that certain police officers were discussing where the murder weapon was found, indicating that the gun was found near the victim's body, rather than in the bushes at scene of defendant's arrest, did not violate *Brady* by withholding exculpatory evidence, absent any suggestion that the state concluded from its investigation that the gun was found near victim's body; although the State may have been deemed to have had constructive knowledge of the police investigation, it could not have been deemed to have had constructive knowledge of everything that every unidentified police officer may have had to say about the investigation.

**[11] Criminal Law** ⊙==1429(1)
110k1429(1) Most Cited Cases
Post-conviction petitioner's claim that he did not receive effective assistance of counsel because his trial attorneys did not properly prepare their expert witnesses was barred by res judicata, given that petitioner's experts review of the trial record, upon which submitted affidavits were based, could have been conducted prior to defendant's direct appeals. U.S.C.A. Const.Amend. 6.

**[12] Criminal Law** ⊙==1436
110k1436 Most Cited Cases
Affidavits offering opinions based on a re-examination of facts found within the trial record do not constitute evidence outside the record.

**[13] Criminal Law** ⊙==1440(1)
110k1440(1) Most Cited Cases
Post-conviction petitioner's claim that he was unable to assist with his defense and understand the nature and objective of the proceedings against him because the trial court failed to order a psychological evaluation was barred by res judicata, given petitioner's reliance on expert affidavits which presented no new information outside of the record.

**[14] Criminal Law** ⊙==1433(2)
110k1433(2) Most Cited Cases
Post-conviction petitioner's claim that he was denied a fair trial when the trial court overruled his motion for a change of venue was barred by res judicata, where issue was raised on direct appeal, and no evidence was presented in the petition for postconviction relief that was not available at the time petitioner filed his appeal.
**[15] Constitutional Law** ⊙==270.5



DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 3144

92k270.5 Most Cited Cases

[15] Criminal Law ⟲1404
110k1404 Most Cited Cases
Ohio's postconviction system, which forces a petitioner to prove he is entitled to a remedy, and imposes strict standards for granting an evidential hearing and discovery, did not violate petitioner's right to due process. U.S.C.A. Const.Amend. 14.

[16] Constitutional Law ⟲250.2(5)
92k250.2(5) Most Cited Cases

[16] Criminal Law ⟲1404
110k1404 Most Cited Cases
Ohio's postconviction system did not violate petitioner's right to equal protection absent showing of a factual predicate suggesting that petitioner was receiving disparate treatment. U.S.C.A. Const.Amend. 14; Const. Art. 1, § 2.
Civil Appeal from the Court of Common Pleas, Case No. 97 CR 221, Judgment Affirmed.

Thomas L. Sartini, Ashtabula County Prosecutor, Ariana E. Tarighati, Angela M. Scott, Assistant Prosecutors, Jefferson, OH, for plaintiff-appellee.

David H. Bodiker, Ohio Public Defender, William J. Mooney, Assistant State Public Defender, Columbus, OH, for defendant-appellant.

WILLIAM M. O'NEILL, P.J., DONALD R. FORD and ROBERT A. NADER, JJ.

OPINION

FORD, J.

*1 Appellant, Odraye G. Jones, appeals from the October 26, 2000 judgment entry of the Ashtabula County Court of Common Pleas denying his petition for post-conviction relief.

Appellant was indicted on November 26, 1997. He was charged with one count of aggravated murder in the shooting death of Ashtabula City Police Officer William D. Glover ("Officer Glover"). The indictment contained one death penalty specification pursuant to R.C. 2929.04(A)(3); two death penalty specifications pursuant to R.C. 2929.04(A) (6); and, one firearm specification pursuant to R.C. 2941.145.

On May 26, 1998, a jury found appellant guilty of aggravated murder and all four specifications as charged in the indictment. The sentencing phase of the trial commenced on June 2, 1998. On June 4, 1998, the jury returned a death sentence recommendation. The trial court imposed a sentence of death on appellant on June 8, 1998. Appellant appealed to the Supreme Court of Ohio, which affirmed the trial court's decision. State v. Jones (2001), 91 Ohio St.3d 335, 744 N.E.2d 1163.

Appellant filed a petition for postconviction relief on November 5, 1999. The trial court denied appellant's petition without an evidential hearing in its October 26, 2000 judgment entry. Appellant has filed a timely appeal of that judgment entry and makes the following assignments of error:
    "[1.] The trial court erred by dismissing appellant's postconviction relief petition, where he presented sufficient operative facts and supporting exhibits to merit an evidentiary hearing and discovery.
    "[2.] Ohio's postconviction procedures neither afford an adequate corrective process nor comply with due process and equal protection under the Fourteenth Amendment.
    "[3.] Considered together, the cumulative errors set forth in appellant's substantive grounds for relief merit reversal or remand for a proper postconviction process."
Appellant's first assignment of error addresses the merits of the twenty-five grounds for relief identified in his petition for postconviction relief. Within that first assignment of error, he raises nine separate issues. His argument is that in the context of those nine separate issues, he presented sufficient evidence to merit an evidential hearing on his petition.

[1] A criminal defendant is not automatically entitled to a hearing on his petition for postconviction relief. State v. Kinley (1999), 136 Ohio App.3d 1, 7, 735 N.E.2d 921. A hearing will be granted only if there are substantive grounds for relief set forth in the petition, or contained in the supporting affidavits, files and record of the case. Id. An alleged constitutional error that could have been raised and fully litigated on direct appeal is res judicata and cannot be litigated in the postconviction proceeding. Id. However, if the alleged error is supported by evidence outside the record and could not have been fully litigated on direct appeal, it is not subject to res judicata. Id.

First issue: Ineffective assistance of counsel.

*2 The first issue raised by appellant, which was raised in grounds for relief one, two, three, four, five, six, eight, nine, twelve, fourteen, fifteen, sixteen, seventeen, and eighteen, is that he did not have effective assistance of counsel during the penalty phase of his trial because his trial counsel failed to introduce evidence that would have humanized



appellant, specifically testimony of his father and paternal grandmother that they were not part of appellant's life.

To demonstrate ineffective assistance of counsel in the context of a petition for postconviction relief, the appellant must "demonstrate that: 1) the performance of defense counsel was seriously flawed and deficient; and 2) the result of the appellant's trial or legal proceeding would have been different had defense counsel provided proper representation." *State v. Girts* (Nov. 22, 2000), Cuyahoga App. No. 77386, unreported, 2000 WL 1739293, at 4. See *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraphs two and three of the syllabus.

In the instant matter, while appellant's father and paternal grandmother did not testify as to their absence from appellant's life, the following testimony was introduced during the penalty phase of appellant's trial: appellant's foster mother, Theresa Lyons ("Theresa"), testified that appellant did not know who his father was until he was thirteen-years old; Charles See ("See"), a mitigation cultural specialist, testified that there was no male role model in appellant's life and that the lack of a father had a devastating affect on appellant; appellant's aunt, Carlotte Owen ("Carlotte") testified that appellant's mother did not want a child, that she did not have time for him, and that she spent her time in the streets drinking and doing drugs; she further testified that appellant did not cry when his mother died; Dr. James Eisenberg ("Eisenberg") testified that, as a baby, appellant's mother did not want to feed him, that appellant frequently went to the hospital because it was the only place where people took care of him, and that he gave up when his mother died.

[2] In our view, additional evidence addressing the issue of lack of family support in appellant's life would have been cumulative of the evidence offered during the penalty phase of appellant's trial.

The trial court noted in its judgment entry that:
"[T]he mitigating factors of personality disorders, exposure to a culture of violence, head trauma, the loss of trust with others, and the effect of [appellant's] mother's death were all extensively supported by the evidence presented on behalf of [appellant]. * * * [T]he mitigation evidence was presented through expert professional witness[es] [consisting] of [See], [Eisenberg], and [Kinney]. * * * Defense Counsel also called, as mitigation witnesses, [Theresa] * * *, with whom [appellant] resided; Lorraine Rapose, a school teacher, who had [appellant] as a student in seventh grade; [Carlotte], the maternal aunt of [appellant], who testified about his childhood and the background of his mother * * *; Lewis Lyons, the pastor of Apostle Faith Church * * *, who testified about [appellant] and his mother's background; and Queenie Kelly * * *, who testified about [appellant's] background and his devastation, both emotionally and psychologically, caused by his mother's death.
*3 " * * * [A]ll of the subject matters of [the testimony of potential witnesses not called by appellant's counsel], to-wit: the absent parenting of the biological father, the noninvolvement in [appellant's] life by his paternal grandmother, his drug use, gang membership, and emotional upset after the death of his mother, * * * Darlene Jones' drug use, criminal involvement, and abnormal home life, the cultural violence in which [appellant] was raised as well as the death of close friends and relatives and its effect upon his psychological and emotional development, the effect of the physical assault by Maceo Hull and how [it] caused [appellant] to be distrustful of others, and the general violence to which he was exposed were all covered and testified to by those witnesses that were called as mitigation witnesses."
Any additional evidence submitted by appellant would have been cumulative, and such cumulative evidence does not support substantive grounds for an ineffective assistance of counsel claim. *State v. Combs* (1994), 100 Ohio App.3d 90, 98, 652 N.E.2d 205.

[3] Further, when reviewing a claim of ineffective assistance of counsel, "a court must indulge in a strong presumption that the challenged action might be considered sound trial strategy." *State v. Moore* (1994), 97 Ohio App.3d 137, 149, 646 N.E.2d 470, citing *Strickland v. Washington* (1984), 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674. The trial court noted in its judgment entry, denying appellant's petition that:
"[I]t was competent trial strategy for Defense Counsel to present this evidence through expert witnesses and those other witnesses who were generally law abiding citizens of the community. The Court finds that a number of the witnesses that were not called, such as [appellant's] absent father, his uninvolved paternal grandmother, and those witnesses who are currently in prison were all subject to being impeached and discredited due to their noninvolvement in [appellant's] life and/or their criminal and drug use history. Counsel for [appellant] elected to present the mitigation evidence through witnesses who would most likely be credible in the eyes of the jury."
We agree with the trial court's assessment that appellant's trial counsel's decisions fall within the acceptable range of possible trial strategies.

[4] In connection with this first issue, appellant also submits that his trial counsel was ineffective because he failed to obtain medical records demonstrating that appellant received follow-up care for a head injury suffered as a result of being struck by a hammer in the course of an assault by his cousin. Appellant asserts that this failure undermined the physical and psychological impact that the assault had on appellant.

There was substantial testimony as to the nature and extent of appellant's injuries during the penalty phase. Theresa testified that, as a result of the assault, appellant was transported by helicopter to Metro Health Medical Center. Dr. John Kenny ("Dr.Kenny"), a neuropsychologist, testified that the head injury resulted in irritability and paranoia that lowered appellant's threshold for aggressive outbursts. See testified that the hammer attack left appellant greatly disillusioned because his cousin, who was also a close friend of appellant, inflicted the injury.



*4 Also, regardless of whether appellant received follow-up treatment, the severity of his injuries from the hammer attack would have been minimized by the testimony of Dr. Robert White ("Dr.White"), the neurosurgeon who operated on appellant at Metro Health Medical Center. Dr. White testified that the surgery was "not a major operation", and that after the operation "we were looking at, for all practical purposes, * * * a perfectly healthy, young man." He concluded his testimony with the statement that "the degree of the injury itself regarding the brain borders on almost being insignificant." In view of this testimony, we conclude that the result of the penalty phase of appellant's trial would not have been different had defense counsel offered evidence that appellant did, in fact, receive follow-up treatment for his head injuries.

*Second issue: Brady violation.*

[5] Appellant argued in his seventh ground for relief that the state failed to produce police photographs of the 1994 hammer attack on appellant in violation of *Brady v. Maryland* (1963), 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215. In *Brady*, the Supreme Court held that "[s]uppression by the prosecution of evidence favorable to an accused who has requested it violates due process where the evidence is material either to guilt or to punishment, irrespective of good faith or bad faith of the prosecution." *Id.* at syllabus.

[6] To establish that the prosecution violated *Brady*, appellant must demonstrate the following: "(1) the prosecution failed to disclose evidence upon request; (2) the evidence was favorable to the defense; and (3) the evidence was material." *State v. Smith* (Sept. 24, 1999), Trumbull App. No. 98-T-0097, unreported, 1999 WL 778376, at 5, citing *Moore v. Illinois* (1972), 408 U.S. 786, 92 S.Ct. 2562, 33 L.Ed.2d 706.

The withholding of exculpatory or impeachment evidence constitutes a *Brady* violation only if it is "material." *Id.*, citing *United States v. Bagley* (1985), 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481. On the subject of materiality, the Supreme Court has noted:
"*Bagley's* touchstone of materiality is a 'reasonable probability' of a different result, and the adjective is important. The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. A 'reasonable probability' of a different result is accordingly shown when the government's evidentiary suppression 'undermines confidence in the outcome of the trial.' " (Citations omitted.) *Kyles v. Whitley* (1995), 514 U.S. 419, 434, 115 S.Ct. 1555, 131 L.Ed.2d 490.
In the matter *sub judice*, appellant has failed to show that the photos at issue were gathered as evidence in this case. Instead, they were collected in 1994, in connection with the hammer attack upon appellant.

[7] Even if the prosecution had knowingly withheld the photographs, they do not meet the standard of materiality set forth in *Kyles*, i .e., a reasonable probability of a different result. The state's witness, Dr. White, discussed at length the consequences of the attack. He testified that "some portions of [appellant's] skull * * * had been fragmented. These had not been driven into the brain, but they had been pushed against the brain. But still the membrane, the dura was protecting the brain. So these were removed. Almost like cooking." He further testified that "[w]e closed the membrane after irrigating the brain, very carefully elevated the membrane up against the bone so there wouldn't be any further bleeding, and simply closed the scalp. We did not put anything back, special kind of prosthesis or another piece of bone in the area that we operated on simply because the actual dimensions of this were not very large * * *." He also testified that appellant might have suffered a hairline fracture of his mandible, a fracture in the nasal area, and a fracture of one of his fingers.

*5 In addition to Dr. White's testimony as to the physical consequences of the attack, the record also contains the testimony of Dr. Kenny as to the psychological consequences of the attack, appellant's lowered threshold for aggressive outbursts due to the irritability and paranoia that resulted from his head injury. In view of this extensive testimony, we do not believe that the introduction of photographs of appellant's injuries would have created a reasonable probability of a different result.

*Third issue: State withheld impeachment evidence.*

In his tenth and eleventh grounds for relief, appellant argues that Anthony Barksdale ("Barksdale"), who was with appellant shortly before Officer Glover was killed, received favorable treatment from the state in exchange for testifying against appellant, and that the state failed to disclose this fact. However, in a March 6, 1998 letter to appellant's attorneys, the state noted that if Barksdale testified truthfully at appellant's trial, that fact would be considered by the trial court when it sentenced Barksdale on a charge of obstructing justice, to which he had entered a guilty plea. Therefore, appellant has failed to offer a factual predicate for his assertion that he did not have access to this information.

*Fourth issue: Ineffective assistance of counsel due to the breakdown in the attorney-client relationship.*

[8] In his thirteenth ground for relief, appellant contended that he did not receive effective assistance of counsel during his trial because a breakdown in the attorney-client relationship denied him his Sixth Amendment right to counsel. In an affidavit attached to his petition for postconviction relief, appellant stated: "I did not trust my trial attorneys * * *. It seemed like everytime (*sic* ) I discussed something that would help my case, the prosecution would immediately know about it. My lack of trust in my trial attorneys affected my communication with them, and as a



DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 3147

result, I was prevented from participating in my defense."

Appellant raised this issue on his direct appeal. In *Jones*, 91 Ohio St.3d at 342-343, 744 N.E.2d 1163, the Supreme Court noted that the trial court conducted an extensive inquiry into the relationship between appellant and his trial counsel, and that there was no violation of appellant's Sixth Amendment right to counsel. Because this issue was raised on appellant's direct appeal, he is barred by *res judicata* from raising it in his petition for postconviction relief. *State v. Perry* (1967), 10 Ohio St.2d 175, 226 N.E.2d 104, paragraph nine of the syllabus.

*Fifth issue: Ineffective assistance of counsel for failure to properly conduct voir dire.*

[9] In his nineteenth ground for relief, appellant asserts that he was denied effective assistance of counsel because his trial attorneys failed to properly voir dire the jury on issues of race. Appellant asserts that this claim is supported by evidence outside of the trial record; however, the evidence outside the record consists of an affidavit by an attorney-expert whose opinions were based upon his review of the trial record.

*6 In *State v. Lawson* (1995), 103 Ohio App.3d 307, 659 N.E.2d 362, the appellant submitted affidavits of an expert who testified for the defense at trial, two clinical psychologists, and one of the appellant's attorneys. The Twelfth Appellate District held that the affidavits did not constitute evidence *dehors* the record that overcame the *res judicata* bar. *Id.* at 315, 659 N.E.2d 362. That court was of the view that the affidavits constituted "repackaged information already available in the record in order to second-guess [the appellant's] trial counsel." *Id.*

The Tenth Appellate District adopted a similar position in *State v. Scudder* (1998), 131 Ohio App.3d 470, 722 N.E.2d 1054. In that case, the court held that an affidavit offering an opinion based on evidence contained within the trial transcript does not constitute evidence outside the record. *Id.* at 477, 722 N.E.2d 1054.

We concur with the Twelfth and Tenth districts that affidavits offering opinions based on a rehashing of the facts contained in the trial record do not constitute evidence outside the record. Therefore, appellant's nineteenth ground for relief is barred by *res judicata*.

*Sixth issue: Brady violation.*

[10] In his twentieth and twenty-first grounds for relief, appellant argues that the state violated *Brady* by withholding exculpatory evidence. Specifically, appellant offered the affidavit of Roger Perry ("Perry"), who stated that he overheard police officers discussing where the gun used in the murder of Officer Glover was found. According to Perry, the officers indicated that the gun was found near Officer Glover's body, rather than in the bushes at the scene of appellant's arrest.

We agree with the trial court's conclusion that "[a]lthough the State of Ohio may be deemed to have constructive knowledge of the police investigation, it is not deemed to have constructive knowledge of everything that every unidentified police officer may have to say about the investigation." In short, no *Brady* violation occurred because there is no suggestion that the state concluded from its investigation that the gun was found near Officer Glover's body.

*Seventh issue: Ineffective assistance of counsel for failure to properly prepare expert witnesses.*

[11][12] Appellant contended in his twenty-second ground for relief that he received ineffective assistance of counsel because his trial attorneys did not properly prepare his expert witnesses. Once again, appellant failed to adduce any evidence outside of the trial record that was contained in those affidavits. The affidavits offered by appellant consist of a review of the trial record by two experts. Such a review could have been conducted prior to appellant's direct appeals. Therefore, the issues raised in those affidavits are barred by *res judicata* for purposes of appellant's petition for postconviction relief. Also, we would reiterate that affidavits offering opinions based on a re-examination of facts found within the trial record do not constitute evidence outside the record. *Scudder*, 131 Ohio App.3d at 477, 722 N.E.2d 1054; *Lawson*, 103 Ohio App.3d at 315, 659 N.E.2d 362.

*Eighth issue: Trial court failed to order a psychological evaluation.*

*7 [13] In his twenty-third ground for relief, appellant argued that he was unable to assist with his defense and understand the nature and objective of the proceedings against him. This issue could have been raised in appellant's direct appeal. Once again, appellant relied upon expert affidavits, which presented no new information to overcome *res judicata*. However, the affidavits did not contain any evidence outside the record.

*Ninth issue: Trial court erred in denying appellant's motion for a change of venue.*

[14] Finally, in his twenty-fourth and twenty-fifth grounds for relief, appellant asserted that the trial court denied him a fair trial by overruling his motion for a change of venue. Appellant raised this issue on his direct appeal. *Jones*, 91 Ohio St.3d at 339, 744 N.E.2d 1163. Further, appellant did not present any evidence in his petition for postconviction relief that was not available at the time he filed his appeal. Therefore, these grounds for relief are also barred by *res judicata*.

For the reasons stated above, appellant's first assignment of error is without merit.

Appellant's second assignment of error attacks the constitutionality of Ohio's postconviction relief procedures, arguing that because it denies petitioners access to traditional discovery methods, it poses a nearly insurmountable burden of collecting evidence to indigent petitioners.

[15] The issue of whether Ohio's postconviction system violates due process was addressed by the United States District Court for the Southern District of Ohio in *Jamison v. Collins* (S.D.Ohio 1998), 100 F.Supp.2d 521. In *Jamison*, the petitioner argued that Ohio's postconviction system was inadequate because it did not provide an opportunity to identify, investigate, or prove constitutional violations. *Id.* at 567. The *Jamison* court rejected those arguments and ruled that Ohio's system did not violate due process. *Id.* The court noted that although Ohio has imposed strict standards for granting an evidential hearing and discovery pursuant to a petition for postconviction relief, those standards were "supported by reasonable policy reasons, such as the finality of judgments, judicial economy, and the intention that postconviction review not be a second appeal * * *." *Id.* at 568.

Similarly, the United States District Court for the Northern District of Ohio has held that Ohio's postconviction system is constitutional. *Dennis v. Mitchell* (N.D.Ohio 1999), 68 F.Supp.2d 863, 885. It would be unconstitutional if it precluded an effective state remedy against unconstitutional convictions. *Id.* However, "Ohio's system does not preclude a remedy; it merely forces a petitioner to prove he or she is entitled to a remedy." *Id.*

[16] Appellant also posits that Ohio's postconviction system is a violation of the constitutional guarantees of equal protection propounded in the United States and Ohio Constitutions. Those guarantees "require that all similarly situated individuals be treated in a similar manner. * * * In other words, laws are to operate equally upon persons who are identified in the same class." *State ex rel. Patterson v. Indus. Comm. of Ohio* (1996), 77 Ohio St.3d 201, 204, 672 N.E.2d 1008. Appellant has failed to establish a factual predicate that would suggest he is receiving disparate treatment. Therefore, we are unable to discern an equal protection argument in his brief.

*8 In view of the foregoing, we find no merit in appellant's second assignment of error.

In his third assignment of error, appellant suggests that the cumulative errors on the part of the trial court merit reversal of this matter. However, we have not identified any errors on the part of the trial court in its handling of appellant's petition. Consequently, appellant's third assignment of error also lacks merit.

For the foregoing reasons, the judgment of the Ashtabula County Court of Common Pleas is affirmed.

O'NEILL, P.J., and NADER, J., concur.

Not Reported in N.E.2d, 2002 WL 737074 (Ohio App. 11 Dist.), 2002-Ohio-2074

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 3149

IN THE COURT OF APPEALS
ELEVENTH JUDICIAL DISTRICT OF OHIO
COUNTY OF TRUMBULL

CA 2005 T 0034

FILED
COURT OF APPEALS

SEP 2 9 2005

TRUMBULL COUNTY, OH
KAREN INFANTE ALLEN, CLERK

STATE OF OHIO,                    :
                                  :
        Plaintiff-Appellee,       :
                                  :
        -vs-                      :        MOTION FOR EXTENSION OF
                                  :        TIME TO FILE APPELLANT'S REPLY
                                  :        BRIEF
DONNA ROBERTS,                    :
                                  :
        Defendant-Appellant.      :
                                  :        DEATH PENALTY APPEAL


COUNSEL FOR APPELLEE:                      COUNSEL FOR APPELLANT:

DENNIS WATKINS, ESQ.                       DAVID L. DOUGHTEN, ESQ.
Trumbull County Prosecutor                 Regis. No. 0002847
160 High Street, N.W.                      4403 St. Clair Avenue
4th Floor, Administration Bldg.            Cleveland, OH 44103
Warren, Ohio                               (216) 361-1112
(330) 675-2431

ORIGINAL

IN THE COURT OF APPEALS
ELEVENTH JUDICIAL DISTRICT OF OHIO
COUNTY OF TRUMBULL

CA 2005 T 0034

STATE OF OHIO,                           :
                                         :
    Respondent-Appellee,             :
                                         :
    -vs-                             :        MOTION FOR EXTENSION OF TIME
                                         :        TO FILE APPELLANT'S REPLY BRIEF
DONNA ROBERTS,                           :
                                         :
    Petitioner-Appellant.            :

Now comes the appellant, by and through undersigned counsel and, pursuant to Ohio

Rule of Appellate Procedure 14(B) and Local Rule 10, requests that this Honorable Court extend

the time to file the Appellant's Reply Brief for the reasons set forth in the attached Memorandum.

Respectfully submitted,

DAVID L. DOUGHTEN
Counsel for Defendant
Regis. No. 0002847
4403 St. Clair Avenue
Cleveland, OH 44103-1125
(216) 361-1112

## MEMORANDUM IN SUPPORT

Counsel is unable to complete the reply brief due to his appellate and trial court caseload. Counsel received the State's brief on September 22, 2005. Counsel is completing a death penalty traverse in <u>Eley v. Mitchell</u>, Case No. 02CV1994 in the Northern District of Ohio. The traverse or reply brief is due to be file in that case on October 3, 2005. In addition, counsel is completing the federal appeal in <u>US v. Tyrone Wilmington</u>, Case No. 05-3564. This brief is due in the Sixth Circuit on October 6, 2005.

Counsel is requesting an extension until October 10, 2005, for the purposes of filing the reply brief. This is the first request for an extension for the purposes of filing the reply brief. This request is not being made for the purposes of delay.

Respectfully submitted,

_____
DAVID L. DOUGHTEN
Counsel for Defendant

## CERTIFICATE OF SERVICE

A copy of the foregoing Motion was served upon Dennis Watkins, Trumbull County Prosecutor and/or LuWayne Annos, Esq. Assistant Trumbull County Prosecutor, Administration Building, 160 High Street, Warren, Ohio 44481, by Regular U. S. mail on this 28th day of September, 2005.

DAVID L. DOUGHTEN
Counsel for Appellant

| | | |
|---|---|---|
| **STATE OF OHIO** | ) | **IN THE COURT OF APPEALS** |
| | ) ss. | |
| **COUNTY OF TRUMBULL** | ) | **ELEVENTH DISTRICT** |

STATE OF OHIO,

        Plaintiff-Appellee,

  - vs -

DONNA ROBERTS,

        Defendant-Appellant.

**JUDGMENT ENTRY**

**CASE NO. 2005-T-0034**

       Appellant's motion for an extension of time to file her reply brief is hereby granted to October 11, 2005. No further extensions will be granted Appellant in this matter.

*Donald R. Ford*
ADMINISTRATIVE JUDGE DONALD R. FORD

**FILED**
COURT OF APPEALS

SEP 3 0 2005

TRUMBULL COUNTY, OH
KAREN INFANTE ALLEN, CLERK

2

IN THE COURT OF APPEALS
ELEVENTH JUDICIAL DISTRICT
TRUMBULL COUNTY, OHIO

CASE NO. ~~2003-A-111~~ *05-TR-34 pgd*

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| Plaintiff-Appellee, | : | |
| -vs- | : | **FILED** |
| | | COURT OF APPEALS |
| DONNA ROBERTS | : | OCT 1 1 2005 |
| Defendant-Appellant. | : | TRUMBULL COUNTY, OH<br>KAREN INFANTE ALLEN, CLERK |

**APPELLANT'S REPLY BRIEF**

COUNSEL FOR APPELLEE:

DENNIS WATKIND, ESQ. 0009949
Trumbull County Prosecutor
4th Floor Administration Building
160 High Street NW
Warren OH 44481
(330) 675-2426

LUWAYNE ANNOS - 0055651
Assistant Trumbull County Prosecutor

COUNSEL FOR APPELLANT:

DAVID L. DOUGHTEN, ESQ.
Regis. No. 0002847
4403 St. Clair Avenue
Cleveland, OH 44103-1125
(216) 361-1112

ORIGINAL

DONNA ROBERTS v WARDEN
CASE NO. 4:21-cv-00368-DAP
APPENDIX – PAGE 3155

## TABLE OF CONTENTS

### and

## ASSIGNMENT OF ERROR

PAGES

**Second Assignment of Error**

**The appellant was denied her right to a fair and impartial jury and equal
protection because there was an under-representation of African Americans
in the venire from which his jury was drawn.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

### ISSUE PRESENTED FOR REVIEW

Must a trial court hold an evidentiary hearing to determine the defendant is denied
a fair cross section of the community where a prima facie case is made that a class
of citizens has been precluded from jury service?

### AUTHORITIES

Duren v. Missouri, 439 U.S. 357, 364 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
Hernandez v. Texas, 347 U.S. 475, 480 (1954) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
Castaneda v. Partida, 430 U.S. 482 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
Patton v. Mississippi, 332 U.S. at 466 (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
Arnold v. North Carolina, 376 U.S. 773 (1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
Turner v. Fouche, 396 U.S. 346 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 8
Avery v. Georgian, 345 U.S. 559 (1953) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
Ford v. Seabold, 841 F.2d 677 (6th Cir.), *cert. den.*, 488 U.S. 928 (1988) . . . . . . . . . . . . . 3, 5
Norris v. Alabama, 294 U.S. 587 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7
Hill v. Texas, 316 U.S. 400 (1942) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
Eubanks v. Louisiana, 356 U.S. 584 (1958) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
Campbell v. Louisiana, 523 U.S. 392 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
Alexander v. Louisiana, 405 U.S. 625 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
Patton v. Mississippi, 332 U.S. 463 (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
Reece v. Georgia, 350 U.S. 84 (1955) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
Smith v. Texas, 311 U.S. 128 (1940) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
Neal v. Delaware, 103 U.S. 370 (1881) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**SERVICE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

## OVERVIEW OF REPLY BRIEF

The appellant Donna Roberts will address one issue in this reply; the Second Assignment of Error.  Both this assignment attacks to alleged racial inequities in the form of a deprivation of the right to a representative cross-section of the community in the jury pool in the capital punishment process in Trumbull County.  Ms. Roberts relies upon the arguments set forth in her previously filed Brief and Assignments of Error for the additional errors raised.

1

**ARGUMENT**

**Second Assignment of Error**

**The appellant was denied her right to a fair and impartial jury and equal protection because there was an under-representation of African Americans in the venire from which her jury was drawn.**

Racial discrimination in the selection of the members of a petit jury venire constitutes a denial of an impartial jury as guaranteed by the Sixth Amendment and the Equal Protection Clause of the Fourteenth Amendment.  It is alleged her that the jury was underrepresented by minorities, particularly prospective jurors of African-American heritage.  As noted, the lack of discovery and a hearing hindered the development of this issue.  The record does not reveal which jurors were of African-American heritage.  The jury questionnaires are also silent as to the racial heritage of the prospective jurors.  This limitation, however, does not prevent this Court from granting relief on this matter.

Ms. Roberts pled the exclusion of African-Americans from her venire as both a violation of the Fair Cross Section (Sixth Amendment) and Equal Protection (Fourteenth Amendment) Clauses of the United States Constitution.  The Fair Cross Section provision requires that a defendant show that: 1) the group excluded is distinctive, 2) the representation of that group in the venire is not fair and reasonable in relation to that group's composition in the relevant population, and 3) the under-representation is due to a systemic exclusion of the group in the jury process. Duren v. Missouri, 439 U.S. 357, 364 (1979).

2

## II.     A DEFENDANT CAN ESTABLISH A PRIMA FACIE CASE THROUGH THE USE OF STATISTICS.

The courts apply the rule of exclusion when addressing jury discrimination cases. Hernandez v. Texas, 347 U.S. 475, 480 (1954).  A defendant establishes a prima facie case of discrimination pursuant to that rule by demonstrating that there has been a significant under representation of the group in question over a period of time.  Id.  The rule applies to both Equal Protection (Castaneda v. Partida, 430 U.S. at 494-95) and Fair Cross Section claims.  (Duren v. Mississippi, 439 U.S. at 366). See also Patton v. Mississippi, 332 U.S. at 466 (1947); Arnold v. North Carolina, 376 U.S. 773, 774 (1964); Turner v. Fouche, 396 U.S. 346, 360 (1970).

The state cannot prevail on the assertion that the defendant's statistical argument left a "factual vacuum" because he did not identify a particular state official who committed particular act(s) that resulted in the under representation in question. Assuming that there is a "vacuum," the state "must fill [it] by moving in with sufficient evidence to dispel the prima facie case of discrimination." Avery v. Georgian, 345 U.S. 559, 562 (1953).

The Equal Protection provision requires a demonstration that there was a substantial under-representation of the group in question in the venire.  Castaneda v. Partida, 430 U.S. 482, 494 (1977).   In Ford v. Seabold, 841 F.2d 677 (6th Cir.), cert. den., 488 U.S. 928 (1988), the Sixth Circuit addressed how statistics can be utilized to establish a claim of racial disparity in a cross-section argument.  The Ford Court was conducting an analysis of Ford's claim that women had been underrepresented on his petit jury and had asserted a comparative methodology.

The Sixth Circuit began with a straight comparison between Petitioner Ford's case and the situation in Duren. The Sixth Circuit looked at the "crucial question" in determining whether

3

the second prong of the <u>Duren</u> test was met, *i.e.*, were the jury pools consisting of 31.3% and 34.3% women fair and reasonable in relation to the actual percentage of women over eighteen in Scott County (53%), given that in <u>Duren</u>, (where the relevant community was almost identically comprised of 54% women), the Court found that jury venires containing approximately 15% women were not representative of the community.  <u>Ford</u>, at 683-684, citing to <u>Duren</u>, 439 U.S. at 365-66, 99 S.Ct. at 669.[1]

In considering the above 'comparative disparity' figures the Court was asked to consider the standard deviation methodology of <u>Castaneda</u> as a means of assessing the significance of any alleged disparity.  The Sixth Circuit rejected the idea:

> Ford urges the Court to apply "statistical decision theory" (SDT) in determining whether women are substantially underrepresented in the Scott County jury pool. First espoused in Finkelstein, The Application of Statistical Decision Theory to the Jury Discrimination Cases, 80 Harv.L.Rev. 338 (1966), the Supreme Court utilized SDT in support of its decision in <u>Castaneda</u>, 430 U.S. at 496 n. 17, 97 S.Ct. at 1281 n. 17. Castaneda involved a jury challenge under the equal protection clause.

> Ford's expert utilized the chi-square test and resulting probability values to express his findings regarding the statistical significance of the disparity between the expected number of women in the 1980 and 1981 jury pools and the observed number.  Although this Court has declined to decide at what point the assertion that a particular racial result should be rejected as due to chance rather than discriminatory, <u>Mitchell v. Rose</u>, 570 F.2d 129, 134 , rev'd on other grounds, 443 U.S. 545, 99 S.Ct. 2993, 61 L.Ed.2d 739 (1979); most courts have adopted the 0.05 level as significant.

---
[1]

Although the Court noted the lack of women in the jury pools in Ford's case, was not as severe as in Duren.  Because the percentage of women in the community differed only slightly from the percentage of women in the community in <u>Duren</u>, the Sixth Circuit compare the absolute disparity of the two cases, noting that in <u>Duren</u>, the disparity between the percentage of women in the community and the percentage present in the jury venires was 39%, while on the other hand, the disparity in Ford's case was only 21.7% for 1980 and 18.7% for 1981, far below that found unreasonable in <u>Duren</u>.  However, the Sixth Circuit did not decide whether a disparity of 18.7% or 21.7% was unreasonable, because they concluded that women were not systematically excluded during the selection process.

4

A probability value below 0.05 is "generally considered to be statistically significant, i.e., when there is less than a 5% probability that the disparity was due to chance." Coates v. Johnson & Johnson, 756 F.2d 524, 537 (7th Cir.1985). See also D. Baldus and J. Cole, Statistical Proof of Discrimination, § 9.03 at 297 (1980). The analyses conducted by Ford's expert indicates that the probability that a sample would deviate from the population as much as the present sample did was one in one-thousand or 0.001.

We are not convinced, however, that SDT is necessary in the context of a fair-cross-section claim under the sixth amendment.

SDT (Standard Deviation Test) provides:

> a measure of the extent to which a given distribution differs from the theoretical or expected random distribution and a test within mathematically determined limits of accuracy, whether the nature of the observed distribution is so at variance with the expected distribution that the hypothesis of random selection ought to be rejected.

Finklestein, supra, at 352. Thus, SDT may be helpful in determining the likelihood of a particular result and, thus, the extent to which discrimination is responsible for that result. A sixth amendment fair-cross-section claim under Duren, however, does not involve the issue of discrimination as does an equal protection claim. Duren, 439 U.S. at 368 n. 26, 99 S.Ct. at 670 n. 26. This explains the discussion of SDT in Castaneda but not in Duren.

Finally, our rejection of the use of SDT in the context of a fair-cross-section claim is supported by the majority of courts which have considered the issue. See, e.g., United States v. Maskeny, 609 F.2d 183, 190 (5th Cir.), reh'g denied, 448 U.S. 912, 101 S.Ct. 27, 65 L.Ed.2d 1173 (1980); United States v. Jenkins, 496 F.2d 57 (2d Cir.1974), cert. denied, 420 U.S. 925, 95 S.Ct. 1119, 43 L.Ed.2d 394 (1975). See also United States v. Rodriguez, 776 F.2d 1509 (11th Cir.1985). Cf. Alston v. Manson, 791 F.2d 255, 259 (2d Cir.1986) cert. denied, --- U.S. ----, 107 S.Ct. 1285, 94 L.Ed.2d 143 (1987); United States v. LaChance, 788 F.2d 856, 867 (2d Cir.) cert. denied, --- U.S. ----, 107 S.Ct. 271, 93 L.Ed.2d 248 (1986).

Ford, Id.

5

### III. THE COMPOSITIONS OF JURY VENIRES IN OTHER CASES FROM THE SAME JURISDICTION ARE RELEVANT.

Virtually in every case in which the United States Supreme Court has addressed a jury challenge, the defendant has instituted his challenge by citing to venire compositions in other cases, as well as his own case. *See i.e.* Norris v. Alabama, 294 U.S. 587, 590-591 (1935); Hill v. Texas, 316 U.S. 400, 401-402 (1942); Eubanks v. Louisiana, 356 U.S. 584, 585-586 (1958); Campbell v. Louisiana, 523 U.S. 392, 395 (1998); Alexander v. Louisiana, 405 U.S. 625, 626 (1972). The Supreme Court has warned against examining only a single venire when addressing jury discrimination. Patton v. Mississippi, 332 U.S. 463, 468 (1947) ("The above statement of the Mississippi Supreme Court illustrated the unwisdom of attempting to disprove racial discrimination in the selection of jurors by percentage calculations applied to the composition of a single venire").

### IV. THE BURDEN SHIFTS TO THE STATE ONCE A DEFENDANT HAS ESTABLISHED A PRIMA FACIE CASE.

The government has the burden of proof to overcome a prima facie case. Avery v. Georgia, 345 U.S. at 562-3; Reece v. Georgia, 350 U.S. 84, 88 (1955); Turner v. Fouche, 396 U.S. at 360. General denials of discrimination will not rebut a defendant's claim. Norris v. Alabama, 294 U.S. at 598; Smith v. Texas, 311 U.S. 128, 132 (1940) ("If there has been discrimination, whether accomplished ingeniously or ingenuously, the conviction cannot stand); Turner v. Foche, 396 U.S. at 361. Neither will the application of a presumption that public officials do not discriminate. Neal v. Delaware, 103 U.S. 370, 397 (1881) (lower court wrongly applied "violent presumption" that there were no African-Americans who were qualified to sit on

6

a jury); <u>Jones v. Georgia</u>, 389 U.S. 24, 25 (1967) (Court rejects theory that "public officers are presumed to have discharged their sworn official duties" in a non discriminatory manner).

## <u>CONCLUSION</u>

Pursuant to the above Assignments of Error, the petitioner-appellant, Donna Roberts, respectfully requests that this Honorable Court reverse her convictions and remand this case with a new trial order.  In the alternative, the appellant respectfully requests that this Court remand this matter to the to the trial court with an order to grant discovery and to hold an evidentiary hearing on the above issues.

Respectfully submitted,

DAVID L. DOUGHTEN
Counsel for Appellant

## <u>SERVICE</u>

A copy of the foregoing appellant's Brief was served upon Dennis Watkins, Trumbull County Prosecutor and/or LuWayne Annos, Esq. Assistant Trumbull County Prosecutor, Administration Building, 160 High Street, Warren, Ohio 44481, by Regular U. S. mail on this 10th day of October, 2005.

DAVID L. DOUGHTEN
Counsel for Appellant

7

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss. | |
| COUNTY OF TRUMBULL | ) | ELEVENTH DISTRICT |

STATE OF OHIO,

        Plaintiff-Appellee,        **JUDGMENT ENTRY**

- vs -

DONNA ROBERTS,        **CASE NO. 2005-T-0034**

        Defendant-Appellant.

Appellee's motion to exceed the maximum page length of its brief pursuant to Loc.R. 16(D) of the Eleventh District Court of Appeals to thirty-eight (38) pages is hereby granted.

_____
JUDGE COLLEEN MARY O'TOOLE

FILED
COURT OF APPEALS

JAN 0 6 2006

TRUMBULL COUNTY, OH
KAREN INFANTE ALLEN, CLERK

IN THE ELEVENTH DISTRICT COURT OF APPEALS
TRUMBULL COUNTY, OHIO

SEP 0 _ 2006
TRUMBULL COUNTY, OH
KAREN INFANTE ALLEN, CLERK

STATE OF OHIO,                          )
                                        )
        Plaintiff-Appellee             )       CASE No. 2005-T-0034
-vs-                                    )
                                        )       Appeal from the Trumbull
                                        )       County Court of Common Pleas
DONNA ROBERTS,                          )       Case No. 01-CR-793
                                        )
        Defendant-Appellant            )       JOINT MOTION TO STAY
                                        )       PROCEEDINGS

        Now comes the Defendant-Appellant, Donna Roberts and the Plaintiff-Appellee, The

State of Ohio, by and through the undersigned counsel, and jointly moves this Court to stay all

further proceedings in the above-captioned matter following the mandate issued by the Ohio

Supreme Court in *State v. Roberts*, 110 Ohio St. 3d 71, 2006-Ohio-3665.

        For cause, this Court conducted oral arguments in this matter, an appeal of Appellant's

postconviction relief denial, on January 12, 2006. No written opinion has issued as of this

writing. Meanwhile, the Ohio Supreme Court decided Appellant's direct appeal of her

conviction and death sentence on Aug. 2, 2006. The court affirmed her conviction, but vacated

her death sentence and remanded it to the trial court for a new sentencing hearing. As such,

certain portions of the trial court's decision now before this Court may be rendered moot by its

actions at the newly ordered sentencing hearing.



For these reasons, undersigned counsel requests that this Court stay its written opinion until such time as the trial court conducts another sentencing hearing.

Respectfully submitted,

DAVID L. DOUGHTEN (#0002847)
4403 St. Clair Ave.
Cleveland, Ohio  44103
(216) 361-1112

LuWAYNE ANNOS (#0055651)
Assistant Prosecuting Attorney
Trumbull County Prosecutor's Office
160 High St. 4th Floor
Warren, Ohio  44481
Telephone: (330) 675-2426

COUNSEL FOR DEFENDANT-APPELLANT
DONNA ROBERTS

COUNSEL FOR PLAINTIFF-
APPELLEE, THE STATE OF
OHIO

PROOF OF SERVICE

I do hereby certify that a copy of the foregoing motion was sent by ordinary U.S. Mail to Atty. LuWayne Annos, Assistant Prosecuting Attorney (#0055651), Counsel for the State of Ohio 160 High St. 4th Floor, Warren, Ohio 44481, and Atty. David L. Doughten (#0002847), Counsel for Donna Roberts,  4403 St. Clair Ave.  Cleveland, Ohio 44103 on this 1st Day of Sept.., 2006.

DAVID L. DOUGHTEN(#0002847)

LuWAYNE ANNOS (#0055651)

STATE OF OHIO   )   IN THE COURT OF APPEALS

         )SS.

COUNTY OF TRUMBULL  )   ELEVENTH DISTRICT


STATE OF OHIO,

    Plaintiff-Appellee,

             **JUDGMENT ENTRY**

  - vs -

             **CASE NO.  2005-T-0034**

   DONNA ROBERTS,

    Defendant-Appellant.

**FILED**

**COURT OF APPEALS**

**SEP 1 8 2006**

**TRUMBULL COUNTY, OH**
**KAREN INFANTE ALLEN, CLERK** This matter is currently pending before this court on appellant's appeal of

a judgment entry denying her motion for postconviction relief.

On September 1, 2006, the parties filed a joint motion to stay the

proceedings.  The basis for the motion is that the Supreme Court of Ohio has

recently issued an opinion in appellant's direct appeal.[1]   Therein, the court

vacated appellant's sentence and remanded the matter to the trial court for

resentencing.[2]   The parties argue that certain portions of appellant's appeal to

this court could become moot due to the trial court's resentencing.

Upon consideration and for good cause shown, the parties' joint motion to

stay the proceedings is granted.  Counsel for both parties are instructed to

submit verification to this court of the trial court's new judgment entry of

sentence.  This shall occur within ten days of the filing of the new judgment entry.

In addition, within thirty days of the trial court issuing its new judgment entry of

---

1. *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665.
2. Id. at ¶167.

sentence, the parties are instructed to notify this court, by way of written memoranda, of the effect the new judgment entry has on this appeal.

JUDGE WILLIAM M. O'NEILL

DONALD R. FORD, P.J.,

DIANE V. GRENDELL, J.,

concur.

**FILED**
**COURT OF APPEALS**

SEP 1 8 2006

TRUMBULL COUNTY, OH
KAREN INFANTE ALLEN, CLERK

2

# THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **MEMORANDUM OPINION** |
| Plaintiff-Appellee, | : | **CASE NO. 2005-T-0034** |
| - vs - | : | **FILED**<br>COURT OF APPEALS |
| DONNA ROBERTS, | : | OCT 2 2 2007 |
| Defendant-Appellant. | : | TRUMBULL COUNTY, OH<br>KAREN INFANTE ALLEN, CLERK |

Civil Appeal from the Court of Common Pleas, Case No. 01CR 793.

Judgment: Appeal dismissed.

*Dennis Watkins*, Trumbull County Prosecutor, Administration Building, Fourth Floor, 160 High Street, N.W., Warren, OH 44481-1092 (For Plaintiff-Appellee).

*David L. Doughten*, 4403 St. Clair Avenue, Cleveland, OH 44103-1125 (For Defendant-Appellant).

TIMOTHY P. CANNON, J.

{¶1}   The instant appeal stems from a judgment of the Trumbull County Court of Common Pleas, issued on February 11, 2005. In that judgment, the trial court granted the state's motion to dismiss the original and amended petitions for postconviction relief of appellant, Donna Roberts. As the grounds for its determination, the trial court held that appellant was not entitled to go forward on each of her five claims because either: (1) she had failed to present any evidentiary materials in support of the claim; (2) the claim was barred under res judicata; or (3) the allegations in the claim were insufficient

to warrant postconviction relief.

{¶2}    Our review of the trial record indicates that appellant was convicted of two counts of aggravated murder, one count of aggravated burglary, and one count of aggravated robbery.  Each of these charges were predicated upon the shooting death of her ex-husband, Robert Fingerhut.  In June 2004, the jury returned a verdict in which it recommended that appellant be given the death penalty for the aggravated murder. The trial court subsequently adopted the recommendation and imposed a sentence of death, as well as two separate ten-year sentences for the remaining two offenses.

{¶3}    Immediately following her conviction, appellant pursued an appeal to the Supreme Court of Ohio.  While that appeal was pending, appellant filed her original and amended petitions for postconviction relief before the trial court.  As was noted above, the trial court entered judgment against appellant as to both petitions in March 2005, and this appeal was then filed with this court.

{¶4}    During the pendency of the instant appeal, the Supreme Court rendered its decision concerning the propriety of the trial proceedings in the underlying criminal case.  Although appellant's conviction was upheld in all respects, the Supreme Court concluded that two errors had occurred during the penalty phase of the trial.  Thus, the Supreme Court vacated the imposition of the death penalty and remanded the case to the trial court for further proceedings.  See *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665.

{¶5}    As a basic proposition, a final judgment has not been issued in a criminal case unless the trial court has journalized a formal entry which, inter alia, contains a statement of the verdict and the imposition of sentence.  *State v. Ginocchio* (1987), 38

2

Ohio App.3d 105.  As a result, when the Supreme Court released the *Roberts* opinion, its holding had the obvious effect of vacating the final order in the underlying case.  That is, even though a proper final judgment was released at one point in appellant's criminal case, such a judgment does not exist at this time.

{¶6}    In relation to the submission of a postconviction petition, R.C. 2953.21(A) provides that a person may file such a petition when he has been convicted of a criminal offense and can justifiably claim that "there was such a denial or infringement of [his] rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States, ***."  The statute further provides that, as part of the petition for relief, the person can request the trial court to set aside the underlying "judgment or sentence ***."  In light of these provisions, this court holds that a petition for postconviction relief is not properly before the trial court for consideration unless a valid final judgment exists as to the entire criminal proceeding; i.e., not only must there be a formal entry which sets forth the verdict against the defendant, but the imposed sentence must also be delineated.

{¶7}    Given the interplay between the existence of a final judgment and the filing of a proper petition for postconviction relief, it logically follows that when the Supreme Court vacated appellant's sentence, its ruling also had the effect of nullifying all of the proceedings in regard to her original and amended postconviction petitions.  This would include the trial court's judgment granting the state's motion to dismiss appellant's two petitions.  Hence, this court ultimately concludes that the instant appeal is no longer properly before us because the appealed judgment is not a final appealable order at this time.

3

{¶8}   As an aside, this court would also indicate that, although the scope of the Supreme Court's remand was somewhat limited, it is feasible that the new proceedings before the trial court could lead to additional constitutional claims which could only be raised in a postconviction petition.  Therefore, if we were to allow the appeal to proceed, appellant might be required to file a new postconviction petition which, in turn, could lead to a second appeal.  In light of the possibility of needless confusion, logic dictates that the interests of appellant and appellee would be better served if the postconviction process was started anew once the trial court has rendered a new final judgment in the criminal proceeding.

{¶9}   Since a proper final judgment as to appellant's postconviction petitions does not exist at this time, this court lacks the requisite jurisdiction to go forward with this appeal.  Accordingly, it is the sua sponte order of this court that the instant appeal is hereby dismissed for lack of jurisdiction.

DIANE V. GRENDELL, J.,

MARY JANE TRAPP, J.,

concur.

4

STATE OF OHIO )
)SS.
COUNTY OF TRUMBULL )

IN THE COURT OF APPEALS

ELEVENTH DISTRICT

STATE OF OHIO,

        Plaintiff-Appellee,

- vs -

DONNA ROBERTS,

        Defendant-Appellant.

**JUDGMENT ENTRY**

**CASE NO. 2005-T-0034**

M A N D A T E

COMMON PLEAS
CASE NO. 2001 CR 793

    For the reasons stated in the Memorandum Opinion of this court, it is the sua sponte order of this court that the instant appeal is hereby dismissed for lack of jurisdiction.

JUDGE TIMOTHY P. CANNON

FOR THE COURT

**F I L E D**
COURT OF APPEALS

OCT 2 2 2007

TRUMBULL COUNTY, OH
KAREN INFANTE ALLEN, CLERK

VOL **1152** PAGE **627**



FILED

# The Supreme Court of Ohio

OCT 22 2013

CLERK OF COURT
SUPREME COURT OF OHIO

State of Ohio

v.

Donna Marie Roberts

Case No. 2007-2288

JUDGMENT ENTRY

APPEAL FROM THE
COURT OF COMMON PLEAS

This cause, here on appeal from the Court of Common Pleas for Trumbull County, was considered in the manner prescribed by law. On consideration thereof, the death sentence is vacated and this cause is remanded to the trial court for resentencing on the basis of the existing record, consistent with the opinion rendered herein.

It is further ordered that mandates be sent to and filed with the clerks of the Court of Appeals for Trumbull County and the Court of Common Pleas for Trumbull County.

(Trumbull County Court of Common Pleas; No. 01CR793)

03 TR 56
05 TR 34

Maureen O'Connor
Chief Justice

FILED
COURT OF APPEALS

NOV 18 2013

TRUMBULL COUNTY, OH
KAREN INFANTE ALLEN, CLERK

10-22-13        07-2288

Nov.   13    8