**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **Donna Roberts,** | : | |
| | : | |
| Petitioner, | : | **Case No. 4:21-CV-368** |
| | : | |
| v. | : | **Judge Polster** |
| | : | |
| **Warden, Marysville Correctional** | : | |
| | : | |
| Respondent. | : | ***Death Penalty Case*** |

---

**WARDEN'S ANSWER TO
ROBERTS DOC. 10
HABEAS PETITION**

---

Roberts is a prisoner on Ohio's death row and consequently "in custody" such that the Court has jurisdiction to adjudicate his habeas petition. This Court should deny habeas relief for the following reasons.

<div style="margin-left: 50%;">

Respectfully submitted,

**DAVE YOST**
Attorney General

s/Stephen E. Maher

---

Stephen E. Maher (0032279)
Assistant Attorney General, Capital Crimes Section
30 East Broad Street, 23rd Floor

Columbus, Ohio 43215

(6l4) 728-7055 (desk) (614) 644-8328

Email:stephen.maher@ohioAGO.gov
**COUNSEL FOR RESPONDENT**

</div>

# Table of Contents

**Response to habeas claim 1:** Where there is no clearly established SCOTUS precedent to require the re-opening of a concluded penalty phase proceeding, and no precedent to require the vacating of a prior waiver of mitigation, and no precedent to require the post-trial presentation of brand-new mitigation evidence, habeas relief is precluded under 2254(d)(1). ........................................................................................... 1

**Response to habeas claim 2:** Where Roberts failed to present on the third direct appeal a claim of ineffective assistance of trial defense counsel for alleged inadequate mitigation investigation, despite an express invitation by the Ohio Supreme Court to do so as stated in the second direct appeal opinion, relief is precluded for failure of fair presentment under O'Sullivan v. Boerckel, 526 U.S. 838, 844 (1999)................. 7

**Response to habeas claim 3 and habeas claim 9**: Where the Ohio Supreme Court rejected on the facts Roberts allegations that the trial court and trial defense counsel erred in respect to her waiver of mitigation, habeas relief is precluded since the unrebutted findings of fact by the Ohio Supreme Court that Roberts properly waived mitigation are afforded deference under 2254(d)(2) and a presumption of correctness under 2254(e)(1)....................................................................................... 11

i

**Response to habeas claim 4**: Where the 11th Dist. state court of appeals rejected on the facts Roberts allegations that the trial defense counsel were ineffective during the trial phase, habeas relief is precluded for defective pleading and because the unrebutted findings of fact by the 11th Dist. state court of appeals that trial counsel were not ineffective are afforded deference under 2254(d)(2) and a presumption of correctness under 2254(e)(1). ...................................................................................... 17

**Response to habeas claim 5**: By ignoring the express, explicit, and exhaustively explained denial by the Ohio Supreme Court, relief should be denied for defective pleading, and in addition because of Roberts failure to show an unreasonable state court adjudication under AEDPA. ............................................................................ 25

**Response to habeas claim 6**: By ignoring the express, explicit, and exhaustively explained denial by the Ohio Supreme Court, relief should be denied for defective pleading, and in addition relief should be denied because of Roberts failure to rebut by clear and convincing evidence, as required under 2254(e)(1), the state court factual finding that the two prospective jurors in question were eligible to serve as jurors. 30

**Response to habeas claim 7:** By ignoring the express, explicit, and exhaustively explained denial by the Ohio Supreme Court, relief should be denied for defective pleading, and in addition because of Roberts failure to rebut the factual finding of competence by clear and convincing evidence as required under 2254(e)(1). ........... 35

ii

**Response to habeas claim 8**: Relief should be denied under *Ylst v. Nunnemaker*, 501 U.S. 797 (1991) where Roberts attacks the sentencing opinion of the trial court, instead of the independent sentencing opinion by the Ohio Supreme Court that is the "last reasoned opinion" pertinent to habeas claim 8. ................................................. 40

**Response to habeas claim 10**: There being no right under the federal constitution to prevent the orderly transition of a new trial judge to replace the former trial judge who died, relief on habeas claim 1 should be denied for noncognizability. ............... 43

**Response to habeas claim 11**: The assessment of evidence to determine whether a state court post-conviction petitioner is entitled to a post-conviction evidentiary hearing is a matter of state law such that relief on habeas claim 11 should be denied for lack of cognizability. ............................................................................... 46

**Response to habeas claim 12**: The Ohio Supreme Court properly determined that the taking of the decedent's car just after his murder was sufficient evidence to support a robbery charge such that habeas relief should be denied. ........................ 49

**Response to habeas claim 13**: Habeas relief is precluded due to failure of fair presentment under O'Sullivan v. Boerckel, 526 U.S. 838, 844 (1999), where the

corresponding state court claim was expressly waived by Roberts and withdrawn by her from consideration by the 11th Dist. state court of appeals................................ 51

**Response to habeas claim 14 and habeas claim 15**: Boilerplate claims of unconstitutionality do not warrant habeas relief....................................................... 53

**Response to habeas claim 1: Where there is no clearly established SCOTUS precedent to require the re-opening of a concluded penalty phase proceeding, and no precedent to require the vacating of a prior waiver of mitigation, and no precedent to require the post-trial presentation of brand-new mitigation evidence, habeas relief is precluded under 2254(d)(1).**

During the original trial, Roberts made clear, through her own personal actions and words, that she was waiving the presentation of mitigation evidence. Then, instead of presenting mitigation evidence, Roberts made an unsworn statement to the jury, saying that the jury should impose a death sentence. On appeal, after rejecting one-by-one Roberts factual and legal contentions, the Ohio Supreme Court concluded that Roberts properly decided to waive the presentation of mitigating evidence. See *State v. Roberts*, 110 Ohio St. 3d 71, P132-P145 (2006).

The determination by the Ohio Supreme Court that Roberts properly waived the presentation of mitigation evidence is a finding of fact entitled to deference under 2254(d)(2) and a presumption of correctness under 2254(e)(1). See *Williams v. Taylor*, 529 U.S. 362, 388 (2000). ("While this provision [2254(d)(2)] is not before us in this case, it provides relevant context for our interpretation of § 2254(d)(1); in this respect, it bolsters our conviction that federal habeas courts must make as the starting point of their analysis the state courts' determinations of fact, including that aspect of a 'mixed question' that rests on a finding of fact. AEDPA plainly sought to ensure a level of 'deference to the determinations of state courts,' provided those determinations did not conflict with federal law or apply federal law in an unreasonable way."); see also See *Williams v. Houk*, 2013 U. S. Dist. LEXIS 200221 ("A determination by a state trial court that a habeas petitioner was competent to

1

stand trial is a finding of fact that is entitled to the presumption of correctness for purposes of federal habeas review.' *Hastings v. Yukins*, 194 F. Supp. 2d 659, 670 (E.D. Mich. 2002) (citing *Maggio v. Fulford*, 462 U.S. 111, 117 (1983); *Mackey v. Dutton*, 217 F.3d 399, 412 (6th Cir. 2000)).")

After the Ohio Supreme Court ordered a resentencing proceeding to afford the trial judge an opportunity to personally write a sentencing opinion and consider Roberts allocution, Roberts used the remand proceedings to try to vacate the prior waiver of mitigation and present, for the first time, mitigation evidence that could have been presented at trial, and that would have been presented at trial but for Roberts waiver of mitigation. The trial court refused to allow the presentation of new mitigation evidence since that was outside the scope of the limited remand. See *State v. Roberts*, 137 Ohio St. 3d 230, P12-P13.

On appeal to the Ohio Supreme Court, Roberts contended that the trial judge was required on remand to allow the admission of new mitigation evidence under the rule in *Lockett v. Ohio*, 438 U.S. 586 (1978), *Eddings v. Oklahoma*, 455 U.S. 104, 112 (1982), *Skipper v. South Carolina*, 476 U.S. 1, 4-5 (1986), and *Hitchcock v. Dugger*, 481 U.S. 393, 394 (1987). See Doc. 12-6, State Court Record, Roberts Merit Brief to the Ohio Supreme Court, Page ID 8822-8842.

In *Lockett*, the Court held that relevant mitigation evidence could not be excluded from the death penalty sentencing phase of the trial. In *Eddings*, *Skipper*, and *Hitchcock*, the Court applied the *Lockett* rule to mental health evidence (*Eddings*), good behavior in prison (*Skipper*), and mental health evidence (*Hitchcock*).

The Ohio Supreme Court rejected Roberts contention, noting that the *Lockett* rule applied in a trial setting during the penalty phase of an ongoing capital case. See *State v. Roberts*, 137 Ohio St. 3d 230, P30. That procedural circumstance was absent in Roberts case, where the capital trial itself had already concluded. The Ohio Supreme Court noted that "Each case in the *Lockett-Eddings-Skipper-Hitchcock* tetralogy involved the trial court's exclusion of, or refusal to consider, evidence in the original sentencing proceeding. None of these cases involved a proceeding on remand." *Id.,* at P34; *Id.,* at P35 ("In other words, neither *Lockett* nor any of its progeny required the trial court to reopen the evidence after an error-free evidentiary hearing had already taken place.")

In habeas claim 1, Roberts does not explain how the conclusion of law by the Ohio Supreme Court that "neither *Lockett* nor any of its progeny required the trial court to reopen the evidence after an error-free evidentiary hearing had already taken place" violates AEDPA parameters.

Instead, the text of habeas claim 1 is written as if Roberts hadn't expressly waived mitigation when she had the opportunity to present mitigation evidence during the penalty phase of the trial. See Doc. 10, habeas petition, claim 1, Page ID 94-109. There is no acknowledgement in the text of habeas claim 1 that Roberts had previously waived the presentation of mitigation evidence, and no acknowledgment that the Ohio Supreme Court determined that Roberts waiver of mitigation was valid. See *State v. Roberts*, 110 Ohio St. 3d 71, P145 (2006). ("In any event, the record reflects that the trial judge complied with the [*State v.*] *Ashworth* [85 Ohio St. 3d 56, 1999)] requirements. We reject Roberts's claims of error in the trial court's decisions with respect to her decision to waive mitigating evidence.")

To the contrary, when Roberts had the opportunity to present mitigation evidence, she emphatically declined. See *State v. Roberts,* 110 Ohio St. 3d 71, P133

3

(2006). ("The judge then inquired as to whether Roberts had instructed her attorneys not to present such evidence; she confirmed that the court's understanding was correct. Roberts explained to the trial judge that she had talked with her attorneys, family, and friends before declaring, 'I know what I am doing. I explained to everyone that cares why I am doing it.'")

Under these circumstances, relief on habeas claim 1 is precluded under 2254(d)(1) for the lack of clearly established SCOTUS precedent. While the *Lockett* line of cases address trial rights regarding the admission of mitigation evidence during a yet-to-be decided penalty phase of an ongoing capital trial, SCOTUS has not extended that rule to apply to remand proceedings where the defendant, like Roberts, had already validly waived the presentation of mitigation evidence.

In rejecting Roberts argument that the *Lockett* line of cases applied to the limited remand proceedings, the Ohio Supreme Court noted that Roberts view of the law "could result in arbitrary distinctions between similarly situated capital defendants." See *State v. Roberts*, 137 Ohio St. 3d 230, P37-P38 (2013). (noting that the "arbitrary distinction" would be between those capital defendants who received a limited remand on direct appeal versus those capital defendants whose appeal was completed in the initial direct appeal).

Under these circumstances, relief on habeas claim 1 is precluded under 2254(d)(1) for lack of clearly established SCOTUS precedent. There is no precedent about whether a defendant who properly waived mitigation at the penalty phase of a capital trial can nevertheless revoke the waiver of mitigation and start fresh with a new mitigation case simply because of a "limited remand" that did not call for a new mitigation presentation.

The first task of a habeas court is to determine what, if any, "clearly established precedent" applies to the habeas claim. See *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003) ("As a threshold matter here, we first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.' § 2254(d)(1).")

 If the answer is "there is none," meaning that there is no "clearly established SCOTUS precedent," then habeas relief must be denied. See *Chinn v. Warden*, 2022 U.S. App. LEXIS 3217, at *21 (" To put a fine point on it: neither *Weary* [v. Cain, 577 U.S. 385 (2016)] nor any case from the Supreme Court controls with sufficient granularity. Under AEDPA, we must ask whether there is any Supreme Court precedent that would compel every fairminded jurist to hold that the State committed a *Brady* error here. As there is none, fairminded jurists could debate whether the 'clearly established rule' does or does not apply to the 'set of facts' at hand. *White* [v. Woodall], 572 U.S. at 427. "If such disagreement is possible, then the petitioner's claim must be denied." *Sexton v. Beaudreaux*, 138 S. Ct. 2555, 2558, 201 L. Ed. 2d 986 (2018) (per curiam).

It is true that the *Lockett-Eddings-Skipper-Hitchcock* line of cases is most closely analogous to the facts before the state courts in *State v. Roberts* of a remand for resentencing following a waiver of mitigation at the original trial. But these SCOTUS cases do not answer questions about undoing a valid waiver of mitigation at trial. These SCOTUS cases do not answer questions about whether a completed

5

penalty phase can be "reopened" simply due the happenstance of a "limited remand" back to the trial court.

In short, while the *Lockett-Eddings-Skipper-Hitchcock* line of cases are relevant here, they are plainly not "dispositive." This line of cases is not dispositive because of the unanswered questions about their application, if any, to vacating a waiver of mitigation on a "limited remand" that did not otherwise allow for the re-do of the original mitigation case. See *Carey v. Musladin*, 549 U.S. 70, 77 (2006) ("Given the lack of holdings from this Court regarding the potentially prejudicial effect of spectators' courtroom conduct of the kind involved here, it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.' § 2254(d)(1). No holding of this Court required the California Court of Appeal to apply the test of *Williams* and *Flynn* to the spectators' conduct here. Therefore, the state court's decision was not contrary to or an unreasonable application of clearly established federal law.")

Under these circumstances of the lack of "clearly established precedent," relief on habeas claim 1 is precluded by 2254(d)(1). Relief is additionally precluded because Roberts has not shown error of fact under 2254(d) or 2254(e)(1) sufficient to overturn the factual finding of the Ohio Supreme Court that during the penalty phase of her capital trial Roberts properly waived the presentation of mitigation evidence.

6

**Response to habeas claim 2: Where Roberts failed to present on the third direct appeal a claim of ineffective assistance of trial defense counsel for alleged inadequate mitigation investigation, despite an express invitation by the Ohio Supreme Court to do so as stated in the second direct appeal opinion, relief is precluded for failure of fair presentment under O'Sullivan v. Boerckel, 526 U.S. 838, 844 (1999).**

In Proposition of Law 8 on the initial direct appeal, Roberts alleged that trial counsel were ineffective for not "ensur[ing] that Roberts "underst[ood] the ramifications of a waiver of evidence in the penalty phase." See Doc. 12-4, State Court Record, Roberts direct appeal brief, proposition of law 8, Page ID 8296-8297.

Importantly, nowhere in the text of Proposition of Law 8 on the initial direct appeal did Roberts claim that trial defense counsel were guilty of a "deficient mitigation investigation." See Doc. 10, Habeas claim 2, Page ID 120, paragraph 230.

It is noteworthy that in Proposition of Law 8 on the initial direct appeal Roberts did not cite to the trial record. Instead, the arguments raised in Proposition of Law 8 on the initial direct appeal relied on conclusory allegations only. Roberts failed to direct the Ohio Supreme Court to any portion of the trial record that could arguably support the otherwise unsubstantiated and conclusory allegations that Roberts simply did not understand the information provided to her by trial defense counsel.

The Ohio Supreme Court rejected Proposition of Law 8 from the original direct appeal on the facts. Specifically, the Ohio Supreme Court found that:

> The record shows that Roberts understood what she was
>
> doing when she decided to present only her unsworn
>
> statement during the mitigation hearing. The record also

7

> establishes that the trial court explained sufficiently the
> ramifications of that decision, that Roberts essentially
> told the trial court that she was not presenting additional
> mitigating evidence because she wanted to be given a
> death sentence, and that she disregarded her attorneys'
> advice and instead directed them not to present any
> mitigating evidence beyond her unsworn statement.
>
> *State v. Roberts*, 110 Ohio St. 3d 71, P148 (2006).

The express finding of fact by the Ohio Supreme Court in the original direct appeal that Roberts "understood what she was doing" is entitled to deference under 2254(d) and a presumption of correctness under 2254(e)(1). See *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). ("Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2); see also *Williams*, 529 U.S., at 399 (opinion of O'CONNOR, J.).")

In the text of habeas claim 2, Roberts says nothing about these state court findings of fact. Moreover, Roberts says nothing in the text of habeas claim 2 about why these state court findings of fact should not be afforded deference under 2254(d)(2) or a presumption of correctness under 2254(e)(1). Consequently, the state

court findings of fact are unrebutted and entitled to deference such that relief on habeas claim 2 is not warranted.

On the second direct appeal, in Proposition of Law 5 Roberts for the first time raised a claim of ineffective assistance of trial counsel for alleged deficient mitigation investigation. See Doc. 12-6, State Court Record, Roberts second Direct Appeal brief, Proposition of Law 5, Page ID 8853-8858. Roberts acknowledged that "The ineffectiveness of penalty phase counsel was not raised in *Roberts I* [the initial direct appeal.]" *Id.,* Page ID 8854.

Because the on the second direct appeal the Ohio Supreme Court was ordering another remand, it concluded that the adjudication of Proposition of Law 5 on the second direct appeal would be deferred, to be taken up if the new sentence returned was a death sentence. See *State v. Roberts*, 137 Ohio St. 3d 230, P80 (2013).

In her third direct appeal brief, Roberts did not renew her prior claim of ineffective assistance of trial counsel for inadequate mitigation phase investigation. Instead, all four assignments of error were directed against the trial court for alleged trial court errors. See Doc. 12-9, State Court Record, Roberts third Direct Appeal brief, Page ID 9415-9442.

Under these circumstances, relief on habeas claim 2 is precluded for failure of fair presentment where on her third direct appeal Roberts, could have, but did not, raise a claim of ineffective assistance of trial defense counsel for alleged inadequate mitigation investigation. See *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999). ("Because the exhaustion doctrine is designed to give the state courts a full and fair

9

opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, we conclude that state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.")

This waiver of the claim by Roberts is plain to see especially where the Ohio Supreme Court in the second direct appeal opinion expressly allowed Roberts to assert a claim of ineffective assistance of counsel for inadequate mitigation phase investigation on the third direct appeal. See *State v. Roberts*, 137 Ohio St. 3d 230, P80 (2013).

Roberts failure to properly present a claim of ineffective assistance of trial counsel on her third direct appeal, despite an express invitation to do so by the Ohio Supreme Court in their opinion from the second direct appeal, amounts to a waiver that can not be cured. This waiver cannot be cured since Roberts failure to claim error deprived the Ohio Supreme Court from having any opportunity to adjudicate the claim.

Roberts failure to assert a claim of ineffective assistance of trial counsel for alleged inadequate mitigation investigation means that habeas relief is precluded due to waiver. See *Wood v. Milyard*, 566 U.S. 463, 470, footnote 4 ("We note here the distinction between defenses that are 'waived' and those that are 'forfeited.' ***A waived claim or defense is one that a party has knowingly and intelligently relinquished***; a forfeited plea is one that a party has merely failed to

preserve. *Kontrick v. Ryan*, 540 U.S. 443, 458, n. 13 (2004); *United States v. Olano*, 507 U.S. 725, 733 (1993). That distinction is key to our decision in Wood's case.")

Under these circumstances, habeas relief should be denied for failure of fair presentment under *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999).  See *Donley v. Warden*, 2021 U.S. Dist. LEXIS 190536, at *8-*9 (SDO, Merz, Magistrate Judge.) ("Failure to present an issue to the state supreme court on discretionary review constitutes procedural default. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) (citations omitted). 'Even if the state court failed to reject a claim on a procedural ground, the petitioner is also in procedural default 'by failing to raise a claim in state court, and pursue that claim through the state's ordinary appellate procedures.' *Thompson v. Bell*, 580 F.3d 423, 437 (6th Cir. 2009), citing *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006)(quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 846-7 (1999)); see also *Deitz v. Money*, 391 F.3d 804, 808 (6th Cir. 2004) ('A federal court is also barred from hearing issues that could have been raised in the state courts, but were not[.]').")

Under these circumstances, this Court should deny relief on habeas claim 2 for failure of fair presentment as well as waiver.

**Response to habeas claim 3 and habeas claim 9: Where the Ohio Supreme Court rejected on the facts Roberts allegations that the trial court and trial defense counsel erred in respect to her waiver of mitigation, habeas relief is precluded since the unrebutted findings of fact by the Ohio Supreme Court that Roberts properly waived mitigation are afforded deference under 2254(d)(2) and a presumption of correctness under 2254(e)(1).**

In Proposition of Law 8 on the initial direct appeal, Roberts alleged ineffective assistance of trial defense counsel for supposed failure to adequately explain to her

11

the consequences of a waiver of the presentation of mitigation evidence. See Doc. 12-4, State Court Record, Roberts initial direct appeal brief, Page ID 8296-8297. Importantly, nowhere in the text of Proposition of Law 8 on the initial direct appeal did Roberts claim that trial defense counsel were guilty of a "deficient mitigation investigation." See Doc. 10, Habeas claim 3, Page ID 121-124.

In other words, although Roberts on the initial direct appeal could have claimed trial defense counsel were ineffective due to a supposed deficient mitigation investigation, she did not. All the was alleged by Roberts in the initial direct appeal was that trial defense counsel were ineffective due to supposedly inadequate advice regarding the consequences of a waiver of mitigation.

It is noteworthy that in Proposition of Law 8 on the initial direct appeal Roberts did not cite to the trial record. Instead, the arguments raised in Proposition of Law 8 on the initial direct appeal relied on conclusory allegations only. Roberts failed to direct the Ohio Supreme Court to any portion of the trial record that could arguably support the otherwise unsubstantiated and conclusory allegations that Roberts simply did not understand the information provided to her by trial defense counsel.

The Ohio Supreme Court rejected Proposition of Law 8 from the original direct appeal on the facts. Specifically, the Ohio Supreme Court found that:

> The record shows that Roberts understood what she was
>
> doing when she decided to present only her unsworn
>
> statement during the mitigation hearing. The record also

> establishes that the trial court explained sufficiently the
> ramifications of that decision, that Roberts essentially
> told the trial court that she was not presenting additional
> mitigating evidence because she wanted to be given a
> death sentence, and that she disregarded her attorneys'
> advice and instead directed them not to present any
> mitigating evidence beyond her unsworn statement.

*State v. Roberts*, 110 Ohio St. 3d 71, P148 (2006).

The express findings of fact by the Ohio Supreme Court in the original direct appeal at P148, and throughout the opinion,  are entitled to deference under 2254(d) and a presumption of correctness under 2254(e)(1). See *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). ("Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2); see also *Williams*, 529 U.S., at 399 (opinion of O'CONNOR, J.).")

In the text of habeas claim 3, Roberts says nothing about these state court findings of fact that Roberts properly waived the presentation of mitigation evidence during the penalty phase of her capital case.  Moreover, Roberts says nothing in the text of habeas claim 3 about why these state court findings of fact should not be

afforded deference under 2254(d)(2) or should not be afforded a presumption of correctness under 2254(e)(1).

Consequently, the state court findings of fact that Roberts properly waived mitigation are unrebutted and entitled to deference and a presumption of correctness such that relief on habeas claim 3 is not warranted.

In the text of habeas claim 3, Roberts cites to portions of the trial record that show that both trial defense counsel expressly informed the trial court that Roberts was acting competently in the waiver of mitigation. See Doc. 10, habeas claim 3, Page ID 124. Whatever effect these record excerpts may have, they do not rebut, but rather support, the state court findings of fact that Roberts had enough mental wherewithal to competently and properly waive mitigation.

These objective facts referred to by Roberts are not altered simply by Roberts *characterization* of these objective facts as showing ignorance or ineptitude by trial defense counsel. For example, in the text of habeas claim 3, Roberts cited to the trial record that shows both trial defense counsel telling the trial judge that they both believed that Roberts adequately understood the consequences of a waiver of mitigation. See Doc. 10, habeas claim 3, Page ID 124. This trial event is an objective fact that was relied upon by the Ohio Supreme Court in its rejection on the facts of the initial direct appeal.

In the text of habeas claim 3, Roberts mere allegation that this objective fact shows ineffective assistance of counsel is not the real factual analysis called for under

14

the AEDPA standard of review but rather simply an empty rhetorical exhortation rather.

In similar fashion, the few record excerpts cited by Roberts in the text of habeas claim 3 refer generically to Roberts mental health evidence that was presented at trial. One excerpt from habeas claim 3 confirms that "trial counsel were aware of Ms. Roberts previous psychiatric health issues and traumatic brain injury." See Doc. 10, Habeas Petition, habeas claims 3, Page ID 123. Next, Roberts refers to the trial testimony of Dr. Eberle, who testified that Ms. Roberts was competent to waive the presentation of mitigation evidence. See Doc. 10, Habeas Petition, habeas claims 3, Page ID 123.

The point is that there are no facts cited, and no argument presented, in the text of habeas claim 3 that would undermine the deference under 2254(d) to the finding of fact by the Ohio Supreme Court that Roberts was competent to waive mitigation. There are no facts cited, and no argument presented, in the text of habeas claim 3 to rebut the presumption of correctness under 2254(e)(1) of the finding of fact by the Ohio Supreme Court that Roberts was competent to waive mitigation.

What that means is that relief on habeas claim 3 is precluded for Robert's failure to show any reason why the findings of fact by the Ohio Supreme Court that Roberts was competent to waive mitigation is not worthy of deference under 2254(d) or a presumption of correctness under 2254(e)(1).

It is well settled that the habeas petitioner alone carries the burden to show supposed reasons why the state court adjudication is flawed under AEDPA. See

*Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) ("Rather, it is the habeas applicant's burden to show that the state court applied *Strickland* to the facts of his case in an objectively unreasonable manner.")

In this case, Roberts has failed to carry that burden to show how or why the finding of fact by the Ohio Supreme Court could be or should be disregarded under AEDPA.

Regarding habeas claim 9, Roberts asserted in Proposition of Law 1 that the trial court erred in finding Roberts to have properly waived mitigation. See Doc. 12-4, State Court Record, Roberts initial Direct Appeal Brief, Proposition of Law 1, Page ID 8263-8268.

In the decision issued in the initial direct appeal, the Ohio Supreme Court denied relief on both Proposition of Law 1 and Proposition of Law 8 where Roberts had alleged error in the acceptance of her waiver of mitigation. Relying on the facts, the Ohio Supreme Court concluded that neither the trial court (Prop.1) nor the trial defense attorneys (Prop. 8) erred in respect to the waiver of mitigation. See *State v. Roberts*, 110 Ohio St. 3d 71 (2006), P132-P148.

A careful reading of the text of habeas claim 9 shows merely a recitation of trial events connected to the waiver of mitigation. See Doc. 10, Habeas Petition, Claim 9, Page ID 151-154. Then, Roberts merely speculates in the text of habeas claim 9 that some of Roberts audacious statements, like Roberts asking the jury to impose a death sentence on her, should have been viewed under her newly crafted view that she was too crazy to be competent to waive mitigation. This *characterization* by Roberts is

16

again merely an empty rhetorical exhortation that is not linked to objective record evidence.

The point is that the reference to facts in the text of habeas claim 9 show the source to be adjudicative matters of which everyone was aware. Moreover, since all the trial events referred to by Roberts in the text of habeas claim 9 were part of the record on the initial direct appeal, the Ohio Supreme Court would have reviewed that same record in issuing its finding of fact that Roberts properly and validly waived mitigation.

What that means here is that none of the factual references in either habeas claim 3 or habeas claim 9 show any reason to ignore the deference under 2254(d)(2) or the presumption of correctness under 2254(e)(1) that Roberts properly waived mitigation and neither the trial court nor the trial defense counsel erred.

For the reasons expressed, this Court should deny relief on habeas claim 3 and habeas claim 9 because of  Roberts failure to show why the findings of fact by the Ohio Supreme Court are not entitled to deference under 2254(d)(2) and a presumption of correctness under 2254(e)(1).

**Response to habeas claim 4: Where the 11th Dist. state court of appeals rejected on the facts Roberts allegations that the trial defense counsel were ineffective during the trial phase, habeas relief is precluded for defective pleading and because the unrebutted findings of fact by the 11th Dist. state court of appeals that trial counsel were not ineffective are afforded deference under 2254(d)(2) and a presumption of correctness under 2254(e)(1).**

**I**n habeas claim 4 Roberts merely repeats the same factual and legal allegations that she made to the 11th Dist. state court of appeals. Importantly, no

where in the text of habeas claim 4 does Roberts reveal that these exact same factual and legal arguments were rejected on the merits by the 11th Dist. state court of appeals. In a similar showing of defective pleading, no where in the text of habeas claim 4 does Roberts explain why the state court findings of fact are flawed under and AEDPA analysis.

Under these circumstances, relief on habeas claim 4 should be denied for defective pleading in that the text of the habeas claim is wholly silent about any deficiencies under an AEDPA analysis and ignores the extensive and explicit merits determination by the 11th Dist. state court of appeals.

Under similar circumstances, Judge Gwin of the Northern District has denied relief for defective pleading. See Jackson *v. Houk*, 2021 U.S. Dist. LEXIS 33064, at *30 (NDO, *Gwin*, J.) ("***By repeating his state-court arguments and ignoring the last reasoned state-court opinion, Petitioner has defectively pleaded*** Grounds 1-5, 11-12, 27, 31-32, and 36. The Court declines to review Petitioner's state-court challenges *de novo*. The Court also declines to identify the relevant state-court adjudications of Petitioner's challenges and conjure arguments on Petitioner's behalf for why these adjudications violate clearly established federal law or are based on unreasonable determinations of facts.") (Emphasis added.)

Even if the Court were to excuse the defective pleading of habeas claim 4, relief should still be denied for Roberts failure to rebut the presumption of correctness under 2254(e)(1) of the findings of fact by the 11th Dist. state court of appeals that trial defense counsel were not ineffective. Roberts failure to rebut the presumption of

18

correctness under 2254(e)(1) of the findings of fact by the 11th Dist. state court of appeals that trial defense counsel were not ineffective is illustrated in the following table of claims.

| Habeas claim 4, subclaim (B), alleged ineffective assistance of counsel for supposed failure to make a *Batson* challenge during voir dire. Doc. 10, habeas claim 4, Page ID 127 | Roberts did not claim error under *Batson* on her initial direct appeal. See Doc. 12-4, State Court Record, Roberts initial direct appeal merits brief, Page ID 8232-8438. Roberts did not claim error under *Batson* on her second direct appeal. See Doc. 12-6, State Court Record, Roberts second direct appeal merits brief, Page ID 8808-8868. Roberts did not claim error under *Batson* on her third direct appeal. See Doc. 12-6, State Court Record, Roberts third direct appeal merits brief, Page ID 9415-9443. On the initial post-conviction petition, Roberts for the first time alleged in post-conviction claim 3 that her trial defense counsel were supposedly ineffective for not advancing a *Batson* challenge to the prosecution's use of two peremptory challenges to excuse prospective African-American jurors. See Doc. 12-11, State Court Record, Roberts Post-Conviction Petition, Page ID 9763-9764. This *Batson* claim was | Relief on habeas claim 4, subclaim B should be denied for failure of fair presentment under *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999). ("Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, we conclude that state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.") |

| | | |
|---|---|---|
| | renewed by Roberts as post-conviction claim 3 in the second round of initial post-conviction proceedings. See Doc. 12-13, State Court Record, Roberts Post-Conviction Petition, Page ID 10216-10218. Following the denial of post-conviction relief by the trial court, Roberts did not appeal the denial of the *Batson* claim. See Doc. 12-14, State Court Record, Roberts Post-Conviction Appeal Merits Brief, Page ID 10574-10604. | |
| **Habeas claim 4, subclaim (C),** alleged ineffective assistance of counsel for supposed failure to an opening statement. Doc. 10, habeas claim 4, Page ID 127 | Roberts did not claim error for lack of an opening statement on her initial direct appeal. See Doc. 12-4, State Court Record, Roberts initial direct appeal merits brief, Page ID 8232-8438. Roberts did not claim error for lack of an opening statement on her second direct appeal. See Doc. 12-6, State Court Record, Roberts second direct appeal merits brief, Page ID 8808-8868. Roberts did not claim error for lack of an opening statement on her third direct appeal. See Doc. 12-6, State Court Record, Roberts third direct appeal merits brief, Page ID 9415-9443. On the initial post-conviction petition, Roberts for the | Relief on habeas claim 4, subclaim (C) should be denied since the unrebutted findings of fact by the 11th Dist. state court of appeals that trial defense counsel were not ineffective are afforded deference under 2254(d)(2) and a presumption of correctness under 2254(e)(1). |

| | first time alleged that her trial defense counsel were supposedly ineffective for not giving an opening statement. Following the denial of post-conviction relief by the trial court, Roberts did appeal the denial of the "no opening statement" subclaim. See Doc. 12-14, State Court Record, Roberts Post-Conviction Appeal Merits Brief, Page ID 10588-10592. The "no opening statement" subclaim was rejected on the merits by the 11th Dist. state court of appeals. See *State v. Roberts*, 2020 Ohio 4188, P14-P19, (11th. Dist.) | |
|---|---|---|
| **Habeas claim 4, subclaim (D),** alleged ineffective assistance of counsel for supposed failure to use the co-defendant's taped confession in Roberts defense case. Doc. 10, habeas claim 4, Page ID 128 | Roberts did not claim on her initial direct appeal error for trial defense counsel not using the co-defendant's taped confession. See Doc. 12-4, State Court Record, Roberts initial direct appeal merits brief, Page ID 8232-8438. Roberts did not claim error for trial defense counsel not using the co-defendant's taped confession on her second direct appeal. See Doc. 12-6, State Court Record, Roberts second direct appeal merits brief, Page ID 8808-8868. Roberts did not claim error for trial defense counsel not using the co-defendant's taped confession on her third | Relief on habeas claim 4, subclaim (D) should be denied since the unrebutted findings of fact by the 11th Dist. state court of appeals that trial defense counsel were not ineffective are afforded deference under 2254(d)(2) and a presumption of correctness under 2254(e)(1). |

| | | |
|---|---|---|
| | direct appeal. See Doc. 12-6, State Court Record, Roberts third direct appeal merits brief, Page ID 9415-9443. On the initial post-conviction petition, Roberts for the first time alleged that her trial defense counsel were supposedly ineffective for not giving an opening statement. Following the denial of post-conviction relief by the trial court, Roberts did appeal the denial of the "co-defendant's taped confession" subclaim. See Doc. 12-14, State Court Record, Roberts Post-Conviction Appeal Merits Brief, Page ID 10592-10598. The "co-defendant's taped confession" subclaim was rejected on the merits by the 11th Dist. state court of appeals. See *State v. Roberts*, 2020 Ohio 4188, P20-P25 (11th. Dist.) | |
| **Habeas claim 4, subclaim (E),** alleged ineffective assistance of counsel for supposed failure to make a closing argument in Roberts defense case. Doc. 10, habeas claim 4, Page ID 128 | Roberts did not claim error for lack of an closing argument on her initial direct appeal. See Doc. 12-4, State Court Record, Roberts initial direct appeal merits brief, Page ID 8232-8438. Roberts did not claim error for lack of a closing argument on her second direct appeal. See Doc. 12-6, State Court Record, Roberts second direct appeal merits brief, | Relief on habeas claim 4, subclaim (E) should be denied since the unrebutted findings of fact by the 11th Dist. state court of appeals that trial defense counsel were not ineffective are afforded deference under 2254(d)(2) and a presumption of correctness under 2254(e)(1). |

| | | |
|---|---|---|
| | Page ID 8808-8868. Roberts did not claim error for lack of a closing argument on her third direct appeal. See Doc. 12-6, State Court Record, Roberts third direct appeal merits brief, Page ID 9415-9443. On the initial post-conviction petition, Roberts for the first time alleged that her trial defense counsel were supposedly ineffective for not giving a closing argument. Following the denial of post-conviction relief by the trial court, Roberts did appeal the denial of the "no closing argument" subclaim. See Doc. 12-14, State Court Record, Roberts Post-Conviction Appeal Merits Brief, Page ID 10597. The "no closing argument" subclaim was rejected on the merits by the 11th Dist. state court of appeals. See *State v. Roberts*, 2020 Ohio 4188, P16-P17, (11th. Dist.) | |
| **Habeas claim 4, subclaim F,** alleged that trial defense counsel were ineffective for not forcing Roberts to testify in her own defense during trial. Doc. 10, habeas claim 4, Page ID 129-130. | Roberts did not claim error for trial defense counsel supposedly preventing her from testifying in her own defense on her initial direct appeal. See Doc. 12-4, State Court Record, Roberts initial direct appeal merits brief, Page ID 8232-8438. Roberts did not claim error for trial | Relief on habeas claim 4, subclaim F, should be denied for failure of fair presentment under *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999). ("Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims |

| | | |
|---|---|---|
| | defense counsel supposedly preventing her from testifying in her own defense on her second direct appeal. See Doc. 12-6, State Court Record, Roberts second direct appeal merits brief, Page ID 8808-8868. Roberts did not claim error for trial defense counsel supposedly preventing her from testifying in her own defense on her third direct appeal. See Doc. 12-6, State Court Record, Roberts third direct appeal merits brief, Page ID 9415-9443. On the initial post-conviction petition, Roberts for the first time alleged in post-conviction claim 2 and 3 that her trial defense counsel were supposedly ineffective for trial defense counsel supposedly preventing her from testifying in her own defense. See Doc. 12-11, State Court Record, Roberts Post-Conviction Petition, Page ID 9787-9793. Following the denial of post-conviction relief by the trial court, Roberts did not appeal the denial of the subclaim that trial defense counsel supposedly prevented her from testifying in her own defense. See Doc. 12-14, State Court Record, Roberts Post-Conviction | before those claims are presented to the federal courts, we conclude that state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.") |

| | Appeal Merits Brief, Page ID 10574-10604. | |
|---|---|---|

For the reasons expressed, relief on habeas claim 4 should be denied for defective pleading and alternatively for failure of fair presentment and failure to show why the state court findings of fact are unreasonable under an AEDPA analysis.

**Response to habeas claim 5: By ignoring the express, explicit, and exhaustively explained denial by the Ohio Supreme Court, relief should be denied for defective pleading, and in addition because of Roberts failure to show an unreasonable state court adjudication under AEDPA.**

The text of habeas claim 5 is a near verbatim repeat of the of the text of Proposition 7 on direct appeal. Compare Doc. 10, Habeas Petition, Habeas claim 5, Page ID 130-136, with Doc. 12-4, State Court Record, Roberts Direct Appeal Brief, Roberts Proposition of Law 7, Page ID 8291-8295.

What is different between the two, but in an immaterial way, is the addition in habeas claim 5 of excerpts of boilerplate quotations from pertinent case law. These boilerplate quotations added to the text of habeas claim 5 are immaterial since Roberts does not link the excerpted legal principles to the facts of her case or to the adjudication by the Ohio Supreme Court.

Consequently, these boilerplate quotations in the text of habeas claim 5 do not assist this Court with the task of asses the propriety of the adjudication of the Ohio Supreme Court in context of the standard of review under AEDPA. This is especially true where the boilerplate quotations of law in the text of habeas claim 5 are not found in the text of Proposition of Law 7 that was filed under the initial direct appeal.

In other words, since Roberts has failed to link the boilerplate legal citations to the denial of the pre-trial publicity claim by the Ohio Supreme Court, Roberts has failed to carry her burden to show an unreasonable adjudication under AEDPA. See *Shinn v. Kayer*, 141 S. Ct. 517, 523 (2021) (The ***prisoner must show*** that the state court's decision is so obviously wrong that its error lies 'beyond any possibility for fairminded disagreement.' [*Harrington v.*] *Richter*, 562 U. S., at 103. Congress 'meant' this standard to be 'difficult to meet.' *Id.,* at 102.") (Emphasis added.)

Even the addition of the unhelpful boilerplate quotations from pertinent case law do not change the absence in the text of habeas claim 5 of any engagement with the explicit denial of Proposition of Law 7 by the Ohio Supreme Court. Instead, in the text of habeas claim 5 the only reference to the state courts is the statement that "Ms. Roberts raised this ground for relief on direct appeal to the Supreme Court of Ohio. It is therefore ripe for review." This statement in habeas claim 5 lacks specificity where Roberts was before the Ohio Supreme Court three times, not once. See *State v. Roberts*, 110 Ohio St. 3d 71 (2006), *State v. Roberts*, 137 Ohio St. 3d 230 (2013), and *State v. Roberts*, 150 Ohio St. 3d 47 (2017).

Under these circumstances where the text of habeas claim 5 is a mere repeat of state court pleading, and ignores the last reasoned state court opinion, this Court should deny relief for defective pleading. See Jackson *v. Houk*, 2021 U.S. Dist. LEXIS 33064, at *30 (NDO, *Gwin*, J.) ("***By repeating his state-court arguments and ignoring the last reasoned state-court opinion, Petitioner has defectively pleaded*** Grounds 1-5, 11-12, 27, 31-32, and 36. The Court declines to review

Petitioner's state-court challenges *de novo*. The Court also declines to identify the relevant state-court adjudications of Petitioner's challenges and conjure arguments on Petitioner's behalf for why these adjudications violate clearly established federal law or are based on unreasonable determinations of facts.") (Emphasis added.)

Even if the Court excuses Robert's defective pleading, habeas relief may not be granted simply because the habeas court believes that state court opinion was wrongly decided. See *Mitchell v. LaRose*, 802 Fed. APPX. 957 (6th Cir. 2020) ("To succeed, [the petitioner] must show that the court's decision misapplied a Supreme Court holding, resulting in an 'objectively unreasonable' error. *White v. Woodall*, 572 U.S. 415, 419-20 (2014). Even clear error will not suffice; Mitchell must demonstrate that the state court's reasoning was 'so lacking in justification' that no fairminded jurist could agree with it. *Id.*")

What that means here is habeas relief is precluded unless Roberts "has demonstrat[ed] that the state court's reasoning was 'so lacking in justification' that no fairminded jurist could agree with it."

That demonstration plainly did not happen here, since in the text of habeas claim 5 Roberts does not even mention the adjudication by the Ohio Supreme Court.

Neither the Warden nor the Court are obligated to address issues not raised in the text of habeas claim 5. In similar fashion, neither the Warden nor the Court are obligated to "conjure up arguments" about where the state adjudication falls under AEDPA parameters. See See Jackson *v. Houk*, 2021 U.S. Dist. LEXIS 33064, at *30 (NDO, *Gwin*, J.) ("***By repeating his state-court arguments and ignoring the last***

***reasoned state-court opinion, Petitioner has defectively pleaded*** Grounds 1-5, 11-12, 27, 31-32, and 36. The Court declines to review Petitioner's state-court challenges *de novo*. The Court also declines to identify the relevant state-court adjudications of Petitioner's challenges and conjure arguments on Petitioner's behalf for why these adjudications violate clearly established federal law or are based on unreasonable determinations of facts.") (Emphasis added.)

Even if the defective pleading was ignored, habeas relief still is not proper. This is so because habeas claim 5 fails on the facts where four of the seven supposedly tainted jurors were never seated. As to the supposedly tainted three jurors who were seated, Roberts passed for cause and could have, but did not, exercise a peremptory challenge that could have kept the supposedly tainted three jurors off the panel. The Ohio Supreme Court properly determined that these factors showed that relief should be denied. See *State v. Roberts*, 110 Ohio St. 3d 71, P119-P120.

What does Roberts say in the text of habeas claim 5 about this analysis by the Ohio Supreme Court? Nothing. By saying nothing, Roberts wrongly hopes this Court will "conjure arguments on Petitioner's behalf for why these adjudications violate clearly established federal law or are based on unreasonable determinations of facts." See *Jackson v. Houk*, 2021 U.S. Dist. LEXIS 33064, at *30 (NDO, Gwin, J.). This Court should hold Roberts to her burden under AEDPA and deny relief on habeas claim 5 for defective pleading.

Alternatively, habeas claim 5 also fails on the facts where the Ohio Supreme Court noted that the trial court "conducted a thorough voir dire, as evidenced by the

facts that ***voir dire took a month to complete and encompasses more than 20 volumes and approximately 4,700 pages of transcript***. Near the conclusion of voir dire, the trial court overruled the motion to change venue, stating: '[T]he Court feels very comfortable that this case can be fairly tried in this county * * *.'" (Emphasis added.) *State v. Roberts*, 110 Ohio St. 3d 71, P118.

What this shows is an "extensive voir dire [that] helps to eliminate  any negative effect arising from the pretrial publicity, *Lundgren, 73 Ohio St.3d at 479-480,* and the trial court here engaged in such an effort." See *State v. Roberts*, 110 Ohio St. 3d 71, P118.

Beyond the "extensive voir dire" that the Ohio Supreme Court found conducive to the seating of an unbiased jury, it was noted that as to  the three seated jurors who "had heard about some aspects of the case prior to trial," Roberts "had passed for cause on those three jurors and did not exercise a peremptory challenge on any of them even though Roberts had remaining peremptory challenges at the time those jurors were seated." *Id.,* at P120. Since Roberts declined to exercise for cause or peremptory challenges as to the three seated jurors, the Ohio Supreme Court found that "the defense was not particularly troubled by the jury's exposure to pretrial publicity once voir dire was completed." *Id.,* at P120.

Especially where Roberts says nothing at all about the denial of the corresponding state court claim, this Court should deny relief on habeas claim 5.

29

**Response to habeas claim 6: By ignoring the express, explicit, and exhaustively explained denial by the Ohio Supreme Court, relief should be denied for defective pleading, and in addition relief should be denied because of Roberts failure to rebut by clear and convincing evidence, as required under 2254(e)(1), the state court factual finding that the two prospective jurors in question were eligible to serve as jurors.**

In the text of habeas claim 6, Roberts wrongly asserts constitutional error in that she had to exercise two peremptory challenges to keep off the jury two prospective jurors whom Roberts says should have been excused for cause. Roberts does not claim that any seated juror was wrongly allowed to sit or was biased. See Doc. 10, Habeas Petition, Claim 6, Page ID 136 –143.

On the original direct appeal, the Ohio Supreme Court denied the corresponding state court claim on-the-merits. See *State v. Roberts*, 110 Ohio St. 3d 71, P112.

Predictably, the text of habeas claim 6 makes no mention of this on-the-merits adjudication by the Ohio Supreme Court.

The Ohio Supreme Court expressly assessed the voir dire process of the two prospective jurors in question and entered a finding of fact that neither prospective juror should have been excused for cause. See *State v. Roberts*, 110 Ohio St. 3d 71, P112. ("[Roberts] also asserts that she was prejudiced by using the two peremptory challenges allotted for alternate jurors to strike Kotwis and Blake. ***Given our conclusion that there is no showing that the trial court abused its discretion in rejecting her claims to remove Kotwis and Blake for cause***, we reject these contentions.")

30

Predictably, the text of habeas claim 6 makes no mention of this factual finding by the Ohio Supreme Court.

The Ohio Supreme Court reached the factual finding that the two prospective jurors in question were qualified to serve, but did not serve because Roberts exercised peremptory challenges. In the text of habeas claim 6, Roberts ignores this factual finding of the Ohio Supreme Court and simply alleges to the contrary that the two prospective jurors in question were not qualified to serve, as if the question had not already been answered to the contrary with a finding of fact by the Ohio Supreme Court. *Id.,* at P112.

The voir dire record that Roberts claims to show grounds for excusal for cause is the same voir dire record reviewed by the Ohio Supreme Court to conclude neither prospective juror should have been excused for cause. This finding of fact by the Ohio Supreme Court that neither prospective juror should have been excused for cause is entitled to deference under 2254(d). See *Williams v. Taylor*, 529 U. S. 362, 386 (2000) ("While this provision [2254(d)(2)] is not before us in this case, it provides relevant context for our interpretation of § 2254(d)(1); in this respect, ***it bolsters our conviction that federal habeas courts must make as the starting point of their analysis the state courts' determinations of fact, including that aspect of a 'mixed question' that rests on a finding of fact***. AEDPA plainly sought to ensure a level of 'deference to the determinations of state courts,' provided those determinations did not conflict with federal law or apply federal law in an unreasonable way.")

31

What that means here is that Roberts mere allegation in habeas claim 6 that the two prospective jurors in question should have been excused for cause does not make it so. To the contrary, the exact opposite conclusion by the Ohio Supreme Court is entitled to deference under 2254(d). In the text of habeas claim 6, Roberts fails to show why this finding of fact by the Ohio Supreme Court is not entitled to deference. Nor could she, where nothing at all is said in the text of habeas claim 6 about the contrary finding of fact by the Ohio Supreme Court.

Consequently, relief is precluded on habeas claim 6 for defective pleading, where in the text of habeas claim 6 Roberts merely repeats arguments made in the state courts and does not acknowledge that the corresponding claim was rejected on-the-merits by the Ohio Supreme Court with an explicit finding of fact. The defective pleading of habeas claim 6 is reason enough to deny relief. See *Jackson v. Houk*, 2021 U.S. Dist. LEXIS 33064, at *30 (NDO, *Gwin*, J.) ("***By repeating his state-court arguments and ignoring the last reasoned state-court opinion, Petitioner has defectively pleaded*** Grounds 1-5, 11-12, 27, 31-32, and 36. The Court declines to review Petitioner's state-court challenges *de novo*. The Court also declines to identify the relevant state-court adjudications of Petitioner's challenges and conjure arguments on Petitioner's behalf for why these adjudications violate clearly established federal law or are based on unreasonable determinations of facts.") (Emphasis added.)

An additional reason to deny relief is Roberts failure to acknowledge the finding of fact by the Ohio Supreme Court that neither juror in question should have

been excused for cause. This finding of fact by the Ohio Supreme Court enjoys a presumption of correctness under 2254(e)(1). See *Wesson v. Shoop*, 2021 U.S. App. LEXIS 33241, at \*7-\*8 (6th Cir. ("In federal habeas proceeding, state-court credibility determinations are accorded considerable deference given 'the respect due state courts in our federal system,' and we presume them 'correct absent clear and convincing evidence to the contrary.' *Miller-El v. Cockrell*, 537 U.S. 322, 339-40 (2003); see *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983) (explaining that federal habeas courts do not second-guess credibility determinations by state courts where we have not also had an opportunity to observe the testimony).")

Under these circumstances, relief on habeas claim 6 is additionally precluded for Roberts's failure under 2254(e)(1) to show any "clear and convincing evidence" to rebut the presumption of correctness to the finding of fact by the Ohio Supreme Court that neither prospective juror in question should have been excused for cause. Roberts failure in this regard is plain from the text of habeas claim 6 that fails to even acknowledge that the Ohio Supreme Court rejected on-the-merits the corresponding state court claim.   Since the finding of fact by the Ohio Supreme Court that neither prospective juror in question should have been excused for cause is presumed correct under 2254(e)(1), and unrebutted by any evidence at all, the factual premise of habeas claim 6 is contradicted by the Ohio Supreme Court.

In other words, the text of habeas claim 6 is founded on a false factual premise that the prospective jurors in question should have been excused for cause, where the opposite factual finding was reached by the Ohio Supreme Court.

33

Even if the procedural defects of the text of habeas claim 6 were ignored, relief is still precluded under authority of *Ross v. Oklahoma*, 487 U.S. 81 (1988). In *Ross*, the trial judge should have, but did not, excuse for cause a prospective juror. Because of the error by the trial judge in not excusing for cause the prospective juror, the defense was forced to use one of its peremptory challenges to successfully keep the prospective juror off the jury. Even though the defendant agreed that all seated jurors were qualified to serve, the defendant alleged his constitutional rights were violated because he was forced, unnecessarily, to exercise a peremptory challenge.

The *Ross v. Oklahoma* Court disagreed, concluding that where all seated jurors were qualified to serve, the federal constitution is not violated. That the defendant had to exercise a peremptory challenge to ensure lack of bias on the jury is not a violation of the constitutional rights of the defendant. *Id.,* at 88. ("We have long recognized that peremptory challenges are not of constitutional dimension. *Gray* [v. Mississippi, 481 U.S. 648 (1987)] *supra*, at 663; *Swain v. Alabama*, 380 U.S. 202, 219 (1965); *Stilson v. United States*, 250 U.S. 583, 586 (1919). They are a means to achieve the end of an impartial jury. ***So long as the jury that sits is impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean the Sixth Amendment was violated***.") (Emphasis added.) *Cf. State v. Roberts*, 110 Ohio St. 3d 71, P104-P114, quotation at P114. ("Moreover, ***Roberts fails to show that any of the jurors ultimately seated were other than impartial.*** Thus, she fails to demonstrate a violation of the *Due Process Clause of the United States Constitution. See State v. Broom*

34

*(1988), 40 Ohio St.3d 277, 288.* Accordingly, we reject Roberts's suggestion that there was error in the trial court's decisions in empaneling the jury.") (Emphasis added.)

Under these circumstances, relief on habeas claim 6 should be denied for defective pleading, and alternatively denied for failure to show factual or legal error as to the denial of the corresponding state court claim.

**Response to habeas claim 7: By ignoring the express, explicit, and exhaustively explained denial by the Ohio Supreme Court, relief should be denied for defective pleading, and in addition because of Roberts failure to rebut the factual finding of competence by clear and convincing evidence as required under 2254(e)(1).**

Roberts raised a claim of incompetence to stand trial during the mitigation hearing in 2003 and during the resentencing proceedings on remand in 2007 in Proposition 6 and Proposition 7 on direct appeal to the Ohio Supreme Court following the Ohio Supreme Court's remand for resentencing that was ordered in *State v. Roberts*, 110 Ohio St. 3d 71, P164-P167.  See Doc. 12-6, State Court Record, Roberts Direct Appeal Brief, Propositions Six and Seven, Page ID 8858-8866.

In denying the claim on the facts and on the law, the Ohio Supreme Court first noted that in her Propositions of Law 6 and 7, Roberts was wrong to ignore the statutory presumption of competence set out in R.C. R.C. 2945.37(G). ("A defendant is presumed to be competent to stand trial.  * * *")

Roberts wrongly ignored the statutory presumption of competence when she claimed the prosecution failed to prove her to be competent. To the contrary, "...[T]he question is not whether the state introduced sufficient evidence to prove Roberts

35

competent, but whether a preponderance of the evidence proved that she was *not* competent."  See *State v. Roberts*, 137 Ohio St. 3d 230, P84 (2013). (Emphasis supplied.)

The Ohio Supreme Court went on to address Roberts contentions item-by item and found each of her contentions falling short of showing she was incompetent during resentencing proceedings. See *State v. Roberts,* 137 Ohio St. 3d 230, P85-P93, (2013). Roberts claim that she was incompetent during the original 2003 trial was denied for a procedural default in that she could have, but did not, raise a competence to be tried during trial in her initial direct appeal brief. *Id.,* at P94-P95.

The determination of whether a defendant was competent to stand trial is a question of fact. Moreover, the reasons why the state court determined the defendant to be competent to stand trial are findings of fact. See *State v. Roberts*, 137 Ohio St. 3d 230, P85-P93 (2013) (quotation at P92. ("A criminal defendant's competency to stand trial, including competency to assist in a sentencing proceeding, is a question of fact. See *Maggio v. Fulford*, 462 U.S. 111 (1983) (upholding state-court finding of competency that was fairly supported by the record); *State v. Vrabel*, 99 Ohio St.3d 184, P33 (2003). (deferring to trial court's 'factual findings' that defendant was competent).")

The determination by the Ohio Supreme Court that Roberts was not incompetent to stand trial, and the reasons on which that conclusion rests, constitute findings of fact entitled to a presumption of correctness under 2254(e)(1). See *Williams v. Houk*, 2013 U. S. Dist. LEXIS 200221 ("A determination by a state trial

court that a habeas petitioner was competent to stand trial is a finding of fact that is entitled to the presumption of correctness for purposes of federal habeas review.' *Hastings v. Yukins*, 194 F. Supp. 2d 659, 670 (E.D. Mich. 2002) (citing *Maggio v. Fulford*, 462 U.S. 111, 117 (1983); *Mackey v. Dutton*, 217 F.3d 399, 412 (6th Cir. 2000)).")

Regarding the defective way in which Roberts pled habeas claim 7, the findings of fact by the Ohio Supreme Court that Roberts was not incompetent were ignored, as if that decision by the Ohio Supreme Court did not exist. Moreover, Roberts failed to show any "clear and convincing evidence" to rebut the state court finding of fact that she was not incompetent under 2254(e)(1). Roberts failure to address these matters in the text of habeas claim 7 is another reason why her habeas pleading is defective such that relief should be denied for that reason alone.

In the text of habeas claim 7, Roberts merely rewrites the factual allegations of her state court direct appeal brief. Compare the text in Doc. 12-6, State Court Record, Direct Appeal Brief, Propositions 6 and 7, Page ID 8858-8866 with Doc. 10, Habeas Claim 7, Page ID 143-148.

Significantly, Roberts says nothing in the text of habeas claim 7 about the on-the-merits denial by the Ohio Supreme Court. Roberts also says nothing about the procedural default denial of her claim of incompetence to be tried during the original trial. Instead, the allegations in habeas claim 7 are written as if the matter was being heard *de novo* instead of the deferential review under AEDPA.

37

The defective pleading of habeas claim 7 for ignoring the denial of the corresponding claim by the state courts, is reason enough to deny relief. See *Jackson v. Houk*, 2021 U.S. Dist. LEXIS 33064, at \*30 (NDO, *Gwin*, J.) ("***By repeating his state-court arguments and ignoring the last reasoned state-court opinion, Petitioner has defectively pleaded*** Grounds 1-5, 11-12, 27, 31-32, and 36. The Court declines to review Petitioner's state-court challenges *de novo*. The Court also declines to identify the relevant state-court adjudications of Petitioner's challenges and conjure arguments on Petitioner's behalf for why these adjudications violate clearly established federal law or are based on unreasonable determinations of facts.") (Emphasis added.)

Even if the Court excuses Robert's defective pleading, habeas relief may not be granted simply because the habeas court believes that state court opinion was wrongly decided. See *Mitchell v. LaRose*, 802 Fed. APPX. 957 (6th Cir. 2020) ("To succeed, [the petitioner] must show that the court's decision misapplied a Supreme Court holding, resulting in an 'objectively unreasonable' error. *White v. Woodall*, 572 U.S. 415, 419-20 (2014). Even clear error will not suffice; Mitchell must demonstrate that the state court's reasoning was 'so lacking in justification' that no fairminded jurist could agree with it. *Id.*")

What that means here is habeas relief is precluded unless Roberts "has demonstrat[ed] that the state court's reasoning was 'so lacking in justification' that no fairminded jurist could agree with it." That demonstration plainly did not

happen here, since in the text of habeas claim 7 Roberts does not even mention the adjudication by the Ohio Supreme Court.

Neither the Warden nor the Court are obligated to address issues not raised in the text of habeas claim 7. In similar fashion, neither the Warden nor the Court are obligated to "conjure up arguments" about where the state adjudication falls under AEDPA parameters. See See Jackson *v. Houk*, 2021 U.S. Dist. LEXIS 33064, at \*30 (NDO, *Gwin*, J.) ("***By repeating his state-court arguments and ignoring the last reasoned state-court opinion, Petitioner has defectively pleaded*** Grounds 1-5, 11-12, 27, 31-32, and 36. The Court declines to review Petitioner's state-court challenges *de novo*. The Court also declines to identify the relevant state-court adjudications of Petitioner's challenges and conjure arguments on Petitioner's behalf for why these adjudications violate clearly established federal law or are based on unreasonable determinations of facts.") (Emphasis added.)

Regarding Roberts similar claim that was presented before the state post-conviction trial court, habeas relief is precluded for failure of fair presentation. On appeal from the denial by the trial court of post-conviction relief, Roberts waived further appeal the denial of the post-conviction claims that correspond to habeas claim 7. See Doc. 12-14, State Court Record, Roberts PC Merit Brief before the 11th Dist., Page ID 10574-10604 ("Therefore, although she includes these issues in her requests for discovery and an evidentiary hearing which was requested in both her original and amended petitions, Roberts did not raise independent mental health claims here.")

39

Under these circumstances of express waiver of further appeal from the denial by the trial court of the state court post-conviction claim that corresponds with habeas claim 7, habeas relief is precluded for failure of fair presentment under *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999). ("Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, we conclude that state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.")

Under these circumstances, this Court should deny relief on habeas claim 7.

**Response to habeas claim 8: Relief should be denied under *Ylst v. Nunnemaker*, 501 U.S. 797 (1991) where Roberts attacks the sentencing opinion of the trial court, instead of the independent sentencing opinion by the Ohio Supreme Court that is the "last reasoned opinion" pertinent to habeas claim 8.**

Although in habeas claim 8 Roberts attacks the death sentence issued by the trial court, the death sentence issued by the trial court is not the judgment under which her execution would proceed.

Instead, Roberts death sentence was imposed by the Ohio Supreme Court, who by statute are obligated to conduct an independent assessment of whether a death sentence is proper. See *State v. Obermiller*, 147 Ohio St. 3d 175, P116 (2016) ("In any case, 'whatever errors the trial court may have committed in weighing the aggravating circumstance[s] against any mitigating factors' will be remedied by this court's 'careful independent reweighing' conducted later in this opinion. *State v. Lott*,

51 Ohio St.3d 160, 170 (1990), citing *Clemons v. Mississippi*, 494 U.S. 738, 748 (1990)."); see also R.C. 2929.05(A) (requiring the Ohio Supreme Court to "review and independently weigh all of the facts and other evidence disclosed in the record in the case and consider the offense and the offender to determine whether the aggravating circumstances the offender was found guilty of committing outweigh the mitigating factors in the case, and whether the sentence of death is appropriate.")

What this means is that the stature of the trial court sentencing opinion compared with the Ohio Supreme Court sentencing opinion is like the stature of a Magistrate's Report compared with an Opinion of the District Court. By analogy, the "Magistrate's Report" that a death sentence is warranted is not enforceable *in and of itself*. In this analogy, after objections are filed, the District Court would conduct a *de novo* determination of whether a death sentence is appropriate. This determination by the District Court would be independent of the Magistrate's Report such that the operative opinion on the topic of whether a death sentence is proper, also known as the "last reasoned opinion," would be from the District Court, not from the Magistrate Judge.

In this case, where Roberts death sentence was enforceable only upon the independent sentencing opinion of the Ohio Supreme Court pursuant to R.C. 2929.05(A), relief on habeas claim 8 is precluded for breach of the "last reasoned opinion" doctrine in habeas. This doctrine was spelled out in *Ylst v. Nunnemaker*, 501 U.S. 797 (1991), where the Court held that the operative opinion for habeas review is the "last reasoned opinion" on the subject by a state appellate court.

41

In similar fashion, the "last reasoned opinion" as to whether Roberts sentence of death is appropriate was issued by the Ohio Supreme Court, not by the trial court. Since the Ohio Supreme Court is obligated by R.C. 2929.05(A) to independently determine whether a sentence of death should be imposed, the trial court sentencing opinion is relevant only as a viewpoint or recommendation akin to a Magistrate's Report compared with an Opinion of the District Court.

What that means here is that the grievances in habeas claim 8 are directed at the wrong entity; *i.e.* the trial court, where nothing at all is said against the independent sentencing opinion by the Ohio Supreme Court that Roberts warranted a death sentence.

Under these circumstances, relief cannot be granted on habeas claim 8 since it does not attack, and does not even mention, the operative determination by the Ohio Supreme Court under its statutory duty to independently determine whether a sentence of death should be imposed. See *State v. Roberts*, 150 Ohio St. 3d 47, P86-P117 (2017).

Roberts failure to address the "last reasoned opinion" is reason enough to deny habeas claim 8, even though a properly stated claim still could not prevail. This is so because habeas claim 8 is an attack on the weighing process, where Roberts simply alleges all of her mitigation evidence should have been afforded more weight. This sort of attack is not redressable in habeas, since "a State enjoys a range of discretion in imposing the death penalty, including the manner in which the aggravating and mitigating circumstances are to be weighed." See *Kansas v. Marsh*, 548 U.S. 163, 174

(2006); *Cf., Shinn v. Kayer*, 141 S. Ct. 517, 526 (2020)(" For present purposes, it suffices to say that, ***because the facts in each capital sentencing case are unique***, the weighing of aggravating and mitigating evidence in a prior published decision is unlikely to provide clear guidance about how a state court would weigh the evidence in a later case.") (Emphasis added.)

Under these circumstances, relief should be denied on habeas claim 8.

**Response to habeas claim 10: There being no right under the federal constitution to prevent the orderly transition of a new trial judge to replace the former trial judge who died, relief on habeas claim 1 should be denied for noncognizability.**

During the pendency of the appeal of *State v. Roberts*, 137 Ohio St. 3d 230 (2013), the original trial judge died. The Court in *State v. Roberts*, 150 Ohio St. 3d 47, P3 (2017), noted that "Pending our appeal, the trial judge retired and subsequently died, and therefore a different judge presided over the third resentencing and imposed a sentence of death."

On her third direct appeal, Roberts claimed in Proposition of Law 1 that her death sentence was invalid because the new trial judge instead of the original deceased trial judge wrote the new sentencing opinion following the remand in *State v. Roberts*, 137 Ohio St. 3d 230 (2013). The legal error, according to Roberts, was the absence of any state statute that would permit the substitution of a new trial judge when the original sentencing judge died. In other words, the Roberts legal premise was that state law, not federal law, was supposedly violated when the new trial judge wrote the new sentencing opinion. See Doc. 12-9, State Court Record, Roberts Direct Appeal III merit brief, Proposition 1, Page ID 9427-9433, quotation at Page ID 9432.

("There is no statutory procedure for current sentencing procedure. Ohio's statutory death penalty sentencing scheme does not permit a judge who has not previously presided over the case to read the words of a defendant's allocution, in addition to the testimony from the two phases of original trial, from the cold pages of a transcript to determine whether the defendant lives or dies.")

In denying the Proposition of Law 1 from the third direct appeal, the Ohio Supreme Court determined that Roberts interpretation of state law was in error. Instead, the Ohio Supreme Court determined that the substitution of a new trial judge for a deceased trial judge is permitted under R.C. 2929.06(B) and Crim. R. 25(B). See *State v. Roberts*, 150 Oho St. 3d 47, P37-P39 (2017). ("Thus, it is 'entirely proper' for a substitute judge to sentence a defendant after the retirement or death of the judge who presided over the defendant's trial.")

Where the legal premise that underpins habeas claim 10 is an alleged violation of state law, habeas relief must be denied. This is so since habeas relief is not available for alleged violations of state law. See *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.")

Being founded on a supposed state law violation, the legal premise of habeas claim 10 does not change simply because Roberts makes sweeping allegations of

44

federal constitutional violations premised on broad rules of due process. See Doc. 10, Habeas petition, Claim 10, Page ID 155-158.

It is true that the Court in *Lockett v. Ohio*, 438 U.S. 586 (1978) held that relevant mitigation evidence could not be excluded from the death penalty weighing process. Likewise, the Court in *Eddings v. Oklahoma*, 455 U.S. 104, 112 (1982), *Skipper v. South Carolina*, 476 U.S. 1, 4-5 (1986) and *McClesky v. Kemp*, 481 U.S. 279, 304 (1987) said the same thing, citing to *Lockett*.

In this case, however, the broad federal constitutional rule that relevant mitigation evidence cannot be excluded gives no insight about what happens when a trial judge dies before the trial proceedings have finally concluded. Instead, when and how a new trial judge may be assigned after the disability or death of the original trial judge is determined, in this instance, by Ohio statutory law.

What that means is that the *Lockett* rule in the U.S. Supreme Court cases cited by Roberts is stated at too high a level of generality to have any application to the alleged error about replacement of a deceased trial judge. See *Wright v. Van Patten*, 552 U.S. 120, 126 (2008) ("Because our cases give no clear answer to the question presented, let alone one in Van Patten's favor, 'it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.' *Musladin*, 549 U.S., at 77, (quoting 28 U.S.C. § 2254(d)(1)). Under the explicit terms of § 2254(d)(1), therefore, relief is unauthorized.")

Under these circumstances, this could should deny relief on habeas claim 10 because of noncognizability and because of no clearly established SCOTUS precedent.

**Response to habeas claim 11: The assessment of evidence to determine whether a state court post-conviction petitioner is entitled to a post-conviction evidentiary hearing is a matter of state law such that relief on habeas claim 11 should be denied for lack of cognizability.**

Following the denial by the trial court of post-conviction evidentiary hearing due to the lack of probative and cogent evidence, Roberts appealed the denial of an evidentiary hearing to the state court of appeals. See Doc. 12-13, State Court Record, trial court opinion denying post-conviction relief, Page ID 10523-10528.

In her state court appellate brief, Roberts did not allege error for denial of a particular post-conviction claim. Instead, Roberts alleged that the post-conviction evidentiary material she did present was sufficiently cogent and probative such that it was an abuse of discretion for the trial court to deny her an evidentiary hearing on the issue of ineffective assistance of trial counsel. Roberts supported this argument with state law cases only, intending to show other state court cases where cogent and probative evidence had been presented in other state court post-conviction proceedings. See Doc. 12-14, State Court Record, Roberts Post-Conviction Brief to the 11th Dist., Page ID 10598-10602.

The state court of appeals denied Roberts claim that she had presented cogent and probative evidence of the stature and heft that would warrant a post-conviction evidentiary hearing. The state court of appeals did so with an item-by-item evaluation of the post-conviction evidence submitted by Roberts, articulating in each case specific reasons why the evidence was inadequate to warrant an evidentiary hearing. See Doc. 12-14, State Court Record, 11th Dist. post-conviction opinion, Page ID 10646-10653. This item-by-item evaluation of the strength of Roberts post-evidence

46

constitute findings of fact that are presumed correct under 2254(e)(1). See *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003). ("AEDPA does not require petitioner to prove that a decision is objectively unreasonable by clear and convincing evidence. The clear and convincing evidence standard is found in § 2254(e)(1), ***but that subsection pertains only to state-court determinations of factual issues***, rather than decisions.") (Emphasis added.)

Further review was denied by the Ohio Supreme Court. See Doc. 12-15, State Court Record, OSC denial, Page ID 10745.

Under these circumstances, relief on habeas claim 11 is precluded for lack of cognizability in that the determination of whether particular items of evidence meet a state law post-conviction evidentiary threshold is not governed by the federal constitution.

This same reasoning applies to the determination of admissibility of evidence during trial proceedings. See *Seymour v. Walker*, 224 F. 3d 542, 552 (6th Cir. 2000). ("Errors in the application of state law, especially rulings regarding the admission or exclusion of evidence, are usually not to be questioned in a federal habeas corpus proceeding.' *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988). Generally, state-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend [] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.' *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996) (quoting *Patterson v. New York*, 432 U.S. 197, 202 (1977)); see also *Spencer v. Texas*, 385 U.S. 554, 563-64 (1967).")

The reasoning of the *Seymour v. Walker* Court would have even stronger application in a post-conviction context where the opportunity for post-conviction relief is not required by the federal constitution. See *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). ("We have never held that prisoners have a constitutional right to counsel when mounting collateral attacks upon their convictions, see *Johnson* v. *Avery*, 393 U.S. 483, 488 (1969), and we decline to so hold today. Our cases establish that the right to appointed counsel extends to the first appeal of right, and no further.")

What this means is that the determination of admissibility of evidence, whether at trial or during post-conviction proceedings, is not governed by the federal constitution. Since the evaluation of habeas claim 11 is not governed by the federal constitution, relief is precluded for lack of cognizability. See *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. 28 U. S. C. § 2241; *Rose* v. *Hodges*, 423 U.S. 19, 21 (1975) *(per curiam)*.

Under these circumstances, relief on habeas claim 11 should be denied for lack of cognizability.

**Response to habeas claim 12: The Ohio Supreme Court properly determined that the taking of the decedent's car just after his murder was sufficient evidence to support a robbery charge such that habeas relief should be denied.**

Although no mention of it is made in the text of habeas claim 12, the Ohio Supreme Court denied, on the merits, Proposition of Law 4 on direct appeal that corresponds to habeas claim 12. See *State v. Roberts*, 110 Ohio St. 3d 71, P122-P130. The Ohio Supreme Court concluded that a theft offense occurred when co-defendant Jackson left the murder scene in the decedent's car, *a fact to which Roberts conceded*. *Id.,* at P125. ("[Roberts] then challenges the state's theory that the theft element was established by Jackson's use of Fingerhut's car to escape. ***In her latter analysis, Roberts does not deny that Jackson drove away from the crime scene in Fingerhut's car. Indeed, the evidence shows that Jackson shot Fingerhut and drove from the scene in Fingerhut's automobile.***") (Emphasis added.)

The Ohio Supreme Court went on to reject Roberts contention that since Fingerhut was already dead when co-defendant Jackson "drove from the scene in Fingerhut's automobile" there could be no theft offense from a corpse. Following long established rules, the Ohio Supreme Court said "[T]he victim of a robbery, killed just prior to the robber's carrying off [his] property, is nonetheless the victim of an aggravated robbery. The victim need not be alive at the time of asportation. ***A robber cannot avoid the effect of the felony-murder rule by first killing a victim, watching [him] die, and then stealing [his] property after the death.***" *State v. Smith* (1991), 61 Ohio St.3d 284, 290." (Emphasis added.)

The text of habeas claim 12 reads just like Roberts Proposition 4 on direct appeal, although Roberts in the text of habeas claim 12 does not explain any procedural history. See Doc. 12-4, State Court Record, Roberts Direct Appeal Brief Proposition 4, Page ID 8280-8283.

Conspicuously missing from the text of habeas claim 12 is any mention that the Ohio Supreme Court expressly and explicitly rejected this claim on the merits, saying, *inter alia*, ***"We repeatedly have rejected the argument that there is no aggravated robbery when the victim's property is taken after he is murdered."*** *Id.,* at P129. (Emphasis added.)

Under these circumstances, relief on habeas claim 12 should be denied for defective pleading in that the text of the habeas claim is wholly silent about any deficiencies under an AEDPA analysis and ignores the extensive and explicit merits determination by the Ohio Supreme Court.

Under similar circumstances, Judge Gwin of the Northern District has denied relief for defective pleading. See Jackson *v. Houk*, 2021 U.S. Dist. LEXIS 33064, at *30 (NDO, *Gwin*, J.) ("***By repeating his state-court arguments and ignoring the last reasoned state-court opinion, Petitioner has defectively pleaded*** Grounds 1-5, 11-12, 27, 31-32, and 36. The Court declines to review Petitioner's state-court challenges *de novo*. The Court also declines to identify the relevant state-court adjudications of Petitioner's challenges and conjure arguments on Petitioner's behalf for why these adjudications violate clearly established federal law or are based on unreasonable determinations of facts.") (Emphasis added.)

In *Jackson v. Houk*, where the petitioner should have, but did not, explain pertinent procedural history in the habeas petition, Judge Gwin properly declined to scour the record for the relevant state court procedural history.  In *Jackson v. Houk,* Judge Gwin also properly declined to "conjure arguments on Petitioner's behalf" where the petitioner should have, but did not, explain how the pertinent state adjudication was supposedly defective under AEDPA.

This Court should follow the *Jackson v. Houk* precedent and deny relief on habeas claim 12. Alternatively, the Court should deny relief because Roberts has failed to show misadjudication under an AEDPA framework, and the neither the Warden nor the Court have any obligation to conjure up arguments simply to show how those hypothetical arguments fall short of relief under an AEDPA framework.

**Response to habeas claim 13: Habeas relief is precluded due to failure of fair presentment under O'Sullivan v. Boerckel, 526 U.S. 838, 844 (1999), where the corresponding state court claim was expressly waived by Roberts and withdrawn by her from consideration by the 11th Dist. state court of appeals.**

As a procedural matter, Roberts initial post-conviction petition contained a claim corresponding to habeas claim 13. See Doc. 12-11, State Court Record, Page ID 9759-9760. The initial post-conviction proceeding, however, was eventually dismissed by the 11th District state court of appeals for lack of jurisdiction due to lack of a final appealable order. In short, the 11th Dist. determined the initial post-conviction proceedings were premature due to the pendency of other matters such that the initial post-conviction proceedings would be held for naught. See Doc. 12-12, State Court Record, 11th Dist. Initial PC decision, Page ID 10171-10175.

Roberts commenced another initial post-conviction action that again contained the same claim corresponding to what is being presented to this Court as habeas claim 13. See Doc. 12-13, State Court Record, Page ID 10212-10214.

The trial court denied this claim (underrepresentation of African-Americans on Roberts jury pool) for lack of any evidence, noting that Roberts conceded she did not have any evidence to support her allegations of underrepresentation of African-Americans. In addition, the trial court alternatively denied the claim for a procedural default since the same claim could have been presented on direct appeal. See Doc. 12-13, State Court Record, Trial Court Decision, Page ID 10524-10525.

On appeal from the decision of the trial court to the 11th District state court of appeals, Roberts expressly waived any further appeal regarding the underrepresentation of African-Americans. See Doc. 12-14, State Court Record, Roberts Merit Brief to the 11th Dist., Page ID 10582.

Under these circumstances of express waiver of the state court claim that corresponds with habeas claim 13, habeas relief is precluded for failure of fair presentment under *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999). ("Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, we conclude that state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.")

Even if Roberts had not expressly waived further consideration of the claim that corresponds to habeas claim 13, the claim was unmeritorious, *inter alia*, due to lack of any evidence in support. See *Bowman v. Lee*, 2020 U.S. App. LEXIS 5724 (6th Cir.) ("And here, Bowman conceded in the state court that he had no evidence that the state's jury-selection procedures systematically exclude African Americans from jury service.")

Under these circumstances, habeas relief should be denied for failure of failure of fair presentment under *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999).  See *Donley v. Warden*, 2021 U.S. Dist. LEXIS 190536, at *8-*9 (SDO, Merz, Magistrate Judge.) ("Failure to present an issue to the state supreme court on discretionary review constitues procedural default. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) (citations omitted). 'Even if the state court failed to reject a claim on a procedural ground, the petitioner is also in procedural default 'by failing to raise a claim in state court, and pursue that claim through the state's ordinary appellate procedures.' *Thompson v. Bell*, 580 F.3d 423, 437 (6th Cir. 2009), citing *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006)(quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 846-7 (1999)); see also *Deitz v. Money*, 391 F.3d 804, 808 (6th Cir. 2004) ('A federal court is also barred from hearing issues that could have been raised in the state courts, but were not[.]').")

**Response to habeas claim 14 and habeas claim 15: Boilerplate claims of unconstitutionality do not warrant habeas relief.**

Regarding habeas claim 14 that alleges unconstitutionality of the death penalty, federal habeas courts have uniformly rejected habeas relief. See, for

example, *Moore v. Mitchell*, 2007 U.S. Dist. LEXIS 96523, at 241-241 (SDO, Merz, Magistrate Judge) (explaining how each of eleven contentions of unconstitutionality of the death penalty do not warrant habeas relief.)

Regarding habeas claim 15 that alleges "cumulative error," habeas relief should be denied. See *Conway v. Shoop*, 2020 U.S. Dist. LEXIS 108225, at *6 (SDO, Merz, Magistrate Judge) ("However, the Sixth Circuit has held that, after adoption of the AEDPA in 1996, ***cumulative error is not a basis for habeas corpus relief even in a capital case***. *Moreland v. Bradshaw*, 699 F.3d 908, 931 (6th Cir. 2012); *Sheppard v. Bagley*, 657 F.3d 338, 348 (6th Cir. 2011), cert. denied, 567 U.S. 910, 132 S. Ct. 2751, 183 L. Ed. 2d 623 (2011), citing *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005), cert. denied sub nom. *Moore v. Simpson*, 549 U.S. 1027, 127 S. Ct. 557, 166 L. Ed. 2d 424 (2006); *Hoffner v. Bradshaw*, 622 F.3d 487, 513 (6th Cir. 2010); *Lorraine v. Coyle*, 291 F.3d 416, (6th Cir. 2002).") (Emphasis added.)

Under these circumstances, the Court should deny relief on habeas claims 14 and 15.

## CONCLUSION

For the reasons expressed, this Court should deny relief and dismiss Roberts habeas petition.

Respectfully submitted,

**DAVE YOST**
Attorney General

s/Stephen E. Maher

Stephen E. Maher (0032279)
Assistant Attorney General, Capital Crimes Section
30 East Broad Street, 23rd Floor

Columbus, Ohio 43215

(6l4) 728-7055 (desk) (614) 644-8328

Email:stephen.maher@ohioAGO.gov
**COUNSEL FOR RESPONDENT**

**CERTIFICATE OF
SERVICE**

I hereby certify that a copy of the foregoing has been forwarded via the court's electronic filing to all parties of record this 18th day of February, 2022.

s/Stephen E. Maher
_____

Stephen E. Maher
(0032279)
Assistant Attorney
General

55