**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **Donna Roberts,** | : | |
| | : | |
| Petitioner, | : | **Case No. 4:21-CV-368** |
| | : | |
| v. | : | **Judge Polster** |
| | : | |
| **Warden, Marysville Correctional** | : | |
| | : | |
| Respondent. | : | ***Death Penalty Case*** |

---

**WARDEN'S SUR-REPLY
TO ROBERTS DOC. 24
TRAVERSE**

---

Respectfully submitted,
**DAVE YOST**
Attorney General
s/Stephen E. Maher

Stephen E. Maher (0032279)
Assistant Attorney General, Capital Crimes Section
30 East Broad Street, 23rd Floor
Columbus, Ohio 43215
(6l4) 728-7055 cell) (740) 412-0552
Email:stephen.maher@ohioago.gov
**COUNSEL FOR RESPONDENT**

Table of Contents

**Response to habeas claim 1:** Where there is no clearly established SCOTUS precedent to require the re-opening of a concluded penalty phase proceeding, and no precedent to require the vacating of a prior waiver of mitigation, and no precedent to require the post-trial presentation of brand-new mitigation evidence, habeas relief is precluded under 2254(d)(1). .....................................**Error! Bookmark not defined.**

**Response to habeas claim 2:** Where Roberts failed to present on the third direct appeal a claim of ineffective assistance of trial defense counsel for alleged inadequate mitigation investigation, despite an express invitation by the Ohio Supreme Court to do so as stated in the second direct appeal opinion, relief is precluded for failure of fair presentment under O'Sullivan v. Boerckel, 526 U.S. 838, 844 (1999)..................5

**Response to habeas claim 3 and habeas claim 9**: Where the Ohio Supreme Court rejected on the facts Roberts allegations that the trial court and trial defense counsel erred in respect to her waiver of mitigation, habeas relief is precluded since the unrebutted findings of fact by the Ohio Supreme Court that Roberts properly waived mitigation are afforded deference under 2254(d)(2) and a presumption of correctness under 2254(e)(1)..........................................................................8

**Response to habeas claim 4**: Where the 11th Dist. state court of appeals rejected on the facts Roberts allegations that the trial defense counsel were ineffective during the trial phase, habeas relief is precluded for defective pleading and because the unrebutted findings of fact by the 11th Dist. state court of appeals that trial counsel were not ineffective are afforded deference under 2254(d)(2) and a presumption of correctness under 2254(e)(1). ........................................................................................ 9

**Response to habeas claim 5**: By ignoring the express, explicit, and exhaustively explained denial by the Ohio Supreme Court, relief should be denied for defective pleading, and in addition because of Roberts failure to show an unreasonable state court adjudication under AEDPA. ............................................................................ 12

**Response to habeas claim 6**: By ignoring the express, explicit, and exhaustively explained denial by the Ohio Supreme Court, relief should be denied for defective pleading, and in addition relief should be denied because of Roberts failure to rebut by clear and convincing evidence, as required under 2254(e)(1), the state court factual finding that the two prospective jurors in question were eligible to serve as jurors.15

**Response to habeas claim 7:** By ignoring the express, explicit, and exhaustively explained denial by the Ohio Supreme Court, relief should be denied for defective pleading, and in addition because of Roberts failure to rebut the factual finding of competence by clear and convincing evidence as required under 2254(e)(1). ........... 18

**Response to habeas claim 8**: Relief should be denied under *Ylst v. Nunnemaker*, 501 U.S. 797 (1991) where Roberts attacks the sentencing opinion of the trial court, instead of the independent sentencing opinion by the Ohio Supreme Court that is the "last reasoned opinion" pertinent to habeas claim 8. ................................................ 20

**Response to habeas claim 10**: There being no right under the federal constitution to prevent the orderly transition of a new trial judge to replace the former trial judge who died, relief on habeas claim 1 should be denied for noncognizability. ............... 21

**Response to habeas claim 11**: The assessment of evidence to determine whether a state court post-conviction petitioner is entitled to a post-conviction evidentiary hearing is a matter of state law such that relief on habeas claim 11 should be denied for lack of cognizability. ............................................................................. 26

**Response to habeas claim 12**: The Ohio Supreme Court properly determined that the taking of the decedent's car just after his murder was sufficient evidence to support a robbery charge such that habeas relief should be denied. ..... DROPPED .....

**Response to habeas claim 13**: Habeas relief is precluded due to failure of fair presentment under O'Sullivan v. Boerckel, 526 U.S. 838, 844 (1999), where the

corresponding state court claim was expressly waived by Roberts and withdrawn by her from consideration by the 11th Dist. state court of appeals.................................28

**Response to habeas claim 14 and habeas claim 15**: Boilerplate claims of unconstitutionality do not warrant habeas relief.......................................................31

**Response to habeas claim 1: Where there is no clearly established SCOTUS precedent to require the re-opening of a concluded penalty phase proceeding, and no precedent to require the vacating of a prior waiver of mitigation, and no precedent to require the post-trial presentation of brand-new mitigation evidence, habeas relief is precluded under 2254(d)(1).**

In wrongly concluding that the Ohio Supreme Court misapplied the *Lockett-Eddings-Skipper* line of cases, Roberts herself grossly misreads the import of these cases to the facts of her case that show a lawful and valid waiver of mitigation during the trial phase.

The fact that distinguishes the *Lockett-Eddings-Skipper* line of cases from her case is that Roberts "does not attack or question the validity of her waiver, nor does she question the Ohio Supreme Court's finding that her waiver was valid under Ohio law." See Doc. 24, Traverse, Page ID 12944. The fact that Roberts entered a valid waiver of mitigation that was merged into and finalized by the completion of trial proceedings renders her claim fundamentally different than the *Lockett-Eddings-Skipper* line of cases that apply when the trial proceedings are ongoing and have yet to conclude and finish.

In each the *Lockett-Eddings-Skipper* line of cases, the capital defendant was still clothed with the presumption of innocence since the underlying criminal case had not yet concluded by conviction and sentence. In each the *Lockett-Eddings-Skipper* line of cases, the presumed-innocent capital defendant had an unfettered right to present relevant mitigation evidence that had been wrongly restricted by the wrongful exclusion of proper mitigation evidence that had been proffered by the presumed-innocent capital defendant. The *Lockett-Eddings-Skipper* line of cases are

1

procedurally set at the *pre*-conviction stage where the presumption of innocence still applies. *Cf. Ross* v. *Moffitt*, 417 U.S. 600, 610, (1974) ("The purpose of the trial stage from the State's point of view is to convert a criminal defendant from a person presumed innocent to one found guilty beyond a reasonable doubt").

In Roberts's situation, her claim is procedurally set at the post-conviction and post-sentencing stage. At this post-conviction stage, Roberts is no longer is presumed innocent. Instead, Roberts has been adjudicated guilty and sentenced accordingly. See *Herrera v. Collins*, 506 U.S. 390, 399-400 (1993). ("[I]t is not disputed that the State met its burden of proving at trial that petitioner was guilty of the capital murder of Officer Carrisalez beyond a reasonable doubt. ***Thus, in the eyes of the law, petitioner does not come before the Court as one who is 'innocent,' but, on the contrary, as one who has been convicted by due process of law of two brutal murders.")*** (Emphasis added.)

Moreover, the trial-phase sentencing proceedings that Roberts did have were shaped by Roberts's own decision to not present mitigating evidence. An additional difference is that to be entitled to present any mitigation evidence, Roberts would have had to reverse the waiver of mitigation that she concedes was lawfully entered. See Doc. 24, Traverse, Page ID 12944. (Roberts "does not attack or question the validity of her waiver, nor does she question the Ohio Supreme Court's finding that her waiver was valid under Ohio law.")

Given Roberts's concession that her waiver of mitigation was legally proper, it would be most doubtful that Roberts could have been relieved by the state courts of her prior valid waiver of mitigation so as to make available to her the rights granted to a

capital defendant under the *Lockett-Eddings-Skipper* line of cases. In other words, Roberts's concededly lawful and proper waiver of mitigation would itself be a fact that breaks any connection with Roberts to the protections of the *Lockett-Eddings-Skipper* line of cases. The *Lockett-Eddings-Skipper* line of cases set rules for the unfettered admissibility of relevant mitigation evidence that would become irrelevant when the capital defendant, like Roberts, lawfully and properly waived the opportunity to present any mitigation evidence.

The *Lockett-Eddings-Skipper* line of cases apply when the presumption of innocence still attaches to the capital defendant. The *Lockett-Eddings-Skipper* line of cases do not apply to a presumed-guilty capital defendant who has already been convicted and sentenced. Moreover, the *Lockett-Eddings-Skipper* line of cases say nothing at all about reversing a lawful and legally proper waiver of mitigation that would have to happen before Roberts could present any new mitigation evidence during postconviction proceedings.

These procedural differences between the *Lockett-Eddings-Skipper* line of cases and Roberts's situation show error by Roberts in her legal analysis. In other words, because Roberts was already convicted and sentenced, had already lawfully waived mitigation, and did not have a court-ordered go-ahead to present new mitigation evidence, the *Lockett-Eddings-Skipper* line of cases do not apply to habeas claim 1.

The fact that the *Lockett-Eddings-Skipper* line of cases apply only when the presumption of innocence still attaches does not change in light of the decision of the Sixth Circuit Court of Appeals in *Davis v. Coyle*, 475 F. 3d 761 (6th Cir. 2007).

First, the habeas petitioner in *Davis v. Coyle* did not waive mitigation during his trial, and was lawfully allowed to present new mitigation evidence during postconviction proceedings in state court where the state court had allowed a start-from-scratch mitigation case. See *Id.,* at 763 ("[T]he state supreme court vacated the sentence and remanded the case to the trial court for resentencing.")

In this case, Roberts lawfully and properly waived mitigation and during the post-conviction stage was never entitled by the state courts to a start-from-scratch mitigation case. See Doc. 24, Traverse, Page ID 12944. (Roberts "does not attack or question the validity of her waiver, nor does she question the Ohio Supreme Court's finding that her waiver was valid under Ohio law.") These differences distinguish the *Davis* case from Roberts own case such that the lessons from *Davis* have no application in this case.

Second, circuit precedent like *Davis v. Coyle* may not be the legal foundation for habeas relief. Instead, the exclusive source of law on which habeas relief could be granted is clearly established precedent by the United States Supreme Court. See *Kernan v. Cuero*, 138 S. Ct. 4, 9 (2017) ("Finally, as we have repeatedly pointed out, 'circuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court.' *Glebe* v. *Frost*, 574 U. S. ___, ___, 135 S. Ct. 429 (2014) (*per curiam*) (quoting 28 U. S. C. §2254(d)(1))." What that means here is, regardless of the quality of the legal analysis, the rules and lessons from *Davis v. Coyle* have no effect in this habeas case.

For the reasons expressed, this Court should deny relief on habeas claim 1.

**Response to habeas claim 2: Where Roberts failed to present on the third direct appeal a claim of ineffective assistance of trial defense counsel for alleged inadequate mitigation investigation, despite an express invitation by the Ohio Supreme Court to do so as stated in the second direct appeal opinion, relief is precluded for failure of fair presentment under *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999).**

In her response to the Warden's argument that Roberts did not present a claim of ineffective assistance of counsel at the mitigation phase during the three iterations of her direct appeal, Roberts wrongly asserts she preserved the claim by presentation during postconviction of the "Fourth Ground for Relief in her postconviction petition. (ECF 12-13, Page ID 10221-10232." See Doc. 24, Traverse, Page ID 12945.

The text of postconviction claim 4 does state  a claim of ineffective assistance of trial counsel during the mitigation phase. See Doc. 12-13, state court record, Roberts postconviction petition claim 4, Page ID 10221-10232.

However, during ongoing postconviction proceedings, ***Roberts expressly withdrew postconviction claim 4 by agreed entry***.  See Doc. 12-13, state court record, judgment entry by the postconviction court staying adjudication pending action by the Ohio Supreme Court, Page ID 10447-10448. Specifically, the agreed entry from the postconviction court  stated "per agreement of the parties, Petitioner's 2008 petition is amended per the petitioner's motion. ***Claims 4 and 5 will be eliminated.***" *Id*., at Page ID 10447. (Emphasis added.)

The fact  that Roberts dropped postconviction claim 4 (ineffective assistance of trial counsel at the mitigation phase) is corroborated  in the entry from the

postconviction court denying relief; i.e. the postconviction court expressly says postconviction claim 4 had been dropped. *Id.*, at Page ID 10447.

Corroboration that postconviction claim 4 was dropped is also found in Roberts merit brief to the 11th Dist. state court of appeals, where Roberts advanced a claim of ineffective assistance of trial counsel during the *guilt phase*. However, Roberts did not assert a claim of ineffective assistance of counsel during the *mitigation phase*, because that claim had been dropped during postconviction proceedings at the trial level. See Doc 12-14, State court record, Roberts postconviction appeal brief to the state court 11th Dist. court of appeals,  Page ID 10574-10604.

Here is a pertinent excerpt from Roberts postconviction brief to the state court of appeals:

> In her amended 2015 petition, Roberts argued three claims. *** *Roberts is not pursuing the first two of her petition claims here*. The third claim below addressed the alleged ineffective of her counsel in the *trial stage*. This is argued below in the First Assignment of Error (Third Claim below). ***As Roberts controlled her counsel in the penalty phase, limiting their ability to present evidence in mitigation, those issues are not available to her for this procedure***.  (Emphasis added.)
>
> Doc. 12-14, State court record, Roberts postconviction brief to the 11th Dist., Page ID 10582.

What these state court records show is that Roberts is completely wrong to say that she presented a claim to the state courts of ineffective assistance of trial counsel during the mitigation phase. To the contrary, Roberts did not present such a claim for final adjudication to the Ohio Supreme Court where Roberts's own appellate brief explains why postconviction claim 4 claim was dropped before final adjudication by the postconviction court. Doc. 12-14, State court record, Roberts postconviction brief to the 11th Dist., Page ID 10582.

Under these circumstances, relief on habeas claim 2 should be denied for failure of fair presentment under *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999). See *Donley v. Warden*, 2021 U.S. Dist. LEXIS 190536, at *8-*9 (SDO, Merz, Magistrate Judge.) ("Failure to present an issue to the state supreme court on discretionary review constitutes procedural default. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) (citations omitted). 'Even if the state court failed to reject a claim on a procedural ground, the petitioner is also in procedural default 'by failing to raise a claim in state court, and pursue that claim through the state's ordinary appellate procedures.' *Thompson v. Bell*, 580 F.3d 423, 437 (6th Cir. 2009), citing *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006)(quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 846-7 (1999)); see also *Deitz v. Money*, 391 F.3d 804, 808 (6th Cir. 2004) ('***A federal court is also barred from hearing issues that could have been raised in the state courts, but were not***[.]').") (Emphasis added.)

**Response to habeas claim 3 and habeas claim 9: Where the Ohio Supreme Court rejected on the facts Roberts allegations that the trial court and trial defense counsel erred in respect to her waiver of mitigation, habeas relief is precluded since the unrebutted findings of fact by the Ohio Supreme Court that Roberts properly waived mitigation are afforded deference under 2254(d)(2) and a presumption of correctness under 2254(e)(1).**

Apart from inartful argument and flawed legal reasoning, Roberts also suffers from unrecognized duplicity in her arguments in favor of habeas relief on claim 3 and claim 9 that allege constitutional error in the acceptance of her waiver of mitigation. Although Roberts alleges here that her mitigation waiver was unlawful, she made the exact opposite argument in her defense of relief on habeas claim 1. In defense of her request for relief on habeas claim 1, ***Roberts said she "does not attack or question the validity of her waiver, nor does she question the Ohio Supreme Court's finding that her waiver was valid under Ohio law."*** See Doc. 24, Traverse, response regarding claim 1, Page ID 12944.

This Court should consider this statement by Roberts as a direct contradiction to Roberts's arguments in support of habeas claim 3 and habeas claim 9.

The balance of Roberts's arguments in support of relief as to habeas claim 3 and habeas claim 9 are conclusory statements that bear no connection to the state-law basis for the conclusion by the Ohio Supreme Court that the mitigation waiver was proper and valid. Especially where Roberts sys that ***she "does not attack or question the validity of her waiver, nor does she question the Ohio Supreme Court's finding that her waiver was valid under Ohio law"*** this Court should take Roberts's concession at face value and deny relief on habeas claim 3 and habeas claim 9.

8

**Response to habeas claim 4: Where the 11th Dist. state court of appeals rejected on the facts Roberts allegations that the trial defense counsel were ineffective during the trial phase, habeas relief is precluded for defective pleading and because the unrebutted findings of fact by the 11th Dist. state court of appeals that trial counsel were not ineffective are afforded deference under 2254(d)(2) and a presumption of correctness under 2254(e)(1).**

In her Traverse, Roberts's representation to this Court  that all subclaims "were raised in post-conviction and were adjudicated by the state court of appeals" shows willful blindness to her own explicit waivers regarding the *Batson* subclaim and the "forced to not testify" subclaim.  See Doc. 24, Traverse, Page ID 12958 ("These claims were raised in postconviction and were adjudicated by the state court of appeals.")

As to the *Batson* subclaim, once it was denied by the postconviction  court, Roberts dropped the claim. In other words, Roberts did not present to the state court of appeals a claim of error by the postconviction court in the denial of the *Batson* subclaim. Roberts did not need to scour the state court record to find this out. Instead, Roberts could have read the Warden's Return of Writ stating that this subclaim was dropped. See Doc. 15, Warden Return of Writ, response to habeas claim 4, page ID 12865. ("Following the denial of post-conviction relief by the trial court, Roberts did not appeal the denial of the *Batson* claim. See Doc. 12-14, State Court Record, Roberts Post-Conviction Appeal Merits Brief, Page ID 10574-10604.")

Regarding the "forced to not testify" subclaim,  once it was denied by the postconviction court, Roberts dropped the claim. In other words, Roberts did not present to the state court of appeals a claim of error by the state postconviction court in the denial of the "forced to not testify" subclaim. Roberts did not need to scour the

state court record to find this out. Instead, Roberts could have read the Warden's Return of Writ stating that this subclaim was dropped. See Doc. 12-14, State Court Record, Roberts Post-Conviction Appeal Merits Brief, Page ID 10574-10604., also set forth at Doc. 15, Warden Return of Writ, response to habeas claim 4, page ID 12869-12870.

Where it is an unassailable fact of the state court record that two of the five subclaims in habeas claim 4 were dropped after denial by the postconviction court, Roberts representation to this Court that all subclaims were adjudicated by the state court of appeals is false. See Doc. 24, Traverse, Page ID 12958 ("These claims were raised in postconviction and were adjudicated by the state court of appeals.")

Whether Roberts's false representation was an intentional obfuscation of the record or mere reckless inattention is of no particular import. Instead, Roberts false characterization of the state court record suggests that this Court should independently verify any representation by Roberts as to the composition and contents of the state court record. Even that workload will be light, since Roberts addresses the state court adjudications only in passing, throwing out sweeping and conclusory allegations of fact and law that serve to obfuscate, not enlighten.

Regarding the other three subclaims that Roberts did adjudicate before the state court of appeals, in her Traverse Roberts simply repeats the same arguments rejected by the state court of appeals. In so doing, Roberts makes no effort to explain how or why the state court adjudication was flawed under the AEDPA analysis that must be utilized by this Court. Roberts failure to explain means that habeas relief cannot be granted. See *Woods v. Etherton*, 578 U.S. 113,118 (2016) ("In reaching these

10

conclusions, the Sixth Circuit did not apply the appropriate standard of review under AEDPA. A 'fairminded jurist' could conclude that repetition of the tip did not establish that the uncontested facts it conveyed were submitted for their truth. Such a jurist  might reach that conclusion by placing weight on the fact that the truth of the facts was not disputed. ***No precedent of this Court clearly forecloses that view***.") (Emphasis added.)

Regarding the other three subclaims that Roberts did adjudicate before the state court of appeals, the state court of appeals used 2069 words to explain why the these three subclaims were properly denied by the postconviction court. See *State v. Roberts*, 2020 Ohio 4188, P13-P25 (11th Dist.)

In her Traverse, how many of these 2069  words written by the state court of appeals  were examined by Roberts? Zero. *Roberts doesn't even let this Court know where to find the pertinent postconviction documents, like her brief to the state court of appeals or the decision of the state court of appeals*. If Roberts had read either document, it is probable that she would have realized two subclaims were dropped on appeal, and she accordingly would not have represented to this Court that "These claims were raised in postconviction and were adjudicated by the state court of appeals." See Doc. 24, Traverse, Page ID 12958.

This  Court should expect better advocacy from counsel, especially when this Court has afforded Roberts eleven months to work on her Traverse. See Doc. 15, Warden's Return of Writ, filed on February 18, 2022, where the Doc 24 Traverse was filed on January 13, 2023.

In other words, showing nothing more in her Doc. 24 Traverse than a bare restatement of arguments already rejected by the state court of appeals, Roberts fails to develop arguments to show how or why the state court adjudication was flawed under an AEDPA analysis. Roberts failure to explain why the state adjudication was supposedly flawed is an independent reason to deny relief on habeas claim 4. See, for example, *United States v. Zannino*, 895 F. 2d 1, 17 (1st Cir. 1990). ("It is not enough merely to mention a possible argument in the most skeletal way, ***leaving the court to do counsel's work***, create the ossature for the argument, and put flesh on its bones. As we recently said in a closely analogous context: '***Judges are not expected to be mindreaders***. Consequently, a litigant has an obligation 'to spell out its arguments squarely and distinctly,' or else forever hold its peace.' *Rivera-Gomez v. de Castro*, 843 F.2d 631, 635 (1st Cir. 1988) (quoting *Paterson-Leitch Co. v. Massachusetts Municipal Wholesale Elec. Co*., 840 F.2d 985, 990 (1st Cir. 1988)).") (Emphasis added.)

For the reasons expressed, relief on habeas claim 4 should be denied for defective pleading and alternatively for failure of fair presentment and failure to explain why the state court findings of fact are unreasonable under an AEDPA analysis.

**Response to habeas claim 5: By ignoring the express, explicit, and exhaustively explained denial by the Ohio Supreme Court, relief should be denied for defective pleading, and in addition because of Roberts failure to show an unreasonable state court adjudication under AEDPA.**

In her Traverse, Roberts excerpts a few lines from the denial of the pretrial publicity claim by the Ohio Supreme Court. See Doc. 24. Traverse, Page ID 12964.

However, the excerpted quotation by the Ohio Supreme Court does not illustrate anything other than reliance by the Ohio Supreme Court on appropriate precedent. The excerpted quotation by the Ohio Supreme Court simply recites applicable rules without saying how those rules are to be applied under the facts of Roberts voir dire proceeding.

Other than citation to three benign sentences  from the opinion of the Ohio Supreme Court, the balance of Roberts arguments in her Traverse merely repeat the exact same arguments rejected by the Ohio Supreme Court. Not surprisingly, Roberts says nothing about the numerous reasons why the Ohio Supreme Court rejected Roberts numerous contentions of error regarding the voir dire process. For example, in her Doc. 24 Traverse, Roberts simply refers to  prospective jurors who had some awareness of the case before commencement of voir dire, citing to her Merit Brief to the Ohio Supreme Court. Id., at Page ID 12963. She did the same thing in her merit brief to the Ohio Supreme Court. See Doc. 12-4, state court record, Roberts Merit Brief Proposition Seven, Page ID 8291-8295. Without any additional explanation or analysis, the bare reference to snippets of voir dire do not establish entitlement to habeas relief.

Roberts arguments in the text of habeas claim 5, and her arguments in the text of Traverse do not engage with the reasons for denial of the pretrial publicity claim by the Ohio Supreme Court. See Doc. 10, Habeas Petition, Page ID 130-136. Instead, Roberts arguments in the habeas petition and the Traverse are mere rewrites of the

13

statement of the claim in her Merit Brief to the Ohio Supreme Court. See Doc. 12-4, state court record, Roberts Merit Brief Proposition Seven, Page ID 8291-8295.

The difference in Roberts Doc 24 Traverse are the additions of boilerplate quotations of pertinent law, without saying anything about whether the Ohio Supreme Court did or did not apply that particular precedent. In short, by reading all of Roberts arguments as stated in claim 5 of the habeas petition and all of Roberts arguments as stated in the Doc. 24 Traverse, this Court would have no information about the point-by point refutation of Roberts contentions of fact and law by the Ohio Supreme Court.

Under these circumstances, if this Court would grant relief as to habeas claim 5, it would not do so based on proper arguments by Roberts, but rather upon its own independent construction of facts and law to justify habeas relief. This outcome would be improper because it is Roberts herself who has the burden to show error under AEDPA, and her failure to do so because of defective pleading requires the denial of habeas relief. See, for example, *United States v. Zannino*, 895 F. 2d 1, 17 (1st Cir. 1990). ("It is not enough merely to mention a possible argument in the most skeletal way, ***leaving the court to do counsel's work***, create the ossature for the argument, and put flesh on its bones. As we recently said in a closely analogous context: '***Judges are not expected to be mindreaders.*** Consequently, a litigant has an obligation 'to spell out its arguments squarely and distinctly,' or else forever hold its peace.' *Rivera-Gomez v. de Castro*, 843 F.2d 631, 635 (1st Cir. 1988) (quoting *Paterson-Leitch Co. v.*

*Massachusetts Municipal Wholesale Elec. Co.*, 840 F.2d 985, 990 (1st Cir. 1988)).")
(Emphasis added.)

Especially where Roberts says nothing at all about the denial of the corresponding state court claim, this Court should deny relief on habeas claim 5.

**Response to habeas claim 6: By ignoring the express, explicit, and exhaustively explained denial by the Ohio Supreme Court, relief should be denied for defective pleading, and in addition relief should be denied because of Roberts failure to rebut by clear and convincing evidence, as required under 2254(e)(1), the state court factual finding that the two prospective jurors in question were eligible to serve as jurors.**

In her Doc. 24 Traverse, Roberts concedes that the two prospective jurors whom she says should have been disqualified for case, prospective juror Kotwis and prospective juror Blake, *were not seated as jurors*. Instead, Roberts complains that her trial defense counsel had to utilize two available peremptory challenges to keep prospective juror Kotwis and prospective juror Blake off the jury. See Doc. 24, Traverse, Page ID 12968. In other words, *Roberts concedes that although none of the jurors who were seated were biased*, her trial counsel had to use two available peremptory challenges to ensure that the jury that was seated was unbiased.

In the Return of Writ, the Warden noted that the case of *Ross v. Oklahoma*, 487 U.S. 81 (1988) explicitly held that **"*So long as the jury that sits is impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean the Sixth Amendment was violated.*"** Id. at 88. See Doc. 15, Return of Writ, page ID 12879.

15

In her Doc. 24 Traverse, what does Roberts say about *Ross v. Oklahoma* foreclosing relief on habeas claim 6?  Nothing at all. Instead, Roberts argues as if the rule in *Ross v. Oklahoma* does not exist.

In similar fashion, Roberts does not explain how or why prospective juror Kotwis and prospective juror Blake should have been excused for case. Instead, without any articulation of reasons, Roberts merely alleges that these prospective jurors should have been excused for cause. See Doc. 24, Traverse, Page ID 12971. For example, Roberts argues that "The record contradicts the trial court's finding that [prospective juror] Kotwis was open to a death sentence." *However, Roberts does not cite to any portion of the record.*

Roberts does only marginally better as to juror Blake. In her Traverse, Roberts cites to a single page of the voir dire of prospective juror Blake to supposedly show error by the trial court in denying Roberts challenge for cause. See Doc. 24, Traverse, Page ID 12971, third paragraph. However, the entire voir dire of prospective juror Blake consists of **one hundred and five pages**. See Doc 11-2, state court trial transcripts, Page ID 4570-4674. So, of one hundred and five pages of voir dire testimony of prospective juror Blake, Roberts would have this Court review only a few lines of testimony. That should suggest to this Court that Roberts implicitly concedes the other one hundred and four pages of voir dire testimony of prospective juror Blake shows proper voir dire testimony.

Moreover, Roberts agrees that the test for juror qualification in a capital case is set forth in *Wainwright v. Witt*, 469 U.S. 412 (1985). See Doc. 24, Traverse, Page

ID 12970. In explaining why it denied the tainted jury claim, the Ohio Supreme Court applied the test in *Wainwright v. Witt*. See *State v. Roberts*, 110 Ohio St. 3d 71, P109. Under these circumstances, the Ohio Supreme Court applied the correct law, thus passing muster under the AEDPA standards in 2254(d)(1). See *White v. Woodall*, 572 U.S. 415, 427 (2014) ("The critical point is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question, *Harrington*, 562 U.S., at 103."); see also *Brown v. Davenport*, 142 S. Ct. 1510 (2022) ("To accomplish that [proving the state court decision was unreasonable under 2254(d)(1)], a petitioner must persuade a federal court that **no 'fairminded juris[t] could reach the state court's conclusion under this Court's precedents**.")

Regarding the AEDPA test for assessment of the factual findings by the state court under 2254(d)(2), it is not enough for Roberts to cite to a single page of testimony by one prospective juror to upend the point-by-point rejection of Roberts's factual characterizations by the Ohio Supreme Court. Instead, the best Roberts can do with the facts is to merely allege broad and conclusory allegations about the plausibility of some judge looking at the facts the same way as does Roberts.

However, the test under 2254(d)(2) regarding state court factual findings is not satisfied unless the factual assessment of the Ohio Supreme Court is so materially and fundamentally flawed that there is *not even one "fairminded jurist"* who would assess the facts the same way as did the Ohio Supreme Court. See

*Brumfield v. Cain*, 576 U.S. 305, 313-314 (2015) ("We may not characterize these state-court factual determinations as unreasonable 'merely because [we] would have reached a different conclusion in the first instance.' *Wood* v. *Allen*, 558 U. S. 290, 301 (2010). Instead, §2254(d)(2) requires that we accord the state trial court substantial deference. If '[r]easonable minds reviewing the record might disagree' about the finding in question, 'on habeas review that does not suffice to supersede the trial court's . . . determination.' *Ibid.*(quoting *Rice* v. *Collins*, 546 U. S. 333, 341-342 (2006)).")

Roberts ignores the rule in *Ross v. Oklahoma* that constitutional error cannot be predicated upon trial defense counsel using available peremptory challenges to excuse questionable jurors. As to the facts, Roberts's citation to a single page of voir dire testimony out of hundreds of pages of voir dire testimony falls far short of showing an unreasonable factual determination by the Ohio Supreme Court. Under these circumstances, this Court should deny relief as to habeas claim 6.

**Response to habeas claim 7: By ignoring the express, explicit, and exhaustively explained denial by the Ohio Supreme Court, relief should be denied for defective pleading, and in addition because of Roberts failure to rebut the factual finding of competence by clear and convincing evidence as required under 2254(e)(1).**

In her Doc. 24 Traverse, Roberts contends that she need not rebut the presumption of correctness of the factual finding by the Ohio Supreme Court that Roberts was competent for resentencing. This is so, according to Roberts, because she is not attacking the factual finding by the Ohio Supreme Court that she was competent for resentencing purposes. Instead, according to Roberts, her contention is

that the trial court should have hired more experts and conducted a formal competency hearing. See Doc. 24, Traverse, Page ID 12979 ("The Warden's only argument in response—other than the faulty procedural arguments discussed above—is to say that this Court must defer to the trial court's determination that Ms. Roberts was competent. (ECF 15, Page ID 12881-82). But Ms. Roberts principally attacks the *procedure* used to determine her competence, and that procedure was inadequate under clearly established precedent. On that issue, the state courts made no factual finding to which this Court must defer.") (Emphasis supplied.)

However, in the statement of her claim before the Ohio Supreme Court, Roberts alleged that the facts showed she was incompetent for resentencing proceedings. See Doc. 12-6, state court record, Roberts Proposition Six to the Ohio Supreme Court, Page ID 8858-8862. (The conducting of the penalty phase while *she was not competent* was a violation of the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.") *Id.,* at Page ID 8862. (Emphasis added.) Regarding the procedure, Roberts merely alleged before the Ohio Supreme Court there should have been more experts and a more extensive competency hearing. See Doc. 12-6, state court record, Roberts Proposition Six to the Ohio Supreme Court, Page ID 8858-8862.

Roberts claimed before the Ohio Supreme Court that there was insufficent evidence to support the finding of competency for postconviction proceedings. In her Doc. 24 Traverse, Roberts's argument changes to attack the procedural facts alone, saying that if she had more state court experts and more state court evidentiary hearings, she would have had a better chance to prove her supposed incompetence.

Roberts is not entitled in federal habeas to change her claim away from the fact-based attack presented to the Ohio Supreme Court; *i.e.* the fact-based attack that Roberts was supposedly not competent to participate in the resentencing proceedings. See *Picard v. Connor*, 404 U.S. 270, 276 (1971) ("***The rule [that the federal claim must be fairly presented to the state courts] would serve no purpose if it could be satisfied by raising one claim in the state courts and another in the federal courts.*** Only if the state courts have had the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding does it make sense to speak of the exhaustion of state remedies. Accordingly, ***we have required a state prisoner to present the state courts with the same claim he urges upon the federal courts***.") (Emphasis added.)

Under these circumstances, Roberts concession in her Doc. 24 Traverse that she is not attacking the finding of fact that she was competent for resentencing proceedings is an additional reason to deny relief on habeas claim 7.

**Response to habeas claim 8: Relief should be denied under *Ylst v. Nunnemaker*, 501 U.S. 797 (1991) where Roberts attacks the sentencing opinion of the trial court, instead of the independent sentencing opinion by the Ohio Supreme Court that is the "last reasoned opinion" pertinent to habeas claim 8.**

In her Doc. 24 Traverse, Roberts implicitly concedes that it is the Ohio Supreme Court, through its statutorily-obligated reweighing of aggravation versus mitigation, that is the sentencing body. Although in the reweighing process the Ohio Supreme Court will take into consideration the weighing process articulated by the trial court, the sentencing body is the Ohio Supreme Court, not the trial court. See

Doc. 24, Traverse, Page ID 12984. ("The Warden's only argument in response is to invoke the Ohio Supreme Court's reweighing of the evidence under Ohio Revised Code § 2929.05(A). (ECF 15, Page ID 12885-88). ***It is correct that this type of error* [in the sentencing opinion by the trial court]** ***may be cured through an 'independent reweighing of the aggravating and mitigating circumstances' by the state supreme court.*** *Clemons v. Mississippi*, 494 U.S. 738, 750 (1990).")

However, Roberts contention to the Ohio Supreme Court was that the sentencing opinion *by the trial court* was flawed. See Doc. 12-9, Proposition Three to the Ohio Supreme Court, Page ID 9438-9440. Roberts is not entitled to switch gears in her Traverse to now submit a different claim that the Ohio Supreme Court's decision to impose a death sentence was flawed. See *Picard v. Connor*, 404 U.S. 270, 276 (1971) ("***The rule [that the federal claim must be fairly presented to the state courts] would serve no purpose if it could be satisfied by raising one claim in the state courts and another in the federal courts.*** Only if the state courts have had the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding does it make sense to speak of the exhaustion of state remedies. Accordingly, ***we have required a state prisoner to present the state courts with the same claim he urges upon the federal courts.")*** (Emphasis added.)

The acceptable parameters of appellate reweighing of a capital sentence are broad. Even if the sentencing opinion below was infected with constitutional error under *Eddings v. Oklahoma*, 455 U.S. 104 (1982), that defect can be cured by appellate reweighing. See *McKinney v. Arizona*, 140 S. Ct. 702 (2020) ("***In deciding whether a particular defendant warrants a death sentence in light of the mix***

*of aggravating and mitigating circumstances, there is no meaningful difference for purposes of appellate reweighing between subtracting an aggravator from one side of the scale and adding a mitigator to the other side.* Both involve weighing, and the Court's decision in *Clemons* ruled that appellate tribunals may perform a 'reweighing of the aggravating and mitigating evidence.' *Ibid.* In short, a *Clemons* reweighing is a permissible remedy for an *Eddings* error.")

What that means here is even if this Court were to permit Roberts to change her claim, habeas relief still would not be proper. This is so because Roberts's best argument is that the fact she was not the shooter should have had more weight in mitigation than what was afforded by the Ohio Supreme Court. See Doc. 24, Traverse, Page ID 12985, first full paragraph. This type of hairsplitting about how aggravating or how mitigating should be the fact that Roberts was not the hands-on killer falls outside the federal constitution, and is not cognizable in habeas. See *Kansas v. Marsh*, 548 U.S. 163, 174 (2006) ("[A] State enjoys a range of discretion in imposing the death penalty, including the manner in which the aggravating and mitigating circumstances are to be weighed."); *Cf., Shinn v. Kayer*, 141 S. Ct. 517, 526 (2020)(" For present purposes, it suffices to say that, *because the facts in each capital sentencing case are unique*, the weighing of aggravating and mitigating evidence in a prior published decision is unlikely to provide clear guidance about how a state court would weigh the evidence in a later case.") (Emphasis added.)

Under these circumstances, this Court should deny relief as to habeas claim 8.

**Response to habeas claim 10: There being no right under the federal constitution to prevent the orderly transition of a new trial judge to replace the former trial judge who died, relief on habeas claim 10 should be denied for noncognizability.**

In contending that habeas claim 10 was not a state-law-only claim as alleged by the Warden, Roberts ignores her own statement of the claim before the Ohio Supreme Court. In citing to federal constitutional cases in her Proposition 1 merit brief to the Ohio Supreme Court, Roberts cited to cases from the United States Supreme Court to illustrate the narrowing of her claim away from the broad concepts of admissibility of evidence in a mitigation proceeding. Specifically, Roberts informed the Ohio Supreme Court that she was narrowing the focus of the "deceased judge claim" to state law matters only. Specifically, with the Ohio Supreme Court, Roberts framed her claim as follows:

> In previous appeals Roberts addressed the limitation to her ability to present mitigation. It is understood that this issue cannot be re-argued here. ***What is ripe for addressing here is whether the procedure used on remand, having a judge weigh allocution without having heard it actually spoken, improperly infringed on her ability to have it properly presented and considered.***

Doc. 12-9, State Court Record, Roberts Merit Brief to the Ohio Supreme Court, Page ID 9429.

By this formulation of habeas claim 10 as it was presented to the Ohio Supreme Court, Roberts has consistently argued that state law controlled the disposition of what was Proposition 1 in Robert's third trip to the Ohio Supreme Court. Roberts

23

said that she was entitled to a life sentence because, according to Roberts, state law did not permit the substitution of a living judge for the trial judge who died during prior appellate proceedings. According to Roberts, the "rule of lenity" precluded the state courts from discerning from state statutes a procedure whereby the substitution of a deceased judge for a living judge such that, according to Roberts, she must be given a life sentence. See *State v. Roberts*, 150 Ohio St. 3d 47, P30-P31 (2017) (expressly noting the state law basis for Roberts Proposition 1 before the Ohio Supreme Court.) See also Doc. 12-9, State Court Record, Page ID 9430-9433.

Where habeas relief is not available for state law claims, Roberts is not entitled to relief as to habeas claim 10. See *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.")

Alternatively, construing habeas claim 10 as presented to the state courts as a federal constitutional claim would call for denial of habeas relief for lack of clearly established precedent from the United States Supreme Court. Especially where the properly formulated claim by Roberts focuses on state law regarding the replacement of a deceased judge with a living judge, any formulation of a federal constitutional claim by Roberts would stretch existing precedent far outside its proper confines.

For example, the *Lockett* case helps to define the constitutional concept of "relevance" in capital mitigation. On the other hand, cases like *Lockett* case say

24

nothing about how to replace a deceased judge with a living judge. Consequently, cases like *Lockett* state too general a rule (consideration must be given to relevant and admissible mitigation evidence)  to have any valid application to the question of the procedural means of replacing a deceased judge with a living judge. See *Chinn v. Warden*, 24 F. 4th 1096, 1106 (6th Cir. 2022) ("To put a fine point on it: neither *Wearry* [*v. Cain*, 577 U.S. 385, 388 (2016)] nor any case from the Supreme Court controls with sufficient granularity. Under AEDPA, we must ask whether there is any Supreme Court precedent that would compel every fair-minded jurist to hold that the State committed a *Brady* error here. As there is none, fair-minded jurists could debate whether the 'clearly established rule' does or does not apply to the 'set of facts' at hand. *White* [*v. Woodall*], 572 U.S. at 427. 'If such disagreement is possible, then the petitioner's claim must be denied.' *Sexton v. Beaudreaux*, 138 S. Ct. 2555, 2558 (2018) (per curiam).")

There is no United States Supreme Court precedent about what to do when a deceased trial judge must be replaced with a living trial judge. Where there is no applicable rule, fair-minded jurists could debate what is proper or improper about the replacement of a deceased trial judge with a living trial judge. As noted by the *Chinn* court, since the absence of clearly established precedent is what would allow debate amongst fair-minded jurists, the absence of clearly established precedent also requires the denial of habeas relief. *Id.* at 1106.

25

Under these circumstances, this Court should deny relief on habeas claim 10 because of noncognizability (state law only claim)  and alternatively because of no clearly established SCOTUS precedent.

**Response to habeas claim 11: The assessment of evidence to determine whether a state court postconviction petitioner is entitled to a post-conviction evidentiary hearing is a matter of state law such that relief on habeas claim 11 should be denied for lack of cognizability.**

In an effort to avoid dismissal of habeas claim  11 for lack of cognizability (state law only claim), Roberts rewrites habeas claim 11 to make it seem like a violation of the federal constitution was presented to the state courts. In her response to the Warden's  answer to her federal habeas petition, Roberts cites  to five cases decided by the United States Supreme Court. See Doc. 24, Traverse, Page ID 12990-12991.

However, in her state court appellate brief, Roberts supported the claim corresponding to habeas claim 11 with state law only cases, intending to show the 11th Dist. state court of appeals other state court cases where cogent and probative evidence had been presented in other state court post-conviction proceedings. See Doc. 12-14, State Court Record, Roberts Post-Conviction Brief to the 11th Dist., Page ID 10598-10602.

In her brief to the 11th Dist. state court of appeals, other than a perfunctory references to the Fifth, Sixth, and Fourteenth Amendments, Roberts did not cite to any cases under the federal constitution. The entirety of Roberts effort in the state courts to "federalize" the claim corresponding to habeas claim 11 was to say: "A dismissal without an evidentiary hearing would deny Roberts her constitutional rights as guaranteed by the Fifth, Sixth, and Fourteenth Amendments, United States

Constitution and Section 16, Article I, Ohio Constitution." See Doc. 12-14, state court record, Roberts postconviction merit brief to the 11th Dist. state court of appeals, Page ID 10598.

A bare passing reference to federal constitutional amendments is not enough to transform a state law only claim into a claim arising under the federal constitution. See, for example, *Gwen v. Mascher*, 2022 U.S. Dist. LEXIS 108984 (USDC AZ, Metcalf, J.) ("None of the cited cases addressed a federal constitutional claim of judicial bias. And a bare reference to broad constitutional principles such as 'due process' or a 'fair trial' is not sufficient to fairly raise the constitutional basis of a claim. *Casey v. Moore*, 386 F.3d 896, 913 (9th Cir. 2004). ***Moreover, Petitioner's bare reference to a denial of a fair trial in violation of the Fifth Amendment as a result of the denial of a continuance (id. at 282) was not sufficient to fairly present a federal due process claim based on judicial bias***. In sum, Petitioner asserted a variety of discrete rulings with constitutional dimensions, and vaguely referenced a denial of due process, but never fairly presented a federal claim of judicial bias."); see also *Baldwin v. Reese*, 541 U.S. 27 (2004) (" ***The* [state court] *petition provides no citation of any case that might have alerted the* [state] *court to the alleged federal nature of the claim.*** And the [state court] petition does not even contain a factual description supporting the claim. Cf. *Gray v. Netherland,* 518 U.S. 152, 163 (1996); *Duncan*, 513 U.S., at 366.").

Roberts is not entitled to rewrite habeas claim 11 when there was no effort in the state courts to articulate a claim that rested on federal constitutional precedent. See *Picard v. Connor*, 404 U.S. 270, 276 (1971) ("*The* rule [that the federal claim must be fairly presented to the state courts] *would serve no purpose if it could be satisfied by raising one claim in the state courts and another in the federal courts.* Only if the state courts have had the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding  does it make sense to speak of the exhaustion of state remedies. Accordingly, *we have required a state prisoner to present the state courts with the same claim he urges upon the federal courts.*") (Emphasis added.)

Under these circumstances, relief on habeas claim 11 should be denied for lack of cognizability (state law only claim).

**Response to habeas claim 13: Habeas relief is precluded due to failure of fair presentment under *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999), where the corresponding state court claim was expressly waived by Roberts and withdrawn by her from consideration by the 11th Dist. state court of appeals.**

Roberts concedes that the claim corresponding to habeas claim 13 "was not raised in the state court of appeals." Roberts additionally concedes that the claim was abandoned on appeal. See Doc. 24, Traverse, Page ID 12993 ("***The claim was not raised in the state court of appeals***. Because the nature of a fair cross-section claim requires investigation and factual development, including evidence regarding the county's jury selection process, it was impossible for Ms. Roberts to make a credible claim without discovery or a hearing, ***so admittedly the claim was abandoned on appeal***.")

Under these circumstances of express waiver of the state court claim that corresponds with habeas claim 13, habeas relief is precluded for failure of fair presentment under *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999). ("Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, we conclude that state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.")

Furthermore, Roberts's  argument in her Doc. 24 Traverse about racial population statistics in Trumbull County Ohio caries no weight in these habeas proceedings. For starters, Roberts has already admitted she did not have any evidence to support this claim, so her citation to Wikipedia in her Doc. 24 Traverse is a red herring. In addition, since the claim corresponding to habeas claim 13  was abandoned by Roberts after the decision by the trial court was issued, the state appellate courts were not presented with any evidence at all because Roberts never presented the claim to the state appellate courts.

Undaunted, Roberts switches gears and now says that habeas claim 13 should be deemed procedurally defaulted, subject to resurrection and revitalization under the "cause and prejudice" doctrine. See Doc. 24, Traverse, Page ID 12993. ("Ms. Roberts asks the Court to either find cause and prejudice for any default, or upon Ms. Roberts's motion, to stay the case and permit her to return to state court for exhaustion and a full hearing on the claim.")

However, Roberts fails to show, and does not even attempt to show, facts and argument to establish the "cause and prejudice" excuse to relieve her of the abandonment of habeas claim 13 before the state courts. Roberts failure to establish the "cause and prejudice" excuse means that habeas relief cannot be granted.  See *Toliver v. Forshey*, 2023 U.S. App. LEXIS 418, at *7 (6th Cir. 2023) ("Moreover, even if the ineffective-assistance claim Toliver raised in his motion to withdraw could be construed as a fair presentation of the ineffective-assistance claim raised in his § 2254 petition, ***Toliver never appealed the denial of his motion to withdraw and thus failed to exhaust the claim.*** Reasonable jurists would not disagree with the district court's determination that claims one and two are procedurally defaulted.")

Under these circumstances, habeas relief should be denied for failure of failure of fair presentment under *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999).  See *Donley v. Warden*, 2021 U.S. Dist. LEXIS 190536, at *8-*9 (SDO, Merz, Magistrate Judge.) ("Failure to present an issue to the state supreme court on discretionary review constitutes procedural default. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) (citations omitted). 'Even if the state court failed to reject a claim on a procedural ground, the petitioner is also in procedural default 'by failing to raise a claim in state court, and pursue that claim through the state's ordinary appellate procedures.' *Thompson v. Bell*, 580 F.3d 423, 437 (6th Cir. 2009), citing *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006)(quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 846-7 (1999)); see also *Deitz v. Money*, 391 F.3d 804, 808 (6th Cir. 2004) ('A federal court is also barred from hearing issues that could have been raised in the state courts, but were not[.]').")

**Response to habeas claim 14 and habeas claim 15: Boilerplate claims of unconstitutionality do not warrant habeas relief.**

Regarding habeas claim 14 that alleges unconstitutionality of the death penalty, federal habeas courts have uniformly rejected habeas relief. See, for example, *Moore v. Mitchell*, 2007 U.S. Dist. LEXIS 96523, at 241-241 (SDO, Merz, Magistrate Judge) (explaining how each of eleven contentions of unconstitutionality of the death penalty do not warrant habeas relief.)

Regarding habeas claim 15 that alleges "cumulative error," habeas relief should be denied. See *Conway v. Shoop*, 2020 U.S. Dist. LEXIS 108225, at *6 (SDO, Merz, Magistrate Judge) ("However, the Sixth Circuit has held that, after adoption of the AEDPA in 1996, ***cumulative error is not a basis for habeas corpus relief even in a capital case****. Moreland v. Bradshaw*, 699 F.3d 908, 931 (6th Cir. 2012); *Sheppard v. Bagley*, 657 F.3d 338, 348 (6th Cir. 2011), cert. denied, 567 U.S. 910, 132 S. Ct. 2751, 183 L. Ed. 2d 623 (2011), citing *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005), cert. denied sub nom. *Moore v. Simpson*, 549 U.S. 1027, 127 S. Ct. 557, 166 L. Ed. 2d 424 (2006); *Hoffner v. Bradshaw*, 622 F.3d 487, 513 (6th Cir. 2010); *Lorraine v. Coyle*, 291 F.3d 416, (6th Cir. 2002).") (Emphasis added.)

Under these circumstances, the Court should deny relief on habeas claims 14 and 15.

<u>CONCLUSION</u>

For the reasons expressed, this Court should deny relief and dismiss Roberts

habeas petition.

Respectfully submitted,
**DAVE YOST**
Attorney General
s/*Stephen E. Maher*
_____
Stephen E. Maher (0032279)
Assistant Attorney General, Capital Crimes Section
30 East Broad Street, 23rd Floor
Columbus, Ohio 43215
(6l4) 728-7055 (cell) (740) 412-0552
Email:stephen.maher@ohioago.gov
**COUNSEL FOR RESPONDENT**


**CERTIFICATE OF
SERVICE**


I hereby certify that a copy of the foregoing has been forwarded via the court's electronic filing to all parties of record this 23rd  day of January, 2023.


s/*Stephen E. Maher*
_____
Stephen E. Maher  (0032279)
Assistant Attorney General